UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2003 DEC -4  A 11: 50

U.S. DISTRICT COURT
DISTRICT OF MASS.

| AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY, Plaintiff, vs. TOWN OF NORTH BROOKFIELD, Defendant. | Civil Action No. 03-40266 NMG |
|---|---|

AMENDED COMPLAINT FOR DECLARATORY JUDGMENT
UNDER 28 U.S.C. § 2201

1.  The plaintiff, American Manufacturers Mutual Insurance Company ("AMMIC"), is an Illinois corporation authorized to issue surety bonds in the Commonwealth of Massachusetts, with its principal place of business in Long Grove, Illinois.

2.  Defendant, the Town of North Brookfield, Massachusetts (the "Town"), is a municipal corporation organized under the laws of the Commonwealth of Massachusetts, with its principal place of business in North Brookfield, Massachusetts.

3.  This Court has jurisdiction over the subject matter of this case under 28 U.S.C. § 1332, as the plaintiff is a citizen of Illinois, the defendant is a citizen of Massachusetts and more than $75,000, exclusive of interest and costs, is in dispute.

4.  Venue is proper in this District because the defendant has its principal place of business in Massachusetts.

5. This action is brought pursuant to 28 U.S.C. § 2201 for the purpose of determining a question of actual controversy between the parties.

6. AMMIC has issued, as surety, a performance bond naming E.J. Sciaba Contracting Company, Inc. ("Sciaba") as principal and the defendant as obligee (the "Bond"), with respect to a contract (the "Contract") dated April 19, 2002, for construction of the Junior/Senior High School, North Brookfield, Massachusetts (the "Project"). A true copy of the Bond is attached hereto as Exhibit 1.

7. On or about July 23, 2003 the Town terminated the right of Sciaba to continue performing under the Contract and made demand upon AMMIC to respond under its Bond.

8. AMMIC obtained proposals from qualified contractors who were acceptable to the Town for a contract for performance and completion of the Contract, albeit on dates later than those required under the Contract, arranged for a contract to be prepared for execution by the Town and the contractor (who was selected with the Town's concurrence), together with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Contract.

9. AMMIC has been attempting to determine, and to reach agreement with the Town as to, the amount of damages owed by AMMIC under the applicable provisions of the Bond, taking into consideration the Town's legitimate claims and AMMIC's legitimate partial defenses. The parties have not reached agreement. AMMIC has determined that it owes the Town the sum of $2,538,838.37 and has delivered a group of checks in that amount to the Town, unconditionally. The Town

disagrees with AMMIC's determination and demands payment of additional unspecified amounts.

10. In addition to the above-referenced payment, AMMIC has also delivered a check payable to the Town in the amount of $659,157.80, conditioned only upon the Town executing the completion contract tendered to it, but reserving the right to recover any part of the amount so paid that AMMIC does not in fact owe. The amount of this check, when added to the $2,538,838.37 paid unconditionally, put funds in the hands of the Town sufficient for it to pay the full amount of the fixed price under the completion contract, had the completion contract been accepted promptly upon tender. AMMIC did not require the Town to execute an agreement with or release any rights against AMMIC.

11. The Town has refused to execute the completion contract tendered to it by AMMIC and has demanded that AMMIC itself undertake completion of the Contract work and made other unreasonable and unwarranted demands, which AMMIC has declined to do or to meet.

12. An actual controversy has arisen between AMMIC and the Town with respect to, among other things, (a) the amount, if any, owed by AMMIC under the Bond beyond the amount previously paid unconditionally, (b) the Town's obligation to execute the tendered completion contract and otherwise to mitigate its damages, and (c) the obligation (asserted by the Town but denied by AMMIC) of AMMIC to undertake completion of the contract work itself.

