

# THE AMERICAN INSTITUTE OF ARCHITECTS



Bond No. 3SE057856

*AIA Document A312*

# Performance Bond

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

**CONTRACTOR (Name and Address):**
E.J. SCIABA CONTRACTING COMPANY, INC.
18 Wolcott Street

Readville, MA 02137

**SURETY (Name and Principal Place of Business):**
AMERICAN MANUFACTURERS MUTUAL INSURANCE
COMPANY
One Kemper Drive
Long Grove, IL 60049

**OWNER (Name and Address):**
THE TOWN OF NORTH BROOKFIELD, OFFICE OF THE
SUPERINTENDENT OF SCHOOLS,
10 New School Drive
North Brookfield, MA 01535

**CONSTRUCTION CONTRACT**
Date:
Amount: Thirteen Million Two Hundred Twenty-Two Thousand and 00/100 Dollars ($13,222,000.00)
Description (Name and Location): North Brookfield Jr./Sr. High School, North Brookfield, MA

**BOND**
Date (Not earlier than Construction Contract Date):
Amount: Thirteen Million Two Hundred Twenty Two Thousand and 00/100 Dollars ($13,222,000.00)
Modifications to this Bond:    ☒ None    ☐ See Page 3

| CONTRACTOR AS PRINCIPAL | SURETY |
|---|---|
| Company: (Corporate Seal) | Company: (Corporate Seal) |
| E.J. SCIABA CONTRACTING COMPANY, INC. | AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY |
| Signature: | Signature: |
| Name and Title:, | Name and Title: Jean Brooker, Attorney-in-Fact |
| EDWARD J. SCIABA, JR. PRESIDENT | |
| (Any additional signatures appear on page 3) | |

*(FOR INFORMATION ONLY—Name, Address and Telephone)*
**AGENT or BROKER:**
Aon Risk Services, Inc. of Massachusetts
99 High Street
Boston, MA 02110
(617) 482-3100

**OWNER'S REPRESENTATIVE (Architect, Engineer or other party):**

AIA DOCUMENT A312 • PERFORMANCE BOND AND PAYMENT BOND • DECEMBER 1984 ED. • AIA ®
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W., WASHINGTON, D.C. 20006
THIRD PRINTING • MARCH 1987

A312-1984   1

**1** The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference.

**2** If the Contractor performs the Construction Contract, the Surety and the Contractor shall have no obligation under this Bond, except to participate in conferences as provided in Subparagraph 3.1.

**3** If there is no Owner Default, the Surety's obligation under this Bond shall arise after:

**3.1** The Owner has notified the Contractor and the Surety at its address described in Paragraph 10 below that the Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with the Contractor and the Surety to be held not later than fifteen days after receipt of such notice to discuss methods of performing the Construction Contract. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default; and

**3.2** The Owner has declared a Contractor Default and formally terminated the Contractor's right to complete the contract. Such Contractor Default shall not be declared earlier than twenty days after the Contractor and the Surety have received notice as provided in Subparagraph 3.1; and

**3.3** The Owner has agreed to pay the Balance of the Contract Price to the Surety in accordance with the terms of the Construction Contract or to a contractor selected to perform the Construction Contract in accordance with the terms of the contract with the Owner.

**4** When the Owner has satisfied the conditions of Paragraph 3, the Surety shall promptly and at the Surety's expense take one of the following actions:

**4.1** Arrange for the Contractor, with consent of the Owner, to perform and complete the Construction Contract; or

**4.2** Undertake to perform and complete the Construction Contract itself, through its agents or through independent contractors; or

**4.3** Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and the contractor selected with the Owner's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Construction Contract, and pay to the Owner the amount of damages as described in Paragraph 6 in excess of the Balance of the Contract Price incurred by the Owner resulting from the Contractor's default; or

**4.4** Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:

**.1** After investigation, determine the amount for which it may be liable to the Owner and, as soon as practicable after the amount is determined, tender payment therefor to the Owner; or

**.2** Deny liability in whole or in part and notify the Owner citing reasons therefor.

**5** If the Surety does not proceed as provided in Paragraph 4 with reasonable promptness, the Surety shall be deemed to be in default on this Bond fifteen days after receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond, and the Owner shall be entitled to enforce any remedy available to the Owner. If the Surety proceeds as provided in Subparagraph 4.4, and the Owner refuses the payment tendered or the Surety has denied liability, in whole or in part, without further notice the Owner shall be entitled to enforce any remedy available to the Owner.

