

LEONARD KOPELMAN
DONALD G. PAIGE
ELIZABETH A. LANE
JOYCE FRANK
JOHN W. GIORGIO
BARBARA J. SAINT ANDRE
JOEL B. BARD
JOSEPH L. TEHAN, JR.
THERESA M. DOWDY
DEBORAH A. ELIASON
RICHARD BOWEN
DAVID J. DONESKI
JUDITH C. CUTLER
KATHLEEN E. CONNOLLY
DAVID C. JENKINS
MARK R. REICH

EDWARD M. REILLY
DIRECTOR WESTERN OFFICE

WILLIAM HEWIG III
JEANNE S. McKNIGHT
KATHLEEN M. O'DONNELL
SANDRA M. CHARTON

**KOPELMAN AND PAIGE, P. C.**

ATTORNEYS AT LAW

31 ST. JAMES AVENUE

BOSTON, MASSACHUSETTS 02116-4102

(617) 556-0007
FAX (617) 654-1735
———
PITTSFIELD OFFICE
(413) 443-6100
———
NORTHAMPTON OFFICE
(413) 585-8632
———
WORCESTER OFFICE
(508) 752-0203

PATRICIA A. CANTOR
THOMAS P. LANE, JR.
BRIAN W. RILEY
MARY L. GIORGIO
DARREN R. KLEIN
THOMAS W. MCENANEY
JONATHAN M. SILVERSTEIN
KATHARINE GOREE DOYLE
GEORGE X. PUCCI
LAUREN F. GOLDBERG
JASON R. TALERMAN
JEFFREY A. HONIG
MICHELE E. RANDAZZO
GREGG J. CORBO
RICHARD T. HOLLAND
LISA C. ADAMS
ELIZABETH R. CORBO
MARCELINO LA BELLA
VICKI S. MARSH
JOHN J. GOLDROSEN
SHIRIN EVERLTT
BRIAN E. GLENNON, II
JONATHAN D. EICHMAN
LAURA H. PAWLE
TODD A. FRAMPTON
JACKIE COWIN

July 2, 2003

<u>CERTIFIED MAIL - RETURN RECEIPT REQUESTED</u>
<u>AND FIRST-CLASS MAIL</u>

<u>NO. 7099 3220 0009 7561 7414</u>

Deborah Griffin, Esq.
Holland & Knight, LLP
10 St. James Avenue
Boston, MA 02116

<u>NO. 7099 3220 0009 7561 7407</u>

Bert J. Capone, Esq.
Cetrulo & Capone
2 Seaport Lane
Boston, MA 02210

Re:  Notice of Default Under General Contract
      Project:              North Brookfield Junior/Senior High School Project
      Performance Bond No.   3SE057856
      Principal:           E.J. Sciaba Contracting Company, Inc.
      Owner:              Town of North Brookfield, Massachusetts
      Contract Date:      April 19, 2002
      <u>Bond Amount:</u>        $13,222,000.00

Dear Counsel:

      As you know, this firm serves as Town Counsel for the Town of North Brookfield, Massachusetts. Please be advised that pursuant to paragraph 3.1 of the Performance Bond, the Town of North Brookfield is considering declaring a contractor default on the above-referenced project and hereby requests a meeting with E.J. Sciaba Contracting Company, Inc. ("Sciaba") and American Maufacturers Mutual Insurance Company ("AMMIC"), as surety on the above-

PRINTED ON RECYCLED PAPER

KOPELMAN AND PAIGE, P.C.

CERTIFIED MAIL - RETURN RECEIPT REQUESTED
AND FIRST CLASS MAIL
Deborah Griffin, Esq.
Bert J. Capone, Esq.
July 2, 2003
Page 2

referenced project. This intention to declare a contractor default is based upon Sciaba's voluntary default, as set forth in its May 30, 2003 letter, a copy of which is attached hereto. The Town requests a meeting with Sciaba and AMMIC as soon as possible.

