UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY,<br>Plaintiff,<br><br>vs.<br><br>TOWN OF NORTH BROOKFIELD,<br>Defendant. | Civil Action No. 03-40266 NMG |

AFFIDAVIT OF DEBORAH S. GRIFFIN IN SUPPORT OF THE
OPPOSITION OF AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY
TO MOTION TO REQUIRED PLAINTIFF
TO DEPOSIT FUNDS WITH COURT

I, Deborah S. Griffin, am an attorney in the Boston office of Holland & Knight LLP and counsel of record for American Manufacturers Mutual Insurance Company ("AMMIC") in this matter. I have personal knowledge of the following, except where stated to be upon information and belief. I make this affidavit in support of the Opposition of AMMIC to the motion (the "Motion") filed by plaintiff-in-counterclaim, the Town of North Brookfield ("North Brookfield") seeking to require AMMIC to deposit $1,600,000 with the Court.

1.    Attached hereto as Exhibit A is a true copy of an email I sent to North Brookfield's attorney, Thomas McEnaney of Kopelman & Paige, P.C., dated August 20, 2003, with its attachment. This email alerted North Brookfield that AMMIC was asserting partial defenses relating to North Brookfield's improper payments to Sciaba in May, 2003.

2.    Attached hereto as Exhibit B is a true copy of a letter I sent to Mr. McEnaney on November 12, 2003, with its enclosures. By this letter I transmitted to North Brookfield an original completion contract executed by an approved completion contractor, Fontaine Bros, and

its bonds. The statement on page 2 of that letter that "Fontaine has transmitted these documents to us with the caveat that they must have a Notice to Proceed by November 14" was true.

3.      For more than a week leading up to my November 12 letter, I had been in communication with Mr. McEnaney regarding the imminence of our delivery of a tendered completion contract, which I was in the process of finalizing with Fontaine and its counsel. Much of that communication was by email. Attached hereto as Exhibit C are copies of emails exchanged between Mr. McEnaney and myself between November 4 and November 11, 2003. Among other things, these emails indicate that North Brookfield was offering to go forward with the completion contract while reserving its rights with respect to the unresolved issues between AMMIC and North Brookfield, to wit, "the surety's claim for a pro tanto discharge and the Town's claims for additional costs . . .." Exhibit C, 11/4/03 12:03:30 p.m. email from Mr. McEnaney.

4.      Attached hereto as Exhibit D is a true copy of an email I sent to Mr. McEnaney on November 21, 2003, with its enclosures.

5.      On December 3, 2003, I delivered to Mr. McEnaney checks in the aggregate amount of $3,197,996.17, of which $2,538,838.37 was delivered unconditionally and $659,157.80 was delivered under a reservation of rights, as stated in my letter of November 21 (Exhibit D).

6.      I was aware that, between November 12, 2003, when AMMIC tendered Fontaine's completion contract, and December 15, 2003, when North Brookfield finally signed a completion contract with Fontaine, Fontaine's contract price increased by $275,000. This price increase was due to North Brookfield's not issuing a notice to proceed to Fontaine by its stated deadline of November 14, which pushed certain work into colder weather thereby increasing its

2

cost, and North Brookfield's requirement that Fontaine accelerate its work to achieve substantial completion earlier than the dates contained in the signed completion agreement tendered on November 12, which increased its costs further. This price increase was communicated to me and Mr. McEnaney by Fontaine's counsel Robert Garrity, by letter dated December 5, 2003, a copy of which is attached hereto as Exhibit E.

7.      Between December 9 and December 11, 2003, I had a series of communications with Mr. McEnaney regarding funding of the additional $275,000. Even though it was AMMIC's position that North Brookfield was responsible for the entire increase, AMMIC agreed to deliver an additional $125,000 to North Brookfield, under a reservation of rights, in order to encourage North Brookfield to execute a contract and issue a notice to proceed, provided North Brookfield supplied the remaining funds. Mr. McEnaney informed me that North Brookfield would do so. I delivered AMMIC's check for $125,000 to Mr. McEnaney on December 15, 2003.

Signed under the penalties of perjury this 19th day of March, 2004.

_Deborah S. Griffin_
Deborah S. Griffin

# 1732080_v1
431261.00002

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AMERICAN MANUFACTURERS MUTUAL
INSURANCE COMPANY,
                        Plaintiff,

vs.                                                    Civil Action No. 03-40266 NMG

TOWN OF NORTH BROOKFIELD,
                        Defendant.

**EXHIBIT A TO AFFIDAVIT OF DEBORAH S. GRIFFIN IN SUPPORT OF
THE OPPOSITION OF AMERICAN MANUFACTURERS MUTUAL
INSURANCE COMPANY TO MOTION TO REQUIRE
PLAINTIFF TO DEPOSIT FUNDS WITH COURT**

## Griffin, Deborah S (BOS - X72044)

| | |
|---|---|
| **From:** | Griffin, Deborah S (BOS - X72044) |
| **Sent:** | Wednesday, August 20, 2003 4:07 PM |
| **To:** | 'THOMAS McEnaney' |
| **Cc:** | 'Stephen.Beatty@kemperinsurance.com'; 'Anastasio, Rich'; Bouchard, Matthew C (BOS - X72023) |
| **Subject:** | North Brookfield Tender Agreement -- Kemper Sciaba_v1.DOC |

I hope you had a good vacation. I am attaching a draft of a tender agreement between American Manufacturers and the Town of North Brookfield with respect to the Junior/Senior High School project. Please note that the table of figures recapping the status of contract funds in paragraph 1 of the draft is incomplete, pending determination of the amount owed under Construction Change Directive #3. It may change further if additional issues emerge during the bid process.

In addition, you will see that the surety asserts several partial defenses that will have an impact upon the ultimate amount the surety pays or tenders (if any) pursuant to the agreement. I hope the basis for the defenses is clear from the recitals. The most significant defense relates to the payments that the town released to Sciaba during the last 10 days of May, when it knew that Sciaba's performance was seriously deficient and that making such payments would leave insufficient funds in the hands of the town to complete the work if Sciaba was terminated. Of the $700,000+ paid, Sciaba only used about $100,000 to pay job costs. Thus, the making of those payments in those circumstances impaired the contract funds as collateral to the surety, prejudiced the surety, and effected a partial, or *pro tanto*, discharge of the surety's liability to the town under its bond. The concept of *pro tanto* discharge in such situations is well recognized. *See, e.g., Balboa Ins. Co. v. United States*, 775 F.2d 1158 (Fed. Cir. 1985); *United Pacific Ins. Co. v. United States*, 16 Cl. Ct. 555 (2989); *Ohio Casualty Ins. Co. v. United States*,12 Cl. Ct. 590 (1987); *Walters Air Conditioning Co. v. Firemen's Fund Ins. Co.*, 252 So. 2d 919 (La. App. 1971). This is an issue the surety would like to discuss with the town in hopes of reaching an overall agreement.

