UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AMERICAN MANUFACTURERS MUTUAL
INSURANCE COMPANY,
                    Plaintiff,

vs.                                    Civil Action No. 03-40266 NMG

TOWN OF NORTH BROOKFIELD,
                    Defendant.

AFFIDAVIT OF JOHN CONWAY IN SUPPORT OF THE
OPPOSITION OF AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY TO
MOTION TO REQUIRE PLAINTIFF
TO DEPOSIT FUNDS WITH COURT

I, John Conway, have personal knowledge of the following, except where stated to be upon

information and belief.  I make this affidavit in support of the Opposition of American

Manufacturers Mutual Insurance Company ("AMMIC") to the motion (the "Motion") filed by

plaintiff-in-counterclaim, the Town of North Brookfield ("North Brookfield") seeking to require

AMMIC to deposit $1,600,000 with the Court.

    1.     I am General Counsel and Corporate Secretary to the Kemper Insurance Companies

(collectively "Kemper"), of which AMMIC is one.  My office is in Long Grove, Illinois.

    2.     I am familiar with the financial condition, regulatory status and general operations

of the Kemper, including AMMIC.

    3.     Kemper has terminated its underwriting operations, but maintains staffing and

facilities to administer the "run-off" of its claims.  Thus, it or its designated third party

administrators receive and process claims in the ordinary course of its business.  Part of its usual

practice, as with any other insurance company, is to establish reserves for reasonably anticipated

losses and expenses.  Kemper has followed standard actuarial practices in establishing its reserves.

Kemper's reserves are established at the actuarial and management best estimate.  Kemper's

actuaries have found that the reserves established as of December 31, 2003 (1) meet the

requirements of the insurance laws of the State of Illinois, (2) are computed in accordance with

accepted loss reserving standards and principles; and (3) make a reasonable provision in aggregate

for all unpaid loss and loss expense obligations of the company.  Copies of the current Statements

of Actuarial Opinion filed with the Illinois Insurance Department by AMMIC and its affiliate,

Lumbermens Mutual Casualty Company ("Lumbermens"), are attached hereto as Exhibits A and

B respectively

      4.     These reserves have been reviewed as part of the statutory audit by the company's

outside auditor, KPMG Peat Marwick ("KPMG").   KPMG has reported to Kemper that its review

supports the reserve levels recorded by Kemper without adjustment.

      5.     In addition to the actuarial review as part of the statutory audit by KPMG, the

office of the Illinois Insurance Commissioner, in 2003, retained its own independent actuarial

consultant, Milliman USA, to review Kemper's carried reserves as of December 31, 2002.  The

results of their engagement did not result in a change or restatement of reserves established by

Kemper at December 31, 2002.  At no time has the Illinois Insurance Commissioner placed

AMMIC or any of the other Kemper Companies into liquidation or rehabilitation proceedings.

Nor has any other state's insurance commissioner's office done so.

      6.     At no time has AMMIC or any of the other Kemper Companies failed to satisfy in

full any final judgment entered against it or to pay any settlement it entered into.

      7.     As stated on the second page of AMMIC's Statement of Actuarial Opinion, Exhibit

A, AMMIC is a party to a Reinsurance and Administration Agreement with Lumbermens,

pursuant to which AMMIC has ceded its risks to Lumbermens.  The effect of this agreement is, in

essence, that persons holding claims on policies or bonds issued by AMMIC have access to

Lumbermens' assets.  For that reason, Lumbermens' financial condition is pertinent to the question

of AMMIC's ability to satisfy a judgment in this case.

8.      Attached hereto as Exhibits C and D respectively are true copies of the summary pages of the financial statements of AMMIC and Lumbermens for fiscal year 2003, both of which have been filed with the Illinois and Massachusetts Insurance Departments.  It shows that AMMIC has a surplus of approximately $10,000,000 and Lumbermens has a surplus of over $200 million, pursuant to accounting rules prescribed or permitted by the Illinois Insurance Department.  This surplus consists of assets over and above the liabilities established by Kemper, including liabilities for losses and loss adjustment expenses on outstanding bond and insurance obligations.  The reserves, as stated on page 1 of Exhibit B, exceed $8 billion.

9.      It is normal for all insurance companies to have reserves set at an amount lower than the aggregate face amount of all claims pending against it.  This is because, inevitably, while some claims have merit, others have none and others are inflated.  Requiring an insurance company to pay into court the amount of all claims pending against the company would drive the company into liquidation, no matter how healthy the company.

10.     If this Court were to enter an order requiring AMMIC to deposit into Court the amount the Town of North Brookfield is seeking, prior to a final adjudication of the claim, it would set a disastrous precedent and encourage other claimants to go into court seeking the same relief.  Once the flood gates were opened, AMMIC's liquid assets would be drained prematurely and the specter of failure that North Brookfield is raising would become a self-fulfilling prophecy.

Signed under the penalties of perjury this ___18___ day of March, 2004.

_____
John Conway

# 1749413_v4
431261.00002

3

**EXHIBIT A TO AFFIDAVIT OF JOHN CONWAY IN SUPPORT OF THE OPPOSITION OF AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY TO MOTION TO REQUIRE PLAINTIFF TO DEPOSIT FUNDS WITH COURT**



3 0 5 6 2 2 0 0 3 4 4 0 0 0 1 0 0

ANNUAL STATEMENT FOR THE YEAR 2003 OF THE AMERICAN MANUFACTURERS MUTUAL INSURANCE
COMPANY

# Statement of Actuarial Opinion

### AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY
### STATEMENT OF ACTUARIAL OPINION AS OF 12/31/03

I, Frederick O. Kist, am the Senior Vice President and Chief Actuary of American Manufacturers Mutual Insurance
Company (Company).  I am a Fellow of the Casualty Actuarial Society and a Member of the American Academy of
Actuaries and meet its qualification standards.  I was appointed by the Board of Directors on October 23, 2000 to render
this opinion.

I have examined the actuarial assumptions and methods used in determining reserves listed below, as shown in the
Annual Statement of the Company as prepared for filing with state regulatory officials, as of December 31, 2003:

a)    Reserve for Unpaid Losses (Liabilities, Surplus and Other Funds page, Losses line); $0.

b)    Reserve for Unpaid Loss Adjustment Expenses (Liabilities, Surplus and Other Funds page, Loss adjustment
        expenses line); $0.

c)    Reserve for unpaid losses - Direct and Assumed - (Schedule P, Part 1, Totals from Columns 13 and 15);
        $761,595,000.

d)    Reserve for unpaid loss adjustment expenses - Direct and Assumed (Schedule P, Part 1, Totals from Columns
        17, 19, and 21); $202,582,000.

e)    The total claims-made extended loss and expense reserve (Schedule P Interrogatories), whether reported in
        the loss reserves or the unearned premium reserves; $0.

f)    The Page 3 write-in item reserve, "Retroactive reinsurance reserve assumed," $0.

g)    Reserve for net unearned premium for long duration contracts (subset of Page 7, Part 1A, Line 34, Column 2);
        $0.

h)    Reserve for ceded unearned premium for long duration contracts (subset of Page 3, Line 9); $867,408.

i)    Reserve for direct unearned premium for long duration contracts (g+h); $867,408.

Parts a), b), c), d), e), and f) on which I am expressing an opinion above reflect the following items:

A.    Anticipated net salvage and subrogation included as a reduction to loss reserves as reported in Schedule P,
        and on the Liabilities, Surplus and Other Funds page, Losses and Loss adjustment expenses lines; $0.

