UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY, Plaintiff, vs. TOWN OF NORTH BROOKFIELD, Defendant. | Civil Action No. 03-40266-CBS |

## MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S MOTION FOR PROTECTIVE ORDER

Plaintiff, American Manufacturers Mutual Insurance Company ("AMMIC"), has moved under Fed. R. Civ. P. 26(c) for the entry of a protective order prohibiting the Defendant, Town of North Brookfield (the "Town"), from discovering confidential information (not otherwise public knowledge) submitted by AMMIC to the Illinois Department of Insurance ("DOI"), including, but not limited to, confidential information relating to the runoff and cessation of AMMIC's surety business (the "Motion"). AMMIC also seeks its attorney's fees and costs arising out of the preparation, filing, and litigation of its Motion.

The Court should allow AMMIC's Motion for three reasons. First, AMMIC's runoff plan and other financial information submitted to the DOI are irrelevant to any claim or defense in this case, and discovery for the purpose of collection is improper until judgment enters. Second, justice and good cause, both factually and at law, support entering an Order to protect AMMIC from the certain oppression it would face upon disclosure. Third, AMMIC is entitled to its fees and costs in preparing, filing, and litigating this Motion because the Town has no substantial justification for seeking irrelevant and confidential information.

## BACKGROUND

AMMIC is a surety company licensed to issue surety bonds on behalf of construction contractors. In or about the spring of 2002, AMMIC issued a performance bond (the "Bond") on behalf of its principal, E.J. Sciaba Contracting Co., Inc. ("Sciaba Contracting"), which was the general contractor responsible for the construction of a new Jr./Sr. High School in North Brookfield, Massachusetts (the "Project"). The Town was the obligee on the Bond.

In 2003, Sciaba Contracting defaulted on the Project. The Town terminated its right to perform on the Project and made demand on AMMIC to fulfill its obligations under the Bond. AMMIC put the Project back out to bid and tendered a new general contractor for completion of the Project that the Town eventually accepted. During this process a dispute arose between AMMIC and the Town with respect to, among other things, the amount, if any, owed by AMMIC under the Bond beyond the amount previously paid unconditionally to the Town, and the Town's obligation to execute the initially tendered completion contract and otherwise to mitigate its damages.

AMMIC filed this lawsuit seeking a declaratory judgment of its rights and obligations under the Bond and a refund of amounts it paid conditionally to the Town in excess of amount owed. *See* Amended Complaint, Affidavit of Deborah S. Griffin, Exh. A. ("Griffin Aff."). The Town answered and asserted seven affirmative defenses – none of which implicates or relates in any way to the financial viability of AMMIC. *See* Griffin Aff., Exh. B. The Town counterclaimed on three counts: breach of contract, violation of Mass. G.L. c. 93A/176D, and an unspecified "tort." *See id*.

In 2003 AMMIC ceased writing new surety business and engaged in an orderly wind-down, or "runoff" of its outstanding obligations. The fact that AMMIC is in runoff is public knowledge. As an Illinois insurance corporation, AMMIC is subject to regulation by the DOI.

2

The DOI required AMMIC to submit a Risk-Based Capital Plan ("RBC Plan") that included certain information relating to AMMIC's plan for running off its surety business. Affidavit of Benjamin D. Schwartz ("Schwartz Aff.") ¶ 6.

Initially, the Town attempted to discover this information through its First Set Of Interrogatories to Plaintiff – Interrogatory Number 21. Griffin Aff., Exh C. The Town also attempted to discover this information through its First Request For Production of Documents to Plaintiff – Request Numbers 34 and 35. *See id.*, Exh. D. AMMIC objected to these written discovery requests on the grounds that the Town improperly requested proprietary and confidential information not relevant to any claim or defense and not reasonably likely to lead to the discovery of admissible evidence (*i.e.* irrelevant). *See id.*, Exhs. E, F.

Despite these objections, and without filing a motion to compel, the Town now seeks to question AMMIC on these same confidential matters in a Rule 30(b)(6) deposition of AMMIC. *See id.*, Exh. G, Schedule A ¶¶ 16, 17. AMMIC filed its Motion to gain the Court's protection from this intrusive and irrelevant line of discovery – both in written discovery and in the anticipated line of questioning from the Town in the 30(b)(6) deposition of AMMIC.

## ARGUMENT

### I.    THE MOTION SHOULD BE ALLOWED BECAUSE THE INFORMATION SUBMITTED TO THE DOI IS NOT RELEVANT TO ANY CLAIM OR DEFENSE.

