**EXHIBIT A TO
AFFIDAVIT OF DEBORAH S. GRIFFIN IN SUPPORT OF
PLAINTIFF'S MOTION FOR PROTECTIVE ORDER**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY,<br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>TOWN OF NORTH BROOKFIELD,<br>　　　　　　　　Defendant. | Civil Action No. 03-40266 NMG |

AMENDED COMPLAINT FOR DECLARATORY JUDGMENT
UNDER 28 U.S.C. § 2201

　　　1.　　The plaintiff, American Manufacturers Mutual Insurance Company ("AMMIC"), is an Illinois corporation authorized to issue surety bonds in the Commonwealth of Massachusetts, with its principal place of business in Long Grove, Illinois.

　　　2.　　Defendant, the Town of North Brookfield, Massachusetts (the "Town"), is a municipal corporation organized under the laws of the Commonwealth of Massachusetts, with its principal place of business in North Brookfield, Massachusetts.

　　　3.　　This Court has jurisdiction over the subject matter of this case under 28 U.S.C. § 1332, as the plaintiff is a citizen of Illinois, the defendant is a citizen of Massachusetts and more than $75,000, exclusive of interest and costs, is in dispute.

　　　4.　　Venue is proper in this District because the defendant has its principal place of business in Massachusetts.

5. This action is brought pursuant to 28 U.S.C. § 2201 for the purpose of determining a question of actual controversy between the parties.

6. AMMIC has issued, as surety, a performance bond naming E.J. Sciaba Contracting Company, Inc. ("Sciaba") as principal and the defendant as obligee (the "Bond"), with respect to a contract (the "Contract") dated April 19, 2002, for construction of the Junior/Senior High School, North Brookfield, Massachusetts (the "Project"). A true copy of the Bond is attached hereto as Exhibit 1.

7. On or about July 23, 2003 the Town terminated the right of Sciaba to continue performing under the Contract and made demand upon AMMIC to respond under its Bond.

8. AMMIC obtained proposals from qualified contractors who were acceptable to the Town for a contract for performance and completion of the Contract, albeit on dates later than those required under the Contract, arranged for a contract to be prepared for execution by the Town and the contractor (who was selected with the Town's concurrence), together with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Contract.

9. AMMIC has been attempting to determine, and to reach agreement with the Town as to, the amount of damages owed by AMMIC under the applicable provisions of the Bond, taking into consideration the Town's legitimate claims and AMMIC's legitimate partial defenses. The parties have not reached agreement. AMMIC has determined that it owes the Town the sum of $2,538,838.37 and has delivered a group of checks in that amount to the Town, unconditionally. The Town

disagrees with AMMIC's determination and demands payment of additional unspecified amounts.

10. In addition to the above-referenced payment, AMMIC has also delivered a check payable to the Town in the amount of $659,157.80, conditioned only upon the Town executing the completion contract tendered to it, but reserving the right to recover any part of the amount so paid that AMMIC does not in fact owe. The amount of this check, when added to the $2,538,838.37 paid unconditionally, put funds in the hands of the Town sufficient for it to pay the full amount of the fixed price under the completion contract, had the completion contract been accepted promptly upon tender. AMMIC did not require the Town to execute an agreement with or release any rights against AMMIC.

11. The Town has refused to execute the completion contract tendered to it by AMMIC and has demanded that AMMIC itself undertake completion of the Contract work and made other unreasonable and unwarranted demands, which AMMIC has declined to do or to meet.

12. An actual controversy has arisen between AMMIC and the Town with respect to, among other things, (a) the amount, if any, owed by AMMIC under the Bond beyond the amount previously paid unconditionally, (b) the Town's obligation to execute the tendered completion contract and otherwise to mitigate its damages, and (c) the obligation (asserted by the Town but denied by AMMIC) of AMMIC to undertake completion of the contract work itself.

