UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 03-40266 CBS

AMERICAN MANUFACTURERS MUTUAL
INSURANCE COMPANY,

    Plaintiff

v.

TOWN OF NORTH BROOKFIELD,

    Defendant

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

I.    INTRODUCTION

This is an action for declaratory judgment brought by American Manufacturers Mutual Insurance Company ("AMMIC") against the Town of North Brookfield (the "Town") seeking a declaration of its rights and responsibilities under the performance bond that AMMIC issued on the North Brookfield Junior/Senior High School construction project ("Project"). The Town has asserted a counterclaim seeking damages from AMMIC based upon breach of contract, G.L. c.93A and c.176D violations, and tort liability.

On or about April 19, 2002, the Town entered into a contract with E.J. Sciaba Contracting Company, Inc. ("Sciaba") for the construction of the Project ("Contract"). See Local Rule 56.1 Statement, ¶ 1. On or about April 19, 2002, AMMIC, as surety, and Sciaba, as principal, executed and delivered to the Town a performance bond in the penal

sum of $13,222,000.00 ("Performance Bond"). See Local Rule 56.1 Statement, ¶ 2. Pursuant to the Contract, Sciaba was required to complete construction of the building by July 15, 2003 and the Phase 4 parking lot and related work by November 17, 2003[1]. See Local Rule 56.1 Statement, Ex. B, Paragraph 3.3. Change Order No. 3 to the Contract extended the project deadlines by 28 days so that Sciaba was required to substantially complete the building by August 15, 2003 and the Phase 4 work by December 15, 2003. See Local Rule 56.1 Statement, ¶ 4. The Contract provided that in the event Sciaba did not meet the substantial completion deadlines it would be liable to the Town in the amount of $1,000 per day for each day of delay. See Local Rule 56.1 Statement, Ex. B, Paragraph 3.3.

On or about April 23, 2003, the Town notified Sciaba and AMMIC that Sciaba was behind schedule and it did not appear to the Town that Sciaba was likely to complete the Project in a timely manner. See Local Rule 56.1 Statement, ¶ 5.

On May 21, 2003, representatives of the Town met with representatives of Sciaba and AMMIC to discuss the Town's concerns with Sciaba's progress. See Local Rule 56.1 Statement, ¶ 6. Despite a discussion of AMMIC's financial status, AMMIC's representatives did not request that the Town stop payments to Sciaba or make any checks for future payments payable to AMMIC or to AMMIC and Sciaba jointly. See Local Rule 56.1 Statement, ¶ 8.

Later during the day on May 21, 2003, after the meeting, Sciaba provided to project architect, Dore & Whittier, lien waivers executed by Sciaba's subcontractors that Sciaba failed to provide with two previously approved payment requisitions for March,

---

[1] The original completion dates of June 30, 2003 for the building and October 31, 2003 for the Phase 4 work were extended prior to execution of the Contract.

2

2003 and April, 2003.  See Local Rule 56.1 Statement, ¶ 9.  As a result, the Town made payments to Sciaba on May 21, 2003 in the amount of $287,556.28 for its March, 2003 payment requisition and on May 27, 2003 in the amount of $443,733.76 for its April, 2003 payment requisition.  See Local Rule 56.1 Statement, ¶ 9.

On June 5, 2003, counsel for AMMIC forwarded to counsel for the Town a copy of a letter dated May 30, 2003 from Sciaba indicating that Sciaba was declaring its voluntary default under the Contract.  See  Local Rule 56.1 Statement, ¶ 10.  Counsel for AMMIC's letter also included a letter from Sciaba requesting that all payments that were due or to become due on the Project thereafter be sent to Sciaba in care of AMMIC as Performance Bond surety.  See Local Rule 56.1 Statement, ¶ 11.  Since receipt of Sciaba's May 30, 2003 letter on June 5, 2003, the Town has not made any payments to Sciaba.  See Local Rule 56.1 Statement, ¶ 14.

