UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY,<br>                              Plaintiff,<br><br>vs.<br><br>TOWN OF NORTH BROOKFIELD,<br>                              Defendant. | Civil Action No. 03-40266-CBS |

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT AS TO CLAIMS FOR DIRECT PAYMENT

Plaintiff and defendant-in-counterclaim American Manufacturers Mutual Insurance Company ("AMMIC") has moved for partial summary judgment, under Fed. R. Civ. P. 56, based upon the failure of the defendant and plaintiff-in-counterclaim Town of North Brookfield (the "Town") to comply with Mass. G.L. ch. 30 §39F, the Massachusetts statute regarding claims for direct payment to subcontractors on public construction projects, to AMMIC's prejudice.  The Town paid to Millis Plumbing Co., Inc., only $3,361.81 of its $31,505.85 claim for direct payment.  In addition, the Town paid to Greenwood Industries, Inc., only $31,350.00 of its $137,350.00 claim for direct payment.  In both instances, the Town, and paid the difference to the general contractor, in violation of the statute.  These violations prejudiced AMMIC to the extent of $33,443.55, in that the cost of completing the project following the contractor's default was higher by $33,443.55 than it should have been.

As shown in greater detail below, based on facts as to which there is no genuine dispute, AMMIC is entitled to partial summary judgment as a matter on law on this issue.  Reference is made herein to the Plaintiff's Statement of Undisputed Facts ("Facts") and the Affidavit of Deborah S. Griffin ("Griffin Aff."), filed in support of this motion.

**SUMMARY OF FACTS**

The Town entered into a contract (the "Contract") with E.J. Sciaba Contracting Company ("Sciaba") dated as of April 19, 2002, for construction of the Junior/Senior High School, North Brookfield, Massachusetts (the "Project"). Facts ¶1. The Contract was awarded pursuant to Mass. G.L. ch. 149 §§ 44A to L, and incorporated the provisions of Mass. G.L. ch. 30 § 39F, concerning subcontractor claims for direct payment. Facts ¶2.

By letter dated April 9, 2003, the plumbing subcontractor on the project, Millis Plumbing Co., Inc. ("Millis"), made a claim for direct payment in the amount of $31,505.85, covering work through March, 2003. Facts ¶3. By letter dated April 21, 2003, the roofing subcontractor on the project, Greenwood Industries, Inc. ("Greenwood"), made a claim for direct payment in the amount of $137,350.00, covering work through March, 2003. Facts ¶26. Sciaba did not reply to either of these demands. Facts ¶¶4, 27.

On April 29, 2003, Dore & Whittier, Inc., the Town's architect, certified Sciaba's Payment Application No. 12 in the amount of $287,556.28, covering work through March, 2003. Facts ¶¶5, 6, 28, 29. Included in Application No. 12 was work performed by Millis through March, 2003, which the architect certified for a total cumulative value of $82,246.55 (before retainage of $4,112.33). Facts ¶7. Also included in Application No. 12 was work performed by Greenwood through March, 2003, which the architect certified for a total cumulative value of $159,579.50 before retainage of $7,978.98, for an amount earned and payable to Greenwood of $151,600.52 net of retainage. Facts ¶30.

On May 9, 2003, Dore & Whittier, Inc., the Town's architect, certified Sciaba's Payment Application No. 13B in the amount of $443,733.76, covering work through April, 2003. Facts ¶¶8, 9. Application No. 13B included work performed by Millis through April, 2003, which the

2

architect certified for a total cumulative value of $111,731.40 (before retainage of $5,586.57). Facts ¶10. There was no change in the amount earned by Greenwood from the previous payment application.

On May 21, 2003, the Town made payments on Sciaba's Payment Application No. 12 in amounts totaling $287,556.28. Facts ¶11. Of the amount paid on Application No. 12, $252,844.47 was paid to Sciaba, but only $3,361.81 was paid to Millis and only $31,350.00 was paid to Greenwood Industries pursuant to their claims for direct payment. Facts ¶¶12-14, 31-33. The Town explained its reasoning for paying these amounts in letters to the claimants from the Town's attorney dated May 7, 2003. Facts ¶¶15, 34. In determining the amounts it paid on the direct payment claims, the Town made no deduction on account of unsatisfactory items of Millis' or Greenwood's work. Facts ¶¶16, 35. There was no court order barring the payment of Millis' or Greenwood's claims for direct payment. Facts ¶17, 36. The amounts of the payments were limited to $3,361.81 and $31,350.00 respectively because the Town only took into consideration the amounts that had been certified as complete by the architect <u>as of the dates of Millis' and Greenwood's demands</u>, Griffin Aff. Exhs. C, O, rather than the amounts that had been certified as complete either for the period to which the demand related (March, 2003) or by the time the Town gave its explanations (May 7, 2003) or by the time it made the payments (May 21, 2003).

