# EXHIBIT G



# EXHIBIT H

Case 4:03-cv-40266-TSH    Document 51-5    Filed 12/19/2005    Page 4 of 13



**EXHIBIT I**

AM07001

/6-7 CO2 989

LEONARD KOPELMAN
DONALD G. PAIGE
ELIZABETH A. LANE
JOYCE FRANK
JOHN W. GIORGIO
BARBARA J. SAINT ANDRE
JOEL B. BARD
JOSEPH L. TEHAN, JR
THERESA M. DOWDY
DEBORAH A. ELIASON
RICHARD BOWEN
DAVID J. DONESKI
JUDITH C. CUTLER
ILANA M. QUIRK
KATHLEEN E. CONNOLLY
DAVID C. JENKINS
MARK R. REICH

EDWARD M. REILLY
DIRECTOR WESTERN OFFICE

WILLIAM HEWIG III
JEANNE S. McKNIGHT
KATHLEEN M. O'DONNELL

KOPELMAN AND PAIGE, P. C.
ATTORNEYS AT LAW
31 ST JAMES AVENUE
BOSTON, MASSACHUSETTS 02116-4102

(617) 556-0007
FAX (617) 654-1735

PITTSFIELD OFFICE
(413) 443-6100

NORTHAMPTON OFFICE
(413) 585-8632

WORCESTER OFFICE
(508) 752-0203

SANDRA M. CHARTON
PATRICIA A. CANTOR
THOMAS P. LANE, JR.
BRIAN W. RILEY
MARY L. GIORGIO
DARREN R. KLEIN
THOMAS W. MCENANEY
JONATHAN M. SILVERSTEIN
KATHARINE GOREE DOYLE
GEORGE X. PUCCI
LAUREN F. GOLDBERG
JASON R. TALERMAN
MICHELE E. RANDAZZO
GREGG J. CORBO
RICHARD T. HOLLAND
LISA C. ADAMS
ELIZABETH R. CORBO
DANIEL C. HILL
MARCELINO LA BELLA
VICKI S. MARSH
JOHN J. GOLDROSEN
SHIRIN EVERETT
BRIAN E. GLENNON, II
JONATHAN D. EICHMAN
TODD A. FRAMPTON
CAROLYN M. MURRAY
JACKIE A. COWIN

June 9, 2003

BY HAND

Deborah S. Griffin, Esq.
Holland & Knight, LLP
10 St. James Avenue
Boston, MA 02116

JENNIFER KOOP
JUN 1 1 2003
LONG GROVE SURETY

Re: <u>North Brookfield Junior/Senior High School Project</u>

Dear Ms. Griffin:

    This letter is to follow-up our June 4, 2003 telephone conversation relative to the above-referenced matter. You asked several questions concerning the last two payments that were made by the Town to the general contractor, E.J. Sciaba Contracting Co., Inc. ("Sciaba"). Please be advised that the March 2003 requisition in the amount of $287,556.28 was paid to Sciaba on May 21, 2003. The April 2003 requisition in the amount of $443,733.76 was paid to Sciaba on May 27, 2003 after the Town received copies of lien releases from Sciaba for March 2003. Copies of the payment requisition for April, along with copies of the lien waivers, are attached hereto for your review and information. Please note that Lee Dore provided copies of the March and April requisitions and lien waivers to Mr. Anastasio last week.

    Furthermore, you have asked whether the Town has made any direct payments to subcontractors on the project pursuant to G.L. c.30, §39M. Please be advised that the Town made direct payments to Millis Plumbing in the amount of $3,361.81 on or about May 22, 2003 and to Greenwood Industries in the amount of $31,350.00 on May 21, 2003.

    You also asked whether the Town has a file regarding Mandate Erectors. It is my understanding that Mandate has initiated litigation against Sciaba. In response to your

AM 07001

**KOPELMAN AND PAIGE, P.C.**

Deborah S. Griffin, Esq.
June 9, 2003
Page 2

request, I have enclosed the Town's file documents, including a daily summary of activity that was redacted from the construction manager's daily reports.

Finally, please be advised that I have forwarded the list of potential completing general contractors that you compiled to the School Building Committee for review. I will inform you of the Committee's comments and any additions as soon as possible.

If you have any further questions, please do not hesitate to contact me.

Very truly yours,

Thomas W. McEnaney

TWM/rlf
Enc.
cc: Board of Selectmen
    School Building Committee
    Mr. Lee Dore
193437/NBRO/0001

# EXHIBIT J

| | |
|---|---|
| Contractor: | E.J. Sciaba Contracting Company, Inc. |
| Surety: | American Manufacturers Mutual Insurance Company |
| Project: | North Brookfield Intermediate & Senior High School |
| Owner/Obligee: | Town of North Brookfield, Board of Education |
| Subcontractor: | Millis Plumbing Co.<br>220 Norfolk Street, Walpole, MA 02081 |
| Claim No: | 167-SE-002-989 |
| Bond No: | 3SE 057 856 |

