UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AMERICAN MANUFACTURERS MUTUAL
INSURANCE COMPANY,
                        Plaintiff,

vs.

TOWN OF NORTH BROOKFIELD,
                        Defendant.

Civil Action No. 03-40266-CBS

MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON
LIQUIDATED DAMAGES AS THE EXCLUSIVE REMEDY FOR DELAY

      Plaintiff and defendant-in-counterclaim American Manufacturers Mutual Insurance Company ("AMMIC") has moved for partial summary judgment, under Fed. R. Civ. P. 56, on the issue of whether the damages for delay to which defendant and plaintiff-in-counterclaim Town of North Brookfield (the "Town") was entitled are limited to liquidated damages under the Contract. If so, the Town's attempt to recover other delay damages must be denied. The Court should rule that the Town cannot recover (1) architect and construction management fees and expenses incurred as a result of the work required under the contract extending after the time for Sciaba's performance (whenever the Court determines that to be), $517,679.03, or (2) the cost of repairing a roof on the old junior-senior high school building, claimed in the amount of $6,336.50.

      As shown in greater detail below, based on facts as to which there is no genuine dispute, AMMIC is entitled to partial summary judgment as a matter on law on this issue. Reference is made herein to the Plaintiff's Statement of Undisputed Facts ("Facts") and the Affidavit of Deborah S. Griffin ("Griffin Aff."), filed in support of this motion.

**SUMMARY OF FACTS**

The Town entered into a contract (the "Contract") with E.J. Sciaba Contracting Company ("Sciaba") dated as of April 19, 2002, for construction of the Junior/Senior High School, North Brookfield, Massachusetts (the "Project"). Facts ¶1. AMMIC issued a performance bond to the Town as surety on behalf of Sciaba, as principal, with respect to the Contract. Facts ¶2.

The Project architect was Dore & Whittier, Inc. ("Dore & Whittier"). Facts ¶ 3. Dore & Whittier had entered into a contract with the Town for design and construction administration services in 2001, which provided for Dore & Whittier to furnish construction administration services for 90 days after the date of substantial completion of the work without additional compensation. Facts ¶¶4-5.

After Sciaba was selected as the contractor for the Project, Dore & Whittier and the Town executed an Addendum and a contract for Construction Management Services that added construction management services to the scope of its work. That Addendum stated:

> If the construction period extends beyond December 31, 2003 through no fault of the Owner's, it is the Owner's intent to have any additional construction management costs paid out of liquidated damages which could be potentially assessed to the General Contractor.

Facts ¶6. The contract for Construction Management Services, also entered into after Sciaba's selection, contained the following provision:

> 5.1 … Compensation shall be a Fixed Fee Lump Sum of $226,500.00 for Construction Management Services. Said fee to be paid in monthly installments, as billed, starting April 2002 and ending December 2003. It is agreed that this fee is based on a Project Construction Schedule of twenty months. If the construction duration extends beyond 30 December 2003, the Architect shall be paid for the additional service at the Architect's standards rates in effect at that time.

Facts ¶7.

By letter dated May 30, 2003, Sciaba advised the Town that it was unable to complete the Project and admitted a voluntary default. Facts ¶8. The Town received the letter on June 5,

2

2003. Facts ¶9. Effective July 23, 2003, North Brookfield terminated Sciaba's right to perform the contract. Facts ¶10.

AMMIC obtained competing bids from contractors to complete Sciaba's work and, on November 12, 2003, formally tendered North Brookfield a Completion Contract executed by Fontaine Bros ("Fontaine"). Facts ¶11. North Brookfield executed a Completion Contract (the "Executed Completion Contract") with Fontaine dated December 15, 2003, and gave Fontaine a notice to proceed the next day. Facts ¶ 12-13.

AMMIC commenced this suit seeking a declaration as to the amount of its liability under its Bond, and seeking recovery of amounts it paid the Town under a reservation of rights to the extent those payments exceeded its actual liability. The Town asserted a counterclaim, claiming, in addition to liquidated damages, $674,607.24 in additional architects and construction managers' fees. Facts ¶21. Of this amount, $156,928.21 was for fees incurred during the time construction was suspended, between June 1, 2003, when Sciaba left the job, and December 15, 2003, when Fontaine was given a notice to proceed.[1] Facts ¶22. The balance, $517,679.03, is for additional fees incurred after December 31, 2003, allegedly because of the fact that work was not yet complete.[2] Facts ¶23.

