UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY,<br>                    Plaintiff,<br><br>vs.<br><br>TOWN OF NORTH BROOKFIELD,<br>                    Defendant. | Civil Action No. 03-40266-CBS |

PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON
LIQUIDATED DAMAGES AS THE EXCLUSIVE REMEDY FOR DELAY

Plaintiff and defendant-in-counterclaim, American Manufacturers Mutual Insurance Company ("AMMIC"), has moved for partial summary judgment on the issue of whether the damages for delay to which defendant and plaintiff-in-counterclaim Town of North Brookfield (the "Town") was entitled are limited to liquidated damages under the contract. There is no material dispute as to the following facts:

1.    The Town entered into a contract (the "Contract") with E.J. Sciaba Contracting Company ("Sciaba") dated as of April 19, 2002, for construction of the Junior/Senior High School, North Brookfield, Massachusetts (the "Project"). Counterclaim [docket entry #5] ¶ 3 and Answer thereto [docket entry #6].

2.    AMMIC issued a performance bond to the Town as surety on behalf of Sciaba, as principal, with respect to the Contract. Counterclaim ¶ 4 and Answer thereto [docket entry #6].

3.    The Project architect was Dore & Whittier, Inc. ("Dore & Whittier"). See Affidavit of Deborah S. Griffin in Support Of Plaintiff's Motion For Partial Summary Judgment On Liquidated Damages As The Exclusive Remedy For Delay ("Griffin Aff.") Exh. A at 1.

4. Dore & Whittier had entered into a contract with the Town for design and construction administration services in 2001. Griffin Aff. Exh. B.

5. Dore & Whittier's contract for design and construction administration services contained the following provision:

> 2.8.3 … The following Design and Construction Administration Services shall be provided by the Architect as a Change in Services …
>
> .8   Construction Administration Services provided 90 days after the date of Substantial Completion of the Work.

Griffin Aff. Exh. B at NBDW33889-90.

6. After Sciaba was selected as the contractor for the Project, Dore & Whittier and the Town executed an Addendum dated May 22, 2002, that added construction management services to the scope of its work. That Addendum stated:

> If the construction period extends beyond December 31, 2003 through no fault of the Owner's, it is the Owner's intent to have any additional construction management costs paid out of liquidated damages which could be potentially assessed to the General Contractor.

Griffin Aff. Exh. C at NBDW34665 ¶ 2.

7. Dore & Whittier's contract for Construction Management Services, also entered into after Sciaba's selection, contained the following provision:

> 5.1 … Compensation shall be a Fixed Fee Lump Sum of $226,500.00 for Construction Management Services. Said fee to be paid in monthly installments, as billed, starting April 2002 and ending December 2003. It is agreed that this fee is based on a Project Construction Schedule of twenty months. If the construction duration extends beyond 30 December 2003, the Architect shall be paid for the additional service at the Architect's standards rates in effect at that time.

Griffin Aff. Exh. C at NBDW34663.

8. By letter dated May 30, 2003, Sciaba advised the Town that it was unable to complete the Project and admitted a voluntary default. Griffin Aff. Exh. D.

9. Sciaba's letter of voluntary default was delivered to the Town on June 5, 2003. Griffin Aff. ¶4.

10. Effective July 23, 2003, North Brookfield terminated Sciaba's right to perform the contract. Counterclaim Exh. F, admitted.

11. AMMIC obtained competing bids from contractors to complete Sciaba's work and, on November 12, 2003, formally tendered North Brookfield a Completion Contract executed by Fontaine Bros ("Fontaine") in the amount of $11,397,296.35 (the "Tendered Completion Contract"). Griffin Aff. ¶¶ 5, 6, Exhs. E, F.

12. North Brookfield executed a Completion Contract (the "Executed Completion Contract") with Fontaine dated December 15, 2003. Griffin Aff. Exh. G.

13. North Brookfield gave Fontaine a notice to proceed with work under the Executed Completion Contract on December 16, 2003. Griffin Aff. Exhs. H, I.

14. The Contract contains a liquidated damage provision in paragraph 3.3 that reads:

**Damages** shall be paid as follows:

… The Contractor acknowledges that delay in completion of the Work by the substantial completion dates … resulting in delay of delivery of the facilities and site by such dates … will cause delay in use by the Owner of the school facilities and site and will cause various losses to the Owner, which may include without limitation increased administrative, engineering, construction management and construction costs. Therefore, the Contractor further acknowledges that its obligation to complete the work by the specified dates and deliver completed [sic] the work by such dates is of the essence. In the event the Contractor fails to achieve substantial completion of the work by the substantial completion dates indicated for the building and site phasing work, the Contractor shall pay to the Owner as liquidated damages the sum of one thousand dollars ($1,000.00) per day for each and every day thereafter that it fails to deliver such Work …. Separate liquidated damages shall apply to each substantial completion date for the building and for the remainder of the site construction. Such liquidated damages shall be paid not as a penalty, but to partially cover losses and expenses to the Owner, including intangible costs and losses that are or may be impractible [sic] to ascertain. Allowing the Contractor to continue to finish the work (or any portion of the work) after the time specified for completion of the Work shall not

3

operate as a waiver on the part of the Owner of any of its rights under the Contract Documents or otherwise under law or equity.

