# EXHIBIT  B
# Part 1

DEPOSITION
EXHIBIT

Dore 8
4-13-05    VS



# Standard Form of Agreement Between Owner and Architect with Standard Form of Architect's Services

## AIA Document B141 - 1997
## 1997 Edition - Electronic Format

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

Copyright 1917, 1926, 1948, 1951, 1953, 1958, 1961, 1963, 1966, 1967, 1970, 1974, 1977, 1987, ©1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution.

## TABLE OF ARTICLES

1.1 INITIAL INFORMATION

1.2 RESPONSIBILITIES OF THE PARTIES

1.3 TERMS AND CONDITIONS

1.4 SCOPE OF SERVICES AND OTHER SPECIAL TERMS AND CONDITIONS

1.5 COMPENSATION

**AGREEMENT** made as of the 6th  day of June in the year 2001, effective as of December 1, 2000.
*(In words, indicate day, month and year)*

**BETWEEN** the Architect's client identified as the Owner:
*(Name, address and other information)*
Town of North Brookfield,
by and through its duly appointed School Building Committee
c/o North Brookfield Public Schools
10 New School Drive
North Brookfield, MA   01535

AIA DOCUMENT  B141-STANDARD FORM AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed  photocopying violates U.S. copyright laws and  will subject the violator legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted  below.

and the Architect:
*(Name, address and other information)*
Dore and Whittier, Inc.
1795 Williston Road
Suite 5
South Burlington, VT  05403

For the following Project:
*(Include detailed description of Project)*
Architectural, Engineering and Construction Administration services for the design and construction of the new North Brookfield Junior/Senior High School to be located in North Brookfield, MA. The Scope of Work of the Project includes the demolition of the existing high school, the construction of a new junior-senior high school, grades 7 through 12, on the same site as the existing high school and elementary school, improvements to playfields, parking, traffic circulation, paving and landscaping. The Project is further described in the Feasibility Study prepared by Dore & Whittier, Inc. for North Brookfield Schools.

The Owner and Architect agree as follows.

## ARTICLE 1.1   INITIAL INFORMATION

**1.1.1**   This Agreement is based on the following information and assumptions.
*(Note the disposition for the following items by inserting the requested information or a statement such as "not applicable," "unknown at time of execution" or "to be determined later by mutual agreement.")*
N/A

### 1.1.2   PROJECT PARAMETERS

**1.1.2.1** The objective or use is:
*(Identify or describe, if appropriate, proposed use or goals.)*
As set forth in the Feasibility Study.

**1.1.2.2** The physical parameters are:
*(Identify or describe, if appropriate, size, location, dimensions, or other pertinent information, such as geotechnical reports about the site.)*
As set forth in the Feasibility Study and as may be agreed upon in writing by the parties.

**1.1.2.3** The Owner's Program is:
*(Identify documentation or state the manner in which the program will be developed.)*
As outlined in the foregoing project description and the Feasibility Study, and as may be agreed upon in writing by the parties.

**1.1.2.4** The legal parameters are:
*(Identify pertinent legal information, including, if appropriate, land surveys and legal descriptions and restrictions of the site.)*
N/A

**1.1.2.5** ~~The financial parameters are as follows.~~ See Addendum

    **.1**  ~~Amount of the Owner's overall budget for the Project, including the Architect's compensation, is:~~ Deleted.

    **.2**  ~~Amount of the Owner's budget for the Cost of the Work, excluding the Architect's compensation, is:~~ Deleted.

**1.1.2.6** The time parameters are:
*(Identify, if appropriate, milestone dates, durations or fast track scheduling.)*
See Addendum.

**1.1.2.7** The proposed procurement or delivery method for the Project is:
*(Identify method such as competitive bid, negotiated contract, or construction management.)*
Competitive bid.

**1.1.2.8** Other parameters are:
*(Identify special characteristics or needs of the Project such as energy, environmental or historic preservation requirements.)*
As provided elsewhere in this Agreement.

### 1.1.3   PROJECT TEAM

**1.1.3.1** The Owner's Designated Representative is:

AIA DOCUMENT B141-STANDARD FORM AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

*(List name, address and other information.)*
North Brookfield School Building Committee
Mr. Donald Gillette, Co-Chairperson
Mr. James Murray, Co-Chairperson
c/o North Brookfield Public Schools
.10 New School Drive
North Brookfield, MA  01535

**1.1.3.2** The persons or entities, in addition to the Owner's Designated Representative, who are required to review the Architect's submittals to the Owner are:
*(List name, address and other information.)*
N/A

**1.1.3.3** The Owner's other consultants and contractors are:
*(List discipline and, if known, identify them by name and address.)*
N/A

**1.1.3.4** The Architect's Designated Representative is:
*(List name, address and other information.)*
Mr. Donald M. Walter, AIA
Project Manager
Dore & Whittier, Inc.
1400 Hancock Street
Quincy, MA  02609

1.1.3.4.1      See Addendum.

**1.1.3.5** The consultants retained at the Architect's expense are:
*(List discipline and, if known, identify them by name and address.)*
See Addendum.

1.1.3.5.1      See Addendum.

**1.1.4**      Other important initial information is:
N/A

**1.1.5**      When the services under this Agreement include contract administration services, the General Conditions of the Contract for Construction shall be the edition of AIA Document A201 current as of the date of this Agreement, as modified by agreement of the Owner and Contractor; however, the terms of the General Conditions shall not be inconsistent with the terms of this Agreement. ~~or as follows:~~

**1.1.6**      The information contained in this Article 1.1 may be reasonably relied upon by the Owner and Architect in determining the Architect's compensation. Both parties, however, recognize that such information may change and, ~~in that event~~ where appropriate, the Owner and the Architect shall negotiate appropriate adjustments in schedule, compensation and Change in Services in accordance with Paragraph 1.3.3.

## ARTICLE 1.2    RESPONSIBILITIES OF THE PARTIES

**1.2.1**      ~~The Owner and the Architect shall cooperate with one another to fulfill their respective obligations under this Agreement. Both parties shall endeavor to maintain good working relationships among all members of the Project team.~~
See Addendum.

### 1.2.2    OWNER

**1.2.2.1** Unless otherwise provided under this Agreement, the Owner shall provide full information in a timely manner regarding requirements for and limitations on the Project. ~~The Owner shall furnish to the Architect, within 15 days after receipt of a written request, information necessary and relevant for the Architect to evaluate, give notice of or enforce lien rights.~~

AIA DOCUMENT B141-STANDARD FORM AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed  photocopying violates U.S. copyright laws and  will subject the violator legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

Electronic Format  B141-1997

User Document: NBARCHAGREEMENT4.DOC -- 6/6/2001. AIA License Number 120787, which expires on 12/31/2001 -- Page #3

**1.2.2.2** The Owner, with the Architect's assistance, shall periodically update the budget for the Project, including that portion allocated for the Cost of the Work. ~~The Owner shall not significantly increase or decrease the overall budget, the portion of the budget allocated for the Cost of the Work, or contingencies included in the overall budget or a portion of the budget, without the agreement of the Architect to a corresponding change in the Project scope and quality.~~

**1.2.2.3** The Owner's Designated Representative identified in Paragraph 1.1.3 shall be authorized to act on the Owner's behalf with respect to the Project. The Owner or the Owner's Designated Representative shall render decisions in a timely manner pertaining to documents submitted by the Architect in order to avoid unreasonable delay in the orderly and sequential progress of the Architect's services.

