# EXHIBIT  C



DEPOSITION EXHIBIT

Dore 7
4-13-05          vs

*AIA Document B144/ARCH-CM - Electronic Format*

# Standard Form of Amendment for the Agreement Between Owner and Architect

*Where the Architect provides CONSTRUCTION MANAGEMENT Services as an Adviser to the Owner*

## 1993 EDITION

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES; CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

This document is for use with the 1987 edition of AIA Document B141, Standard Form of Agreement Between Owner and Architect.

Copyright © 1993 by The American Institute of Architects, 1735 New York Avenue, N.W., Washington, D.C. 20006-5292. Reproduction of the material herein or substantial quotation of its provisions without the written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution.

This AMENDMENT dated (The date this contract is executed): _____
(*Insert this Amendment's effective date*)

is made to the AGREEMENT dated: 6 June 2001, effective; 1 December 2000
(*Insert the date of the Agreement between the Owner and the Architect*)

BETWEEN the Owner:
(*Name and Address*)
Town of North Brookfield
by and through its duly appointed School Building Committee
c/o North Brookfield Public Schools
10 New School Drive
North Brookfield, MA 01535

and the Architect:
(*Name and Address*)
Dore and Whittier, Inc.
1795 Williston Road
Suite 5
South Burlington, VT 05403



RECEIVED
JUL 1 0 2002
DORE & WHITTIER, INC.
ARCHITECTS • PROJECT MANAGERS
SOUTH BURLINGTON, VERMONT

For the following Project:
(*Include detailed description of Project, location, address and scope.*)
The New North Brookfield Junior/Senior High School - Building and Related Construction

The Owner and the Architect agree that the terms and conditions governing the Architect's services and responsibilities under the Agreement referred to above shall be amended to include the construction management services specified in this Amendment as an addition to the Architect's Basic Services under that Agreement.

## ARTICLE 1
## CONSTRUCTION MANAGEMENT RESPONSIBILITIES

1.1    The construction management services to be provided by the Architect are as enumerated in Articles 2 and 3 of this Amendment and any other services included in Article 6.

1.2    The Architect shall provide organization, personnel and management to carry out the requirements of this Amendment in an expeditious and economical manner consistent with the interests of the Owner. The Architect shall provide a daily on-site contact person for Contractor and Owner to provide on-site administrative support for the project during the construction of the new building during Phase One.

1.3    The services covered by this Amendment are subject to the time limitations contained in the Agreement between Owner and Architect referenced above.

© 1993 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5292. AIA DOCUMENT B144/ARCH-CM - OWNER-ARCHITECT AMENDMENT - ARCH-CM EDITION - AIA® - WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. User Document: dw nbjshs cm amend ver#16.aia -- 2/11/2002. AIA License Number 1018383, which expires on 12/31/2002.

Electronic Format B144/ARCH-CM - 1993

## ARTICLE 2
## SCOPE OF SERVICES DURING
## PRECONSTRUCTION PHASES

**2.1** The Architect, as a part of the Architect's review of the program furnished by the Owner, shall provide a preliminary evaluation of the feasibility of the Owner's program, schedule and construction budget requirements, each in terms of the other.

**2.2** The Architect shall prepare, in addition to preliminary estimates of Construction Cost for program requirements based on early schematic designs and other design criteria, comparative estimates for the cost evaluations of alternative materials and systems.

**2.3** As the Architect progresses with the preparation of the Schematic Design, Design Development and Construction Documents, the Architect shall prepare and update preliminary Construction Cost estimates with increasing detail and refinement. Such estimates shall be provided for the Owner's review and approval prior to the commencement of performance by the Architect of services for each succeeding Preconstruction Phase. If separate contracts are to be awarded, the estimated cost of the scope of Work for each contract shall be indicated with supporting detail. The Architect shall advise the Owner if it appears that a preliminary Construction Cost estimate may exceed the latest approved Project budget and make recommendations for corrective action.

**2.4** Following the Owner's approval of the Construction Documents, the Architect shall update and submit the latest estimate of Construction Cost for the Owner's approval in accordance with the Agreement.

**2.5** The Architect shall submit recommendations on relative feasibility of construction methods, methods of Project delivery, availability of materials and labor, time requirements for procurement, installation and construction, and appropriate utilization of the site for mobilization of construction forces and materials.

**2.6** The Architect shall prepare and update a Project schedule to show the timing of anticipated services and construction Work for the Owner's review and approval prior to commencement of the Architect's services for each succeeding Preconstruction Phase.

**2.7** In developing the Project schedule, the Architect shall identify critical and long-lead-time items for the coordination and integration of the Architect's services with the Owner's responsibilities, including the services of the Owner's other consultants and contractors.

**2.8** The Architect shall assist the Owner in selecting, retaining and coordinating the professional services of

surveyors, special consultants and testing laboratories required for the Project.

**2.9** The Architect shall submit a list of prospective bidders and a bidding schedule for the Owner's review and approval.

**2.10** The Architect shall act as the point of contact to bidders and solicit bidders' interest in the Project. The Architect shall assist the Owner in issuing bidding documents to bidders and conduct pre-bid conferences with prospective bidders. The Architect shall assist the Owner with the receipt of questions from bidders and the issuance of addenda.

**2.11** The Architect shall receive bids, prepare bid analyses and make recommendations to the Owner for the Owner's award of Contracts.

**2.12** The Architect shall conduct pre-award conferences with successful bidders. The Architect shall advise the Owner of any reasonable objections to the proposed list of Subcontractors and material suppliers.

**2.13** The Architect shall make recommendations to the Owner regarding the assignment of responsibilities for providing temporary Project facilities and services for common use of the Contractors. The Architect shall verify that the requirements and assignment of responsibilities are included in the proposed Contract Documents.

**2.14** The Architect shall advise the Owner on the division of the Project into separate contracts or various categories for work including method be used for selecting Contractors and awarding contracts.

**2.15** The Architect shall make recommendations to the Owner regarding the allocation of responsibilities for Project conditions among the Contractors.

**2.16** The Architect shall assist the Owner in obtaining applicable building permits and special permits for permanent improvements, excluding permits required to be obtained directly by the various Contractors.

## ARTICLE 3
## SCOPE OF SERVICES DURING
## THE CONSTRUCTION PHASE

**3.1** The Architect shall review the Project with the Contractor to examine potential cost savings (value engineering). The Architect shall review the prepare a Project construction schedule providing for each scope of Work, including phasing of construction, times for commencement and completion required of each separate Contractor, ordering and delivery of materials requiring long-lead time and the occupancy requirements of the Owner.

