**EXHIBIT  P**





1795 WILLISTON RD. STE. 200, SOUTH BURLINGTON, VT 05403
PHONE: 802.863.1428  FAX: 802.863.6955

29 WATER ST. STE. 304, NEWBURYPORT, MA 01950
PHONE: 978.499.2999  FAX: 978.499.2944

1400 HANCOCK ST. QUINCY, MA 02169
PHONE: 617.471.2897  FAX: 617.471.2516

FILE

*THIS SUPERCEDES
12/30/03
letter sent
previously*

31 December 2003

Mr. Jim Murray, Co-Chair
North Brookfield Building Committee
c/o Mr. Robert O'Neill, Superintendent
North Brookfield Public Schools
10 New School Drive
North Brookfield, MA 01535

**RE:    Additional Fees to Complete the Project**

Dear Jim,

Per your request, we have prepared our estimate to provide architectural/engineering services to complete the project under a new completion contractor. Fontaine Brothers, Inc. has recently been contracted by the Town to complete the project with substantial completion dates of August 26, 2004 for the new building and October 11, 2004 for the remaining demolition, abatement and sitework.

We propose to cease timecard billing on 12/31/03. As you recall, we initiated time card billing at the time of default of the original contractor on May 30, 2003. For the start of the New Year we propose to start billing our time against the stipulated lump sum of $738,040.95 for all Basic Architectural/Engineering Services, Construction Management Services, Additional Services of sub consultants and estimated not-to-exceed Reimbursable Costs defined in our original agreement, AIA B141 (97) as amended, dated June 6, 2001, to complete the Project with the new Contractor. These costs are detailed in the attached, and incorporated by reference herein, *Estimated Cost to Complete* worksheet dated December 30, 2003. Our contract expiration date will also be extended to December 11, 2004 which is 90 days beyond the new scheduled substantial completion date for the project. This letter modifies our original contract. If the terms and conditions of this letter agreement conflict with the terms and conditions of our original agreement, this letter agreement shall be controlling.

We look forward to the opportunity to complete this project with the Town and deliver the long awaited new Jr./Sr. High School prior to the start of the next school year.

NBDW34026

Mr. Jim Murray, Co-Chair
North Brookfield Building Committee
31 December 2003
Page 2

Please acknowledge your acceptance of these terms by signing a copy of this letter and returning it to our office. If you have any questions regarding this proposal please contact me at your earliest convenience.


Sincerely,

**DORE AND WHITTIER, INC.**
Architects • Project Managers


Lee D. Dore, Assoc. AIA, CSI
Project Manager

Acceptance by:
Town of North Brookfield


_____
Signature


_____
Title


_____
Date

Dore and Whittier, Inc.
Project No. 00-404

North Brookfield Jr./Sr. High School
Estimated Fees to Complete

Updated 12-30-03

**North Brookfield Jr./Sr. High School**
*Estimated Fee to complete project*

| Original Contract Schedule between Dore and Whittier and N. Brookfield | Phase 1 Substantial Completion 6/30/2003 | Phase 2 Substantial Completion 10/31/2003 | 90 days beyond Substantial Comletion 1/31/2004 | |
|---|---|---|---|---|

**Additional Time Duration Breakdown**

| | DW's Proposed new contract to start: 31-Dec-03 | Phase 1 Substantial Completion Date under Completion Contractor 26-Aug-04 | Phase 2 Substantial Completion Date under Completion Contractor 11-Oct-04 | DW Contract with Owner is for 90 days beyond final substantial completion date 11-Dec-04 |
|---|---|---|---|---|
| # of Weeks | | 34 | 40 | 49 |
| # of months | | 8.5 | 10 | 12.25 |

**Basic A/E Services \***

| Work Group | Hourly Rate | Hours Per Week | Estimated # of weeks to complete | Estimated Cost | Cost Per Month |
|---|---|---|---|---|---|
| Project Manager | $116 | 18 | 49 | $101,871 | |
| Job Captain | $102 | 18 | 49 | $89,832 | |
| Project Architect or Engineer | $105 | 16 | 49 | $82,320 | |
| Principal | $126 | 4 | 49 | $24,696 | |

*\* hours based on average. Actual weekly hours may differ (eg. At the beginning of the project they may be higher, slow a bit in the middle and again increase after the first substantial completion date for developing punchlist and initiating close-out procedures*

| Total Estimated Basic A/E Cost to Complete | | | | $298,719 | $24,385.20 |
|---|---|---|---|---|---|

**Additional Services**

| | | |
|---|---|---|
| Civil | $20,556.25 | |
| Abatement Monitoring | $28,405.00 | |
| Food Service | $3,000.00 | |
| F&E Procurement | $44,275.00 | |
| Ch. 17 Testing | $10,000.00 | |
| Technology Procurement | $32,586.00 | |

| Total Estimated Additional Services Cost to Complete | $138,822.25 | $11,332.43 |
|---|---|---|

