UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY,<br>                    Plaintiff,<br><br>vs.<br><br>TOWN OF NORTH BROOKFIELD,<br>                    Defendant. | Civil Action No. 03-40266-CBS |

PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON
COUNT II OF DEFENDANT'S COUNTERCLAIM

Plaintiff, American Manufacturers Mutual Insurance Company ("AMMIC"), has moved for summary judgment on Count II of the Town of North Brookfield's Counterclaim (the "Motion"). There is no genuine dispute on the following material facts that appear in the record:

1. The Town of North Brookfield (the "Town" or "North Brookfield") entered into a contract (the "Contract") with E.J. Sciaba Contracting Company ("Sciaba") dated April 19, 2002, for construction of the Junior/Senior High School in North Brookfield, Massachusetts (the "Project"). Counterclaim [docket entry #5] ¶ 3 and Answer thereto [docket entry #6]; *see* Affidavit of Deborah S. Griffin in Support of Plaintiff's Motion for Summary Judgment on Count II of Defendant's Counterclaim ("Griffin Aff."), Exh. 1.

2. AMMIC, as surety, issued a performance bond to the Town on behalf of Sciaba, as principal, with respect to the Contract. Counterclaim ¶ 4, Exh. A and Answer thereto [docket entry #6]; Griffin Aff. Exh. 2.

3. The Project architect was Dore & Whittier, Inc. ("Dore & Whittier"). Griffin Aff. Exh. 1.

4.      As of January 2003, AMMIC's then Senior Surety Counsel, Stephen Beatty, was responsible for managing AMMIC's response to any activity relative to the bonds issued on behalf of Sciaba.  *See* Affidavit of Stephen J. Beatty in Support of Plaintiff's Motion for Summary Judgment on Count II of Defendant's Counterclaim ("Beatty Aff."), ¶ 2.

5.      In or about February 2003, AMMIC hired Richard P. Anastasio, P.E., and his firm, GREYHAWK North America L.L.C., to provide engineering, construction and claim expertise in AMMIC's investigation of Sciaba and its performance at the Project.  *See* Affidavit of Richard P. Anastasio in Support of Plaintiff's Motion for Summary Judgment on Count II of Defendant's Counterclaim ("Anastasio Aff."), ¶ 3; Beatty Aff. ¶ 3; Griffin Aff. Exh. 3 at 17:5-11.

6.      Mr. Anastasio is a registered engineer and a seasoned construction professional with 38 years of industry experience.  This includes, but is not limited to, extensive experience in project management and administration, cost control, estimating, design engineering, and analysis of construction claims – all on a variety of complex construction projects including, without limitation, food processing plants, power plant expansions and rehabilitations, co-generation facilities, pollution control facilities, refinery projects, material handling facilities, transportation systems, schools, hospitals, housing projects, marine construction, hotels and research facilities.  Anastasio Aff. Exh. 1, ¶ 1-2.

7.      Mr. Beatty faxed a letter to Sciaba on March 13, 2003 requesting a meeting with Sciaba's principal, Edward Sciaba, Jr., and others to review the North Brookfield Project and other Sciaba projects bonded by AMMIC.  Messrs. Beatty and Anastasio traveled, from Illinois and New York, respectively, to North Brookfield and other project sites to conduct these

investigative meetings. Beatty Aff. ¶ 4, 5, Exh. 1; Anastasio Aff. ¶ 4; Griffin Aff. Exh. 3 at 24:23-24, 25:1-23.

8.    In May 2003, AMMIC retained Holland & Knight LLP and Deborah S. Griffin, Esq., to provide legal advice and representation for the surety. Griffin Aff. ¶ 4.

9.    Mrs. Griffin has thirty (30) years experience representing sureties, served as Vice-Chair of the American Bar Association ("ABA") Fidelity and Surety Law Committee for fifteen (15) years, served on the Governing Committee of the ABA's Forum on Construction for six (6) years, and has frequently written and spoken locally and nationally on surety law topics. Mrs. Griffin is also a fellow of the American College of Construction Lawyers. Griffin Aff. ¶ 5, Exh. 4.

10.    Upon North Brookfield's request, Mr. Beatty, Mr. Anastasio, and Mrs. Griffin attended an on-site Project meeting on May 21, 2003. The purpose of the meeting was to discuss performance issues on the Project. Griffin Aff. ¶ 6, Exh. 6; Beatty Aff. ¶ 6; Anastasio Aff. ¶ 5.

