# EXHIBIT  21



**Griffin, Deborah S (BOS - X72044)**

Date 58
4-13-05

| | |
|---|---|
| **From:** | Griffin, Deborah S (BOS - X72044) |
| **Sent:** | Wednesday, August 20, 2003 4:07 PM |
| | 'THOMAS McEnaney' |
| **Cc:** | 'Stephen.Beatty@kemperinsurance.com'; 'Anastasio, Rich'; Bouchard, Matthew C (BOS - X72023) |
| **Subject:** | North Brookfield Tender Agreement -- Kemper Sciaba_v1.DOC |

I hope you had a good vacation. I am attaching a draft of a tender agreement between American Manufacturers and the Town of North Brookfield with respect to the Junior/Senior High School project. Please note that the table of figures recapping the status of contract funds in paragraph 1 of the draft is incomplete, pending determination of the amount owed under Construction Change Directive #3. It may change further if additional issues emerge during the bid process.

In addition, you will see that the surety asserts several partial defenses that will have an impact upon the ultimate amount the surety pays or tenders (if any) pursuant to the agreement. I hope the basis for the defenses is clear from the recitals. The most significant defense relates to the payments that the town released to Sciaba during the last 10 days of May, when it knew that Sciaba's performance was seriously deficient and that making such payments would leave insufficient funds in the hands of the town to complete the work if Sciaba was terminated. Of the $700,000+ paid, Sciaba only used about $100,000 to pay job costs. Thus, the making of those payments in those circumstances impaired the contract funds as collateral to the surety, prejudiced the surety, and effected a partial, or *pro tanto*, discharge of the surety's liability to the town under its bond. The concept of *pro tanto* discharge in such situations is well recognized. *See, e.g.., Balboa Ins. Co. v. United States*, 775 F.2d 1158 (Fed. Cir. 1985); *United Pacific Ins. Co. v. United States*, 16 Cl. Ct. 555 (2989); *Ohio Casualty Ins. Co. v. United States*, 12 Cl. Ct. 590 (1987); *Walters Air Conditioning Co. v. Firemen's Fund Ins. Co.*, 252 So. 2d 919 (La. App. 1971). This is an issue the surety would like to discuss with the town in hopes of reaching an overall agreement.

As you may know, there was a pre-bid meeting today at the job site, at which prospective bidders obtained the request for proposals, had a walk-through of the project and were able to ask questions. It is my understanding that bids are due September 8, with an expected notice to proceed by September 15, 2003.

light of this time-table, ideally the surety and the town should resolve any issues concerning the terms of the tender in advance of September 15. The tender amount will, at least in part, reflect the bids that come in, and thus cannot be pinned down until the bids are in. However, we should be able to reach agreement on the amount of the adjustment on account of the surety's defenses, as well as the other terms of the tender agreement, even before the bids are in.

I look forward to hearing from you.



North Brookfield
Tender Agreem...

Deborah S. Griffin
Holland & Knight LLP
10 St. James Avenue
Boston, MA 02116
617-305-2044
fax 617-523-6850
deborah.griffin@hklaw.com

## TENDER AGREEMENT AND RELEASE OF SURETY

      This Agreement (the "Agreement") is made and entered into this ____ day of August, 2003, by and between American Manufacturers Mutual Insurance Company (the "Surety") and the Town of North Brookfield, Massachusetts (the "Obligee").

## RECITALS

      WHEREAS, on or about April 19, 2002, E.J. Sciaba Contracting Co., Inc. (the "Former Contractor"), and the Obligee entered into a contract (the "Original Contract") for the Former Contractor to construct the Junior/Senior High School, North Brookfield, Massachusetts (the "Project"), in accordance with the terms and provisions of the Original Contract, including all contract documents forming a part of the Original Contract, as amended;

      WHEREAS, on or about _____, 2002, as required by law and under the terms of the Original Contract, the Former Contractor and the Surety made, executed and delivered to the Obligee a Performance Bond and a Payment Bond, Bond No. 3SE 057 856 (collectively, the "Bonds"), each in the original penal sum of $13,222,000;

      WHEREAS, on or about April 23, 2003, the Obligee sent a letter to the Former Contractor and the Surety enumerating numerous breaches of the Original Contract on the part of the Former Contractor;

      WHEREAS, on or about May 21, 2003, at a meeting among representatives of the Obligee, the Surety and the Former Contractor, the Obligee again asserted numerous breaches of the Original Contract on the part of the Former Contractor;

      WHEREAS, on or about May 21, 2003, and May 27, 2003, the Obligee paid the Former Contractor $287,556.28 and $443,163.76 respectively, on account of the Original Contract (the "May Payments"), without the knowledge or consent of the Surety;

      WHEREAS, the Surety has been able to identify only $100,700.49 of the May Payments as having been received by subcontractors and suppliers of the Former Contractor on account of the Project, leaving $630,580.55 of the May Payments (the "Alleged Overpayment") paid by the Obligee to the Former Contractor that the Surety believes the Former Contractor failed to apply to the costs and liabilities it incurred in connection with the Project;

      WHEREAS, the Former Contractor voluntarily defaulted or otherwise indicated its inability to perform the Project, and the Obligee has terminated the right of the Former Contractor to perform under the Original Contract and called upon the Surety to fulfill its obligations as surety under the terms of the Performance Bond;

