**EXHIBIT 27**

Law Offices

# HOLLAND & KNIGHT LLP

10 St. James Avenue
Boston, Massachusetts 02116

617-523-2700
FAX 617-523-6850
http://www.hklaw.com

Annapolis
Atlanta
Bethesda
Boston
Bradenton
Chicago
Fort Lauderdale
Jacksonville
Lakeland
Los Angeles
Miami
New York
Northern Virginia

Oakbrook
Orlando
Portland
Providence
San Antonio
San Francisco
Seattle
St. Petersburg
Tallahassee
Tampa
Washington, D.C.
West Palm Beach

International Offices:
Caracas*
Helsinki
Mexico City
Rio de Janeiro

São Paulo
Tel Aviv*
Tokyo

*Representative Offices

November 21, 2003

DEBORAH S. GRIFFIN
617-305-2044

Internet Address:
deborah.griffin@hklaw.com

*VIA E-MAIL and*
*First Class Mail*

Thomas W. McEnaney, Esq.
Kopelman & Paige, P.C.
31 St. James Avenue, 7th Floor
Boston, MA 02116



Re:  North Brookfield Intermediate & Senior High School Project
     Surety:      American Manufacturers Mutual Insurance Co.
     Bond No.:    3SE 057 856
     Claim No.:   167-SE-002-989

Dear Tom:

Since sending you, on November 12, 2003, the two originals of the Completion Contract executed by Fontaine Bros., Inc., and its Performance and Payment Bonds and Certificate of Liability Insurance, it has come to my attention that those documents contained the two different contract amounts. The figure on which Fontaine and the surety had agreed was, as stated in my cover letter to you of November 12, $11,381,362. That amount is correctly reflected in Fontaine's Labor and Material Payment Bond. However, an incorrect figure of $11,527,000, was stated in the Completion Contract itself and in the Performance Bond. I have brought this scrivener's error to Fontaine's attention and Fontaine has acknowledged it.

In addition, we have since learned that the $11,381,362 figure was based on a mistake on the part of both Fontaine and the Surety as to the amount of one of the subcontractor ratification agreements. That mistake was in the amount of $15,934.35, which should bring the correct contract amount to $11,397,296.35. It is my understanding that Fontaine is prepared to execute a

Thomas W. McEnaney, Esq.
November 21, 2003
Page 2

credit change order to the Completion Contract that would make an adjustment on account of both of these errors. However, if the Town's acceptance of the Completion Contract and its issuance of a Notice to Proceed is delayed any further, the amount of the adjustment may be reduced if that delay increases Fontaine's completion costs.

AMMIC has continued its analysis of its obligations under its performance bond, notwithstanding the Town's refusal to provide us with copies of the Town's contract with Dore & Whittier, and the invoices the Town has received to date for design and construction management fees. I am enclosing with this letter a two-page analysis that sets forth the surety's calculation of amounts owed on its performance bond. On the basis of information available to it at this time, the surety believes it owes the Town of North Brookfield $2,538,838.37. It is in the process of issuing a check in that amount payable to the Town of North Brookfield. As soon as I receive it, I will hand-deliver it to you unconditionally.

AMMIC has taken note of the Town's failure to appropriate the additional funds necessary above that amount to pay the difference between Fontaine's price to complete and the contract balance, which difference is $3,197,996.17. AMMIC is also aware that the Town is likely to disagree with certain aspects of the surety's calculation of the amount owed, although we are not certain of the extent of that disagreement. In addition to delivering unconditionally the above-referenced check in the amount of $2,538,838.37, AMMIC is preparing to deliver to you an additional check in the amount of $659,157.80 under a reservation of rights, negotiation of which will be conditioned upon the Town executing the Completion Contract with Fontaine and issuing it a Notice to Proceed. We will continue our efforts to resolve the differences between the surety and the Town concerning disputed aspects of the Town's claims and the surety's defenses, with the $659,157.80 to be credited against any additional amount the parties may agree, or a court may determine, that AMMIC owes. If such additional amounts are lower, the difference is to be refunded to AMMIC.

To respond to the point in your November 14, 2003 letter concerning latent defects, AMMIC is prepared to pay for the reasonable and necessary costs incurred by the Town under the Fontaine contract, for latent defects caused by Sciaba's work. It believes that Fontaine's contract price covers any other defective, deficient, deteriorated or otherwise unacceptable work.

