**EXHIBIT  31**

Law Offices

# HOLLAND & KNIGHT LLP

10 St. James Avenue
Boston, Massachusetts 02116

617-523-2700
FAX 617-523-6850
http://www.hklaw.com

| | |
|---|---|
| Annapolis | Oakbrook |
| Atlanta | Orlando |
| Bethesda | Portland |
| Boston | Providence |
| Bradenton | San Antonio |
| Chicago | San Francisco |
| Fort Lauderdale | Seattle |
| Jacksonville | St. Petersburg |
| Lakeland | Tallahassee |
| Los Angeles | Tampa |
| Miami | Washington, D.C. |
| New York | West Palm Beach |
| Northern Virginia | |

International Offices:
Caracas*       São Paulo
Helsinki       Tel Aviv*
Mexico City    Tokyo
Rio de Janeiro    *Representative Offices

November 12, 2003

DEBORAH S. GRIFFIN
617-305-2044

Internet Address:
deborah.griffin@hklaw.com

*BY HAND*

Thomas W. McEnaney, Esq.
Kopelman & Paige, P.C.
31 St. James Avenue, 7th Floor
Boston, MA 02116

EXHIBIT
Murray
92
4-29-05    KQ

| | | |
|---|---|---|
| Re: | *North Brookfield Intermediate & Senior High School Project* | |
| | *Surety:* | *American Manufacturers Mutual Insurance Co.* |
| | *Bond No.:* | *3SE 057 856* |
| | *Claim No.:* | *167-SE-002-989* |

Dear Tom:

As you know, the Town and the Surety have not concluded their negotiations concerning the amounts of the Town's claims against the Surety and the Surety's defenses to those claims. We are still awaiting all the detail regarding the professional fees which your letter of November 3 indicated you have. The Surety accepts the figure of $440.00 for CCD #3 set forth in your November 3 letter. We still need to address the other issues raised in that letter, as well as my letter to you of November 5.

In the meantime, the surety has completed its review of the bids from prospective completion contractors, including revised figures submitted by each bidder as its "best and final" submittal. The surety has concluded that the submittal of Fontaine Bros., Inc., in the amount of $11,381,362.00, is the submittal that best conforms to the request for proposals at the best price.

I am enclosing two originals of the Completion Contract executed by Fontaine Bros., Inc., as well as its performance and payment bonds and Certificate of Liability Insurance. The surety urges the Town to (1) accept and



Thomas W. McEnaney, Esq.
November 12, 2003
Page 2

execute the Fontaine Bros. Completion Contract and (2) promptly issue a Notice
to Proceed to Fontaine Bros. As stated in the email from Fontaine's counsel I
forwarded to you yesterday, Fontaine has transmitted these documents to us
with the caveat that they must have a Notice to Proceed by November 14.
Taking these steps will mitigate the Town's damages resulting from Sciaba's
default, as the Town is obligated to do, pending a conclusion of our negotiations.

I have received your email of earlier today in which you state, among
other things, that "the Town cannot enter into a contract unless sufficient funds
have been appropriated therefor" and that "the Town cannot sign any
completion contract until we have the additional funds from the surety." The
Surety does not accept lack of appropriation by the Town as a valid reason for
the Town not to enter into the tendered contract with Fontaine. The Town has
known since August 20 that the Surety believes it has valid and substantial
defenses to a significant portion of the Town's claim and has known since the
second week in September the approximate magnitude of the bids. There has
been ample opportunity for the Town to prepare itself to execute a completion
contract before all the issues between the Surety and the Town are resolved.
Therefore, if the cost to the Town increases because of the Town's inability to
sign the contract now and give Fontaine a Notice to Proceed, that is not an
increase for which the Surety bears any responsibility.

As I stated in an email to you on November 6, 2003, the Surety
understands it will have responsibility for the additional liquidated damages
after the dates that were given in the RFP. It also intends to accept
responsibility for the reasonable cost of addressing latent defects that were
Sciaba's responsibility. Again, these issues should not be an obstacle to the
Town's executing the completion contract with Fontaine.

I have received your faxes of earlier today and have forwarded them to my
client. We will be studying them with a view toward identifying what amount
the Surety will pay unconditionally and what amount remains in dispute. In
light of the approach you have taken to quantifying the Town's claim for
additional design and construction management fees, I would appreciate your
sending me a copy of the Town's contract with Dore & Whittier. I will let you
know if there is still additional information we need.

Please let me know what action the Town takes and provide a copy of the
fully executed Contract.





Thomas W. McEnaney, Esq.
November 12, 2003
Page 3

This letter and its enclosures are sent under a full reservation of rights on the part of American Manufacturers Mutual Insurance Company.

Very truly yours,

HOLLAND & KNIGHT LLP

Deborah S. Griffin

DSG/bsw: # 1339825_v1
431261.00002
Enclosures
cc:    Stephen J. Beatty, Esq. (w/encl.)
       Richard P. Anastasio, P.E. (w/encl.)
       Kieran B. Meagher, Esq. (w/encl.)
       Robert P. Garrity, Esq. (w/o encl.)



## COMPLETION CONTRACT

THIS COMPLETION CONTRACT (the "Completion Contract") is entered into this _____ day of _____, 2003, by and between the Town of North Brookfield (the "Town") and Fontaine Bros., Inc. (the "Completion Contractor").

