# EXHIBIT  34

1

1          VOLUME: I

2    **CERTIFIED ORIGINAL**      PAGES: 1 to 56
     **LEGALINK BOSTON**

3                               EXHIBITS: See Index

4

5          UNITED STATES DISTRICT COURT

6          DISTRICT OF MASSACHUSETTS

7

8    - - - - - - - - - - - - - - - - - x

9    AMERICAN MANUFACTURERS MUTUAL

10   INSURANCE COMPANY

11              Plaintiff

12      v.                        Civil Action

13                               No. 03-40266-CBS

14   TOWN OF NORTH BROOKFIELD

15              Defendant

16   - - - - - - - - - - - - - - - - - x

17          DEPOSITION OF LESLIE S. BURTON

18              Thursday, May 5, 2005

19                  9:05 a.m.

20              Holland & Knight

21            10 St. James Avenue

22            Boston, Massachusetts

23

24       Michelle Keegan, Court Reporter

4

```
 1                    P R O C E E D I N G S
 2                 MS. GRIFFIN:  I think the only
 3     stipulation is that we're waiving notarization.
 4                 MR. MCENANEY:  Yes.
 5                 LESLIE S. BURTON
 6     having been satisfactorily identified and duly sworn
 7     by the Notary Public, was examined and testified as
 8     follows:
 9                 DIRECT EXAMINATION
10     BY MS. GRIFFIN:
11       Q.  Would you state your full name and address,
12     please.
13       A.  My name is Leslie Scott Burton.  My address
14     is 276 Edson Road, E-D-S-O-N, in Oakham,
15     Massachusetts 01068.
16       Q.  Do you hold a position with the town of
17     North Brookfield?
18       A.  Yes, I do.
19       Q.  What is your position?
20       A.  I'm the administrative assistant to the
21     board of selectmen.
22       Q.  How long have you held that position?
23       A.  Almost eight years.
24       Q.  What is your educational background?
```

5

1      A.   I have a high school diploma and some
2   college.
3      Q.   Where did you attend college?
4      A.   University of Massachusetts Amherst.
5      Q.   And what field were you studying when you
6   were there?
7      A.   Biology.
8      Q.   How long did you attend UMass?
9      A.   Two years.
10      Q.   After leaving college, would you give your
11   work history, please.
12      A.   I worked for the Massachusetts Department of
13   Welfare in the mid '70s.  I left in '77 when I had
14   my first child, went back to work in '82 as a
15   cashier in a grocery store.
16           I was the town clerk in Oakham from
17   1990, I think -- '89, '90 until 1997.  I worked as a
18   bookkeeper at Busy Bee Nursery in Holden at the same
19   time.  And then in 1997, August of 1997, I took the
20   job with North Brookfield.
21      Q.   Is your job as administrative assistant to
22   the board of selectmen a full-time job?
23      A.   Yes.
24      Q.   What are your duties as administrative

6

1    assistant?

2        A.  I attend all their meetings, take the

3    minutes, prepare the agendas.  I handle all

4    correspondence.  I do the insurance issues, any

5    other administrative functions.

6        Q.  The meetings that you attend are the

7    meetings of the board of selectmen?

8        A.  Yes.  Weekly.

9        Q.  Are there other meetings that you regularly

10   attend?

11       A.  Yes.

12       Q.  What other meetings do you attend?

13       A.  We have town meetings, special town

14   meetings, annual town meetings.  Any other group

15   meetings of various boards I go to.

16       Q.  You have in front of you Exhibit 76, which

17   is the notice for this deposition.  Can you tell me,

18   have you been designated as the witness to testify

19   regarding the topics numbered 12, 13 and 14 on the

20   last page of Exhibit 76?

21       A.  Yes.

22       Q.  And have you also been designated to

23   testify, at least in part, with respect to topic

24   number 3 on page 5 of Exhibit 76?

Leslie S. Burton                                    05/05/2005

42

1  with other parties other than counsel where counsel

2  was not present, you can answer the question, if you

3  recall.

4      A.  I don't recall.

5      Q.  You don't recall if you attended such a

6  meeting; is that what you're saying?

7      A.  Right.

8      Q.  Do you have a recollection of attending a

9  meeting that you're not answering about as a result

10 of the instruction of counsel?