WHEREFORE, the plaintiff, American Manufacturers Mutual Insurance Company, hereby demands that the Court:

A. enter a declaratory judgment declaring that American Manufacturers Mutual Insurance Company has complied with its obligations under the Bond by tendering a completion contract and accompanying performance and payment bonds, and declaring what amount, if any, is owed by American Manufacturers Mutual Insurance Company to the Town of North Brookfield over and above the amount paid unconditionally by it; and

B. enter an order requiring the Town of North Brookfield to refund to American Manufacturers Mutual Insurance Company any portion of the conditional payment made by it in excess of amount owed; and

C. enter such other orders that the Court may determine to be warranted.

American Manufacturers Mutual Insurance Company

By its attorneys

Dec. 3, 2003

_____
Deborah S. Griffin, BBO #211460
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA  02116
Tel:   (617) 305-2044
Fax:  (617) 523-6850

# 1371781_v2
431261.00002



# THE AMERICAN INSTITUTE OF ARCHITECTS



Bond No. 3SE057856

AIA Document A312

# Performance Bond

*Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.*

**CONTRACTOR (Name and Address):**
E.J. SCIABA CONTRACTING COMPANY, INC.
18 Wolcott Street
Readville, MA 02137

**SURETY (Name and Principal Place of Business):**
AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY
One Kemper Drive
Long Grove, IL 60049

**OWNER (Name and Address):**
THE TOWN OF NORTH BROOKFIELD, OFFICE OF THE SUPERINTENDENT OF SCHOOLS,
10 New School Drive
North Brookfield, MA 01535

**CONSTRUCTION CONTRACT**
Date:
Amount: Thirteen Million Two Hundred Twenty-Two Thousand and 00/100 Dollars ($13,222,000.00)
Description (Name and Location): North Brookfield Jr./Sr. High School, North Brookfield, MA

**BOND**
Date (Not earlier than Construction Contract Date):
Amount: Thirteen Million Two Hundred Twenty Two Thousand and 00/100 Dollars ($13,222,000.00)
Modifications to this Bond:    ☒ None    ☐ See Page 3

**CONTRACTOR AS PRINCIPAL**
Company:                (Corporate Seal)
E.J. SCIABA CONTRACTING COMPANY, INC.
Signature: _____
Name and Title: EDWARD J. SCIABA, JR.
PRESIDENT
(Any additional signatures appear on page 3)

**SURETY**
Company:                (Corporate Seal)
AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY
Signature: _____
Name and Title: Jean Brooker, Attorney-In-Fact

*(FOR INFORMATION ONLY—Name, Address and Telephone)*
**AGENT or BROKER:**
Aon Risk Services, Inc. of Massachusetts
99 High Street
Boston, MA 02110
(617) 482-3100

**OWNER'S REPRESENTATIVE (Architect, Engineer or other party):**

AIA DOCUMENT A312 • PERFORMANCE BOND AND PAYMENT BOND • DECEMBER 1984 ED. • AIA ®
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W., WASHINGTON, D.C. 20006
THIRD PRINTING • MARCH 1987

A312-1984  1

**1** The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference.

**2** If the Contractor performs the Construction Contract, the Surety and the Contractor shall have no obligation under this Bond, except to participate in conferences as provided in Subparagraph 3.1.

**3** If there is no Owner Default, the Surety's obligation under this Bond shall arise after:

**3.1** The Owner has notified the Contractor and the Surety at its address described in Paragraph 10 below that the Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with the Contractor and the Surety to be held not later than fifteen days after receipt of such notice to discuss methods of performing the Construction Contract. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default; and

**3.2** The Owner has declared a Contractor Default and formally terminated the Contractor's right to complete the contract. Such Contractor Default shall not be declared earlier than twenty days after the Contractor and the Surety have received notice as provided in Subparagraph 3.1; and

**3.3** The Owner has agreed to pay the Balance of the Contract Price to the Surety in accordance with the terms of the Construction Contract or to a contractor selected to perform the Construction Contract in accordance with the terms of the contract with the Owner.