**6** After the Owner has terminated the Contractor's right to complete the Construction Contract, and if the Surety elects to act under Subparagraph 4.1, 4.2, or 4.3 above, then the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract. To the limit of the amount of this Bond, but subject to commitment by the Owner of the Balance of the Contract Price to mitigation of costs and damages on the Construction Contract, the Surety is obligated without duplication for:

**6.1** The responsibilities of the Contractor for correction of defective work and completion of the Construction Contract;

**6.2** Additional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Paragraph 4; and

**6.3** Liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or non-performance of the Contractor.

**7** The Surety shall not be liable to the Owner or others for obligations of the Contractor that are unrelated to the Construction Contract, and the Balance of the Contract Price shall not be reduced or set off on account of any such unrelated obligations. No right of action shall accrue on this Bond to any person or entity other than the Owner or its heirs, executors, administrators or successors.

**8** The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

**9** Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation avail-

AIA DOCUMENT A312 • PERFORMANCE BOND AND PAYMENT BOND • DECEMBER 1984 ED. • AIA ®
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W., WASHINGTON, D.C. 20006
THIRD PRINTING • MARCH 1987

A312-1984    2

able to sureties as a defense in the jurisdiction of the suit shall be applicable.

**10** Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the signature page.

**11** When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

**12   DEFINITIONS**

**12.1**  Balance of the Contract Price: The total amount payable by the Owner to the Contractor under the Construction Contract after all proper adjustments have been made, including allowance to the Con-

tractor of any amounts received or to be received by the Owner in settlement of insurance or other claims for damages to which the Contractor is entitled, reduced by all valid and proper payments made to or on behalf of the Contractor under the Construction Contract.

**12.2**  Construction Contract: The agreement between the Owner and the Contractor identified on the signature page, including all Contract Documents and changes thereto.

**12.3**  Contractor Default: Failure of the Contractor, which has neither been remedied nor waived, to perform or otherwise to comply with the terms of the Construction Contract.

**12.4**  Owner Default: Failure of the Owner, which has neither been remedied nor waived, to pay the Contractor as required by the Construction Contract or to perform and complete or comply with the other terms thereof.

**MODIFICATIONS TO THIS BOND ARE AS FOLLOWS:**

NONE

(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)

| CONTRACTOR AS PRINCIPAL | | SURETY | |
|---|---|---|---|
| Company: | (Corporate Seal) | Company: | (Corporate Seal) |

| | | | |
|---|---|---|---|
| Signature: _____ | | Signature: _____ | |
| Name and Title: | | Name and Title: | |
| Address: | | Address: | |

AIA DOCUMENT A312 • PERFORMANCE BOND AND PAYMENT BOND • DECEMBER 1984 ED. • AIA #
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W., WASHINGTON, D.C. 20006
THIRD PRINTING • MARCH 1987

A312-1984   3



FILE

| **CHANGE** | Owner | ■ | Berkshire Design Group | ☐ |
| **ORDER** | Architect | ■ | Engineers Design Group | ☐ |
| **North Brookfield** | Contractor | ■ | Garcia, Galuska Desousa, Inc. | ☐ |
| **Jr./Sr. High School** | CM | ■ | J. Crissafulli & Associates | ☐ |
| N. Brookfield, MA 01535 | Bldg. Inspector | ■ | CCR/Pyramid | ☐ |

Project:  North Brookfield Jr./Sr. High School        Change Order No: 3
              North Brookfield, MA

Owner:  North Brookfield Public School District        Date:  3 December 2002

To:      E.J. Sciaba Company, Inc.                      Architects Project No: 00-404
          18 Wolcott Street
          P.O. Box 191
          Readville, MA 02137                           Contract For:  North Brookfield Jr./Sr. High School

                                                         Contract Date: 19 April 2002


See attached list of 2 items for a total <u>increase</u> of...................................$132,804.25


Not valid until signed by both the Owner and Architect.
Signature of the Contractor indicates his agreement herewith, including any adjustment in the Contract Sum or Contract Time.