The Town hereby reserves all statutory and contractual rights to remedy Sciaba's breach, including, but not limited to, the termination of Sciaba's contract in accordance with the applicable provisions of the general contract. The Town further reserves all its rights under the contract documents.

If you have any questions, please do not hesitate to contact me. The Town looks forward to your prompt reply.

Very truly yours,

Thomas W. McEnaney

TWM/rlf
Enc.
cc:    Board of Selectmen
       School Building Committee
       Mr. Lee P. Dore, Assoc. AIA, CSI
195659/NBRO/0017



**E.J. SCIABA
CONTRACTING
COMPANY, INC.**

May 30, 2003

Robert O'Neill
Superintendent of Schools
North Brookfield Public Schools
10 New School Drive
North Brookfield, MA 01535

      *Re:*   *North Brookfield Intermediate & Senior High School Project*
           *DW Project No.:*   *00-404*
           *Surety:*          *American Manufacturers Mutual Insurance Co.*
           *Bond No.:*      *3SE 057 856*
           *Claim No.:*     *167-SE-002-989*

Dear Mr. O'Neill:

      Due to circumstances beyond our control, we regret to advise you that we are unable to complete the captioned contract. We, accordingly, hereby irrevocably acknowledge that we are declaring a voluntary default for convenience on said contract and waive any notice required under the contract documents.

      We request that you discuss with our surety the matter of completing this contract.

                       Very truly yours,

                     E.J. SCIABA CONTRACTING COMPANY, INC.

                     Edward J. Sciaba, Jr.
                     President

BOS1 #1343331 v1
131261.00002

# THE AMERICAN INSTITUTE OF ARCHITECTS



Bond No. 3SE057856

*AIA Document A312*

# Performance Bond

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

**CONTRACTOR (Name and Address):**
E.J. SCIABA CONTRACTING COMPANY, INC.
18 Wolcott Street

Readville, MA 02137

**SURETY (Name and Principal Place of Business):**
AMERICAN MANUFACTURERS MUTUAL INSURANCE
COMPANY
One Kemper Drive
Long Grove, IL 60049

**OWNER (Name and Address):**
THE TOWN OF NORTH BROOKFIELD, OFFICE OF THE
SUPERINTENDENT OF SCHOOLS,
10 New School Drive
North Brookfield, MA 01535

**CONSTRUCTION CONTRACT**
Date:
Amount: Thirteen Million Two Hundred Twenty-Two Thousand and 00/100 Dollars ($13,222,000.00)
Description (Name and Location): North Brookfield Jr./Sr. High School, North Brookfield, MA

**BOND**
Date (Not earlier than Construction Contract Date):
Amount: Thirteen Million Two Hundred Twenty Two Thousand and 00/100 Dollars ($13,222,000.00)
Modifications to this Bond:          ☒ None          ☐ See Page 3

**CONTRACTOR AS PRINCIPAL**
Company:          (Corporate Seal)
E.J. SCIABA CONTRACTING COMPANY, INC.

Signature:
Name and Title:,

EDWARD J. SCIABA, JR.
PRESIDENT

(Any additional signatures appear on page 3)

**SURETY**
Company:          (Corporate Seal)
AMERICAN MANUFACTURERS MUTUAL INSURANCE
COMPANY

Signature:
Name and Title: Jean Brooker, Attorney-in-Fact

*(FOR INFORMATION ONLY—Name, Address and Telephone)*
**AGENT or BROKER:**
Aon Risk Services, Inc. of Massachusetts
99 High Street
Boston, MA 02110
(617) 482-3100

**OWNER'S REPRESENTATIVE (Architect, Engineer or other party):**

AIA DOCUMENT A312 • PERFORMANCE BOND AND PAYMENT BOND • DECEMBER 1984 ED. • AIA ®
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W., WASHINGTON, D.C. 20006
THIRD PRINTING • MARCH 1987

A312-1984   1

**1** The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference.

**2** If the Contractor performs the Construction Contract, the Surety and the Contractor shall have no obligation under this Bond, except to participate in conferences as provided in Subparagraph 3.1.