As you may know, there was a pre-bid meeting today at the job site, at which prospective bidders obtained the request for proposals, had a walk-through of the project and were able to ask questions. It is my understanding that bids are due September 8, with an expected notice to proceed by September 15, 2003.

In light of this time-table, ideally the surety and the town should resolve any issues concerning the terms of the tender in advance of September 15. The tender amount will, at least in part, reflect the bids that come in, and thus cannot be pinned down until the bids are in. However, we should be able to reach agreement on the amount of the adjustment on account of the surety's defenses, as well as the other terms of the tender agreement, even before the bids are in.

I look forward to hearing from you.



North Brookfield
Tender Agreem...

Deborah S. Griffin
Holland & Knight LLP
10 St. James Avenue
Boston, MA 02116
617-305-2044
fax 617-523-6850
deborah.griffin@hklaw.com

## TENDER AGREEMENT AND RELEASE OF SURETY

This Agreement (the "Agreement") is made and entered into this ___ day of August, 2003, by and between American Manufacturers Mutual Insurance Company (the "Surety") and the Town of North Brookfield, Massachusetts (the "Obligee").

## RECITALS

WHEREAS, on or about April 19, 2002, E.J. Sciaba Contracting Co., Inc. (the "Former Contractor"), and the Obligee entered into a contract (the "Original Contract") for the Former Contractor to construct the Junior/Senior High School, North Brookfield, Massachusetts (the "Project"), in accordance with the terms and provisions of the Original Contract, including all contract documents forming a part of the Original Contract, as amended;

WHEREAS, on or about _____, 2002, as required by law and under the terms of the Original Contract, the Former Contractor and the Surety made, executed and delivered to the Obligee a Performance Bond and a Payment Bond, Bond No. 3SE 057 856 (collectively, the "Bonds"), each in the original penal sum of $13,222,000;

WHEREAS, on or about April 23, 2003, the Obligee sent a letter to the Former Contractor and the Surety enumerating numerous breaches of the Original Contract on the part of the Former Contractor;

WHEREAS, on or about May 21, 2003, at a meeting among representatives of the Obligee, the Surety and the Former Contractor, the Obligee again asserted numerous breaches of the Original Contract on the part of the Former Contractor;

WHEREAS, on or about May 21, 2003, and May 27, 2003, the Obligee paid the Former Contractor $287,556.28 and $443,733.76 respectively, on account of the Original Contract (the "May Payments"), without the knowledge or consent of the Surety;

WHEREAS, the Surety has been able to identify only $100,700.49 of the May Payments as having been received by subcontractors and suppliers of the Former Contractor on account of the Project, leaving $630,589.55 of the May Payments (the "Alleged Overpayment") paid by the Obligee to the Former Contractor that the Surety believes the Former Contractor failed to apply to the costs and liabilities it incurred in connection with the Project;

WHEREAS, the Former Contractor voluntarily defaulted or otherwise indicated its inability to perform the Project, and the Obligee has terminated the right of the Former Contractor to perform under the Original Contract and called upon the Surety to fulfill its obligations as surety under the terms of the Performance Bond;

WHEREAS, the Surety, in conjunction with the Obligee, obtained a Replacement Contract (the "Replacement Contract"), a copy of which is attached hereto as <u>Exhibit A</u>, for completion of the Contract work from _____ (the "Replacement Contractor"), for an agreed price of $_____;

1

WHEREAS, the Surety contends that payment of the May Payments by the Obligee was improper and prejudicial to the Surety to the extent of the Alleged Overpayment, providing the Surety with a partial discharge under its Performance Bond in the amount of $630,589.55;

WHEREAS, the Surety acknowledges that the schedule for completion set forth in the Replacement Contract affords time for completion beyond the current date(s) in the Original Contract, as amended, but contends that the Former Contractor was entitled under the Original Contract to additional time extensions; and

WHEREAS, the parties wish to resolve all outstanding claims, defenses and disputes between them with respect to the Bonds;

NOW, THEREFORE, in consideration of the agreements and undertakings hereinafter set forth, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Obligee and the Surety agree as follows:

## AGREEMENTS

1.  The Obligee and the Surety agree that as of September 1, 2003, the status of the contract price and contract funds under the Original Contract is as follows:

| | |
|---|---:|
| Original Contract Amount | $ 13,222,000.00 |
| Executed Change Orders | +132,829.28 |
| Adjusted Contract Amount | 13,354,829.28 |
| Monies earned through Requisition 14 | 5,644,481.25 |
| Less Retainage held through Requisition 14 | -282,224.08 |
| Less Monies Paid to Former Contractor or direct payment claimants | -5,155,969.10 |
| **Contract Balance**  (Including Retention & Earned and Unpaid  Monies) | 8,198,860.18 |

| **Pending Change Orders & Adjustments** | |
|---|:---:|
| Construction Change Directive 3 | TBD |
| **Total Available Contract Balance** | **$ 8,198,860.18 +** CCD3 |

2.  The Surety hereby tenders to the Obligee, and the Obligee accepts and will execute, the Replacement Contract with the Replacement Contractor for completion of the Contract. The Obligee will accept from the Replacement Contractor performance and payment bonds in favor

of the Obligee, issued by a company authorized to issue surety bonds in the Commonwealth of Massachusetts, guaranteeing the Replacement Contractor's performance the Replacement Contractor with respect to the Replacement Contract.

3.    The Obligee will assume and will be solely responsible for all costs and obligations of Contract administration in the completion of the Project with the Replacement Contractor.

4.    The Surety hereby tenders, and the Obligee hereby accepts, payment in the amount of $_____, which represents (a) the difference between the agreed price under the Replacement Contract and the Total Available Contract Balance as set forth above, less (b) an adjustment to resolve the Surety's defenses based upon the Alleged Overpayment and claims for additional time extensions.