B.    Discount included as a reduction to loss reserves and loss expense reserves as reported in Schedule P, and on
        the Liabilities, Surplus and Other Funds page, Losses and Loss adjustment expenses lines; non-tabular
        discount $0 and tabular discount $0.

C.    The net reserves for loss and expense for the Company's share of voluntary and involuntary underwriting pools'
        and associations' unpaid losses and expenses that are included in reserves shown on the Liabilities, Surplus,
        and Other Funds page, Losses and Loss adjustment expenses lines; $0.

D.    The net reserves for losses and loss adjustment expenses that the Company carries for Asbestos liabilities $0,
        and Environmental liabilities $0, that are included in the reserves on the Liabilities, Surplus, and Other Funds
        page, Losses and Loss adjustment expenses lines, and disclosed in the Notes to Financial Statements; and

E.    In the total reserves for losses and loss adjustment expenses, the Company reported extended loss and
        expense reserve of $0, that are reported in the Schedule P Interrogatories.



ANNUAL STATEMENT FOR THE YEAR 2003 OF THE AMERICAN MANUFACTURERS MUTUAL INSURANCE
COMPANY

# Statement of Actuarial Opinion

In forming my opinion on the loss and loss adjustment expense reserves, I relied upon data prepared by the responsible officers or employees of the Company or group to which it belongs. I evaluated that data for reasonableness and consistency. I also reconciled that data to the Company's financial records which are used in the preparation of Schedule P and which therefore balance to Schedule P. In other respects, my examination included such review of the actuarial assumptions and methods used and such tests of the calculations as I considered necessary.

Intercompany Pooling and Reinsurance

The Company is a member of the group of affiliated and associated companies (the Group) that have operated under the trade name of the Kemper Insurance Companies. The significant majority of the business written by member insurance companies of the Group has historically been ceded to Lumbermens Mutual Casualty Company (LMC) through quota share reinsurance agreements with some LMC subsidiaries retaining a portion of the business written and through a quota share pooling agreement by and among LMC, American Motorists Insurance Company (AMICO) and the Company. Prior to 2003, of the insurance business directly written by LMC or ceded to LMC, including all business written by AMICO and the Company, LMC ceded (net of third-party, unaffiliated, reinsurance and excluding Canadian business) 15% to AMICO and 8% to the Company. (Third-party reinsurance has generally attached after cession to LMC, although some specific risks have been subject to facultative or other reinsurance before cession to LMC.) Effective January 1, 2003, the pooling agreement was amended to eliminate LMC's 15% cession to AMICO, and effective December 31, 2003, the pooling agreement was amended to eliminate LMC's 8% cession to the Company. As a result, at December 31, 2003, the net loss and loss adjustment reserves for AMICO and the Company is zero.

Long Duration Contracts

Total net unearned premium for the Company as recorded on Page 3, Line 9 of the Annual Statement is $0.

Discounting of Loss Reserves – Tabular and Non-Tabular Accounting Allowance

The Company's net reserve position is $0 and all discount is ceded to LMC.

Underwriting Pools or Associations

The Company's net reserves for underwriting pools and associations are 0. All assumptions from pools and associations are ceded to LMC and are carried as part of LMC's net reserve position.

Reinsurance

In 2003, the Company and all companies comprising the Kemper Insurance Group ceased writing new business except where required by law or contract and entered into a voluntary runoff. The Company cedes 100% of its gross loss reserves to LMC. There is significant risk associated with: 1. LMC's ability to continue as a managed commercial runoff outside of a formal proceeding (receivership, rehabilitation, or other), and 2. the Company's ability to collect reinsurance recoverables from LMC. If LMC is placed into a formal proceeding, then a formal proceeding with respect to the Company would be unavoidable.

Asbestos and Environmental Liability

The Company retains no net liabilities for asbestos or environmental exposures.

Losses from Terrorist Attacks

Uncertainties exist in the estimation of terrorist attack liabilities as of December 31, 2003. The Company has included in its net and gross nominal reserve positions $0 and $2,531,615, respectively. Estimates will be revised by the Company as legal, judicial and factual information develops and/or is clarified. The amounts ultimately paid by the Company for its terrorist attack claims may differ, perhaps significantly, from the Company's currently recorded reserves.



ANNUAL STATEMENT FOR THE YEAR 2003 OF THE AMERICAN MANUFACTURERS MUTUAL INSURANCE
COMPANY

## Statement of Actuarial Opinion

Methodology

The Company is part of the Kemper Insurance Companies Group.  Loss and loss expense reserves for the total group
were analyzed by homogeneous data grouping in the aggregate and allocated to the Company.  There has been no
material change in methodology in evaluating loss and loss expense reserves.

Conclusion

In my opinion, subject to the accounting allowances and the fact that the Company will continue as a commercial runoff
outside of a formal proceeding, the amounts carried in the balance sheet on account of the loss and loss expense items
identified above:

a)     meet the requirements of the insurance laws of the State of Illinois;

b)     are computed in accordance with accepted loss reserving standards and principles; and

c)     make a reasonable provision in aggregate for all unpaid loss and loss expense obligations of the Company
        under the terms of its policies and agreements.

Relevant Comments

Since the emergence and settlement of claims are subject to uncertainty, actual developments likely will vary, perhaps
significantly, from the amounts carried on the balance sheet.  No warranty is expressed or implied that this will not
occur.

If the Company is placed into a formal proceeding, it would not be possible to render an opinion on the Company's loss
reserves.

The Company has reported a risk-based capital ratio 23.4%.  As a result, the Company falls into the Mandatory Action
Level for risk-based capital.

I have reviewed the Company's statutory results against standards set forth using NAIC IRIS tests.  I have noted the
values with respect to the reserve tests 10, 11, and 12 and have noted that the company has produced an unusual
value for test 12.  However, the company has no exposure to loss in the current year and therefore has no loss reserves
in the current year.  Consequently, the estimated reserve deficiency produced in test 12 is not meaningful, and thus test
12 itself is not meaningful in this case.

This statement of opinion is intended solely for filing with state regulatory agencies.

An actuarial report and any underlying workpapers supporting the findings expressed in this statement of actuarial
opinion will be retained for a period of seven years in the administrative offices of the Company and available for
regulatory examination.

Frederick O. Kist, FCAS, MAAA
Senior Vice President & Chief Actuary
Kemper Insurance Companies
Long Grove, Illinois  60049
(847) 320-2715
February 26, 2004

**EXHIBIT B TO AFFIDAVIT OF JOHN CONWAY IN SUPPORT OF THE OPPOSITION OF AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY TO MOTION TO REQUIRE PLAINTIFF TO DEPOSIT FUNDS WITH COURT**

ANNUAL STATEMENT FOR THE YEAR 2003 OF THE LUMBERMENS MUTUAL CASUALTY COMPANY

# Statement of Actuarial Opinion

**LUMBERMENS MUTUAL CASUALTY COMPANY**
**STATEMENT OF ACTUARIAL OPINION AS OF 12/31/03**

I, Frederick O. Kist, am the Senior Vice President and Chief Actuary of Lumbermens Mutual Casualty Company (Company). I am a Fellow of the Casualty Actuarial Society and a Member of the American Academy of Actuaries and meet its qualification standards. I was appointed by the Board of Directors on October 23, 2000 to render this opinion.