The Court should allow the Motion because AMMIC's confidential financial information and runoff plan are not relevant to any claim or defense in this litigation. Parties in a civil case can only discover information "relevant to the *claim or defense* of any party." FED. R. CIV. P. 26(b)(1) (emphasis added). Indeed, Rule 26(b)(1) was amended in 2000 specifically in order to curb discovery abuses and to "focus [the Court] on the actual claims and defenses involved in the action." FED. R. CIV. P. 26(b)(1) (Advisory Committee Notes, 2000 Amendment); *see also* 6

JAMES WM. MOORE ET. AL., MOORE'S FEDERAL PRACTICE § 26.41[6][c] (3d ed. 1999) ("[t]he amendment will, of course, require the courts to focus on the claims and defenses the parties have actually asserted in their pleadings).

Although not expressly defined in the Rules, "relevant" facts must be directly related to a claim or defense. *See In re PE Corp. Sec's. Litig.*, 221 F.R.D. 20, 24 (D. Conn. 2003) (noting that the 2000 Amendment implies that "relevant" facts for discovery must be *germane* to any claim or defense alleged in the pleadings) (emphasis added).  In addition, this Court held in *Flynn v. Church of Scientology Int'l*, 116 F.R.D. 1 (D. Mass. 1986), that "[i]t is axiomatic that FED. R. CIV. P. 26(b) provides that only relevant matter may be the subject of discovery.  '[W]here the relevance of information sought in discovery proceedings is *questionable . . .* discovery of the requested information will be denied.'" *Id.* at 3 (citing 4 JAMES WM. MOORE ET. AL., MOORE'S FEDERAL PRACTICE § 26.43 (3d ed. 1999)) (emphasis added) (internal citations omitted).

In *Flynn*, the plaintiff sought damages for emotional and economic injuries based on acts of the defendants.  The Court denied discovery of information from plaintiff's attorney about the plaintiff's "physical appearance, non-legal business affairs with the deponent, or amount and sources of fees paid," because such discovery "lacked the requisite relevance" to the case. *Id.* at 2-4.  Notably, *Flynn* was decided prior to the 2000 Amendment to Rule 26(b)(1) when all that was required was that discoverable information be relevant to the "subject matter of the litigation" rather than to any "claim or defense of any party."  It follows, therefore, that if information of questionable relevance was precluded from discovery under the more liberal Rule 26 as applied by *Flynn*, then similar irrelevant commercial information would certainly be outside the *more narrow* Rule 26 after the 2000 Amendment.

Further, information about a party's financial condition is, in most cases, irrelevant for pre-judgment discovery purposes. *See, e.g., McCurdy v. Wedgewood Capital Mgmt. Co., Inc.,* 1998 U.S. Dist. LEXIS 18875 at * 37-38 (E.D. Penn. 1998) (citing numerous cases in holding that plaintiff was barred from seeking information regarding defendant's financial status); *Henderson v. Zurn Indus.*, 131 F.R.D. 560, 562 (S.D. Ind. 1990) (tax returns not discoverable because information they contain are not relevant); *Ranney-Brown Distrib., Inc. v. E.T. Barwick Indus., Inc.*, 75 F.R.D. 3, 5 (S.D. Ohio 1977) (ordinarily, facts concerning a party's financial status or ability to satisfy judgments are not relevant, and are reserved for proceedings in aid of collection under Rule 69); *Federal Sav. & Loan Ins. Corp. v. Krueger,* 1972 U.S. Dist. LEXIS 12790 at * 6 (N.D. Ill. 1972) (without a judgment, plaintiff could not inquire into the financial records of the defendant); 8 CHARLES A. WRIGHT, FEDERAL PRACTICE & PROCEDURE § 2010 (2 ed. 1994) (while Rule 26 contemplates discovery of insurance agreements, it does not permit discovery of facts concerning a defendant's financial status).

In this case, AMMIC's financial status, runoff plan, and its ability to pay any judgment against it are not express or implied elements of any claim, counterclaim, or defense in this action. AMMIC seeks declaratory judgment for a determination of its liabilities under the Bond and a refund of amounts it paid conditionally to the Town in excess of amount owed. *See* Griffin Aff., Exh. A. Additionally, the Town only claims breach of contract, violation of G.L. c. 93A/176D, and an unspecified "tort." *See* Griffin Aff., Exh. B. The particulars of AMMIC's financial stability and its runoff plan are not germane to any set of conceivable facts that might reveal whether AMMIC met its bond obligations or is liable for any counterclaim asserted by the Town, or is entitled to a refund of funds paid to the Town provisionally. Such facts are

completely unrelated to the issues in this case.  For this reason alone the Court should allow the Motion.[1]

Without articulating any other substantially justified reason, it appears that the Town's only purpose in obtaining AMMIC's confidential financial information is to move once again for preliminary injunctive relief already denied in this action.[2]  This line of discovery sought by the Town is premature because judgment has not entered against AMMIC.  Such an ulterior motive does not make AMMIC's confidential financials and runoff plan relevant to any claim or defense.  Accordingly, this Court should allow the Motion.