3

WHEREFORE, the plaintiff, American Manufacturers Mutual Insurance Company, hereby demands that the Court:

A. enter a declaratory judgment declaring that American Manufacturers Mutual Insurance Company has complied with its obligations under the Bond by tendering a completion contract and accompanying performance and payment bonds, and declaring what amount, if any, is owed by American Manufacturers Mutual Insurance Company to the Town of North Brookfield over and above the amount paid unconditionally by it; and

B. enter an order requiring the Town of North Brookfield to refund to American Manufacturers Mutual Insurance Company any portion of the conditional payment made by it in excess of amount owed; and

C. enter such other orders that the Court may determine to be warranted.

American Manufacturers Mutual
Insurance Company

By its attorneys

Dec. 3, 2003

_____
Deborah S. Griffin, BBO #211460
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA 02116
Tel:   (617) 305-2044
Fax:   (617) 523-6850

# 1371781_v2
431261.00002

4

**EXHIBIT B TO
AFFIDAVIT OF DEBORAH S. GRIFFIN IN SUPPORT OF
PLAINTIFF'S MOTION FOR PROTECTIVE ORDER**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. No. 03-40266 NMG

AMERICAN MANUFACTURERS MUTUAL
INSURANCE COMPANY,

    Plaintiff

v.

TOWN OF NORTH BROOKFIELD,

    Defendant

## ANSWER TO AMENDED COMPLAINT AND COUNTERCLAIM

1.    The defendant, Town of North Brookfield ("Town"), is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 1 of the Complaint.

2.    The Town admits the allegations set forth in paragraph 2 of the Complaint.

3.    Paragraph 3 of the Complaint contains conclusions of law for which no answer is required by the Town. The Town further states that it does not contest this Court's jurisdiction over this matter.

4.    Paragraph 4 of the Complaint contains conclusions of law for which no answer is required by the Town. The Town further states that it does not contest whether venue is proper in this Court.

5.    Paragraph 5 of the Complaint contains conclusions of law for which no answer is required by the Town.

6. The Town admits the allegations set forth in paragraph 6 of the Complaint. The Town further states that the document attached as Exhibit 1 speaks for itself and does not require a response by the Town.

7. The Town admits the allegations set forth in paragraph 7 of the Complaint. The Town further states that E.J. Sciaba Contracting Company, Inc. ("Sciaba"), the general contractor on the Project, voluntarily defaulted on its contract with the Town prior to the Town's termination of Sciaba's right to continue performing under the contract.

8. The Town admits the allegations set forth in paragraph 8 of the Complaint. The Town states that AMMIC made substantial changes to the terms of the negotiated completion contract that was agreed to by the Town without consent or agreement of the Town. The Town further states that the actions taken by AMMIC were grossly and unreasonably delayed without justification.

9. The Town is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in the first sentence of paragraph 9 of the Complaint, except that the Town denies that AMMIC has legitimate partial defenses. The Town admits the remaining allegations set forth in paragraph 9 of the Complaint.

10. The Town admits the allegations set forth in the first sentence of paragraph 10 of the Complaint. The Town denies the allegations set forth in the second sentence of paragraph 10 of the Complaint. The Town admits the allegations set forth in the third sentence of paragraph 10.

11. The Town denies the allegations set forth in paragraph 11 of the Complaint.

12. The Town admits that a controversy between AMMIC and the Town exists with respect to the amount owed by AMMIC under the Bond and denies the remaining allegations set forth in paragraph 12 of the Complaint.

## FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

## SECOND DEFENSE

The plaintiff's claims are barred by the doctrine of laches.

## THIRD DEFENSE

The plaintiff's claims are barred by the doctrine of unclean hands.

## FOURTH DEFENSE

The plaintiff's claims are barred by the doctrine of estoppel.

## FIFTH DEFENSE

The financial obligations that the plaintiff seeks to have imposed upon the Town are the result of the acts or omissions of a third party for whose conduct the Town is not legally responsible.

## SIXTH DEFENSE

The plaintiff's claims are barred by their falsity.

## SEVENTH DEFENSE

The plaintiff's claims are barred by an absence of legal responsibility on the part of the Town.

## COUNTERCLAIM

1. The defendant/plaintiff in counterclaim is the Town of North Brookfield ("Town"), a municipality duly established in accordance with the laws of the Commonwealth of

3

Massachusetts with a usual place of business located at 185 North Main Street, North Brookfield, Massachusetts.

2.      The plaintiff/defendant in counterclaim is American Manufacturers Mutual Insurance Company ("AMMIC"), which upon information and belief, is an Illinois corporation authorized to issue surety bonds in the Commonwealth of Massachusetts with a principal place of business in Long Grove, Illinois.

3.      On or about April 19, 2002, the Town entered into a contract with E.J. Sciaba Contracting Company, Inc. ("Sciaba") for the construction of the North Brookfield Jr./Sr. High School ("Contract").

4.      On or about April 19, 2002, AMMIC, as surety, and Sciaba, as principal, made, executed and delivered to the Town a performance bond in the penal sum of $13,222,000.00. A copy of the performance bond is attached hereto as Exhibit A.