On July 2, 2003, the Town notified AMMIC and Sciaba that it was considering declaring a contractor default and requested a meeting with Sciaba and AMMIC in accordance with the requirements of paragraph 3.1 of the Performance Bond.  See Local Rule 56.1 Statement, ¶ 15.   On July 5, 2003, AMMIC responded to the Town's July 2, 2003 letter, indicating that it waived the pre-declaration requirements of a meeting and the passage of twenty days prior to contract termination provided for under paragraphs 3.1 and 3.2 of the Performance Bond.  See Local Rule 56.1 Statement, ¶ 16.  On July 23, 2003, the Town provided formal notice to AMMIC and Sciaba that it had declared a contractor default on the part of Sciaba and formally terminated Sciaba's right to complete the Contract in accordance with paragraph 3.2 of the Performance Bond and in accordance with the terms of the Contract.  See Local Rule 56.1 Statement, ¶ 17.

Section 6 of the Performance Bond provides that in the event the Owner (Town) terminates the construction contract (Contract), and triggers the obligations of the surety (AMMIC) under the bond and commits the balance of the Contract Price to mitigation of costs and damages on the construction contract, the surety (AMMIC) is obligated without duplication for:

> 6.1 The responsibilities of the Contractor for correction of defective work and completion of the Construction Contract;
>
> 6.2 Additional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Paragraph 4 [regarding completion of the Contract work]; and
>
> 6.3 Liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or non-performance of the Contractor.

There is no dispute that the Town's notices and termination of Sciaba's right to complete the Contract complied with the requirements of the Performance Bond. See Local Rule 56.1 Statement, ¶ 17. The Town seeks summary judgment on the issue of AMMIC'S liability under the Performance Bond for the additional costs the Town incurred as a result of Sciaba's default on the Contract.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law." Fed.R.Civ.P. 56(c). "[T]he court must look at the record in the light most favorable to the party opposing the motion and must indulge all inferences favorable to that party." Stepanischen v. Merchants Dispatch Transportation Corp., 722 F.2d 922, 928 (1st Cir. 1983).

In order to defeat a summary judgment motion, "the non-moving party must demonstrate the existence of a genuine issue of material fact pertaining to those issues on which it would bear the burden of proof at trial." Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1171 (1st Cir. 1988). A genuine issue of fact is "one in which the party opposing summary judgment provides evidence 'such that a reasonable jury could return a verdict for the non-moving party.'" Perez De La Cruz v. Crowley Towing and Transportation Co., 807 F.2d 1084, 1086 (1st Cir. 1986) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will have the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1987).

III.  ARGUMENT

A. AMMIC IS LIABLE UNDER THE PERFORMANCE BOND FOR THE ADDITIONAL COSTS INCURRED BY THE TOWN TO COMPLETE THE PROJECT.

The language of a bond is strictly construed and controls the obligations of a surety. National Fire Ins. Co. of Hartford v. Fortune Const. Co., 320 F.3d 1260, 1278 (11th Cir. 2003); Restatement (Third) of Suretyship & Guaranty §§ 17(2), 32(1) (1995); John W. Egan Co., Inc. v. Major Const. Management Corp. 46 Mass.App.Ct. 643, 646-

5

647 (1999) (noting that the obligation of the surety under a payment bond corresponds to that of the principal). The plain terms of the Performance Bond unequivocally establish AMMIC's liability to the Town for the additional design, project management, legal and delay costs and liquidated damages incurred by the Town in connection with Sciaba's breach of the Contract.

There is no dispute that Town's notices complied with the requirements of the Performance Bond. See Local Rule 56.1 Statement, ¶ 17. As set forth above, the Town properly notified AMMIC and Sciaba that it was considering declaring a contractor default and requested a meeting with Sciaba and AMMIC in accordance with the requirements of paragraph 3.1 of the Performance Bond. AMMIC responded to the Town's notice letter with its own letter stating that it waived the pre-declaration requirements of a meeting and the passage of twenty days prior to contract termination provided for under paragraphs 3.1 and 3.2 of the Performance Bond. The Town subsequently provided formal notice to AMMIC and Sciaba that it had declared a contractor default on the part of Sciaba and formally terminated Sciaba's right to complete the Contract in accordance with paragraph 3.2 of the Performance Bond and in accordance with the terms of the Contract.

AMMIC's liability under the terms of the Performance Bond is clear. The only issue is the amount of damages that are payable to the Town on account of a) the additional costs to correct the defective work and complete the Contract, b) the additional legal, design professional and delay costs resulting from Sciaba's default and from AMMIC's actions and failure to act, and c) liquidated damages to the extent that they are

not duplicative. Therefore, the Town is entitled to judgment as a matter of law on the issue of AMMIC's liability under Section 6 of the Performance Bond.