On May 27, 2003, the Town made another payment to Sciaba, on Sciaba's Payment Application No. 13B, in the amount of $443,733.76. Facts ¶18. The Town did not pay any of that amount to Millis or Greenwood. Facts ¶¶19, 38. Instead, it was paid to Sciaba. Facts ¶¶18, 37.

3

On or about July 23, 2003, the Town terminated the right of Sciaba to continue performing under the Contract and made demand upon AMMIC to respond under its Bond. Facts ¶20. AMMIC obtained proposals from qualified contractors and tendered a contract to the Town executed by a new contractor (who was selected with the Town's concurrence), together with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on Sciaba's contract. Facts ¶21. The completing contractor's price exceeded the funds remaining unpaid under Sciaba's contract. Facts ¶22.

As part of the process of obtaining bids for completion of the work, AMMIC entered into ratification agreements with Sciaba's former subcontractors, including Millis and Greenwood. Facts ¶¶23, 42. On or about September 4, 2003, AMMIC made a payment to Millis Plumbing in the amount of $66,085.33 pursuant to the Ratification Agreement, on account of amounts previously earned by Millis but unpaid. Facts ¶24. If the Town had paid Millis the full $31,505.85 demanded, rather than only the $3,361.81 it paid, the amount earned by Millis but unpaid as of September 4, 2003, would have been $28,144.04 less than it was. Facts ¶25. Or, if the Town had retained the additional $28,144.04 the amount by which the completing contractor's price exceeded the funds remaining in the Town's hands would have been $28,144.04 less than it was.

Similarly, On or about October 21, 2003, AMMIC made a payment to Greenwood in the amount of $5,300.03 pursuant to the Ratification Agreement, on account of amounts previously earned by Greenwood but unpaid. Facts ¶43. Even though the Town had paid $106,000 less than Greenwood had demanded, the amount AMMIC had to pay Greenwood was mitigated by a payment Sciaba made to Greenwood on or about May 23, 2003, in the amount of $100,700.49. Facts ¶¶39-41. Thus, After Sciaba's payment of $100,700.49 and the Town's payment of

4

$31,350.00, there remained $5,299.51 of the amount for which Greenwood had made claim for direct payment that was unpaid. Facts ¶41. This amount was paid by AMMIC under the Ratification Agreement.[1]

Thus, the total amount by which the Town's underpayment of the claims for direct payment, and resulting overpayment to Sciaba, damaged AMMIC was $33,443.55 (= $28,144.04 + $5,299.51).

## PROCEDURAL BACKGROUND

AMMIC filed this suit seeking a declaratory judgment with respect to the amount of its liability under its performance bond, and a refund of the amounts it paid to the Town in excess of its liability. The Town counterclaimed, asserting claims for breach of contract, Chapter 93A and unspecified "tort." AMMIC, in addition to denying numerous factual allegations of the counterclaim, asserted affirmative defenses, including its Sixth Affirmative Defense: "The plaintiff-in-counterclaim's claim is barred, in whole or in part, because it made payments to the contractor in violation of Mass. General Laws c. 30 § 39F."

## ARGUMENT

**I. The Town Violated The Massachusetts Direct Payment Statute When It Reduced The Amounts Claimed By The Claimants And Paid The Difference To The General Contractor.**

Mass. G.L. ch. 30, § 39F(1)(e) states that an awarding authority that has received a claim for direct payment from a subcontractor:

> shall make direct payment to the subcontractor of the balance due under the subcontract … less any amount (i) retained by the awarding authority as the estimated cost of completing the incomplete or unsatisfactory items of work, (ii) specified in any

---

[1] The 52 cent difference between the amount AMMIC paid and the amount of the direct payment claim left unpaid results from Greenwood's rounding down to $137,350, in its demand letter, the amount actually earned, after subtracting retainage: $137,350.52.

5

>court proceedings barring such payment, or (iii) disputed by the general contractor in the sworn reply …. The awarding authority shall make further direct payments to the subcontractor forthwith after the removal of the basis for deductions from direct payments made as provided in parts (i) and (ii) of this subparagraph.

Millis' demand was for amounts earned through March, 2003. It asserted that the amounts so earned totaled $87,118.23, of which it had only been paid $55,612.38, leaving a balance due of $31,505.85. Griffin Aff. Exh. A. Since Sciaba did not respond to the demand, there was no basis or authority for the Town questioning that "the balance due under the subcontract," for purposes of Section 39F, was $31,505.85 as claimed by Millis.