### RATIFICATION & ASSIGNMENT OF SUBCONTRACT & RELEASE AGREEMENT
[Revised August 21, 2003]

This Ratification Agreement is entered into by and between the Surety and the Subcontractor identified above:

Recitals:

A. Contractor entered into a Contract with the Owner/Obligee on or about December 12, 2001 for the construction of the Project described above; and

B. Subcontractor entered into a Subcontract with the Contractor on or about March 22, 2002 to perform all work specified in Section 15400, "Plumbing Work" of the Project Specifications and as more fully defined in the Subcontract with the Contractor, such Subcontract being incorporated by reference herein; and

C. Surety provided its bond or bonds as to which the Subcontractor asserts an interest as a payment claimant; and

D. Contractor has been declared to be in default of the Contract by the Owner/Obligee, or has voluntarily admitted default under that Contract, and its right to further perform work under the Contract have been or may be terminated; and

E. Subcontractor has made or may make demand on the Contractor and the Surety under the bond for payment of amounts claimed to be due under the Subcontract (the Bond Claim); and

Millis Plumbing Co.  
Revised 8/21/03

North Brookfield, MA Intermediate & Senior High School

F. As of June 1, 2003, the statement of the Subcontract account is agreed to be as follows:

| | | |
|---|---|---:|
| 1. | Original Subcontract Amount | $ 631,000.00 |
| 2. | Approved Change Orders | $ 6,447.00 |
| | and Extra Work Contracts | $ 0.00 |
| 3. | Adjusted Subcontract Amount | $ 637,447.00 |
| 4. | Value of Original Subcontract Work Completed to Date | $ 138,231.40 |
| 5. | Value of CO's and Extra Work Completed to Date | $ 6,447.00 |
| 6. | Materials Stored on and/or off Site | $ 0.00 |
| 7. | Total Work Completed to Date (4+5+6) = | $ 144,678.40 |
| 8. | Amount Retained (5%) | $ 7,233.92 |
| 9. | Total Work Completed Less Retainage (7-8) = | $ 137,444.48 |
| 10. | Total Previously Paid | $ 71,359.15 |
| 11. | Amount Currently Due (9-10) = | $ 66,085.33 |
| 12. | Value of Work Not Performed (3-7) = | $ 492,768.60 |
| 13. | Subcontract Balance (8+12): | $ 500,002.52 |

and

G. Completion of performance of the Contractor's original Contract with the Owner/Obligee has been, or may hereafter be, undertaken by Surety, or by a new contractor selected by Surety to whom completion of the Contract may be relet; and

H. Surety and Subcontractor wish to enter into an agreement pursuant to which Surety would pay to Subcontractor sums partially or wholly currently due Subcontractor, and Subcontractor would ratify and agree to perform the Subcontract, pursuant to the conditions hereinafter set forth and, to the extent not inconsistent herewith, the terms of the Subcontract.

2

NBDW24037

Millis Plumbing Co.
Revised 8/21/03

North Brookfield, MA Intermediate & Senior High School

### Agreement:

In consideration of the mutual agreements hereinafter set forth and the payment by Surety to Subcontractor as described below, and as an inducement therefore, the parties agree as follows:

1. Within seven (7) business days of the execution of this Agreement by both parties, Surety will pay to Subcontractor the sum of $66,085.33 Surety acknowledges that Subcontractor continued to work past June 1, 2003, and that Subcontractor may have earned additional money, for periods ending July 1, 2003, however, such sums will be paid to Subcontractor in accordance with the terms of paragraph 11 hereof.

2. The Amount Retained, which is set forth in recital F (8) above, will be paid to Subcontractor in accordance with the terms of paragraph 11 hereof.

3. Subcontractor warrants that the amount claimed by Subcontractor is fully and truthfully set out in recital F (11) above, and in statements and/or invoices attached hereto, and that Subcontractor does not know of any additional credits or offsets due to Contractor in connection with the Subcontract or the Project which might reduce the amount of the Bond Claim.

4. To the extent of the aforesaid payment, Subcontractor assigns, transfers and sets over to Surety all of Subcontractor's right, title and interest in and to any claims which Subcontractor has or may hereafter have against Contractor, and against any other entity, firm, corporation or fund, in connection with or in any way relating to payment for labor and materials furnished for the Subcontract or the Project.

5. Subcontractor warrants that it has paid all workmen, if any, employed by Subcontractor in connection with the Subcontract, and all suppliers of materials, services, labor and equipment, if any, used by Subcontractor on the Project through June 1, 2003 and agrees to indemnify and save harmless the Surety, Contractor, and Owner/Obligee of and from any and all liability or loss whatsoever on account of any claim for payment of labor and materials furnished for the Project against the Surety, Contractor, or Owner/Obligee by any such workmen or suppliers, or because of any misrepresentation of fact by Subcontractor set forth herein, provided, however, that Subcontractor shall not be liable to indemnify or save harmless hereunder to the extent of any amounts that may be due and owing to Subcontractor hereunder or under the Subcontract.