The Contract between the Town and Sciaba contains a liquidated damage provision in paragraph 3.3 that reads:

**Damages** shall be paid as follows:

… The Contractor acknowledges that delay in completion of the Work by the substantial completion dates … resulting in delay of delivery of the facilities and

---

[1] AMMIC does not seek a ruling with respect to this component of the Town's claimed damages, in this motion. *See also* note 2, *infra*.

[2] By summarizing the information above, AMMIC is not admitting that the amounts sought by the Town were either actually or reasonably incurred, or that they were caused by Sciaba's default, and expressly reserves the right to dispute them in the event this motion is denied. Rather, it submits this information to show what the Town's claim consists of.

3

site by such dates … will cause delay in use by the Owner of the school facilities and site and will cause various losses to the Owner, which may include without limitation increased administrative, engineering, construction management and construction costs.  Therefore, the Contractor further acknowledges that its obligation to complete the work by the specified dates and deliver completed [sic] the work by such dates is of the essence.  In the event the Contractor fails to achieve substantial completion of the work by the substantial completion dates indicated for the building and site phasing work, the Contractor shall pay to the Owner as liquidated damages the sum of one thousand dollars ($1,000.00) per day for each and every day thereafter that it fails to deliver such Work ….  Separate liquidated damages shall apply to each substantial completion date for the building and for the remainder of the site construction.  Such liquidated damages shall be paid not as a penalty, but to partially cover losses and expenses to the Owner, including intangible costs and losses that are or may be impractible [sic] to ascertain.  Allowing the Contractor to continue to finish the work (or any portion of the work) after the time specified for completion of the Work shall not operate as a waiver on the part of the Owner of any of its rights under the Contract Documents or otherwise under law or equity.

Facts ¶ 14.  This liquidated damage provision in the Contract was drafted by the architect on behalf of the owner, was reviewed by North Brookfield's counsel and was not negotiated with Sciaba.[3]  Facts ¶15.

Section 6 of the Bond provides:

After the Owner has terminated the Contractor's right to complete the Construction Contract, and if the Surety elects to act under Subparagraph 4.1, 4.2 or 4.3 above, then the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract.  To the limit of the amount of this Bond, but subject to commitment by the Owner of the Balance of the Contract Price to mitigation of costs and damages on the Construction Contract, the Surety is obligated without duplication for:

    6.1    The responsibilities of the Contractor for correction of defective work and completion of the Construction Contract;

    6.2    Additional legal, design professional and delay costs, resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Paragraph 4; and

---

[3]  The form of bond was specified by North Brookfield, not chosen by Sciaba or AMMIC.  The Project Manual that was part of the Contract stated that the contractor's bonds must be provided on forms specified in contract documents.  Facts ¶16.

> 6.3 Liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or non-performance of the Contractor.

Facts ¶17.

The Town had established a School Building Committee ("SBC") to oversee the Project. Facts ¶ 18. The minutes of the April 16, 2003 SBC meeting state, following a discussion of how far behind schedule Sciaba was: "The Committee noted that additional costs will be incurred to pay the architect and construction manager beyond the scheduled substantial completion dates. These funds will be made up by liquidated damages of $1,000 per day …." Facts ¶19. None of the SBC members and none of the architect's representatives present at the April 16, 2003 SBC meeting voiced an objection to the assertion that the costs of paying the architect and the construction manager past the scheduled completion dates would be made up by the liquidated damages. Facts ¶20.

North Brookfield also seeks $6,336.50 for the cost of repairing a roof on the old junior-senior high school building, arguing that "if the building was completed by August 15, 2003, as required, the Town would not have had to incur the cost of repairs to the existing high school roof."[4] Facts ¶24. The $6,336.50 that the Town seeks for the cost of repairing the roof on the old junior-senior high school building is an item of damages for the alleged delay in completion of the work. Facts ¶25.