Griffin Aff. Exh. A, § 3.3.

15. The liquidated damage provision in the Contract was drafted by the architect on behalf of the owner, was reviewed by North Brookfield's counsel and was not negotiated with Sciaba. Griffin Aff. Exh. J, Dore I:74:5-75:5.

16. The form of bond was specified by North Brookfield, not chosen by Sciaba or AMMIC. The Project Manual that was part of the Contract stated that the contractor's bonds must be provided on forms specified in contract documents. Griffin Aff. Exh. K.

17. Section 6 of the Bond provides:

After the Owner has terminated the Contractor's right to complete the Construction Contract, and if the Surety elects to act under Subparagraph 4.1, 4.2 or 4.3 above, then the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract. To the limit of the amount of this Bond, but subject to commitment by the Owner of the Balance of the Contract Price to mitigation of costs and damages on the Construction Contract, the Surety is obligated without duplication for:

    6.1 The responsibilities of the Contractor for correction of defective work and completion of the Construction Contract;

    6.2 Additional legal, design professional and delay costs, resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Paragraph 4; and

    6.3 Liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or non-performance of the Contractor.

Griffin Aff. Exh. L.

18. The Town had established a School Building Committee ("SBC") to oversee the Project. Griffin Aff. Exh. M, Murray I:8:22-11:2.

19. The minutes of the April 16, 2003 SBC meeting state, following a discussion of how far behind schedule Sciaba was: "The Committee noted that additional costs will be incurred to pay the architect and construction manager beyond the scheduled substantial completion dates. These funds will be made up by liquidated damages of $1,000 per day …." Griffin Aff. Exh. N ¶5.

20. None of the SBC members and none of the architect's representatives present at the April 16, 2003 SBC meeting voiced an objection to the assertion that the costs of paying the architect and the construction manager past the scheduled completion dates would be made up by the liquidated damages. Griffin Aff. Exh. J, Dore I:130:20-131:7; Griffin Aff. Exh. M, Murray I:97:23-99:3.

21. The Town asserted a counterclaim, claiming, in addition to liquidated damages, $674,607.24 in additional architects and construction managers' fees. Counterclaim ¶ 42; Griffin Aff. Exhs. O, P.[1]

22. Of this amount, $156,928.21 was for fees incurred during the time construction was suspended, between June 1, 2003, when Sciaba left the job, and December 15, 2003, when Fontaine was given a notice to proceed. Griffin Aff. Exh. Q, Dore & Whittier Invoice No. 53 at NBDW40872, 40873.

23. The balance of the Town's claim for additional architects and construction managers' fees, $517,679.03, is for additional fees incurred after December 31, 2003, allegedly because of the fact that work was not yet complete. ($674,607.24 - $156,928.21 = $517,679.03)

---

[1] By submitting this statement and the paragraphs that follow, AMMIC is not admitting that the amounts sought by the Town were either actually or reasonably incurred, or that they were all caused by Sciaba's default, and expressly reserves the right to dispute them in the event this motion is denied. Rather, it submits this statement to show what the Town's claim consists of.

This rationale as to the basis for the additional fees is articulated in letters of Dore & Whittier and North Brookfield's counsel. See Griffin Aff. Exhs. O, P.

24. North Brookfield also seeks $6,336.50 for the cost of repairing a roof on the old junior-senior high school building primarily in August, 2003, arguing that "if the building was completed by August 15, 2003, as required, the Town would not have had to incur the cost of repairs to the existing high school roof."[2] Counterclaim ¶45; Griffin Aff. Exh. R at AM17781-82.

25. The $6,336.50 that the Town seeks for the cost of repairing the roof on the old junior-senior high school building is an item of damages for the alleged delay in completion of the work. Griffin Aff. Exh. R at AM17781-82.

**AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY**

By its attorneys

**HOLLAND & KNIGHT LLP**

*/s/ Deborah S. Griffin*
Deborah S. Griffin, BBO #211460
Jeff D. Bernarducci, BBO #657454
10 St. James Avenue
Boston, MA  02116
Tel:   (617) 523-2700
Fax:   (617) 523-6850

Dated:   December 16, 2005

# 3207628_v1
431261.00002

---

[2] Similarly, by submitting this statement and the paragraph that follows, AMMIC is not admitting that the need for the roof repair was actually caused by Sciaba's delay, and expressly reserves the right to dispute liability for such damages in the event this motion is denied. Rather, it submits this statement to show what the Town's claim consists of, and that it is an item of alleged delay damages.