**1.2.2.4** ~~The Owner shall furnish the services of consultants other than those designated in Paragraph 1.1.3 or authorize the Architect to furnish them as a Change in Services when such services are requested by the Architect and are reasonably required by the scope of the Project.~~ See Addendum.

**1.2.2.5** ~~Unless otherwise provided in this Agreement, the Owner shall furnish tests, inspections and reports required by law or the Contract Documents, such as structural, mechanical, and chemical tests, tests for air and water pollution, and tests for hazardous materials.~~ See Addendum.

**1.2.2.6** The Owner shall furnish all legal, insurance and accounting services, including auditing services, that may be reasonably necessary at any time for the Project to meet the Owner's needs and interests.

**1.2.2.7** ~~The Owner shall provide prompt written notice to the Architect if the Owner becomes aware of any fault or defect in the Project, including any errors, omissions or inconsistencies in the Architect's Instruments of Service.~~ See Addendum.

### 1.2.3   ARCHITECT

**1.2.3.1** The services performed by the Architect, Architect's employees and Architect's consultants shall be as enumerated in Article 1.4.

**1.2.3.2** ~~The Architect's services shall be performed as expeditiously as is consistent with professional skill and care and the orderly progress of the Project. The Architect shall submit for the Owner's approval a schedule for the performance of the Architect's services which initially shall be consistent with the time periods established in Subparagraph 1.1.2.6 and which shall be adjusted, if necessary, as the Project proceeds. This schedule shall include allowances for periods of time required for the Owner's review, for the performance of the Owner's consultants, and for approval of submissions by authorities having jurisdiction over the Project. Time limits established by this schedule approved by the Owner shall not, except for reasonable cause, be exceeded by the Architect or Owner.~~ See Addendum.

**1.2.3.3** The Architect's Designated Representative identified in Paragraph 1.1.3 shall be authorized to act on the Architect's behalf with respect to the Project.

**1.2.3.4** The Architect shall maintain the confidentiality of information specifically designated in writing as confidential by the Owner, unless withholding such information would violate the law, create the risk of significant harm to the public or prevent the Architect from establishing a claim or defense in an adjudicatory proceeding. The Architect shall require of the Architect's consultants similar agreements to maintain the confidentiality of information specifically designated in writing as confidential by the Owner. Neither the Architect nor its consultants shall represent or purport to represent that they speak for the Owner vis-a-vis the media or the public at-large without the Owner's express, advance written consent.

**1.2.3.5** Except with the Owner's knowledge and consent, the Architect shall not engage in any activity, or accept any employment, interest or contribution that would reasonably appear to compromise the Architect's professional judgment with respect to this Project.

**1.2.3.6** The Architect shall review laws, codes, and regulations applicable to the Architect's services. The Architect shall respond in the design of the Project to requirements imposed by governmental authorities having jurisdiction over the Project.

**1.2.3.7** The Architect shall be entitled to rely on the accuracy and completeness of services and information furnished by the

AIA DOCUMENT B141-STANDARD FORM AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

Owner. The Architect shall provide prompt written notice to the Owner if the Architect becomes aware of any errors, omissions or inconsistencies in such services or information.

## ARTICLE 1.3   TERMS AND CONDITIONS
### 1.3.1   COST OF THE WORK
**1.3.1.1** The Cost of the Work shall be the total cost or, to the extent the Project is not completed, the estimated cost to the Owner of all elements of the Project designed or specified by the Architect.

**1.3.1.2** The Cost of the Work shall include the cost at current market rates of labor and materials furnished by the Owner and equipment designed, specified, selected or specially provided for by the Architect, including the costs of management or supervision of construction or installation provided by a separate construction manager or contractor, plus a reasonable allowance for their overhead and profit. In addition, a reasonable allowance for contingencies shall be included for market conditions at the time of bidding and for changes in the Work.  A construction contingency of 7.5% above the estimated construction cost, as stated in the Estimated Project Budget attached as Exhibit A to this Agreement, shall be carried in the final estimate prior to Bid.

**1.3.1.3** The Cost of the Work does not include the compensation of the Architect and the Architect's consultants, the costs of the land, rights-of-way and financing or other costs that are the responsibility of the Owner.

### 1.3.2   INSTRUMENTS OF SERVICE
**1.3.2.1** Drawings, specifications and other documents, including those in electronic form, prepared by the Architect and the Architect's consultants are Instruments of Service for use solely with respect to this Project. The Architect and the Architect's consultants shall be deemed the authors and owners of their respective Instruments of Service and shall retain all common law, statutory and other reserved rights, including copyrights.

**1.3.2.2** ~~Upon execution of this Agreement, the Architect grants to the Owner a nonexclusive license to reproduce the Architect's Instruments of Service solely for purposes of constructing, using and maintaining the Project, provided that the Owner shall comply with all obligations, including prompt payment of all sums when due, under this Agreement. The Architect shall obtain similar nonexclusive licenses from the Architect's consultants consistent with this Agreement. Any termination of this Agreement prior to completion of the Project shall terminate this license. Upon such termination, the Owner shall refrain from making further reproductions of Instruments of Service and shall return to the Architect within seven days of termination all originals and reproductions in the Owner's possession or control. If and upon the date the Architect is adjudged in default of this Agreement, the foregoing license shall be deemed terminated and replaced by a second, nonexclusive license permitting the Owner to authorize other similarly credentialed design professionals to reproduce and, where permitted by law, to make changes, corrections or additions to the Instruments of Service solely for purposes of completing, using and maintaining the Project.~~ See Addendum.

**1.3.2.3** ~~Except for the licenses granted in Subparagraph 1.3.2.2, no other license or right shall be deemed granted or implied under this Agreement. The Owner shall not assign, delegate, sublicense, pledge or otherwise transfer any license granted herein to another party without the prior written agreement of the Architect. However, t~~ The Owner shall be permitted to authorize the Contractor, Subcontractors, Sub-subcontractors and material or equipment suppliers to reproduce applicable portions of the Instruments of Service appropriate to and for use in their execution of the Work by license granted in Subparagraph 1.3.2.2. Submission or distribution of Instruments of Service to meet official regulatory requirements or for similar purposes in connection with the Project is not to be construed as publication in derogation of the reserved rights of the Architect and the Architect's consultants. ~~The Owner shall not use the Instruments of Service for future additions or alterations to this Project or for other projects, unless the Owner obtains the prior written agreement of the Architect and the Architect's consultants. Any unauthorized use of the Instruments of Service shall be at the Owner's sole risk and without liability to the Architect and the Architect's consultants.~~

**1.3.2.4** Prior to the Architect providing to the Owner any Instruments of Service in electronic form or the Owner providing to the Architect any electronic data for incorporation into the Instruments of Service, the Owner and the Architect shall by separate written agreement set forth the specific conditions governing the format of such Instruments of Service or electronic data, including any special limitations or licenses not otherwise provided in this Agreement.