© 1993 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5292. AIA DOCUMENT B144/ARCH-CM - OWNER-ARCHITECT AMENDMENT - ARCH-CM EDITION - AIA® - WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. User Document: dw nbjshs cm amend ver#16.aia -- 2/11/2002. AIA License Number 1018383, which expires on 12/31/2002.

Electronic Format B144/ARCH-CM - 1993

**3.2** The Architect shall provide the Project construction schedule for each set of Contract Documents.

**3.3** The Architect serving as the Project's Field Administrator shall provide administrative, management and related services to endeavor to coordinate the activities of the Contractors with each other and with those of the Owner and the Architect to complete the Project in accordance with the latest approved estimate of Construction Cost, the Project construction schedule and the Contract Documents.

**3.4** The Architect shall schedule and conduct preconstruction, construction and progress meetings with the Owner and the Contractors to discuss such matters as procedures, progress and scheduling. The Architect shall prepare and promptly distribute minutes to the Owner and Contractors and maintain an Action Items List.

**3.5** Utilizing the Construction Schedules provided by the Contractors, the Architect assist the Contractor with~~shall~~ updating the Project construction schedule incorporating the activities of the Contractors on the Project, including activity sequences and durations, allocation of labor and materials as needed, processing of Shop Drawings, Product Data and Samples, and delivery of products requiring long-lead time and procurement. The Project construction schedule shall include the Owner's occupancy requirements showing portions of the Project having occupancy priority. The Architect shall assist the Contractor with updateing and reissueing the Project construction schedule as required to show current conditions. If an update indicates the previously approved Project construction schedule may not be met, the Architect shall review and comment on the Contractor's Revised Schedule. ~~recommend corrective action~~ to the Owner.

**3.6** Consistent with the Bidding Documents, and utilizing information from the Contractors, the Architect shall endeavor to coordinate the sequence of construction and assignment of space in areas where multiple Contractors are performing Work.

**3.7** The Architect shall monitor the approved estimate of Construction Cost. The Architect shall review and comment on the Contractor's Construction Cost Estimates which show actual costs for activities in progress and estimates for uncompleted tasks.

**3.8** The Architect shall develop cash flow reports and forecasts for the Project and advise the Owner as to variances between actual and budgeted or estimated costs.

**3.9** The Architect shall maintain cost accounting records on authorized Work performed under unit costs, additional

Work performed on the basis of actual costs of labor and materials, or other Work requiring accounting records.

**3.10** The Architect shall record the progress of the Project with written progress reports to the Owner including information on each Contractor's Work, as well as the entire Project, showing percentages of completion.

**3.11** The Architect shall keep a daily log containing a record of weather, Contractor's Work on the site, number of workers, identification of equipment, Work accomplished, problems encountered, and other similar relevant data as the Owner may require.

**3.12** The Architect shall maintain at the Project site, on a current basis: one record copy of all Contracts, Drawings, Specifications, addenda, Change Orders and other Modifications, in good order and marked to record all changes made during construction; Shop Drawings; Product Data; Samples; submittals; purchases; other related documents and revisions that arise out of the Contracts or Work. The Architect shall maintain records, in duplicate, of principal building layout lines, elevations of the bottom of footings, floor levels and key site elevations certified by a qualified surveyor or professional engineer. The Architect shall make all such records available to the Owner and, upon completion of the Project, shall deliver them to the Owner.

Insert A: 3.13 The Architect shall review and approve change orders and shop drawings, and receive and file contractor's payroll submissions on-site; and refer them to the Architect's offices if needed.

Insert B: 3.14 The Architect shall review and approve Contractor's Schedule of Values.

## ARTICLE 4
## THE OWNER'S RESPONSIBILITIES

**4.1** The Owner reserves the right to perform Work related to the Project with the Owner's own forces, and to award contracts in connection with the Project that are not part of the Architect's responsibilities under this Amendment. The Architect shall notify the Owner if any such independent action will in any way interfere with the Architect's ability to perform under this Amendment.

**4.2** The Owner shall furnish the required information and services and shall render approvals and decisions expeditiously for the orderly progress of the Architect's services.

© 1993 – THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5292. AIA DOCUMENT B144/ARCH-CM - OWNER-ARCHITECT AMENDMENT - ARCH-CM EDITION - AIA® - WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. User Document: dw nbjshs cm amend ver#16.aia – 2/11/2002. AIA License Number 1018383, which expires on 12/31/2002.

Electronic Format B144/ARCH-CM - 1993

# ARTICLE 5
## BASIS OF COMPENSATION

5.1    The Owner shall compensate the Architect FOR AMENDMENT SERVICES as described in Articles 2 and 3, and any other services described in Article 6 of this Amendment. Compensation shall be computed as follows:
Compensation shall be a Fixed Fee Lump Sum of $226,500.00 for Construction Management Services. Said fee to be paid in monthly installments, as billed, starting April 2002 and ending December 2003. It is agreed that this fee is based on a Project Construction Schedule of twenty months. If the construction duration extends beyond 30 December 2003, the Architect shall be paid for the additional service at the Architect's standard rates in effect at the time.

# ARTICLE 6
## OTHER CONDITIONS OR SERVICES

6.1    The following Reimbursable Expenses are in addition to those listed in the Agreement modified by this Amendment:
*(List Reimbursable Expenses not already listed in the Agreement between Owner and Architect referenced above.)*
Any additional cost beyond the amount stated in Section 5.1 must receive prior approval of the Owner.

6.2    This Amendment shall further modify the Agreement as follows:
*(Insert descriptions of other services, identify Additional Services included within Basic Compensation and modifications to the payment and compensation terms included in this Amendment.)*
The Architect's Construction Management Services also include services to organize a Partnering Session(s) for all the relevant parties to the Project. The cost of the Partnering Session(s) shall be covered by a stipulated amount in the General Contractor's Bid Documents with any additional costs being covered by the Owner as a Reimbursable Expense.

This Amendment entered into as of the day and year first written above.