**Reimbursable Expenses**

| Lump Sum Reimbursable Expenses | (estimated) | $18,750.00 | $1,530.61 |
|---|---|---|---|

**Construction Management**

| Work Group | Hourly Rate | Hours Per Week | Estimated # of weeks to complete | Estimated Cost |
|---|---|---|---|---|
| Construction Manager | 115 | 50 | 49 | $281,750.00 |

| Total Estimated Construction Management Cost to Complete | | | | $281,750.00 | $23,000.00 |
|---|---|---|---|---|---|

*Additive Cost Summary*

| Total Estimated Costs for Completion 12/31/03 - 12/11/04 (TO BE PAID TO DORE AND WHITTIER, INC.) | $738,040.95 |
|---|---|

# EXHIBIT  Q



DORE AND WHITTIER ARCHITECTS, INC.
Architects / Project Managers

1795 Williston Road Ste. 200
South Burlington, VT 05403
Phone: (802) 863-1428  Fax: (802) 863-6955

# Invoice

Invoice Number: 53
December 31, 2004
Federal ID # 03-0336434

North Brookfield Public School
10 New School Drive
No. Brookfield, MA 01535
Attention: James Murray / Donald Gillette, Co-chairmen Sch Bldg Com.

Project: 00-0404          **North Brookfield Jr/Sr High School**

Project Manager: Lee Dore
For the Period: 11/27/2004 to 12/31/2004

| Basic A/E Services | Contract Amount | Percent Complete | Earned To Date | Prior Billings | Current Billing | Balance to Complete |
|---|---|---|---|---|---|---|
| Schematic Design | 125,280.00 | 100% | 125,280.00 | 125,280.00 | 0.00 | 0.00 |
| Design Development | 167,040.00 | 100% | 167,040.00 | 167,040.00 | 0.00 | 0.00 |
| Construction Documents | 292,320.00 | 100% | 292,320.00 | 292,320.00 | 0.00 | 0.00 |
| Bidding or Negotiation | 41,760.00 | 100% | 41,760.00 | 41,760.00 | 0.00 | 0.00 |
| Construction Admin. | 156,768.07 | 100% | 156,768.07 | 156,768.07 | 0.00 | 0.00 |
| Revised Construction Adm. | 298,719.00 | 100% | 297,719.00 | 295,731.81 | 1,987.19 | 1,000.00 |
| | 1,081,887.07 | | 1,080,887.07 | 1,078,899.88 | 1,987.19 | 1,000.00 |

| Credit - Boiler room access hatches | Contract Amount | Percent Complete | Earned To Date | Prior Billings | Current Billing | Balance to Complete |
|---|---|---|---|---|---|---|
| Credit from Dore&Whittie | -2,666.00 | 100% | -2,666.00 | -2,666.00 | 0.00 | 0.00 |
| | -2,666.00 | | -2,666.00 | -2,666.00 | 0.00 | 0.00 |

| Construction Management | Contract Amount | Percent Complete | Earned To Date | Prior Billings | Current Billing | Balance to Complete |
|---|---|---|---|---|---|---|
| Constr. Management | 158,550.00 | 100% | 158,550.00 | 158,550.00 | 0.00 | 0.00 |
| Revised Construction Mng | 281,750.00 | 100% | 281,750.00 | 278,932.50 | 2,817.50 | 0.00 |
| | 440,300.00 | | 440,300.00 | 437,482.50 | 2,817.50 | 0.00 |

*Page 1 of 3*

NB041569

Dore & Whittier Architects, Inc.                          December 31, 2004
Project: 00-0404                                          Invoice:    53

| Revised Additional Services | Not to Exceed: | Cost | Earned To Date | Prior Billings | Billing w/Mult | Balance to Complete |
|---|---|---|---|---|---|---|
| Chapter 17 Testing - EDG | 10,000.00 | | 8,770.13 | 8,770.13 | | 1,229.87 |
| Civil - BDG | 20,556.25 | 453.12 | 19,639.86 | 19,118.77 | 521.09 | 916.39 |
| Add'l Asbestos Monitoting - | 5,800.00 | | 5,800.00 | 5,800.00 | | 0.00 |
| Abatement Monitoring - ATC | 28,405.00 | | 28,405.00 | 28,405.00 | | 0.00 |
| F& E Procurement - JCA | 44,275.00 | 8,366.80 | 40,901.82 | 31,280.00 | 9,621.82 | 3,373.18 |
| Food Service - Crabtree | 3,000.00 | | 1,794.00 | 1,794.00 | | 1,206.00 |
| Soil Remediation - ATC | 18,810.00 | 3,405.20 | 16,412.79 | 12,496.81 | 3,915.98 | 2,397.21 |
| Tech Infrastrucutre | 2,846.25 | | 2,846.25 | 2,846.25 | | 0.00 |
| Techn Procurement - CCR | 29,739.75 | | 23,699.20 | 23,699.20 | | 6,040.55 |
| | 163,432.25 | | 148,269.05 | 134,210.16 | 14,058.89 | 15,163.20 |