11.    Shortly before the May 21 meeting, Mr. Beatty and Mrs. Griffin met with Edward J. Sciaba, Jr. and his attorney and requested that Mr. Sciaba provide a full financial accounting of Sciaba and each AMMIC-bonded Sciaba contract – including the North Brookfield Project. Beatty Aff. ¶ 7; Griffin Aff. ¶ 26, Exh. 3 at 99:15-19.

12.    In or about May 2003, Mr. Beatty retained Tofias, P.C. (Frank Zito, C.P.A.) to provide forensic accounting services in aid of AMMIC's investigation of both Sciaba and all Sciaba's AMMIC bonded projects. Beatty Aff. ¶ 8.

13.    By letter dated May 30, 2003, Sciaba advised the Town that it was unable to complete the Project and admitted a voluntary default. Griffin Aff. Exh. 7.

14. Sciaba's letter of voluntary default was delivered to the Town on June 5, 2003. Griffin Aff. ¶ 10, Exh. 8.

15. By July 2003, Mr. Anastasio had already made at least five site visits to the North Brookfield Project (among site visits to other Sciaba Projects), attempting to understand Sciaba's situation on a project level. He began requesting Project documents and information from Dore & Whittier and the Town on or about June 2, 2003. Anastasio Aff. ¶¶ 8, 9; Griffin Aff. Exh. 10.

16. By letter dated July 2, 2003, the Town's attorney, Thomas W. McEnaney, advised Mrs. Griffin that the Town requested a meeting and considered declaring a contractor default on the Project. Griffin Aff. Exh. 11 at 118:2-7, Exh. 12.

17. In response to the Town's July 2, 2003 letter, Mrs. Griffin advised Mr. McEnaney by letter on July 3, 2003, that AMMIC waived the conditions precedent to the Town's ability to immediately declare a contractor default and termination. Griffin Aff. Exh. 13.

18. Effective July 23, 2003, the Town declared Sciaba in default and terminated Sciaba's right to perform the contract and called upon AMMIC to respond under its Bond. Griffin Aff. Exh. 15; Counterclaim ¶ 7, Exh. F thereto, admitted.

19. By July 2003, Mr. Anastasio had *already* begun the process of obtaining agreements from subcontractors on the North Brookfield Project to ratify their subcontracts and commit to returning to work under a replacement contractor. Anastasio Aff. ¶ 8.

20. Previously, and in addition to frequent communications with Mr. Beatty as to Project particulars, on July 21, 2003, Mr. Anastasio and GREYHAWK had already provided AMMIC with a preliminary analysis and assessment of the Project status, including a projected cost to complete, the status of payment bond claims, and other data. Anastasio Aff. ¶ 6, 7, Exh. 1; Beatty Aff. ¶ 9; Griffin Aff. Exhs. 16, 3 at 163: 22-24, 164: 1-6.

4

21. Prior to the Town's July 23, 2003 declaration of default and termination of Sciaba, Mr. Anastasio had already met with representatives from the Town and/or Dore & Whittier on or about June 5, 12 and 18, 2003. Anastasio Aff. ¶ 9.

22. Mr. Anastasio also met with the Town's School Building Committee on August 6, 2003 to explain the status of obtaining a completion contractor, what issues existed, and what steps would be required going forward. Anastasio Aff. ¶ 9; Griffin Aff. Exh. 5 at 149:1-25, Exh. 17.

23. Mr. Anastasio developed a Request for Expression of Interest ("REI") that was distributed to at least twelve (12) potential completion contractors on or about August 13, 2003. Anastasio Aff. ¶ 10, Exh. 2.

24. On or about August 20, 2003, Mr. Anastasio distributed the final Request for Proposal ("RFP") to nine (9) potential completion contractors. Anastasio Aff. ¶ 11; Griffin Aff. Exh. 21.

25. The Town and its architect, Dore & Whittier, approved the list of contractors to receive the RFP. Griffin Aff. Exhs. 19, 20; Anastasio Aff. ¶ 12.

26. The Town's architect, Dore & Whittier, had various inputs to the RFP. Griffin Aff. Exh. 5 at 149:19-25, 150:1-25, 151:19-25, 152:1-2.