      WHEREAS, the Surety, in conjunction with the Obligee, obtained a Replacement Contract (the "Replacement Contract"), a copy of which is attached hereto as <u>Exhibit A</u>, for completion of the Contract work from _____ (the "Replacement Contractor"), for an agreed price of $_____;



WHEREAS, the Surety contends that payment of the May Payments by the Obligee was improper and prejudicial to the Surety to the extent of the Alleged Overpayment, providing the Surety with a partial discharge under its Performance Bond in the amount of $630,589.55;

WHEREAS, the Surety acknowledges that the schedule for completion set forth in the Replacement Contract affords time for completion beyond the current date(s) in the Original Contract, as amended, but contends that the Former Contractor was entitled under the Original Contract to additional time extensions; and

WHEREAS, the parties wish to resolve all outstanding claims, defenses and disputes between them with respect to the Bonds;

NOW, THEREFORE, in consideration of the agreements and undertakings hereinafter set forth, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Obligee and the Surety agree as follows:

## AGREEMENTS

1. The Obligee and the Surety agree that as of September 1, 2003, the status of the contract price and contract funds under the Original Contract is as follows:

| | |
|---|---|
| Original Contract Amount | $ 13,222,000.00 |
| Executed Change Orders | +132,829.28 |
| Adjusted Contract Amount | 13,354,829.28 |
| Monies earned through Requisition 14 | 5,644,481.25 |
| Less Retainage held through Requisition 14 | -282,224.08 |
| Less Monies Paid to Former Contractor or direct payment claimants | -5,155,969.10 |
| Contract Balance (Including Retention & Earned and Unpaid Monies) | 8,198,860.18 |
| **Pending Change Orders & Adjustments** | |
| Construction Change Directive 3 | TBD |
| **Total Available Contract Balance** | $ 8,198,860.18 + CCD3 |

2. The Surety hereby tenders to the Obligee, and the Obligee accepts and will execute, the Replacement Contract with the Replacement Contractor for completion of the Contract. The Obligee will accept from the Replacement Contractor performance and payment bonds in favor

2

of the Obligee, issued by a company authorized to issue surety bonds in the Commonwealth of Massachusetts, guaranteeing the Replacement Contractor's performance the Replacement Contractor with respect to the Replacement Contract.

3. The Obligee will assume and will be solely responsible for all costs and obligations of Contract administration in the completion of the Project with the Replacement Contractor.

4. The Surety hereby tenders, and the Obligee hereby accepts, payment in the amount of $_____, which represents (a) the difference between the agreed price under the Replacement Contract and the Total Available Contract Balance as set forth above, less (b) an adjustment to resolve the Surety's defenses based upon the Alleged Overpayment and claims for additional time extensions.

5. Insofar as the Obligee has any right, title or interest therein, the Obligee agrees that the Replacement Contractor shall have the right to use, without charge, any of the equipment, materials and appurtenances furnished or supplied by the Former Contractor which may be stored on or about the premises of the Project site, or stored off site under the terms of the Original Contract or applicable labor materials which may have been fabricated for use in connection with the Original Contract, whether or not presently upon the Project site.

6. The Obligee hereby releases and forever discharges the Surety from and against any and all claims, demands, causes of action, damages or expenses arising out of or in any way related to the Contract or the Bond.

7. It is agreed that the Surety will remain liable under the Payment Bond (Bond No. 3SE 057 856) it issued to the Obligee on behalf of the Former Contractor with respect to the Project.

3



Nothing in this Agreement constitutes a waiver of the penal sum or an increase in the liability of the Surety under the Payment Bond. Nothing in this Agreement constitutes the Replacement Contractor a principal of the Surety under the Payment Bond.

8. This Agreement is solely for the benefit of the Obligee and the Surety. The Obligee and the Surety do not intend by any provision of this Agreement to create any rights in or increase the rights of any third-party beneficiaries, nor to confer any benefit upon or enforceable rights under this Agreement or otherwise upon anyone other than the Obligee and the Surety. Specifically, the Obligee and the Surety acknowledge that nothing in this Agreement shall extend or increase the rights of any third-party claimants or the liabilities or obligations of the Surety under the Bonds.

9. It is hereby agreed that by the execution of this Agreement neither the Surety nor the Obligee intends to waive or forfeit (a) any rights or claims that may be asserted against the Former Contractor under either the Contract or the General Indemnity Agreement between the Surety and the Former Contractor, (b) any rights or defenses with respect to any claim relating in any way to the Contract, that has been or may hereafter be asserted by the Surety against any person other than the Obligee or against the Surety by any person other than the Obligee.

10. This Agreement constitutes the whole of the understanding, discussions, and agreements by and between the Obligee and the Surety. The terms and provisions of this Agreement are contractual and not mere recitals. The Obligee and the Surety acknowledge that there have been no oral, written or other agreements of any kind as a condition precedent to or to induce the execution and delivery of this Agreement. Any written or oral discussions conducted prior to the effective date of this Agreement shall not in any way vary or alter the terms of this Agreement.

4

11. This Agreement shall not be changed, amended or altered in any way except in writing and executed by both the Obligee and Surety.