Contrary to the statements on the second page of your November 14 letter, AMMIC is not obligated to complete the project. It believes it has complied fully with its obligations under the bond by delivering the Fontaine

Thomas W. McEnaney, Esq.
November 21, 2003
Page 3

contract to the Town, as well as committing to make the unconditional payment referenced above.

    Once again, we urge the Town to take the necessary steps to mitigate its damages and to execute the agreement with Fontaine without delay (and thus minimize or eliminate any decrease in the necessary credit change order).

    Very truly yours,

    HOLLAND & KNIGHT LLP

    Deborah S. Griffin

DSG/bsw: # 1381969_v1
431261.00002
Enclosure
cc:    Robert P. Garrity, Esq. (w/encl., via e-mail)
        Stephen J. Beatty, Esq. (w/encl., via e-mail)
        Richard P. Anastasio, P.E. (w/encl., via e-mail)

| North Brookfield Claims Analysis | | |
|---|---|---|
| Item | Amount | Notes on Surety's Position |
| Fontaine's Price to Complete | $11,397,296.35 | |
| Contract Balance | -$8,199,300.18 | |
| Completion Deficiency | $3,197,996.17 | |
| | | |
| Liquidated Damages | $228,000.00 | C.O. 3 extended completion to 12/15/03 for both phases plus 60 days weather delays -- see Completion Date Sheet |
| Roof Repair | $0.00 | Work performed within extended time for completion |
| Legal Fees | $10,000.00 | |
| Design and Construction Management Services | $164,371.43 | See Completion Date sheet |
| | | |
| Total of Town's Claims | $3,600,367.60 | |
| | | |
| Overpayment defense | | |
| May payments | $696,578.23 | |
| | $2,903,789.37 | |
| Earlier overpayments - Div. 1 | $120,697.00 | |
| Earlier overpayments - Div. 2 | $226,213.00 | |
| Earlier overpayments - Div. 9 | $18,041.00 | |
| Total earlier overpayments | $364,951.00 | |
| | | |
| Total due from surety | $2,538,838.37 | |
| | | |
| Shortfall against completion cost | $659,157.80 | |

| Time Related Claims | | | |
|---|---|---|---|
| | | | |
| Original Dates | Date | days/amounts | comment |
| Contract Inception | 4/19/2002 | | |
| Substantially Complete New Building | 7/17/03 | 453 | |
| Substantially Complete Demolition of Old Building and Parking Lot | 11/15/03 | 118 | |
| Total | | 571 | |
| | | | |
| Extended Substantially Complete New Building | 2/13/2004 | 659 | December 15 per C.O. 3 plus 60 days weather delay |
| Extended Substantially Complete Demolition of Old Building and Parking Lot | 2/13/2004 | 0 | December 15 per C.O. 3 plus 60 days weather delay |
| | | 659 | |
| | | | |
| Fontaine's dates | | | |
| New Building | 8/15/04 | 182 | |
| Old Building and Parking Lot | 10/1/04 | 46 | |
| Total days late on which liquidated damages assessed | | 228 | |
| | | | |
| Liquidated Damages | | $228,000.00 | at $1000 per day |
| | | | |
| Design and Construction Management Dates | | | |
| | | | |
| Delay in days from above | | 228 | |
| Delay in weeks | | 33 | |
| | | | |
| Work suspended from | 5/31/2003 | | |
| to | 11/17/2003 | 167 | |
| Duration of suspension in weeks | | 24 | |
| Net additional weeks of design and c.m. services | | 9 | |
| | | | |
| Weekly rate for design and c.m. services | | $10,600.00 | weekly rate includes 40 hours a week for CM, not 50 as claimed by Town |
| Total cost for net additional weeks | | $92,371.43 | |
| Actual billings during suspension through 9/20/03 | | $48,000.00 | In the absence of copies of actual bills, running rate reduced from $4,800 claimed by Town to $3,000: 20 hours a week for CM; 2 hours a week for principal = $2,550, rounded up. |
| Estimated billings during suspension 9/20-11/17/03 8 wk x 4800/ wk | | $24,000.00 | Same as above |
| | | $164,371.43 | |