### RECITALS:

WHEREAS, on or about April 19, 2002, E.J. Sciaba Contracting Co., Inc. (the "Former Contractor"), and the Town entered into a contract (the "Original Contract") for construction of the Junior/Senior High School, North Brookfield, Massachusetts (the "Project"), in accordance with the terms and provisions of the Original Contract, including all contract documents forming a part of the Original Contract, as amended;

WHEREAS, the Former Contractor voluntarily defaulted or otherwise indicated its inability to perform the Project, and the Owner has called upon the Surety to fulfill its obligations as surety under the terms of the Performance Bond;

WHEREAS, the Town has terminated the right of the Former Contractor to perform the Original Contract; and

WHEREAS, the Town and the Completion Contractor desire to enter into this Completion Contract under the terms and conditions hereinafter set forth;

NOW, THEREFORE, the Town and the Completion Contractor, for and in consideration of the mutual obligations and promises hereinafter set forth, do contract and agree as follows:

### AGREEMENTS:

1.    **Completion Contract Documents.** This Completion Contract consists of the terms and provisions contained herein and the Original Contract, including the Project Schedule, all General, Supplementary and Special Conditions, drawings, specifications, forms, addenda and documents forming a part of the Original Contract, and any approved change orders, construction change directives, amendments and modifications thereto, the scope of work set forth in the Request for Proposals pursuant to which the Completion Contractor bid and was selected, and the items of deficient work listed in the Deficiency Log dated August 29, 2003 and the Steel Field Repair Log dated August 29, 2003, and all subsequently approved amendments and modifications

1



thereto, all of which are incorporated herein by reference and which are hereinafter referred to collectively as the "Contract Documents."

2. **Strict Compliance.** The Completion Contractor shall be bound to the Town by all of the terms and provisions of the Contract Documents, including administrative as well as technical provisions, and shall strictly comply therewith in all respects.

3. **Work to be Performed.** The Completion Contractor shall furnish and pay for all labor, materials, services and equipment and shall do everything else necessary to perform and satisfactorily complete the Original Contract as required by the Contract Documents as defined above.

4. **Time for the Performance of the Work.** The Completion Contractor shall commence work within five (5) days after receipt of a written Notice to Proceed issued by the Town, and shall substantially complete all work in accordance with the terms and conditions of the Contract Documents on or before August 15, 2004, except that the completion of Phase 4 parking lot and related work that, under Section 3.3 of the Original Contract (prior to any time extensions), was required to be performed by "17 November 2003" shall be complete on or before October 1, 2004. Subject to allowable time extensions as provided under the terms of the Original Contract, if the Completion Contractor fails to complete the work under the Completion Contract in the times allowed by this paragraph, the Completion Contractor is liable to the Town for all liquidated damages as provided for under the Original Contract on account of the Completion Contractor's failure to complete such work by the date of completion set forth herein.

5. **Price.** The Town shall pay to the Completion Contractor and the Completion Contractor agrees to receive and accept $11,527,000 (the "Fixed Price") as full compensation for the performance and completion of the work as described in the Contract Documents, except as otherwise provided herein. Future applications for payment shall be made based upon the Completion Contractor's schedule of values to be submitted within 10 days after receipt of a Notice to Proceed.

6. **Latent Defects.** The Completion Contractor shall be entitled to additional compensation on a time and materials basis, in accordance with the terms hereof, for correcting defects in the work performed by the Former Contractor that are not shown in the Contract Documents as defined above or which were not or could not have been observed by the Completion Contractor in the course of its visits to the Project prior hereto (the amounts for which the Completion Contractor is entitled to payment on a time and materials basis being the "T&M Price"). The T&M Price shall consist of the actual costs paid by the Completion Contractor for such work, less all discounts, rebates, and salvages that shall be taken by the Completion Contractor, plus a fifteen percent (15%) markup which shall be inclusive of the Completion Contractor's overhead and profit. The actual costs shall include only the following: the cost of all materials used or consumed in performance, including sales tax and cost of delivery; cost of labor, including social security, old age and unemployment insurance, fringe benefits, and workers' compensation insurance for persons working at the Project site (but not for project management personnel, corporate management personnel or any persons whose regular office is located other than at the Project site); bond premiums; and rental cost of equipment and machinery.



2

7.    **Performance and Payment Bonds.** The Completion Contractor shall provide the Town with Performance and Payment Bonds each in a penal sum equal to the Fixed Price in a form acceptable to the Town prior to the Completion Contractor commencing work. The Completion Contractor's surety must be a commercial surety company currently listed with the U.S. Department of the Treasury and licensed to conduct business in the Commonwealth of Massachusetts.

8.    **Whole Agreement.** This Completion Contract contains the entire understandings and agreements of the parties hereto. All oral or written agreements prior to the effective date of this Completion Contract and which relate to this Completion Contract and the matters set forth herein are declared null and void. Any modification of this Completion Contract must be made in writing and executed by the parties hereto.

9.    **Interpretation.** In the event that there is any provision of this Completion Contract which is inconsistent or conflicting with any other documents forming a part of this Completion Contract, including but not limited to the Original Contract referred to herein, the terms and conditions of this Completion Contract shall govern and control.

10.    **Governing Law.** This Completion Contract is executed pursuant to and governed by the laws of the Commonwealth of Massachusetts.

11.    **Notice.** Any notice required to be made under the terms of this Completion Contract shall be deemed made if either party transmits such notice via facsimile and first class mail, postage pre-paid, as follows:

As to the Completion Contractor:

Fontaine Bros., Inc.
510 Cottage Street
Springfield, MA 01104
Fax: 413-734-1881
Telephone:   413-781-2020
        Attn: Christopher J. Fontaine

As to the Town:

Robert O'Neill
Superintendent of Schools
Town of North Brookfield
10 New School Street
North Brookfield, MA 01535
Fax: (508) _____

3

**With a copy to**:
Thomas W. McEnaney, Esq.
Kopelman and Paige, P.C.
31 St. James Avenue
Boston, MA 02116-4102
Fax No.: (617) 654-1735
Telephone:    (617) 556-0007

12.    **Construction of Contract.**  It is understood and agreed by the Town and the Completion Contractor that this Completion Contract shall be construed without any regard to any presumption or other rule requiring construction against the party causing this Completion Contract, or any Exhibits attached to this Completion Contract, to be drafted.

13.    **Execution in Counterparts.**  This Completion Contract may be executed in one or more counterparts, each of which shall be deemed to be an original.