11     A.  No.

12     Q.  At any time before November 14, 2003 did the

13 selectmen instruct you to prepare a warrant for a

14 special town meeting relating to additional

15 borrowing for the junior/senior high school after

16 Sciaba stopped performing?

17     A.  I don't believe so.

18         MS. GRIFFIN:  Let's mark this as the

19 next exhibit.

20         (Exhibit Number 109

21         marked for identification)

22     Q.  Have you seen Exhibit 109 before?

23     A.  I'm not sure.

24     Q.  Have you seen before today the checks that

43

1    were enclosed with the original of Exhibit 109?

2        A.  I don't know if I saw the checks, but I was

3    aware of them, yes.

4        Q.  Do you know, did the checks come in to

5    someone at the town?

6        A.  Yes.

7        Q.  Who received the checks that were enclosed

8    with Exhibit 109?

9        A.  The treasurer did.

10       Q.  Do you know what the treasurer did with

11   those checks?

12       A.  I don't know.

13           MS. GRIFFIN:  Let's mark this as the

14   next exhibit.

15           (Exhibit Number 110

16           marked for identification)

17       Q.  Looking at Exhibit 110, can you identify the

18   endorsement to the farthest right on the back of the

19   check on each of the pages in Exhibit 110?

20       A.  It says deposit only to the town of no,

21   Brookfield.

22       Q.  Is that the endorsement that the town puts

23   on checks when it deposits them in its bank account?

24       A.  Yes.

Leslie S. Burton                                    05/05/2005

44

1    Q.  And who writes that endorsement on checks

2    that the town is depositing?

3    A.  The treasurer does.

4    Q.  Into what bank were the checks that are

5    shown in Exhibit 110 deposited?

6    A.  Country Bank for Savings in Weir.

7    Q.  Can you tell me what the town did with the

8    funds that were deposited -- when the checks that

9    are in Exhibit 110 were deposited in that bank

10   account?

11   A.  I don't know.

12   Q.  You don't know whether the funds have been

13   spent?

14   A.  I don't know.

15        MS. GRIFFIN:  Let's mark this as the

16   next exhibit.

17        (Exhibit Number 111

18        marked for identification)

19   Q.  Have you seen Exhibit 111 before?

20   A.  I don't know if I've seen it, but I'm aware

21   of it.

22   Q.  Did the town receive the check that was

23   enclosed with the December 15th letter that's part

24   of Exhibit 111?

# EXHIBIT  35

Law Offices

# HOLLAND & KNIGHT LLP

10 St. James Avenue
Boston, Massachusetts 02116

617-523-2700
FAX 617-523-6850
http://www.hklaw.com

| | |
|---|---|
| Annapolis | Oakbrook |
| Atlanta | Orlando |
| Bethesda | Portland |
| Boston | Providence |
| Bradenton | San Antonio |
| Chicago | San Francisco |
| Fort Lauderdale | Seattle |
| Jacksonville | St. Petersburg |
| Lakeland | Tallahassee |
| Los Angeles | Tampa |
| Miami | Washington, D.C. |
| New York | West Palm Beach |
| Northern Virginia | |

| | |
|---|---|
| International Offices: | São Paulo |
| Caracas* | Tel Aviv* |
| Helsinki | Tokyo |
| Mexico City | |
| Rio de Janeiro | *Representative Offices |

December  3, 2003

**DEBORAH S. GRIFFIN**
617-305-2044

Internet Address:
deborah.griffin@hklaw.com

**_BY HAND_**

Thomas W. McEnaney, Esq.
Kopelman & Paige, P.C.
31 St. James Avenue, 7th Floor
Boston, MA  02116

Burton
EXHIBIT NO. 109
5-5-05
MICHELLE KEEGAN

>    Re:    *North Brookfield Intermediate & Senior High School Project*
>            Surety:        *American Manufacturers Mutual Insurance Co.*
>            Bond No.:      *3SE 057 856*
>            Claim No.:     *167-SE-002-989*

Dear Tom:

As promised on my prior correspondence to you, I am now enclosing the following:

1.    a group of three checks payable to the Town of North Brookfield totaling $2,538,838.37.  These checks are delivered unconditionally.

2.    a check payable to the Town in the amount $659,157.80 under a reservation of rights, negotiation of which is conditioned upon the Town executing the Completion Contract with Fontaine and issuing it a Notice to Proceed.

Thomas W. McEnaney, Esq.
December 3, 2003
Page 2

Except as expressly stated herein, or in prior correspondence, AMMIC
reserves all its rights and defenses.