**4** When the Owner has satisfied the conditions of Paragraph 3, the Surety shall promptly and at the Surety's expense take one of the following actions:

**4.1** Arrange for the Contractor, with consent of the Owner, to perform and complete the Construction Contract; or

**4.2** Undertake to perform and complete the Construction Contract itself, through its agents or through independent contractors; or

**4.3** Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and the contractor selected with the Owner's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Construction Contract, and pay to the Owner the amount of damages as described in Paragraph 6 in excess of the Balance of the Contract Price incurred by the Owner resulting from the Contractor's default; or

**4.4** Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:

.1 After investigation, determine the amount for which it may be liable to the Owner and, as soon as practicable after the amount is determined, tender payment therefor to the Owner; or

.2 Deny liability in whole or in part and notify the Owner citing reasons therefor.

**5** If the Surety does not proceed as provided in Paragraph 4 with reasonable promptness, the Surety shall be deemed to be in default on this Bond fifteen days after receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond, and the Owner shall be entitled to enforce any remedy available to the Owner. If the Surety proceeds as provided in Subparagraph 4.4, and the Owner refuses the payment tendered or the Surety has denied liability, in whole or in part, without further notice the Owner shall be entitled to enforce any remedy available to the Owner.

**6** After the Owner has terminated the Contractor's right to complete the Construction Contract, and if the Surety elects to act under Subparagraph 4.1, 4.2, or 4.3 above, then the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract. To the limit of the amount of this Bond, but subject to commitment by the Owner of the Balance of the Contract Price to mitigation of costs and damages on the Construction Contract, the Surety is obligated without duplication for:

**6.1** The responsibilities of the Contractor for correction of defective work and completion of the Construction Contract;

**6.2** Additional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Paragraph 4; and

**6.3** Liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or non-performance of the Contractor.

**7** The Surety shall not be liable to the Owner or others for obligations of the Contractor that are unrelated to the Construction Contract, and the Balance of the Contract Price shall not be reduced or set off on account of any such unrelated obligations. No right of action shall accrue on this Bond to any person or entity other than the Owner or its heirs, executors, administrators or successors.

**8** The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

**9** Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation avail-

AIA DOCUMENT A312 • PERFORMANCE BOND AND PAYMENT BOND • DECEMBER 1984 ED. • AIA ®
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W., WASHINGTON, D.C. 20006
THIRD PRINTING • MARCH 1987

A312-1984   2

able to sureties as a defense in the jurisdiction of the suit shall be applicable.

10  Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the signature page.

11  When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

## 12  DEFINITIONS

12.1  Balance of the Contract Price: The total amount payable by the Owner to the Contractor under the Construction Contract after all proper adjustments have been made, including allowance to the Contractor of any amounts received or to be received by the Owner in settlement of insurance or other claims for damages to which the Contractor is entitled, reduced by all valid and proper payments made to or on behalf of the Contractor under the Construction Contract.

12.2  Construction Contract: The agreement between the Owner and the Contractor identified on the signature page, including all Contract Documents and changes thereto.

12.3  Contractor Default: Failure of the Contractor, which has neither been remedied nor waived, to perform or otherwise to comply with the terms of the Construction Contract.

12.4  Owner Default: Failure of the Owner, which has neither been remedied nor waived, to pay the Contractor as required by the Construction Contract or to perform and complete or comply with the other terms thereof.

**MODIFICATIONS TO THIS BOND ARE AS FOLLOWS:**

NONE

(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)

| CONTRACTOR AS PRINCIPAL | | SURETY | |
|---|---|---|---|
| Company: | (Corporate Seal) | Company: | (Corporate Seal) |

Signature: _____
Name and Title:
Address:

Signature: _____
Name and Title:
Address:

AIA DOCUMENT A312 • PERFORMANCE BOND AND PAYMENT BOND • DECEMBER 1984 ED. • AIA ®
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W., WASHINGTON, D.C. 20006
THIRD PRINTING • MARCH 1987

A312-1984   3