The original Contract Sum was ......... ........... ........... ............................................ $13,222,000.00
Net change by previously authorized Change Orders.............................................($1,830.87)
The Contract Sum prior to this Change Order was ... .......................................... $13,220,169.13
The Contract Sum will be <u>increased</u> by this Change Order ........................... $132,804.25
The new Contract Sum including this Change Order will be................................ $13,352,973.38
The Contract Time will be changed by ......... ...... ......... ...... ...... ....................…......28 days
The Date of Substantial Completion as of the date of this
Change Order therefore is...... ........... ....................................................15 December 2003

Authorized:

ARCHITECT                    CONTRACTOR                 OWNER

Dore and Whittier, Inc,       E.J. Sciaba Company., Inc.  North Brookfield Public
1795 Williston Road           18 Wolcott Street           School District
South Burlington, VT          P.O. Box 191                10 New School Drive
05403                         Readville, MA 02137         N. Brookfield, MA 01535

By _____        By _____      By _____
Date  12/3/02                 Date  12-5-02                Date  12-10-02


Certification of Appropriation under M.G.L. c44, s31C: Adequate funding in an    Name  Nancy J. Nykiel
amount sufficient to cover the total cost of this change order is available.     Title: Town Accountant
                                                                                 Date:  12/11/02

Case 4:03-cv-40266-TSH     Document 5-2     Filed 02/02/2004     Page 7 of 17

| CCD/PR/PCO Number | Description | Amount |
|---|---|---|
| CCD 4R/COP #5 | Unanticipated unsuitable soils in Area C & B, area 1-4 | $86,245.00 |
| CCD 4R/COP #6 | Unanticipated unsuitable soils in Area A & B, area 1,3 & 5 | $46,559.25 |
| TOTAL | | $132,804.25 |





# North Brookfield Public Schools
## Office of the Superintendent
**10 New School Drive, North Brookfield, MA  01535
Telephone (508) 867-9821 Fax (508) 867-8148
e-mail ~ roneill@nbschools.org**

23 April 2003                                                    By FAX and Certified Mail

Mr. Edward Sciaba, President
Mr. Mike Sheehan, General Superintendent
E. J. Sciaba Contracting Co., Inc.
18 Wolcott St.
Readville, MA 02137

Jean Brooker, Attorney-in-Fact
American Manufacturers Mutual Insurance Company
One Kemper Drive
Long Grove, IL 60049
Bond No. 3SE057856

**Project:**       **North Brookfield Junior-Senior High School
DW Project No. 00-404**

Dear Mr. Sciaba:

The Owner formally requests a meeting with you and a representative from your bonding company to be held at the project site to discuss the Contractor's ongoing lack of performance on this project. The original contract between E.J. Sciaba and the Town of North Brookfield required that the new school building be substantially complete by November 17, 2003 (this was extended by Change Order No. 3 to December 15, 2003). It has become apparent that this date may not be achieved; therefore we are requesting this meeting to discuss the following issues:

1. It has been one full year since the Notice to Proceed was issued and accepted by E.J. Sciaba Contracting, Inc. The project should be 72% complete at this point according to the Architect's projected drawdown schedule for the project. Based on an analysis of billings to date the project is only 35% complete (attached). Please note that E.J. Sciaba has still failed to issue a projected drawdown schedule for the project as required by the contract documents (Instructions to Bidders Paragraph K, Item 2 and the Notice of Intent dated March 14, 2002). A projection based upon the average requisition billing to date indicates that the project will not be completed until January, 2005, more than one year after the completion time required by the contract.

2. The Contractor has failed to provide adequate staffing and labor forces for this project in order to complete the project by the dates prescribed by the contact documents (General Conditions 8.2.1 and 8.2.3).

3. The Contractor repeatedly has failed to provide Proposal Request pricing information within a reasonable time pursuant to section 7.3.6 of the General Conditions of the contract. The Owner and Architect have issued two Construction Change Directives (CCD #5 & CCD #7) with pricing established following the protocols of the contract documents in order for this work to continue without affecting the ongoing sequencing of work. The Contractor has been notified repeatedly that another Construction Change Directive will be forthcoming for Proposal Requests that remain unanswered by the Contractor for over the past three months.

4. The Owner remains concerned that information approved by the Owner and Architect in the form of Construction Change Directives or approved Change Orders are not being forwarded to the appropriate subcontractors for expeditious completion of this work.

5. There continues to be claims made by subcontractors regarding the apparent lack of payment for completed work approved and paid in Requisitions to the Owner from the General Contractor. Delay claims have been filed with the General Contractor from subcontractors due to delays in the sequencing of work because of GC non-performance. The Owner has received claims from the following subcontractors for lack of payment and/or demands for direct payment:

    a.  Greenwood Industries, Inc.
    b.  Mark Equipment
    c.  American Equipment
    d.  Dominion Rebar
    e.  Holyoke Equipment
    f.  Millis Plumbing
    g.  Griffin Electric

6. Failure to provide updated monthly construction schedules as required by the contract documents. The latest project schedule was received by the Owner and Architect on December, 2002 (run date of November 20, 2002).