**3** If there is no Owner Default, the Surety's obligation under this Bond shall arise after:

   **3.1** The Owner has notified the Contractor and the Surety at its address described in Paragraph 10 below that the Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with the Contractor and the Surety to be held not later than fifteen days after receipt of such notice to discuss methods of performing the Construction Contract. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default; and

   **3.2** The Owner has declared a Contractor Default and formally terminated the Contractor's right to complete the contract. Such Contractor Default shall not be declared earlier than twenty days after the Contractor and the Surety have received notice as provided in Subparagraph 3.1; and

   **3.3** The Owner has agreed to pay the Balance of the Contract Price to the Surety in accordance with the terms of the Construction Contract or to a contractor selected to perform the Construction Contract in accordance with the terms of the contract with the Owner.

**4** When the Owner has satisfied the conditions of Paragraph 3, the Surety shall promptly and at the Surety's expense take one of the following actions:

   **4.1** Arrange for the Contractor, with consent of the Owner, to perform and complete the Construction Contract; or

   **4.2** Undertake to perform and complete the Construction Contract itself, through its agents or through independent contractors; or

   **4.3** Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and the contractor selected with the Owner's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Construction Contract, and pay to the Owner the amount of damages as described in Paragraph 6 in excess of the Balance of the Contract Price incurred by the Owner resulting from the Contractor's default; or

   **4.4** Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:

      **.1** After investigation, determine the amount for

which it may be liable to the Owner and, as soon as practicable after the amount is determined, tender payment therefor to the Owner; or

      **.2** Deny liability in whole or in part and notify the Owner citing reasons therefor.

**5** If the Surety does not proceed as provided in Paragraph 4 with reasonable promptness, the Surety shall be deemed to be in default on this Bond fifteen days after receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond, and the Owner shall be entitled to enforce any remedy available to the Owner. If the Surety proceeds as provided in Subparagraph 4.4, and the Owner refuses the payment tendered or the Surety has denied liability, in whole or in part, without further notice the Owner shall be entitled to enforce any remedy available to the Owner.

**6** After the Owner has terminated the Contractor's right to complete the Construction Contract, and if the Surety elects to act under Subparagraph 4.1, 4.2, or 4.3 above, then the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract. To the limit of the amount of this Bond, but subject to commitment by the Owner of the Balance of the Contract Price to mitigation of costs and damages on the Construction Contract, the Surety is obligated without duplication for:

   **6.1** The responsibilities of the Contractor for correction of defective work and completion of the Construction Contract;

   **6.2** Additional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Paragraph 4; and

   **6.3** Liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or non-performance of the Contractor.

**7** The Surety shall not be liable to the Owner or others for obligations of the Contractor that are unrelated to the Construction Contract, and the Balance of the Contract Price shall not be reduced or set off on account of any such unrelated obligations. No right of action shall accrue on this Bond to any person or entity other than the Owner or its heirs, executors, administrators or successors.

**8** The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

**9** Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation avail-

AIA DOCUMENT A312 • PERFORMANCE BOND AND PAYMENT BOND • DECEMBER 1984 ED. • AIA ®
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W., WASHINGTON, D.C. 20006
THIRD PRINTING • MARCH 1987

A312-1984    2

able to sureties as a defense in the jurisdiction of the suit shall be applicable.

**10** Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the signature page.

**11** When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

**12  DEFINITIONS**

**12.1** Balance of the Contract Price: The total amount payable by the Owner to the Contractor under the Construction Contract after all proper adjustments have been made, including allowance to the Con-

tractor of any amounts received or to be received by the Owner in settlement of insurance or other claims for damages to which the Contractor is entitled, reduced by all valid and proper payments made to or on behalf of the Contractor under the Construction Contract.

**12.2** Construction Contract: The agreement between the Owner and the Contractor identified on the signature page, including all Contract Documents and changes thereto.

**12.3** Contractor Default: Failure of the Contractor, which has neither been remedied nor waived, to perform or otherwise to comply with the terms of the Construction Contract.

**12.4** Owner Default: Failure of the Owner, which has neither been remedied nor waived, to pay the Contractor as required by the Construction Contract or to perform and complete or comply with the other terms thereof.