5.    Insofar as the Obligee has any right, title or interest therein, the Obligee agrees that the Replacement Contractor shall have the right to use, without charge, any of the equipment, materials and appurtenances furnished or supplied by the Former Contractor which may be stored on or about the premises of the Project site, or stored off site under the terms of the Original Contract or applicable law, or materials which may have been fabricated for use in connection with the Original Contract, whether or not presently upon the Project site.

6.    The Obligee hereby releases and forever discharges the Surety from and against any and all claims, demands, causes of action, damages or expenses arising out of or in any way related to the Contract or the Bond.

7.    It is agreed that the Surety will remain liable under the Payment Bond (Bond No. 3SE 057 856) it issued to the Obligee on behalf of the Former Contractor with respect to the Project.

Nothing in this Agreement constitutes a waiver of the penal sum or an increase in the liability of the Surety under the Payment Bond. Nothing in this Agreement constitutes the Replacement Contractor a principal of the Surety under the Payment Bond.

8. This Agreement is solely for the benefit of the Obligee and the Surety. The Obligee and the Surety do not intend by any provision of this Agreement to create any rights in or increase the rights of any third-party beneficiaries, nor to confer any benefit upon or enforceable rights under this Agreement or otherwise upon anyone other than the Obligee and the Surety. Specifically, the Obligee and the Surety acknowledge that nothing in this Agreement shall extend or increase the rights of any third-party claimants or the liabilities or obligations of the Surety under the Bonds.

9. It is hereby agreed that by their execution of this Agreement neither the Surety nor the Obligee intends to waive or forfeit (a) any rights or claims that may be asserted against the Former Contractor under either the Contract or the General Indemnity Agreement between the Surety and the Former Contractor; (b) any rights or defenses with respect to any claim relating in any way to the Contract, that has been or may hereafter be asserted by the Surety against any person other than the Obligee or against the Surety by any person other than the Obligee.

10. This Agreement constitutes the whole of the understanding, discussions, and agreements by and between the Obligee and the Surety. The terms and provisions of this Agreement are contractual and not mere recitals. The Obligee and the Surety acknowledge that there have been no oral, written or other agreements of any kind as a condition precedent to or to induce the execution and delivery of this Agreement. Any written or oral discussions conducted prior to the effective date of this Agreement shall not in any way vary or alter the terms of this Agreement.

11. This Agreement shall not be changed, amended or altered in any way except in writing and executed by both the Obligee and Surety.

12. This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original.

13. This Agreement shall be governed by and controlled by the laws of the Commonwealth of Massachusetts.

14. Any notices which are required to be given by the terms of this Agreement or the Bonds shall be made as follows:

<u>As to the Obligee</u>:
Via certified mail, return receipt requested,
   postage prepaid and/or by telefax to:

Robert O'Neill
Superintendent of Schools
Town of North Brookfield
10 New School Street
North Brookfield, MA 01535
Fax: (508) _____

<u>With a copy to</u>:
Thomas W. McEnaney, Esq.
Kopelman and Paige, P.C.
31 St. James Avenue
Boston, MA 02116-4102
Fax: (617) 654-1735

<u>As to the Surety</u>:
Via certified mail, return receipt requested,
   postage prepaid and/or by telefax to:

Stephen J. Beatty, Esq.
Senior Surety Counsel
Kemper Insurance Companies
1 Kemper Drive
Long Grove, IL 60049-0001

Fax:    (847) 320-5828

<u>With a copy to:</u>
Deborah S. Griffin, Esq.
Holland & Knight LLP
10 St. James Avenue
Boston, MA  02116
Fax No.:  (617) 523-6850

15. This Agreement is effective as of the date first written above.

16. This Agreement shall be binding upon the parties and their respective successors and assigns.

17. In the event that one or more provisions of this Agreement shall be declared to be invalid, illegal or unenforceable in any respect, unless such invalidity, illegality or unenforceability shall be tantamount to a failure of consideration, the validity, legality and enforceability of the remaining provisions contained in this Agreement shall not in any way be affected or impaired thereby.

18. It is understood and agreed by the Obligee and the Surety that this Agreement shall be construed without regard to any presumption or other rule requiring construction against the party causing this Agreement to be drafted.

IN WITNESS WHEREOF, the parties have executed this Agreement on the date indicated above, and each of the undersigned personally represent and warrant that they have the full right, power and authority to execute this Agreement on behalf of the respective parties.

Town of North Brookfield

By:    _____

Title:    _____

American Manufacturers Mutual Insurance Company

By: _____

Title: _____

BOS1 #1351171 v1
431261.00005



UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AMERICAN MANUFACTURERS MUTUAL
INSURANCE COMPANY,
                              Plaintiff,

vs.                                                    Civil Action No. 03-40266 NMG

TOWN OF NORTH BROOKFIELD,
                              Defendant.

**EXHIBIT B TO AFFIDAVIT OF DEBORAH S. GRIFFIN IN SUPPORT OF
THE OPPOSITION OF AMERICAN MANUFACTURERS MUTUAL
INSURANCE COMPANY TO MOTION TO REQUIRE
PLAINTIFF TO DEPOSIT FUNDS WITH COURT**

# HOLLAND & KNIGHT LLP

10 St. James Avenue
Boston, Massachusetts 02116

617-523-2700
FAX 617-523-6850
http://www.hklaw.com

Annapolis          Oak Brook
Atlanta            Orlando
Bethesda           Portland
Boston             Providence
Bradenton          San Antonio
Chicago            San Francisco
Fort Lauderdale    Seattle
Jacksonville       St. Petersburg
Lakeland           Tallahassee
Los Angeles        Tampa
Miami              Washington, D.C.
New York           West Palm Beach
Northern Virginia

International Offices:
Caracas*           São Paulo
Helsinki           Tel Aviv*
Mexico City        Tokyo
Rio de Janeiro     *Representative Offices

November 12, 2003

**DEBORAH S. GRIFFIN**
617-305-2044

Internet Address:
deborah.griffin@hklaw.com

**_BY HAND_**

Thomas W. McEnaney, Esq.
Kopelman & Paige, P.C.
31 St. James Avenue, 7th Floor
Boston, MA 02116

> Re:  *North Brookfield Intermediate & Senior High School Project*
>      *Surety:*          *American Manufacturers Mutual Insurance Co.*
>      *Bond No.:*        *3SE 057 856*
>      *Claim No.:*       *167-SE-002-989*

Dear Tom:

As you know, the Town and the Surety have not concluded their negotiations concerning the amounts of the Town's claims against the Surety and the Surety's defenses to those claims. We are still awaiting all the detail regarding the professional fees which your letter of November 3 indicated you have. The Surety accepts the figure of $440.00 for CCD #3 set forth in your November 3 letter. We still need to address the other issues raised in that letter, as well as my letter to you of November 5.