I have examined the actuarial assumptions and methods used in determining reserves listed below, as shown in the Annual Statement of the Company as prepared for filing with state regulatory officials, as of December 31, 2003:

a)    Reserve for Unpaid Losses (Liabilities, Surplus and Other Funds page, Losses line); $3,094,210,933.

b)    Reserve for Unpaid Loss Adjustment Expenses (Liabilities, Surplus and Other Funds page, Loss adjustment expenses line); $729,758,862.

c)    Reserve for unpaid losses - Direct and Assumed - (Schedule P, Part 1, Totals from Columns 13 and 15); $7,135,035,000.

d)    Reserve for unpaid loss adjustment expenses - Direct and Assumed (Schedule P, Part 1, Totals from Columns 17, 19, and 21); $1,289,735,000.

e)    The total claims-made extended loss and expense reserve (Schedule P Interrogatories), whether reported in the loss reserves or the unearned premium reserves; $0.

f)    The Page 3 write-in item reserve, "Retroactive reinsurance reserve assumed;" $0.

g)    Reserve for net unearned premium for long duration contracts (subset of Page 7, Part 1A, Line 34, Column 2); $41,035,977.

h)    Reserve for ceded unearned premium for long duration contracts (subset of Page 3, Line 9); $14,172,801.

i)    Reserve for direct unearned premium for long duration contracts (g+h); $55,208,778;

j)    Provision for uncollectible reinsurance (Page 3, included within summary of remaining write-ins from Line 2398); $70,000,000.

ANNUAL STATEMENT FOR THE YEAR 2003 OF THE LUMBERMENS MUTUAL CASUALTY COMPANY

# Statement of Actuarial Opinion

Parts a), b), c), d), e), and f) on which I am expressing an opinion above reflect the following items:

A.    Anticipated net salvage and subrogation included as a reduction to loss reserves as reported in Schedule P, and on the Liabilities, Surplus and Other Funds page, Losses and Loss adjustment expenses lines; $91,124,000.

B.    Discount included as a reduction to loss reserves and loss expense reserves as reported in Schedule P, and on the Liabilities, Surplus and Other Funds page, Losses and Loss adjustment expenses lines; non-tabular discount allowance $850,413,000 and tabular discount $242,144,154.

C.    The net nominal reserves for loss and expense for the Company's share of voluntary and involuntary underwriting pools' and associations' unpaid losses and expenses that are included in reserves shown on the Liabilities, Surplus, and Other Funds page, Losses and Loss adjustment expenses lines;  $294,591,504.

D.    The net nominal reserves for losses and loss adjustment expenses that the Company carries for Asbestos liabilities $443,809,000, and Environmental liabilities $125,862,000, that are included in the reserves on the Liabilities, Surplus, and Other Funds page, Losses and Loss adjustment expenses lines, and disclosed in the Notes to Financial Statements; and

E.    In the total reserves for losses and loss adjustment expenses, the Company reported extended loss and expense reserve of $0, that are reported in the Schedule P Interrogatories.

In forming my opinion on the loss and loss adjustment expense reserves, I relied upon data prepared by the responsible officers or employees of the Company or group to which it belongs.  I evaluated that data for reasonableness and consistency.  I also reconciled that data to the Company's financial records which are used in the preparation of Schedule P and which therefore balance to Schedule P.  In other respects, my examination included such review of the actuarial assumptions and methods used and such tests of the calculations as I considered necessary.

Intercompany Pooling and Reinsurance Arrangements

The Company is the lead company of the group of affiliated and associated companies (the Group) that have operated under the trade name of the Kemper Insurance Companies.  The significant majority of the business written by member insurance companies of the Group has historically been ceded to the Company through quota share reinsurance agreements with some Company subsidiaries retaining a portion of the business written and through a quota share pooling agreement by and among the Company, American Motorists Insurance Company (AMICO) and American Manufacturers Mutual Insurance Company (AMM).  Prior to 2003, of the insurance business directly written by the Company or ceded to the Company, including all business written by AMICO and AMM, the Company ceded (net of third-party, unaffiliated, reinsurance and excluding Canadian business) 15% to AMICO and 8% to AMM.  (Third-party reinsurance has generally attached after cessions by affiliates to the Company, although some specific risks have been subject to facultative or other reinsurance before cession to the Company.)  Effective January 1, 2003, the pooling agreement was amended to eliminate the 15% cession to AMICO, and effective December 31, 2003, the pooling agreement was amended to eliminate the 8% cession to AMM.  The effect of both amendments was for the Company to retain all previously ceded risks, and the amendments were accompanied by transfers of assets by each of AMICO and AMM in order to satisfy the liabilities transferred to the Company by the pooling agreement amendments.  As a result, at December 31, 2003, the net loss and loss adjustment reserves for AMICO and AMM are zero.  Loss and loss expense reserves for the Group were analyzed in the aggregate for all companies and allocated to certain Company subsidiaries based on the business retained within those companies.

Long Duration Contracts

Total net unearned premium for the Company as recorded on the Liabilities, Surplus, and Other Funds page is $111,595,492.  The unearned premium for long duration contracts, to which this opinion applies, is $41,035,977, representing 36.8% of the total net unearned premium for the Company.  The three tests stipulated for evaluating the adequacy of the unearned premium reserve for long duration contracts were applied to a sample of the Company's unearned premium for long duration contracts.  Based on these tests, the Company's unearned premium, together with a premium deficiency reserve of $6,925,106 (included as a subset of Page 3, Line 23), make a reasonable provision in

2 2 9 7 7 2 0 0 3 4 4 0 0 1 0 0

**ANNUAL STATEMENT FOR THE YEAR 2003 OF THE LUMBERMENS MUTUAL CASUALTY COMPANY**

## Statement of Actuarial Opinion

the aggregate for all unpaid loss and loss expense obligations and all unearned premium obligations of the Company related to long duration contracts under the terms of its contracts and agreements.

Discounting of Loss Reserves - Tabular

The Company utilizes tabular discounting in establishing the liabilities for workers compensation voluntary and involuntary indemnity pension cases.  The tabular discount is calculated using NCCI tables and interest rates.  The total amount of tabular discount carried in the Company's annual statement is $242,144,154.

Discounting of Loss Reserves – Non-Tabular Accounting Allowance

On June 19, 2003, the Kemper Insurance Group (Group) was granted an accounting allowance to discount all loss reserves at 3.5% beginning with the Group's financial statements for the quarter ended June 30, 2003 (non-tabular discount).  On December 23, 2003, the Illinois Department of Insurance (Department) allowed the Group to increase the discount to 4.2%.  Allowed non-tabular discount includes discount on workers compensation claims not subject to tabular discounting, non-workers compensation lines of business as well as supplemental discount in excess of the tabular discount rate on those liabilities that for which a tabular discount has been established.  At December 31, 2003, the total amount of non-tabular discount, included in Schedule P, Part 1, is $850,413,000, including $131,000,000 of which relates to the increase from 3.5% to 4.2%.

The book yield of the Group's invested assets at December 31, 2003 was approximately 2.4%.  The Group believes that it can achieve a 3.1% yield through a redeployment of invested assets.  The scope of this opinion does not include whether the Group can achieve the overall rate of return supporting the allowed discount assumption, 4.2%.  If a lower discount rate is used the non-tabular discount would be reduced by approximately $ 2 million per basis point reduction.