## II.    JUSTICE AND GOOD CAUSE EXIST FOR THIS COURT TO PROTECT AMMIC FROM DISCLOSING CONFIDENTIAL COMMERCIAL INFORMATION.

This Court should grant the Motion pursuant to Rule 26(c)(7) because the information AMMIC provided to the DOI is confidential commercial information whose disclosure would jeopardize AMMIC's ongoing operations, runoff activities, and the DOI's regulation thereof.  Further, AMMIC's disclosure would violate Illinois law.

In order for a protective order to issue under Rule 26(c)(7), the movant must show good cause and that justice requires protection from annoyance, embarrassment, oppression, or undue burden or expense.  *See* FED. R. CIV. P. 26(c)(7).  The test for whether good cause exists for a protective order to issue under Rule 26(c)(7) is: (1) whether the information is confidential; and (2) whether the right of the moving party to protect its confidential information outweighs the right of the party seeking discovery.  *See Ares-Serono, Inc. v. Organon Int'l. B.V.*, 151 F.R.D.

---

[1]    On August 5, 2004, this Court (Saylor, J.) denied, without prejudice, the Town's Motion to Require Plaintiff To Deposit Funds.  Ruling from the Bench, Judge Saylor *did not* rule that AMMIC's financial condition was relevant to any claim or defense.  Rather, Judge Saylor ruled that: (1) the preliminary injunction standard applied; (2) the Defendant did not meet the four-pronged test as required; and (3) the Town could move again at a later date if AMMIC's financial situation drastically changed.  The Town's anticipated argument that Judge Saylor ruled that AMMIC's financial stability was relevant to any claim or defense is unfounded.

[2]    *See supra*, note 1.

215, 219-20 (D. Mass. 1993); *GTE Prod's. Corp. v. Gee*, 112 F.R.D. 169, 172 (D. Mass. 1986)

(balancing risk of competitive injury against need for confidential commercial information); *see*

*also Bank of New York v. Meridien Biao Bank Tanz. Ltd.,* 171 F.R.D. 135, 143 (S.D.N.Y. 1997)

(moving party must establish that information is confidential).

In determining whether information is confidential, courts have considered, among

others, the following factors: (1) extent to which the information is known outside the business;

(2) the extent to which it is known by employees and others involved in the business; (3)

measures taken to guard the information's secrecy; (4) the value of the information to its

business and competitors; (5) the amount of time, money, and effort expended in development of

the information; and (6) the ease or difficulty of duplicating or properly acquiring the

information. *See Four Star Capital Corp. v. Nynex Corp.*, 183 F.R.D. 91, 110 (S.D.N.Y. 1997)

(listing first four factors); 6 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 26.105[8][a]

(3d ed. 1999) (listing all factors in summary).

In this case, the runoff plan and other financial information submitted by AMMIC to the

DOI are confidential both under Illinois statutes and under the factors listed above. First, the

Illinois legislature has explicitly recognized that runoff plans and other information provided to

the DOI are *in fact* confidential and, if leaked or revealed, could be detrimental to the companies

providing such information and to the DOI's oversight and regulation of the industry. *See* 215

Ill. Comp. Stat. 5/35A-50 (2005), *infra*. Under the same statute, AMMIC is prohibited from

disclosing the contents of its filings. *See id*.

AMMIC filed its runoff plan in the form of an RBC Plan and other confidential financial

information pursuant to 215 Ill. Comp. Stat. 5/35A-50 (the Illinois Risk-Based Capital law).

Schwartz Aff. ¶ 6. The statute provides, in pertinent part:

Sec. 35A-50. Confidentiality and prohibition on announcements.

(a) All RBC Reports, to the extent the information therein is not required to be set forth in a publicly available annual statement schedule, and RBC Plans, …, with respect to any domestic insurer or foreign insurer that are filed with the Director constitute information that might be damaging to the insurer if made available to its competitors and shall be kept confidential by the Director. *This information shall not be made public or be subject to subpoena*, other than by the Director and then only for the purpose of enforcement actions taken by the Director under this Code or other provisions of the insurance laws of this State.