5.      Pursuant to the Contract, Sciaba was required to complete construction of the building by June 30, 2003 and the Phase 4 parking lot and related work by October 31, 2003. These deadlines were extended to July 17, 2003 and November 17, 2003, respectively.

6.      Change Order No.3 to the Contract extended the project deadlines by 28 days so that Sciaba was required to substantially complete the building by August 15, 2003 and the Phase 4 work by December 15, 2003. A copy of Change Order No. 3 is attached hereto as Exhibit B.

7.      On or about April 23, 2003 the Town notified Sciaba and AMMIC that Sciaba was behind schedule and it did not appear to the Town that Sciaba was likely to complete the project in a timely manner. A copy of the April 23, 2003 letter from School Superintendent Robert O'Neill to AMMIC and Sciaba is attached hereto as Exhibit C.

8.      On or about May 21, 2003, representatives of the Town met with representatives of Sciaba and AMMIC to discuss the Town's concerns with Sciaba's progress.

9.      At the May 21, 2003 meeting, Sciaba's representatives indicated that a new project manager had been assigned to the project and that it was in the process of preparing a new completion schedule, which it indicated would be provided to the Town prior to the submission of Sciaba's next payment requisition.

10.     AMMIC's representatives at said meeting indicated that it had requested financial information from Sciaba in response to the Town's claim and that it appeared that Sciaba was having a cash flow problem.

11.     When specifically asked at said meeting if it would take over the project if Sciaba was unable to perform, AMMIC's representatives informed the Town that AMMIC did not foresee that Sciaba would be unable to perform the project and as a result, a takeover would not be necessary.

12.     At the May 21, 2003 meeting, AMMIC's representatives did not request that the Town make any checks for future payments payable to AMMIC or to AMMIC and Sciaba jointly.

13.     On or about May 21, 2003, Sciaba provided to project architect, Dore & Whittier, lien waivers executed by Sciaba's subcontractors that Sciaba failed to provide with two previously approved payment requisitions for March 2003 and April 2003. As a result, the Town made payments to Sciaba on May 21, 2003 in the amount of $287,556.28 for its March 2003 payment requisition and on May 27, 2003 in the amount of $443,733.76 for its April 2003 payment requisition.

14. On or about June 5, 2003, counsel for AMMIC forwarded to counsel for the Town a copy of a letter dated May 30, 2003 from Sciaba indicating that Sciaba was declaring a voluntary default for convenience on the project. A copy of the letter dated June 5, 2003 from AMMIC's counsel is attached hereto as Exhibit D.

15. Counsel for AMMIC's June 5, 2003 letter also included a letter from Sciaba requesting that all payments that were due or to become due on the project be made to AMMIC as performance bond surety. See Exhibit D.

16. Prior to June 5, 2003, neither Sciaba nor AMMIC had requested of the Town that any payments due or that would become due on the project should be made payable to AMMIC or to AMMIC and Sciaba jointly.

17. Prior to receipt of Sciaba's May 30, 2003 letter on June 5, 2003, the Town had not made any payments to Sciaba until the labor and materials claimed as finished were certified by the Town's project architect, Dore & Whittier, and until Sciaba furnished the Town with lien waivers from Sciaba's subcontractors in accordance with the requirements of the Contract.

18. Since receipt of Sciaba's May 30, 2003 letter on June 5, 2003, the Town has not made any payments to Sciaba.

19. On or about July 2, 2003, the Town notified AMMIC and Sciaba that it was considering declaring a contractor default and requested a meeting with Sciaba and AMMIC in accordance with the requirements of paragraph 3.1 of the performance bond. A copy of the Town's July 2, 2003 letter is attached hereto as Exhibit E.

20. On or about July 5, 3003 AMMIC responded to the Town's July 2, 2003 letter indicating that it waived the requirement of a meeting and the passage of twenty days prior to terminating

6

the contractor's right to complete the contract under paragraphs 3.1 and 3.2 of the performance bond.

21.     On or about July 23, 2003 the Town provided formal notice to AMMIC and Sciaba that it had declared a contractor default on the part of Sciaba and formally terminated Sciaba's right to complete the contract in accordance with paragraph 3.2 of the performance bond and in accordance with the Contract. A copy of the Town's July 23, 2003 letter is attached hereto as Exhibit F.