AMMIC may argue that the Town's damages for its additional costs incurred for legal and design professional costs are limited to its liquidated damages under the Contract. This argument, however, directly contradicts the plain and unambiguous language of the Performance Bond, which, as set forth above, allows for the recovery of both additional legal, design professional and delay costs resulting from the contractor's default and liquidated damages to the extent that they are not duplicative. The Performance Bond's terms must be strictly construed. National Fire Ins. Co. of Hartford, supra 320 F.3d at 1278 (11th Cir. 2003); Restatement (Third) of Suretyship & Guaranty §§ 17(2), 32(1) (1995); John W. Egan Co., Inc., 46 Mass.App.Ct. at 646-647 (1999). Accordingly, AMMIC's liability for all of the kinds of costs enumerated in Section 6 of the Performance Bond is indisputable. Only the amount of those costs remains to be determined.

Moreover, the Contract specifically provides that liquidated damages imposed in the event of a delay are not paid as a penalty, but "to partially cover losses and expenses to the Owner that are or may be impracticable to ascertain." See Local Rule 56.1 Statement, Ex. B, Paragraph 3.3 (emphasis added). Clearly, the liquidated damages are not duplicative as AMMIC may suggest. The Contract also provides that "[a]llowing the Contractor to continue to finish the work (or any portion of the work) after the time specified for completion of the Work shall not operate as a waiver on the part of the Owner of any of its rights under the Contract Documents or otherwise under law or equity." Id. Based on this clear and unambiguous Contract language, the Town retains

7

the right to take action under the Contract or otherwise at law or equity to remedy a breach by Sciaba. As a result, in the event of a delay in substantial completion of the work, the Town is not limited to recovery of only liquidated damages, but may also elect to pursue other remedies available under the Contract or at law or in equity as a result of the delay.

> B. THE TOWN IS ENTITLED TO SUMMARY JUDGMENT ON AMMIC'S CLAIM FOR A PRO TANTO DISCHARGE FROM LIABILITY IN THE AMOUNT OF $630,589.55 BASED ON PAYMENTS MADE BY THE TOWN TO SCIABA IN MAY OF 2003.

AMMIC argues that it is entitled to a pro tanto discharge of its obligations under the Performance Bond in the amount of $630,589.55 based upon its position that the Town wrongfully made payments to Sciaba following the May 21, 2003 meeting among representatives of the Town, AMMIC and Sciaba. However, the Town made no wrongful payments. AMMIC never directed the Town to withhold payments from Sciaba prior to June 5, 2003. Therefore, prior to that date, the Town was obligated to and properly made payments to Sciaba in accordance with the terms of the Contract.

In certain circumstances, a surety may be entitled to a discharge of a portion of its liability when the bonded contract is materially altered or changed without the surety's knowledge or consent and the surety is prejudiced or sustains damage. U.S. v. Reliance Ins. Co., 799 F2.d 1382, 1385 (9th Cir. 1986). These circumstances do not exist here. In paragraph 8 of the Performance Bond, AMMIC "waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations." See Local Rule 56.1 Statement, Ex. C. Therefore, AMMIC is not entitled to any discharge.

In order to avail itself of the discharge defense, a surety has "'an unusually heavy burden in showing that the determination made [to issue payment to a contractor]… was arbitrary and capricious….'" Balboa Ins. Co. v. U.S., 775 F.2d 1158, 1164 (Fed. Cir. 1985).  As set forth in Fireman's Fund Ins. Co. v. U.S., 909 F.2d 495, 498 (Fed Cir. 1990), it is clear that when a surety issues a bond to a governmental owner for a public project, notice by the surety to the government is a prerequisite to trigger government responsibility to the surety:  "the government as obligee owes no equitable duty to a surety . . . unless the surety notifies the government that the principal has defaulted under the bond."