Likewise, Greenwood's demand was for amounts earned through March, 2003. It asserted that the amounts so earned totaled $151,600.52 net of retainage, of which it had only been paid $14,250.00, leaving a balance due of $137,350.00. Griffin Aff. Exh. N. Since Sciaba did not respond to the demand, there was no basis or authority for the Town questioning that "the balance due under the subcontract," for purposes of Section 39F, was $137,350.00 as claimed by Greenwood.

However, the Town made its own calculations of the balances due under the subcontracts, using as the amounts earned <u>not</u> the amounts the claimants asserted (and Sciaba did not dispute) were earned as of the dates of their demands, but rather the amounts that the architect had previously certified. Since as of April 9 and April 21, 2003, the dates of the claimants' letters, the architect had not yet certified Sciaba's requisition for work performed through March, 2003, Facts ¶¶ 5, 6, the Town treated the claimants as only having earned the amounts certified through <u>prior</u> periods, or $62,078.10 in Millis' case and $48,000 in Greenwood's case.[2] After subtracting 5% retainage of $3,103.91 and prior payments by Sciaba

---

[2] These amounts appear in Column D of Sciaba's Application No. 12, line 15400.900 relating to Millis' work, and line 07500.05 relating to Greenwood's work. Griffin Aff. Exh. E.

totaling $55,612.38, the Town concluded that Millis was only entitled to direct payment of an additional $3,361.81. This rationale was spelled out by the Town's attorney in a letter to Millis. Griffin Aff. Exh. C. As to Greenwood, the Town subtracted 5% retainage of $2,400.00 and prior payments by Sciaba of $14,250.00, and concluded that Greenwood was only entitled to direct payment of an additional $31,350.00. This rationale was spelled out by the Town's attorney in a letter to Greenwood. Griffin Aff. Exh. O.

There was no court order barring the payment of either direct payment claim, and there was no estimate for the cost of completing any unsatisfactory items of either claimant's work. Therefore, under the statute, the only permissible deduction from the amount claimed by Millis Plumbing was under subparagraph (i), of an amount "retained by the awarding authority as the estimated cost of completing the incomplete or unsatisfactory items of work." The Town did not make an estimate of such amounts as to either claimant. Instead, it used the amount certified as complete a month before the demand was made. By the time the Town made a payment in response to the demand, the architect had certified Applications for Payment 12 and 13B, the latter of which certified $106,144.83 (net of retainage) for Millis' plumbing work and $151,600.52 (net of retainage) for Greenwood's roofing work. If the Town had used those figures, instead of the amounts that had been certified prior to the date of demand, and subtracted the amounts of acknowledged payments, it should have found over $50,000 eligible for direct payment to Millis, and it should have found the exact amount of Greenwood's claim, $137,500, eligible for payment to Greenwood. In both instances, the Town should have paid the full amounts of the claims.

It is clear from the language of Chapter 30 Section 39F that the estimate of the cost of completing the claimant's incomplete work should have been made as of the time of payment.

7

Chapter 30 Section 39F(1)(i) explicitly states that a subcontractor's claim for direct payment of a progress payment is valid even if it is filed before payment to the general contractor for that month's work comes due.[3] To estimate the cost of completing incomplete work as of a prior month deprives the claimant of the right the legislature intended it to have – *i.e.*, to receive direct payment for work performed in the most recent month before demand. The Town violated the statute in determining the amount paid to these claimants as it did.

Even if the Town's calculation of the amount of the cost to complete these claimants' work was correct (which it was not), the result of that calculation should have been for the Town to <u>withhold</u> the additional amount, <u>not to pay it to Sciaba</u> as it did. Chapter 30 Section 39F(1)(e)(i) authorizes a reduction of the direct payment amount on account of the cost of completing incomplete work to be "retained by the awarding authority." It does not authorize the Town to reduce the amount paid to the direct pay claimant and then release the amount of the reduction to the general contractor. The Town violated the statute by paying the amount of the reduction to Sciaba.

Furthermore, the last sentence of Chapter 30 Section 39F(1)(e) instructs the awarding authority to make <u>further</u> direct payments to the claimant as soon as the basis for deductions is removed.[4] The architect's certifications of additional earnings (above those the Town used for its calculation) on Applications 12 and 13B, on April 29 and May 9, 2003, respectively, removed the Town's purported basis for using amounts certified on earlier applications in deciding how much it would pay to the direct payment claimants. Since both of these certifications occurred

---

[3] "A demand made after the first day of the month following that for which the subcontractor performed or furnished the labor and materials for which the subcontractor seeks payment shall be valid even if delivered or mailed prior to the time payment was due on a periodic estimate from the general contractor." Mass. G.L. c. 30 §39F(1)(i).

[4] "The awarding authority shall make further direct payments to the subcontractor forthwith after the removal of the basis for deductions from direct payments made as provided in parts (i) and (ii) of this subparagraph." Mass. G.L. c. 30 §39F(1)(e).