6. Provided Surety pays Subcontractor $66,085.33 as set forth in paragraph 1 above, Subcontractor agrees, upon request of Surety, to continue all work in progress under the Subcontract, or to resume performance of its Subcontract if Subcontractor has ceased performance. Surety agrees to pay Subcontractor for any work performed hereunder at Surety's request at the time(s) and upon the conditions set forth in the Subcontract.

3

Millis Plumbing Co.  
Revised 8/21/03

North Brookfield, MA Intermediate & Senior High School

7. Subcontractor ratifies and reaffirms the Subcontract and any Change Orders or agreed Extra Work Contracts executed or issued in connection therewith, and agrees to complete performance under the Subcontract in accordance with the terms and conditions thereof, except to the extent modified by this Agreement, waiving as against the Surety any breach or default of the Contractor that has to date occurred in respect to the Subcontract. The Surety believes but does not represent that the Owner may engage a Completing Contractor to complete the Work of the Contract, and that the Owner may require that the Completing Contractor substantially complete the Contract by April 30, 2004. The Subcontractor agrees to perform the work of its Subcontract to Substantial Completion reasonably in advance of April 30, 2004, so as to enable the Completing Contractor to complete the Work of the Contract by April 30, 2004. The parties acknowledge that this date constitutes an extension of the original substantial completion date. Any additional extensions shall be governed by the terms of the Subcontract.

As further inducement to Surety for making payment at this time, the Undersigned hereby agrees that all guarantees and warranties required under the terms of the Subcontract pertaining to the work, labor and materials furnished by the Subcontractor shall remain in full force and effect in accordance with their terms.

If the Owner concludes that any work which the Undersigned is obligated to perform hereunder is non-conforming or unacceptable pursuant to the Subcontract, the Subcontractor shall repair and/or complete all existing non-conforming and/or unacceptable work pursuant to the terms of the Subcontract and provided Subcontractor is provided timely notice as required by its Subcontract.

8. Subcontractor understands and agrees that the work under the Contract between Contractor and Owner/Obligee may be performed by the Contractor, by the Surety, or by a Completing Contractor selected by the Surety. Subcontractor agrees that the Contractors rights under the Subcontract may be assigned or relinquished to the Surety or to a Completing Contractor.

9. In the event the Subcontract is assigned to a Completing Contractor and the Completing Contractor assumes the Subcontract and this Agreement, Surety shall not be responsible for any further payment to Subcontractor, and Subcontractor shall look to the Completing Contractor or its surety for all further payments for work which is performed from and after the date of assignment provided and on the condition that the Completing Contractor and its surety furnish a sufficient payment bond governed by M.G.L. c. 149, sec. 29. Surety represents that the Completing Contractor shall furnish a Payment Bond, which shall be in the form of a Massachusetts Statutory Bond and governed by Chapter 149, Section 29.

10. In the event the Subcontract is assigned to a Completing Contractor and the Completing Contractor assumes the Subcontract, and this Agreement and the Completing

4

Millis Plumbing Co.                                      North Brookfield, MA Intermediate & Senior High School
Revised 8/21/03

Contractor and its surety furnish a payment bond governed by M.G.L. c. 149, sec. 29, the Subcontractor releases and forever discharges Contractor, the Surety and its successors or assigns from any and all claims, demands, losses, costs, damages and expenses arising from or in any way relating to the Surety's payment bond and payment for labor and materials furnished for the Project from and after the date of assignment. This release and discharge is conditioned upon the Completing Contractor and its surety furnishing a payment bond governed by M.G.L. c. 149, sec. 29.

11. Except as set forth below, the Amount Retained stated in recital F (8) hereof and the additional money earned by Subcontractor as stated in paragraph 1 hereof will be paid by Surety to Subcontractor in accordance with the terms of the Subcontract. In the event the Subcontract is assigned to a Completing Contractor and the Completing Contractor assumes the Subcontract and this Agreement, and the Completing Contractor and its surety furnish a payment bond governed by M.G.L. c. 149, sec. 29, the Amount Retained will be assigned to the Completing Contractor, and Subcontractor will look to the Completing Contractor or its surety for payment of the Amount Retained and the additional money earned in accordance with the terms of the Subcontract. In such case, the Surety will require that, upon the assignment, the Completing Contractor agree to promptly process the Subcontractor's requisitions for the additional money earned in accordance with the terms of the Subcontract.

12. Surety hereby designates GREYHAWK, North America, L.L.C., as its agent and representative for the purpose of administering this Agreement on behalf of Surety. However, in no event shall GREYHAWK North America, L.L.C., be independently liable to the Subcontractor for any claims or alleged damages arising out of its administration of this Agreement; rather, Surety shall be liable for any such meritorious claims or damages.

IN WITNESS WHEREOF, this Agreement has been executed this ___ day of _____, 2003 by:

American Manufacturers Mutual Insurance Company

By: _____
Stephen J. Beatty, Senior Surety Counsel or by Richard P. Anastasio, P.E., on behalf of GREYHAWK North America, L.L.C., Surety's Authorized Agent

Subcontractor:   Millis Plumbing Co.

By: _____
    (Signature)
    Michael D. Rogers
    (Print Name)

Its: President
     (Title)

BOS1 #1365550 v1

5