---

[4] Similarly, by submitting this statement and the information that follows, AMMIC is not admitting that the need for the roof repair was actually caused by Sciaba's delay, and expressly reserves the right to dispute liability for such damages in the event this motion is denied. Rather, it submits this information to show what the Town's claim consists of and that it is an item of damages allegedly due to late completion.

**PROCEDURAL BACKGROUND**

AMMIC filed this suit seeking a declaratory judgment with respect to the amount of its liability under its performance bond, and a refund of the amounts it paid to the Town in excess of its liability. The Town counterclaimed, asserting claims for breach of contract, Chapter 93A and unspecified "tort." In its Counterclaim, it enumerated several categories of damages it seeks: liquidated damages, Counterclaim ¶ 44, additional design and project management fees, Counterclaim ¶ 42, and cost of repairing a roof on the old junior-senior high school building. Counterclaim ¶45. This Motion seeks a ruling, based on undisputed facts and applicable law, that liquidated damages are the Town's exclusive measure of damages due to delay in completion of the Project, and that the Town is precluded from recovering the time-related design and project management fees and the roof repair as damages in addition to liquidated damages.

**ARGUMENT**

North Brookfield's claims for $517,679.03 in additional architects' and construction managers' fees and $6,336.50 for the cost of repairing a roof on the old junior-senior high school building both allegedly stem from the delay in completion of the Project. As shown below, these claims are precluded by the liquidated damage clause in Sciaba's contract and must be disallowed. The provisions of the bond on which North Brookfield relies do not permit recovery of these alleged additional delay damages because they are duplicative of liquidated damages. In addition, the law applicable to liquidated damage provisions precludes recovery of both actual damages and liquidated damages.

North Brookfield relies upon section 6.2 of the bond for its claim for architects' fees. That provision must be read in the context of section 6 as a whole:

> After the Owner has terminated the Contractor's right to complete the Construction Contract, and if the Surety elects to act under Subparagraph 4.1, 4.2 or 4.3 above, then **the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract**, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract. To the limit of the amount of this Bond, but subject to commitment by the Owner of the Balance of the Contract Price to mitigation of costs and damages on the Construction Contract, the Surety is obligated **without duplication** for:
>
> 6.1  The responsibilities of the Contractor for correction of defective work and completion of the Construction Contract;
>
> 6.2  Additional legal, design professional and delay costs, resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Paragraph 4; and
>
> 6.3  Liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or non-performance of the Contractor.

Dep. Exh. 130 (emphasis added), Facts ¶ 17. The emphasized phrase "without duplication" makes clear that the enumeration of various categories of damages was not intended to permit duplicative recovery in the event of overlap between categories. In this case, as shown below, the language of the Contract between Sciaba and North Brookfield limits North Brookfield's damages for delay in completion of the project to liquidated damages. Permitting recovery of both additional architect and construction manager fees resulting from delayed performance <u>and</u> liquidated damages would constitute duplication, and would run contrary to the language of the bond prohibiting duplication of damages.[5]

Most importantly, the wording of section 6.3 of the bond, stated as it is in the disjunctive, permits "actual damages caused by delayed performance or non-performance of the contractor" only "<u>if</u> no liquidated damages are specified in the Construction Contract." (Emphasis added.)

---

[5] The form of bond was specified by North Brookfield, not chosen by Sciaba or AMMIC. The Project Manual stated that the contractor's bonds must be provided on forms specified in contract documents. Facts ¶16. Thus, in the event there is any ambiguity in the bond language, it must be construed against North Brookfield, not AMMIC. See annotations to Restatement 2d of Contracts § 206.

Since the Contract here <u>did</u> specify liquidated damages, actual damages for Sciaba's delayed performance or its non-performance are not afforded by the bond.

The bond also states explicitly that "the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract …." Dep. Exh. 130 § 6. Thus it is necessary to examine the language of the Contract, as well as law applicable to liquidated damage provisions, to determine the extent of the responsibilities "of the Contractor under the Construction Contract."