AIA DOCUMENT B141-STANDARD FORM AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

Electronic Format B141-1997

### 1.3.3 CHANGE IN SERVICES

**1.3.3.1** ~~Change in Services of the Architect, including services required of the Architect's consultants, may be accomplished after execution of this Agreement, without invalidating the Agreement, if mutually agreed in writing, if required by circumstances beyond the Architect's control, or if the Architect's services are affected as described in Subparagraph 1.3.3.2. In the absence of mutual agreement in writing, the Architect shall notify the Owner prior to providing such services. If the Owner deems that all or a part of such Change in Services is not required, the Owner shall give prompt written notice to the Architect, and the Architect shall have no obligation to provide those services. Except for a change due to the fault of the Architect, Change in Services of the Architect shall entitle the Architect to an adjustment in compensation pursuant to Paragraph 1.5.2, and to any Reimbursable Expenses described in Subparagraph 1.3.9.2 and Paragraph 1.5.5.~~ See Addendum.

**1.3.3.2** If any of the following circumstances affect the Architect's services for the Project, the Architect shall be entitled to an appropriate adjustment in the Architect's schedule and compensation.

.1 change in the instructions or approvals given by the Owner that necessitates material, substantive revisions in Instruments of Service;

.2 enactment or revision of codes, laws or regulations or official interpretations of such codes, laws or regulations by a court of law or state agency which necessitate material, substantive changes to previously prepared Instruments of Service;

.3 decisions of the Owner not rendered in a reasonably timely manner, provided that the Architect has provided the Owner with reasonable written notice of the asserted delay;

.4 significant change in the Project including, but not limited to, size, quality, complexity, the Owner's schedule or budget, or procurement method, except that services required under Subparagraph 2.1.7.6 shall not be considered Additional Services or a Change in Services;

.5 ~~failure of performance on the part of the Owner or the Owner's consultants or contractors;~~ Deleted.

.6 preparation for and attendance at a public hearing, a ~~dispute resolution proceeding or a legal proceeding~~ except where ~~the Architect is party thereto;~~ the issues include the performance of the Architect or one of its employees, agents, representatives or consultants, or the public hearing relates to a permit or is otherwise required for the Project, provided, however, that to the extent the Architect is required to perform services in connection with an excessive number of hearings before a permit-granting authority and in connection with an appeal to a court or agency regarding a permit application, the Architect's schedule and compensation shall be equitably adjusted accordingly;

.7 ~~change in the information contained in Article 1.1.~~ Preparation for and attendance at a dispute resolution proceeding or legal proceeding, except where the Architect is a party thereto or the issues include the negligent performance of the Architect or one of its employees, agents, representatives or consultants.

### 1.3.4 MEDIATION

**1.3.4.1** Any claim, dispute or other matter in question arising out of or related to this Agreement shall be subject to mediation as a condition precedent to ~~arbitration or~~ the institution of legal or equitable proceedings by either party. ~~If such matter relates to or is the subject of a lien arising out of the Architect's services, the Architect may proceed in accordance with applicable law to comply with the lien notice or filing deadlines prior to resolution of the matter by mediation or by arbitration.~~

**1.3.4.2** The Owner and Architect shall endeavor to resolve claims, disputes and other matters in question between them by non-binding mediation which, unless the parties mutually agree otherwise, shall be conducted under the auspices of the ~~in accordance with the Construction Industry Mediation Rules of the~~ American Arbitration Association in accordance with the Association's Construction Industry Mediation Rules then ~~currently~~ in effect. Request for mediation shall be filed in writing with the other party to this Agreement and with the American Arbitration Association. The request may be made concurrently with the institution of legal or equitable proceedings.~~filing of a demand for arbitration but, in such event, mediation shall proceed in~~

AIA DOCUMENT B141-STANDARD FORM AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

advance of arbitration or legal or equitable proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order. This provision shall survive completion or termination of this Agreement, but under no circumstances shall either party call for mediation of any claim or dispute arising out of this Agreement after such period as would ordinarily bar the initiation of legal or equitable proceedings to litigate such a claim or dispute under the laws of the Commonwealth of Massachusetts.

**1.3.4.3** The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

### 1.3.5   ARBITRATION

**1.3.5.1** Any claim, dispute or other matter in question arising out of or related to this Agreement shall be subject to arbitration. Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with Paragraph 1.3.4. Deleted.

**1.3.5.2** Claims, disputes and other matters in question between the parties that are not resolved by mediation shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. The demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association. Deleted.

**1.3.5.3** A demand for arbitration shall be made within a reasonable time after the claim, dispute or other matter in question has arisen. In no event shall the demand for arbitration be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations. Deleted.

**1.3.5.4** No arbitration arising out of or relating to this Agreement shall include, by consolidation or joinder or in any other manner, an additional person or entity not a party to this Agreement, except by written consent containing a specific reference to this Agreement and signed by the Owner, Architect, and any other person or entity sought to be joined. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of any claim, dispute or other matter in question not described in the written consent or with a person or entity not named or described therein. The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by parties to this Agreement shall be specifically enforceable in accordance with applicable law in any court having jurisdiction thereof. Deleted.

**1.3.5.5** The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof. Deleted.

### 1.3.6   CLAIMS FOR CONSEQUENTIAL DAMAGES

The Architect and the Owner waive consequential damages for claims, disputes or other matters in question arising out of or relating to this Agreement. This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination in accordance with Paragraph 1.3.8. Deleted.

### 1.3.7   MISCELLANEOUS PROVISIONS

**1.3.7.1** This Agreement shall be governed by the law of the principal place of business of the Architect, unless otherwise provided in Paragraph 1.4.2. See Addendum.

**1.3.7.2** Terms in this Agreement shall have the same meaning as those in the edition of AIA Document A201, General Conditions of the Contract for Construction, current as of the date of this Agreement; however, the terms of the General Conditions shall not be inconsistent with the terms of this Agreement .

**1.3.7.3** Causes of action between the parties to this Agreement pertaining to acts or failures to act shall be deemed to have accrued and the applicable statutes of limitations shall commence to run not later than either the date of Substantial Completion for acts or failures to act occurring prior to Substantial Completion or the date of issuance of the final Certificate for Payment for acts or failures to act occurring after Substantial Completion. In no event shall such statutes of limitations commence to run any later than the date when the Architect's services are substantially completed. Deleted.