OWNER                                                   ARCHITECT

_____                              _____  5/1/02
*(Signature)*                                           *(Signature)*
                                                        R. John Dore, AIA, Principal
Richard Chabot Selectmen Chairman
*(Printed name and title)*                              *(Printed name and title)*

© 1993 – THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5292. AIA DOCUMENT B144/ARCH-CM – OWNER-ARCHITECT AMENDMENT – ARCH-CM EDITION – AIA® – WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. User Document: dw nbjshs cm amend ver#16.aia – 2/11/2002. AIA License Number 1018383, which expires on 12/31/2002.
Electronic Format B144/ARCH-CM – 1993

NBDW34664



**D&W**

**DORE AND WHITTIER, INC.**

Architects • Project Managers

1795 WILLISTON RD, STE. 5   S. BURLINGTON, VT  05403
Phone: (802) 863-1428 • Fax: (802) 863-6955

1400 HANCOCK STREET, QUINCY, MA  02169
Phone: (617) 471-2897 • Fax: (617) 471-2516

# HOURLY RATES SCHEDULE

## Discipline

| | | |
|---|---|---|
| I | Principal | $114.00 |
| II | Project Manager | $105.00 |
| III | Assistant Project Manager | $100.00 |
| IV | Construction Management Director | $100.00 |
| V | Construction Manager | $105.00 |
| VI | Project Architect/Engineer | $95.00 |
| VII | Project Designer | $86.00 |
| VIII | Job Captain | $93.00 |
| IX | CAD Senior | $70.00 |
| X | CAD Junior | $65.00 |

## Standard Terms of Payment:

Payment Due Upon Receipt

Standard reimbursables such as out-of-house report printing, blue printing, film/developing, telephone and fax are invoiced at cost x 1.10.  Mileage is reimbursed at $0.34/mile.

Above Rate
Applicable to Period

From:  1 Jan 2002
To:  1 Jan 2003

P:\Administration\HRLYRATE2002#2.doc

**ADDENDUM TO CONSTRUCTION MANAGEMENT CONTRACT**

**North Brookfield Jr./Sr. High School**
**May 24, 2002**

1.  In the event of any change in personnel with regard to the existing construction manager (Mr. Chris Conway) during the life of the contract, the agreed upon cost of the construction management contract ($226,500) will be subject to renegotiation between Dore and Whittier, Inc. and the Town of North Brookfield School Building Committee that is mutually agreeable.

2.  If the construction period extends beyond December 31, 2003 through no fault of the Owner it is the Owner's intent to have any additional construction management costs paid out of liquidated damages which could be potentially assessed to the General Contractor. It will be the responsibility of Dore and Whittier, Inc. to document cause for liquidated damages and provide timely notification to all parties during the life of the construction project. The Owner will remain responsible to pay Dore and Whittier, Inc. for any additional construction management services incurred beyond the expiration date of the construction management contract while liquidated damages assessments are pursued.

**EXHIBIT  D**

Law Offices

# HOLLAND & KNIGHT LLP

10 St. James Avenue
Boston, Massachusetts 02116

617-523-2700
FAX 617-523-6850
http://www.hklaw.com

Annapolis
Atlanta
Bethesda
Boston
Bradenton
Chicago
Fort Lauderdale
Jacksonville
Lakeland
Los Angeles
Miami
New York
Northern Virginia

Oakbrook
Orlando
Portland
Providence
San Antonio
San Francisco
Seattle
St. Petersburg
Tallahassee
Tampa
Washington, D.C.
West Palm Beach

International Offices:
Caracas*
Helsinki
Mexico City
Rio de Janero

São Paulo
Tel Aviv*
Tokyo

*Representative Offices

June 5, 2003

**DEBORAH S. GRIFFIN**
617-305-2044

Internet Address:
deborah.griffin@hklaw.com

***VIA TELECOPIER***
***(617) 654-1735 and***
***First Class Mail***

Thomas W. McEnaney, Esq.
Kopelman & Paige, P.C.
31 St. James Avenue, 7th Floor
Boston, MA  02116

> *Re:*   *North Brookfield Intermediate & Senior High School Project*
> *DW Project No.:*   *00-404*
> *Surety:*   *American Manufacturers Mutual Insurance Co.*
> *Bond No.:*   *3SE 057 856*
> *Claim No.:*   *167-SE-002-989*

Dear Tom:

Please find enclosed copies of letters dated May 30, 2003, signed by Ed
Sciaba of E.J. Sciaba Contracting Company, Inc., addressed to Robert O'Neill,
Superintendent of Schools, North Brookfield Public Schools. One letter directs
that all future payments be sent to Steve Beatty on behalf of the surety. The
other letter constitutes Sciaba's acknowledgement of default. I do not know the
whereabouts of the originals of these letters. I only received fax copies.

Thomas W. McEnaney, Esq.
June 5, 2003
Page 2

We will be in touch further as the surety obtains additional information firms up its plan with respect to this default.

Very truly yours,

HOLLAND & KNIGHT LLP

*Deborah S. Griffin*

Deborah S. Griffin

DSG/bsw: BOS1 #1344976 v1
431261.00005
Enclosures
cc:     Stephen J. Beatty, Esq. (w/o encl.)
        Richard P. Anastasio, P.E. (w/o encl.)



**E.J. SCIABA
CONTRACTING
COMPANY, INC.**

May 30, 2003

Robert O'Neill
Superintendent of Schools
North Brookfield Public Schools
10 New School Drive
North Brookfield, MA  01535

> *Re:    North Brookfield Intermediate & Senior High School Project*
> *DW Project No.:    00-404*
> *Surety:    American Manufacturers Mutual Insurance Co.*
> *Bond No.:    3SE 057 856*
> *Claim No.:    167-SE-002-989*

Dear Mr. O'Neill:

We hereby irrevocably request that all payments due or to become due on account of the contract between Town of North Brookfield Board of Education and E.J. Sciaba Contracting Company, Inc. for work on the North Brookfield Intermediate & Senior High School Project be forwarded to the undersigned in care of American Manufacturers Mutual Insurance Co., Stephen J. Beatty, Esq., Kemper Insurance Companies, 1 Kemper Drive, Bldg. 4, Floor 3, K-7, Long Grove, IL 60049-0001, which company is surety on Performance and Labor and Material Payment bonds given in connection with the aforesaid contract.

There will be no modification or change in these instructions without the written authorization and consent of American Manufacturers Mutual Insurance Co.

Very truly yours,

E.J. SCIABA CONTRACTING COMPANY, INC.

Edward J. Sciaba, Jr.
President

BOS1 #1343351 v1
131261.00002



**E.J. SCIABA
CONTRACTING
COMPANY, INC.**

May 30, 2003

Robert O'Neill
Superintendent of Schools
North Brookfield Public Schools
10 New School Drive
North Brookfield, MA  01535

> Re:    *North Brookfield Intermediate & Senior High School Project*
> *DW Project No.:    00-404*
> *Surety:    American Manufacturers Mutual Insurance Co.*
> *Bond No.:    3SE 057 856*
> *Claim No.:    167-SE-002-989*

Dear Mr. O'Neill:

    Due to circumstances beyond our control, we regret to advise you that we are unable to complete the captioned contract. We, accordingly, hereby irrevocably acknowledge that we are declaring a voluntary default for convenience on said contract and waive any notice required under the contract documents.

    We request that you discuss with our surety the matter of completing this contract.

Very truly yours,

E.J. SCIABA CONTRACTING COMPANY, INC.