| Additional Services (Prior to 12/31/03) | Not to Exceed: | Cost | Earned To Date | Prior Billings | Billing w/Mult | Balance to Complete |
|---|---|---|---|---|---|---|
| Acoustical - Cambridge | 3,565.00 | | 3,565.00 | 3,565.00 | | 0.00 |
| Chapter 17 Testing | 12,302.42 | | 12,302.42 | 12,302.42 | | 0.00 |
| Civil - BDG | 68,209.43 | | 68,209.43 | 68,209.43 | | 0.00 |
| CM's Computer & Partnering | 11,000.00 | | 11,000.00 | 11,000.00 | | 0.00 |
| Cost Estimate | 3,542.00 | | 3,542.00 | 3,542.00 | | 0.00 |
| Environ. Constr. Monitoring | 586.50 | | 586.50 | 586.50 | | 0.00 |
| Environ. Design/Spec. - ATC | 17,077.50 | | 17,077.50 | 17,077.50 | | 0.00 |
| F/F/& Eq. (Cat. 2 & 3) JCA | 40,250.01 | | 40,250.01 | 40,250.01 | | 0.00 |
| Food Service - Crabtree | 10,166.00 | | 10,166.00 | 10,166.00 | | 0.00 |
| Geotechnical - Yankee | 14,616.00 | | 14,616.00 | 14,616.00 | | 0.00 |
| Interior Design | 5,365.78 | | 5,365.78 | 5,365.78 | | 0.00 |
| Bid Doc. Printing | 36,889.53 | | 36,889.53 | 36,889.53 | | 0.00 |
| Survey - Heritage | 30,475.00 | | 30,475.00 | 30,475.00 | | 0.00 |
| Technology F/F/E - CCR | 5,924.80 | | 5,924.80 | 5,924.80 | | 0.00 |
| Technology - CCR | 18,060.74 | | 18,060.74 | 18,060.74 | | 0.00 |
| | 278,030.71 | | 278,030.71 | 278,030.71 | | 0.00 |

| Legal Issues G. C. Default | Not to Exceed: | Cost | Earned To Date | Prior Billings | Billing w/Mult | Balance to Complete |
|---|---|---|---|---|---|---|
| Summary | 156,928.21 | | 156,598.21 | 156,598.21 | 0.00 | 330.00 |

| Legal Issues Surity | Not to Exceed: | Cost | Earned To Date | Prior Billings | Billing w/Mult | Balance to Complete |
|---|---|---|---|---|---|---|
| | | Hours | | Rate | | |

*Page 2 of 3*

NB041570

Dore & Whittier Architects, Inc.  
Project: 00-0404

December 31, 2004  
Invoice:     53

| Legal Issues Surity | Not to Exceed: | Cost | Earned To Date | Prior Billings | Billing w/Mult | Balance to Complete |
|---|---|---|---|---|---|---|
| Project Manager | | 3.00 | $110.00 | | 330.00 | |
| | | Professional Fee Subtotal: | | | $330.00 | |
| Summary | 330.00 | | 330.00 | 0.00 | 330.00 | 0.00 |

| Revised Reimbursable Expenses | Not to Exceed: | Cost | Earned To Date | Prior Billings | Billing w/Mult | Balance to Complete |
|---|---|---|---|---|---|---|
| Travel | | | | | 208.94 | |
| Travel Exps | | | | | 34.32 | |
| | | Reimb. Exp. Subtotal: | | | $243.26 | |
| Summary | 18,750.00 | | 13,789.88 | 13,546.62 | 243.26 | 4,960.12 |

| Reimbursable Expenses (Prior to 12/31/03) | Not to Exceed: | Cost | Earned To Date | Prior Billings | Billing w/Mult | Balance to Complete |
|---|---|---|---|---|---|---|
| Summary | 65,601.37 | | 65,601.37 | 65,601.37 | 0.00 | 0.00 |

Please Pay This Amount:          **$19,436.84**

| Aged Receivables: | | | | | |
|---|---|---|---|---|---|
| | Current | 30- Days | 60- Days | 90- Days | > 90Days |
| | $19,436.84 | $0.00 | $0.00 | $0.00 | $0.00 |