27. On August 20, 2003, Mrs. Griffin submitted a draft tender agreement to Mr. McEnaney and therein asserted numerous partial defenses. Mrs. Griffin explained that these would impact the ultimate amount the surety would pay or tender. These defenses included (1) two alleged overpayments by the Town in the last week of May 2003 that prejudiced the surety; and (2) an entitlement to schedule extensions that should have been granted to Sciaba, thereby reducing liquidated damages claimed by the Town. Griffin Aff. Exh. 21.

28. Interested contractors submitted bids on September 8, 2003 – and all were higher than expected. Griffin Aff. Exhs. 22; 9 at 143:7-9; Anastasio Aff. ¶ 13.

29. After receiving the bids on September 8, 2003, Mr. Anastasio conducted follow-up interviews and analysis with the bidders and then, on October 8, 2003, solicited the submission of best and final bids by October 17, 2003. Anastasio Aff. ¶ 14.

30. Mrs. Griffin, Mr. Beatty, Mr. McEnaney and Kieran Meagher (another attorney for the Town) met on or about October 15, 2003 and discussed, among other issues, AMMIC's overpayment defense. At this meeting, Mrs. Griffin and Mr. Beatty requested additional detail and supporting documentation for all the Town's damage claims. Beatty Aff. ¶ 10; Griffin Aff. ¶ 25.

31. Three best and final bids for completion of the Project were received on or about October 17, 2003. All bids were again higher than the estimated cost to complete and the low bid, of Fontaine Bros., Inc. ("Fontaine"), was even higher than its initial bid. Griffin Aff. Exh. 24.

32. [This numbered paragraph is purposely unused].

33. GREYHAWK continued its analysis and consultation to AMMIC after receipt of the best and final bids because the best and final bids were still higher than the original cost to complete, the first round of bids, and/or both. Anastasio Aff. ¶ 15; Griffin Aff. Exh. 25.

34. On November 3, 2003, Mr. McEnaney wrote to Mrs. Griffin and confirmed conversations during the October 15, 2003 meeting. In addition, Mr. McEnaney: (1) provided information purporting to support its claim for roof repairs to the existing high school and disputed AMMIC's interpretation of Change Order 3's substantial completion date; (2) provided information purporting to support the Town's claim for design and construction management

6

costs; and (3) disputed AMMIC's partial defense that Sciaba was entitled to a schedule extension.[1]  Griffin Aff. Exh. 26.

35. As of November 3, 2003, North Brookfield had not provided AMMIC copies of its contract between Dore & Whittier and the Town, or the invoices for Dore & Whittier's design and construction management services; Mr. McEnaney acknowledged as much in his November 4, 2003 email to Mrs. Griffin.  Griffin Aff. ¶ 26, Exh. 23, 27.

36. On November 5, 2003, Mrs. Griffin wrote to Mr. McEnaney clarifying the dollar amount of AMMIC's overpayment defenses previously asserted on August 20, 2003, based upon new information received through further investigation.  The letter also explained additional prejudicial overpayments, on a line-item level, totaling $364,951 (due to a typographical error the total was mistakenly stated as $527,320).[2]  Griffin Aff. Exh. 27, 29.

37. On November 12, 2003, Mr. McEnaney wrote to Mrs. Griffin and provided a written explanation of the design and construction management fees it claimed along with an assertion that AMMIC had refused to pay this claim without adequate explanation.[3]  Griffin Aff. Exh. 30.

38. As of November 12, 2003, North Brookfield had not yet submitted a copy of the contract between Dore & Whittier and the Town, or related invoices for Dore & Whittier's design and construction management services as requested by Mrs. Griffin.  Griffin Aff. ¶ 32, Exh. 27.

---

[1] By submitting this fact, AMMIC does not concede, but reserves the right to dispute, the merit or accuracy of the Town's position.  This fact is offered to show the content and timing of the Town's communications.

[2] By submitting this fact, AMMIC does not necessarily expect the Town to concede the merit or accuracy of AMMIC's position.  This fact is offered to show the content and timing of AMMIC's communications.

[3] By submitting this fact, AMMIC does not concede, but reserves the right to dispute, the merit or accuracy of the Town's position.  This fact is offered to show the content and timing of the Town's communications.