12. This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original.

13. This Agreement shall be governed by and controlled by the laws of the Commonwealth of Massachusetts.

14. Any notices which are required to be given by the terms of this Agreement or the Bonds shall be made as follows:

As to the Obligee:
Via certified mail, return receipt requested,
postage prepaid and/or by telefax to:

Robert O'Neill
Superintendent of Schools
Town of North Brookfield
10 New School Street
North Brookfield, MA 01535
(508) _____

With a copy to:
Thomas W. McEnaney, Esq.
Kopelman and Paige, P.C.
31 St. James Avenue
Boston, MA 02116-4102
Fax: (617) 654-1735


As to the Surety:
Via certified mail, return receipt requested,
postage prepaid and/or by telefax to:

Stephen J. Beatty, Esq.
Senior Surety Counsel
Kemper Insurance Companies
1 Kemper Drive
Long Grove, IL 60049-0001

Fax:    (847) 320-5828

With a copy to:
Deborah S. Griffin, Esq.
Holland & Knight LLP
10 St. James Avenue
Boston, MA  02116
Fax No.:  (617) 523-6850

15. This Agreement is effective as of the date first written above.

16. This Agreement shall be binding upon the parties and their respective successors and assigns.

17. In the event that one or more provisions of this Agreement shall be declared to be invalid, illegal or unenforceable in any respect, unless such invalidity, illegality or unenforceability shall be tantamount to a failure of consideration, the validity, legality and enforceability of the remaining provisions contained in this Agreement shall not in any way be affected or impaired thereby.

18. It is understood and agreed by the Obligee and the Surety that this Agreement shall be construed without regard to any presumption or other rule requiring construction against the party causing this Agreement to be drafted.

IN WITNESS WHEREOF, the parties have executed this Agreement on the date indicated above, and each of the undersigned personally represent and warrant that they have the full right, power and authority to execute this Agreement on behalf of the respective parties.

Town of North Brookfield

By:     _____

Title:  _____

6

American Manufacturers Mutual Insurance Company

By: _____

Title: _____

BOS1 #1351171 v1
431261.00005



**EXHIBIT  22**



1795 WILLISTON RD. STE 200, SOUTH BURLINGTON, VT 05403
PHONE: 802.863.1428 FAX: 802.863.6955

29 WATER ST STE 304, NEWBURYPORT, MA 01950
PHONE 978 499 2999 FAX 978.449.2944

1400 HANCOCK ST QUINCY MA 02169
PHONE 617.471.2897 FAX 617.471.2516

WWW.DOREANDWHITTIER.COM

**MEETING NOTES**

EXHIBIT
Murray
89
4-29-05    KQ

**DATE OF**
**MEETING:**        10 September 2003

**PROJECT:**         North Brookfield Jr./Sr. High School
                     Dore & Whittier Project No. 00-404

**SUBJECT:**         School Building Committee Meeting, 7:00 PM

**ATTENDING:**       Jim Murray              Co-Chair, Building Committee
                     Don Gillette            Co-Chair, Building Committee
                     Greg Kline              Building Committee
                     Patty Pariseau          Building Committee
                     Ed Wilkins Jr.          Building Committee
                     Ed O'Malley             Principal
                     Bob O'Neill             Superintendent
                     Mary Ellen Tshilis      Building Committee
                     Larry Hassenfus         Selectboard (Partial)
                     Chris Conway            Construction Manager (CMC)
                     Lee Dore                Dore and Whittier, Inc. (DW)

1. Meeting Minutes of 8/13/03 were approved unanimously as presented.

2. Jim Murray updated the Committee on the fact that the Selectboard has authorized hiring co-counsel to assist Thomas McEnaney of Kopelman & Paige (Town Counsel) with the project. Mr. Kieran Meagher of Meagher Law Associates will assist the project until a successful 'Tender' Agreement is reached with the Surety. Mr. Meagher has extensive experience in construction law and has worked with the Surety's counsel on prior projects. Both attorneys working for the Town have met to review notes and establish a game plan in which to proceed. DW and Jim Murray are in frequent communications with each attorney.

3. The Committee was updated on the fact that the pre-bid conference had been held. Only three General Contactors were present at this mandatory meeting. Fontaine Brothers, Inc., Consigli Construction and Agostini Construction were in attendance as were DW, CMC and Rick Anastasio of Greyhawk Consultants. Greyhawk has informed the Committee that bids were received by each of the three contractors who attended the pre-bid conference. These bids were received at the offices of Greyhawk on September 8, 2003. The Committee has only been informed that the bids were "high" in

Prepared 17 September 2003

North Brookfield School Building Committee
Meeting 10 September 2003
Page 2                                                                                                                     - 2 -

comparison to Greyhawk's estimate and that the Surety was reviewing the results.

4.  Town Counsel will await notification from the Surety as to which direction the Surety intends to proceed and what the intended time frame is expected to be.

5.  Jim Murray informed the Committee that DW has prepared an approach to estimating the costs for architectural and construction management services to complete the project. This information has been forwarded to Town Counsel. The Committee discussed the need for Town Counsel to be fully aware of any potential damages claims due the default of EJ Sciaba. Some information discussed included: Builder's risk Insurance rider costs, high school roof repairs, gas utility costs, Mass electric costs, G.E. capital (ground storage containers), legal expenses, architectural and construction management services. DW will review any other items that should be considered. The Committee also discussed the need to have the 'Tender' Agreement address any unknowns such as latent defects in the project.

4.  The Committee discussed the Surety's claim that the Town should not have paid EJ Sciaba's April, 2003 requisition for payment. The Surety has claimed that the Town was aware that EJ Sciaba could potentially be nearing a default situation and should not have made a payment to them. Town Counsel has responded in writing to this claim and is awaiting a response from the Surety.