# EXHIBIT 28

| LEONARD KOPELMAN | KOPELMAN AND PAIGE, P. C. | KATHLEEN M. O'DONNELL |
| --- | --- | --- |
| DONALD G. PAIGE | | SANDRA M. CHARTON |
| ELIZABETH A. LANE | ATTORNEYS AT LAW | PATRICIA A. CANTOR |
| JOYCE FRANK | | THOMAS P. LANE, JR. |
| JOHN W. GIORGIO | 31 ST. JAMES AVENUE | MARY L. GIORGIO |
| BARBARA J. SAINT ANDRE | | THOMAS W. MCENANEY |
| JOEL B. BARD | BOSTON, MASSACHUSETTS 02116-4102 | KATHARINE GOREE DOYLE |
| JOSEPH L. TEHAN, JR. | | GEORGE X. PUCCI |
| THERESA M. DOWDY | (617) 556-0007 | LAUREN F. GOLDBERG |
| DEBORAH A. ELIASON | FAX (617) 654-1735 | JASON R. TALERMAN |
| RICHARD BOWEN | | JEFFREY A. HONIG |
| DAVID J. DONESKI | | MICHELE E. RANDAZZO |
| JUDITH C. CUTLER | PITTSFIELD OFFICE | GREGG J. CORBO |
| KATHLEEN E. CONNOLLY | (413) 443-6100 | RICHARD T. HOLLAND |
| DAVID C. JENKINS | | LISA C. ADAMS |
| MARK R. REICH | NORTHAMPTON OFFICE | ELIZABETH R. CORBO |
| BRIAN W. RILEY | (413) 585-8632 | MARCELINO LA BELLA |
| DARREN R. KLEIN | | VICKI S. MARSH |
| JONATHAN M. SILVERSTEIN | | JOHN J. GOLDROSEN |
| | WORCESTER OFFICE | SHIRIN EVERETT |
| EDWARD M. REILLY | (508) 752-0203 | BRIAN E. GLENNON, II |
| DIRECTOR WESTERN OFFICE | | JONATHAN D. EICHMAN |
| | | LAURA H. PAWLE |
| WILLIAM HEWIG III | | TODD A. FRAMPTON |
| JEANNE S. McKNIGHT | | JACKIE COWIN |
| | | SARAH N. TURNER |

December 4, 2003

Deborah S. Griffin, Esq.
Holland & Knight, LLP
10 St. James Avenue
Boston, MA 02116

Re: <u>North Brookfield Junior/Senior High School Project</u>

Dear Ms. Griffin:

Pursuant to your request, enclosed please find a copy of the contract for designer services between the Town and Dore & Whittier, Inc. ("D&W"), along with copies of the invoices submitted by D&W to the Town relative to the above-referenced project. Please note that I have also enclosed copies of the Town's legal bills through September 30, 2003. The Town has incurred additional legal fees for Keiran B. Meagher's services in the amount of $2,025.00 through September 30, 2003, and additional fees in the amount of $4,100.00 for Mr. Meagher's services and an additional $6,360.00 for my services from October 1, 2003 to the present which have not yet been billed. Therefore, the total incurred by the Town for legal fees is $19,407.00 as of November 30, 2003.

If you have any questions, please do not hesitate to contact me.

Very truly yours,

Thomas W. McEnaney

TWM/kad
Enc.
cc: Board of Selectmen (w/o enc.)
  School Building Committee (w/o enc.)
  Mr. Lee Dore (w/o enc.)
  Kieran B. Meagher, Esq.
206918/NBRO/0017

# EXHIBIT 29

Law Offices

# HOLLAND & KNIGHT LLP

10 St. James Avenue
Boston, Massachusetts 02116

617-523-2700
FAX 617-523-6850
http://www.hklaw.com



Dove 59
4-13-05  U.S.

Annapolis
Atlanta
Bethesda
Boston
Bradenton
Chicago
Fort Lauderdale
Jacksonville
Lakeland
Los Angeles
Miami
New York
Northern Virginia

Oakbrook
Orlando
Portland
Providence
San Antonio
San Francisco
Seattle
St. Petersburg
Tallahassee
Tampa
Washington, D.C.
West Palm Beach

International Offices:
Caracas*
Helsinki
Mexico City
Rio de Janeiro

São Paulo
Tel Aviv*
Tokyo

*Representative Offices

November 5, 2003

DEBORAH S. GRIFFIN
617-305-2044

Internet Address:
deborah.griffin@hklaw.com

**<u>VIA FACSIMILE
(617) 754-1735 and
First Class Mail</u>**

Thomas W. McEnaney, Esq.
Kopelman & Paige, P.C.
31 St. James Avenue, 7th Floor
Boston, MA 02116

    Re:   *North Brookfield Intermediate & Senior High School Project*
          *Surety:*      American Manufacturers Mutual Insurance Co.
          *Bond No.:*   3SE 057 856
          *Claim No.:*  167-SE-002-989

Dear Tom:

    Since our meeting of October 15, the surety has obtained additional information in supporting its overpayment defenses. We summarize that information below.