IN WITNESS WHEREOF, the parties hereto have affixed their hands and seals to this Completion Contract the day and year first set forth above, and the individuals who execute this Completion Contract personally represent and warrant that they have full authority to execute this Completion Contract on behalf of the respective parties.

**WITNESS:**

_____

**Fontaine Bros., Inc.**

By: _____ (SEAL)

Title: _____

**WITNESS:**

_____

**Town of North Brookfield**

By: _____ (SEAL)

Title: _____

# 1351093_v1
431261.00002

4

# THE AMERICAN INSTITUTE OF ARCHITECTS



---

Executed in Four (4) Counterparts                          Bond No.    81833249

---

*AIA Document A311*

# Performance Bond

---

KNOW ALL MEN BY THESE PRESENTS: that  Fontaine Bros., Inc.

(Here insert full name and address or legal title of Contractor)

510 Cottage Street Springfield, MA  01104

as Principal, hereinafter called Contractor, and,       Federal Insurance Company

(Here insert full name and address or legal title of Surety)

3 Mountain View Road,  Warren, NJ  07059

as Surety, hereinafter called Surety, are held and firmly bound unto Town of North Brookfield

(Here insert full name and address or legal title of Owner)

10 New School Drive  North Brookfield, MA  01535

as Obligee, hereinafter called Owner, in the amount of  Eleven Million Five Hundred Twenty Seven Thousand
Dollars and 00/100                                          Dollars ($  11,527,000.00                ),

for the payment whereof Contractor and Surety bind themselves, their heirs, executors, administrators,
successors and assigns, jointly and severally, firmly by these presents.

WHEREAS,

Contractor has by written agreement dated                              , entered into a contract with Owner
for
(Here insert full name, address and description of project)
North Brookfield Junior & Senior High School - Earthwork, Concrete, Steel and Masonry

in accordance with Drawings and Specifications prepared by

(Here insert full name and address or legal title of Architect)



which contract is by reference made a part hereof, and is hereinafter referred to as the Contract.

---

AIA DOCUMENT A311  •  PERFORMANCE BOND AND LABOR AND MATERIAL PAYMENT BOND  •  AIA ®
FEBRUARY 1970 ED.  • THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 N.Y. AVE., N.W., WASHINGTON, D.C. 20006

1



# PERFORMANCE BOND

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Contractor shall promptly and faithfully perform said Contract, then this obligation shall be null and void; otherwise it shall remain in full force and effect.

The Surety hereby waives notice of any alteration or extension of time made by the Owner.

Whenever Contractor shall be, and declared by Owner to be in default under the Contract, the Owner having performed Owner's obligations thereunder, the Surety may promptly remedy the default, or shall promptly

1) Complete the Contract in accordance with its terms and conditions, or

2) Obtain a bid or bids for completing the Contract in accordance with its terms and conditions, and upon determination by Surety of the lowest responsible bidder, or, if the Owner elects, upon determination by the Owner and the Surety jointly of the lowest responsible bidder, arrange for a contract between such bidder and Owner, and make available as Work progresses (even though there should be a default or a succession of defaults under the contract or contracts of completion arranged under this paragraph) sufficient funds to pay the cost of completion less the balance of the contract price; but not exceeding, including other costs and damages for which the Surety may be liable hereunder, the amount set forth in the first paragraph hereof. The term "balance of the contract price," as used in this paragraph, shall mean the total amount payable by Owner to Contractor under the Contract and any amendments thereto, less the amount properly paid by Owner to Contractor.

Any suit under this bond must be instituted before the expiration of two (2) years from the date on which final payment under the Contract falls due.

No right of action shall accrue on this bond to or for the use of any person or corporation other than the Owner named herein or the heirs, executors, administrators or successors of the Owner.

Signed and sealed this                 11th                 day of     November, 2003.

ATTEST:

By: _____
(Witness)

Fontaine Bros., Inc.
                                                (Principal)                    (Seal)

By: _____
                                                (Title)

WITNESS:

By: Josephine Griffin
(Witness)

Federal Insurance Company
                                                (Surety)                       (Seal)

By: Kathleen M. Flanagan
                                                (Title)
Kathleen M. Flanagan                    Attorney-in-Fact

# THE AMERICAN INSTITUTE OF ARCHITECTS



Bond No.    81833249

AIA Document A311

# Labor and Material Payment Bond

THIS BOND IS ISSUED SIMULTANEOUSLY WITH PERFORMANCE BOND IN FAVOR OF THE
OWNER CONDITIONED ON THE FULL AND FAITHFUL PERFORMANCE OF THE CONTRACT

KNOW ALL MEN BY THESE PRESENTS: that  Fontaine Bros., Inc.

(Here insert full name and address or legal title of Contractor)

510 Cottage Street Springfield, MA  01104

as Principal, hereinafter called Principal, and,     Federal Insurance Company

(Here insert full name and address or legal title of Surety)

3 Mountain View Road,  Warren, NJ  07059

as Surety, hereinafter called Surety, are held and firmly bound unto   Town of North Brookfield

(Here insert full name and address or legal title of Owner)

10 New School Drive  North Brookfield, MA  01535

as Obligee,  hereinafter called Owner,  for the use and benefit of claimants as hereinbelow defined,  in the

amount of  Eleven Million Three Hundred Eighty One Thousand Three Hundred Sixty Two Dollars and 00/100

(Here insert a sum equal to at least one-half of the contract price)        Dollars ($  11,381,362.00                ),

for the payment whereof Principal and Surety bind themselves, their heirs, executors, administrators,
successors and assigns, jointly and severally, firmly by these presents.

WHEREAS,

Principal has by written agreement dated                                    , entered into a contract with Owner
for

(Here insert full name, address and description of project)

North Brookfield Junior & Senior High School - Earthwork, Concrete, Steel and Masonry

in accordance with Drawings and Specifications prepared by

(Here insert full name and address or legal title of Architect)

which contract is by reference made a part hereof, and is hereinafter referred to as the Contract.