Very truly yours,

HOLLAND & KNIGHT LLP

Deborah S. Griffin

DSG/bsw: # 1413193_v1
431261.00002
Enclosures
cc:    Kieran B. Meagher, Esq. (w/encl., via e-mail)
       Stephen J. Beatty, Esq. (w/encl., via e-mail)
       Richard P. Anastasio, P.E. (w/encl., via e-mail)

AM17649

Kemper. Insurance Companies
Long Grove, IL 60049

Claim Check Number
**522-0-518-452**

70-2322
719

94-25438

BANK ONE
Bank One, NA
Illinois

Issued At: LONG GROVE IL
Date Issued: 12/02/03

PAY TO THE ORDER OF: TOWN OF NORTH BROOKFIELD

Void if not presented for payment within 180 days after date of issue.

Amount: ****$999,990.00*

Amount
*** Nine Hundred Ninety Nine Thousand Nine Hundred Ninety and 00/100 Dollars *******************

Payment For: PERFORMANCE COMPLETION TENDER PAYMENT

| Claim Number | Policy Number | Loss Date |
|---|---|---|
| 167 SE 002989 X 167 | 3SE 057856 00 | 11/19/2002 |

Insured: EJ SCIABA CONTRACTING
Company Use Only: 16700016040
Claimant: TOWN OF NORTH BROOKFIELD
Customer Claim Number:

STEPHEN BEATTY
1 KEMPER DR
SURETY 12NW0284
LONG GROVE IL 60049-0001

By [signatures]

⑈522051845 2⑈ ⑆071923226⑆ 94 25438⑈

---

Kemper. Insurance Companies
Long Grove, IL 60049

Claim Check Number
**522-0-518-450**

70-2322
719

94-25438

BANK ONE
Bank One, NA
Illinois

Issued At: LONG GROVE IL
Date Issued: 12/02/03

PAY TO THE ORDER OF: TOWN OF NORTH BROOKFIELD

Void if not presented for payment within 180 days after date of issue.

Amount: ****$999,990.00*

Amount
*** Nine Hundred Ninety Nine Thousand Nine Hundred Ninety and 00/100 Dollars *******************

Payment For: PERFORMANCE COMPLETION TENDER PAYMENT

| Claim Number | Policy Number | Loss Date |
|---|---|---|
| 167 SE 002989 X 167 | 3SE 057856 00 | 11/19/2002 |

Insured: EJ SCIABA CONTRACTING
Company Use Only: 16700016039
Claimant: TOWN OF NORTH BROOKFIELD
Customer Claim Number:

STEPHEN BEATTY
1 KEMPER DR
SURETY 12NW0284
LONG GROVE IL 60049-0001

By [signatures]

⑈522051845 0⑈ ⑆071923226⑆ 94 25438⑈

---

Kemper. Insurance Companies
Long Grove, IL 60049

Claim Check Number
**522-0-518-451**

70-2322
719

94-25438

BANK ONE
Bank One, NA
Illinois

Issued At: LONG GROVE IL
Date Issued: 12/02/03

PAY TO THE ORDER OF: TOWN OF NORTH BROOKFIELD

Void if not presented for payment within 180 days after date of issue.

Amount: ****$538,858.31*

Amount
*** Five Hundred Thirty Eight Thousand Eight Hundred Fifty Eight and 31/100 Dollars *************

Payment For: PERFORMANCE COMPLETION TENDER PAYMENT

| Claim Number | Policy Number | Loss Date |
|---|---|---|
| 167 SE 002989 X 167 | 3SE 057856 00 | 11/19/2002 |

Insured: EJ SCIABA CONTRACTING
Company Use Only: 16700016041
Claimant: TOWN OF NORTH BROOKFIELD
Customer Claim Number:

STEPHEN BEATTY
1 KEMPER DR
SURETY 12NW0284
LONG GROVE IL 60049-0001

By [signatures]

AM17550

**Kemper.**
Insurance Companies
Long Grove, IL 60049

Claim Check Number

**522-0-518-453**

70-2322
719

94-25438

BANK ONE

Bank One, NA
Illinois

Void if not presented for payment within
180 days after date of issue.