7. Non-attendance by the Contractor's project manager at job meetings even after meetings have been re-scheduled at the request of E.J. Sciaba's project manager. The project manager has failed to attend the past two on-site project meetings, which makes it difficult or impossible to discuss issues that affect the ongoing progress of work.

8. Almost every Application for Payment to date has had inadequate documentation or mistakes. The latest payment application was returned to the Contractor uncertified by the Architect due to mistakes (that have been consistently brought to the Contractor's attention) and improper documentation which is specifically listed in a different letter (separate cover) to the Contractor citing the reasons for non-certification of the application.

9. Ongoing history of subcontractors and E.J. Sciaba's own forces demobilizing and leaving the job site due to the apparent lack of payment to subcontractors and/or union benefits which in turn have had serious ramifications to the project schedule.

10. The project schedule calls for the roofing system to have a <u>late finish</u> of 10 March 2003. The roofing system hasn't begun yet and it is 21 April 2003. Overhead power and lighting is scheduled to be complete (late finish) in each of the three sections of the building by 28 April 2003. It hasn't begun yet. Interior masonry walls were scheduled as a <u>late finish</u> of April 7, 2003 – they have not started (with the exception of the elevator shaft wall). These are several specific examples of the non-conformance with the Contractor's submitted project schedule. To date we

find it difficult to account for a single critical milestone date that has been achieved per the project schedule. At every job meeting we are told to expect progress and are later discouraged to realize that none or very little has been made. Lack of proper project administration by the Contractor and insufficient labor forces are the 'norm' for this project to date. The latest schedule submission (December, 2002) indicates substantial completion of the building will be achieved by September 17, 2003. We believe that based on current Contractor performance and the past history of non- performance to date, that this project will not be completed within that time frame.

We request the attendance of both Mr. Edward Sciaba and a representative of the Contractor's Bonding Company (American Manufacturers Mutual Insurance Company) on **Wednesday May 7, 2003 at 1PM** at the project site to discuss these issues and the Contractor's intentions for corrective action in carrying out the work and project schedule as defined by the Contract Documents. We also request once again that the Contractor provide an updated project schedule prior to this meeting for review. Please confirm your attendance at this meeting in writing.

Sincerely,

Mr. Robert O'Neill
Superintendent of Schools
North Brookfield School District

c:    Lee P. Dore, Dore and Whittier, Inc. (Fax 802-863-6955)
      Aon Risk Services, Inc. of Massachusetts  (Fax 617-457-7777)
      Jim Murray, Co-Chair – Building Committee (Fax 978-897-0779
      R. John Dore, Dore and Whittier, Inc.
      Chris Conway, Construction Manager
      Thomas W. McEnaney, Kopelman and Paige, P.C. April 23, 2003

chart print page



| Month | Apr-02 | May-02 | Jun-02 | Jul-02 | Aug-02 | Sep-02 | Oct-02 | Nov-02 | Dec-02 | Jan-03 | Feb-03 | Mar-03 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Actual Billings | $585,194.30 | $92,723.80 | $292,210.50 | $309,789.30 | $517,010.30 | $486,117.85 | $673,727.65 | $704,823.60 | $218,047.87 | $187,522.19 | $354,059.50 | $285,644.00 |
| Actual % | 4.43% | 0.70% | 2.21% | 2.34% | 3.91% | 3.68% | 5.10% | 5.33% | 1.65% | 1.42% | 2.68% | 2.16% |

| Contract Amount | $13,222,000.00 | Expected Total Billings: | $9,517,960.00 |
|---|---|---|---|
| Actual Total Billings | $4,706,870.86 | | $8,515,129.14 |
| Actual % Complete | 35.60% | Expected % Complete: | 71.99% | 21.70901916 |

| Contract Start Date: | 19-Apr-02 | | |
|---|---|---|---|
| Substantial Completion Date: | Building: | 17-Jul-03 (15 months) | |
| | All (inc. site) | 17-Nov-03 (19 months) | |
| Avg. Billing required per month (based on 15 month schedule) | $881,466.67 | | |
| Actual Avg. Billing per month (as of 4-16-03) | $392,239.24 | | |

Page 1



Law Offices

# HOLLAND & KNIGHT LLP

10 St. James Avenue
Boston, Massachusetts 02116

617-523-2700
FAX 617-523-6850
http://www.hklaw.com

| | |
|---|---|
| Annapolis | Oakbrook |
| Atlanta | Orlando |
| Bethesda | Portland |
| Boston | Providence |
| Bradenton | San Antonio |
| Chicago | San Francisco |
| Fort Lauderdale | Seattle |
| Jacksonville | St. Petersburg |
| Lakeland | Tallahassee |
| Los Angeles | Tampa |
| Miami | Washington, D.C. |
| New York | West Palm Beach |
| Northern Virginia | |

| | |
|---|---|
| International Offices: | São Paulo |
| Caracas* | Tel Aviv* |
| Helsinki | Tokyo |
| Mexico City | |
| Rio de Janeiro | *Representative Offices |