**MODIFICATIONS TO THIS BOND ARE AS FOLLOWS:**

NONE

(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)

| CONTRACTOR AS PRINCIPAL | | SURETY | |
| --- | --- | --- | --- |
| Company: | (Corporate Seal) | Company: | (Corporate Seal) |
| Signature: _____ | | Signature: _____ | |
| Name and Title: | | Name and Title: | |
| Address: | | Address: | |

AIA DOCUMENT A312 • PERFORMANCE BOND AND PAYMENT BOND • DECEMBER 1984 ED. • AIA ®
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W., WASHINGTON, D.C. 20006
THIRD PRINTING • MARCH 1987

A312-1984   3



*file*

LEONARD KOPELMAN
DONALD G. PAIGE
ELIZABETH A. LANE
JOYCE FRANK
JOHN W. GIORGIO
BARBARA J. SAINT ANDRE
JOEL B. BARD
JOSEPH L. TEHAN, JR.
THERESA M. DOWDY
DEBORAH A. ELIASON
RICHARD BOWEN
DAVID J. DONESKI
JUDITH C. CUTLER
KATHLEEN E. CONNOLLY
DAVID C. JENKINS
MARK R. REICH
BRIAN W. RILEY
DARREN R. KLEIN
JONATHAN M. SILVERSTEIN

EDWARD M. REILLY
DIRECTOR WESTERN OFFICE

WILLIAM HEWIG III
JEANNE S. McKNIGHT

**KOPELMAN AND PAIGE, P. C.**

ATTORNEYS AT LAW

31 ST. JAMES AVENUE

BOSTON, MASSACHUSETTS 02116-4102

(617) 556-0007
FAX (617) 654-1735
_____
PITTSFIELD OFFICE
(413) 443-6100
_____
NORTHAMPTON OFFICE
(413) 585-8632
_____
WORCESTER OFFICE
(508) 752-0203

KATHLEEN M. O'DONNELL
SANDRA M. CHARTON
PATRICIA A. CANTOR
THOMAS P. LANE, JR.
MARY L. GIORGIO
THOMAS W. MCENANEY
KATHARINE GOREE DOYLE
GEORGE X. PUCCI
LAUREN F. GOLDBERG
JASON R. TALERMAN
JEFFREY A. HONIG
MICHELE E. RANDAZZO
GREGG J. CORBO
RICHARD T. HOLLAND
LISA C. ADAMS
ELIZABETH R. CORBO
MARCELINO LA BELLA
VICKI S. MARSH
JOHN J. GOLDROSEN
SHIRIN EVERETT
BRIAN E. GLENNON, II
JONATHAN D. EICHMAN
LAURA H. PAWLE
TODD A. FRAMPTON
JACKIE COWIN

July 23, 2003

CERTIFIED MAIL - RETURN RECEIPT REQUESTED
AND FIRST-CLASS MAIL

NO. 7099 3220 0009 7561 7421

Deborah Griffin, Esq.
Holland & Knight, LLP
10 St. James Avenue
Boston, MA 02116

NO. 7099 3220 0009 7561 7360

Bert J. Capone, Esq.
Cetrulo & Capone
2 Seaport Lane
Boston, MA  02210

Re:    Notice of Default Under General Contract
       Project:                North Brookfield Junior/Senior High School Project
       Performance Bond No.     3SE057856
       Principal:               E.J. Sciaba Contracting Company, Inc.
       Owner:                   Town of North Brookfield, Massachusetts
       Contract Date:           April 19, 2002
       Bond Amount:             $13,222,000.00

Dear Counsel:

Pursuant to paragraph 3.2 of the above-referenced Performance Bond, a copy of which is attached hereto for your review and convenience, the Town hereby provides formal notice that it has declared a contractor default on the part of E.J. Sciaba Contracting Company, Inc. ("Sciaba"), and formally terminates Sciaba's right to complete the contract described in said bond.  As you know, in a letter dated July 2, 2003, the Town notified you that it was considering

PRINTED ON RECYCLED PAPER

KOPELMAN AND PAIGE, P.C.