In the meantime, the surety has completed its review of the bids from prospective completion contractors, including revised figures submitted by each bidder as its "best and final" submittal. The surety has concluded that the submittal of Fontaine Bros., Inc., in the amount of $11,381,362.00, is the submittal that best conforms to the request for proposals at the best price.

I am enclosing two originals of the Completion Contract executed by Fontaine Bros., Inc., as well as its performance and payment bonds and Certificate of Liability Insurance. The surety urges the Town to (1) accept and

Thomas W. McEnaney, Esq.
November 12, 2003
Page 2

execute the Fontaine Bros. Completion Contract and (2) promptly issue a Notice to Proceed to Fontaine Bros. As stated in the email from Fontaine's counsel I forwarded to you yesterday, Fontaine has transmitted these documents to us with the caveat that they must have a Notice to Proceed by November 14. Taking these steps will mitigate the Town's damages resulting from Sciaba's default, as the Town is obligated to do, pending a conclusion of our negotiations.

I have received your email of earlier today in which you state, among other things, that "the Town cannot enter into a contract unless sufficient funds have been appropriated therefor" and that "the Town cannot sign any completion contract until we have the additional funds from the surety." The Surety does not accept lack of appropriation by the Town as a valid reason for the Town not to enter into the tendered contract with Fontaine. The Town has known since August 20 that the Surety believes it has valid and substantial defenses to a significant portion of the Town's claim and has known since the second week in September the approximate magnitude of the bids. There has been ample opportunity for the Town to prepare itself to execute a completion contract before all the issues between the Surety and the Town are resolved. Therefore, if the cost to the Town increases because of the Town's inability to sign the contract now and give Fontaine a Notice to Proceed, that is not an increase for which the Surety bears any responsibility.

As I stated in an email to you on November 6, 2003, the Surety understands it will have responsibility for the additional liquidated damages after the dates that were given in the RFP. It also intends to accept responsibility for the reasonable cost of addressing latent defects that were Sciaba's responsibility. Again, these issues should not be an obstacle to the Town's executing the completion contract with Fontaine.

I have received your faxes of earlier today and have forwarded them to my client. We will be studying them with a view toward identifying what amount the Surety will pay unconditionally and what amount remains in dispute. In light of the approach you have taken to quantifying the Town's claim for additional design and construction management fees, I would appreciate your sending me a copy of the Town's contract with Dore & Whittier. I will let you know if there is still additional information we need.

Please let me know what action the Town takes and provide a copy of the fully executed Contract.

Thomas W. McEnaney, Esq.
November 12, 2003
Page 3

     This letter and its enclosures are sent under a full reservation of rights on the part of American Manufacturers Mutual Insurance Company.

Very truly yours,

HOLLAND & KNIGHT LLP

Deborah S. Griffin

DSG/bsw: # 1339825_v1
431261.00002
Enclosures
cc:    Stephen J. Beatty, Esq. (w/encl.)
        Richard P. Anastasio, P.E. (w/encl.)
        Kieran B. Meagher, Esq. (w/encl.)
        Robert P. Garrity, Esq. (w/o encl.)

## COMPLETION CONTRACT

THIS COMPLETION CONTRACT (the "Completion Contract") is entered into this _____ day of _____, 2003, by and between the Town of North Brookfield (the "Town") and Fontaine Bros., Inc. (the "Completion Contractor").

### RECITALS:

WHEREAS, on or about April 19, 2002, E.J. Sciaba Contracting Co., Inc. (the "Former Contractor"), and the Town entered into a contract (the "Original Contract") for construction of the Junior/Senior High School, North Brookfield, Massachusetts (the "Project"), in accordance with the terms and provisions of the Original Contract, including all contract documents forming a part of the Original Contract, as amended;

WHEREAS, the Former Contractor voluntarily defaulted or otherwise indicated its inability to perform the Project, and the Owner has called upon the Surety to fulfill its obligations as surety under the terms of the Performance Bond;

WHEREAS, the Town has terminated the right of the Former Contractor to perform the Original Contract; and

WHEREAS, the Town and the Completion Contractor desire to enter into this Completion Contract under the terms and conditions hereinafter set forth;

NOW, THEREFORE, the Town and the Completion Contractor, for and in consideration of the mutual obligations and promises hereinafter set forth, do contract and agree as follows:

### AGREEMENTS:

1.    **Completion Contract Documents.** This Completion Contract consists of the terms and provisions contained herein and the Original Contract, including the Project Schedule, all General, Supplementary and Special Conditions, drawings, specifications, forms, addenda and documents forming a part of the Original Contract, and any approved change orders, construction change directives, amendments and modifications thereto, the scope of work set forth in the Request for Proposals pursuant to which the Completion Contractor bid and was selected, and the items of deficient work listed in the Deficiency Log dated August 29, 2003 and the Steel Field Repair Log dated August 29, 2003, and all subsequently approved amendments and modifications

thereto, all of which are incorporated herein by reference and which are hereinafter referred to collectively as the "Contract Documents."

2. **Strict Compliance.** The Completion Contractor shall be bound to the Town by all of the terms and provisions of the Contract Documents, including administrative as well as technical provisions, and shall strictly comply therewith in all respects.

3. **Work to be Performed.** The Completion Contractor shall furnish and pay for all labor, materials, services and equipment and shall do everything else necessary to perform and satisfactorily complete the Original Contract as required by the Contract Documents as defined above.

4. **Time for the Performance of the Work.** The Completion Contractor shall commence work within five (5) days after receipt of a written Notice to Proceed issued by the Town, and shall substantially complete all work in accordance with the terms and conditions of the Contract Documents on or before August 15, 2004, except that the completion of Phase 4 parking lot and related work that, under Section 3.3 of the Original Contract (prior to any time extensions), was required to be performed by "17 November 2003" shall be complete on or before October 1, 2004. Subject to allowable time extensions as provided under the terms of the Original Contract, if the Completion Contractor fails to complete the work under the Completion Contract in the times allowed by this paragraph, the Completion Contractor is liable to the Town for all liquidated damages as provided for under the Original Contract on account of the Completion Contractor's failure to complete such work by the date of completion set forth herein.