Underwriting Pools or Associations

The Company has participated in a number of voluntary and involuntary pooling arrangements.   Company practice is to independently evaluate the reserve liability required for the larger workers compensation pools and record a liability based on this review.  Total reserves recorded for undiscounted reserves associated with these pools account for $218,346,000 of pool reserves.  The remaining undiscounted non-reviewed pool reserves, $76,463,850 are based on reserves reported to it by the pools.  Aggregate undiscounted reserves held for all pools are $294,591,504.

Reinsurance

The majority of ceded loss reserves are either with residual market pools or companies rated A- or better by A.M. Best Company.  Most balances with unauthorized reinsurers are collateralized.  Current amounts in dispute have been reviewed and are valued at $193,024,799.   No additional provision has been established for these disputes.  Future reinsurance collections represent a risk factor as discussed in the *Relevant Comments* section.

In 2003, the Department granted the Company an accounting allowance that replaced the Provision for Reinsurance calculated from Schedule F with a Company estimated Provision for Uncollectible Reinsurance.  The balance sheet liability recorded is $70,000,000 and has been included in the scope of the opinion in the event that it results in an increase in the Company's net liability.  As has been the case historically, the reasonableness of the Company's reserve levels has been evaluated without consideration of this liability.

One ceded reinsurance contract was accounted for by the Company as retroactive reinsurance. In addition, two reinsurance contracts were accounted for by the Company as deposits. These contracts are disclosed in Footnote 23 F.  As a result, my evaluation of the net reserves was performed on a gross basis with respect to those contracts. Based on discussions with Company management and its description of the Company's ceded reinsurance, I am not aware of any other reinsurance contract having a material effect on the loss or loss expense reserves that either has been or should have been accounted for as retroactive reinsurance or deposits.   The Company has not entered into any other or new financial reinsurance contracts in 2003.

Asbestos and Environmental Liability

ANNUAL STATEMENT FOR THE YEAR 2003 OF THE LUMBERMENS MUTUAL CASUALTY COMPANY

# Statement of Actuarial Opinion

The Company at December 31, 2003 nominally records $569,671,000 of reserves for losses and loss adjustment expenses, which is intended to represent the Company's ultimate liability for these items.. The reserve estimate for these items has been produced by management and is based upon consideration of the current state of the applicable law and coverage litigation. In my opinion, actuarial estimates of these ultimate liabilities are subject to greater inherent uncertainty than is typical of the remainder of the Company's reserves. An indeterminable amount of additional liability may develop because of the general risks inherent in major litigation, expanded policyholder target base, expanded theories of liability, and future court coverage decisions or future legislative actions.

Losses from September 11, 2001 Terrorist Attacks

Uncertainties exist in the estimation of terrorist attack liabilities as of December 31, 2003. The Company has included in its net and gross nominal reserve positions $10,549,939 and $73,842,862, respectively. The Company has experienced no material change in its estimate of terrorist attack liabilities since December 31, 2002. Estimates will be revised by the Company as legal, judicial and factual information develops and/or is clarified. The amounts ultimately paid by the Company for its terrorist attack claims may differ, perhaps significantly, from the Company's currently recorded reserves.

Methodology

The Company is part of the Kemper Insurance Companies Group. Loss and loss expense reserves for the Group were analyzed by homogeneous data grouping in the aggregate and allocated to the Company. There has been no material change in methodology in evaluating loss and loss expense reserves. As a result of the accounting allowance to discount all loss reserves, I have expanded the calculations of reserves to evaluate the non-tabular discount allowance.

Conclusion

In my opinion, subject to the accounting allowances and the fact that the Company will continue as a commercial runoff outside of a formal proceeding (receivership, rehabilitation, or other), the amounts carried in the balance sheet on account of the loss and loss expense items identified above:

a)     meet the requirements of the insurance laws of the State of Illinois;

b)     are computed in accordance with accepted loss reserving standards and principles; and

c)     make a reasonable provision in aggregate for all unpaid loss and loss expense obligations of the Company under the terms of its policies and agreements.

Relevant Comments

Since the emergence and settlement of claims are subject to uncertainty, actual developments likely will vary, perhaps significantly, from the amounts carried on the balance sheet. No warranty is expressed or implied that this will not occur.

In 2003, the Company and all companies comprising the Group ceased writing new business except where required by law or contract and entered into a voluntary runoff. As a result of this event, I have identified the following risk factors which may materially impact on the variability of the Company's reserve levels and surplus: 1. the Company's ability to continue as a managed commercial runoff outside of a formal proceeding, 2. the Company's ability to collect reinsurance recoverables in the amount due and on a timely basis, and 3. the Company's increased risk to a liquidity event. These risk factors are further detailed below. I believe that 5% of surplus would be material for the Company.

During the second half of 2003, the Company requested and received approval for a number of accounting allowances which materially exceed the reported surplus of the Company. In the event that 1. the Department does not permit the continuation of one or more of the allowances, and/or 2. the Company experiences further deterioration of its surplus position, or 3. the Department determines it is in the best interest of the policyholders and claimants, the Department could seek to place the Company into a formal proceeding. If the Company is placed into a formal proceeding, it would not be possible to render an opinion on the Company's loss reserves.

ANNUAL STATEMENT FOR THE YEAR 2003 OF THE LUMBERMENS MUTUAL CASUALTY COMPANY

## Statement of Actuarial Opinion

Historically companies in runoff have experienced greater difficulties in collecting reinsurance recoverables.  A variety of factors may contribute to this condition including the Company's ability to identify and report reinsurance recoverables, an increase in coverage disputes with reinsurers, and general slowdown of payments by reinsurers.  The Company cedes $3.7 billion of loss and loss adjustment expense reserves to non-affiliated reinsurers in comparison to the Company's surplus as regards to policyholders of $202.4 million.  Therefore, I believe that there are risks and uncertainties with the collection of reinsurance which could produce a material adverse deviation in the loss and loss adjustment expense reserves.

The Company has a substantial portion of its assets encumbered due to state regulatory requirements or other contractual obligations.  If these funds are not released consistent with the reduction of underlying obligations or are unavailable to pay claims, the Company may not have sufficient liquid assets available to meet current obligations.  A lack of liquid assets could adversely affect the Company in its ability to timely settle valid claims which may cause or contribute to the Company to be placed into a formal proceeding.

I have neither examined the assets of the Company nor formed any opinion as to the value or validity of the assets or rates of return on the invested assets.  My opinion that the reserves make a reasonable provision in the aggregate for the unpaid loss and loss expense obligations of the Company relies on an interest rate assumption allowed by the regulatory authorities.

The Company has reported a risk-based capital ratio below mandatory control level.  As a result the Company falls into the mandatory control level.

I have reviewed the Company's statutory results against standards set forth using the NAIC IRIS tests.  Over the past two years, the Company strengthened the net loss and allocated loss adjustment expense reserves as shown in Schedule P, Part 2 for the prior to previous accident years by $1,086.8 million.  $575.8 million of amount was related to unexpected reserve development and $511.0 million was related to a change in accounting treatment related to several reinsurance contracts.  These contracts, which previously were accounted for on a prospective basis, had to be accounted for on a retroactive basis or through deposit accounting. This extraordinary loss reserve strengthening caused an exceptional value for NAIC IRIS Test 11.  No exceptional value was noted with respect to NAIC IRIS Tests 10 and 12.

This statement of opinion is intended solely for filing with state regulatory agencies.

An actuarial report and any underlying workpapers supporting the findings expressed in this statement of actuarial opinion will be retained for a period of seven years in the administrative offices of the Company and available for regulatory examination.