(b) It is the judgment of the legislature that the comparison of an insurer's total adjusted capital to any of its RBC levels *is a regulatory tool* that may indicate the need for possible corrective action with respect to the insurer and not a means to rank insurers generally. Therefore, except as otherwise required under the provisions of this Code, *the disclosure*, in any manner or form, directly or indirectly, of information containing an assertion, representation, or statement regarding the RBC levels of any insurer or any component derived in the calculation of RBC levels *by any insurer, insurance producer, limited insurance producer, broker, or other person engaged in any manner in the insurance business would be misleading and is prohibited.* In the event that a materially false statement with respect to the comparison regarding an insurer's total adjusted capital to any of its RBC levels or an inappropriate comparison of any other amount to the insurer's RBC levels is published in any written publication and the insurer is able to demonstrate to the Director with substantial proof the falsity of the statement or the inappropriateness thereof, the insurer may publish an announcement in a written publication if the sole purpose of the announcement is to rebut the materially false statement.

(c) It is the further judgment of the legislature that the RBC Instructions, RBC Reports, Adjusted RBC Reports, RBC Plans, and Revised RBC Plans are *intended solely for use by the Director in monitoring the solvency of insurers and the need for possible corrective action* with respect to insurers and shall not be used by the Director for ratemaking or considered or introduced as evidence in any rate proceeding or used by the Director to calculate or derive any elements of an appropriate premium level or rate of return for any line of insurance that an insurer or an affiliate is authorized to write.

215 Ill. Comp. Stat. 5/35A-50 (2005)(emphasis added). Accordingly, the runoff plan and other financial information submitted by AMMIC to the DOI are confidential and prohibited from disclosure.

Moreover, the runoff plan is confidential even without reference to the Illinois statute. First, AMMIC's actions demonstrate the confidential nature of the runoff plan under the factors outlined in *Four Star Capital*. AMMIC at all times maintains its runoff plan and other sensitive financial information in secrecy. *See* Schwartz Aff., ¶¶ 8, 9. For example, only a very small number of high-ranking officers and employees of the Kemper companies have access to it. *Id.*, ¶ 7. Any employee having access is required to sign a confidentiality agreement. *Id.* Additionally, AMMIC has relied and is entitled to rely on 215 Ill. Comp. Stat. 5/35A-50. Thus, through its actions and in reliance on the statute, AMMIC continues to make a concerted effort to keep the runoff plan and other information it submitted to the DOI confidential both inside and outside the company.

Second, the runoff plan also falls within the broad spectrum of internal corporate information that courts regularly classify as confidential. *See., e.g., Meridien Biao Bank,* 171 F.R.D. at 144 (finding credit-policy manuals, audit reviews, operational risk-monitoring documents, and internal auditing documents were confidential); *Gelb v. American Tel. & Tel. Co.*, 813 F. Supp. 1022, 1034-35 (S.D.N.Y. 1993) (categorizing revenue information as confidential); *GTE Products*, 112 F.R.D. at 170-71 (finding confidential certain commercial information bearing on movant's ability to gain beneficial pricing from third parties).

In this case, the runoff plan includes, among other things, such sensitive information as procedures and employment information for administering the runoff, transactional information relative to interactions with third parties (policyholders and reinsurers), and information relative

to regulatory reporting, auditing, and corporate governance. *See* Schwartz Aff., ¶¶ 8, 9. Like the confidential documents in *Meridien Biao Bank*, *Gelb*, and *GTE Products*, this information is highly sensitive because, for example, if disclosure of recovery projections with third parties and reinsurers were leaked it would weaken negotiation leverage and diminish positive cash flows. *See id.*, ¶ 9. In addition, leaked information relative to staffing and other employment projections could adversely affect employee morale and impair AMMIC's ability to retain essential staff during runoff. *Id.*

AMMIC would therefore suffer oppression if required to disclose this financial information. Moreover, any inadvertent leak arising even from a *protected* disclosure between counsel could trigger the same results and disrupt AMMIC's ability to reach its runoff milestones and maintain human capital. *See id.* Juxtaposed to this harm, the Town has not offered *any* justifiable reason for this line of discovery and it appears that its *only* intent is to create another opportunity to move for preliminary relief that was previously denied.[3]

Such an ulterior motive does not outweigh AMMIC's need to keep this information confidential. The Town's purported need is without merit because neither AMMIC nor any other Kemper company has been placed into liquidation/rehabilitation proceedings by the DOI or has otherwise failed to satisfy a money judgment. Schwartz Aff., ¶ 5, 10. Indeed, the Town cannot point to any fact that supports such a drastic change in AMMIC's position that would allow *another* attempt at preliminary injunction (as required by Judge Saylor's Order)[4] – especially when this Court has already found that the Town cannot satisfy the four-pronged test required for a preliminary injunction.