22.     Following the declaration of contractor default, the Town and AMMIC negotiated a completion agreement that was acceptable to both parties, whereby the completion contractor would complete the building by April 30, 2004 and the Phase 4 work by August 1, 2004. A copy of the negotiated Completion Agreement is attached hereto as Exhibit G.

23.     AMMIC set several deadlines for its selection of a final completion contractor, including a deadline of October 14, 2003, all of which it failed to meet.

24.     AMMIC received bids for the completion contract on or about October 8, 2003.

25.     AMMIC did not select a completion contractor based upon the initial bids, but instead asked each bidder to make its best and final bid by October 17, 2003.

26.     Despite several requests from the Town to tender a completing contractor, AMMIC did not tender a completion contractor to the Town until on or about November 12, 2003, 6 months after Sciaba notified AMMIC of its voluntary default on the project and more than one month after initial bids were received. The completion contractor tendered on November 12, 2003 was Fontaine Bros., Inc. ("Fontaine").

27.     Fontaine's bid was in the amount of $11,381,362.00 based upon a start date of November 14, 2003.

28.     AMMIC made several unilateral changes to the terms of the completion contract that had previously been agreed to by the Town, including the dates of completion and the addition of a provision entitling the completing contractor to additional compensation for so-called latent defects, without notice to or agreement of the Town.

29.     Prior to November 12, 2003, the Town informed AMMIC that it could not enter into a contract with a completing contractor until it had received sufficient funds from AMMIC to satisfy the total completing contract price as the Town is prohibited from entering into a contract in excess of an appropriation therefor.

30.     On or about December 3, 2003, AMMIC paid to the Town $2,538,838.37 unconditionally and $659,157.80 under a reservation of rights.

31.     As a result of AMMIC's delays, Fontaine's price for the completion of the project increased by $290,934.00 to $11,672,296.00 for the completion of the project.

32.     On or about December 15, 2003, without waiver of its rights against AMMIC regarding the changed items, the Town entered into a completion contract with Fontaine for the completion of the project.  A copy of the contract is attached hereto as Exhibit H.

33.     As set forth in the completion contract, Fontaine is required to complete the building by August 26, 2004 and the Phase 4 work by October 11, 2004 and will be paid $11,672,296.00 for its services.

34.     The original Contract between the Town and Sciaba was in the amount of $13,222,000.00 and change orders in the amount of $132,829.28 were approved prior to Sciaba's voluntary

default. Prior to its default, Sciaba had been paid $5,155,969.10, leaving an unpaid balance of $8,198,860.18.

35. The difference between Fontaine's price and the Town's remaining balance on the original Contract is $3,473,435.82.

36. On or about December 15, 2003, AMMIC paid the Town an additional $125,000.00 under a reservation of rights.

37. AMMIC has paid the Town unconditionally the sum of $2,538,838.37 and a total of $784,157.80 under reservations of rights towards the completion contract deficiency, for a total of $3,322,996.10.

38. AMMIC asserts that the Town wrongfully paid Sciaba in May 2003 for work performed on the project in March and April 2003, thereby entitling AMMIC to a <u>pro tanto</u> discharge in the amount of $630,589.55, despite the fact that the Town was legally obligated to make said payments to Sciaba and the fact that AMMIC had not requested the Town to stop payments to Sciaba or to make any payments jointly to AMMIC and Sciaba.

39. AMMIC asserts that Sciaba was entitled to an additional 60 day time extension on the project for winter conditions, despite the fact that Sciaba failed to enclose the building prior to January 7, 2003, in violation of its own construction schedule as a result of its own misfeasance and delay, and despite the fact that Sciaba never requested such extension or any part thereof.

40. AMMIC asserts that the Town overpaid Sciaba in the amount of $364,951.00, but has not provided any facts to support its assertion or any explanation as to how it made such determination.

41. AMMIC has refused to pay the Town actual amounts incurred for additional design, project management, legal and delay costs and liquidated damages attributable to Sciaba's breach of the Contract, all of which are expressly recoverable under the terms of the performance bond.

42. As a result of Sciaba's failure to complete the project, the Town incurred and will incur additional design and project management fees in the amount of $674,607.24, and has incurred legal fees to date in the amount of approximately $35,000.00.

43. Article 3.3 of the Contract provides for the Town's recovery of liquidated damages in the amount of $1,000.00 for each day beyond the required completion dates that the Contract work remains incomplete and also provides that separate liquidated damages shall apply to each substantial completion date for the building and for Phase 4 work.