Stated another way, "before any obligation arises to withhold or divert funds, the Government must be notified that the sureties believe the contractor is in default and cannot complete the contract." Ransom v. U.S., 17 Cl.Ct. 263, 272 (1989); see Reliance Insurance Company v. U.S., 27 Fed. Cl. 815 (1993); Lumbermens Mutual Casualty Company v. U.S., COFC No. 04-1255C (2005). ("If a surety expects the government to withhold or divert funds prior to default, however, a surety must notify the government that the contractor cannot complete the contract"); The American Insurance Company v. U.S., COFC No. 99-721C (2004) (noting that even the government's constructive notice of a contractor's default is not sufficient absent direct notice of such default from the surety); Citing Ins. Co. of West v. U.S., 55 Fed. Cl. 529 , 539 (2003).

As the court stated in Westchester Fire Insurance Co. v. U.S., 52 Fed. Cl. Ct. 567, 579 (2002):

> Because [the surety] did not give notice to the Coast Guard of [the contractor's] default on the surety bonds, and did not request that the last progress payments be withheld, it failed to 'trigger the government's equitable duty to act with reasoned discretion toward it.' Fireman's Fund,

9

supra, 909 F.2d at 499. It is not the Government's responsibility, as the Federal Circuit made clear in Fireman's Fund, to divine the surety's thinking process, or to act as a nanny for the surety and ask it whether, under the circumstances of a given contract, it would like the Government to withhold progress payments to the contractor. Id.

Moreover, in the Commonwealth of Massachusetts, in the absence of a provision in the bonds to the contrary, it is the surety's obligation to keep itself informed of any defaults on the part of its principal and not the task of the creditor to inform or give notice to the surety. John W. Egan Co., Inc. v. Major Construction Management Corp., 45 Mass. App. Ct. 643 (1999). As was stated in Watertown Fire Insurance Co. v. Simmons, 131 Mass. 85, 86 (1881):

> The creditor owes no duty of active diligence to take care of the interests of the surety. It is the business of the surety to see that his principal performs the duty which he has guaranteed, and not that of the creditor. The surety is bound to inquire for himself; and cannot complain that the creditor does not notify him of the state of the accounts between him and his agent for whom the surety is liable.

When AMMIC notified counsel for the Town on June 5, 2003 that Sciaba was declaring its voluntary default under the Contract, it also provided the Town with a letter from Sciaba requesting that all payments that were due or to become due on the Project be sent to Sciaba in care of AMMIC as Performance Bond surety. See Local Rule 56.1 Statement, ¶ 11. Prior to June 5, 2003, neither Sciaba nor AMMIC requested of the Town that any payments due on the Project be made payable to AMMIC or to AMMIC and Sciaba jointly. See Local Rule 56.1 Statement, ¶ 12. The responsibility for securing any change in the contract payment procedures rested solely with AMMIC. As AMMIC never requested the Town to withhold or divert payments from Sciaba, it cannot complain that the payments of May 21 and 27, 2005 were wrongful. Accordingly, AMMIC has

failed to meet its "unusually heavy burden" that it is entitled to a pro tanto discharge of liability concerning the payments.

Since AMMIC never requested that the Town take any specific action concerning payments to Sciaba, the Town was bound to make payments to Sciaba in accordance with the requirements of the Contract and G.L. c.30, §39K. The Contract provides that, in the event that Sciaba submitted an application for payment to the architect not later than the first day of a given month, the Town "shall make payment to the Contractor not later than the <u>fifteenth</u> day of the month." <u>See</u> <u>Local Rule 56.1 Statement, Ex. B, Paragraph 5.1.3</u>. The Contract further provides that if the application for payment is received by the architect after the first day of the month, the Town must make payment "not later than <u>fifteen</u> days after the Architect receives the Application for Payment." <u>Id</u>.

The Contract also requires that Sciaba furnish lien waivers to the Town from its subcontractors as a condition of payment[2]. <u>See</u> <u>Local Rule 56.1 Statement, Ex. M</u>. The two payments made in May of 2003 to Sciaba were for Payment Application Nos. 12 and 13B, which were for work performed by Sciaba in March and April of 2003, respectively. The only reason that the payments were not made sooner was that Sciaba had not furnished the required lien waivers. <u>See</u> <u>Local Rule 56.1 Statement, ¶ 20</u>. It was not until the labor and materials claimed as furnished were certified by the Town's project architect, and until Sciaba furnished the Town with lien waivers from Sciaba's subcontractors in accordance with the requirements of the Contract, that the payments

---

[2] Although a subcontractor cannot place a lien on a public building, <u>see</u> G.L. c. 254, § 6, this provision was included as an additional protection to help ensure that subcontractors performing work on the Project would be paid for the work performed.