8

before the Town made any payments (to either Sciaba or the claimants), the Town violated this provision of Chapter 30 Section 39F(1)(e).

## II. The Town's Violation Of The Direct Payment Statute Provides AMMIC With A Defense To The Extent Of The Improper Payment.

As shown above, the Town violated Chapter 30 Section 39F in at least three ways. These violations of the statute directly prejudiced AMMIC. Specifically, since the Town only paid Millis $3,361.81, it paid the rest ($28,144.04) to Sciaba. The payment to Sciaba prejudiced AMMIC. AMMIC later executed a Ratification Agreement with Millis under which AMMIC was obligated to make payments exceeding that amount. If the Town had paid Millis the additional $28,144.04 in May, 2003 (as required by the statute), the amount AMMIC would have to pay Millis to resume its work would have been less by that amount. Alternatively, if the Town had withheld the additional $28,144.04 from both Millis and Sciaba, the amount of the shortfall between the price of the completion contractor and the balance of Sciaba's contract funds remaining in the Town's hands would have been smaller by that amount, thereby reducing any liability of AMMIC for such shortfall. These undisputed facts establish prejudice as a direct result of the Town's violation of the statute.

The analysis with respect to prejudice resulting from the underpayment to Greenwood, and overpayment to Sciaba, is similar, except that, fortuitously, Sciaba made a payment to Greenwood that mitigated the prejudice, reducing it to $5,299.51, rather than the full $106,000 that the Town overpaid to Sciaba.

The Supreme Judicial Court has recognized that improper payments to a surety's principal provide the surety with a *pro tanto* discharge of its performance bond liability. *Veneto v. McCloskey* & Co., 333 Mass. 95, 104-05 (1955). This principle applies here, and provides

9

AMMIC with a defense to the extent of the $33,443.55 the Town paid to Sciaba in violation of Mass. G.L. c. 30 § 39F.

This principle is also reflected in various provisions of the performance bond AMMIC issued to the Town. Specifically, Section 3 of the bond provides:

> If there is no Owner Default, the Surety's obligation under this Bond shall arise after:
>
> …
>
> 3.3 The Owner has agreed to pay the Balance of the Contract Price to the Surety in accordance with the terms of the Construction Contract or to a contractor selected to perform the Construction Contract in accordance with the terms of the contract with the Owner.[5]

In the event the surety elects to tender a completion contract, as AMMIC did here, the surety's liability is measured as "the amount of damages as described in Paragraph 6 <u>in excess of the Balance of the Contract Price</u> …." Bond ¶ 4.3. The phrase "Balance of the Contract Price" is defined in Section 12.1 of the bond as:

> The total amount payable by the Owner to the Contractor under the Construction Contract after all proper adjustments have been made …, reduced by <u>all valid and proper payments</u> made to or on behalf of the Contractor under the Construction Contract.

Thus, under the terms of the bond, any determination of the extent of AMMIC's liability under the bond, which is at issue in both AMMIC's declaratory judgment complaint and the Town's counterclaim, and indeed the surety's liability arising at all, depend upon a determination of the "Balance of the Contract Price" under this definition. Since the Town is only entitled to credit for "valid and proper payments," the Balance of the Contract Price must be determined without deducting the $33,443.55 the Town paid improperly to Sciaba.

---

[5] The terms of the bond are undisputed. A copy of the bond is attached to the Town's Answer and Counterclaim as Exhibit A. *See* Counterclaim ¶ 4 and answer thereto.

## CONCLUSION

For the foregoing reasons, the Court should allow AMMIC's motion for partial summary judgment (a) with respect to its Amended Complaint for Declaratory Judgment, declaring that the Town's payments to Millis Plumbing Co., Inc., and Greenwood Industries, Inc., of only a portion of their claims for direct payment, and the payment of the $33,443.55 difference to Sciaba in May 2003, violated Mass. G.L. ch. 30 §39F; that such violation prejudiced AMMIC to the extent of $33,443.55; and that any amount that AMMIC might otherwise have owed under its performance bond must be reduced by $33,443.55 on account of the improper payment to Sciaba; and (b) ruling that AMMIC's Sixth Affirmative Defense to the Town's Counterclaim has merit to the extent of $33,443.55.

Respectfully submitted,

**AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY**

By its attorneys,

**HOLLAND & KNIGHT LLP**

*/s/ Deborah S. Griffin*
Deborah S. Griffin, BBO #211460
Jeff D. Bernarducci, BBO #657454
10 St. James Avenue
Boston, MA  02116
Tel:   (617) 523-2700
Fax:   (617) 523-6850

Dated:     December 16, 2005

# 2996618_v1
431261.00002