The Contract provided for the imposition of liquidated damages in paragraph 3.3 of the Contract:

> Damages shall be paid as follows:
>
> … The Contractor acknowledges that delay in completion of the Work by the substantial completion dates … resulting in delay of delivery of the facilities and site by such dates … will cause delay in use by the Owner of the school facilities and site and **will cause various losses to the Owner, which may include without limitation increased administrative, engineering, construction management and construction costs**. Therefore, the Contractor further acknowledges that its obligation to complete the work by the specified dates and deliver completed [sic] the work by such dates is of the essence. In the event the Contractor fails to achieve substantial completion of the work by the substantial completion dates indicated for the building and site phasing work, the Contractor shall pay to the Owner as liquidated damages the sum of one thousand dollars ($1,000.00) per day for each and every day thereafter that it fails to deliver such Work …. Separate liquidated damages shall apply to each substantial completion date for the building and for the remainder of the site construction. **Such liquidated damages shall be paid not as a penalty, but to partially cover losses and expenses to the Owner, including intangible costs and losses that are or may be impractible [sic] to ascertain.** Allowing the Contractor to continue to finish the work (or any portion of the work) after the time specified for completion of the Work shall not operate as a waiver on the part of the Owner of any of its rights under the Contract Documents or otherwise under law or equity.

Dep. Exh. 22 § 3.3 (emphasis added), Facts ¶14. This liquidated damage provision was drafted by the architect on behalf of the owner, was reviewed by North Brookfield's counsel and was not

negotiated with Sciaba.  Facts ¶15.  Accordingly, if there is any ambiguity in the language it must be construed against North Brookfield.[6]

The language of the first highlighted clause in the liquidated damage provision indicates that North Brookfield intended the $1,000 in liquidated damages to be its exclusive, comprehensive remedy for all types of damages resulting from delay in completion of the work. It listed a number of types of damages that could be caused by delay, specifically mentioning "increased administrative, engineering, [and] construction management costs," but making clear the kinds of potential damages were "without limitation" on the types anticipated.  The listing of the types of anticipated damages must be construed to indicate the types of damages for which liquidated damages were intended to compensate.  Nowhere in the clause is there a statement that the liquidated damages of $1,000 a day were intended to cover only <u>some</u> of the listed damage types.

The highlighted clause toward the end of the provision, stating that "liquidated damages shall be paid not as a penalty, but to partially cover losses and expenses to the Owner, including intangible costs and losses that are or may be impractible [sic] to ascertain," also does not state that the liquidated damages were intended <u>only</u> to cover intangible costs and losses that might be impracticable to ascertain.  Rather it was to compensate for "losses and expenses to the Owner, <u>including</u>" those types of losses.  The use of the adjective "partially" in that clause was a self-serving way of ensuring that the liquidated damage provision would not be invalidated as a penalty.[7]

---

[6]   *See* annotations to Restatement 2d of Contracts § 206.

[7]   A liquidated damage provision is only enforceable if the damages resulting from a breach would be difficult to ascertain and the liquidated damage amount, as the time of contract formation, was a reasonable estimate of actual damages that might be expected to occur in the event of a breach.  *Liberty Mutual Ins. Co. v. Greenwich Ins. Co.,* 417 F.3d 193, 199-200 (1st Cir. August 4, 2005) (quoting *Kelly v. Marx,* 428 Mass. 877, 880, 705 N.E.2d 1114, 1116 (1999)); *Honey Dew Assocs., Inc. v. M&K Food Corp.,* 241 F.3d 23, 28 n.3 (1st Cir. 2000) (same).  A

Nowhere in the liquidated damage clause is there a stated intention to permit recovery of actual damages for delay in addition to liquidated damages. By contrast, the final sentence of the liquidated damage provision reserves North Brookfield's rights under the contract documents in the event it permitted the contractor to continue working after the date for substantial completion. Clearly, the drafter of the liquidated damage provision was conscious that North Brookfield risked losing rights if permitting continued work were deemed a waiver, and explicitly countered such a result. If North Brookfield had intended to permit actual delay damages in addition to liquidated damages for delay, the non-waiver provision at the end demonstrates it knew how to say so. Such a provision should not be read into the Contract.