**1.3.7.4** To the extent damages are covered by property insurance during construction, the Owner and the Architect waive all

AIA DOCUMENT B141-STANDARD FORM AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed  photocopying violates U.S. copyright laws and  will subject the violator legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

rights against each other and against the contractors, consultants, agents and employees of the other for damages, except such rights as they may have to the proceeds of such insurance as set forth in the edition of AIA Document A201, General Conditions of the Contract for Construction, current as of the date of this Agreement. The Owner and~~or~~ the Architect, ~~as appropriate,~~ shall require of their respective contractors, consultants, agents and employees of any of them similar waivers in favor of the other parties enumerated herein.

**1.3.7.5** Nothing contained in this Agreement shall create a contractual relationship with or a cause of action in favor of a third party against either the Owner or Architect.

**1.3.7.6** Other than as required for the scope of environmental services to be provided under ~~Unless otherwise provided in~~ this Agreement, the Architect and Architect's consultants shall have no responsibility for, but shall not engage in without the Owner's express written authorization, the discovery, presence, handling, removal or disposal of or exposure of persons to hazardous materials or toxic substances in any form at the Project site.

**1.3.7.7** The Architect shall have the right to include photographic or artistic representations of the design of the Project among the Architect's promotional and professional materials. The Architect shall be given reasonable access to the completed Project to make such representations. However, the Architect's materials shall not include the Owner's confidential or proprietary information if the Owner has previously advised or advises the Architect in writing of the specific information considered by the Owner to be confidential or proprietary. The Owner shall provide professional credit for the Architect in the Owner's promotional materials for the Project.

**1.3.7.8** If the Owner requests the Architect to execute certificates, the proposed language of such certificates shall, where possible, be submitted to the Architect for review at least 14 days prior to the requested dates of execution. The Architect shall not be required to execute certificates that would require knowledge, services or responsibilities beyond the scope of this Agreement.

**1.3.7.9** The Owner and Architect, respectively, bind themselves, their partners, successors, assigns and legal representatives to the other party to this Agreement and to the partners, successors, assigns and legal representatives of such other party with respect to all covenants of this Agreement. Neither the Owner nor the Architect shall assign this Agreement without the advance written consent of the other, ~~except that the Owner may assign this Agreement to an institutional lender providing financing for the Project. In such event, the lender shall assume the Owner's rights and obligations under this Agreement. The Architect shall execute all consents reasonably required to facilitate such assignment.~~

1.3.7.10    See Addendum.

1.3.7.11    See Addendum.

## 1.3.8  TERMINATION OR SUSPENSION

**1.3.8.1** ~~If the Owner fails to make payments to the Architect in accordance with this Agreement, such failure shall be considered substantial nonperformance and cause for termination or, at the Architect's option, cause for suspension of performance of services under this Agreement. If the Architect elects to suspend services, prior to suspension of services, the Architect shall give seven days' written notice to the Owner. In the event of a suspension of services, the Architect shall have no liability to the Owner for delay or damage caused the Owner because of such suspension of services. Before resuming services, the Architect shall be paid all sums due prior to suspension and any expenses incurred in the interruption and resumption of the Architect's services. The Architect's fees for the remaining services and the time schedules shall be equitably adjusted.~~ See Addendum.

**1.3.8.2** ~~If the Project is suspended by the Owner for more than 30 consecutive days, the Architect shall be compensated for services performed prior to notice of such suspension. When the Project is resumed, the Architect shall be compensated for expenses incurred in the interruption and resumption of the Architect's services. The Architect's fees for the remaining services and the time schedules shall be equitably adjusted.~~ See Addendum.

**1.3.8.3** If the Project is suspended or the Architect's services are suspended for more than 90 consecutive days, the Architect may terminate this Agreement by giving not less than seven days' written notice.

**1.3.8.4** ~~This Agreement may be terminated by either party upon not less than seven days' written notice should the other party~~

AIA DOCUMENT B141-STANDARD FORM AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

~~fail substantially to perform in accordance with the terms of this Agreement through no fault of the party initiating the termination.~~ See Addendum.

**1.3.8.5** This Agreement may be terminated by the Owner upon not less than fourteen (14) ~~seven~~ days' written notice to the Architect for the Owner's convenience and without cause.

**1.3.8.6** ~~In the event of termination not the fault of the Architect, the Architect shall be compensated for services performed prior to termination, together with Reimbursable Expenses then due and all Termination Expenses as defined in Subparagraph 1.3.8.7.~~ See Addendum.

**1.3.8.7** ~~Termination Expenses are in addition to compensation for the services of the Agreement and include expenses directly attributable to termination for which the Architect is not otherwise compensated, plus an amount for the Architect's anticipated profit on the value of the services not performed by the Architect.~~ See Addendum.

## 1.3.9   PAYMENTS TO THE ARCHITECT

**1.3.9.1** Progress ~~P~~payments on account of services rendered and percentage of services completed, and for Reimbursable Expenses incurred, shall be made monthly upon presentation of the Architect's statement of services, such that Basic Compensation at the end of each phase of services shall equal the following percentages of the total lump sum Basic Compensation payable:

| | | |
|---|---|---|
| Schematic Design Phase: | Fifteen Percent | (15%) |
| Design Development Phase: | Twenty Percent | (20%) |
| Construction Documents Phase: | Thirty-Five Percent | (35%) |
| Bidding or Negotiation Phase: | Five Percent | (5%) |
| Construction Phase: | Twenty-Five Percent | (25%) |
| TOTAL BASIC COMPENSATION | ONE HUNDRED PERCENT | (100%) |

No deductions shall be made from the Architect's compensation on account of penalty, liquidated damages or other sums withheld from payments to contractors, or on account of the cost of changes in the Work other than those for which the Architect is responsible ~~has been adjudged to be liable~~. The Architect's compensation has been computed on the basis of certain conditions described in Paragraph 1.1.1 and Subparagraph 1.1.2.5 of this Agreement.

**1.3.9.2** Reimbursable Expenses are in addition to compensation for the Architect's services and include expenses incurred by the Architect and Architect's employees and consultants directly related to the Project, as identified in the following Clauses, but such Reimbursable Expenses shall not exceed $75,000.00 without the Owner's written approval:

.1   transportation in connection with the Project, authorized out-of-town travel and subsistence, and electronic communications;

.2   fees paid for securing approval of authorities having jurisdiction over the Project;

.3   reproductions, plots, standard form documents, postage, handling and delivery of Instruments of Service;

.4   expense of overtime work requiring higher than regular rates if authorized in writing in advance by the Owner;

.5   renderings, models and mock-ups requested by the Owner in writing;

.6   expense of professional liability insurance dedicated exclusively to this Project, if requested and approved in writing in advance by the Owner, or the expense of additional insurance coverage or limits (i) requested of the Architect by the Owner in excess of that normally carried by the Architect or (ii) requested of the Architect's consultants in excess of that normally carried by ~~the Architect and the Architect's~~ consultants in their respective fields in Massachusetts;

.7   ~~reimbursable expenses as designated in Paragraph 1.5.5;~~ Deleted.