Edward J. Sciaba, Jr.
President

BOS1 #1343331 v1
131261.00002

TOTAL P.06

**EXHIBIT  E**

Law Offices

# HOLLAND & KNIGHT LLP

10 St. James Avenue
Boston, Massachusetts 02116

617-523-2700
FAX 617-523-6850
http://www.hklaw.com

| | |
|---|---|
| Annapolis | Oakbrook |
| Atlanta | Orlando |
| Bethesda | Portland |
| Boston | Providence |
| Bradenton | San Antonio |
| Chicago | San Francisco |
| Fort Lauderdale | Seattle |
| Jacksonville | St. Petersburg |
| Lakeland | Tallahassee |
| Los Angeles | Tampa |
| Miami | Washington, D.C. |
| New York | West Palm Beach |
| Northern Virginia | |

| | |
|---|---|
| International Offices: | |
| Caracas* | São Paulo |
| Helsinki | Tel Aviv* |
| Mexico City | Tokyo |
| Rio de Janeiro | *Representative Offices |

November 12, 2003

DEBORAH S. GRIFFIN
617-305-2044

Internet Address:
deborah.griffin@hklaw.com

## *BY HAND*

Thomas W. McEnaney, Esq.
Kopelman & Paige, P.C.
31 St. James Avenue, 7th Floor
Boston, MA 02116

EXHIBIT
Murray
92
4-29-05    KQ

Re:   *North Brookfield Intermediate & Senior High School Project*
      *Surety:*          *American Manufacturers Mutual Insurance Co.*
      *Bond No.:*        *3SE 057 856*
      *Claim No.:*       *167-SE-002-989*

Dear Tom:

As you know, the Town and the Surety have not concluded their negotiations concerning the amounts of the Town's claims against the Surety and the Surety's defenses to those claims. We are still awaiting all the detail regarding the professional fees which your letter of November 3 indicated you have. The Surety accepts the figure of $440.00 for CCD #3 set forth in your November 3 letter. We still need to address the other issues raised in that letter, as well as my letter to you of November 5.

In the meantime, the surety has completed its review of the bids from prospective completion contractors, including revised figures submitted by each bidder as its "best and final" submittal. The surety has concluded that the submittal of Fontaine Bros., Inc., in the amount of $11,381,362.00, is the submittal that best conforms to the request for proposals at the best price.

I am enclosing two originals of the Completion Contract executed by Fontaine Bros., Inc., as well as its performance and payment bonds and Certificate of Liability Insurance. The surety urges the Town to (1) accept and



Thomas W. McEnaney, Esq.
November 12, 2003
Page 2

execute the Fontaine Bros. Completion Contract and (2) promptly issue a Notice to Proceed to Fontaine Bros. As stated in the email from Fontaine's counsel I forwarded to you yesterday, Fontaine has transmitted these documents to us with the caveat that they must have a Notice to Proceed by November 14. Taking these steps will mitigate the Town's damages resulting from Sciaba's default, as the Town is obligated to do, pending a conclusion of our negotiations.

I have received your email of earlier today in which you state, among other things, that "the Town cannot enter into a contract unless sufficient funds have been appropriated therefor" and that "the Town cannot sign any completion contract until we have the additional funds from the surety." The Surety does not accept lack of appropriation by the Town as a valid reason for the Town not to enter into the tendered contract with Fontaine. The Town has known since August 20 that the Surety believes it has valid and substantial defenses to a significant portion of the Town's claim and has known since the second week in September the approximate magnitude of the bids. There has been ample opportunity for the Town to prepare itself to execute a completion contract before all the issues between the Surety and the Town are resolved. Therefore, if the cost to the Town increases because of the Town's inability to sign the contract now and give Fontaine a Notice to Proceed, that is not an increase for which the Surety bears any responsibility.

As I stated in an email to you on November 6, 2003, the Surety understands it will have responsibility for the additional liquidated damages after the dates that were given in the RFP. It also intends to accept responsibility for the reasonable cost of addressing latent defects that were Sciaba's responsibility. Again, these issues should not be an obstacle to the Town's executing the completion contract with Fontaine.

I have received your faxes of earlier today and have forwarded them to my client. We will be studying them with a view toward identifying what amount the Surety will pay unconditionally and what amount remains in dispute. In light of the approach you have taken to quantifying the Town's claim for additional design and construction management fees, I would appreciate your sending me a copy of the Town's contract with Dore & Whittier. I will let you know if there is still additional information we need.

Please let me know what action the Town takes and provide a copy of the fully executed Contract.





Thomas W. McEnaney, Esq.
November 12, 2003
Page 3

This letter and its enclosures are sent under a full reservation of rights on the part of American Manufacturers Mutual Insurance Company.

Very truly yours,

HOLLAND & KNIGHT LLP

Deborah S. Griffin

DSG/bsw: # 1339825_v1
431261.00002
Enclosures
cc:    Stephen J. Beatty, Esq. (w/encl.)
       Richard P. Anastasio, P.E. (w/encl.)
       Kieran B. Meagher, Esq. (w/encl.)
       Robert P. Garrity, Esq. (w/o encl.)



# COMPLETION CONTRACT

THIS COMPLETION CONTRACT (the "Completion Contract") is entered into this ____ day of _____, 2003, by and between the Town of North Brookfield (the "Town") and Fontaine Bros., Inc. (the "Completion Contractor").

## RECITALS:

WHEREAS, on or about April 19, 2002, E.J. Sciaba Contracting Co., Inc. (the "Former Contractor"), and the Town entered into a contract (the "Original Contract") for construction of the Junior/Senior High School, North Brookfield, Massachusetts (the "Project"), in accordance with the terms and provisions of the Original Contract, including all contract documents forming a part of the Original Contract, as amended;

WHEREAS, the Former Contractor voluntarily defaulted or otherwise indicated its inability to perform the Project, and the Owner has called upon the Surety to fulfill its obligations as surety under the terms of the Performance Bond;

WHEREAS, the Town has terminated the right of the Former Contractor to perform the Original Contract; and

WHEREAS, the Town and the Completion Contractor desire to enter into this Completion Contract under the terms and conditions hereinafter set forth;

NOW, THEREFORE, the Town and the Completion Contractor, for and in consideration of the mutual obligations and promises hereinafter set forth, do contract and agree as follows:

## AGREEMENTS:

1. **Completion Contract Documents.** This Completion Contract consists of the terms and provisions contained herein and the Original Contract, including the Project Schedule, all General, Supplementary and Special Conditions, drawings, specifications, forms, addenda and documents forming a part of the Original Contract, and any approved change orders, construction change directives, amendments and modifications thereto, the scope of work set forth in the Request for Proposals pursuant to which the Completion Contractor bid and was selected, and the items of deficient work listed in the Deficiency Log dated August 29, 2003 and the Steel Field Repair Log dated August 29, 2003, and all subsequently approved amendments and modifications

1



thereto, all of which are incorporated herein by reference and which are hereinafter referred to collectively as the "Contract Documents."