*Page 3 of 3*

NB041571

**EXHIBIT  R**

**KOPELMAN AND PAIGE, P. C.**

ATTORNEYS AT LAW

31 ST. JAMES AVENUE

BOSTON, MASSACHUSETTS 02116-4102

(617) 556-0007

FAX (617) 654-1735

PITTSFIELD OFFICE
(413) 443-6100

NORTHAMPTON OFFICE
(413) 585-0092

WORCESTER OFFICE
(508) 752-0099

LEONARD KOPELMAN
DONALD G. PAIGE
ELIZABETH A. LANE
JOYCE FRANK
JOHN W. GIORGIO
BARBARA J. SAINT ANDRE
JOEL B. BARD
JOSEPH L. TEHAN, JR.
THERESA M. DOWDY
DEBORAH A. ELIASON
RICHARD BOWEN
DAVID J. DONESKI
JUDITH C. CUTLER
KATHLEEN E. CONNOLLY
DAVID C. JENKINS
MARK R. REICH
BRIAN W. RILEY
DARREN R. KLEIN
JONATHAN M. SILVERSTEIN

EDWARD M. REILLY
DIRECTOR WESTERN OFFICE

WILLIAM HEWIG III
JEANNE S. McKNIGHT

KATHLEEN M. O'DONNELL
SANDRA M. CHARTON
PATRICIA A. CANTOR
THOMAS P. LANE, JR.
MARY L. GIORGIO
THOMAS W. McENANEY
KATHARINE GOREE DOYLE
GEORGE X. PUCCI
LAUREN F. GOLDBERG
JASON R. TALERMAN
JEFFREY A. HONIG
MICHELE E. RANDAZZO
GREGG J. CORBO
RICHARD T. HOLLAND
LISA C. ADAMS
ELIZABETH R. CORBO
MARCELINO A. BELLA
VICKI S. MARSH
JOHN J. GOLDROSEN
SHIRIN EVERETT
BRIAN E. GLENNON, II
JONATHAN D. EICHMAN
LAURA H. PAWLE
TODD A. FRAMPTON
JACKIE COWIN
SARAH N. TURNER

November 3, 2003

<u>BY FACSIMILE - (617) 523-6850</u>

Deborah S. Griffin, Esq.
Holland & Knight, LLP
10 St. James Avenue
Boston, MA 02116

**DEPOSITION EXHIBIT**

Dore   60
4-13-05   VS

Re:   <u>North Brookfield Junior/Senior High School Project</u>

Dear Ms. Griffin:

This is a follow-up to our October 15, 2003 meeting relative to the above-referenced project. As you may recall, you requested that the Town provide you with an estimate for the work that was performed by E.J. Sciaba Contracting Company, Inc. ("Sciaba") relative to CCD No. 3. Please be advised that project architect, Dore & Whittier, Inc. ("D&W"), issued CCD No. 3 to enable Sciaba to continue with the placement of concrete foundation walls at area "A" on July 19, 2002. CCD No. 3, along with sketch 071902, directed Sciaba to install four 6" wall sleeves A line and B line for later placement of two 4" PVC conduits to run data lines from the new high school to the elementary school. Sciaba completed the work along A line on or about August 22, 2002 and along B line on or about October 22, 2002. D&W estimate that this work cost $440.00, based upon the following breakdown:

| | |
|---|---|
| Material and labor to fabricate four 6" wall sleeves | $200.00 |
| Laborer to install four sleeves | $200.00 |
| Overhead and profit | $40.00 |
| Total Estimated Cost | $440.00 |

Furthermore, you also requested that the Town provide you with a more detailed breakdown of the additional costs that it incurred as a result of Sciaba's voluntary default on the project. As we discussed, the Town has incurred legal fees in the amount of approximately $10,000.00. As we also discussed, the Town incurred costs for roof repairs to the existing high school in the amount of $6,336.50 that were performed in August, 2003. At the meeting, you

PRINTED ON RECYCLED PAPER

Nov  4 2003   8:44     P.03
11/03/2003 16:43 FAX 617 654 1735        KOPELMAN AND PAIGE                    ☒003/003

KOPELMAN AND PAIGE, P.C.
  Deborah S. Griffin, Esq.
  November 3, 2003
  Page 2

questioned whether American Manufacturers Mutual Insurance Company ("AMMIC"), as the performance bond surety, would be responsible for these costs because it was your belief that the scheduled completion date for the project was December 15, 2003. However, please be advised that the date that you cited is incorrect.

As you know, the building was originally scheduled for substantial completion on July 17, 2003. This date was extended by 28 days as a result of the unsuitable soils issue, which is addressed in Change Order No. 3. The substantial completion date for the demolition of the existing school and site work was similarly extended by 28 days from November 17, 2003 to December 15, 2003. If the building was completed by August 15, 2003 as required, the Town would not have had to incur the cost of repairs to the existing high school roof. Therefore, it is the Town's position that AMMIC is responsible for these costs.

In addition to the legal and roof costs, the Town also incurred and will incur additional costs for design and construction management services that are attributable to Sciaba's voluntary default. In accordance with your request, attached please find a breakdown of these additional fees, which total $579,027.55. This includes the additional costs incurred by the Town to date, as well as a credit to AMMIC in the amount of $256,593.38, which is the balance on the Town's contract with D&W. Please note that I can provide you with further explanation and support for this estimate upon your request and would be happy to meet with you to discuss this estimate further.