39. Mrs. Griffin responded to Mr. McEnaney on November 12, 2003, and indicated that AMMIC would study the information submitted by the Town to date with regard to its claim for design and construction management costs and requested a copy of the Dore & Whittier contract. Griffin Aff. Exh. 31.

40. Despite ongoing negotiations between AMMIC and the Town with regard to the amount owed under the Bond, Mrs. Griffin formally tendered to Mr. McEnaney a completion contract on November 12, 2003 (the "Tendered Completion Contract") signed by the ultimate completion contractor, Fontaine. Griffin Aff. Exh. 31.

41. On November 14, 2003, Mrs. Griffin wrote to Mr. McEnaney outlining AMMIC's partial defenses and their monetary impact on the basis of the information then available.[4] Griffin Aff. Exh. 32.

42. On November 21, 2003, Mrs. Griffin wrote again to Mr. McEnaney outlining AMMIC's partial defenses and their monetary impact on the basis of the information then available.[5] Griffin Aff. Exh. 27. This letter was based in part on input from Mr. Anastasio as well as Mrs. Griffin's knowledge of the legal issues. Anastasio Aff. ¶ 17; Griffin Aff. ¶ 31.

43. As of November 21, 2003, North Brookfield had still not yet submitted a copy of the contract between Dore & Whittier and the Town, or related invoices for design and construction management services as requested by Mrs. Griffin; indeed, this information was not provided by the Town until at least December 4, 2003. Griffin Aff. ¶ 32, Exh. 27.

44. Between November 14 and December 15, 2003, Fontaine's price for completion of the work increased by $275,000. Griffin Aff. ¶ 40, Exh. 36.

---

[4] By submitting this fact, AMMIC does not necessarily expect the Town to concede the merit or accuracy of AMMIC's position. This fact is offered to show the content and timing of AMMIC's communications.

[5] By submitting this fact, AMMIC does not necessarily expect the Town to concede the merit or accuracy of AMMIC's position. This fact is offered to show the content and timing of AMMIC's communications.

8

45.     North Brookfield executed a new version of the completion contract (the "Executed Completion Contract") with Fontaine dated December 15, 2003.  Griffin Aff. Exh. 33.

46.     Prior to signing the Tendered Completion Contract, Fontaine objected to the original completion dates, as set forth in the RFP, after being awarded the job – and refused to execute any completion contract until the dates were changed.  Griffin Aff. Exh. 37.  Fontaine also took issue with the latent defect provision.  *Id*.  Fontaine communicated this position to both AMMIC and North Brookfield.  *See id*.; Griffin Aff. Exh. 38.  Mrs. Griffin negotiated with Fontaine, requested Mr. McEnaney's input, and kept him advised.  Griffin Aff. Exh. 39.

47.     As a result of the negotiations, changes to completion dates and latent defect provisions were incorporated into a revised completion contract and circulated to Mr. McEnaney on November 7, 2003.  Griffin Aff. Exh. 40.

48.     Although Mrs. Griffin requested "comments ASAP," Mr. McEnaney offered none, nor even hinted that he might have any before November 12.  Griffin Aff. ¶ 45; Exh. 40.

49.     On the afternoon of November 11, Mrs. Griffin alerted Mr. McEnaney that Fontaine would be signing the Tendered Completion Contract that day, that the executed documents would be delivered to him the following day, and that Fontaine required a Notice to Proceed by November 14.  Griffin Aff. Exh. 41.

50.     Fontaine signed the Tendered Completion Contract on November 11 and AMMIC tendered it on November 12, 2003, in precisely the form circulated a full week earlier to Mr. McEnaney.  *Compare* Griffin Aff. Exh. 31 *with* Exh. 40.

51.     In the cover letter that accompanied the tendered Completion Agreement, AMMIC stated clearly:

> As I stated in an email to you on November 6, 2003, the Surety understands it will have responsibility for the additional liquidated damages after the dates that were

9

> given in the RFP. It also intends to accept responsibility for the reasonable cost of addressing latent defects that were Sciaba's responsibility. Again, these issues should not be an obstacle to the Town's executing the completion contract with Fontaine.

Griffin Aff. Exh. 31.

52. When AMMIC asked the Town, in Interrogatory 14, to state the basis for the alleged chapter 176D § 3(9)(a) violation, the Town simply stated (in addition to incorporating Interrogatory Answers 11 and 12, which were unresponsive) that:

> despite the clear language of the performance bond, AMMIC has refused to pay for the cost of correcting defective work and completing the contract work and has not compensated the Town for its additional legal, design professional, project management, and delay costs, and liquidated damages.