5.  Warrants were approved for payments to Dore and Whittier, Inc. and Kopelman and Paige.

6.  The next meeting is scheduled for September 17, 2003 at 7PM. *This meeting was later postponed and re-scheduled for September 24, 2003 at 7PM.*

**The above is my summation of our meeting. If you have any additions and/or corrections, please contact me for incorporation into these minutes. After 10 days, we will accept these minutes as an accurate summary of our discussion and enter them into the permanent record of this project.**

Sincerely,

**DORE AND WHITTIER, INC.**
Architects • Project Managers

Lee P. Dore, Assoc. AIA, CSI
Project Manager

c Bob O'Neill, Superintendent of Schools
  Mr. John Couture, Building Inspector
  Chris Conway, Construction Manager
  Engineers Design Group
  Garcia, Galuska, Desousa
  Berkshire Design Group
  ATC
  CCR/Pyramid
  John Crisafulli Consulting Services, Inc.
  RJD/LPD/JFT/ARR/HA/GOJ/RLZ/file

Prepared 17 September 2003

**EXHIBIT  23**

**DEPOSITION EXHIBIT**

Dore 61
4-13-05        v S

**Griffin, Deborah S (BOS - X72044)**

| | |
|---|---|
| **From:** | Griffin, Deborah S (BOS - X72044) |
| **Sent:** | Tuesday, November 04, 2003 12:10 PM |
| **To:** | 'TMCENANEY@k-plaw.com' |
| **Cc:** | 'sbeatty@kemperinsurance.com'; 'jiantuono@greyhawk.com' |
| **Subject:** | Re: North Brookfield |

Indeed the surety has selectd Fontaine Bros. I have been trying since last Friday to get from Fontaine Bros their signed Completion Contract and bonds. I spoke with their apparent counsell to try to get that moving. As soon as I have them I wil get them over to you so the town can proceed to accept the contract and give them a notice to proceed.

We will have to talk next week about the terms between the surety and the town.
----------------------------
Sent from my BlackBerry Wireless Handheld (www.BlackBerry.net)


-----Original Message-----
From: THOMAS McEnaney <TMCENANEY@k-plaw.com>
To: deborah.griffin@hklaw.com <deborah.griffin@hklaw.com>
CC: lashaway@aol.com <lashaway@aol.com>; lpdore@DoreandWhittier.com <lpdore@DoreandWhittier.com>;
kmeagher@kmeagherlaw.com <kmeagher@kmeagherlaw.com>
Sent: Tue Nov 04 12:03:30 2003
Subject: North Brookfield

Deborah:

I spoke with your secretary today, who informed me that you were out of Town on a family medical issue but would be checking your email. I hope all goes well with your family situation. Pursuant to your request, I will provide you with the additional back-up to substantiate the additional design and project management costs.

To date, we still have not heard from you whether the surety has selected a contractor to complete the project. The Town has received a few calls from Chris Fontaine who stated that Fontaine Bros. has been selected by the bonding company as completing contractor and wants to begin work asap. It is my understanding that he expressed concern with the delays in the selection process and the impact that these delays will have on his cost and ability to close up the building before the onset of winter conditions. The Town shares these same concerns. Kindly advise whether Fontaine has in fact been selected and when you expect to tender Fontaine to the Town.

As you know, there are a number of outstanding issues concerning the tender agreement, including the surety's claim for a pro tanto discharge and the Town's claims for additional costs that were incurred as a result of Sciaba's voluntary default. If we cannot reach an agreement on these issues by next week, I suggest that we either (1) reserve our rights with respect to these issues as we originally proposed in our draft revisions to the tender agreement; or (2) the surety enter into a contract with Fontaine so that Fontaine can begin work, and after we resolve these outstanding issues, have the surety assign the contract with Fontaine to the Town.

If you would like to meet, I am available on 11/12 in am, 11/13 or 14. I can check with Kieran as to his availability next week.

Tom



1

**EXHIBIT  24**

Bx. 153

## Whited, Bonnie S (BOS - X72047)

| | |
|---|---|
| **From:** | Anastasio, Rich [ranastasio@greyhawk.com] |
| **Sent:** | Thursday, October 23, 2003 5:31 PM |
| **To:** | deborah.griffin@hklaw.com |
| **Cc:** | 'sbeatty@kemperinsurance.com' |
| **Subject:** | NBJSHS Best & Final Bids |
| **Importance:** | High |

The attached represents the Best & final bids with breakdowns as received from each of the 3 bidders.  I have great deal of problems trying to attach and email this so I am hoping you each receive it intact please acknowledge whether you can open and print the files.

The attached are from Consigli and Fontaine.  I still cannot get the Agostini/ Bacon version to attach.  It will follow under separate cover I may have to print it and scan it

3/2/2004



**FONTAINE BROS. INC.**

October 17, 2003

Mr. Richard Anastasio, P.E.
Greyhawk North America
260 Crossway Park Drive
Woodbury, NY 11797-2015

Re:     North Brookfield Junior & Senior High School

Dear Mr. Anastasio,

As you have requested we have sent you via email and hardcopy fax a "Best & Final Price Recap" for the above project.  Should you require anything additional, please do not hesitate to contact us.

Sincerely,

Fontaine Bros., Inc.