    A.    <u>The May Payments</u>. Your letter of June 9 indicated that payments had been made to Sciaba in the amounts of $287,556.28 and $443,733.76 on May 21 and May 27, 2003 respectively. We have learned from records subpoenaed from Sciaba's bank that the May 21 payment was only $252,844.47. Apparently, the amounts paid on the claims for direct payment on May 21-22 were deducted from the $287,556.28 before the check to Sciaba was cut. Thus, the total actually paid to Sciaba during the last ten days of May, which the surety contends should not have been paid, is $696,578.23. Of that amount, the surety has identified only $100,700.49 as having reached subcontractors on the project. Thus the surety was prejudiced by the May payments to the extent of $595,877.74.

Thomas W. McEnaney, Esq.
November 5, 2003
Page 2

      B.    Prior Overpayments. In addition, in the process of examining the bids and the status of work on the project, the surety has identified several Divisions of work on which the Town and the architect approved for payment percentages of completion that far exceeded the actual amount of work performed. The Divisions and/or line items overpaid in this way are summarized on the attached spreadsheet. We have attempted to ensure that only monies paid prior to the May payments are included in this total. They total $527,320.

      When we resume our discussions, we will need to address total claimed overpayments of $1,123,198 outlined above. I have not had a chance to digest the points in your last letter but will do so next week upon my return to the office.

Very truly yours,

HOLLAND & KNIGHT LLP

Deborah S. Griffin

DSG/bsw: # 1330037_v1
431261.00002
Enclosure
cc:   Stephen J. Beatty, Esq. (w/encl.)(by fax)
       Richard P. Anastasio, P.E. (w/encl.)(by fax)
       Kieran B. Meagher, Esq. (w/encl.)(by fax)

| Spec | Trade | Sclaba Scheduled Value | % Approved | $ Approved | Amt. over-approved | Amt. not paid, or paid in May | Amt. overpaid | Comment |
|---|---|---|---|---|---|---|---|---|
| DIV 1 | General Req'ts | $609,353 | 72.12% | $439,465 | $200,660 | $79,963 | $120,697 | Total job % complete per May 31 req. 14 is 33%, not 72%. |
| Div 2 | Site Work | $1,308,000 | 38.98% | $509,900 | $248,300 | $22,087 | $226,213 | Bidders indicate work is no more than 20% complete. |
| Div 9 | Finishes | $902,050 | 4.83% | $43,610 | $180,410 | $0 | $180,410 | Only work done was a small amount of studs. |
| | Total | | | | | | $527,320 | |

AM17773

Nov 5 2003 10:44 P.04

**EXHIBIT 30**

| | | |
|---|---|---|
| LEONARD KOPELMAN<br>DONALD G. PAIGE<br>ELIZABETH A. LANE<br>JOYCE FRANK<br>JOHN W. GIORGIO<br>BARBARA J. SAINT ANDRE<br>JOEL B. BARD<br>JOSEPH L. TEHAN, JR.<br>THERESA M. DOWDY<br>DEBORAH A. ELIASON<br>RICHARD BOWEN<br>DAVID J. DONESKI<br>JUDITH C. CUTLER<br>KATHLEEN E. CONNOLLY<br>DAVID C. JENKINS<br>MARK R. REICH<br>BRIAN W. RILEY<br>DARREN R. KLEIN<br>JONATHAN M. SILVERSTEIN<br><br>EDWARD M. REILLY<br>DIRECTOR WESTERN OFFICE<br><br>WILLIAM HEWIG III<br>JEANNE S. MCKNIGHT | **KOPELMAN AND PAIGE, P. C.**<br>ATTORNEYS AT LAW<br>31 ST. JAMES AVENUE<br>BOSTON, MASSACHUSETTS 02116-4102<br>(617) 556-0007<br>FAX (617) 654-1735<br><br>PITTSFIELD OFFICE<br>(413) 443-6100<br><br>NORTHAMPTON OFFICE<br>(413) 585-8632<br><br>WORCESTER OFFICE<br>(508) 752-0203 | KATHLEEN M. O'DONNELL<br>SANDRA M. CHARTON<br>PATRICIA A. CANTOR<br>THOMAS P. LANE, JR.<br>MARY L. GIORGIO<br>THOMAS W. MCENANEY<br>KATHARINE GOREE DOYLE<br>GEORGE X. PUCCI<br>LAUREN F. GOLDBERG<br>JASON R. TALERMAN<br>JEFFREY A. HONIG<br>MICHELE E. RANDAZZO<br>GREGG J. CORBO<br>RICHARD T. HOLLAND<br>LISA C ADAMS<br>ELIZABETH R CORBO<br>MARCELINO LA BELLA<br>VICKI S. MARSH<br>JOHN J. GOLDROSEN<br>SHIRIN EVERETT<br>BRIAN E. GLENNON, II<br>JONATHAN D. EICHMAN<br>LAURA H. PAWLE<br>TODD A. FRAMPTON<br>JACKIE COWIN<br>SARAH N. TURNER |