AIA DOCUMENT A311  •  PERFORMANCE BOND AND LABOR AND MATERIAL PAYMENT BOND  •  AIA ®
FEBRUARY 1970 ED.  •  THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 N.Y. AVE., N.W., WASHINGTON, D.C. 20006

1

# LABOR AND MATERIAL PAYMENT BOND

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Principal shall promptly make payment to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the Contract, then this obligation shall be void, otherwise it shall remain in full force and effect, subject, however, to the following conditions:

1. A claimant is defined as one having a direct contract with the Principal or with a Subcontractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the Contract, labor and material being construed to include that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the Contract.

2. The above named Principal and Surety hereby jointly and severally agree with the Owner that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon. The owner shall not be liable for the payment of any costs or expenses of any such suit.

3. No suit or action shall be commenced hereunder by any claimant:

a) Unless claimant, other than one having a direct contract with the Principal, shall have given written notice to any two of the following: the Principal, the Owner, or the Surety above named, within ninety (90) days after such claimant did or performed the last of the work or labor, or furnished the last of the materials for which said claim is made, stating with substantial accuracy the amount claimed

and the name of the party to whom the materials were furnished, or for whom the work or labor was done or performed. Such notice shall be served by mailing the same by registered mail or certified mail, postage prepaid, in an envelope addressed to the Principal, Owner or Surety, at any place where an office is regularly maintained for the transaction of business, or served in any manner in which legal process may be served in the state in which the aforesaid project is located, save that such service need not be made by a public officer.

b) After the expiration of one (1) year following the date on which principal ceased Work on said Contract, it being understood, however, that if any limitation embodied in this bond is prohibited by any law controlling the construction hereof such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

c) Other than in state court of competent jurisdiction in and for the county or other political subdivision of the state in which the Project, or any part thereof, is situated, or in the United States District Court for the district in which the Project, or any part thereof, is situated, and not elsewhere.

4. The amount of this bond shall be reduced by and to the extent of any payment or payments made in good faith hereunder, inclusive of the payment by Surety or mechanics'. liens which may be filed of record against said improvement, whether or not claim for the amount of such lien be presented under and against this bond.

Signed and sealed this     11th     day of    November, 2003.

ATTEST:

By: _____
         (Witness)

Fontaine Bros., Inc.
        (Principal)          (Seal)

By: _____
         (Title)      PRES

WITNESS:

By: _____
         (Witness)

Federal Insurance Company
        (Surety)          (Seal)

By: _____
         (Title)

Kathleen M. Flanagan          Attorney-in-Fact

AIA DOCUMENT A311 • PERFORMANCE BOND AND LABOR AND MATERIAL PAYMENT BOND • AIA ®
FEBRUARY 1970 ED. • THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 N.Y. AVE., N.W., WASHINGTON, D.C. 20006

2

This Notice pertains to the following Surety Bond Issued by a member Insurer of the Chubb Group of Insurance Companies, including Federal Insurance Company, Vigilant Insurance Company and Pacific Indemnity Company.

Bond Number: 81833249

## POLICYHOLDER DISCLOSURE NOTICE
## TERRORISM RISK INSURANCE ACT OF 2002

You are hereby notified that pursuant to the Terrorism Risk Insurance Act of 2002 (the "Act") effective November 26, 2002, we are making available to you coverage for losses arising out of certain acts of international terrorism. Terrorism is defined as any act certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States Mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Coverage for acts of terrorism is already included in the captioned Surety Bond.

You should know that, effective November 26, 2002, any losses caused by acts of terrorism covered by your Surety Bond will be partially reimbursed by the United States under the formula set forth in the Act. Under this formula, the United States of America pays 90% of covered terrorism losses that exceed the statutorily established deductible to be paid by the insurance company providing the coverage. The portion of your premium that is attributable to coverage for such acts of terrorism is zero, because we could not distinguish (and separately charge for) acts of terrorism from other causes of loss when we calculated your premium.

If you have any questions about this notice, please contact your agent or broker.





| **Chubb Surety** | **POWER OF ATTORNEY** | **Federal Insurance Company** **Vigilant Insurance Company** **Pacific Indemnity Company** | **Attn.: Surety Department** **15 Mountain View Road** **Warren, NJ 07059** |

**Know All by These Presents**, That FEDERAL INSURANCE COMPANY, an Indiana corporation, VIGILANT INSURANCE COMPANY, a New York corporation, and PACIFIC INDEMNITY COMPANY, a Wisconsin corporation, do each hereby constitute and appoint **Gary J. Giulietti, Kathleen M. Flanagan, Richard A. Leveroni and Bette A. Botticello of Farmington, Connecticut**——————————————————————————————————————————————

each as their true and lawful Attorney-in-Fact to execute under such designation in their names and to affix their corporate seals to and deliver for and on their behalf as surety thereon or otherwise, bonds and undertakings and other writings obligatory in the nature thereof (other than bail bonds) given or executed in the course of business, and any instruments amending or altering the same, and consents to the modification or alteration of any instrument referred to in said bonds or obligations.

**In Witness Whereof**, said FEDERAL INSURANCE COMPANY, VIGILANT INSURANCE COMPANY, and PACIFIC INDEMNITY COMPANY have each executed and attested these presents and affixed their corporate seals on this **27th day of March, 2003.**

_Kenneth C. Wendel_
Kenneth C. Wendel, Assistant Secretary

_Frank E. Robertson_
Frank E. Robertson, Vice President

STATE OF NEW JERSEY }
County of Somerset } ss.