Issued At
LONG GROVE IL

PAY
TO THE
ORDER
OF

TOWN OF NORTH BROOKFIELD

Date Issued
12/02/03

Amount
*****$659,157.80*

Amount

*** Six Hundred Fifty Nine Thousand One Hundred Fifty Seven and 80/100 Dollars ******************

Payment For PERFORMANCE COMPLETION TENDER PAYMENT -
ISSUED UNDER RESERVATION OF RIGHTS

| Claim Number | Policy Number | Loss Date |
|---|---|---|
| 167 SE 002989 X 167 | 3SE 057856 00 | 11/19/2002 |

Insured
EJ SCIABA CONTRACTING

Company Use Only
16700016044

Claimant
TOWN OF NORTH BROOKFIELD

Customer Claim Number

STEPHEN BEATTY
1 KEMPER DR
SURETY 12NW0284
LONG GROVE     IL 60049-0001

By *Daniel B. Mathis*     *William A. Hickey*

⑆522051845⑆ ⑈071923226⑈ 94 25438⑈

# EXHIBIT  36

Law Offices

# HOLLAND & KNIGHT LLP

10 St. James Avenue
Boston, Massachusetts 02116

617-523-2700
FAX 617-523-6850
http://www.hklaw.com

| | |
|---|---|
| Annapolis | Oakbrook |
| Atlanta | Orlando |
| Bethesda | Portland |
| Boston | Providence |
| Bradenton | San Antonio |
| Chicago | San Francisco |
| Fort Lauderdale | Seattle |
| Jacksonville | St. Petersburg |
| Lakeland | Tallahassee |
| Los Angeles | Tampa |
| Miami | Washington, D.C. |
| New York | West Palm Beach |
| Northern Virginia | |

| International Offices: | São Paulo |
|---|---|
| Caracas* | Tel Aviv* |
| Helsinki | Tokyo |
| Mexico City | |
| Rio de Janeiro | *Representative Offices |

**EXHIBIT NO. III**
5-5-05
MICHELLE KEEGAN

December 15, 2003

**DEBORAH S. GRIFFIN**
617-305-2044

Internet Address:
deborah.griffin@hklaw.com

***BY HAND***

Thomas W. McEnaney, Esq.
Kopelman & Paige, P.C.
31 St. James Avenue, 7th Floor
Boston, MA  02116

LAURA KNIGHT

DEC 1 8 2004.3

LONG GROVE SURETY

> Re:  *North Brookfield Intermediate & Senior High School Project*
> *Surety:*        *American Manufacturers Mutual Insurance Co.*
> *Bond No.:*     *3SE 057 856*
> *Claim No.:*    *167-SE-002-989*

Dear Tom:

I enclose herewith AMMIC's check payable to the Town in the amount $125,000.00 under a reservation of rights, negotiation of which is conditioned upon the Town executing the Completion Contract with Fontaine and issuing it a Notice to Proceed.  Except as expressly stated herein, or in prior correspondence, AMMIC reserves all its rights and defenses.

Very truly yours,

HOLLAND & KNIGHT LLP

Deborah S. Griffin

DSG/bsw: # 1413193_v1
431261.00002
Enclosure
cc:   Kieran B. Meagher, Esq. (w/encl., via first class mail)
      Stephen J. Beatty, Esq. (w/o encl., via first class mail)
      Richard P. Anastasio, P.E. (w/o encl., via first class mail)

**EXHIBIT  37**

**Griffin, Deborah S (BOS - X72044)**

| | |
|---|---|
| **From:** | Rpgarrity@aol.com |
| **Sent:** | Wednesday, November 05, 2003 11:29 AM |
| **To:** | deborah.griffin@hklaw.com |
| **Cc:** | chrisf@fontainebros.com |
| **Subject:** | (no subject) |



chris fontaine
11.4.03 email.d...

1

HK 18496A

TO:          Deborah Griffin, Esq.

FROM:        Bob Garrity, Esq.

RE:          N. Brookfield Takeover Agreement

     I talked to Chris Fontaine regarding Fontaine's role in completing the N. Brookfield Project. I also reviewed a draft Assignment and Assumption Agreement between Fontaine and AMMI and a draft Completion Agreement between the Town and Fontaine. Fontaine has the following issues:

## 1. COMPLETION AGREEMENT

Contract Price

     - Will Fontaine be paid the full contract price by the Town or will a portion come directly from AMMI?

     - Has the Town agreed to Fontaine's completion of the Project?