**PREVIOUSLY FAXED**

June 5, 2003

**DEBORAH S. GRIFFIN**
617-305-2044

Internet Address:
deborah.griffin@hklaw.com

*VIA TELECOPIER*
*(617) 654-1735 and*
*First Class Mail*

Thomas W. McEnaney, Esq.
Kopelman & Paige, P.C.
31 St. James Avenue, 7th Floor
Boston, MA 02116

> Re: *North Brookfield Intermediate & Senior High School Project*
> *DW Project No.:* *00-404*
> *Surety:* *American Manufacturers Mutual Insurance Co.*
> *Bond No.:* *3SE 057 856*
> *Claim No.:* *167-SE-002-989*

Dear Tom:

Please find enclosed copies of letters dated May 30, 2003, signed by Ed Sciaba of E.J. Sciaba Contracting Company, Inc., addressed to Robert O'Neill, Superintendent of Schools, North Brookfield Public Schools. One letter directs that all future payments be sent to Steve Beatty on behalf of the surety. The other letter constitutes Sciaba's acknowledgement of default. I do not know the whereabouts of the originals of these letters. I only received fax copies.

Thomas W. McEnaney, Esq.
June 5, 2003
Page 2

      We will be in touch further as the surety obtains additional information firms up its plan with respect to this default.

Very truly yours,

HOLLAND & KNIGHT LLP

Deborah S. Griffin

DSG/bsw: BOS1 #1344976 v1
431261.00005
Enclosures
cc:    Stephen J. Beatty, Esq. (w/o encl.)
       Richard P. Anastasio, P.E. (w/o encl.)



**E.J. SCIABA CONTRACTING COMPANY, INC.**

May 30, 2003

Robert O'Neill
Superintendent of Schools
North Brookfield Public Schools
10 New School Drive
North Brookfield, MA 01535

> Re:   *North Brookfield Intermediate & Senior High School Project*
> *DW Project No.:*   *00-404*
> *Surety:*   *American Manufacturers Mutual Insurance Co.*
> *Bond No.:*   *3SE 057 856*
> *Claim No.:*   *167-SE-002-989*

Dear Mr. O'Neill:

     We hereby irrevocably request that all payments due or to become due on account of the contract between Town of North Brookfield Board of Education and E.J. Sciaba Contracting Company, Inc. for work on the North Brookfield Intermediate & Senior High School Project be forwarded to the undersigned in care of American Manufacturers Mutual Insurance Co., Stephen J. Beatty, Esq., Kemper Insurance Companies, 1 Kemper Drive, Bldg. 4, Floor 3, K-7, Long Grove, IL 60049-0001, which company is surety on Performance and Labor and Material Payment bonds given in connection with the aforesaid contract.

     There will be no modification or change in these instructions without the written authorization and consent of American Manufacturers Mutual Insurance Co.

Very truly yours,

E.J. SCIABA CONTRACTING COMPANY, INC.

Edward J. Sciaba, Jr.
President

BOS1 #1343351 v1
431261.00002

E.J. SCIABA COMPANY, INCORPORATED
18 Wolcott Street • P.O. Box 191 • Readville, MA 02137 • (617) 364-6150



**E.J. SCIABA
CONTRACTING
COMPANY, INC.**

May 30, 2003

Robert O'Neill
Superintendent of Schools
North Brookfield Public Schools
10 New School Drive
North Brookfield, MA 01535

> Re:   *North Brookfield Intermediate & Senior High School Project*
> *DW Project No.:*   00-404
> *Surety:*   *American Manufacturers Mutual Insurance Co.*
> *Bond No.:*   3SE 057 856
> *Claim No.:*   167-SE-002-989

Dear Mr. O'Neill:

Due to circumstances beyond our control. we regret to advise you that we are unable to complete the captioned contract. We, accordingly, hereby irrevocably acknowledge that we are declaring a voluntary default for convenience on said contract and waive any notice required under the contract documents.

We request that you discuss with our surety the matter of completing this contract.

Very truly yours,

E.J. SCIABA CONTRACTING COMPANY, INC.

Edward J. Sciaba, Jr.
President

BOS1 #1343331 v1
131261.00002

E.J. SCIABA COMPANY, INCORPORATED

TOTAL P.06