<u>CERTIFIED MAIL - RETURN RECEIPT REQUESTED</u>
<u>AND FIRST CLASS MAIL</u>
Deborah Griffin, Esq.
Bert J. Capone, Esq.
July 23, 2003
Page 2

declaring a contractor default pursuant to paragraph 3.1 of the Performance Bond.  A copy of said letter is attached hereto for your review and information.  The Town now calls upon American Manufacturers Mutual Insurance Company ("AMMIC"), as surety, to fulfill its obligations to the Town under the Performance Bond.  This declaration of default is based upon Sciaba's voluntary default, as set forth in its May 30, 2003 letter, a copy of which is attached hereto.

Finally, please be advised that the Town hereby reserves all of its statutory and contractual rights to remedy Sciaba's breach and all rights under the contract documents.

Please contact me if you wish to discuss AMMIC's remedy of Sciaba's default.

Very truly yours,

Thomas W. McEnaney

TWM/rlf
Enc.
cc:    Board of Selectmen
       School Building Committee
       Mr. Lee P. Dore, Assoc. AIA, CSI

196667/NBRO/0001



## COMPLETION CONTRACT

THIS COMPLETION CONTRACT (the "Completion Contract") is entered into this _____ day of _____, 2003, by and between the Town of North Brookfield (the "Town") and _____ (the "Completion Contractor").

### RECITALS:

WHEREAS, on or about April 19, 2002, E.J. Sciaba Contracting Co., Inc. (the "Former Contractor"), and the Town entered into a contract (the "Original Contract") for construction of the Junior/Senior High School, North Brookfield, Massachusetts (the "Project"), in accordance with the terms and provisions of the Original Contract, including all contract documents forming a part of the Original Contract, as amended;

WHEREAS, the Former Contractor voluntarily defaulted or otherwise indicated its inability to perform the Project, and the Owner has called upon the Surety to fulfill its obligations as surety under the terms of the Performance Bond;

WHEREAS, the Town has terminated the right of the Former Contractor to perform the Original Contract; and

WHEREAS, the Town and the Completion Contractor desire to enter into this Completion Contract under the terms and conditions hereinafter set forth;

NOW, THEREFORE, the Town and the Completion Contractor, for and in consideration of the mutual obligations and promises hereinafter set forth, do contract and agree as follows:

### AGREEMENTS:

1.    **Completion Contract Documents.**  This Completion Contract consists of the terms and provisions contained herein and the Original Contract, including the Project Schedule, all General, Supplementary and Special Conditions, drawings, specifications, forms, addenda and documents forming a part of the Original Contract, and any approved change orders, construction change directives, amendments and modifications thereto, the scope of work set forth in the Request for Proposals pursuant to which the Completion Contractor bid and was selected, and the items of deficient work listed in Exhibit A hereto and all subsequently approved amendments

1

and modifications thereto, all of which are incorporated herein by reference and which are hereinafter referred to collectively as the "Contract Documents."

2.    **Strict Compliance.**  The Completion Contractor shall be bound to the Town by all of the terms and provisions of the Contract Documents, including administrative as well as technical provisions, and shall strictly comply therewith in all respects.

3.    **Work to be Performed.**  The Completion Contractor shall furnish and pay for all labor, materials, services and equipment and shall do everything else necessary to perform and satisfactorily complete the Original Contract as required by the Contract Documents as defined above.

4.    **Time for the Performance of the Work.**  The Completion Contractor shall commence work within five (5) days after receipt of a written Notice to Proceed issued by the Town, and shall substantially complete all work in accordance with the terms and conditions of the Contract Documents on or before April 30, 2004, except that the completion of Phase 4 parking lot and related work that, under Section 3.3 of the Original Contract (prior to any time extensions), was required to be performed by "17 November 2003" shall commence between the end of the 2003-04 school year and July 1, 2004, and shall be complete on or before August 1, 2004.  Subject to allowable time extensions as provided under the terms of the Original Contract, if the Completion Contractor fails to complete the work under the Completion Contract in the times allowed by this paragraph, the Completion Contractor is liable to the Town for all liquidated damages as provided for under the Original Contract on account of the Completion Contractor's failure to complete such work by the date of completion set forth herein.