5. **Price.** The Town shall pay to the Completion Contractor and the Completion Contractor agrees to receive and accept $11,527,000 (the "Fixed Price") as full compensation for the performance and completion of the work as described in the Contract Documents, except as otherwise provided herein. Future applications for payment shall be made based upon the Completion Contractor's schedule of values to be submitted within 10 days after receipt of a Notice to Proceed.

6. **Latent Defects.** The Completion Contractor shall be entitled to additional compensation on a time and materials basis, in accordance with the terms hereof, for correcting defects in the work performed by the Former Contractor that are not shown in the Contract Documents as defined above or which were not or could not have been observed by the Completion Contractor in the course of its visits to the Project prior hereto (the amounts for which the Completion Contractor is entitled to payment on a time and materials basis being the "T&M Price"). The T&M Price shall consist of the actual costs paid by the Completion Contractor for such work, less all discounts, rebates, and salvages that shall be taken by the Completion Contractor, plus a fifteen percent (15%) markup which shall be inclusive of the Completion Contractor's overhead and profit. The actual costs shall include only the following: the cost of all materials used or consumed in performance, including sales tax and cost of delivery; cost of labor, including social security, old age and unemployment insurance, fringe benefits, and workers' compensation insurance for persons working at the Project site (but not for project management personnel, corporate management personnel or any persons whose regular office is located other than at the Project site); bond premiums; and rental cost of equipment and machinery.

2

7.    **Performance and Payment Bonds.**  The Completion Contractor shall provide the Town with Performance and Payment Bonds each in a penal sum equal to the Fixed Price in a form acceptable to the Town prior to the Completion Contractor commencing work.  The Completion Contractor's surety must be a commercial surety company currently listed with the U.S. Department of the Treasury and licensed to conduct business in the Commonwealth of Massachusetts.

8.    **Whole Agreement.**  This Completion Contract contains the entire understandings and agreements of the parties hereto.  All oral or written agreements prior to the effective date of this Completion Contract and which relate to this Completion Contract and the matters set forth herein are declared null and void.  Any modification of this Completion Contract must be made in writing and executed by the parties hereto.

9.    **Interpretation.**  In the event that there is any provision of this Completion Contract which is inconsistent or conflicting with any other documents forming a part of this Completion Contract, including but not limited to the Original Contract referred to herein, the terms and conditions of this Completion Contract shall govern and control.

10.    **Governing Law.**  This Completion Contract is executed pursuant to and governed by the laws of the Commonwealth of Massachusetts.

11.    **Notice.**  Any notice required to be made under the terms of this Completion Contract shall be deemed made if either party transmits such notice via facsimile and first class mail, postage pre-paid, as follows:

  As to the Completion Contractor:

    Fontaine Bros., Inc.
    510 Cottage Street
    Springfield, MA 01104
    Fax: 413-734-1881
    Telephone:    413-781-2020
      Attn: Christopher J. Fontaine

  As to the Town:

    Robert O'Neill
    Superintendent of Schools
    Town of North Brookfield
    10 New School Street
    North Brookfield, MA  01535
    Fax:  (508) _____

With a copy to:
Thomas W. McEnaney, Esq.
Kopelman and Paige, P.C.
31 St. James Avenue
Boston, MA 02116-4102
Fax No.: (617) 654-1735
Telephone:    (617) 556-0007

12.    **Construction of Contract.**  It is understood and agreed by the Town and the Completion Contractor that this Completion Contract shall be construed without any regard to any presumption or other rule requiring construction against the party causing this Completion Contract, or any Exhibits attached to this Completion Contract, to be drafted.

13.    **Execution in Counterparts.**  This Completion Contract may be executed in one or more counterparts, each of which shall be deemed to be an original.

IN WITNESS WHEREOF, the parties hereto have affixed their hands and seals to this Completion Contract the day and year first set forth above, and the individuals who execute this Completion Contract personally represent and warrant that they have full authority to execute this Completion Contract on behalf of the respective parties.

**WITNESS:**

_____

**Fontaine Bros., Inc.**

By: _____ (SEAL)

Title: _____

**WITNESS:**

_____

**Town of North Brookfield**

By: _____ (SEAL)

Title: _____

# 1351093_v1
431261.00002

4

# THE AMERICAN INSTITUTE OF ARCHITECTS



Executed in Four (4) Counterparts                    Bond No.    81833249

*AIA Document A311*

# Performance Bond

KNOW ALL MEN BY THESE PRESENTS: that    Fontaine Bros., Inc.

(Here insert full name and address or legal title of Contractor)

510 Cottage Street Springfield, MA  01104

as Principal, hereinafter called Contractor, and,        Federal Insurance Company

(Here insert full name and address or legal title of Surety)

3 Mountain View Road,  Warren, NJ  07059

as Surety, hereinafter called Surety, are held and firmly bound unto Town of North Brookfield

(Here insert full name and address or legal title of Owner)

10 New School Drive  North Brookfield, MA  01535

as Obligee, hereinafter called Owner, in the amount of   Eleven Million Five Hundred Twenty Seven Thousand
Dollars and 00/100                                                Dollars ($  11,527,000.00                ),

for the payment whereof Contractor and Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

## WHEREAS,

Contractor has by written agreement dated                                , entered into a contract with Owner
for
(Here insert full name, address and description of project)

North Brookfield Junior & Senior High School - Earthwork, Concrete, Steel and Masonry

in accordance with Drawings and Specifications prepared by

(Here insert full name and address or legal title of Architect)

which contract is by reference made a part hereof, and is hereinafter referred to as the Contract.

AIA DOCUMENT A311  •  PERFORMANCE BOND AND LABOR AND MATERIAL PAYMENT BOND  •  AIA ®
FEBRUARY 1970 ED.  •  THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 N.Y. AVE., N.W., WASHINGTON, D.C. 20006

1

# PERFORMANCE BOND

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Contractor shall promptly and faithfully perform said Contract, then this obligation shall be null and void; otherwise it shall remain in full force and effect.

The Surety hereby waives notice of any alteration or extension of time made by the Owner.