Frederick O. Kist, FCAS, MAAA
Senior Vice President & Chief Actuary
Kemper Insurance Companies
Long Grove, Illinois  60049
(847) 320-2715
February 26, 2004

**EXHIBIT C TO AFFIDAVIT OF JOHN CONWAY IN SUPPORT OF
THE OPPOSITION OF AMERICAN MANUFACTURERS MUTUAL
INSURANCE COMPANY TO MOTION TO REQUIRE
PLAINTIFF TO DEPOSIT FUNDS WITH COURT**

3 0 5 6 2 2 0 0 3 2 0 1 0 0 1 0 0

**PROPERTY AND CASUALTY COMPANIES—ASSOCIATION EDITION**

# ANNUAL STATEMENT

### FOR THE YEAR ENDED DECEMBER 31, 2003
OF THE CONDITION AND AFFAIRS OF THE

## AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY

| | | | | |
|---|---|---|---|---|
| NAIC Group Code | 0108 (Current Period) | 0108 (Prior Period) | NAIC Company Code 30562 | Employer's ID Number 36-2797074 |

Organized under the Laws of __Illinois__, State of Domicile or Port of Entry __Illinois__

Country of Domicile __United States of America__

Incorporated __03/29/1837__   Commenced Business __08/13/1837__

Statutory Home Office __1 Kemper Drive__ (Street and Number), __Long Grove, IL 60049-0001__ (City or Town, State and Zip Code)

Main Administrative Office __1 Kemper Drive__ (Street and Number)
__Long Grove, IL 60049-0001__ (City or Town, State and Zip Code)   __847-320-2000__ (Area Code) (Telephone Number)

Mail Address __1 Kemper Drive__ (Street and Number and P.O. Box), __Long Grove, IL 60049-0001__ (City or Town, State and Zip Code)

Primary Location of Books and Records __1 Kemper Drive__ (Street and Number)
__Long Grove, IL 60049-0001__ (City or Town, State and Zip Code)   __847-320-3021__ (Area Code) (Telephone Number)

Internet Website Address __www.kemperinsurance.com__

Statutory Statement Contact __Dennis Andrew Wong__ (Name)   __847-320-3021__ (Area Code) (Telephone Number) (Extension)
__dwong@kemperinsurance.com__ (E-mail Address)   __847-320-3818__ (Fax Number)

Policyowner Relations Contact __Customer Relations, 1 Kemper Dr, ML-11SE__ (Street and Number)
__Long Grove, IL 60049-0001__ (City or Town, State and Zip Code)   __800-833-0355__ (Area Code) (Telephone Number) (Extension)

### OFFICERS

| President | Michael Albert Coutu  # | Secretary | John Keating Conway |
|---|---|---|---|
| Treasurer | Michael Patrick Sullivan  # | | |

### VICE PRESIDENTS

| Arthur Edmund Chandler  # | Frederick Otto Kist | |

### DIRECTORS OR TRUSTEES

| John Thomas Chain Jr. | James Robert Edgar | Roberta Segal Karmel |
|---|---|---|
| Arthur James Massolo  # | David Barrett Mathis | John Edward Porter |
| Zachary Layne Stamp  # | | |

State of ............Illinois............ } ss

County of ............Lake............ }

The officers of this reporting entity, being duly sworn, each depose and say that they are the described officers of said reporting entity, and that on the reporting period stated above, all of the herein described assets were the absolute property of the said reporting entity, free and clear from any liens or claims thereon, except as herein stated, and that this statement, together with related exhibits, schedules and explanations therein contained, annexed or referred to, is a full and true statement of all the assets and liabilities and of the condition and affairs of the said reporting entity as of the reporting period stated above, and of its income and deductions therefrom for the period ended, and have been completed in accordance with the NAIC *Annual Statement Instructions and Accounting Practices and Procedures* manual except to the extent that: (1) state law may differ; or, (2) that state rules or regulations require differences in reporting not related to accounting practices and procedures, according to the best of their information, knowledge and belief, respectively.

| Michael Albert Coutu  (Acting CEO & President) President | John Keating Conway Secretary | Michael Patrick Sullivan Treasurer |
|---|---|---|

Subscribed and sworn to before me this
__23rd__ day of __February, 2004__

| | |
|---|---|
| a. Is this an original filing? | Yes [ X ]  No [    ] |
| b. If no, | |
| 1. State the amendment number | _____ |
| 2. Date filed | _____ |
| 3. Number of pages attached | _____ |

**ANNUAL STATEMENT FOR THE YEAR 2003 OF THE AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY**

# ASSETS

| | Current Year | | | Prior Year |
|---|---|---|---|---|
| | 1 | 2 | 3 | 4 |
| | Assets | Nonadmitted Assets | Net Admitted Assets (Cols. 1 - 2) | Net Admitted Assets |
| 1. Bonds (Schedule D) | 4,331,528 | | 4,331,528 | 420,076,931 |
| 2. Stocks (Schedule D): | | | | |
| 2.1 Preferred stocks | 0 | | 0 | 2,630 |
| 2.2 Common stocks | 0 | | 0 | 442,508 |
| 3. Mortgage loans on real estate (Schedule B): | | | | |
| 3.1 First liens | | | 0 | 3,638,141 |
| 3.2 Other than first liens | | | 0 | 128,963 |
| 4. Real estate (Schedule A): | | | | |
| 4.1 Properties occupied by the company (less $ ............... encumbrances) | | | 0 | 0 |
| 4.2 Properties held for the production of income (less $ ............... encumbrances) | | | 0 | 0 |
| 4.3 Properties held for sale (less $ ............... encumbrances) | | | 0 | 0 |
| 5. Cash ($ ........126,782 , Schedule E, Part 1), cash equivalents ($ ........3,799,475 , Schedule E, Part 2) and short-term investments ($ ........1,659,328 , Schedule DA) | 5,585,585 | | 5,585,585 | 19,584,089 |
| 6. Contract loans, (including $ ............... premium notes) | | | 0 | 0 |
| 7. Other invested assets (Schedule BA) | | | 0 | 14,209,559 |
| 8. Receivable for securities | | | 0 | 0 |
| 9. Aggregate write-ins for invested assets | 0 | 0 | 0 | 0 |
| 10. Subtotals, cash and invested assets (Lines 1 to 9) | 9,917,113 | | 9,917,113 | 458,082,821 |
| 11. Investment income due and accrued | 137,367 | | 137,367 | 4,107,985 |
| 12. Premiums and considerations: | | | | |
| 12.1 Uncollected premiums and agents' balances in the course of collection | | | 0 | 28,370,568 |
| 12.2 Deferred premiums, agents' balances and installments booked but deferred and not yet due (including $ ............... earned but unbilled premium) | | | 0 | 70,470,095 |
| 12.3 Accrued retrospective premium | | | 0 | 12,801,698 |
| 13. Reinsurance: | | | | |
| 13.1 Amounts recoverable from reinsurers | | | 0 | 0 |
| 13.2 Funds held by or deposited with reinsured companies | | | 0 | 0 |
| 13.3 Other amounts receivable under reinsurance contracts | | | 0 | 0 |
| 14. Amounts receivable relating to uninsured plans | | | 0 | 0 |
| 15.1 Current federal and foreign income tax recoverable and interest thereon | | | 0 | 2,078,497 |
| 15.2 Net deferred tax asset | 104,346,251 | 104,346,251 | 0 | 5,753,734 |
| 16. Guaranty funds receivable or on deposit | | | 0 | 110,592 |
| 17. Electronic data processing equipment and software | | | 0 | 346,180 |
| 18. Furniture and equipment, including health care delivery assets ($ ............... ) | | | 0 | 0 |
| 19. Net adjustment in assets and liabilities due to foreign exchange rates | | | 0 | 0 |
| 20. Receivables from parent, subsidiaries and affiliates | | | 0 | 5,959,871 |
| 21. Health care ($ ............... ) and other amounts receivable | | | 0 | 0 |
| 22. Other assets nonadmitted | | | 0 | 0 |
| 23. Aggregate write-ins for other than invested assets | 0 | 0 | 0 | 43,688,574 |
| 24. Total assets excluding Separate Accounts, Segregated Accounts and Protected Cell Accounts (Lines 10 to 23) | 114,400,731 | 104,346,251 | 10,054,480 | 631,770,615 |
| 25. From Separate Accounts, Segregated Accounts and Protected Cell Accounts | | | 0 | 0 |
| 26. Total (Lines 24 and 25) | 114,400,731 | 104,346,251 | 10,054,480 | 631,770,615 |
| **DETAILS OF WRITE-INS** | | | | |
| 0901. | | | | |
| 0902. | | | | |
| 0903. | | | | |
| 0998. Summary of remaining write-ins for Line 9 from overflow page | 0 | 0 | 0 | 0 |
| 0999. Totals (Lines 0901 thru 0903 plus 0998)(Line 9 above) | 0 | 0 | 0 | 0 |
| 2301. Reinsurance accounted for as a deposit | | | 0 | 17,886,286 |
| 2302. Advance to claim service provider | | | 0 | 9,294,065 |
| 2303. Rabbi Trust assets | | | 0 | 3,243,792 |
| 2398. Summary of remaining write-ins for Line 23 from overflow page | | | 0 | 13,264,431 |
| 2399. Totals (Lines 2301 thru 2303 plus 2398)(Line 23 above) | 0 | 0 | 0 | 43,688,574 |