---

[3] *See supra*, note 1.
[4] *See id.*

This Court must protect AMMIC's confidential commercial information in light of no substantial justification from the Town. AMMIC's runoff plan and other financial information submitted to the DOI are confidential and the Town's need for this information does not outweigh AMMIC's right, obligation and need to protect it. As such, good cause is shown and justice requires that this Court grant the Motion. [5]

III.    **AMMIC SHOULD BE AWARDED ATTORNEY'S FEES FOR EXPENSES INCURRED IN BRINGING THIS MOTION**

Upon granting AMMIC's Motion, the Town, pursuant to FED. R. CIV. P. 26(c) and 37(a)(4), should be ordered to pay all AMMIC's expenses and attorney's fees incurred in relation to preparing, filing, and litigating this Motion. Courts may grant sanctions against a party seeking improper discovery, including an award of attorney's fees. *See* FED. R. CIV. P. 26(c), 37(a)(4); *Rickels v. City of South Bend*, 33 F.3d 785, 786-88 (7th Cir. 1994) (for serving unnecessary discovery requests that drove defendant to seek protective order, plaintiff sanctioned to pay attorney's fees for preparation of defendant's motion for protective order); *Flynn v. Church of Scientology Int'l*, 116 F.R.D. 1, 5 (D. Mass. 1986) (awarding legal fees after granting protective order precluding discovery of irrelevant and confidential financial information).

---

[5] Moreover, need-balancing from the Town's perspective is implicitly codified in the provisions of 215 Ill. Comp. Stat. 5/35A-50, *see supra*, and the Illinois Freedom of Information Act, 5 Ill. Comp. Stat. 140/7, both of which expressly protect confidential commercial information transmitted to the DOI.

The Town is expected to assert that the information is no longer confidential by the mere fact of its submittal to the DOI. This is a *non sequitur*. Providing confidential financial information to a government agency does not alone waive the confidential nature of the information submitted. The later posit is illustrated by 215 Ill. Comp. Stat. 5/35A-50, *see supra*, and by the Illinois Freedom of Information Act, which provides an express exemption for such confidential information transferred to a state agency:

The following shall be exempt from inspection and copying: . . . (g) Trade secrets and <u>commercial or financial information</u> obtained from a person or business where trade secrets or <u>information are proprietary, privileged or confidential</u> . . . .

5 Ill. Comp. Stat. 140/7(g) (emphasis added). Therefore, the mere transmittal of AMMIC's runoff plan and other financial information to the DOI does not strip them of their confidential nature.

Without substantial justification for its attempt to discover irrelevant and confidential information (other than for the improper purpose of collection), this Court should grant AMMIC its expenses and legal fees should the Motion be granted. Rule 26(c), by virtue of incorporating Rule 37(a)(4), provides that upon granting a protective order the court:

> shall . . . require the party . . . whose conduct necessitated the motion . . . to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, *unless the court finds that the opposition to the motion was substantially justified* or that other circumstances make an award of expenses unjust.

FED. R. CIV. P. 37(a)(4) (cited in *Flynn* 116 F.R.D. at 5 (requiring opposing party to pay movant's legal fees after awarding the protective order because the opposition was not substantially justified)) (emphasis added); *see also Odie v. General Motors Corp.*, 131 F.R.D. 365, 366 (D. Mass. 1990). As in *Flynn*, where the court found no substantial justification in discovering irrelevant and confidential financial information, the Town here is without substantial justification in its pursuit of AMMIC's irrelevant and confidential financial information and runoff plan. Thus, as in *Flynn*, this Court should allow AMMIC its fees if the Motion is granted.

## CONCLUSION

For the foregoing reasons, AMMIC respectfully requests that the Court allow its Motion and preclude the Town from discovering (either by written discovery or deposition questioning of any witness) the confidential runoff plan or other confidential information AMMIC submitted to the DOI.

Respectfully submitted,

**AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY**

By its attorneys

**HOLLAND & KNIGHT LLP**

  */s/ Deborah S. Griffin*
Deborah S. Griffin, BBO #211460
Jeff D. Bernarducci, BBO #657454
10 St. James Avenue
Boston, MA  02116
Tel:    (617) 523-2700
Fax:    (617) 523-6850

Dated: April 22, 2005

# 2764890_v1

13