44. As a result of Sciaba's failure to complete the project, the Town will incur liquidated damages in the amount of $655,000.00, based on the completion dates set forth in the completion contract entered into between the Town and Fontaine.

45. As a result of Sciaba's failure to complete the project, the Town incurred costs to repair the roof of the existing building in the amount of $6,336.50.

46. Sciaba utilized natural gas at the project site and incurred charges for said gas in the amount of $16,719.40 from Keyspan. These charges remain unpaid by AMMIC.

COUNT I (Breach of Contract)

47. The Town restates and incorporates by reference the allegations set forth in paragraphs 1 through 46 of this counterclaim.

48. Pursuant to the terms of the performance bond, AMMIC is obligated to the Town for correction of defective work and completion of the Contract work if Sciaba is in default of its obligations under the Contract.

49. Sciaba breached the Contract with the Town by voluntarily defaulting on the project on or about May 30, 2003.

50. As a result of said breach by Sciaba and pursuant to the terms of the performance bond, AMMIC is obligated to the Town for the correction of defective work and completion of the Contract work, including any additional legal, design, professional and delay costs and liquidated damages incurred by the Town.

51. AMMIC has breached its obligations under the performance bond to the Town to provide for the cost of correcting defective work and completion of the Contract work and compensating the Town for its additional legal, design, professional and delay costs and liquidated damages.

52. As a result of AMMIC's breach, the Town has and continues to suffer damages and losses.

WHEREFORE, the Town demands judgment against AMMIC in the Town's favor in an amount equal to all of its damages including attorneys' fees and costs and for such other relief as the Court deems just and proper.

COUNT II (GL c.93A/176D)

53. The Town repeats and restates the allegations set forth in paragraphs 1 through 52 as if fully set forth herein.

54. AMMIC was at all times relevant to this matter engaged in the surety bond business and in trade or commerce within the Commonwealth of Massachusetts.

55. AMMIC violated G.L. c.93A and c.176D, §3(9)(a, b, c, d, e, f, g, h and n) by misrepresenting pertinent facts or provisions relating to coverages at issue; failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under the performance bond; failing to adopt and implement reasonable standards for the prompt investigation of claims arising under the performance bond; refusing to pay claims without conducting a reasonable investigation based upon all available information; failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed; failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear; compelling the Town to institute litigation to recover amounts due under the performance bond by offering substantially less than the amounts that will ultimately be recovered; failing to provide promptly a reasonable explanation of the basis in the performance bond, in relation to the facts or applicable law, for denial of a claim or for the offer of a compromise settlement.

56. AMMIC's conduct constitutes unfair methods of competition and unfair or deceptive acts or practices as defined by G.L. c.176D, §3(9) and G.L. c.93A.

57. AMMIC acted in bad faith and knowingly and willfully violated G.L. c.176D and G.L. c.93A.

58. As a direct and proximate result of AMMIC's unfair and deceptive conduct, the Town has suffered and continues to suffer losses and damages.

WHEREFORE, the Town demands judgment against AMMIC in an amount equal to three (3) times its actual damages plus interest, costs and reasonable attorneys' fees.

## COUNT III (Tort)

59. The Town repeats and restates the allegations set forth in paragraphs 1 through 58 as if fully set forth herein.

60. AMMIC was obligated to honor its obligations under the performance bond and deal fairly with the Town in the resolution of the Town's claims.

61. AMMIC negligently and/or knowingly and willfully breached its duty to the Town.

62. As a direct and proximate result of AMMIC's conduct, the Town has suffered and continues to suffer losses and damages.

WHEREFORE, the Town demands judgment against AMMIC in the Town's favor in an amount equal to all of its damages including attorneys' fees, costs and such other relief as the Court deems just and proper.

## JURY DEMAND

The Town demands a trial by jury on all issues so triable.

                TOWN OF NORTH BROOKFIELD,

                By its attorneys,

                */s/ David J. Doneski*
                David J. Doneski (BBO# 546990)
                Thomas W. McEnaney (BBO# 629130)
                Kopelman and Paige, P.C.
                 Town Counsel
                31 St. James Avenue
                Boston, MA 02116
                (617) 556-0007


                CO-COUNSEL

                */s/ Kieran B. Meagher*
                Kieran B. Meagher, Esq.
                92 Montvale Avenue
                Stoneham, MA 02180
                (781) 246-1101

208471/NBRO/0019

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by (hand)(mail) on 1/30/04