11

were made.  Id.  Since receipt of notice of Sciaba's default, the Town has not made any payments to Sciaba.

In addition to the Contract requirements, G.L. c.30, §39K requires that the awarding authority for a public building construction project make payment on a periodic pay request within fifteen days after receipt from the general contractor.  If the awarding authority fails to make timely payment Section 39K subjects the awarding authority to the assessment of interest.

> "If the awarding authority fails to make payment as herein provided, there shall be added to each such payment daily interest at the rate of three percentage points above the rediscount rate then charged by the Federal Reserve Bank of Boston commencing on the first day after said payment is due and continuing until the payment is delivered or mailed to the contractor."

In the absence of notice from AMMIC directing different arrangements, the Town's payments to Sciaba in May of 2003 cannot be ruled wrongful.  Thus, there is no basis for the pro tanto relief sought by AMMIC.

AMMIC may argue a) that the Town indicated at the May 21, 2003 meeting that it would not make payment to Sciaba before an updated schedule was produced, in addition to the lien waivers, and that AMMIC requested the Town to notify it of any payments to Sciaba, and b) that summary judgment on this issue is therefore precluded.  While the Town denies that such representations were ever made by its representatives, even if they were, they do not preclude the entry of summary judgment.

As set forth above, because AMMIC did not give notice to the Town of Sciaba's default and did not request that the last progress payments be withheld, it failed to "trigger the government's equitable duty to act with reasoned discretion toward it." Fireman's Fund, supra, 909 F.2d at 499.  The Town owes no owes no duty of active

12

diligence to take care of the interests of AMMIC, as the Performance Bond surety. Id. at 499. AMMIC was bound to inquire for itself and cannot complain that the Town did not notify it of the state of the accounts between the Town and Sciaba. John W. Egan Co., Inc., 45 Mass.App.Ct. at 643. Since AMMIC never requested the Town to withhold or divert payments from Sciaba prior to June 5, 2003, it cannot contend that the payments of May 21 and 27, 2005 were wrongful.

Moreover, AMMIC has failed to even identify the person or persons who allegedly made the statements. The meeting was attended by a number of individuals. See Local Rule 56.1 Statement, ¶ 7.

To the extent that AMMIC seeks to rely on statements allegedly made by a representative of the Town, it must identify that person and establish that he had authority to speak for the Town on the matter. Entities such as AMMIC who deal with a Massachusetts municipality have the burden and obligations "to take notice of the scope of authority of those professing to act as agents. . ." of the municipality. Simpson v. City of Marlborough, 236 Mass. 210, 213 (1920). Absent specific direction from AMMIC, the Town was obligated under the Contract and G.L. c. 30, §39K to forward the certified payments to Sciaba.

Finally, obvious policy rationales support the entry of summary judgment for the Town on the pro tanto relief issue. In order to find for AMMIC on this issue, the Court would have to find that the Town was required to directly violate the Contract and G.L. c.30, §39K and refuse to pay Sciaba's requisitions. Such a finding would place the Town, and any public entity undertaking a building construction project, in the untenable position of having to violate the law regarding contractor payments in order to escape

risking liability to a surety, even when the surety fails to provide any direction concerning contract payments. Public authorities should not be subjected to this intolerable burden.

IV. CONCLUSION

For all of the reasons set forth in its Motion, this Memorandum and the materials submitted herewith, the Town respectfully requests that this Honorable Court grant its Motion for Partial Summary Judgment.

TOWN OF
NORTH BROOKFIELD,

By its attorneys,

/s/Thomas W. McEnaney
David J. Doneski (BBO# 546991)
Thomas W. McEnaney(BBO#629130)
Peter L. Mello (BBO# 659680)
Kopelman and Paige, P.C.
 Town Counsel
31 St. James Avenue
Boston, MA 02116
(617) 556-0007


CO-COUNSEL


/s/Kieran B. Meagher
Kieran B. Meagher (BBO# 340920)
92 Montvale Avenue
Stoneham, MA 02180
(781) 246-1101

265095v2/NBRO/0019