Not only does the language of the Contract support the conclusion that North Brookfield intended the $1,000 a day for liquidated damages to cover the very types of architects' fees that it now seeks to recover separately, but that conclusion is also supported by admissions of the Town's representatives in the evidence. The Town's representatives responsible for overseeing the Project met on April 16, 2003, and discussed their concerns about how far behind schedule Sciaba was. In the course of that discussion, the School Building Committee ("SBC") explicitly "noted that additional costs would be incurred to pay the architect and construction manager beyond the scheduled substantial completion dates, and acknowledged that "[t]hese funds will be made up by liquidated damages of $1,000 per day …." Facts ¶19. None of the SBC members and none of the architect's representatives present at the meeting voiced an objection to the assertion that the costs of paying the architect and the construction manager past the scheduled completion dates would be made up by the liquidated damages. Facts ¶20. The lack of disagreement on this interpretation of the liquidated damages provision is not surprising. The

---

liquidated amount that was thought only to cover part of the actual damages would be safe from challenge as an unreasonably high estimate.

10

same intent was stated explicitly in the Addendum to Dore & Whittier's contract that added construction management services to the scope of its work. That Addendum stated:

> If the construction period extends beyond December 31, 2003 through no fault of the Owner's, it is the Owner's intent to have any additional construction management costs paid out of liquidated damages which could be potentially assessed to the General Contractor.

Facts ¶6. These admissions show North Brookfield's own understanding of the scope and intent of the liquidated damage provision specifically with reference to expected architect fees, expressed before the prospect of litigation. North Brookfield cannot be heard to advocate a different interpretation in litigation.

Moreover, interpretation of the liquidated damages provision so as to preclude recovery of delay-related architects' and construction managers' fees is consistent with prevailing common law. Innumerable cases have held that the effect of a liquidated damages clause is to substitute the agreed amount for actual damages resulting from a breach of contract, thus preventing a dispute as to the amount of damages, and that such a clause precludes an award of actual damages in addition to liquidated damages.[8] Indeed, the limitation of an owner's recovery to liquidated damages is stated as black letter law in construction law treatises.[9]

The same reasoning applies to the Town's claim for the cost of repairing the roof of the old school building in August, 2003. The Town claims the roof would not have to be have been repaired if the new school had been completed in time to be occupied in the fall of 2003. Facts

---

[8] *See, e.g., United States Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 71 (2d Cir. 2004); *Trans World Airline v. Travelers Indem. Co.*, 262 F.2d 321, 325 (8th Cir. 1959); *Missouri ex rel. Nixon v. Prudential Health Care Plan, Inc. Community Plan,* 211 F. Supp. 2d 1016, 1019 (E.D. Mo. 2002); *Camp v. Cohn,* 151 Conn. 623, 626 (1964); *Coca-Cola Bottling Works (Thomas), Inc. v. Hazard Coca-Cola Bottling Works, Inc.,* 450 S.W.2d 515, 519 (Ky. Ct. App. 1970); *Walter Motor Truck Co. v. State Dep't. of Transp.,* 292 N.W.2d 321, 323 (S.D. 1980); *Ashley v. Lance,* 80 Wash. 2d 274, 281-82 (1972).

[9] "Once the amount of liquidated damages is established, the owner's recovery is limited to the liquidated damages sum, and the owner cannot also recover actual damages, which could be far greater." Myers, James J., Massachusetts Construction Law §14-1[b] at 14-3 (2002).

11

¶24. By definition, then, if the Town is correct, this item of damages purports to be actual damages resulting from the delay in completion of the new building and as such is duplicative of liquidated damages.

## CONCLUSION

For the foregoing reasons, the Court should allow AMMIC's Motion for Partial Summary Judgment on Liquidated Damages as the Exclusive Remedy for Delay, and rule as a matter of law that the Town cannot recover (1) architect and construction management fees and expenses incurred as a result of the work required under the contract extending after the time for Sciaba's performance, whenever the Court determines that to be (claimed to be $517,679.03) or (2) the cost of repairing a roof on the old junior-senior high school building (claimed to be $6,336.50).

Respectfully submitted,

**AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY**

By its attorneys,

**HOLLAND & KNIGHT LLP**

*/s/ Deborah S. Griffin*
Deborah S. Griffin, BBO #211460
Jeff D. Bernarducci, BBO #657454
10 St. James Avenue
Boston, MA  02116
Tel:   (617) 523-2700
Fax:   (617) 523-6850

Dated:     December 16, 2005

# 3207642_v1
431261.00002