AIA DOCUMENT B141-STANDARD FORM AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

**.8**   other similar direct Project-related expenditures if approved in advance in writing by the Owner.

**1.3.9.3** Records of Reimbursable Expenses, of expenses pertaining to a Change in Services, and of services performed on the basis of hourly rates or a multiple of Direct Personnel Expense shall be available to the Owner or the Owner's authorized representative at mutually convenient times.

**1.3.9.4**   Direct Personnel Expense is defined as the direct salaries of the Architect's personnel engaged on the Project and the portion of the cost of their mandatory and customary contributions and benefits related thereto, such as employment taxes and other statutory employee benefits, insurance, sick leave, holidays, vacations, employee retirement plans and similar contributions.

## ARTICLE 1.4   SCOPE OF SERVICES AND OTHER SPECIAL TERMS AND CONDITIONS
**1.4.1     Enumeration of Parts of the Agreement.** This Agreement represents the entire and integrated agreement between the Owner and the Architect and supersedes all prior negotiations, representations or agreements, either written or oral. This Agreement may be amended only by written instrument signed by both Owner and Architect. This Agreement comprises the documents listed below.

**1.4.1.1**   Standard Form of Agreement Between Owner and Architect, AIA Document B141-1997, as amended by the parties.

**1.4.1.2**   Standard Form of Architect's Services: Design and Contract Administration, AIA Document B141-1997, as amended by the parties and attached hereto.~~or as follows~~:
*(List other documents, if any, delineating Architect's scope of services.)*
N/A

**1.4.1.3**   Other documents as follows:
*(List other documents, if any, forming part of the Agreement.)*
(1) Addendum to this Agreement;
(2) Estimated Project Budget, included as Exhibit A to this Agreement;
(3) Project Schedule, included as Exhibit B to this Agreement;
(4) Schedule of Hourly Rates (Dore & Whittier, Inc.), included as Exhibit C to this Agreement.

**1.4.2     Special Terms and Conditions.** Special terms and conditions that modify this Agreement are as follows:
N/A

## ARTICLE 1.5   COMPENSATION
**1.5.1**   For the Architect's services as described under Article 1.4, compensation shall be computed as follows and in accordance with the Estimated Project Budget set forth in Exhibit A:
Stipulated lump sum for services of eight hundred thirty-five thousand thirty-eight dollars ($835,038.00).

**1.5.1.1**   The services of the Architect's consultants (listed in Clause 1.1.3.5.1) of this Agreement, rendered in accordance with th Agreement shall be compensated as a multiple of one and fifteen one-hundredths (1.15) times the expense actually incurred by the Architect for such services.

**1.5.2**   If the services of the Architect are changed as described in Subparagraph 1.3.3.1, the Architect's compensation shall be adjusted. Such adjustment shall be calculated as described below or, if no method of adjustment is indicated in this Paragraph 1.5.2, in an equitable manner.
*(Insert basis of compensation, including rates and multiples of Direct Personnel Expense for Principals and employees, and identify Principals and classify employees, if required. Identify specific services to which particular methods of compensation apply.)*
As provided in the Schedule of Hourly Rates set forth in Exhibit C to the Agreement, with compensation for services of employees not listed in the Schedule of Hourly Rates as one and one-half (1.5) times Direct Personnel Expense. The Architect shall present to the Owner on a monthly basis invoices for services performed by the Architect during the preceding month pursuant to an approved Change in Services.

---

AIA DOCUMENT B141-STANDARD FORM AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

**1.5.3**   For a Change in Services of the Architect's consultants, compensation shall be computed as a multiple of one and fifteen one-hundredths (1.15 ) times the amounts billed to the Architect for such services. The Architect shall present to the Owner on a monthly basis invoices for services performed by the Architect's consultants during the preceding month pursuant to an approved Change in Services.

**1.5.4**   For Reimbursable Expenses as described in Subparagraph 1.3.9.2, and any other items included in Paragraph 1.5.5 as Reimbursable Expenses, the compensation shall be computed as a multiple of one and one tenth (1.10 ) times the expenses incurred by the Architect, and the Architect's employees and consultants. The total, not-to-exceed budget for Project reimbursables is $75,000.00.

**1.5.5**   Other Reimbursable Expenses, if any, are as follows:
N/A

**1.5.6**   The rates and multiples for services of the Architect and the Architect's consultants as set forth in this Agreement shall be adjusted in accordance with their normal salary review practices.

**1.5.7**   An initial payment of zero Dollars ($ 0.00 ) shall be made upon execution of this Agreement and is the minimum payment under this Agreement. It shall be credited to the Owner's account at final payment. Subsequent payments for services shall be made monthly, and where applicable, shall be in proportion to services performed on the basis set forth in this Agreement.

**1.5.8**   Payments are due and payable thirty (30 ) days from the date of the Architect's invoice for services rendered and expenses incurred in accordance with this Agreement. Amounts due and unpaid sixty ( 60) days after the invoice date shall bear interest at the rate entered below, ~~or in the absence thereof~~ at the prime ~~legal~~ rate prevailing at the ~~from time to~~ time at the principal place of business of the Architect.
*(Insert rate of interest agreed upon.)*

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Architect's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Specific legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*

**1.5.9**   ~~If the services covered by this Agreement have not been completed within ( ) months of the date hereof, through no fault of the Architect, extension of the Architect's services beyond that time shall be compensated as provided in Paragraph 1.5.2.~~
Deleted.

**ARTICLE 1.6   OTHER CONDITIONS OR SERVICES**     See Addendum.

**ARTICLE 1.7   INSURANCE**     See Addendum.

**ARTICLE 1.8   PROVISIONS REQUIRED BY MASSACHUSETTS LAW**     See Addendum.

This Agreement entered into as of the day and year first written above.

_____     _____   6/6/01
**OWNER, TOWN OF NORTH BROOKFIELD, BY ITS**       **ARCHITECT** *(Signature)*
**SCHOOL BUILDING COMMITTEE** *(Signature)*
James Murray Co-chair                R. John Dore  President
Donald J. Gillette  Co-chair         *(Printed name and title)*
*(Printed name and title)*

---

AIA DOCUMENT B141-STANDARD FORM AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

Electronic Format B141-1997

## ADDENDUM

### STANDARD FORM OF AGREEMENT BETWEEN
### THE TOWN OF NORTH BROOKFIELD
### AND DORE & WHITTIER, INC.

This Addendum is attached to and modifies the Standard Form of Agreement Between Owner and Architect, AIA Document B141-1997. Its provisions supersede and, where applicable, supplement the corresponding numbered provisions of the standard form.