2.    **Strict Compliance.**  The Completion Contractor shall be bound to the Town by all of the terms and provisions of the Contract Documents, including administrative as well as technical provisions, and shall strictly comply therewith in all respects.

3.    **Work to be Performed.**  The Completion Contractor shall furnish and pay for all labor, materials, services and equipment and shall do everything else necessary to perform and satisfactorily complete the Original Contract as required by the Contract Documents as defined above.

4.    **Time for the Performance of the Work.**  The Completion Contractor shall commence work within five (5) days after receipt of a written Notice to Proceed issued by the Town, and shall substantially complete all work in accordance with the terms and conditions of the Contract Documents on or before August 15, 2004, except that the completion of Phase 4 parking lot and related work that, under Section 3.3 of the Original Contract (prior to any time extensions), was required to be performed by "17 November 2003" shall be complete on or before October 1, 2004.  Subject to allowable time extensions as provided under the terms of the Original Contract, if the Completion Contractor fails to complete the work under the Completion Contract in the times allowed by this paragraph, the Completion Contractor is liable to the Town for all liquidated damages as provided for under the Original Contract on account of the Completion Contractor's failure to complete such work by the date of completion set forth herein.

5.    **Price.**  The Town shall pay to the Completion Contractor and the Completion Contractor agrees to receive and accept $11,527,000 (the "Fixed Price") as full compensation for the performance and completion of the work as described in the Contract Documents, except as otherwise provided herein.  Future applications for payment shall be made based upon the Completion Contractor's schedule of values to be submitted within 10 days after receipt of a Notice to Proceed.

6.    **Latent Defects.**  The Completion Contractor shall be entitled to additional compensation on a time and materials basis, in accordance with the terms hereof, for correcting defects in the work performed by the Former Contractor that are not shown in the Contract Documents as defined above or which were not or could not have been observed by the Completion Contractor in the course of its visits to the Project prior hereto (the amounts for which the Completion Contractor is entitled to payment on a time and materials basis being the "T&M Price"). The T&M Price shall consist of the actual costs paid by the Completion Contractor for such work, less all discounts, rebates, and salvages that shall be taken by the Completion Contractor, plus a fifteen percent (15%) markup which shall be inclusive of the Completion Contractor's overhead and profit.  The actual costs shall include only the following:  the cost of all materials used or consumed in performance, including sales tax and cost of delivery; cost of labor, including social security, old age and unemployment insurance, fringe benefits, and workers' compensation insurance for persons working at the Project site (but not for project management personnel, corporate management personnel or any persons whose regular office is located other than at the Project site); bond premiums; and rental cost of equipment and machinery.



2

7.    **Performance and Payment Bonds.**  The Completion Contractor shall provide the Town with Performance and Payment Bonds each in a penal sum equal to the Fixed Price in a form acceptable to the Town prior to the Completion Contractor commencing work. The Completion Contractor's surety must be a commercial surety company currently listed with the U.S. Department of the Treasury and licensed to conduct business in the Commonwealth of Massachusetts.

8.    **Whole Agreement.**  This Completion Contract contains the entire understandings and agreements of the parties hereto. All oral or written agreements prior to the effective date of this Completion Contract and which relate to this Completion Contract and the matters set forth herein are declared null and void. Any modification of this Completion Contract must be made in writing and executed by the parties hereto.

9.    **Interpretation.**  In the event that there is any provision of this Completion Contract which is inconsistent or conflicting with any other documents forming a part of this Completion Contract, including but not limited to the Original Contract referred to herein, the terms and conditions of this Completion Contract shall govern and control.

10.    **Governing Law.**  This Completion Contract is executed pursuant to and governed by the laws of the Commonwealth of Massachusetts.

11.    **Notice.**  Any notice required to be made under the terms of this Completion Contract shall be deemed made if either party transmits such notice via facsimile and first class mail, postage pre-paid, as follows:

As to the Completion Contractor:

        Fontaine Bros., Inc.
        510 Cottage Street
        Springfield, MA 01104
        Fax: 413-734-1881
        Telephone:   413-781-2020
            Attn: Christopher J. Fontaine

As to the Town:

        Robert O'Neill
        Superintendent of Schools
        Town of North Brookfield
        10 New School Street
        North Brookfield, MA 01535
        Fax: (508) _____

With a copy to:
Thomas W. McEnaney, Esq.
Kopelman and Paige, P.C.
31 St. James Avenue
Boston, MA  02116-4102
Fax No.:  (617) 654-1735
Telephone:    (617) 556-0007

12.    **Construction of Contract.**  It is understood and agreed by the Town and the Completion Contractor that this Completion Contract shall be construed without any regard to any presumption or other rule requiring construction against the party causing this Completion Contract, or any Exhibits attached to this Completion Contract, to be drafted.

13.    **Execution in Counterparts.**  This Completion Contract may be executed in one or more counterparts, each of which shall be deemed to be an original.

IN WITNESS WHEREOF, the parties hereto have affixed their hands and seals to this Completion Contract the day and year first set forth above, and the individuals who execute this Completion Contract personally represent and warrant that they have full authority to execute this Completion Contract on behalf of the respective parties.

WITNESS:                                      Fontaine Bros., Inc.

_____              By: _____ (SEAL)

                                              Title: _____

WITNESS:                                      **Town of North Brookfield**

_____              By: _____ (SEAL)

                                              Title: _____

# 1351093_v1
431261.00002

4

# THE AMERICAN INSTITUTE OF ARCHITECTS



---

Executed In Four (4) Counterparts                    Bond No.    81833249

---

AIA Document A311

# Performance Bond

---

KNOW ALL MEN BY THESE PRESENTS: that   Fontaine Bros., Inc.

(Here insert full name and address or legal title of Contractor)

510 Cottage Street Springfield, MA  01104

as Principal, hereinafter called Contractor, and,      Federal Insurance Company

(Here insert full name and address or legal title of Surety)

3 Mountain View Road,  Warren, NJ  07059

as Surety, hereinafter called Surety, are held and firmly bound unto Town of North Brookfield

(Here insert full name and address or legal title of Owner)

10 New School Drive  North Brookfield, MA  01535

as Obligee, hereinafter called Owner, in the amount of   Eleven Million Five Hundred Twenty Seven Thousand
Dollars and 00/100                                            Dollars ($  11,527,000.00            ),

for the payment whereof Contractor and Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS,

Contractor has by written agreement dated                              , entered into a contract with Owner
for
(Here insert full name, address and description of project)
North Brookfield Junior & Senior High School - Earthwork, Concrete, Steel and Masonry

in accordance with Drawings and Specifications prepared by

(Here insert full name and address or legal title of Architect)

which contract is by reference made a part hereof, and is hereinafter referred to as the Contract.