You also stated that Sciaba was entitled to an additional time extension in the amount of 60 days as a result of winter conditions. Please be advised that the Town denies that Sciaba is entitled to any time extensions on the Project, as it is the Town's position that any delays were caused by Sciaba. Sciaba's project schedule initially provided that Sciaba would close the building by January 7, 2002. At a partnering session in the Fall of 2002, Sciaba assured the Town that it would meet its deadlines. Yet, as you know, Sciaba never met its deadlines. As a result, the building was not closed prior to Winter, which would have enabled Sciaba and its subcontractors to work indoors. Since the Town and weather in no way contributed to any delays on this Project, the Town does not feel that a 60 day extension is warranted.

As you may know, the Town agreed to the completion dates of April 1, 2004 for the building and August 1, 2004 for the site and demolition work. It is the Town's understanding, however, that AMMIC has unilaterally changed the scheduled completion dates to April 30, 2004 and August 30, 2004 without the Town's knowledge and consent. Please be advised that the August 30, 2004 date for substantial completion of the site and demolition work is unacceptable. The Town has grave concerns that the August 30, 2004 will not be met, which could delay the opening of the High School and adversely impact public safety.

11/03/2003 16:43 FAX 617 654 1735    KOPELMAN AND PAIGE    Nov  4 2003  8:44    P.04    @004/005

KOPELMAN AND PAIGE, P.C.
Deborah S. Griffin, Esq.
November 3, 2003
Page 3


Finally, as set forth in my October 22, 2003 e-mail to you, based on Greyhawk's latest schedule, it was our understanding that AMMIC was going to receive final bids on October 14, 2003 and select the completing contractor. To date, however, we have not been informed whether AMMIC has made its selection, although we have been told that Greyhawk has made its recommendation to AMMIC. Kindly advise as soon as possible whether AMMIC has selected a completing contractor. If AMMIC has not made its selection, please advise what is holding up the selection process and when we can expect a decision.

If you have any questions, please do not hesitate to contact me.

Very truly yours,

Thomas W. McEnaney


TWM/kad
Enc.
cc:    Board of Selectmen
       School Building Committee
       Mr. Lee Dore
       Kieran B. Meagher, Esq.

205014/N3RO/0017

**EXHIBIT  S**

Robert J. O'Neill                                                                05/23/2005

Page 1

1                                          VOLUME: I

2                                          PAGES: 1 to 186

3                                          EXHIBITS: See Index

4

5                   UNITED STATES DISTRICT COURT

6                   DISTRICT OF MASSACHUSETTS

7

8     - - - - - - - - - - - - - - - - - - - x

9     AMERICAN MANUFACTURERS MUTUAL

10    INSURANCE COMPANY

11              Plaintiff

12        v.                                Civil Action

13                                          No. 03-40266-CBS

14    TOWN OF NORTH BROOKFIELD

15              Defendant

16    - - - - - - - - - - - - - - - - - - - x

17          DEPOSITION OF ROBERT J. O'NEILL

18              Monday, May 23, 2005

19                  9:06 a.m.

20              Holland & Knight

21            10 St. James Avenue

22            Boston, Massachusetts

23

24      Michelle Keegan, Court Reporter

                LegaLink Boston

Robert J. O'Neill                                                                            05/23/2005

Page 2

```
 1    A P P E A R A N C E S
 2
 3    HOLLAND & KNIGHT, LLP
 4        By Deborah S. Griffin, Esq.
 5        10 St. James Avenue
 6        Boston, Massachusetts 02116
 7        (617) 305-2044
 8        Counsel for the Plaintiff
 9
10    KOPELMAN AND PAIGE, P.C.
11        By Thomas W. McEnaney, Esq.
12        31 St. James Avenue
13        Boston, Massachusetts 02116
14        (617) 556-0007
15        Counsel for the Defendant
16
17
18
19
20
21
22
23
24                    LegaLink Boston
```

Page 3

```
 1              I N D E X
 2    WITNESS:                    DIRECT
 3    ROBERT J. O'NEILL
 4    By Ms. Griffin              4
 5
 6
 7          E X H I B I T S
 8    No.   Page          No.   Page
 9    177.....8           187.....124
10    178.....13          188.....130
11    179.....37          189.....156
12    180.....62          190.....167
13    181.....85          191.....167
14    182.....98          192.....167
15    183.....104         193.....172
16    184.....105
17    185.....105
18    186.....109
19
20
21
22
23    * Original exhibits retained by Ms. Griffin *
24                    LegaLink Boston
```