Griffin Aff. Exh. 14.

53. On December 3, 2003, AMMIC paid the Town $2,538,828.37 unconditionally and $659,157.80 under a reservation of rights. Griffin Aff. ¶ 39, Exh. 35.

54. AMMIC also paid $125,000 on December 15, 2003, which represented part of the $275,000 increase in Fontaine's price as a result of a Notice to Proceed not issuing by November 14, 2003. Griffin Aff. ¶ 40, Exh. 36. The combined total of AMMIC payments, made both unconditionally and under a reservation of rights, is $3,322,996.17.

55. The Town paid the remaining $150,000 of Fontaine's price increase. Griffin Aff. ¶ 41.

56. The **total face amount** of the Town's Bond claim, before crediting the $3,322,996.17 already paid by AMMIC (both conditionally and unconditionally), is approximately $4,854,379.66.[6] It is undisputed that this is an *approximate* amount of the Town's claim because it is based upon the Town's breakout of its damages in its July 28, 2004

---

[6] *See infra*, note 7.

Voluntary Disclosure and its Memorandum Of Law In Support Of Defendant's Motion To Require Plaintiff To Deposit Funds With Court ("Town's Deposit Memo"). The breakout is as follows:

| | |
|---|---|
| $3,332,996.17 | Amount already paid by AMMIC.  *See supra* ¶¶ 53-54. |
| $150,439.75 | Town's alleged funding deficiency = Fontaine's completion price ($11,672,296) **less** remaining balance on Sciaba's Contract ($8,198,860.18) **less** AMMIC's total payments to date ($3,332,996.17).  Griffin Aff. Exh. 42. |
| $674,607.24 | Town's claim for additional Architect Fees.  Griffin Aff. Exh. 42. |
| $35,000 | Town's claim for legal fees as of 2/24/04.  Town's Deposit Memo, p. 4-6.  Docket Entry # 8. |
| $655,000 | Town's claim for liquidated damages.  Griffin Aff. Exh. 42. |
| $6,336.50 | Town's claim for cost to repair roof on old school.  Griffin Aff. Exh. 42. |
| **$4,854,379.66**[7] | **Total Face Amount of Town's Bond Claim (approximate).** |

This calculation does not include the $16,719.40 claimed for obligations to Keyspan because AMMC settled that part of the claim with its payment to Keyspan of $16,560 on September 27, 2005. Town's Deposit Memo, p. 6; Griffin Aff. Exh. 42; Beatty Aff. ¶ 11.

57. By way of discovery, in this litigation as well as a related proceeding, AMMIC has collected approximately 85,000 pages of documents arising from the North Brookfield Project. Griffin Aff. ¶ 48.

58. Prior to awarding the contract to Sciaba, the Town advertised for competitive bids from contractors and left it to the winning contractor – Sciaba – to obtain the performance bond required by the Town in the Contract Documents. Griffin Aff. Exh. 43, pages MDW 11420-23, MDW 11428-29, MDW 11510.

---

[7] By summarizing the information above, AMMIC is not admitting that the amounts sought by the Town were either actually or reasonably incurred, and expressly reserves the right to dispute them in the event this motion is denied. Rather, it submits this information to show what the Town's claim consists of.

59. The Town specified in its bid documents a performance bond published not by AMMIC, but ultimately by the American Institute of Architects. Griffin Aff. Exh. 43, pages MDW 11428-29, MDW 11510 at ¶ 11.5.1.

60. Any "deadline" or target date during AMMIC's investigation and re-bidding process, if any, was self-imposed by AMMIC and/or Mr. Anastasio.

    Respectfully submitted,

    **AMERICAN MANUFACTURERS**
    **MUTUAL INSURANCE COMPANY**

    By its attorneys

    **HOLLAND & KNIGHT LLP**

    */s/ Deborah S. Griffin*
    Deborah S. Griffin, BBO #211460
    Jeff D. Bernarducci, BBO #657454
    10 St. James Avenue
    Boston, MA  02116
    Tel:   (617) 523-2700
    Fax:   (617) 523-6850

Dated:   December 16, 2005

# 3332587_v3
431261.00002