Christopher J. Fontaine
Executive Vice President

By email & fax

Cc:     David P. Fontaine

CJF/jh

BUILDING FOR OVER 80 YEARS

**FONTAINE BROS, INC.** • General Contractors • 510 Cottage Street • Springfield, MA • 01104 • (413) 781-2020 • FAX (413) 734-1881

| Spec | Description | Subcontractor / Supplier | A Ratified Pending | B Ratified Executed | C Other | A+B+C Total Cost to Complete |
|------|-------------|--------------------------|-------------------|---------------------|---------|------------------------------|
| **BIDDERS NAME:** | | | | | | |
| Project: | **North Brookfield JR /SR High School "Cost to Complete"** | | | | | |
| | ***BEST &FINAL PRICE RECAP*** | | | | | |
| **DIV 1** | **General Requirements** | | $ - | $ | $ 474,200 | $ 474,200 |
| Item | General Conditions | Fontaine Bros | | | 471,700 | $ 471,700 |
| Item | Survey | Fontaine Bros | | | 2,500 | $ 2,500 |
| **Div 2** | **Site Work** | | $ - | $ - | ########### | $ 1,848,000 |
| 02060 | Building Demolition | Fontaine Bros | | | 140,000 | $ 140,000 |
| 02080 | Asbestos Abatement | Fontaine Bros | | | 120,000 | $ 120,000 |
| 02081 | Dist. Of Lead Containing Material | NA | | | | $ - |
| 02083 | Misc Hazardous Material Removal | Fontaine Bros | | | 20,000 | $ 20,000 |
| 02084 | Cleaning Removal & Disp Fuel oil Storage Tank | Fontaine Bros | | | 10,000 | $ 10,000 |
| 02200 | Earthwork Sub Package | Fontaine Bros | | | 1,400,000 | $ 1,400,000 |
| 02850 | Seeding | Fontaine Bros | | | 48,000 | $ 48,000 |
| 02850 | Site Improvements | Fontaine Bros | | | 110,000 | $ 110,000 |
| **Div 3** | **Concrete** | | $ - | $ - | $ 541,700.00 | $ 541,700 |
| 03300 | CIP Concrete | Fontaine Bros | | | 541,700 | $ 541,700 |
| **Div 4** | **Masonry** | | $ - | $ - | $ 800,000.00 | $ 800,000 |
| 04200 | Masonry | Fontaine Bros | | | 800,000 | $ 800,000 |
| **Div 5** | **Metals** | | $ 210,034 | $ - | $ 186,500 | $ 396,534 |
| 05120 | Structural Steel | Mandate | | | 186,500 | $ 186,500 |
| 05500 | Miscellaneous Metals Fabrications | United Steel | 210,034.00 | | | $ 210,034 |
| **Div 6** | **Carpentry** | | $ - | $ - | $ 338,000.00 | $ 338,000 |
| 06100 | Rough Carpentry | Fontaine Bros | | | 291,000 | $ 291,000 |
| 06200 | Finish Carpentry | in 06100 | | | | $ - |
| | Finish Woodwork Material | Fontaine Bros | | | 47,000 | $ 47,000 |
| | Finish Woodwork Labor | in 06100 | | | | $ - |
| **Div 7** | **Thermal and Moisture Protection** | | $ 972,757.33 | $ - | $ 278,000.00 | $ 1,250,757 |
| 07100 | Waterproofing, Dampproofing & Caulking | Fontaine Bros | | | 121,000 | $ 121,000 |
| 07200 | Building Insulation | Fontaine Bros | | | 12,000 | $ 12,000 |
| 07400 | Metal Siding & Soffits | HG Bass | | | 145,000 | $ 145,000 |
| 07500 | Roofing & Flashing | Greenwood Ind. | 972,757.33 | | | $ 972,757 |
| 07800 | Roofing Accessories | Greenwood Ind. | Incl | | | $ - |
| 07900 | Joint Sealers | Greenwood Ind. | | | | $ - |
| **Div 8** | **Doors & Windows** | | $ - | $ 208,634.75 | $ 4,044.00 | $ 212,679 |
| 08100 | Hollow Metal Drs & Frames - Materials FOB | HCI | | 89,963.75 | | $ 89,964 |
| Item | Steel Frames - LABOR @ masonry | in 06100 | | | | $ - |
| Item | Steel Frames - LABOR @ Non Masonry | in 06100 | | | | $ - |
| | HM Borrowed Lite Labor | in 06100 | | | | $ - |
| | HM Doors (install) | in 06100 | | | | $ - |
| 08200 | Wood Doors | W/HCI | | | | $ - |
| Item | Wd & Steel Door Labor Nic hardware | in 06100 | | | | $ - |
| 08300 | Special Doors | DELETED | | | | $ - |
| 08300 | Install | | | | | $ - |
| 08331 | Overhead Coiling Doors | Sanborn | | | 4,044 | $ 4,044 |
| 08400 | Aluminum Entrances, Doors and Window Sys | Cheviot | | 99,175.00 | | $ 99,175 |
| | Reorder Type K | Cheviot | | | | $ - |
| 08710 | Door Hardware Materials | W/HCI | | | | $ - |
| Item | Door Hardware Labor | in 06100 | | | | $ - |
| 08800 | Glass & Glazing | Architectural | | 19,496.00 | | $ 19,496 |
| **Div 9** | **Finishes** | | $ - | $ 223,040.00 | ########### | $ 1,329,476 |
| GYP | Drywall PKG | Fontaine Bros | | | 750,000 | $ 750,000 |
| 09300 | Tile | Bachand Tile | | 146,040.00 | | $ 146,040 |
| 09510 | Acoustical Ceiling | WMass Acoustics | | | 95,786 | $ 95,786 |
| 09561 | Resilient Wood Flooring (9,090 SF) | in 09800 | | | | $ - |
| 09650 | Resilient Flooring | Ayotte & King | | | 98,450 | $ 98,450 |
| 09680 | Carpet | Fontaine Bros | | | 30,000 | $ 30,000 |
| 09700 | Special Flooring | Athletic Floor | | 77,000.00 | | $ 77,000 |
| 09800 | Gymnasium Floor Coating | in 09800 | | | | $ - |
| 09840 | Acoustical Panels | WMass Acoustics | | | 7,200 | $ 7,200 |
| 09850 | Special Wall Coatings | in 09900 | | | | $ - |
| 09900 | Painting | Berger Painting | | | 125,000 | $ 125,000 |
| **Div 10** | **Specialties** | | $ - | $ 11,787.31 | $ 139,870.00 | $ 151,657 |
| 10100 | Marker Boards and Tack Boards | N England | | | 14,000 | $ 14,000 |