November 12, 2003

BY FACSIMILE - (617) 523-6850

Deborah S. Griffin, Esq.
Holland & Knight, LLP
10 St. James Avenue
Boston, MA 02116



EXHIBIT
Murray
93
4-29-05  KQ

Re:  North Brookfield Junior/Senior High School Project

Dear Ms. Griffin:

    This is a follow-up to your request for additional information to support the Town's claim for additional design and construction management services costs that are attributable to E.J. Sciaba Contracting, Inc.'s ("Sciaba") voluntary default on the above-referenced project. As set forth in my November 4, 2003 letter, the Town incurred and will incur additional costs for design and construction management services that are attributable to Sciaba's breach in the amount of $579,027.55. A copy of the breakdown of these additional fees is attached hereto for your review and convenience.

    Please note that these additional fees are based upon a substantial completion date for the building of April 30, 2004, and a substantial completion date for the demolition and site work of August 30, 2004. Dore & Whittier, Inc.'s ("D&W") contract with the Town runs for ninety (90) days beyond the final substantial completion, which is November 30, 2004, based upon the August 30, 2004 substantial completion date for the demolition and site work. D&W's original contract with the Town expires on January 31, 2004. As a result, based upon an August 30, 2004 completion date, D&W will work and additional 43 weeks beyond the expiration of the original contract. If the substantial completion date is extended as proposed by Fontaine Bros, Inc. ("Fontaine"), the design and project management fees with obviously increase.

KOPELMAN AND PAIGE, P.C.

Deborah S. Griffin, Esq.
November 12, 2003
Page 2

As set forth in the attached breakdown, D&W estimates that its team will spend on average the following number of hours per week on the project:

| Role | Hours |
| --- | --- |
| Project manager | 18 |
| Job captain | 18 |
| Project architect | 16 |
| Principal | 4 |
| Total: | 56 |

D&W compared its estimate to the actual average hours spent during the construction administration phase of another one of its projects, the King Philip Middle School project in Norfolk, Massachusetts. The King Philip Middle School project was similar, but slightly larger than the North Brookfield project. For a 12 month period on the King Philip Middle School project, D&W's actual hours were as follows:

| Role | Hours |
| --- | --- |
| Project Manager | 26.9 |
| Project Architect | 56.44 |
| Job Captain | 29.41 |
| Principal | not tracked |
| Total | 112.75 |

The estimated hours that D&W will spend on the North Brookfield project is approximately half the actual hours spent on the King Philip Middle School project, which as set forth above, was a slightly larger project. Based on these figures, it is the Town's position that its projections are fair, perhaps even low, and representative of the number of hours required to complete this project properly and in accordance with the contract documents.

As you may know, when Sciaba defaulted on the project, the Town suspended its contract with D&W. Any work that was performed on the project was then billed on a time card basis from May 30, 2003 to the present time. To date, the Town has been billed $77,457.78 for work performed by D&W through September 19, 2003. D&W estimates that services rendered from September 20, 2003 to January 30, 2004 will be an additional $91,200.00.

KOPELMAN AND PAIGE, P.C.

Deborah S. Griffin, Esq.
November 12, 2003
Page 3

    Please note that the estimate also provides American Manufacturers Insurance Company ("AMMIC") with a credit in the amount of $256,593.38, which represents the unpaid balance on the original contract between the Town and D&W. As a result, while the breakdown lists additional services, including amounts for civil engineering, abatement monitoring, food service, furniture and equipment procurement, Chapter 17 testing and technology procurement, please note that these costs are included in the credit and are not additional costs attributable to Sciaba's default.