On this **27th** day of **March, 2003**, before me, a Notary Public of New Jersey, personally came Kenneth C. Wendel, to me known to be Assistant Secretary of FEDERAL INSURANCE COMPANY, VIGILANT INSURANCE COMPANY, and PACIFIC INDEMNITY COMPANY, the companies which executed the foregoing Power of Attorney, and the said Kenneth C. Wendel being by me duly sworn, did depose and say that he is Assistant Secretary of FEDERAL INSURANCE COMPANY, VIGILANT INSURANCE COMPANY, and PACIFIC INDEMNITY COMPANY and knows the corporate seals thereof, that the seals affixed to the foregoing Power of Attorney are such corporate seals and were thereto affixed by authority of the By-Laws of said Companies; and that he signed said Power of Attorney as Assistant Secretary of said Companies by like authority; and that he is acquainted with Frank E. Robertson, and knows him to be Vice President of said Companies; and that the signature of Frank E. Robertson, subscribed to said Power of Attorney is in the genuine handwriting of Frank E. Robertson, and was thereto subscribed by authority of said By-Laws and in deponent's presence.

[Notary seal]
MARIA D. SCARDIGNO
Notary Public State of New Jersey
No. 2229781
Commission Expires Sept. 25, 2004

_Maria D. Scardigno_
Notary Public

**CERTIFICATION**

Extract from the By-Laws of FEDERAL INSURANCE COMPANY, VIGILANT INSURANCE COMPANY, and PACIFIC INDEMNITY COMPANY:

"All powers of attorney for and on behalf of the Company may and shall be executed in the name and on behalf of the Company, either by the Chairman or the President or a Vice President or an Assistant Vice President, jointly with the Secretary or an Assistant Secretary, under their respective designations. The signature of such officers may be engraved, printed or lithographed. The signature of each of the following officers: Chairman, President, any Vice President, any Assistant Vice President, any Secretary, any Assistant Secretary and the seal of the Company may be affixed by facsimile to any power of attorney or to any certificate relating thereto appointing Assistant Secretaries or Attorneys-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such power of attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding upon the Company with respect to any bond or undertaking to which it is attached."

I, Kenneth C. Wendel, Assistant Secretary of FEDERAL INSURANCE COMPANY, VIGILANT INSURANCE COMPANY, and PACIFIC INDEMNITY COMPANY (the "Companies") do hereby certify that

(i) the foregoing extract of the By-Laws of the Companies is true and correct,

(ii) the Companies are duly licensed and authorized to transact surety business in all 50 of the United States of America and the District of Columbia and are authorized by the U. S. Treasury Department; further, Federal and Vigilant are licensed in Puerto Rico and the U. S. Virgin Islands, and Federal is licensed in American Samoa, Guam, and each of the Provinces of Canada except Prince Edward Island; and

(iii) the foregoing Power of Attorney is true, correct and in full force and effect.

Given under my hand and seals of said Companies at Warren, NJ this **11th** day of **November, 2003**

  

_Kenneth C. Wendel_
Kenneth C. Wendel, Assistant Secretary

**IN THE EVENT YOU WISH TO NOTIFY US OF A CLAIM, VERIFY THE AUTHENTICITY OF THIS BOND OR NOTIFY US OF ANY OTHER MATTER, PLEASE CONTACT US AT ADDRESS LISTED ABOVE, OR BY**
**Telephone (908) 903-3485       Fax (908) 903-3656       e-mail: surety@chubb.com**

15-10-0225 (Ed. 4-99) CONSENT

Client#: 19758     FONBR

# ACORD™ CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)** 11/6/03

| PRODUCER | THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. | |
|---|---|---|
| James J. Dowd & Sons Ins<br>14 Bobala Road<br>P.O. Box 10300<br>Holyoke, MA 01041 | **INSURERS AFFORDING COVERAGE** | **NAIC #** |
| **INSURED**<br>   Fontaine Bros. Inc.<br>   510 Cottage Street<br>   Springfield, MA 01104 | INSURER A: OneBeacon America Ins. Co | |
| | INSURER B: Acadia Ins. Co. | |
| | INSURER C: | |
| | INSURER D: | |
| | INSURER E: | |

## COVERAGES

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | ADD'L INSRD | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|---|
| | | **GENERAL LIABILITY** | | | | EACH OCCURRENCE | $ |
| | |   COMMERCIAL GENERAL LIABILITY | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | |   ☐ CLAIMS MADE  ☐ OCCUR | | | | MED EXP (Any one person) | $ |
| | | | | | | PERSONAL & ADV INJURY | $ |
| | | | | | | GENERAL AGGREGATE | $ |
| | | GEN'L AGGREGATE LIMIT APPLIES PER:<br>☐ POLICY ☐ PRO-JECT ☐ LOC | | | | PRODUCTS - COMP/OP AGG | $ |
| A | | **AUTOMOBILE LIABILITY**<br>  ☐ ANY AUTO<br>  ☐ ALL OWNED AUTOS<br>  ☒ SCHEDULED AUTOS<br>  ☒ HIRED AUTOS<br>  ☒ NON-OWNED AUTOS | CBXE46527 | 05/01/03 | 05/01/04 | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 |
| | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | **GARAGE LIABILITY**<br>  ☐ ANY AUTO | | | | AUTO ONLY - EA ACCIDENT | $ |
| | | | | | | OTHER THAN   EA ACC<br>AUTO ONLY:   AGG | $<br>$ |
| | | **EXCESS/UMBRELLA LIABILITY**<br>  ☐ OCCUR  ☐ CLAIMS MADE | | | | EACH OCCURRENCE | $ |
| | | | | | | AGGREGATE | $ |
| | |   ☐ DEDUCTIBLE | | | | | $ |
| | |   ☐ RETENTION  $ | | | | | $ |
| B | | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY**<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED?<br>If yes, describe under SPECIAL PROVISIONS below | WCA009926210 | 10/01/03 | 10/01/04 | ☒ WC STATU-TORY LIMITS ☐ OTH-ER | |
| | | | | | | E.L. EACH ACCIDENT | $500,000 |
| | | | | | | E.L. DISEASE - EA EMPLOYEE | $500,000 |
| | | | | | | E.L. DISEASE - POLICY LIMIT | $500,000 |
| | | **OTHER** | | | | | |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES / EXCLUSIONS ADDED BY ENDORSEMENT / SPECIAL PROVISIONS**