Completion Dates

     - The dates for Fontaine's performance of the Completion Contract need to be adjusted to reflect the delay in authorizing Fontaine to proceed with the work. For example, if Fontaine is authorized to proceed next week, Fontaine could agree to the following revised dates:

     - para. 4 substantial completion by August 21, 2004 instead of April 30, 2004.
     - completion of Phase 4, parking lot, by October 30, 2004 instead of August 1, 2004

Latent Conditions

     Article 5 should be modified to apply to the list of deficiencies on Attachment A, and not to all truly latent/unknown deficiencies in the Original Contractor's work that Fontaine may encounter. Fontaine would like the Town to agree to pay Fontaine directly if latent conditions attributable to the Original Contract are encountered, if the Town isn't willing to agree to pay Fontaine for the cost of correcting latent deficiencies in the Original Contractor's work, we may be able to address this concern in a separate agreement between Fontaine and AMMI in which Fontaine reserves its right to recover from AMMI the costs of any latent conditions it encounters that are attributable to defective work by the Original Contractor.

     - Article 7, should be limited to the correction of the List of Deficiencies in Attachment A.


## 2. ASSIGNMENT AND ASSUMPTION AGREEMENT

para. 3  In the event the Surety requests Fontaine to withhold payment to a vendor/subcontractor under this Paragraph, and Fontaine does so, the Surety should indemnify and hold Fontaine harmless for any damages Fontaine suffers for complying with such a request to withhold payment.

3.  NEXT STEPS

Fontaine will proceed to obtain performance and payment bonds, once it is advised that AMMI and the Town have agreed to the terms of Fontaine's completion of the Original Contractor's work.  Until AMMI and the Town have reached agreement, it doesn't seem to make sense for Fontaine to obtain bonds.

Please advise of AMMI's position on these points.

**EXHIBIT  38**

**Whited, Bonnie S (BOS - X72047)**

| | |
|---|---|
| **From:** | THOMAS McEnaney [TMCENANEY@k-plaw.com] |
| **Sent:** | Wednesday, November 05, 2003 4:09 PM |
| **To:** | deborah.griffin@hklaw.com |
| **Cc:** | lashaway@aol.com; lpdore@DoreandWhittier.com; kmeagher@kmeagherlaw.com |
| **Subject:** | Re: North Brookfield |

Deborah:

Lee Dore has had several conversations with Chris Fontaine regarding the project.  Mr. Fontaine has expressed two primary concerns:

1.      Fontaine Bros. only wishes to sign a contract with the Town of N. Brookfield not the Surety.

2.      Fontaine Bros. has presented the Surety with a bid price strictly related to substantial completions dates.  Fontaine maintains that the Town must be made aware of the substantial completion dates as they will be utilized in their contract with the Town as it relates to potential future LD's if Fontaine is late with the project.

I have send you a fax received from Fontaine outlining the substantial completion dates with a copy from their completion contract.  They will only stick to this schedule if they start by Monday 11/10/03.  Please note that these dates are substantially different from those agreed to by the Town and
Rick Anastasio of Greyhawk at a Building Committee meeting.  This extended time period will also increase the additional costs for A/E services and CM services, which obviously are extended by this schedule.

Please contact me at your earliest convenience to discuss.

Tom

**EXHIBIT  39**

  **<deborah.griffin@hklaw.com> on**

To:         <TMCENANEY@k-plaw.com>
cc:         <jiantuono@greyhawk.com>, <sbeatty@kemperinsurance.com>
From:       <deborah.griffin@hklaw.com>

Date:       11/06/2003 03:54 PM
Subject:    RE: North Brookfield

I've been talking with Bob Garrity, who represents Fontaine, about
resolving the inconsistencies in the completion dates. I've asked
whether Fontaine will agree to June 29 for substantial completion of the
new building and August 30 for substantial completion of the abatement
and demolition phase. I think this is the best we are going to be able
to do at this juncture. The surety understands it will have
responsibility for the additional liquidated damages after the dates
that were given in the RFP.

My plan is to get the signed completion agreement from Fontaine,
hopefully tomorrow or Monday, and get it over to you so that the town
can issue a notice to proceed. As you have suggested previously, the
surety and the town will reserve their rights as to the amount of the
surety's payment and the other terms of the tender agreement that have
not been resolved. Please confirm that approach is still acceptable to
the town.