5.    **Price.**  The Town shall pay to the Completion Contractor and the Completion Contractor agrees to receive and accept $_____ (the "Fixed Price") as full compensation for the performance and completion of the work as described in the Contract Documents.  Future applications for payment shall be made based upon the Completion Contractor's schedule of values to be submitted within 10 days after receipt of a Notice to Proceed.  The Price includes the cost of all corrective work performed by the Completion Contractor for the correction of defects, if any, in the work performed by the Former Contractor.

6.    **Performance and Payment Bonds.**  The Completion Contractor shall provide the Town with Performance and Payment Bonds each in a penal sum equal to the Fixed Price in a form acceptable to the Town prior to the Completion Contractor commencing work.  The Completion Contractor's surety must be a commercial surety company currently listed with the U.S. Department of the Treasury and licensed to conduct business in the Commonwealth of Massachusetts.

7.    **Defects In Work.**  The Completion Contractor shall be responsible for, and shall remedy, any and all defects in the work which has been performed by the Former Contractor or any of its subcontractors or materialmen or is performed by the Completion Contractor or any of the Completion Contractor's subcontractors or materialmen.

8.    **Whole Agreement.**  This Completion Contract contains the entire understandings and agreements of the parties hereto.  All oral or written agreements prior to the effective date of this Completion Contract and which relate to this Completion Contract and the matters set forth herein are declared null and void.  Any modification of this Completion Contract must be made in writing and executed by the parties hereto.

9.    **Interpretation.**  In the event that there is any provision of this Completion Contract which is inconsistent or conflicting with any other documents forming a part of this Completion Contract, including but not limited to the Original Contract referred to herein, the terms and conditions of this Completion Contract shall govern and control.

10.    **Governing Law.**  This Completion Contract is executed pursuant to and governed by the laws of the Commonwealth of Massachusetts.

11.    **Notice.**  Any notice required to be made under the terms of this Completion Contract shall be deemed made if either party transmits such notice via facsimile and first class mail, postage pre-paid, as follows:

As to the Completion Contractor:

Fax:
Telephone:

As to the Town:

Town of North Brookfield
10 New School Street
North Brookfield, MA  01535
Fax:  (508) ___-_____
Telephone:    (508) ___-_____

With a copy to:
Thomas W. McEnaney, Esq.
Kopelman and Paige, P.C.
31 St. James Avenue
Boston, MA  02116-4102
Fax No.:  (617) 654-1735
Telephone:    (617) 556-0007

12.    **Construction of Contract.**  It is understood and agreed by the Surety and the Completion Contractor that this Completion Contract shall be construed without any regard to any presumption or other rule requiring construction against the party causing this Completion

3

Contract, or any Exhibits attached to this Completion Contract, to be drafted.

      13.    **Execution in Counterparts.**  This Completion Contract may be executed in one or more counterparts, each of which shall be deemed to be an original.

[page ends here]

IN WITNESS WHEREOF, the parties hereto have affixed their hands and seals to this Completion Contract the day and year first set forth above, and the individuals who execute this Completion Contract personally represent and warrant that they have full authority to execute this Completion Contract on behalf of the respective parties.


**WITNESS:**

                                                          _____

By:                                                  (SEAL)

Title:


**WITNESS:**                                              **Town of North Brookfield**

By:                                                  (SEAL)

Title:

BOS1 #1362769 v2
431261.00002

5

Exhibit A

Items of Deficient Work of Former Contractor





## COMPLETION CONTRACT

THIS COMPLETION CONTRACT (the "Completion Contract") is entered into this 15 day of Dec , 2003, by and between the Town of North Brookfield (the "Town") and Fontaine Bros., Inc. (the "Completion Contractor").