Whenever Contractor shall be, and declared by Owner to be in default under the Contract, the Owner having performed Owner's obligations thereunder, the Surety may promptly remedy the default, or shall promptly

1) Complete the Contract in accordance with its terms and conditions, or

2) Obtain a bid or bids for completing the Contract in accordance with its terms and conditions, and upon determination by Surety of the lowest responsible bidder, or, if the Owner elects, upon determination by the Owner and the Surety jointly of the lowest responsible bidder, arrange for a contract between such bidder and Owner, and make available as Work progresses (even though there should be a default or a succession of defaults under

the contract or contracts of completion arranged under this paragraph) sufficient funds to pay the cost of completion less the balance of the contract price; but not exceeding, including other costs and damages for which the Surety may be liable hereunder, the amount set forth in the first paragraph hereof. The term "balance of the contract price," as used in this paragraph, shall mean the total amount payable by Owner to Contractor under the Contract and any amendments thereto, less the amount properly paid by Owner to Contractor.

Any suit under this bond must be instituted before the expiration of two (2) years from the date on which final payment under the Contract falls due.

No right of action shall accrue on this bond to or for the use of any person or corporation other than the Owner named herein or the heirs, executors, administrators or successors of the Owner.

Signed and sealed this                11th                day of      November, 2003.

ATTEST:

By: _____
              (Witness)

Fontaine Bros., Inc.
                                    (Principal)              (Seal)

By: _____
              (Title)

WITNESS:

By: Josephine Griffen _____
              (Witness)

Federal Insurance Company
                                    (Surety)                (Seal)

By: Kathleen M. Flanagan _____
              (Title)

Kathleen M. Flanagan              Attorney-in-Fact

## THE AMERICAN INSTITUTE OF ARCHITECTS



Bond No.    81833249

*AIA Document A311*

# Labor and Material Payment Bond

THIS BOND IS ISSUED SIMULTANEOUSLY WITH PERFORMANCE BOND IN FAVOR OF THE
OWNER CONDITIONED ON THE FULL AND FAITHFUL PERFORMANCE OF THE CONTRACT

KNOW ALL MEN BY THESE PRESENTS: that  Fontaine Bros., Inc.

(Here insert full name and address or legal title of Contractor)

510 Cottage Street Springfield, MA  01104

as Principal, hereinafter called Principal, and,    Federal Insurance Company

(Here insert full name and address or legal title of Surety)

3 Mountain View Road,  Warren, NJ  07059

as Surety, hereinafter called Surety, are held and firmly bound unto    Town of North Brookfield

(Here insert full name and address or legal title of Owner)

10 New School Drive  North Brookfield, MA  01535

as Obligee,  hereinafter called Owner,  for the use and benefit of claimants as hereinbelow defined,  in the

amount of  Eleven Million Three Hundred Eighty One Thousand Three Hundred Sixty Two Dollars and 00/100

(Here insert a sum equal to at least one-half of the contract price)        Dollars ($   11,381,362.00            ),

for the payment whereof Principal and Surety bind themselves, their heirs, executors, administrators,
successors and assigns, jointly and severally, firmly by these presents.

## WHEREAS,

Principal has by written agreement dated                                        , entered into a contract with Owner
for
(Here insert full name, address and description of project)
North Brookfield Junior & Senior High School - Earthwork, Concrete, Steel and Masonry

in accordance with Drawings and Specifications prepared by

(Here insert full name and address or legal title of Architect)

,

which contract is by reference made a part hereof, and is hereinafter referred to as the Contract.

AIA DOCUMENT A311  •  PERFORMANCE BOND AND LABOR AND MATERIAL PAYMENT BOND  •  AIA ®
FEBRUARY 1970 ED.  •  THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 N.Y. AVE., N.W., WASHINGTON, D.C. 20006

1

# LABOR AND MATERIAL PAYMENT BOND

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Principal shall promptly make payment to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the Contract, then this obligation shall be void, otherwise it shall remain in full force and effect, subject, however, to the following conditions:

1.    A claimant is defined as one having a direct contract with the Principal or with a Subcontractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the Contract, labor and material being construed to include that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the Contract.

2.    The above named Principal and Surety hereby jointly and severally agree with the Owner that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon. The owner shall not be liable for the payment of any costs or expenses of any such suit.

3.    . No suit or action shall be commenced hereunder by any claimant:

a)    Unless claimant, other than one having a direct contract with the Principal, shall have given written notice to any two of the following:  the Principal, the Owner, or the Surety above named, within ninety (90) days after such claimant did or performed the last of the work or labor, or furnished the last of the materials for which said claim is made, stating with substantial accuracy the amount claimed

and the name of the party to whom the materials were furnished, or for whom the work or labor was done or performed.  Such notice shall be served by mailing the same by registered mail or certified mail, postage prepaid, in an envelope addressed to the Principal, Owner or Surety, at any place where an office is regularly maintained for the transaction of business, or served in any manner in which legal process may be served in the state in which the aforesaid project is located, save that such service need not be made by a public officer.

b)    After the expiration of one (1) year following the date on which principal ceased Work on said Contract, it being understood, however, that if any limitation embodied in this bond is prohibited by any law controlling the construction hereof such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

c)    Other than in state court of competent jurisdiction in and for the county or other political subdivision of the state in which the Project, or any part thereof, is situated, or in the United States District Court for the district in which the Project, or any part thereof, is situated, and not elsewhere.

4.    The amount of this bond shall be reduced by and to the extent of any payment or payments made in good faith hereunder, inclusive of the payment by Surety or mechanics' liens which may be filed of record against said improvement, whether or not claim for the amount of such lien be presented under and against this bond.

Signed and sealed this               11th                              day of     November, 2003.

ATTEST:

By: _____
(Witness)

Fontaine Bros., Inc.
_____
(Principal)                    (Seal)

By: _____    PRED
(Title)

WITNESS:

By: _Josephine Guffin_
(Witness)

Federal Insurance Company
_____
(Surety)                      (Seal)

By: _____
(Title)

Kathleen M. Flanagan          Attorney-in-Fact

AIA DOCUMENT A311  •  PERFORMANCE BOND AND LABOR AND MATERIAL PAYMENT BOND  •  AIA ®
FEBRUARY 1970 ED.  •  THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 N.Y. AVE., N.W., WASHINGTON, D.C. 20006

2

This Notice pertains to the following Surety Bond issued by a member insurer of the Chubb Group of Insurance Companies, including Federal Insurance Company, Vigilant Insurance Company and Pacific Indemnity Company.

Bond Number: 81833249

## POLICYHOLDER DISCLOSURE NOTICE
## TERRORISM RISK INSURANCE ACT OF 2002

You are hereby notified that pursuant to the Terrorism Risk Insurance Act of 2002 (the "Act") effective November 26, 2002, we are making available to you coverage for losses arising out of certain acts of international terrorism. Terrorism is defined as any act certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States Mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Coverage for acts of terrorism is already included in the captioned Surety Bond.