ANNUAL STATEMENT FOR THE YEAR 2003 OF THE AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY

# LIABILITIES, SURPLUS AND OTHER FUNDS

| | 1 Current Year | 2 Prior Year |
|---|---|---|
| 1. Losses (Part 2A, Line 34, Column 8) | 0 | 282,317,858 |
| 2. Reinsurance payable on paid loss and loss adjustment expenses (Schedule F, Part 1, Column 6) | | 0 |
| 3. Loss adjustment expenses (Part 2A, Line 34, Column 9) | 0 | 78,352,329 |
| 4. Commissions payable, contingent commissions and other similar charges | | 4,272,826 |
| 5. Other expenses (excluding taxes, licenses and fees) | 54,480 | 16,523,338 |
| 6. Taxes, licenses and fees (excluding federal and foreign income taxes) | | 4,878,405 |
| 7.1 Current federal and foreign income taxes (including $ ............ 0 on realized capital gains (losses)) | | 0 |
| 7.2 Net deferred tax liability | | 0 |
| 8. Borrowed money $ ............ and interest thereon $ ............ | | 0 |
| 9. Unearned premiums (Part 1A, Line 37, Column 5) (after deducting unearned premiums for ceded reinsurance of $ ............ 63,862,362 and including warranty reserves of $ ............ 0 ) | 0 | 27,742,713 |
| 10. Advance premiums | | 2,201,354 |
| 11. Dividends declared and unpaid: | | |
| 11.1 Stockholders | | 0 |
| 11.2 Policyholders | | 2,619,901 |
| 12. Ceded reinsurance premiums payable (net of ceding commissions) | | 0 |
| 13. Funds held by company under reinsurance treaties (Schedule F, Part 3, Column 19) | | 0 |
| 14. Amounts withheld or retained by company for account of others | | 28,298,764 |
| 15. Remittances and items not allocated | | 12,486,233 |
| 16. Provision for reinsurance (Schedule F, Part 7) | 0 | 0 |
| 17. Net adjustments in assets and liabilities due to foreign exchange rates | | 0 |
| 18. Drafts outstanding | | 0 |
| 19. Payable to parent, subsidiaries and affiliates | | 0 |
| 20. Payable for securities | | 0 |
| 21. Liability for amounts held under uninsured accident and health plans | | 0 |
| 22. Capital Notes $ ............ and interest thereon $ ............ | | 0 |
| 23. Aggregate write-ins for liabilities | 0 | (58,662,447) |
| 24. Total liabilities excluding protected cell liabilities (Lines 1 through 23) | 54,480 | 401,031,274 |
| 25. Protected cell liabilities | | 0 |
| 26. Total liabilities (Lines 24 and 25) | 54,480 | 401,031,274 |
| 27. Aggregate write-ins for special surplus funds | 0 | 36,249,284 |
| 28. Common capital stock | | 0 |
| 29. Preferred capital stock | | 0 |
| 30. Aggregate write-ins for other than special surplus funds | 1,500,000 | 1,500,000 |
| 31. Surplus notes | | 0 |
| 32. Gross paid in and contributed surplus | | 0 |
| 33. Unassigned funds (surplus) | 8,500,000 | 192,990,057 |
| 34. Less treasury stock, at cost: | | |
| 34.1 ............ shares common (value included in Line 28 $ ............ ) | | 0 |
| 34.2 ............ shares preferred (value included in Line 29 $ ............ ) | | 0 |
| 35. Surplus as regards policyholders (Lines 27 to 33, less 34) (Page 4, Line 38) | 10,000,000 | 230,739,341 |
| 36. TOTALS (Page 2, Line 26, Col. 3) | 10,054,480 | 631,770,615 |
| **DETAILS OF WRITE-INS** | | |
| 2301. Retroactive reinsurance recoverable | | (121,309,390) |
| 2302. Reinsurance funds held related to retroactive reinsurance | | 34,070,408 |
| 2303. Minimum pension liability | | 18,062,059 |
| 2398. Summary of remaining write-ins for Line 23 from overflow page | | 10,514,476 |
| 2399. Totals (Lines 2301 thru 2303 plus 2398) (Line 23 above) | 0 | (58,662,447) |
| 2701. Special surplus from retroactive reinsurance contract | | 36,249,284 |
| 2702. | | |
| 2703. | | |
| 2798. Summary of remaining write-ins for Line 27 from overflow page | 0 | 0 |
| 2799. Totals (Lines 2701 thru 2703 plus 2798) (Line 27 above) | 0 | 36,249,284 |
| 3001. Guaranty fund | 1,500,000 | 1,500,000 |
| 3002. | | |
| 3003. | | |
| 3098. Summary of remaining write-ins for Line 30 from overflow page | 0 | 0 |
| 3099. Totals (Lines 3001 thru 3003 plus 3098) (Line 30 above) | 1,500,000 | 1,500,000 |

**EXHIBIT D TO AFFIDAVIT OF JOHN CONWAY IN SUPPORT OF
THE OPPOSITION OF AMERICAN MANUFACTURERS MUTUAL
INSURANCE COMPANY TO MOTION TO REQUIRE
PLAINTIFF TO DEPOSIT FUNDS WITH COURT**

PROPERTY AND CASUALTY COMPANIES—ASSOCIATION EDITION

# ANNUAL STATEMENT
## FOR THE YEAR ENDED DECEMBER 31, 2003
OF THE CONDITION AND AFFAIRS OF THE
## LUMBERMENS MUTUAL CASUALTY COMPANY

| | | | | | |
|---|---|---|---|---|---|
| NAIC Group Code | 0108 (Current Period) | 0108 (Prior Period) | NAIC Company Code | 22977 | Employer's ID Number 36-1410470 |