1.1.2.5     Delete and replace with the following:

The financial parameters are as follows:

.1      For purposes of this Agreement, including the establishment of the Cost of the Work, the term "Project" shall include all components of the project, including all demolition, partial demolition, renovations, additions, new construction, roadways, parking areas, field renovations and site improvements if applicable to the Scope of Work determined by the Owner and Architect.

.2      The Estimated Total Project Budget for the North Brookfield Junior/Senior High School Project, including the Architect's compensation, is fourteen million six hundred thousand dollars ($14,600,000.00), as reflected in the Estimated Project Budget set forth in Exhibit A to this Agreement.

.3      The Owner and Architect agree that the not-to-exceed maximum Cost of the Work, which excludes the Architect's compensation, for the Project is twelve million seven hundred ninety-six thousand four hundred thirty-three dollars and fifty cents ($12,796,433.50), as reflected in the Estimated Project Budget set forth in Exhibit A.

.4      The Architect shall utilize a professional cost estimating firm, reasonably acceptable to the Owner, to prepare cost estimates at the completion of the Schematic Design Phase, completion of the Design Development Phase, and at 90% completion of the Construction Documents for the Project, all as described herein. The cost estimates shall be as detailed as reasonably appropriate to the phase of service. As the design develops, any proposed design revisions that are reasonably expected to cause a revision to the Cost of the Work shall be brought to the Owner's attention for review and approval. When a revised cost estimate shows an overall increase in the Cost of the Work, the Architect shall assist the Owner in identifying areas where other portions of the design or other portions of the Project budget may be decreased to offset such increase.

.5      The Architect and Owner shall work cooperatively with one another to maintain the overall Project budget.

1.1.2.6      Delete and replace with the following:

Time is of the essence in this Agreement. The Architect's services shall be performed as expeditiously as is consistent with professional skill and care and the orderly progress of the Project in conformance with a Master Project Schedule prepared by the Architect, approved by the Owner and attached hereto as Exhibit B. Barring delays that are caused by circumstances and forces beyond the control of the Architect or its consultants, and provided that the Architect and its consultants shall be responsible for mitigating any such delay to the extent possible, the Architect shall not exceed the time limits established by this Schedule. The Schedule shall include allowances for periods of time required for the Owner's review and approval of design submissions and for approval by public agencies having jurisdiction over permits for the Project. In any event, the Architect shall complete preliminary plans, specifications and other work in sufficient time for an complete initial application to be filed with the Massachusetts Department of Education, School Building Assistance Bureau (SBAB) by March 1, 2001, and shall complete final plans, specifications and other work in sufficient time for a complete final application to be filed with the SBAB by June 1, 2001, unless otherwise agreed in writing by the Owner and the Architect. The Architect shall timely advise the Owner if it appears that the Architect will not be able to complete all plans, specifications and other work in sufficient time to meet the March 1, 2001 or June 1, 2001 deadlines and shall take immediate corrective action to meet the deadlines.

1.1.3.4.1    Add the following provision:

The Architect's key personnel assigned to this Project until the Project is completed in accordance with this Agreement, are as follows:

|                    |                   |
|--------------------|-------------------|
| R. John Dore       | President         |
| Donald M. Walter   | Project Manager   |
| Albert R. Russell  | Project Architect |

There shall be no change to these personnel assignments without the prior written consent of the Owner, which consent shall not be unreasonably withheld.

1.1.3.5      Delete and replace with the following:

The Consultants that the Architect will retain at its own expense in connection with this Project, and the Consultants' key personnel assigned to this Project, are as follows:

2

Portland Design Team
(Educational Planning)
Frank M. Locker, Educational Planner

Garcia Galuska Desousa, Inc.
(Mechanical & Electrical Engineering/Plumbing/Fire Protection)
Manuel B. Garcia, Chief of Plumbing & Fire Protection
Michael J. Hickey, Chief HVAC
Carlos G. Desousa, Chief Electrical Engineer

Engineers Design Group, Inc.
(Structural Engineering)
Clem McCarey, Principal

There shall be no change to these consultant and personnel assignments without the prior written consent of the Owner, which consent shall not be unreasonably withheld.

1.1.3.5.1    Add the following new provision:

The additional Consultants that the Architect will retain according to the Project needs (whose services shall be compensated in accordance with Subparagraph 1.5.1.1 of this Agreement), and the additional Consultants' key personnel assigned to this Project, will include as follows:

Berkshire Design Group
(Civil Engineering/Landscape Architecture)
Mark Darnold, Chief Civil Engineer
Richard M. Klein, Chief Landscape Architect

CCR/Pyramid, Inc.
(Technology Consulting)
Michael W. Kerwin, Chief Technology Consultant

John Crisafulli & Associates
(Furnishings & Equipment)

Crabtree & McGrath Associates, Inc.
(Kitchen & Food Service)
Robert McGrath, Principal

ATC Associates
(Environmental & HAZMAT Abatement Consulting)
Brian Williams, Principal

Yankee Testing
(Geotechnical Engineering)

TEK Consultants
(Cost Estimating)
John Bartecchi, Principal

There shall be no change to these consultant and personnel assignments without the prior written consent of the Owner, which consent shall not be unreasonably withheld.

1.2.1       Delete and replace with the following:

The Architect and Owner shall cooperate with one another to fulfill their respective obligations under the Agreement. The Architect, its consultants, and the Owner shall endeavor to maintain good working relationships among all members of the Project team. Communications by and with the Architect's consultants shall be through the Architect. Instructions to the Contractor shall be forwarded through the Architect or, at the Owner's option, the Owner may communicate directly with the Contractor provided that copies of such communications are furnished concurrently to the Architect.

1.2.2.4     Delete and replace with the following:

The Architect shall furnish the services of consultants other than those designated in Subparagraph 1.1.3.5 of this Agreement when such services are reasonably required by the scope of the Project and approved by the Owner; provided, however, that the procurement of such services by the Architect shall not relieve the Architect of the obligation to perform basic services as set forth in Article 1.4 and Articles 2.1 through 2.7, inclusive.  Compensation for such consultant services shall be as provided in Subparagraph 1.5.1.1 of this Agreement.

1.2.2.5     Delete and replace with the following:

The Architect shall furnish structural, mechanical, chemical, air and water pollution tests, tests for hazardous materials, and other laboratory and environmental tests, inspections and reports required by law or the Contract Documents; provided, however, that the procurement of such services by the Architect shall not relieve the Architect of the obligation to perform basic services as set forth in Article 1.4 and

4

Articles 2.1 through 2.7, inclusive, with respect to any of the items as to which such tests or services are procured.

1.2.2.7    Delete and replace with the following:

Prompt written notice shall be given by one party to the other if either party becomes aware of any fault or defect in the Project, including any default or nonconformance with the Contract Documents and any errors, omissions or inconsistencies in the Architect's Instruments of Service.

1.2.3.2    Delete and replace with the following:

The Architect shall exercise due care, skill and diligence in the rendition of all services under this Agreement in accordance with applicable professional standards and all applicable laws, codes and rules and regulations in Massachusetts in effect at the time of performance.