---

AIA DOCUMENT A311  •  PERFORMANCE BOND AND LABOR AND MATERIAL PAYMENT BOND  •  AIA ®
FEBRUARY 1970 ED.  •  THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 N.Y. AVE., N.W., WASHINGTON, D.C. 20006

1

# PERFORMANCE BOND

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Contractor shall promptly and faithfully perform said Contract, then this obligation shall be null and void; otherwise it shall remain in full force and effect.

The Surety hereby waives notice of any alteration or extension of time made by the Owner.

Whenever Contractor shall be, and declared by Owner to be in default under the Contract, the Owner having performed Owner's obligations thereunder, the Surety may promptly remedy the default, or shall promptly

1) Complete the Contract in accordance with its terms and conditions, or

2) Obtain a bid or bids for completing the Contract in accordance with its terms and conditions, and upon determination by Surety of the lowest responsible bidder, or, if the Owner elects, upon determination by the Owner and the Surety jointly of the lowest responsible bidder, arrange for a contract between such bidder and Owner, and make available as Work progresses (even though there should be a default or a succession of defaults under

the contract or contracts of completion arranged under this paragraph) sufficient funds to pay the cost of completion less the balance of the contract price; but not exceeding, including other costs and damages for which the Surety may be liable hereunder, the amount set forth in the first paragraph hereof. The term "balance of the contract price," as used in this paragraph, shall mean the total amount payable by Owner to Contractor under the Contract and any amendments thereto, less the amount properly paid by Owner to Contractor.

Any suit under this bond must be instituted before the expiration of two (2) years from the date on which final payment under the Contract falls due.

No right of action shall accrue on this bond to or for the use of any person or corporation other than the Owner named herein or the heirs, executors, administrators or successors of the Owner.

Signed and sealed this      11th      day of      November, 2003.

ATTEST:

By _____
(Witness)

Fontaine Bros., Inc.
             (Principal)       (Seal)

By _____
             (Title)

WITNESS:

By Josephine Griffin
(Witness)

Federal Insurance Company
             (Surety)       (Seal)

By _____
             (Title)

Kathleen M. Flanagan      Attorney-in-Fact

# THE AMERICAN INSTITUTE OF ARCHITECTS



Bond No.    81833249

*AIA Document A311*

# Labor and Material Payment Bond

THIS BOND IS ISSUED SIMULTANEOUSLY WITH PERFORMANCE BOND IN FAVOR OF THE
OWNER CONDITIONED ON THE FULL AND FAITHFUL PERFORMANCE OF THE CONTRACT

KNOW ALL MEN BY THESE PRESENTS: that   Fontaine Bros., Inc.
(Here insert full name and address or legal title of Contractor)

510 Cottage Street Springfield, MA  01104

as Principal, hereinafter called Principal, and,      Federal Insurance Company
(Here insert full name and address or legal title of Surety)

3 Mountain View Road,  Warren, NJ  07059

as Surety, hereinafter called Surety, are held and firmly bound unto    Town of North Brookfield
(Here insert full name and address or legal title of Owner)

10 New School Drive  North Brookfield, MA  01535

as Obligee,  hereinafter called Owner,  for the use and benefit of claimants as hereinbelow defined,  in the

amount of Eleven Million Three Hundred Eighty One Thousand Three Hundred Sixty Two Dollars and 00/100
(Here insert a sum equal to at least one-half of the contract price)          Dollars ($  11,381,362.00           ),

for the payment whereof Principal and Surety bind themselves, their heirs, executors, administrators,
successors and assigns, jointly and severally, firmly by these presents.

WHEREAS,

Principal has by written agreement dated                                      , entered into a contract with Owner
for
(Here insert full name, address and description of project)
North Brookfield Junior & Senior High School - Earthwork, Concrete, Steel and Masonry

in accordance with Drawings and Specifications prepared by
(Here insert full name and address or legal title of Architect)

which contract is by reference made a part hereof, and is hereinafter referred to as the Contract.

---

AIA DOCUMENT A311  •  PERFORMANCE BOND AND LABOR AND MATERIAL PAYMENT BOND  •  AIA ®
FEBRUARY 1970 ED.  •  THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 N.Y. AVE., N.W., WASHINGTON, D.C. 20006

# LABOR AND MATERIAL PAYMENT BOND

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Principal shall promptly make payment to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the Contract, then this obligation shall be void, otherwise it shall remain in full force and effect, subject, however, to the following conditions:

1. A claimant is defined as one having a direct contract with the Principal or with a Subcontractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the Contract, labor and material being construed to include that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the Contract.

2. The above named Principal and Surety hereby jointly and severally agree with the Owner that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon. The owner shall not be liable for the payment of any costs or expenses of any such suit.

3. No suit or action shall be commenced hereunder by any claimant:

a) Unless claimant, other than one having a direct contract with the Principal, shall have given written notice to any two of the following: the Principal, the Owner, or the Surety above named, within ninety (90) days after such claimant did or performed the last of the work or labor, or furnished the last of the materials for which said claim is made, stating with substantial accuracy the amount claimed

and the name of the party to whom the materials were furnished, or for whom the work or labor was done or performed. Such notice shall be served by mailing the same by registered mail or certified mail, postage prepaid, in an envelope addressed to the Principal, Owner or Surety, at any place where an office is regularly maintained for the transaction of business, or served in any manner in which legal process may be served in the state in which the aforesaid project is located, save that such service need not be made by a public officer.

b) After the expiration of one (1) year following the date on which principal ceased Work on said Contract, it being understood, however, that if any limitation embodied in this bond is prohibited by any law controlling the construction hereof such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

c) Other than in state court of competent jurisdiction in and for the county or other political subdivision of the state in which the Project, or any part thereof, is situated, or in the United States District Court for the district in which the Project, or any part thereof, is situated, and not elsewhere.

4. The amount of this bond shall be reduced by and to the extent of any payment or payments made in good faith hereunder, inclusive of the payment by Surety or mechanics' liens which may be filed of record against said improvement, whether or not claim for the amount of such lien be presented under and against this bond.

Signed and sealed this           11th                    day of   November, 2003.