Page 4

```
 1              P R O C E E D I N G S
 2        MS. GRIFFIN:  The only stipulation is
 3    that signing of the transcript by the witness, the
 4    notarization is waived.
 5        ROBERT J. O'NEILL
 6    having been satisfactorily identified and duly sworn
 7    by the Notary Public, was examined and testified as
 8    follows:
 9              DIRECT EXAMINATION
10    BY MS. GRIFFIN:
11    Q.  Would you state your full name, please.
12    A.  Robert O'Neill.
13    Q.  And your address?
14    A.  42 Baker Street in South Hadley.
15    Q.  And do you hold a position with the town of
16    North Brookfield?
17    A.  Yes.
18    Q.  What is that position?
19    A.  Superintendent of schools.
20    Q.  Is that a full-time job?
21    A.  Yes.
22    Q.  Do you hold any other positions besides that
23    one?
24    A.  No.          LegaLink Boston
```

Page 5

```
 1    Q.  How long have you been the superintendent of
 2    schools for North Brookfield?
 3    A.  Approximately seven years.
 4    Q.  Would you give your educational background,
 5    please.
 6    A.  Bachelor's and a master's in educational
 7    administration from Westfield State College, and
 8    I've taken additional graduate courses at Westfield
 9    State and at Mount Holyoke.
10    Q.  Where is Westfield State located?
11    A.  Westfield, Massachusetts.
12    Q.  When did you obtain your degrees?
13    A.  Bachelor's degree in 1970, master's degree I
14    believe 1975.
15    Q.  What has been your work history since
16    graduating from college?
17    A.  I taught for nine and a half years.  I was
18    an assistant principal of an elementary school for a
19    year.  I was central office administrator for 17
20    years, all in Holyoke.  And then I've been at North
21    Brookfield for the last seven years.
22    Q.  The last position you held with Holyoke,
23    what were your responsibilities in that position?
24    A.  I supervised the desegregation process and
                      LegaLink Boston
```

2 (Pages 2 to 5)

Robert J. O'Neill                                                05/23/2005

Page 6

1   oversaw student transportation, student assignment,
2   Magna programs, and all other issues related to
3   desegregation.
4       Q. How many years were you in that position?
5       A. Almost 18.
6       Q. Would you describe your role with respect to
7   the construction of the junior/senior high school in
8   North Brookfield.
9       A. It was primarily support staff, a member of
10  the support staff to the school building committee,
11  and kind of supportive oversight of most of the
12  responsibilities related to the project.
13      Q. Did you have a role with respect to
14  budgeting for the project?
15      A. Not a direct role, but I reviewed and had
16  periodic contact with the town accountant and with
17  the architect with regard to the budget.
18      Q. With respect to payment of invoices or
19  requisitions on the project, did you have a role on
20  that?
21      A. Just to facilitate the process. Not a
22  direct role.
23      Q. Were you an ex officio member of the school
24  building committee?
                        LegaLink Boston

Page 7

1       A. Yes.
2       Q. Did you attend all school building committee
3   meetings?
4       A. Most. Most of them.
5       Q. Did you attend other meetings in connection
6   with the project?
7       A. I attended most of the job meetings, owner's
8   meetings.
9       Q. Job meetings at the job site with the
10  contractor?
11      A. Correct.
12      Q. And when you say "owner's meetings," what do
13  you mean by that?
14      A. Owner's or job meetings.
15      Q. Did you attend meetings of the board of
16  selectmen at which the project was discussed?
17      A. I don't believe so. I attended meetings of
18  the school building committee where the board of
19  selectmen were in attendance.
20          I may have attended one select board
21  meeting, but primarily the meetings were school
22  building committee meetings, some of which the
23  school -- the select board was in attendance.
24      Q. You're aware that Jim Murray, one of the
                        LegaLink Boston

Page 8

1   co-chairs of the school building committee, had his
2   deposition taken, are you not?
3       A. Yes.
4       Q. Did you speak to him after his deposition?
5       A. Yes.
6       Q. And what did he tell you?
7       A. Nothing special. Talked about the duration
8   and the process, that was about it.
9       Q. Did he tell you about any of the questions
10  or his answers?
11      A. No.
12      Q. Did he ask you any questions after his
13  deposition?
14      A. Not after his deposition, no.
15          MS. GRIFFIN: Let's mark this as 177,
16  please.
17          (Exhibit Number 177
18          marked for identification)
19          (Pause)
20      Q. Have you finished reading it, Mr. O'Neill?
21      A. Uh-hmm.
22      Q. Can you identify Exhibit 177, please?
23      A. I believe so.
24      Q. And what is it?
                        LegaLink Boston