| Spec | Description | Subcontractor / Supplier | A Ratified Pending | B Ratified Executed | C Other | A+B+C Total Cost to Complete |
|---|---|---|---|---|---|---|
| | **BIDDERS NAME:** | | | | | |
| | Project: North Brookfield JR /SR High School "Cost to Complete" | | | | | |
| | **BEST &FINAL PRICE RECAP** | | | | | |
| 10150 | Toilet and Shower Partitions | Fontaine Bros | | | 22,000 | $ 22,000 |
| 10190 | Cubicle Track System | FFE | | | 630 | $ 630 |
| 10200 | Metal Louvers | American Warming | | 2,065.00 | | $ 2,065 |
| Item | Labor for above (9 ea) | in 06100 | | | | $ - |
| 10400 | Exterior Letters | Lauretano | | 9,722.31 | | $ 9,722 |
| 10420 | Commemorative Plaque | Lauretano | | | | $ - |
| 10440 | Interior Signage | Lauretano | | | | $ - |
| Item | Labor for above | Lauretano | | | | $ - |
| 10500 | Metal Lockers | Northern | | | 77,300 | $ 77,300 |
| 10520 | Fire Extinguishers & Cabinets | Sanahart | | | 2,218 | $ 2,218 |
| 10651 | Operable Partitions | Pappas | | | 21,000 | $ 21,000 |
| 10810 | Washroom Accessories | Sanahart | | | 2,722 | $ 2,722 |
| Div 11 | Equipment | | $ - | $ 393,495.10 | $ 34,000.00 | $ 427,495 |
| 11131 | Classroom Equipment (projection screen) | | | | | $ - |
| 11400 | Food Service Equipment | Holyoke Equipt | | 134,133.00 | | $ 134,133 |
| 11486 | Basketball Back Boards and Goals | Pappas | | | 34,000 | $ 34,000 |
| 11500 | Gymnasium Equipment | in 11486 | | | | $ - |
| 11600 | Fixed Casework & Equipment | Slay Dale | | 259,362.10 | | $ 259,362 |
| Div 12 | Furnishings | | $ - | $ 17,240.00 | $ 52,472.00 | $ 69,712 |
| 12675 | Floor Mats | Fontaine Bros | | | 3,000 | $ 3,000 |
| Item | Labor for above | | | | | $ - |
| 12710 | Assembly Seating | Slay Dale | | 17,240.00 | | $ 17,240 |
| 12760 | Telescoping Bleachers | Lord | | | 49,472 | $ 49,472 |
| Div 13 | Special construction | | $ - | $ - | $ - | $ - |
| | | | | | | $ - |
| Div 14 | Elevator | | - | 14,684 | - | $ 14,684 |
| 14225 | Hydraulic Elevator | Baystate | | 14,683.75 | | $ 14,684 |
| | | | | | | $ - |
| Div 15 | Mechanical | | $ - | $ 2,258,288.90 | $ - | $ 2,258,289 |
| 15100 | Vibration Control And Seismic Restraint | | | | | $ - |
| 15300 | Fire Protection | SRI | | 120,197.68 | | $ 120,198 |
| 15400 | Plumbing | Millis | | 500,002.52 | | $ 500,003 |
| Item | Staging and Hoisting | Millis | | | | $ - |
| 15600 | HVAC | KMD | | 1,638,088.70 | | $ 1,638,089 |
| 15600 | Staging and Hoisting | KMD | | | | $ - |
| Div 16 | Electrical | | $ - | $ 907,832.55 | $ - | $ 907,833 |
| 16000 | Electrical ( Including Portions of 15100) | Griffin | | 742,932.55 | | $ 742,933 |
| 16740 | Voice Data & Video Cabling | Commercial | | 164,900.00 | | $ 164,900 |
| | Subtotal | | $1,182,791.33 | $4,035,002.49 | ########## | $ 11,021,016 |
| | Subcontractor Bonds Direct Work | | | | | |
| | Subcontractor Bonds Ratified Bids | | | | | 20,000 |
| | Permit Costs | | | | | |
| | Builder's Risk | Fontaine Bros | | | 11,200 | 11,200 |
| | Additional Umbrella Policy | included | | | | |
| | Owner's Protective Liability | included | | | | |
| | Fee | | | | | 506,641 |
| | P&P Bond | | | | | 68,143 |
| | Adjustment | | | | | (100,000) |
| | Subtotal | | | | | $ 505,984.00 |
| | | | | | | |
| | **GRAND TOTAL** | | | | | $ 11,527,000.00 |