    Based upon our discussions at our October 15, 2003 meeting, it is my understanding that AMMIC objects to the amount that the Town is seeking for additional design, project management and legal costs. To date, however, AMMIC has not specifically informed the Town as to the reasons for its objections and has not disclosed any facts to support any objections that it may have to the Town's figures. As you know, AMMIC is responsible for any additional legal, design, professional and delay costs resulting from Sciaba's default, in addition to the costs for completing the contract and correcting any defective work, pursuant to paragraph 6 of the Performance Bond. Despite this clear obligation to the Town, AMMIC has not identified any basis for its failure to pay the Town amounts for which the Town is clearly entitled. It is the Town's position that this conduct may constitute a violation of G.L. c.93A and G.L. c.176D, §3(9)(a, b, c, d, e, f, g, h, m and n). Therefore, kindly provide me with all reasons to support AMMIC's refusal to pay the Town's claims for additional architectural construction management and legal costs, along with a detailed statement of facts which supports AMMIC's rationale at your earliest convenience.

    If you have any questions, please do not hesitate to contact me.

Very truly yours,

Thomas W. McEnaney

TWM/kad
Enc.
cc:    Board of Selectmen
       School Building Committee
       Mr. Lee Dore

206228/NBRO/0017

11/12/03  10:59 FAX 6176541735          KOPELMAN AND PAIGE PC                              ☑005

**North Brookfield Jr./Sr. High School**
Estimated Fee to complete project between Dore and Whittier and N. Brookfield

| | Phase 1 Substantial Completion 6/30/03 | Phase 2 Substantial Completion 10/31/03 | 90 days beyond Substantial Comletion 1/31/04 | |
|---|---|---|---|---|

**Additional Time Duration Breakdown**

| | DW's Contract with NBHS expires on: 31-Jan-04 | Phase 1 Substantial Completion Date under Completion Contractor 30-Apr-04 | Phase 2 Substantial Completion Date under Completion Contractor 30-Aug-04 | DW Contract with Owner is for 90 days beyond final substantial completion date 30-Nov-04 |
|---|---|---|---|---|
| # of Weeks | | 13 | 30 | 43 |
| # of months | | 3.25 | 7.5 | 10.75 |

**Basic A/E Services ***

| Work Group | Hourly Rate | Hours Per Week | Estimated # of weeks to complete | Estimated Cost | Cost Per Month |
|---|---|---|---|---|---|
| Project Manager | $116 | 18 | 43 | $89,397 | |
| Job Capatain | $102 | 18 | 43 | $78,892 | |
| Project Architect or Engineer | $105 | 16 | 43 | $72,240 | |
| Principal | $126 | 4 | 43 | $21,672 | |

*punchlist and initiating close-out procedures*

| Total Estimated Basic A/E Cost to Complete | | | | $282,141 | $24,385.20 |
|---|---|---|---|---|---|

**Additional Services**

| | |
|---|---|
| Civil | $20,556.25 |
| Abatement Monitoring | $28,405.00 |
| Food Service | $3,000.00 |
| F&E Procurement | $44,275.00 |
| Ch. 17 Testing | $10,000.00 |
| Technology Procurement | $32,588.00 |
| Total Estimated Additional Services Cost to Complete | $138,822.25  $12,213.70 |

**Reimbursable Expenses**

| | |
|---|---|
| Lump Sum Reimbursable Expenses | $18,750.00  $1,744.19 |

**Construction Management**

| Work Group | Hourly Rate | Hours Per Week | Estimated # of weeks to complete | Estimated Cost |
|---|---|---|---|---|
| Construction Manager | 115 | 50 | 43 | $247,250.00 |
| Total Estimated Additional Services Cost to Complete | | | | $247,250.00  $23,000.00 |

**Additive Cost Summary**

| | |
|---|---|
| Total Estimated Costs for Completion 1/31/04 - 11/30/04 | $686,983.15 |
| Total Invoices Billed to Owner as Time Card Services from 5/30/03 - 9/19/03 (16 weeks @ avg. of $4,800 per week) | $77,457.78 |
| Total Invoices TO BE billed from 9/20/03 to 1/30/04 (19 weeks @ avg. of $4,800 per week) | $91,200.00 |
| **Credit Cost Summary** | |
| Balance (as of 9/19/03) in Owner's Budget for CM, Basic A/E, Add'l Services & Reimbursables | ($256,593.38) |

Estimated ADDITIONAL COSTS TO OWNER