*20 Days on Automobile for NonPayment
Job: North Brookfield Junior & Senior High School, New School Drive, North Brookfield, MA 01535

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Town of North Brookfield<br>Office of the Supt of Schools<br>10 New School Drive<br>North Brookfield, MA 01535 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL __30*__ DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES.<br>**AUTHORIZED REPRESENTATIVE**<br>_Thomas M. Griffin_ |

ACORD 25 (2001/08) 1 of 2     #S41213/M40936     CAS     © ACORD CORPORATION 1988

# ACORD™ CERTIFICATE OF LIABILITY INSURANCE

01/31/2004

| | DATE (MM/DD/YY) |
|---|---|
| | 11/07/2003 |

| PRODUCER | |
|---|---|
| Lockton Companies<br>80 Scott Swamp Rd., Suite 202<br>Farmington CT 06032<br>860-678-4000 | **THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY, AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.** |

| | INSURERS AFFORDING COVERAGE |
|---|---|
| **INSURED**<br>1027409  Fontaine Bros., Inc.<br>510 Cottage Street<br>Springfield MA 01104 | INSURER A: Liberty Surplus Insurance |
| | INSURER B: American Int'l Specialty Lines |
| | INSURER C: |
| | INSURER D: |
| | INSURER E: |

## COVERAGES    97

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY**<br>X COMMERCIAL GENERAL LIABILITY<br>☐ CLAIMS MADE  X OCCUR | EGLB0078906-012 | 01/31/2003 | 01/31/2004 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | FIRE DAMAGE (Any one fire) | $ 300,000 |
| | | | | | MED EXP (Any one person) | $ XXXXXXX |
| | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER:<br>☐ POLICY  X PRO-JECT  ☐ LOC | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | **AUTOMOBILE LIABILITY**<br>☐ ANY AUTO<br>☐ ALL OWNED AUTOS<br>☐ SCHEDULED AUTOS<br>☐ HIRED AUTOS<br>☐ NON-OWNED AUTOS | NOT APPLICABLE | | | COMBINED SINGLE LIMIT (Ea accident) | $ XXXXXXX |
| | | | | | BODILY INJURY (Per person) | $ XXXXXXX |
| | | | | | BODILY INJURY (Per accident) | $ XXXXXXX |
| | | | | | PROPERTY DAMAGE (Per accident) | $ XXXXXXX |
| | **GARAGE LIABILITY**<br>☐ ANY AUTO | NOT APPLICABLE | | | AUTO ONLY - EA ACCIDENT | $ XXXXXXX |
| | | | | | OTHER THAN  EA ACC | $ XXXXXXX |
| | | | | | AUTO ONLY:  AGG | $ XXXXXXX |
| B | **EXCESS LIABILITY**<br>X OCCUR  ☐ CLAIMS MADE<br>☐ DEDUCTIBLE  ☐ UMBRELLA FORM<br>☐ RETENTION  $ | BE 7413521 | 01/31/2003 | 01/31/2004 | EACH OCCURRENCE | $ 25,000,000 |
| | | | | | AGGREGATE | $ 25,000,000 |
| | | | | | | $ XXXXXXX |
| | | | | | | $ XXXXXXX |
| | | | | | | $ XXXXXXX |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** | NOT APPLICABLE | | | WC STATU-TORY LIMITS ☐  OTH-ER ☐ | |
| | | | | | E.L. EACH ACCIDENT | $ XXXXXXX |
| | | | | | E.L. DISEASE - EA EMPLOYEE | $ XXXXXXX |
| | | | | | E.L. DISEASE - POLICY LIMIT | $ XXXXXXX |
| | **OTHER** | | | | | |

**DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/EXCLUSIONS ADDED BY ENDORSEMENT/SPECIAL PROVISIONS**
The Town of North Brookfield, Dore and Whittier Inc and the American Manufacturers Mutual Insurance Company are included as Additional Insureds with regards to General Liability but only in conjunction to the work performed by the Named Insured at the Nroth Brookfield Junior and Senior Highschool located at New School Drive, North Brookfield, MA

| CERTIFICATE HOLDER | ADDITIONAL INSURED; INSURER LETTER: ___ | CANCELLATION |
|---|---|---|
| 1908572<br>Town of North Brookfield<br>Office of the Superintendant of Schools<br>10 New School Drive<br>North Brookfield MA 01535 | | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL  30  DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES.<br>AUTHORIZED REPRESENTATIVE |

ACORD 25-S (7/97)                                    © ACORD CORPORATION 1988

**EXHIBIT  32**

Law Offices

# HOLLAND & KNIGHT LLP

10 St. James Avenue
Boston, Massachusetts 02116

617-523-2700
FAX 617-523-6850
http://www.hklaw.com

Annapolis          Oakbrook
Atlanta            Orlando
Bethesda           Portland
Boston             Providence
Bradenton          San Antonio
Chicago            San Francisco
Fort Lauderdale    Seattle
Jacksonville       St. Petersburg
Lakeland           Tallahassee
Los Angeles        Tampa
Miami              Washington, D.C.
New York           West Palm Beach
Northern Virginia

International Offices:    São Paulo
Caracas*                 Tel Aviv*
Helsinki                 Tokyo
Mexico City
Rio de Janeiro           *Representative Offices

November 14, 2003

**DEBORAH S. GRIFFIN**
617-305-2044

Internet Address:
deborah.griffin@hklaw.com

*__VIA FACSIMILE__*
*__(617) 754-1735 and__*
*__First Class Mail__*

Thomas W. McEnaney, Esq.
Kopelman & Paige, P.C.
31 St. James Avenue, 7th Floor
Boston, MA  02116

> Re:   *North Brookfield Intermediate & Senior High School Project*
> *Surety:*        *American Manufacturers Mutual Insurance Co.*
> *Bond No.:*      *3SE 057 856*
> *Claim No.:*     *167-SE-002-989*

Dear Tom:

Your letter dated November 11, 2003, arrived by fax at 4:16 p.m. on November 12, 2003.  There is much in your letter with which we disagree.  I will address some of the key points; please do not assume that we concur with any point not specifically addressed in this letter.