-----Original Message-----
From: THOMAS McEnaney [mailto:TMCENANEY@k-plaw.com]
Sent: Thursday, November 06, 2003 2:01 PM
To: deborah.griffin@hklaw.com
Subject: Re: North Brookfield

617-556-0007

>>> <deborah.griffin@hklaw.com> 11/05/03 05:14PM >>>
Please email me your phone number. I am out of town but will try to
call.
--------------------------
Sent from my BlackBerry Wireless Handheld (www.BlackBerry.net)

**EXHIBIT  40**

 **<deborah.griffin@hklaw.com> on**

To:       <Rpgarrity@aol.com>, <TMCENANEY@k-plaw.com>, <stephen.beatty@kemperinsurance.com>,
          <jiantuono@greyhawk.com>
cc:
From:     <deborah.griffin@hklaw.com>

Date:     11/07/2003 10:03 AM
Subject:  Fontaine completion agreement North Brookfield Kemper.DOC

I have revised the Fontaine completion agreement in accordance with my discussions with Bob
yesterday and today. In the interests of time, I am sending it simultaneously to the surety, GREYHAWK
and Tom McEnaney (counsel for the Town) for review. Please get me your comments ASAP.

<<Fontaine completion agreement North Brookfield Kemper.DOC>>

**Deborah S. Griffin**
**Holland & Knight LLP**
**10 St. James Avenue**
**Boston, MA 02116**
**617-305-2044**
**fax 617-523-6850**

deborah.griffin@hklaw.com   Fontaine completion agreement North Brookfield Kemp

## COMPLETION CONTRACT

THIS COMPLETION CONTRACT (the "Completion Contract") is entered into this _____ day of _____, 2003, by and between the Town of North Brookfield (the "Town") and Fontaine Bros., Inc. (the "Completion Contractor").

## RECITALS:

WHEREAS, on or about April 19, 2002, E.J. Sciaba Contracting Co., Inc. (the "Former Contractor"), and the Town entered into a contract (the "Original Contract") for construction of the Junior/Senior High School, North Brookfield, Massachusetts (the "Project"), in accordance with the terms and provisions of the Original Contract, including all contract documents forming a part of the Original Contract, as amended;

WHEREAS, the Former Contractor voluntarily defaulted or otherwise indicated its inability to perform the Project, and the Owner has called upon the Surety to fulfill its obligations as surety under the terms of the Performance Bond;

WHEREAS, the Town has terminated the right of the Former Contractor to perform the Original Contract; and

WHEREAS, the Town and the Completion Contractor desire to enter into this Completion Contract under the terms and conditions hereinafter set forth;

NOW, THEREFORE, the Town and the Completion Contractor, for and in consideration of the mutual obligations and promises hereinafter set forth, do contract and agree as follows:

## AGREEMENTS:

1.     **Completion Contract Documents.** This Completion Contract consists of the terms and provisions contained herein and the Original Contract, including the Project Schedule, all General, Supplementary and Special Conditions, drawings, specifications, forms, addenda and documents forming a part of the Original Contract, and any approved change orders, construction change directives, amendments and modifications thereto, the scope of work set forth in the Request for Proposals pursuant to which the Completion Contractor bid and was selected, and the items of deficient work listed in the Deficiency Log dated August 29, 2003 and the Steel Field Repair Log dated August 29, 2003, and all subsequently approved amendments and modifications

1

thereto, all of which are incorporated herein by reference and which are hereinafter referred to collectively as the "Contract Documents."

2. **Strict Compliance.** The Completion Contractor shall be bound to the Town by all of the terms and provisions of the Contract Documents, including administrative as well as technical provisions, and shall strictly comply therewith in all respects.

3. **Work to be Performed.** The Completion Contractor shall furnish and pay for all labor, materials, services and equipment and shall do everything else necessary to perform and satisfactorily complete the Original Contract as required by the Contract Documents as defined above.

4. **Time for the Performance of the Work.** The Completion Contractor shall commence work within five (5) days after receipt of a written Notice to Proceed issued by the Town, and shall substantially complete all work in accordance with the terms and conditions of the Contract Documents on or before August 15, 2004, except that the completion of Phase 4 parking lot and related work that, under Section 3.3 of the Original Contract (prior to any time extensions), was required to be performed by "17 November 2003" shall be complete on or before October 1, 2004. Subject to allowable time extensions as provided under the terms of the Original Contract, if the Completion Contractor fails to complete the work under the Completion Contract in the times allowed by this paragraph, the Completion Contractor is liable to the Town for all liquidated damages as provided for under the Original Contract on account of the Completion Contractor's failure to complete such work by the date of completion set forth herein.