### RECITALS:

WHEREAS, on or about April 19, 2002, E.J. Sciaba Contracting Co., Inc. (the "Former Contractor"), and the Town entered into a contract (the "Original Contract") for construction of the Junior/Senior High School, North Brookfield, Massachusetts (the "Project"), in accordance with the terms and provisions of the Original Contract, including all contract documents forming a part of the Original Contract, as amended;

WHEREAS, the Former Contractor voluntarily defaulted or otherwise indicated its inability to perform the Project, and the Owner has called upon the Surety to fulfill its obligations as surety under the terms of the Performance Bond;

WHEREAS, the Town has terminated the right of the Former Contractor to perform the Original Contract; and

WHEREAS, the Town and the Completion Contractor desire to enter into this Completion Contract under the terms and conditions hereinafter set forth;

NOW, THEREFORE, the Town and the Completion Contractor, for and in consideration of the mutual obligations and promises hereinafter set forth, do contract and agree as follows:

### AGREEMENTS:

1.    **Completion Contract Documents.**  This Completion Contract consists of the terms and provisions contained herein and the Original Contract, including the Project Schedule, all General, Supplementary and Special Conditions, drawings, specifications, forms, addenda and documents forming a part of the Original Contract, and any approved change orders, construction change directives, amendments and modifications thereto, the scope of work set forth in the Request for Proposals pursuant to which the Completion Contractor bid and was selected, and the items of deficient work listed in the Deficiency Log dated August 29, 2003 and the Steel Field Repair Log dated August 29, 2003, and all subsequently approved amendments and modifications thereto, all of which are incorporated herein by reference and which are hereinafter referred to collectively as the "Contract Documents."

2.    **Strict Compliance.**  The Completion Contractor shall be bound to the Town by all of the terms and provisions of the Contract Documents, including administrative as well as technical provisions, and shall strictly comply therewith in all respects.

3.    **Work to be Performed.**  The Completion Contractor shall furnish and pay for all labor, materials, services and equipment and shall do everything else necessary to perform and satisfactorily complete the Original Contract as required by the Contract Documents as defined above.

4.    **Time for the Performance of the Work.**  The Completion Contractor shall commence work within five (5) days after receipt of a written Notice to Proceed issued by the Town, and shall substantially complete all work in accordance with the terms and conditions of the Contract Documents on or before August 26, 2004, except that the completion of Phase 4 parking lot and related work that, under Section 3.3 of the Original Contract (prior to any time extensions), was required to be performed by "17 November 2003" shall be complete on or before October 11, 2004.  Subject to allowable time extensions as provided under the terms of the Original Contract, if the Completion Contractor fails to complete the work under the Completion Contract in the times allowed by this paragraph, the Completion Contractor is liable to the Town for all liquidated damages as provided for under the Original Contract on account of the Completion Contractor's failure to complete such work by the date of completion set forth herein.  Nothing herein shall be construed as limiting in any way the right of the Town to determine, not later than June 15, 2004 that reasonable grounds exist to conclude that the new buildings will not be completed by August 26, 2004, in which event the Town has the absolute right to refuse turnover of the existing building to Completion Contractor for demolition.  In the event that the Town exercises its right to suspend the start date for the demolition of the existing building, the Town shall provide Fontaine with a reasonable time extension to the Phase 4 completion date. If the Town suspends the start date of the demolition of the existing building, Fontaine shall not be entitled to additional compensation for any additional costs it may incur as a result of such suspension.

5.    **Price.**  The Town shall pay to the Completion Contractor and the Completion Contractor agrees to receive and accept $11,672,296 (the "Fixed Price") as full compensation for the performance and completion of the work as described in the Contract Documents, except as otherwise provided herein.  Future applications for payment shall be made based upon the Completion Contractor's schedule of values to be submitted within 10 days after receipt of a Notice to Proceed.