You should know that, effective November 26, 2002, any losses caused by acts of terrorism covered by your Surety Bond will be partially reimbursed by the United States under the formula set forth in the Act. Under this formula, the United States of America pays 90% of covered terrorism losses that exceed the statutorily established deductible to be paid by the insurance company providing the coverage. The portion of your premium that is attributable to coverage for such acts of terrorism is zero, because we could not distinguish (and separately charge for) acts of terrorism from other causes of loss when we calculated your premium.

If you have any questions about this notice, please contact your agent or broker.



CHUBB



| **Chubb Surety** | **POWER OF ATTORNEY** | **Federal Insurance Company**<br>**Vigilant Insurance Company**<br>**Pacific Indemnity Company** | **Attn.: Surety Department**<br>**15 Mountain View Road**<br>**Warren, NJ  07059** |

**Know All by These Presents,** That FEDERAL INSURANCE COMPANY, an Indiana corporation, VIGILANT INSURANCE COMPANY, a New York corporation, and PACIFIC INDEMNITY COMPANY, a Wisconsin corporation, do each hereby constitute and appoint  **Gary J. Giulietti, Kathleen M. Flanagan, Richard A. Leveroni and Bette A. Botticello of Farmington, Connecticut------------------------------------------------------------------------------------------------**

each as their true and lawful Attorney-in-Fact to execute under such designation in their names and to affix their corporate seals to and deliver for and on their behalf as surety thereon or otherwise, bonds and undertakings and other writings obligatory in the nature thereof (other than bail bonds) given or executed in the course of business, and any instruments amending or altering the same, and consents to the modification or alteration of any instrument referred to in said bonds or obligations.

**In Witness Whereof,** said FEDERAL INSURANCE COMPANY, VIGILANT INSURANCE COMPANY, and PACIFIC INDEMNITY COMPANY have each executed and attested these presents and affixed their corporate seals on this  27th day of March, 2003.

_Kenneth C. Wendel_                                  _Frank E. Robertson_
Kenneth C. Wendel, Assistant Secretary              Frank E. Robertson, Vice President

STATE OF NEW JERSEY } ss.
County of Somerset }

On this 27th day of March, 2003 , before me, a Notary Public of New Jersey, personally came Kenneth C. Wendel, to me known to be Assistant Secretary of FEDERAL INSURANCE COMPANY, VIGILANT INSURANCE COMPANY, and PACIFIC INDEMNITY COMPANY, the companies which executed the foregoing Power of Attorney, and the said Kenneth C. Wendel being by me duly sworn, did depose and say that he is Assistant Secretary of FEDERAL INSURANCE COMPANY, VIGILANT INSURANCE COMPANY, and PACIFIC INDEMNITY COMPANY and knows the corporate seals thereof, that the seals affixed to the foregoing Power of Attorney are such corporate seals and were thereto affixed by authority of the By-Laws of said Companies; and that he signed said Power of Attorney as Assistant Secretary of said Companies by like authority; and that he is acquainted with Frank E. Robertson, and knows him to be Vice President of said Companies; and that the signature of Frank E. Robertson, subscribed to said Power of Attorney is in the genuine handwriting of Frank E. Robertson, and was thereto subscribed by authority of said By-Laws and in deponent's presence.

MARIA D. SCARDIGNO
Notary Public State of New Jersey
No. 2229781
Commission Expires Sept. 25, 2004

_Maria D. Scardigno_
Notary Public

**CERTIFICATION**

Extract from the By-Laws of FEDERAL INSURANCE COMPANY, VIGILANT INSURANCE COMPANY, and PACIFIC INDEMNITY COMPANY:

"All powers of attorney for and on behalf of the Company may and shall be executed in the name and on behalf of the Company, either by the Chairman or the President or a Vice President or an Assistant Vice President, jointly with the Secretary or an Assistant Secretary, under their respective designations.  The signature of such officers may be engraved, printed or lithographed.  The signature of each of the following officers:  Chairman, President, any Vice President, any Assistant Vice President, any Secretary, any Assistant Secretary and the seal of the Company may be affixed by facsimile to any power of attorney or to any certificate relating thereto appointing Assistant Secretaries or Attorneys-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such power of attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding upon the Company with respect to any bond or undertaking to which it is attached."

I, Kenneth C. Wendel, Assistant Secretary of FEDERAL INSURANCE COMPANY, VIGILANT INSURANCE COMPANY, and PACIFIC INDEMNITY COMPANY (the "Companies") do hereby certify that

(i) the foregoing extract of the By-Laws of the Companies is true and correct,

(ii) the Companies are duly licensed and authorized to transact surety business in all 50 of the United States of America and the District of Columbia and are authorized by the U. S. Treasury Department; further, Federal and Vigilant are licensed in Puerto Rico and the U. S. Virgin Islands, and Federal is licensed in American Samoa, Guam, and each of the Provinces of Canada except Prince Edward Island; and

(iii) the foregoing Power of Attorney is true, correct and in full force and effect.

Given under my hand and seals of said Companies at Warren, NJ this  11th  day of  November, 2003 .

  

_Kenneth C. Wendel_
Kenneth C. Wendel, Assistant Secretary

---

**IN THE EVENT YOU WISH TO NOTIFY US OF A CLAIM, VERIFY THE AUTHENTICITY OF THIS BOND OR NOTIFY US OF ANY OTHER MATTER, PLEASE CONTACT US AT ADDRESS LISTED ABOVE, OR BY**
Telephone (908) 903-3485          Fax  (908) 903-3656          e-mail:  surety@chubb.com

15-10-0225 (Ed. 4-99) CONSENT

Client: 19758    FONBR

# ACORD™  CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)
11/6/03

**PRODUCER**
James J. Dowd & Sons Ins
14 Bobala Road
P.O. Box 10300
Holyoke, MA 01041

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

| INSURERS AFFORDING COVERAGE | NAIC # |
|---|---|
| INSURER A: OneBeacon America Ins. Co | |
| INSURER B: Acadia Ins. Co. | |
| INSURER C: | |
| INSURER D: | |
| INSURER E: | |