Organized under the Laws of __Illinois__ , State of Domicile or Port of Entry __Illinois__

Country of Domicile __United States of America__

Incorporated __11/18/1912__ Commenced Business __11/25/1912__

Statutory Home Office __1 Kemper Drive__ , __Long Grove, IL 60049-0001__
(Street and Number) (City or Town, State and Zip Code)

Main Administrative Office __1 Kemper Drive__
(Street and Number)
__Long Grove, IL 60049-0001__ __847-320-2000__
(City or Town, State and Zip Code) (Area Code) (Telephone Number)

Mail Address __1 Kemper Drive__ , __Long Grove, IL 60049-0001__
(Street and Number or P.O. Box) (City or Town, State and Zip Code)

Primary Location of Books and Records __1 Kemper Drive__
(Street and Number)
__Long Grove, IL 60049-0001__ __847-320-3021__
(City or Town, State and Zip Code) (Area Code) (Telephone Number)

Internet Website Address __www.kemperinsurance.com__

Statutory Statement Contact __Dennis Andrew Wong__ __847-320-3021__
(Name) (Area Code) (Telephone Number) (Extension)
__dwong@kemperinsurance.com__ __847-320-3818__
(E-mail Address) (Fax Number)

Policyowner Relations Contact __Customer Relations, 1 Kemper Dr, ML-11SE__
(Street and Number)
__Long Grove, IL 60049-0001__ __800-833-0355__
(City or Town, State and Zip Code) (Area Code) (Telephone Number) (Extension)

## OFFICERS

| | | | |
|---|---|---|---|
| President | Michael Albert Coutu # | Secretary | John Keating Conway |
| Treasurer | Michael Patrick Sullivan # | | |

## VICE PRESIDENTS

| | | |
|---|---|---|
| Arthur Edmund Chandler # | Frederick Otto Kist | Jack Ellsworth Scott |
| Gary Joseph Tully | | |

## DIRECTORS OR TRUSTEES

| | | |
|---|---|---|
| John Thomas Chain Jr. | Jerome Reed Coleman | James Robert Edgar |
| Peter Bannerman Hamilton | Roberta Segal Karmel | George Ralph Lewis |
| David Barrett Mathis | John Edward Porter | |

State of ............Illinois............  }
County of ............Lake............  } ss

The officers of this reporting entity, being duly sworn, each depose and say that they are the described officers of said reporting entity, and that on the reporting period stated above, all of the herein described assets were the absolute property of the said reporting entity, free and clear from any liens or claims thereon, except as herein stated, and that this statement, together with related exhibits, schedules and explanations therein contained, annexed or referred to, is a full and true statement of all the assets and liabilities and of the condition and affairs of the said reporting entity as of the reporting period stated above, and of its income and deductions therefrom for the period ended, and have been completed in accordance with the NAIC *Annual Statement Instructions and Accounting Practices and Procedures* manual except to the extent that: (1) state law may differ; or, (2) that state rules or regulations require differences in reporting not related to accounting practices and procedures, according to the best of their information, knowledge and belief, respectively.

| | | |
|---|---|---|
| Michael Albert Coutu  (Acting CEO & President) President | John Keating Conway Secretary | Michael Patrick Sullivan Treasurer |

Subscribed and sworn to before me this
__23rd__ day of __February, 2004__

a. Is this an original filing?    Yes [ X ] No [    ]
b. If no,
1. State the amendment number _____
2. Date filed _____

3. Number of pages attached _____

ANNUAL STATEMENT FOR THE YEAR 2003 OF THE LUMBERMENS MUTUAL CASUALTY COMPANY

# ASSETS

| | Current Year | | | Prior Year |
|---|---|---|---|---|
| | 1 | 2 | 3 | 4 |
| | Assets | Nonadmitted Assets | Net Admitted Assets (Cols. 1 - 2) | Net Admitted Assets |
| 1. Bonds (Schedule D) | 1,673,351,862 | | 1,673,351,862 | 1,410,225,483 |
| 2. Stocks (Schedule D): | | | | |
| 2.1 Preferred stocks | 13,388,287 | | 13,388,287 | 13,346,928 |
| 2.2 Common stocks | 268,718,684 | | 268,718,684 | 1,295,874,636 |
| 3. Mortgage loans on real estate (Schedule B): | | | | |
| 3.1 First liens | 16,891,939 | | 16,891,939 | 53,835,877 |
| 3.2 Other than first liens | 255,711 | | 255,711 | 288,092 |
| 4. Real estate (Schedule A): | | | | |
| 4.1 Properties occupied by the company (less | | | | |
| $ encumbrances) | | | 0 | 109,523,157 |
| 4.2 Properties held for the production of income | | | | |
| (less $ encumbrances) | | | 0 | 0 |
| 4.3 Properties held for sale (less | | | | |
| $ encumbrances) | 40,855,789 | | 40,855,789 | 279,993 |
| 5. Cash ($ 244,879,231 , Schedule E, Part 1), cash equivalents | | | | |
| ($ 0 , Schedule E, Part 2) and short -term | | | | |
| investments ($ 1,625,694,500 , Schedule DA) | 1,870,573,731 | | 1,870,573,731 | 1,104,545,896 |
| 6. Contract loans, (including $ premium notes) | | | 0 | 0 |
| 7. Other invested assets (Schedule BA) | 104,544,600 | 213,043 | 104,331,557 | 159,197,621 |
| 8. Receivable for securities | 3,287,363 | | 3,287,363 | 1,495,321 |
| 9. Aggregate write-ins for invested assets | 0 | | 0 | 0 |
| 10. Subtotals, cash and invested assets (Lines 1 to 9) | 3,991,867,966 | 213,043 | 3,991,654,923 | 4,148,613,004 |
| 11. Investment income due and accrued | 14,827,958 | | 14,827,958 | 18,314,976 |
| 12. Premiums and considerations: | | | | |
| 12.1 Uncollected premiums and agents' balances in the course of | | | | |
| collection | 236,410,375 | 72,323,695 | 164,086,680 | 356,034,235 |
| 12.2 Deferred premiums, agents' balances and installments booked but | | | | |
| deferred and not yet due (including $ earned | | | | |
| but unbilled premium) | 213,864,463 | 67,874,012 | 145,990,451 | 678,274,662 |
| 12.3 Accrued retrospective premium | 164,444,348 | 6,911,811 | 157,532,537 | 123,216,344 |
| 13. Reinsurance: | | | | |
| 13.1 Amounts recoverable from reinsurers | 347,048,068 | | 347,048,068 | 233,768,427 |
| 13.2 Funds held by or deposited with reinsured companies | 19,418,156 | | 19,418,156 | 7,556,960 |
| 13.3 Other amounts receivable under reinsurance contracts | | | 0 | 0 |
| 14. Amounts receivable relating to uninsured plans | | | 0 | 0 |
| 15.1 Current federal and foreign income tax recoverable and interest thereon | | | 0 | 0 |
| 15.2 Net deferred tax asset | 613,327,935 | 613,327,935 | | 86,369,468 |
| 16. Guaranty funds receivable or on deposit | 529,146 | | 529,146 | 1,064,447 |
| 17. Electronic data processing equipment and software | 2,643,386 | | 2,643,386 | 3,331,986 |
| 18. Furniture and equipment, including health care delivery assets | | | | |
| ($ ) | | | 0 | 0 |
| 19. Net adjustment in assets and liabilities due to foreign exchange rates | | | 0 | 0 |
| 20. Receivables from parent, subsidiaries and affiliates | 20,562,031 | | 20,562,031 | 0 |
| 21. Health care ($ ) and other amounts receivable | | | 0 | 0 |
| 22. Other assets nonadmitted | 73,130 | 73,130 | | 0 |
| 23. Aggregate write-ins for other than invested assets | 388,387,470 | 22,739,169 | 365,648,301 | 414,591,327 |
| 24. Total assets excluding Separate Accounts, Segregated Accounts and | | | | |
| Protected Cell Accounts (Lines 10 to 23) | 6,013,404,432 | 783,462,795 | 5,229,941,637 | 6,071,135,836 |
| 25. From Separate Accounts, Segregated Accounts and Protected | | | | |
| Cell Accounts | | | 0 | 0 |
| 26. Total (Lines 24 and 25) | 6,013,404,432 | 783,462,795 | 5,229,941,637 | 6,071,135,836 |
| DETAILS OF WRITE-INS | | | | |
| 0901. | | | | |
| 0902. | | | | |
| 0903. | | | | |
| 0998. Summary of remaining write-ins for Line 9 from overflow page | 0 | 0 | 0 | 0 |
| 0999. Totals (Lines 0901 thru 0903 plus 0998)(Line 9 above) | 0 | 0 | 0 | 0 |
| 2301. Reinsurance accounted for as a deposit | 55,190,454 | | 55,190,454 | 172,155,499 |
| 2302. Advance to claims service provider | 34,542,835 | | 34,542,835 | 89,455,374 |
| 2303. Insurance recoveries related to UBIC | 12,400,000 | | 12,400,000 | 60,034,333 |
| 2398. Summary of remaining write-ins for Line 23 from overflow page | 286,254,181 | 22,739,169 | 263,515,012 | 92,946,121 |
| 2399. Totals (Lines 2301 thru 2303 plus 2398)(Line 23 above) | 388,387,470 | 22,739,169 | 365,648,301 | 414,591,327 |