1.3.2.2    Delete and replace with the following:

The Architect hereby grants to the Owner a perpetual, royalty-free, nonexclusive, nontransferable license in the Instruments of Service prepared by the Architect for this Project; provided that the Owner shall pay all sums due for design services performed in accordance with this Agreement. The Architect shall obtain similar licenses from the Architect's consultants consistent with this Agreement. The Owner and its employees, officers, committees, agents and representatives shall be permitted to retain one reproducible copy of the Architect's Instruments of Service and have the right to reproduce, prepare derivative works based on, and distribute copies of such documents and derivative works for the benefit of the Owner, including the planning, design, approval, construction, maintenance, repair, or modification of this Project and other public projects of the Owner, including renovations and/or additions to the Project and the use of design concepts and themes to achieve consistency between the Project and other projects of the Owner. The Owner shall release, indemnify, and defend the Architect and/or its consultants from any claims arising out of any use of or changes to the Instruments of Service made by the Owner and/or its representatives during any construction project not a part of this Project. If the Owner and/or its representatives use the Instruments of Service for construction of the Project without the assistance of the Architect as provided herein, the Owner shall release, indemnify, and defend the Architect and/or its consultants from and against all liability to the extent that such liability is caused by any changes made to the Instruments of Service by anyone other than the Architect and/or its consultants.

1.3.3.1    Delete and replace with the following:

Change in Services of the Architect, including services required of the Architect's consultants, may be accomplished after execution of this Agreement, without invalidating the Agreement, but shall be provided only if authorized or confirmed in advance in writing by the Owner. Whenever a Change in Services is proposed, the Architect shall provide the Owner with an estimate of the costs of such services. If such Change in Services is required due to circumstances beyond the Architect's control, including those circumstances described in Subparagraph 1.3.3.2, the Architect shall promptly notify the Owner in writing prior to commencing such services. If the Owner deems that all or part of such Change in Services is not required, the Owner shall give prompt written notice to the Architect, and the Architect shall have no obligation to provide those services which the Owner deems unnecessary. Except where a change is due to the fault of the Architect or its consultants, the Owner shall compensate the Architect for Change in Services in accordance with Paragraph 1.5.2 and, where applicable, Subparagraph 1.3.9.2.

1.3.7.1    Delete and replace with the following:

This Agreement shall be governed by the law of the Commonwealth of Massachusetts, regardless of choice-of-law issues and provisions.

1.3.7.10    Add the following provision:

If any provision, or portion thereof, of this Agreement is determined by final judgment of a court of competent jurisdiction to be invalid or unenforceable, the remaining provisions shall continue in effect to the extent permitted by law.

1.3.7.11    Add the following provision:

To the fullest extent permitted by law, the Architect shall indemnify and hold harmless the Owner and the Owner's officers, employees, boards, commissions, committees, agents, and representatives from and against any and all loss, liability, damages, claims, causes of action, suits, costs and expenses, including reasonable attorney's fees, to the extent caused by the willful misconduct or negligent act or omission of or copyright infringement by the Architect, its consultants, or the Architect's and consultants' respective officers, employees, agents, and/or representatives in connection with the performance of services under this Agreement.

1.3.8.1    Delete and replace with the following:

Failure of the Owner to make payments due to the Architect and its consultants in accordance with this Agreement for services performed in accordance with this

6

Agreement shall be considered substantial nonperformance and cause for termination or suspension of performance of services, provided that the Owner shall have the opportunity to cure said failure within fourteen (14) business days of receiving written notice of said failure. The Architect's written notice shall clearly and prominently communicate that the Architect intends to terminate or suspend performance of services if the Owner fails to make payment within said fourteen-day period.

1.3.8.2    Delete and replace with the following:

If the Project is suspended by the Owner for more than thirty (30) consecutive days, the Architect shall be compensated for services performed prior to notice of such suspension. When the Project is resumed, the Architect's compensation shall be equitably adjusted to provide for expenses incurred in the interruption and resumption of the Architect's services, except where such suspension was the fault of the Architect, and the not-to-exceed maximum Cost of the Work established prior to such suspension shall be adjusted to reflect changes in the general level of prices in the construction industry during the period of such suspension, and the Architect's schedule shall be equitably adjusted.

1.3.8.4    Delete and replace with the following:

This Agreement may be terminated by either party upon not less than fourteen (14) days' written notice to the other party should the other party fail substantially to perform in accordance with the terms of this Agreement through no fault of the party initiating the termination, provided such failure is not cured within said fourteen (14) day period.

1.3.8.6    Delete and replace with the following:

In the event of termination not the fault of the Architect, the Architect shall be compensated for services performed in accordance with this Agreement prior to termination, together with Reimbursable Expenses then due.

1.3.8.7    Delete and replace with the following:

In the event of any termination under this Paragraph 1.3.8, the Architect shall cooperate reasonably and provide any information reasonably requested by the Owner in connection with the completion of the Project which is in the possession of the Architect or its consultants. Any services provided by the Architect which are requested by the Owner after termination shall be paid for as if such services were a Change in Services.

7

*Add the following Articles:*

**ARTICLE 1.6        OTHER CONDITIONS OR SERVICES**

1.6.1        Specifications produced by the Architect and its engineers and consultants for use by the General Contractor and its subcontractors for construction of the Project shall include the provision that the General Contractor and its subcontractors will be responsible for preparing three sets of reproducible record drawings showing all significant changes in the work made during construction based on marked up prints, drawings, and other data furnished by the Contractor and its subcontractors. These reproducible record drawings shall become the property of the Owner.

1.6.2        The Architect shall staff its office and the Project with sufficient personnel to complete the services required under this Contract in a prompt and continuous manner in order to comply with the Architect's obligations and deadlines under this Agreement.

1.6.3        The Architect shall perform the services required under this Agreement in conformity with the Owner's program requirements and all applicable laws, statutes, ordinances, by-laws, codes, rules and regulations, and executive orders of the Federal Government, the Commonwealth of Massachusetts and the Town of North Brookfield in effect at the time the services are being rendered. The Architect shall also thoroughly acquaint its employees and consultants with all provisions of the Massachusetts General Laws governing the conduct of public construction projects including but not limited to G.L. c. 149, and c. 30, and in particular, G.L. c. 30, Section 39M, wherein the description of material specifications and proprietary items in construction bid documents is governed.

1.6.4        Neither the Owner's review, approval or acceptance of, nor payment for any of the services furnished shall be construed to operate as a waiver of any rights under this Agreement or any cause of action arising out of the performance of this Agreement.

1.6.5        The Architect's employees, servants and agents shall be deemed not to be Owner's employees for either workers' compensation or unemployment insurance purposes.

**ARTICLE 1.7        INSURANCE**

1.7.1        The Architect shall provide and maintain throughout the term of this Agreement and any extension or renewal thereof the following insurance with companies that are authorized and licensed in the Commonwealth of Massachusetts to issue policies for the coverages and limits so required:

8

.1     Workers' Compensation Insurance as required by the laws of the Commonwealth of Massachusetts and Employer's Liability Insurance in the amount of $500,000/$500,000/$500,000.