ATTEST:

By: _____
           (Witness)

WITNESS:

By: _____
           (Witness)

Fontaine Bros., Inc.
_____
            (Principal)                    (Seal)

By: _____
                    (Title)          PRES

Federal Insurance Company
_____
            (Surety)                       (Seal)

By: _____
                    (Title)

Kathleen M. Flanagan              Attorney-in-Fact

AIA DOCUMENT A311  •  PERFORMANCE BOND AND LABOR AND MATERIAL PAYMENT BOND  •  AIA ©
FEBRUARY 1970 ED.  •  THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 N.Y. AVE., N.W., WASHINGTON, D.C. 20006

2

This Notice pertains to the following Surety Bond issued by a member insurer of the Chubb Group of Insurance Companies, including Federal Insurance Company, Vigilant Insurance Company and Pacific Indemnity Company.

Bond Number: 81833249

## POLICYHOLDER DISCLOSURE NOTICE
## TERRORISM RISK INSURANCE ACT OF 2002

You are hereby notified that pursuant to the Terrorism Risk Insurance Act of 2002 (the "Act") effective November 26, 2002, we are making available to you coverage for losses arising out of certain acts of international terrorism. Terrorism is defined as any act certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States Mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Coverage for acts of terrorism is already included in the captioned Surety Bond.

You should know that, effective November 26, 2002, any losses caused by acts of terrorism covered by your Surety Bond will be partially reimbursed by the United States under the formula set forth in the Act. Under this formula, the United States of America pays 90% of covered terrorism losses that exceed the statutorily established deductible to be paid by the insurance company providing the coverage. The portion of your premium that is attributable to coverage for such acts of terrorism is zero, because we could not distinguish (and separately charge for) acts of terrorism from other causes of loss when we calculated your premium.

If you have any questions about this notice, please contact your agent or broker.





| **Chubb Surety** | **POWER OF ATTORNEY** | **Federal Insurance Company**<br>**Vigilant Insurance Company**<br>**Pacific Indemnity Company** | **Attn.: Surety Department**<br>**15 Mountain View Road**<br>**Warren, NJ 07059** |

**Know All by These Presents,** That FEDERAL INSURANCE COMPANY, an Indiana corporation, VIGILANT INSURANCE COMPANY, a New York corporation, and PACIFIC INDEMNITY COMPANY, a Wisconsin corporation, do each hereby constitute and appoint **Gary J. Giulietti, Kathleen M. Flanagan, Richard A. Leveroni and Bette A. Botticello of Farmington, Connecticut——————————————————————————————————————**

each as their true and lawful Attorney-in-Fact to execute under such designation in their names and to affix their corporate seals to and deliver for and on their behalf as surety thereon or otherwise, bonds and undertakings and other writings obligatory in the nature thereof (other than bail bonds) given or executed in the course of business, and any instruments amending or altering the same, and consents to the modification or alteration of any instrument referred to in said bonds or obligations.

**In Witness Whereof,** said FEDERAL INSURANCE COMPANY, VIGILANT INSURANCE COMPANY, and PACIFIC INDEMNITY COMPANY have each executed and attested these presents and affixed their corporate seals on this **27th** day of **March, 2003.**

_____       _____
Kenneth C. Wendel, Assistant Secretary      Frank E. Robertson, Vice President

**STATE OF NEW JERSEY** }
**County of Somerset** } **ss.**

On this **27th** day of **March, 2003**, before me, a Notary Public of New Jersey, personally came Kenneth C. Wendel, to me known to be Assistant Secretary of FEDERAL INSURANCE COMPANY, VIGILANT INSURANCE COMPANY, and PACIFIC INDEMNITY COMPANY, the companies which executed the foregoing Power of Attorney, and the said Kenneth C. Wendel being by me duly sworn, did depose and say that he is Assistant Secretary of FEDERAL INSURANCE COMPANY, VIGILANT INSURANCE COMPANY, and PACIFIC INDEMNITY COMPANY and knows the corporate seals thereof, that the seals affixed to the foregoing Power of Attorney are such corporate seals and were thereto affixed by authority of the By-Laws of said Companies; and that he signed said Power of Attorney as Assistant Secretary of said Companies by like authority; and that he is acquainted with Frank E. Robertson, and knows him to be Vice President of said Companies; and that the signature of Frank E. Robertson, subscribed to said Power of Attorney is in the genuine handwriting of Frank E. Robertson, and was thereto subscribed by authority of said By-Laws and in deponent's presence.

MARIA D. SCARDIGNO
Notary Public State of New Jersey
No. 2229781
Commission Expires Sept. 25, 2004

_____
Notary Public

**CERTIFICATION**

Extract from the By-Laws of FEDERAL INSURANCE COMPANY, VIGILANT INSURANCE COMPANY, and PACIFIC INDEMNITY COMPANY:

"All powers of attorney for and on behalf of the Company may and shall be executed in the name and on behalf of the Company, either by the Chairman or the President or a Vice President or an Assistant Vice President, jointly with the Secretary or an Assistant Secretary, under their respective designations. The signature of such officers may be engraved, printed or lithographed. The signature of each of the following officers: Chairman, President, any Vice President, any Assistant Vice President, any Secretary, any Assistant Secretary and the seal of the Company may be affixed by facsimile to any power of attorney or to any certificate relating thereto appointing Assistant Secretaries or Attorneys-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such power of attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding upon the Company with respect to any bond or undertaking to which it is attached."

I, Kenneth C. Wendel, Assistant Secretary of FEDERAL INSURANCE COMPANY, VIGILANT INSURANCE COMPANY, and PACIFIC INDEMNITY COMPANY (the "Companies") do hereby certify that

    (i) the foregoing extract of the By-Laws of the Companies is true and correct,
    (ii) the Companies are duly licensed and authorized to transact surety business in all 50 of the United States of America and the District of Columbia and are authorized by the U. S. Treasury Department; further, Federal and Vigilant are licensed in Puerto Rico and the U. S. Virgin Islands, and Federal is licensed in American Samoa, Guam, and each of the Provinces of Canada except Prince Edward Island; and
    (iii) the foregoing Power of Attorney is true, correct and in full force and effect.