Page 9

1       A. It's a notice to proceed to E.J. Sciaba.
2       Q. Is that your signature in the first
3   signature block?
4       A. Yes, it is.
5       Q. Under your signature, is that Jim Murray's
6   signature as well?
7       A. I believe so, yes.
8       Q. Did you send out the original of Exhibit 177
9   to E.J. Sciaba?
10      A. I suspect that I did.
11      Q. When did you send it?
12      A. I'm not sure. It's undated. Sometime
13  around April. I would guess April 22nd, in that
14  vicinity.
15      Q. And why do you say that's when you sent it
16  out?
17      A. I'm just looking at the fine print. It was
18  received by Don Whittier on April 25th, so...
19      Q. In the third paragraph of Exhibit 177 it
20  refers to the executed owner/contractor agreement
21  which will be delivered to you at the
22  preconstruction meeting scheduled at this site for
23  April 22, 2002. Did you attend a meeting on that
24  date?
                        LegaLink Boston

LegaLink Boston
(617) 542-0039

Robert J. O'Neill                                                                                                05/23/2005

Page 166

1    A. Correct.
2    Q. And so there was a balance of $142,405.97 in
3  the construction contingency, right?
4    A. Correct.
5    Q. And the $264,000 that was spent during the
6  Fontaine period, that was on change orders; is that
7  right?
8    A. I'm not exactly sure, but very possibly,
9  yes.
10    Q. On the second page of Exhibit 118, do you
11  see the lines labeled "Furnishings" and "Equipment
12  and Technology"?
13    A. Yes.
14    Q. And can you tell from that how much of the
15  furnishings and equipment budget had been spent as
16  of August 25, 2004?
17    A. I believe that represents authorized
18  expenditures, not necessarily expenditures. So
19  there were authorized expenditures for the purposes
20  of budget planning, but I'm not sure those were
21  expended. They had been approved by the school
22  building committee for expenditure.
23    Q. Comparing to Exhibit 113, it looks like the
24  total budget figure for furnishings and technology
                    LegaLink Boston

Page 167

1  was back to $640,000 whereas -- Strike that.
2         In Exhibit 118, the total budget figure
3  for furnishings and technology was $640,000, right?
4    A. Correct.
5    Q. And it had been reduced as of Exhibit 113 to
6  $490,000, a difference of 150?
7    A. Correct.
8    Q. Do you know how the budget went back up from
9  490 to 640?
10    A. I believe when the town voted to restore the
11  money that the original budgets were restored.
12    Q. And that's true for technology as well?
13    A. I would believe so, yes.
14       MS. GRIFFIN: Let's mark this as the
15  next exhibit.
16       (Exhibit Number 190
17       marked for identification)
18       (Pause)
19       MS. GRIFFIN: Let's mark these as the
20  next two.
21       (Exhibit Numbers 191 and 192
22       marked for identification)
23       (Pause)
24    Q. Can you identify Exhibit 190, please?
                    LegaLink Boston

Page 168

1    A. 190 looks like an invoice from Dore &
2  Whittier.
3    Q. In the ordinary course of things, did you
4  see Dore & Whittier's invoices as they came through?
5    A. Yes, I did.
6    Q. And in fact, is Exhibit 190 a group of
7  invoices beginning with an invoice dated November
8  26th, 2003 and ending with an invoice dated April
9  29, 2005?
10    A. Yes.
11    Q. Did you review Dore & Whittier's invoices?
12    A. To some degree, yes.
13    Q. With regard to the invoices from Dore &
14  Whittier during the time that Sciaba was on the job,
15  what review did you do?
16    A. I would do a periodic review just to
17  cross-check the -- both Dore & Whittier's budget and
18  the town accountant's budget.
19    Q. Did you talk with anybody about the Dore &
20  Whittier invoices when you conducted that review?
21    A. I don't believe so.
22    Q. Did you get any input from school building
23  committee members about the invoices?
24    A. Not input, no, but it would be put forward
                    LegaLink Boston

Page 169

1  to them for payment as part of the normal payment
2  process.
3    Q. With regard to the invoices that came from
4  Dore & Whittier during -- for services during the
5  time the job was shut down, did you conduct the same
6  kind of review or a different review?
7    A. Similar periodic review.
8    Q. For the invoices that came from Dore &
9  Whittier when Fontaine was on the job, did you also
10  conduct a review?
11    A. Similar type, yes.
12    Q. Were there any differences in the type of
13  review you did when Fontaine was on the job than
14  what you had done when Sciaba was on the job?
15    A. I don't believe so.
16    Q. Have all of Dore & Whittier's invoices been
17  paid?
18    A. I believe so.
19    Q. Can you identify Exhibit 191?
20    A. It looks to be a contract with the town and
21  Dore & Whittier. An amended contract.
22    Q. Who signed Exhibit 191 on behalf of the
23  town?
24    A. It looks like Mr. Hasanfus. And I'm not
                    LegaLink Boston

43 (Pages 166 to 169)

Robert J. O'Neill                                                                                         05/23/2005