**EXHIBIT  25**

**Rameau, Angele**

| | |
|---|---|
| **From:** | Anastasio, Rich |
| **Sent:** | Friday, October 24, 2003 12:12 PM |
| **To:** | 'Stephen.Beatty@kemperinsurance.com'; Anastasio, Rich |
| **Cc:** | deborah.griffin@hklaw.com; Anastasio, Rich |
| **Subject:** | RE: Sciaba/ N. Brookfield/ Bids |

I am working on that as I read this in anticipation.  For starters, WJS had a schedule of values for various categories that was far in excess of the actual costs, particularly on the structural steel where EJS had more than 1.9M in the pay req. when the actual s/c cost was only 800K and then, EJS didn't pay the sub leaving us with over 1.1M in costs that he pocketed from the early payment of the steel and then sticking us with the lawsuit/paybond claim that is several hundred thousand dollars.  There are others.  I am also trying to line up the breakdown from each of the bidders to show the overpayment by the town in certain categories; but not being able to obtain Agostini/Bacon's breakdown via email is lousing that operation up for the moment.

Apparently Agostini's server is experiencing the same problem that the GREYHAWK system did recently and it all relates to hackers in the system who can track large email transfers of data (like an rfp or large worksheets) and that alerts the hackers into servers with large capacity and then they "tap into" your server and use the capacity to store their own data.  It is very scary and consultants and law firms are particularly susceptible to those kinds of hackers.

-----Original Message-----
From: Stephen.Beatty@kemperinsurance.com [mailto:Stephen.Beatty@kemperinsurance.com]
Sent: Friday, October 24, 2003 11:47 AM
To: ranastasio@greyhawk.com
Cc: deborah.griffin@hklaw.com
Subject: Sciaba/ N. Brookfield/ Bids

Rick:

I have the bids you forwarded yesterday.  I'm still in a bit of shock, given the $2.5 million discrepancy between those bids and the 7/21/03 cost to complete estimate that was worked up.  Granted that it was preliminary, etc., but its still a big swing.  I'm now going to have to go to Pat Nails, and he's going to have to go to his superiors, for authority to increase the reserve for completion from the initial estimate to between $3.3 and $3.7 million.  And they're probably going to want an explanation for the substantial difference between the estimate and the bids.  So in anticipation of this, I would appreciate it if you can give me your observations and reasons for the difference. (Debbie, any thoughts that you have on the subject would also be helpful.)  Thanks.

Stephen Beatty
Senior Surety Counsel
Kemper Surety
1 Kemper Drive
Long Grove, IL  60049-0001
Phone:  847.320.2170
Fax:  847.320.5828

DISCLAIMER:
This communication, along with any documents, files or attachments, is intended only for the use of the addressee and may contain legally privileged and confidential information. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of any information contained in or attached to this communication is strictly prohibited. If you have received this message in error, please notify the sender immediately and destroy the original communication and its attachments without reading, printing or saving in any manner. This communication does not form any

GH 06557

contractual obligation on behalf of the sender or, the sender's employer, or the employer's parent company, affiliates or subsidiaries.

GH 06558

**EXHIBIT  26**

AM17782
Nov 4 2003 8:44 P.02
11/03/2003 16:42 FAX 617 654 1735 KOPELMAN AND PAIGE @002/005

LEONARD KOPELMAN
DONALD G. PAIGE
ELIZABETH A. LANE
JOYCE FRANK
JOHN W. GIORGIO
BARBARA J. SAINT ANDRE
JOEL B. BARD
JOSEPH L. TEHAN, JR.
THERESA M. DOWDY
DEBORAH A. ELIASON
RICHARD BOWEN
DAVID J. DONESKI
JUDITH C. CUTLER
KATHLEEN E. CONNOLLY
DAVID C. JENKINS
MARK R. REICH
BRIAN W. RILEY
DARREN R. KLEIN
JONATHAN M. SILVERSTEIN

EDWARD M. REILLY
DIRECTOR WESTERN OFFICE

WILLIAM HEWIG III
JEANNE S. McKNIGHT

**KOPELMAN AND PAIGE, P. C.**

ATTORNEYS AT LAW

31 ST. JAMES AVENUE

BOSTON, MASSACHUSETTS 02116-4102

(617) 556-0007

FAX (617) 654-1730

PITTSFIELD OFFICE
(413) 443-6100

NORTHAMPTON OFFICE
(413) 585-0052

WORCESTER OFFICE
(508) 752-0203

KATHLEEN M. O'DONNELL
SANDRA M. CHARTON
PATRICIA A. CANTOR
THOMAS P. LANE, JR.
MARY L. GIORGIO
THOMAS W. McCNANEY
KATHARINE GOREE DOYLE
GEORGE X. PUCCI
LAUREN F. GOLDBERG
JASON R. TALERMAN
JEFFREY A. HONIG
MICHELE E. RANDAZZO
GREGG J. CORBO
RICHARD T. HOLLAND
LISA C. ADAMS
ELIZABETH R. CORBO
MARCELINO LA BELLA
VICKI S. MARSH
JOHN J. GOLDROSEN
SHIRIN EVERETT
BRIAN E. GLENNON, II
JONATHAN D. EICHMAN
LAURA H. PAWLE
TODD A. FRAMPTON
JACKIE COWIN
SARAH N. TURNER