Your complaint in the first paragraph that "we do not have completion contract, we do not have a tender agreement, nor do we have an offer from AMMIC on items such as architectural and engineering services, construction management services and legal services for which AMMIC is undeniably liable under the terms of the Performance Bond" is unwarranted:

The Town <u>does</u> have a completion contract.

The fact that the surety has tendered a completion contract without a tender agreement is of no consequence.  Although it would prefer to have an agreement, such is not a requirement under the bond.

Thomas W. McEnaney, Esq.
November 14, 2003
Page 2

AMMIC does not dispute that it has liability under Section 6.2 for "additional legal, design profession and delay costs resulting from the Contractor's Default." The question is the amount of that liability. You first gave us a figure for those costs during our meeting on October 15, 2003, without any breakdown or substantiation, all of which we requested. You delivered some of that information last week and additional information on November 12. In light of the total cost approach you have taken to quantifying the designer's fees, we requested a copy of the Town's contract with the architect, which we have yet to receive. We would also like to receive copies of all prior invoices under that contract. These are reasonable requests and the surety is entitled to a reasonable amount of time to understand the claim and, if it is overstated, to challenge it.

Contrary to your assertion, the bond does not require that the surety "authorize and pay for whatever acceleration costs are necessary to complete the project in a time frame acceptable to the town." Nor are we aware of any provision in the contract that would have required the original contractor to accelerate at its own expense. If you believe there is such a provision, please point it out to us. The contract contains a liquidated damage provision for late substantial completion. The surety intends to meet its obligations under that provision, once it quantifies those obligations. It appears that the surety and the town may have a difference of opinion about that quantification, which, as we have stated before, we will make a good faith effort to resolve by negotiation.

If the Town orders Fontaine Bros. to defer work on demolition, its rights, and the obligations of the Town will be governed by the terms of the contract, which incorporate by reference Mass. G.L. ch. 30 § 30O. We do not believe AMMIC would have any liability for any extra cost to the Town under such circumstances.

The latent defect provision in paragraph 6 of the Completion Contract does not relieve the contractor of the obligation to correct non-latent defects. We believe paragraph 1 of the Completion Contract, together with the RFP, obligates it to do so. Rather, it provides a formula for additional compensation for latent defects, whereas non-latent defects are included in its fixed price. AMMIC is not disclaiming liability for latent defects that were Sciaba's responsibility. Appropriate provision will be made for such liability in whatever resolution is arrived at between the Town and AMMIC.

AMMIC declines to provide a letter of credit as a means of fulfilling its obligations. Its intention is to made a good faith assessment of the amount of its liability, taking into consideration the Town's legitimate claims and AMMIC's legitimate defenses, and to pay that amount to the Town. It will also, as previously stated, make a good faith effort to resolve through negotiation any areas of disagreement the Town may have with AMMIC's determination.

Thomas W. McEnaney, Esq.
November 14, 2003
Page 3

    Once again, AMMIC reminds the Town of its obligation to mitigate damages by executing the tendered Completion Contract with Fontaine and giving them a notice to proceed right away. AMMIC reserves all its rights and defenses.

Very truly yours,

HOLLAND & KNIGHT LLP

Deborah S. Griffin

DSG/bsw: # 1367743_v1

cc:   Stephen J. Beatty, Esq.
      Richard P. Anastasio, P.E.
      Kieran B. Meagher, Esq.

**EXHIBIT  33**



## COMPLETION CONTRACT

THIS COMPLETION CONTRACT (the "Completion Contract") is entered into this
15 day of Dec____, 2003, by and between the Town of North Brookfield (the "Town") and
Fontaine Bros., Inc. (the "Completion Contractor").

### RECITALS:

WHEREAS, on or about April 19, 2002, E.J. Sciaba Contracting Co., Inc. (the "Former
Contractor"), and the Town entered into a contract (the "Original Contract") for construction of
the Junior/Senior High School, North Brookfield, Massachusetts (the "Project"), in accordance
with the terms and provisions of the Original Contract, including all contract documents forming
a part of the Original Contract, as amended;

WHEREAS, the Former Contractor voluntarily defaulted or otherwise indicated its
inability to perform the Project, and the Owner has called upon the Surety to fulfill its
obligations as surety under the terms of the Performance Bond;

WHEREAS, the Town has terminated the right of the Former Contractor to perform the
Original Contract; and

WHEREAS, the Town and the Completion Contractor desire to enter into this
Completion Contract under the terms and conditions hereinafter set forth;

NOW, THEREFORE, the Town and the Completion Contractor, for and in consideration
of the mutual obligations and promises hereinafter set forth, do contract and agree as follows:

### AGREEMENTS:

1. **Completion Contract Documents.** This Completion Contract consists of the terms
and provisions contained herein and the Original Contract, including the Project Schedule, all
General, Supplementary and Special Conditions, drawings, specifications, forms, addenda and
documents forming a part of the Original Contract, and any approved change orders, construction
change directives, amendments and modifications thereto, the scope of work set forth in the
Request for Proposals pursuant to which the Completion Contractor bid and was selected, and the
items of deficient work listed in the Deficiency Log dated August 29, 2003 and the Steel Field
Repair Log dated August 29, 2003, and all subsequently approved amendments and modifications
thereto, all of which are incorporated herein by reference and which are hereinafter referred to
collectively as the "Contract Documents."

EXHIBIT
Murray
96
4-29-05    KQ

2.    **Strict Compliance.**  The Completion Contractor shall be bound to the Town by all of the terms and provisions of the Contract Documents, including administrative as well as technical provisions, and shall strictly comply therewith in all respects.

3.    **Work to be Performed.**  The Completion Contractor shall furnish and pay for all labor, materials, services and equipment and shall do everything else necessary to perform and satisfactorily complete the Original Contract as required by the Contract Documents as defined above.