5. **Price.** The Town shall pay to the Completion Contractor and the Completion Contractor agrees to receive and accept $11,527,000 (the "Fixed Price") as full compensation for the performance and completion of the work as described in the Contract Documents, except as otherwise provided herein. Future applications for payment shall be made based upon the Completion Contractor's schedule of values to be submitted within 10 days after receipt of a Notice to Proceed.

6. **Latent Defects.** The Completion Contractor shall be entitled to additional compensation on a time and materials basis, in accordance with the terms hereof, for correcting defects in the work performed by the Former Contractor that are not shown in the Contract Documents as defined above or which were not or could not have been observed by the Completion Contractor in the course of its visits to the Project prior hereto (the amounts for which the Completion Contractor is entitled to payment on a time and materials basis being the "T&M Price"). The T&M Price shall consist of the actual costs paid by the Completion Contractor for such work, less all discounts, rebates, and salvages that shall be taken by the Completion Contractor, plus a fifteen percent (15%) markup which shall be inclusive of the Completion Contractor's overhead and profit. The actual costs shall include only the following: the cost of all materials used or consumed in performance, including sales tax and cost of delivery; cost of labor, including social security, old age and unemployment insurance, fringe benefits, and workers' compensation insurance for persons working at the Project site (but not for project management personnel, corporate management personnel or any persons whose regular office is located other than at the Project site); bond premiums; and rental cost of equipment and machinery.

2

7.    **Performance and Payment Bonds.** The Completion Contractor shall provide the Town with Performance and Payment Bonds each in a penal sum equal to the Fixed Price in a form acceptable to the Town prior to the Completion Contractor commencing work. The Completion Contractor's surety must be a commercial surety company currently listed with the U.S. Department of the Treasury and licensed to conduct business in the Commonwealth of Massachusetts.

8.    **Whole Agreement.** This Completion Contract contains the entire understandings and agreements of the parties hereto. All oral or written agreements prior to the effective date of this Completion Contract and which relate to this Completion Contract and the matters set forth herein are declared null and void. Any modification of this Completion Contract must be made in writing and executed by the parties hereto.

9.    **Interpretation.** In the event that there is any provision of this Completion Contract which is inconsistent or conflicting with any other documents forming a part of this Completion Contract, including but not limited to the Original Contract referred to herein, the terms and conditions of this Completion Contract shall govern and control.

10.    **Governing Law.** This Completion Contract is executed pursuant to and governed by the laws of the Commonwealth of Massachusetts.

11.    **Notice.** Any notice required to be made under the terms of this Completion Contract shall be deemed made if either party transmits such notice via facsimile and first class mail, postage pre-paid, as follows:

As to the Completion Contractor:

Fontaine Bros., Inc.
510 Cottage Street
Springfield, MA 01104
Fax: 413-734-1881
Telephone:    413-781-2020
Attn: Christopher J. Fontaine

As to the Town:

Robert O'Neill
Superintendent of Schools
Town of North Brookfield
10 New School Street
North Brookfield, MA 01535
Fax: (508) _____

With a copy to:
Thomas W. McEnaney, Esq.
Kopelman and Paige, P.C.
31 St. James Avenue
Boston, MA 02116-4102
Fax No.: (617) 654-1735
Telephone:    (617) 556-0007

12.    **Construction of Contract.**   It is understood and agreed by the Town and the Completion Contractor that this Completion Contract shall be construed without any regard to any presumption or other rule requiring construction against the party causing this Completion Contract, or any Exhibits attached to this Completion Contract, to be drafted.

13.    **Execution in Counterparts.** This Completion Contract may be executed in one or more counterparts, each of which shall be deemed to be an original.

IN WITNESS WHEREOF, the parties hereto have affixed their hands and seals to this Completion Contract the day and year first set forth above, and the individuals who execute this Completion Contract personally represent and warrant that they have full authority to execute this Completion Contract on behalf of the respective parties.

**WITNESS:**                                    **Fontaine Bros., Inc.**

_____             By:  _____ (SEAL)

                                                 Title: _____


**WITNESS:**                                    **Town of North Brookfield**

_____             By:  _____ (SEAL)

                                                 Title: _____


                                                              # 1351093_v1
                                                              431261.00002

4