6.    **Additional Defects.**  The Completion Contractor shall be entitled to additional compensation on a time and materials basis, in accordance with the terms hereof, for correcting defects in the work performed by the Former Contractor that are not shown in the Contract Documents as defined above or which are the result of deterioration occurring after the date of the Deficiency Log, or which were not or could not have been observed by the Completion Contractor in the course of its visits to the Project prior to the submission of its bid to the Surety  (the amounts for which the Completion Contractor is entitled to payment on a time and materials basis being the "T&M Price").  The T&M Price shall consist of the actual costs paid by the Completion Contractor

for such work, less all discounts, rebates, and salvages that shall be taken by the Completion Contractor, plus a fifteen percent (15%) markup which shall be inclusive of the Completion Contractor's overhead and profit. The actual costs shall include only the following: the cost of all materials used or consumed in performance, including sales tax and cost of delivery; cost of labor, including social security, old age and unemployment insurance, fringe benefits, and workers' compensation insurance for persons working at the Project site (but not for project management personnel, corporate management personnel or any persons whose regular office is located other than at the Project site); bond premiums; and rental cost of equipment and machinery. The Completion Contractor shall not include in the T&M Price the cost of any work for which a subcontractor, whose subcontract is assigned to the Completion Contractor by the Former Contractor's Surety, is liable under such assigned contract.

7. **Performance and Payment Bonds.** The Completion Contractor shall provide the Town with Performance and Payment Bonds each in a penal sum equal to the Fixed Price in a form acceptable to the Town prior to the Completion Contractor commencing work. The Completion Contractor's surety must be a commercial surety company currently listed with the U.S. Department of the Treasury and licensed to conduct business in the Commonwealth of Massachusetts.

8. **Whole Agreement.** This Completion Contract contains the entire understandings and agreements of the parties hereto. All oral or written agreements prior to the effective date of this Completion Contract and which relate to this Completion Contract and the matters set forth herein are declared null and void. Any modification of this Completion Contract must be made in writing and executed by the parties hereto.

9. **Interpretation.** In the event that there is any provision of this Completion Contract which is inconsistent or conflicting with any other documents forming a part of this Completion Contract, including but not limited to the Original Contract referred to herein, the terms and conditions of this Completion Contract shall govern and control.

10. **Governing Law.** This Completion Contract is executed pursuant to and governed by the laws of the Commonwealth of Massachusetts.

11. **Notice.** Any notice required to be made under the terms of this Completion Contract shall be deemed made if either party transmits such notice via facsimile and first class mail, postage pre-paid, as follows:

   As to the Completion Contractor:

   Fontaine Bros., Inc.
   510 Cottage Street
   Springfield, MA 01104
   Fax: 413-734-1881
   Telephone:   413-781-2020
   Attn: Christopher J. Fontaine

C:\My Documents\R P G\FONTAINE\Fontainecompletionagreement.revised.doc

As to the Town:

Robert O'Neill
Superintendent of Schools
Town of North Brookfield
10 New School Street
North Brookfield, MA  01535
Fax: (508) _____

With a copy to:
Thomas W. McEnaney, Esq.
Kopelman and Paige, P.C.
31 St. James Avenue
Boston, MA  02116-4102
Fax No.:  (617) 654-1735
Telephone:     (617) 556-0007

12.    **Construction of Contract.**  It is understood and agreed by the Town and the Completion Contractor that this Completion Contract shall be construed without any regard to any presumption or other rule requiring construction against the party causing this Completion Contract, or any Exhibits attached to this Completion Contract, to be drafted.

13.    **Execution in Counterparts.**  This Completion Contract may be executed in one or more counterparts, each of which shall be deemed to be an original.

IN WITNESS WHEREOF, the parties hereto have affixed their hands and seals to this Completion Contract the day and year first set forth above, and the individuals who execute this Completion Contract personally represent and warrant that they have full authority to execute this Completion Contract on behalf of the respective parties.

**WITNESS:**

**Fontaine Bros., Inc.**

By: _____ (SEAL)

Title: _____

**WITNESS:**

**Town of North Brookfield**

By: _____ (SEAL)

Title: _CHAIRMAN, BOARD of SELECTMEN_

C:\My Documents\R P G\FONTAINE\Fontainecompletionagreement.revised.doc