**INSURED**
Fontaine Bros. Inc.
510 Cottage Street
Springfield, MA 01104

## COVERAGES

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | ADD'L INSRD | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|---|
| | | **GENERAL LIABILITY**<br>☐ COMMERCIAL GENERAL LIABILITY<br>☐ CLAIMS MADE ☐ OCCUR | | | | EACH OCCURRENCE | $ |
| | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | MED EXP (Any one person) | $ |
| | | | | | | PERSONAL & ADV INJURY | $ |
| | | GEN'L AGGREGATE LIMIT APPLIES PER:<br>☐ POLICY ☐ PRO-JECT ☐ LOC | | | | GENERAL AGGREGATE | $ |
| | | | | | | PRODUCTS - COMP/OP AGG | $ |
| A | | **AUTOMOBILE LIABILITY**<br>☐ ANY AUTO<br>☐ ALL OWNED AUTOS<br>☒ SCHEDULED AUTOS<br>☒ HIRED AUTOS<br>☒ NON-OWNED AUTOS | CBXE46527 | 05/01/03 | 05/01/04 | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 |
| | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | **GARAGE LIABILITY**<br>☐ ANY AUTO | | | | AUTO ONLY - EA ACCIDENT | $ |
| | | | | | | OTHER THAN EA ACC<br>AUTO ONLY: AGG | $<br>$ |
| | | **EXCESS/UMBRELLA LIABILITY**<br>☐ OCCUR ☐ CLAIMS MADE<br>☐ DEDUCTIBLE<br>☐ RETENTION $ | | | | EACH OCCURRENCE | $ |
| | | | | | | AGGREGATE | $ |
| | | | | | | | $ |
| | | | | | | | $ |
| | | | | | | | $ |
| B | | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY**<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED?<br>If yes, describe under SPECIAL PROVISIONS below | WCA009926210 | 10/01/03 | 10/01/04 | ☒ WC STATU-TORY LIMITS / OTHER | |
| | | | | | | E.L. EACH ACCIDENT | $500,000 |
| | | | | | | E.L. DISEASE - EA EMPLOYEE | $500,000 |
| | | **OTHER** | | | | E.L. DISEASE - POLICY LIMIT | $500,000 |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES / EXCLUSIONS ADDED BY ENDORSEMENT / SPECIAL PROVISIONS**
*20 Days on Automobile for NonPayment
Job: North Brookfield Junior & Senior High School, New School Drive, North Brookfield, MA 01535

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Town of North Brookfield<br>Office of the Supt of Schools<br>10 New School Drive<br>North Brookfield, MA 01535 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL __30*__ DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES.<br>AUTHORIZED REPRESENTATIVE |

ACORD 25 (2001/08) 1 of 2    #S41213/M40936    CAS    © ACORD CORPORATION 1988

# ACORD™ CERTIFICATE OF LIABILITY INSURANCE

01/31/2004

| DATE (MM/DD/YY) |
|---|
| 11/07/2003 |

| PRODUCER | |
|---|---|
| Lockton Companies<br>80 Scott Swamp Rd., Suite 202<br>Farmington CT 06032<br>860-678-4000 | THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. |

**INSURERS AFFORDING COVERAGE**

| INSURED | |
|---|---|
| 1027409  Fontaine Bros., Inc.<br>510 Cottage Street<br>Springfield MA 01104 | |

| | |
|---|---|
| INSURER A : | Liberty Surplus Insurance |
| INSURER B : | American Int'l Specialty Lines |
| INSURER C : | |
| INSURER D : | |
| INSURER E : | |

## COVERAGES   97

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY**<br>[X] COMMERCIAL GENERAL LIABILITY<br>[ ] CLAIMS MADE [X] OCCUR | EGLB0078906-012 | 01/31/2003 | 01/31/2004 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | FIRE DAMAGE (Any one fire) | $ 300,000 |
| | | | | | MED EXP (Any one person) | $ XXXXXXX |
| | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER:<br>[ ] POLICY [X] PRO-JECT [ ] LOC | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | **AUTOMOBILE LIABILITY**<br>[ ] ANY AUTO<br>[ ] ALL OWNED AUTOS<br>[ ] SCHEDULED AUTOS<br>[ ] HIRED AUTOS<br>[ ] NON-OWNED AUTOS | NOT APPLICABLE | | | COMBINED SINGLE LIMIT (Ea accident) | $ XXXXXXX |
| | | | | | BODILY INJURY (Per person) | $ XXXXXXX |
| | | | | | BODILY INJURY (Per accident) | $ XXXXXXX |
| | | | | | PROPERTY DAMAGE (Per accident) | $ XXXXXXX |
| | **GARAGE LIABILITY**<br>[ ] ANY AUTO | NOT APPLICABLE | | | AUTO ONLY - EA ACCIDENT | $ XXXXXXX |
| | | | | | OTHER THAN EA ACC<br>AUTO ONLY: AGG | $ XXXXXXX<br>$ XXXXXXX |
| B | **EXCESS LIABILITY**<br>[X] OCCUR [ ] CLAIMS MADE<br>[ ] DEDUCTIBLE<br>[ ] UMBRELLA FORM<br>[ ] RETENTION $ | BE 7413521 | 01/31/2003 | 01/31/2004 | EACH OCCURRENCE | $ 25,000,000 |
| | | | | | AGGREGATE | $ 25,000,000 |
| | | | | | | $ XXXXXXX |
| | | | | | | $ XXXXXXX |
| | | | | | | $ XXXXXXX |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** | NOT APPLICABLE | | | [ ] WC STATU-TORY LIMITS [ ] OTHER | |
| | | | | | E.L. EACH ACCIDENT | $ XXXXXXX |
| | | | | | E.L. DISEASE - EA EMPLOYEE | $ XXXXXXX |
| | **OTHER** | | | | E.L. DISEASE - POLICY LIMIT | $ XXXXXXX |

**DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/EXCLUSIONS ADDED BY ENDORSEMENT/SPECIAL PROVISIONS**

The Town of North Brookfield, Dore and Whittier Inc and the American Manufacturers Mutual Insurance Company are included as Additional Insured's with regards to General Liability but only in conjunction with the work performed by the Named Insured at the Nroth Brookfield Junior and Senior Highschool located at New School Drive, North Brookfield, MA

| CERTIFICATE HOLDER | ADDITIONAL INSURED; INSURER LETTER: | CANCELLATION |
|---|---|---|
| 1908572<br>Town of North Brookfield<br>Office of the Superintendant of Schools<br>10 New School Drive<br>North Brookfield MA 01535 | | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL __30__ DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES.<br>AUTHORIZED REPRESENTATIVE |

**ACORD 25-S (7/97)**

© ACORD CORPORATION 1988