2

**ANNUAL STATEMENT FOR THE YEAR 2003 OF THE LUMBERMENS MUTUAL CASUALTY COMPANY**

## LIABILITIES, SURPLUS AND OTHER FUNDS

| | 1<br>Current Year | 2<br>Prior Year |
|---|---|---|
| 1. Losses (Part 2A, Line 34, Column 8) | 3,094,210,933 | 2,730,727,148 |
| 2. Reinsurance payable on paid loss and loss adjustment expenses (Schedule F, Part 1, Column 6) | 70,032,122 | 13,330,496 |
| 3. Loss adjustment expenses (Part 2A, Line 34, Column 9) | 729,758,862 | 771,410,165 |
| 4. Commissions payable, contingent commissions and other similar charges | 9,049,177 | 54,948,991 |
| 5. Other expenses (excluding taxes, licenses and fees) | 140,695,970 | 178,143,164 |
| 6. Taxes, licenses and fees (excluding federal and foreign income taxes) | 35,849,671 | 50,593,239 |
| 7.1 Current federal and foreign income taxes (including $ ............ on realized capital gains (losses)) | 22,803,106 | 28,501,438 |
| 7.2 Net deferred tax liability | | 0 |
| 8. Borrowed money $ ............ and interest thereon $ ............ | | 0 |
| 9. Unearned premiums (Part 1A, Line 37, Column 5)<br>(after deducting unearned premiums for ceded reinsurance of $ ......168,446,624  and including warranty<br>reserves of $ ......26,887,556 ) | 111,595,492 | 269,409,686 |
| 10. Advance premiums | | 19,188,035 |
| 11. Dividends declared and unpaid: | | |
|    11.1 Stockholders | | 0 |
|    11.2 Policyholders | 22,228,022 | 25,216,544 |
| 12. Ceded reinsurance premiums payable (net of ceding commissions) | 6,844,721 | 1,019,386,610 |
| 13. Funds held by company under reinsurance treaties (Schedule F, Part 3, Column 19) | 34,078,748 | 122,647,943 |
| 14. Amounts withheld or retained by company for account of others | 289,257,547 | 272,375,603 |
| 15. Remittances and items not allocated | 69,487,545 | 120,599,908 |
| 16. Provision for reinsurance (Schedule F, Part 7) | | 84,106,200 |
| 17. Net adjustments in assets and liabilities due to foreign exchange rates | 12,602,499 | 14,454,621 |
| 18. Drafts outstanding | | 0 |
| 19. Payable to parent, subsidiaries and affiliates | | 73,997,359 |
| 20. Payable for securities | .128 | 66,661,743 |
| 21. Liability for amounts held  under uninsured accident and health plans | | 0 |
| 22. Capital Notes $ ............ and interest thereon $ ............ | | 0 |
| 23. Aggregate write-ins for liabilities | 379,021,129 | (541,409,100) |
| 24. Total liabilities excluding protected cell liabilities (Lines 1 through 23) | 5,027,515,672 | 5,374,289,793 |
| 25. Protected cell liabilities | | 0 |
| 26. Total liabilities (Lines 24 and 25) | 5,027,515,672 | 5,374,289,793 |
| 27. Aggregate write-ins for special surplus funds | 0 | 348,899,363 |
| 28. Common capital stock | | 0 |
| 29. Preferred capital stock | | 0 |
| 30. Aggregate write-ins for other than special surplus funds | 1,500,000 | 1,500,000 |
| 31. Surplus notes | 698,355,598 | 698,355,598 |
| 32. Gross paid in and contributed surplus | | 0 |
| 33. Unassigned funds (surplus) | (497,429,633) | (351,908,918) |
| 34. Less treasury stock, at cost: | | |
|    34.1 ............ shares common (value included in Line 28 $ ............ ) | | 0 |
|    34.2 ............ shares preferred (value included in Line 29 $ ............ ) | | 0 |
| 35. Surplus as regards policyholders (Lines 27 to 33, less 34) (Page 4, Line 38) | 202,425,965 | 696,846,043 |
| 36. TOTALS (Page 2, Line 26, Col. 3) | 5,229,941,637 | 6,071,135,836 |
| **DETAILS OF WRITE-INS** | | |
| 2301. Retroactive reinsurance recoverable | (11,233,487) | (1,167,602,875) |
| 2302. Minimum pension liability | 128,479,243 | 173,847,315 |
| 2303. Reinsurance funds held related to retroactive reinsurance | 63,600,832 | 327,927,675 |
| 2398. Summary of remaining write-ins for Line 23 from overflow page | 198,174,541 | 124,418,785 |
| 2399. Totals (Lines 2301 thru 2303 plus 2398) (Line 23 above) | 379,021,129 | (541,409,100) |
| 2701. Special surplus from retroactive reinsurance contract | 0 | 348,899,363 |
| 2702. | | |
| 2703. | | |
| 2798. Summary of remaining write-ins for Line 27 from overflow page | 0 | 0 |
| 2799. Totals (Lines 2701 thru 2703 plus 2798) (Line 27 above) | 0 | 348,899,363 |
| 3001. Guaranty fund | 1,500,000 | 1,500,000 |
| 3002. | | |
| 3003. | | |
| 3098. Summary of remaining write-ins for Line 30 from overflow page | 0 | 0 |
| 3099. Totals (Lines 3001 thru 3003 plus 3098) (Line 30 above) | 1,500,000 | 1,500,000 |