.2     Commercial General Liability Insurance, $1,000,000 each occurrence and $2,000,000 aggregate limit.

.3     Automobile Liability Insurance, combined single limit of $1,000,000.

.4     Engineer's and Designer's Professional Liability Insurance (Errors and Omissions included), $2,000,000. Such insurance shall continue to be in effect for an uninterrupted period of at least six (6) years following completion of the Architect's services provided pursuant to this Agreement.

Each of the consultants retained by the Architect shall provide such insurance with such coverages and limits as approved in advance in writing by the Owner.

1.7.2    Each policy of liability insurance other than Employer's Liability under Worker's Compensation Insurance and Engineer's and Designer's Errors and Omissions Insurance shall name the Town of North Brookfield and its officers, employees, boards, commissions and committees, as additional insureds with respect to this Agreement.

1.7.3    Each policy of insurance, and the certificate or other evidence thereof, required to be purchased and maintained by the Architect and its consultants shall contain a provision or endorsement that the coverage afforded will not be cancelled or materially amended and no renewal will be refused until at least thirty (30) days' prior written notice has been given to the Owner, but ten (10) days' prior written notice for cancellation due to nonpayment of premium.

1.7.4    Failure to provide and continue in force such insurance shall constitute a material breach of this Agreement and shall be grounds for immediate termination thereof by and in the sole discretion of the Owner.

## ARTICLE 1.8    PROVISIONS REQUIRED BY MASSACHUSETTS LAW

1.8.1    The Architect hereby certifies that:

(i)     If an individual, the individual is a registered architect;

(ii)    If a partnership, a majority of all the partners are persons who are registered

9

architects;

    (iii)    If a corporation, sole proprietorship, joint stock company or other entity, the majority of the directors or a majority of the stock ownership and the chief executive officer are persons who are registered architects, landscape architects or engineers, and the person to have the project in his or her charge is a registered architect; or

    (iv)    If a joint venture, each joint venturer satisfies the requirements of G.L. c.7, §38A½. (Statutory reference: M.G.L. c.7, §38A½)

1.8.2    The Architect hereby certifies that it has not given, offered or agreed to give any person, corporation or other entity any gift, contribution or offer of employment as an inducement for or in connection with, the award of this Agreement. (Statutory reference G.L. c.7, §38H(e)(i))

1.8.3    The Architect hereby certifies that no consultant to or subcontractor for the Architect has given, offered or agreed to give any gift, contribution or offer of employment to the Architect, or to any other person, corporation or entity as an inducement for, or in connection with, the award to the consultant or subcontractor of a contract by the Architect. (Statutory reference: G.L. c.7, §38H(e)(ii))

1.8.4    The Architect hereby certifies that no person, corporation or other entity, other than a bona fide full time employee of the Architect, has been retained or hired by the Architect to solicit for or in any way assist the Architect in obtaining this Agreement upon an agreement or understanding that such person, corporation or other entity be paid a fee or other consideration contingent upon the award of this Agreement to the Architect. (Statutory reference: G.L. c.7, §38H(e)(iii))

1.8.5    The Architect hereby certifies that it has internal accounting controls as required by subsection (c) of section thirty-nine R of chapter thirty of the Massachusetts General Laws and that the Architect has filed and will continue to file an audited financial statement as required by subsection (d) of said section thirty-nine R. (Statutory reference: G.L. c.7, §38H(e)(iv))

1.8.6    The Architect shall maintain all books, records and accounts related to the Project in compliance with the following:

    .1    The Architect shall make, and keep for at least six (6) years after final payment, books, records and accounts which in reasonable detail accurately and fairly reflect the transactions and dispositions of the Architect.

.2      Until the expiration of six (6) years after final payment, the Owner, the Office of the Inspector General and the Commissioner of Capital Asset Management and Maintenance shall have the right to examine any books, documents, papers or records of the Architect and of its subcontractors and consultants that directly pertain to, and involve transactions relating to the Project and to the Architect or its and consultants in relation to the Project.

.3      The Architect shall describe any change in the method of maintaining records or recording transactions which materially affects any statements filed with the Owner, including in the Architect's description the date of the change and reasons therefor, and shall accompany said description with a letter from the Architect's independent certified public accountant approving or otherwise commenting on the changes.

.4      The Architect has filed a statement of management on internal accounting controls as set forth in Subparagraph 1.8.6.6 below prior to the execution of this Agreement.

.5      The Architect has filed prior to the execution of this Agreement and will continue to file annually, an audited financial statement for the most recent completed fiscal year as set forth in Subparagraph 1.8.6.8 below.

.6      The Architect shall file with the Owner a statement of management as to whether the system of internal accounting controls of the Architect and its subsidiaries reasonably assures that:

      (a)      Transactions are executed in accordance with the management's general and specific authorization;

      (b)      Transactions are recorded as necessary (i) to permit preparation of financial statements in conformity with generally accepted accounting principles, and (ii) to maintain accountability for assets;

      (c)      Access to assets is permitted only in accordance with management's general or specific authorization; and

      (d)      The recorded accountability for assets is compared with existing assets at reasonable intervals and appropriate action is taken with

11

respect to any difference.

.7    The Architect shall also file annually with the Owner a statement prepared and signed by an independent certified public accountant, stating that such accountant has examined the statement of management on internal accounting controls, and expressing an opinion as to:

(a)    whether the representations of management in response to this Paragraph 1.8.6 are consistent with the result of management's evaluation of the system of internal accounting controls; and

(b)    whether such representations of management are, in addition, reasonable with respect to transactions and assets in amounts which would be material when measured in relation to the Architect's financial statements.

.8    The Architect shall annually file with the Commissioner of Capital Asset Management and Maintenance and the Owner during the term of this Agreement a financial statement prepared by an independent certified public accountant on the basis of an audit by such accountant. The final statement filed shall include the date of final payment. All statements shall be accompanied by an accountant's report. Such statements shall be made available to the Owner upon request.

.9    Records and statements required to be made, kept or filed in compliance with the provisions of this Paragraph 1.8.6 shall not be public records as defined in section seven of chapter four of the Massachusetts General Laws and shall not be open to public inspection, except as provided in Subparagraph 1.8.6.2. (Statutory reference: G.L. c. 30, §39R)

1.8.7    The Architect and its consultants shall not be compensated for any services involved in preparing changes that are required for additional work that should have been anticipated by the Architect in the preparation of bid documents, as reasonably determined by the Owner. (Statutory reference: G.L. c.7, §38H(j))

1.8.8    Life cycle cost estimates for the Project shall be obtained by the Architect and provided to the Owner at an initial stage and as a regular part of the Basic Services to be performed under this Agreement. (Statutory reference: G.L. c.149, §44M)