Given under my hand and seals of said Companies at Warren, NJ this **11th** day of **November, 2003**

  

_____
Kenneth C. Wendel, Assistant Secretary

**IN THE EVENT YOU WISH TO NOTIFY US OF A CLAIM, VERIFY THE AUTHENTICITY OF THIS BOND OR NOTIFY US OF ANY OTHER MATTER, PLEASE CONTACT US AT ADDRESS LISTED ABOVE, OR BY**
    Telephone (908) 903-3485      Fax (908) 903-3656      e-mail: surety@chubb.com

15-10-0225 (Ed. 4-99) CONSENT

NBDW33745

FONBR

# ACORD™ CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)
11/6/03

| PRODUCER | THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. | |
|---|---|---|
| James J. Dowd & Sons Ins<br>14 Bobala Road<br>P.O. Box 10300<br>Holyoke, MA 01041 | | |
| | **INSURERS AFFORDING COVERAGE** | NAIC # |
| **INSURED**<br>Fontaine Bros. Inc.<br>510 Cottage Street<br>Springfield, MA 01104 | INSURER A: OneBeacon America Ins. Co | |
| | INSURER B: Acadia Ins. Co. | |
| | INSURER C: | |
| | INSURER D: | |
| | INSURER E: | |

## COVERAGES

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | ADD'L INSRD | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|---|
| | | **GENERAL LIABILITY**<br>COMMERCIAL GENERAL LIABILITY<br>CLAIMS MADE ☐ OCCUR | | | | EACH OCCURRENCE | $ |
| | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | MED EXP (Any one person) | $ |
| | | | | | | PERSONAL & ADV INJURY | $ |
| | | | | | | GENERAL AGGREGATE | $ |
| | | GEN'L AGGREGATE LIMIT APPLIES PER:<br>☐ POLICY ☐ PRO-JECT ☐ LOC | | | | PRODUCTS - COMP/OP AGG | $ |
| A | | **AUTOMOBILE LIABILITY**<br>☐ ANY AUTO<br>☐ ALL OWNED AUTOS<br>X SCHEDULED AUTOS<br>X HIRED AUTOS<br>X NON-OWNED AUTOS | CBXE46527 | 05/01/03 | 05/01/04 | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 |
| | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | **GARAGE LIABILITY**<br>☐ ANY AUTO | | | | AUTO ONLY - EA ACCIDENT | $ |
| | | | | | | OTHER THAN EA ACC<br>AUTO ONLY: AGG | $<br>$ |
| | | **EXCESS/UMBRELLA LIABILITY**<br>☐ OCCUR ☐ CLAIMS MADE<br>☐ DEDUCTIBLE<br>☐ RETENTION $ | | | | EACH OCCURRENCE | $ |
| | | | | | | AGGREGATE | $ |
| | | | | | | | $ |
| | | | | | | | $ |
| | | | | | | | $ |
| B | | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY**<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED?<br>If yes, describe under SPECIAL PROVISIONS below | WCA009926210 | 10/01/03 | 10/01/04 | X WC STATU-TORY LIMITS ☐ OTH-ER | |
| | | | | | | E.L. EACH ACCIDENT | $500,000 |
| | | | | | | E.L. DISEASE - EA EMPLOYEE | $500,000 |
| | | | | | | E.L. DISEASE - POLICY LIMIT | $500,000 |
| | | **OTHER** | | | | | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES / EXCLUSIONS ADDED BY ENDORSEMENT / SPECIAL PROVISIONS
*20 Days on Automobile for NonPayment
Job: North Brookfield Junior & Senior High School, New School Drive, North
Brookfield, MA 01535

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Town of North Brookfield<br>Office of the Supt of Schools<br>10 New School Drive<br>North Brookfield, MA 01535 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL __30*__ DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES.<br>AUTHORIZED REPRESENTATIVE<br>*[signature]* |

ACORD 25 (2001/08) 1 of 2        #S41213/M40936                    CAS          © ACORD CORPORATION 1988

# ACORD™ CERTIFICATE OF LIABILITY INSURANCE

| | 01/31/2004 | DATE (MM/DD/YY) 11/07/2003 |

| PRODUCER | THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. |
|---|---|

Lockton Companies
80 Scott Swamp Rd., Suite 202
Farmington CT 06032
860-678-4000

**INSURERS AFFORDING COVERAGE**

| INSURED 1027409 | Fontaine Bros., Inc. 510 Cottage Street Springfield MA 01104 |
|---|---|

| INSURER A: | Liberty Surplus Insurance |
| INSURER B: | American Int'l Specialty Lines |
| INSURER C: | |
| INSURER D: | |
| INSURER E: | |

## COVERAGES 97

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|
| A | GENERAL LIABILITY  [X] COMMERCIAL GENERAL LIABILITY  CLAIMS MADE [X] OCCUR | EGLB0078906-012 | 01/31/2003 | 01/31/2004 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | FIRE DAMAGE (Any one fire) | $ 300,000 |
| | | | | | MED EXP (Any one person) | $ XXXXXXX |
| | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | POLICY [X] PRO-JECT  LOC | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | AUTOMOBILE LIABILITY  ANY AUTO | NOT APPLICABLE | | | COMBINED SINGLE LIMIT (Ea accident) | $ XXXXXXX |
| | ALL OWNED AUTOS  SCHEDULED AUTOS | | | | BODILY INJURY (Per person) | $ XXXXXXX |
| | HIRED AUTOS  NON-OWNED AUTOS | | | | BODILY INJURY (Per accident) | $ XXXXXXX |
| | | | | | PROPERTY DAMAGE (Per accident) | $ XXXXXXX |
| | GARAGE LIABILITY  ANY AUTO | NOT APPLICABLE | | | AUTO ONLY - EA ACCIDENT | $ XXXXXXX |
| | | | | | OTHER THAN EA ACC AUTO ONLY: AGG | $ XXXXXXX $ XXXXXXX |
| B | EXCESS LIABILITY  [X] OCCUR  CLAIMS MADE | BE 7413521 | 01/31/2003 | 01/31/2004 | EACH OCCURRENCE | $ 25,000,000 |
| | | | | | AGGREGATE | $ 25,000,000 |
| | UMBRELLA FORM | | | | | $ XXXXXXX |
| | DEDUCTIBLE | | | | | $ XXXXXXX |
| | RETENTION $ | | | | | $ XXXXXXX |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY | NOT APPLICABLE | | | WC STATU-TORY LIMITS  OTH-ER | |
| | | | | | E.L. EACH ACCIDENT | $ XXXXXXX |
| | | | | | E.L. DISEASE - EA EMPLOYEE | $ XXXXXXX |
| | | | | | E.L. DISEASE - POLICY LIMIT | $ XXXXXXX |
| | OTHER | | | | | |

DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/EXCLUSIONS ADDED BY ENDORSEMENT/SPECIAL PROVISIONS
The Town of North Brookfield, Dore and Whittier Inc and the American Manufacturers Mutual Insurance Company are included as Additional Insured's with regards to General Liability but only in conjunction to the work performed by the Named Insured at the Nroth Brookfield Junior and Senior Highschool located at New School Drive, North Brookfield, MA

| CERTIFICATE HOLDER | ADDITIONAL INSURED; INSURER LETTER: _____ | CANCELLATION |
|---|---|---|
| 1908572 Town of North Brookfield Office of the Superintendent of Schools 10 New School Drive North Brookfield MA 01535 | | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL __30__ DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES. AUTHORIZED REPRESENTATIVE |

ACORD 25-S (7/97)    © ACORD CORPORATION 1988