Page 170

1    sure who the second signature is.
2        Q. Whose signatures are on the second page of
3    Exhibit 191?
4        A. Nancy Michael and town counsel.
5        Q. Okay. And can you tell me when the town
6    accountant put her signature on Exhibit 191?
7        A. No idea.
8        Q. Was it after the signatures on the first
9    page of Exhibit 191?
10       A. I'm not sure. No idea.
11       Q. Can you tell me -- Well, let's look at
12   Exhibit 192. Can you identify Exhibit 192?
13       A. It's an amendment to the agreement between
14   the town of North Brookfield and Dore & Whittier.
15       Q. And Exhibit 192 related to the professional
16   services of Dore & Whittier whereas 191 related to
17   construction management services; is that right?
18       A. That's correct.
19       Q. And did all the same people sign Exhibit 192
20   as signed Exhibit 119?
21       A. It looks to be the same, yes.
22       Q. Do you know when the signatures of the town
23   accountant and town counsel were placed on Exhibit
24   192?
                    LegaLink Boston

Page 171

1        A. I don't, no.
2        Q. You don't have any reason to believe that
3    the town accountant signed either 191 or 192 before
4    July of 2004, do you?
5            MR. McENANEY: Objection.
6        A. I have no recollection.
7        Q. Do you know why these two amendments to the
8    architect's contracts were not entered into before
9    July 2004?
10           MR. McENANEY: Objection.
11       A. I don't.
12       Q. Did you have any participation in
13   negotiating either of these amendments?
14       A. No, I did not.
15       Q. Who did that; do you know?
16       A. I'm not sure, but I believe it was all
17   handled by town counsel. Mr. Murray represented the
18   building committee.
19       Q. Was there discussion at school building
20   committee meetings about the need to have these two
21   amendments?
22       A. I believe so.
23       Q. And do you recall when that discussion took
24   place?
                    LegaLink Boston

Page 172

1        A. Not exactly, but there was ongoing
2    discussion, once again, about the need for services
3    and the need to continue to employ Dore & Whittier
4    to protect the town's interests.
5        Q. Did those discussions take place before or
6    after the votes at the special town meeting and at
7    the election in June of 2004?
8        A. I'm not sure of the time frame.
9            MS. GRIFFIN: Let's mark this as the
10   next exhibit.
11           (Exhibit Number 193
12           marked for identification)
13           (Pause)
14       Q. Can you identify Exhibit 193, please?
15       A. It's correspondence from Tom McEnaney to
16   Deborah Griffin relative to the Dore & Whittier
17   contract.
18           MR. McENANEY: I just note for the
19   record that Exhibit 193 is incomplete. There is a
20   reference in the first sentence that there is a
21   letter dated December 31, 2003 from project
22   architect Lee P. Dore of Dore & Whittier that is
23   enclosed with this letter, and the enclosure is not
24   included.
                    LegaLink Boston

Page 173

1        Q. Have you seen Exhibit 193 before today?
2        A. I believe I have.
3        Q. Were you provided with a copy of Exhibit 193
4    on or about January 15, 2004?
5        A. I expect that I was.
6        Q. Let me show you the document previously
7    marked as Exhibit 66. Have you seen that before as
8    well?
9        A. Yes, I believe I have seen this.
10       Q. Was Exhibit 66 the enclosure to Exhibit 193?
11       A. It looks like it may be.
12       Q. Is that your best recollection?
13       A. Yes.
14       Q. Was Exhibit 193 authorized by the town?
15           MR. McENANEY: Objection.
16       A. I would guess as Attorney McEnaney is
17   representing the town, it was authorized by the
18   town.
19           MS. GRIFFIN: Let's go off the record.
20           (Off the record)
21       Q. Do you still have Exhibit 113 handy?
22       A. 113?
23       Q. Yup.
24       A. Here it is.
                    LegaLink Boston

44 (Pages 170 to 173)

Robert J. O'Neill                                              05/23/2005

185

1                    E R R A T A   S H E E T

2        I, ROBERT J. O'NEILL, do hereby certify that I

3    have read the foregoing transcript of my testimony,

4    and further certify that said transcript is a true

5    and accurate record of my testimony (with the

6    exception of the following corrections listed

7    below):

8    Page        Line                     Correction

9    _6_ _ _ _ _2_ _ _ _ _ _ _ _ _ _ _Magnet Program_

10   _9_ _ _ _18_ _ _ _ _ _ _ _ _ _ _Dore & Whittier_

11   _83_ _ _16_ _ _ _ _ _ _ _ _ _ _once_ _ _ _ _ _

12   _131_ _ _2_ _ _ _ _ _ _ _ _ _ Kieran Meagher_

13   _162_ _ _17_ _ _ _ _ _ _ _ _ Nancy Nykiel's_

14   _170_ _ _4_ _ _ _ _ _ _ _ _ Nancy Nykiel_

15   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

16   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

17   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

18   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

19   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

20

21        Signed under the pains and penalties of perjury

22   this 16th   day of June              , 2005.

23                         Robert O'Neill

24                         ROBERT J. O'NEILL
                        LegaLink Boston