November 3, 2003

<u>BY FACSIMILE - (617) 523-6850</u>

Deborah S. Griffin, Esq.
Holland & Knight, LLP
10 St. James Avenue
Boston, MA 02116

**DEPOSITION
EXHIBIT**

Dore 60
4-13-05 VS

Re:   <u>North Brookfield Junior/Senior High School Project</u>

Dear Ms. Griffin:

        This is a follow-up to our October 15, 2003 meeting relative to the above-referenced project. As you may recall, you requested that the Town provide you with an estimate for the work that was performed by E.J. Sciaba Contracting Company, Inc. ("Sciaba") relative to CCD No. 3. Please be advised that project architect, Dore & Whittier, Inc. ("D&W"), issued CCD No. 3 to enable Sciaba to continue with the placement of concrete foundation walls at area "A" on July 19, 2002. CCD No. 3, along with sketch 071902, directed Sciaba to install four 6" wall sleeves A line and B line for later placement of two 4" PVC conduits to run data lines from the new high school to the elementary school. Sciaba completed the work along A line on or about August 22, 2002 and along B line on or about October 22, 2002. D&W estimate that this work cost $440.00, based upon the following breakdown:

| | |
|---|---|
| Material and labor to fabricate four 6" wall sleeves | $200.00 |
| Laborer to install four sleeves | $200.00 |
| Overhead and profit | $ 40.00 |
| Total Estimated Cost | $440.00 |

        Furthermore, you also requested that the Town provide you with a more detailed breakdown of the additional costs that it incurred as a result of Sciaba's voluntary default on the project. As we discussed, the Town has incurred legal fees in the amount of approximately $10,000.00. As we also discussed, the Town incurred costs for roof repairs to the existing high school in the amount of $6,336.50 that were performed in August, 2003. At the meeting, you

PRINTED ON RECYCLED PAPER

KOPELMAN AND PAIGE, P.C.
Deborah S. Griffin, Esq.
November 3, 2003
Page 2

questioned whether American Manufacturers Mutual Insurance Company ("AMMIC"), as the performance bond surety, would be responsible for these costs because it was your belief that the scheduled completion date for the project was December 15, 2003. However, please be advised that the date that you cited is incorrect.

As you know, the building was originally scheduled for substantial completion on July 17, 2003. This date was extended by 28 days as a result of the unsuitable soils issue, which is addressed in Change Order No. 3. The substantial completion date for the demolition of the existing school and site work was similarly extended by 28 days from November 17, 2003 to December 15, 2003. If the building was completed by August 15, 2003 as required, the Town would not have had to incur the cost of repairs to the existing high school roof. Therefore, it is the Town's position that AMMIC is responsible for these costs.

In addition to the legal and roof costs, the Town also incurred and will incur additional costs for design and construction management services that are attributable to Sciaba's voluntary default. In accordance with your request, attached please find a breakdown of these additional fees, which total $579,027.55. This includes the additional costs incurred by the Town to date, as well as a credit to AMMIC in the amount of $256,593.38, which is the balance on the Town's contract with D&W. Please note that I can provide you with further explanation and support for this estimate upon your request and would be happy to meet with you to discuss this estimate further.

You also stated that Sciaba was entitled to an additional time extension in the amount of 60 days as a result of winter conditions. Please be advised that the Town denies that Sciaba is entitled to any time extensions on the Project, as it is the Town's position that any delays were caused by Sciaba. Sciaba's project schedule initially provided that Sciaba would close the building by January 7, 2002. At a partnering session in the Fall of 2002, Sciaba assured the Town that it would meet its deadlines. Yet, as you know, Sciaba never met its deadlines. As a result, the building was not closed prior to Winter, which would have enabled Sciaba and its subcontractors to work indoors. Since the Town and weather in no way contributed to any delays on this Project, the Town does not feel that a 60 day extension is warranted.

As you may know, the Town agreed to the completion dates of April 1, 2004 for the building and August 1, 2004 for the site and demolition work. It is the Town's understanding, however, that AMMIC has unilaterally changed the scheduled completion dates to April 30, 2004 and August 30, 2004 without the Town's knowledge and consent. Please be advised that the August 30, 2004 date for substantial completion of the site and demolition work is unacceptable. The Town has grave concerns that the August 30, 2004 will not be met, which could delay the opening of the High School and adversely impact public safety.

KOPELMAN AND PAIGE, P.C.
Deborah S. Griffin, Esq.
November 3, 2003
Page 3


Finally, as set forth in my October 22, 2003 e-mail to you, based on Greyhawk's latest schedule, it was our understanding that AMMIC was going to receive final bids on October 14, 2003 and select the completing contractor. To date, however, we have not been informed whether AMMIC has made its selection, although we have been told that Greyhawk has made its recommendation to AMMIC. Kindly advise as soon as possible whether AMMIC has selected a completing contractor. If AMMIC has not made its selection, please advise what is holding up the selection process and when we can expect a decision.

If you have any questions, please do not hesitate to contact me.

Very truly yours,

Thomas W. McEnaney

TWM/kad
Enc.
cc:    Board of Selectmen
       School Building Committee
       Mr. Lee Dore
       Kieran B. Meagher, Esq.

205014/NBRO/0017