4.    **Time for the Performance of the Work.**  The Completion Contractor shall commence work within five (5) days after receipt of a written Notice to Proceed issued by the Town, and shall substantially complete all work in accordance with the terms and conditions of the Contract Documents on or before August 26, 2004, except that the completion of Phase 4 parking lot and related work that, under Section 3.3 of the Original Contract (prior to any time extensions), was required to be performed by "17 November 2003" shall be complete on or before October 11, 2004.  Subject to allowable time extensions as provided under the terms of the Original Contract, if the Completion Contractor fails to complete the work under the Completion Contract in the times allowed by this paragraph, the Completion Contractor is liable to the Town for all liquidated damages as provided for under the Original Contract on account of the Completion Contractor's failure to complete such work by the date of completion set forth herein.  Nothing herein shall be construed as limiting in any way the right of the Town to determine, not later than June 15, 2004 that reasonable grounds exist to conclude that the new buildings will not be completed by August 26, 2004, in which event the Town has the absolute right to refuse turnover of the existing building to Completion Contractor for demolition.  In the event that the Town exercises its right to suspend the start date for the demolition of the existing building, the Town shall provide Fontaine with a reasonable time extension to the Phase 4 completion date. If the Town suspends the start date of the demolition of the existing building, Fontaine shall not be entitled to additional compensation for any additional costs it may incur as a result of such suspension.

5.    **Price.**  The Town shall pay to the Completion Contractor and the Completion Contractor agrees to receive and accept $11,672,296 (the "Fixed Price") as full compensation for the performance and completion of the work as described in the Contract Documents, except as otherwise provided herein.  Future applications for payment shall be made based upon the Completion Contractor's schedule of values to be submitted within 10 days after receipt of a Notice to Proceed.

6.    **Additional Defects.**  The Completion Contractor shall be entitled to additional compensation on a time and materials basis, in accordance with the terms hereof, for correcting defects in the work performed by the Former Contractor that are not shown in the Contract Documents as defined above or which are the result of deterioration occurring after the date of the Deficiency Log, or which were not or could not have been observed by the Completion Contractor in the course of its visits to the Project prior to the submission of its bid to the Surety (the amounts for which the Completion Contractor is entitled to payment on a time and materials basis being the "T&M Price"). The T&M Price shall consist of the actual costs paid by the Completion Contractor

for such work, less all discounts, rebates, and salvages that shall be taken by the Completion Contractor, plus a fifteen percent (15%) markup which shall be inclusive of the Completion Contractor's overhead and profit. The actual costs shall include only the following: the cost of all materials used or consumed in performance, including sales tax and cost of delivery; cost of labor, including social security, old age and unemployment insurance, fringe benefits, and workers' compensation insurance for persons working at the Project site (but not for project management personnel, corporate management personnel or any persons whose regular office is located other than at the Project site); bond premiums; and rental cost of equipment and machinery. The Completion Contractor shall not include in the T&M Price the cost of any work for which a subcontractor, whose subcontract is assigned to the Completion Contractor by the Former Contractor's Surety, is liable under such assigned contract.

7.     **Performance and Payment Bonds.** The Completion Contractor shall provide the Town with Performance and Payment Bonds each in a penal sum equal to the Fixed Price in a form acceptable to the Town prior to the Completion Contractor commencing work. The Completion Contractor's surety must be a commercial surety company currently listed with the U.S. Department of the Treasury and licensed to conduct business in the Commonwealth of Massachusetts.

8.     **Whole Agreement.** This Completion Contract contains the entire understandings and agreements of the parties hereto. All oral or written agreements prior to the effective date of this Completion Contract and which relate to this Completion Contract and the matters set forth herein are declared null and void. Any modification of this Completion Contract must be made in writing and executed by the parties hereto.

9.     **Interpretation.** In the event that there is any provision of this Completion Contract which is inconsistent or conflicting with any other documents forming a part of this Completion Contract, including but not limited to the Original Contract referred to herein, the terms and conditions of this Completion Contract shall govern and control.

10.     **Governing Law.** This Completion Contract is executed pursuant to and governed by the laws of the Commonwealth of Massachusetts.

11.     **Notice.** Any notice required to be made under the terms of this Completion Contract shall be deemed made if either party transmits such notice via facsimile and first class mail, postage pre-paid, as follows:

As to the Completion Contractor:

Fontaine Bros., Inc.
510 Cottage Street
Springfield, MA 01104
Fax: 413-734-1881
Telephone:    413-781-2020
Attn: Christopher J. Fontaine

As to the Town:

      Robert O'Neill
      Superintendent of Schools
      Town of North Brookfield
      10 New School Street
      North Brookfield, MA  01535
      Fax: (508) _____

      <u>With a copy to</u>:
      Thomas W. McEnaney, Esq.
      Kopelman and Paige, P.C.
      31 St. James Avenue
      Boston, MA  02116-4102
      Fax No.: (617) 654-1735
      Telephone:    (617) 556-0007

12.    **Construction of Contract.**  It is understood and agreed by the Town and the Completion Contractor that this Completion Contract shall be construed without any regard to any presumption or other rule requiring construction against the party causing this Completion Contract, or any Exhibits attached to this Completion Contract, to be drafted.

13.    **Execution in Counterparts.**  This Completion Contract may be executed in one or more counterparts, each of which shall be deemed to be an original.

IN WITNESS WHEREOF, the parties hereto have affixed their hands and seals to this Completion Contract the day and year first set forth above, and the individuals who execute this Completion Contract personally represent and warrant that they have full authority to execute this Completion Contract on behalf of the respective parties.

**WITNESS:**

_____

                **Fontaine Bros., Inc.**

                By: _____ (SEAL)

                Title: _____

**WITNESS:**

_____

                **Town of North Brookfield**

                By: _____ (SEAL)

                Title: CHAIRMAN, BOARD of SELECTMEN