UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AMERICAN MANUFACTURERS MUTUAL
INSURANCE COMPANY,
                    Plaintiff,

vs.                                                        Civil Action No. 03-40266-CBS

TOWN OF NORTH BROOKFIELD,
                    Defendant.

## PLAINTIFF'S RESPONSE TO DEFENDANT'S LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS NOT IN DISPUTE AND STATEMENT OF ADDITIONAL FACTS IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff, American Manufacturers Mutual Insurance Company ("AMMIC"), submits its response to the Local Rule 56.1 Statement of Material Facts Not in Dispute ("Town's Facts") filed by the Town of North Brookfield in support of its Motion for Partial Summary Judgment ("Town's Motion").

## RESPONSE TO DEFENDANT'S STATEMENT OF FACTS

1.      AMMIC does not dispute the execution or content of the contract between Sciaba and the Town, nor the authenticity of Exhibits A and B to the Town's Facts. AMMIC also does not dispute that the contract bears the date of April 19, 2002, but AMMIC disputes that the contract was actually executed by the Town on or about that date. This disputed fact is not material to the Town's Motion; for that reason AMMIC does not present evidence regarding the date of execution as part of this submission, but reserves the right to do so in the event it becomes material.

2.      Undisputed.

3.      AMMIC does not dispute that the Contract, prior to Change Order No. 3, stated, in part, that Sciaba must "substantially complete the new building by 17 July 2003 and the balance of work in accordance with the phasing plan, including completion of Phase 4 parking lot construction and related work by 17 November, 2003, subject to adjustments of this Contract Time …."  AMMIC states, however, that events occurred after Sciaba signed  the Contract that entitled it to adjustments to the contract time.  *See, e.g.,* Change Order No. 3 attached to the Town's Facts and Exhibit D.  The length of the adjustments to which Sciaba was entitled is disputed but does not appear to be material to the issues raised by the Town's Motion.  For that reason AMMIC does not present evidence regarding all such adjustments to Contract Time as part of this submission, but reserves the right to do so in the event it becomes material.

4.      AMMIC does not dispute the authenticity of Exhibit D to the Town's Facts.  However, AMMIC does dispute (as it did in its Answer to the Defendant's Counterclaim, Town's Facts Exhibit A ¶6) the Defendant's interpretation of Change Order No. 3.  On numerous occasions, representatives of the Town have characterized Change Order No. 3 as extending the substantial completion date for the building (not just Phase 4) to December 15, 2003.  *See* first paragraph of Exhibit E to Town's Facts; Town's Expert Report of Lee Dore, Affidavit of Deborah S. Griffin in Opposition to Town's Motion for Partial Summary Judgment ("Griffin Aff.") Exh. 1, at  p.3 ¶2 third sentence and Exhibit B.

5.      Undisputed, except that the enclosure to the April 23, 2003 letter is not included with the Town's Exhibit E.  *See* Town's Facts Exh. E.

6.      Undisputed.

7.      Disputed in part.  The people attending the meeting signed a sign-in sheet that does not include the name of Ken Walton.  *See* Affidavit of Stephen J. Beatty ("Beatty Aff.")

Exh. 1.  The Meeting Notes attached to the Town's Facts as Exhibit F were not circulated to AMMIC after the meeting and are incomplete and inaccurate.  *See* Beatty Aff. ¶7.

8.    AMMIC does not dispute that it did not request at the May 21 meeting that the Town make any checks for future payments payable to AMMIC or to AMMIC and Sciaba jointly.  AMMIC disputes that "there was discussion of Sciaba's financial condition."  AMMIC objects to that portion of paragraph 8 of the Town's Facts on the grounds that it is vague and is not supported by affidavits, sworn documents, deposition testimony or other admissible evidence as required by Fed. R. Civ. P. 56(e).  AMMIC's Answer to paragraph 12 of the Town's Counterclaim does not support this statement, as this statement was not alleged in the Counterclaim.  AMMIC reserves the right to submit additional evidence in the event the Defendant makes a proper submission in support of this purported statement of fact.

9.    AMMIC does not dispute that the Town made payments to Sciaba on May 21, 2003 in the amount of $287,556.28 for its March, 2003 payment requisition and on May 27, 2003 in the amount of $443,733.76 for its April, 2003 payment requisition.  AMMIC disputes that "On or about May 21, 2003, Sciaba provided to project architect, Dore & Whittier, lien waivers executed by Sciaba's subcontractors that Sciaba had failed to provide with two previously approved payment requisitions for March, 2003 and April, 2003," or that the Town made the payments it did "as a result" of the receipt of lien waivers.  AMMIC objects to that portion of paragraph 9 of the Town's Facts on the grounds that it is vague and is not supported by affidavits, sworn documents, deposition testimony or other admissible evidence as required by Fed. R. Civ. P. 56(e).  AMMIC's Answer to paragraph 13 of the Town's Counterclaim does not support this statement, as AMMIC did not admit those allegations of paragraph 13 of the

Counterclaim.  AMMIC reserves the right to submit additional evidence in the event the Defendant makes a proper submission in support of this purported statement of fact.

10.    Undisputed.

11.    Undisputed.

12.    Undisputed.

13.    Disputed.  Documents produced by the parties in this case show that on several occasions the Town made payments to Sciaba without having the requisite lien releases.  In particular:

a. **Bay State Elevator** ("Bay State"):  On requisitions prior to Requisition 10, covering periods ending on or before December 30, 2002, the Town paid Sciaba for work performed by the elevator subcontractor, Bay State, in the amount of $23,750 net of 5% retainage.  Griffin Aff. Exh. 2, line 14225.98.  The only lien release signed by Bay State prior to the next payment to Sciaba was in the amount of $3,800, which is $19,950 less than the amounts paid to Sciaba for Bay State's work.  Griffin Aff. Exh. 4.

b. **Greenwood Industries** ("Greenwood"):  On Requisition 10, covering the period ending January 30, 2003, the Town paid Sciaba for work performed by the roofing subcontractor, Greenwood, in the amount of $37,050 net of 5% retainage.  Griffin Aff. Exh. 2 line 7500.98.  The only lien release signed by Greenwood prior to the next payment to Sciaba was in the amount of $14,250.  Griffin Aff. Exh. 5.  On Requisition 11, covering the period ending February 28, 2003, the Town paid Sciaba for work performed by Greenwood in the amount of $8,550 net of 5% retainage.  Griffin Aff. Exh. 6, line 7500.98.

Greenwood did not sign an additional lien release prior to the next payment to Sciaba. Griffin Aff. ¶5, Exh. 5. On Requisition 12, covering the period ending March 28, 2003, the Town paid Sciaba for work performed by Greenwood in the amount of $106,000.53 net of 5% retainage. Griffin Aff. Exh. 8 line 7500.98. The only lien release signed by Greenwood prior to the next payment to Sciaba was in the amount of $100,700.49. Griffin Aff. ¶5, Exh. 5. The aggregate amount paid to Sciaba for Greenwood's work through Requisition 12 was $151,600.53, while the Town had only received lien releases totaling $114,950,49, a shortfall of $36,650.04. [arithmetic] The Town also made a direct payment to Greenwood in the amount of $31,505.85, $5,144.19 less than the shortfall. Griffin Aff. Exh. 9. (This direct payment is also the subject of one of AMMIC's own motions for summary judgment. Docket #36)

c. **Holyoke Equipment Co., Inc.** ("Holyoke"): On Requisition 10, covering the period ending January 30, 2003, the Town paid Sciaba for work performed by the kitchen equipment subcontractor, Holyoke, in the amount of $11,366.75 net of 5% retainage. Griffin Aff. Exh. 2 line 11400.98. On Requisition 11, covering the period ending February 28, 2003, the Town paid Sciaba for work performed by Holyoke in the amount of $5,168 net of 5% retainage. Griffin Aff. Exh. 6 line 11400.98. The only lien release signed by Holyoke was dated May 27, 2003, which was after the next payments to Sciaba. Griffin Aff. Exh. 10. The release was in the amount of $16,249.51, almost $300 less than the payments to Sciaba. *Id.* However, the release was conditional and subject to

receipt of payment. *Id.* Sciaba never paid the $16,249.51. Affidavit of Richard P. Anastasio ("Anastasio Aff.") ¶¶ 2-4, Exh. 3.

d. **KMD Mechanical Corp.** ("KMD"): On requisitions prior to Requisition 10, covering periods ending on or before December 30, 2002, the Town paid Sciaba for work performed by the mechanical subcontractor, KMD, in the amount of $22,439 net of 5% retainage. Griffin Aff. Exh. 2 line 15500.199. The only lien release signed by KMD prior to the next payment to Sciaba was in the amount of $18,638.02. Griffin Aff. ¶11, Exh. 11. On Requisition 11, covering the period ending February 28, 2003, the Town paid Sciaba for work performed by KMD in the amount of $22,800 net of 5% retainage. Griffin Aff. Exh. 6 line 15500.199. The only additional lien release signed by KMD prior to the next payment to Sciaba was in the amount of $22,648. Griffin Aff. ¶11, Exh. 11. The aggregate amount paid to Sciaba for KMD's work through Requisition 12 was $45,239, while the Town had only received lien releases totaling $41,286.02, a shortfall of $3,952.98. [Arithmetic.]

e. **Millis Plumbing Co.** ("Millis"): On Requisition 10, covering periods ending on or before December 30, 2002, the Town paid Sciaba for work performed by the plumbing subcontractor, Millis, in the amount of $56,337.85 net of 5% retainage. Griffin Aff. Exh. 2 line 15400.900. The only lien releases signed by Millis prior to the next payment to Sciaba were in the aggregate amount of $38,774.25. Griffin Aff. ¶12, Exh. 12. On Requisition 11, covering the period ending February 28, 2003, the Town paid Sciaba for work performed by Millis in the amount of $2,636.25 net of 5% retainage. Griffin Aff. Exh. 6

6

line 15400.900.  The only additional release signed by Millis prior to the next payment to Sciaba was in the amount of $3,052.44.  Griffin Aff. Exh. 12.  At that point in time, the aggregate amount paid to Sciaba for Millis's work through Requisition 11 was $58,974.10, while the Town had only received lien releases totaling $41,796.69, a shortfall of $17,177.41.  [arithmetic]  On Requisition 12, covering the period ending March 28, 2003, the Town paid Sciaba for work performed by Millis in the amount of $19,159.60 net of 5% retainage.  Griffin Aff. Exh.8 line 15400.900.  The only additional lien release signed by Millis prior to the next payment to Sciaba was in the amount of $12,384.96.  Griffin Aff. ¶12, Exh. 12.  The aggregate amount paid to Sciaba for Millis's work through Requisition 12 was $78,133.70, while the Town had only received lien releases totaling $54,211.65, a shortfall of $23,922.05. [Arithmetic]  The Town also made a direct payment to Millis in the amount of $3,361.81 to Millis Plumbing on May 22, 2003, $20,560.24 less than the shortfall.  Griffin Aff. Exh. 9.  (This direct payment is also the subject of one of AMMIC's own motions for summary judgment, docket #36.)

f.  **Wayne J. Griffin Electric, Inc.** ("Griffin Electric"):  On requisitions through Requisition 10, covering the periods ending on or before January 30, 2003, the Town paid Sciaba for work performed by the electrical subcontractor, Griffin Electric, in the amount of $137,560 net of 5% retainage.  Griffin Aff. Exh. 2 line 16000.98.  The only lien releases signed by Griffin Electric prior to the next payment to Sciaba were in the aggregate amount of $114,380.  Griffin Aff. ¶13, Exh. 13.  On Requisition 11, covering the period ending February

28, 2003, the Town paid Sciaba for work performed by Griffin Electric in the amount of $96,781.25 net of 5% retainage. Griffin Aff. Exh. 6 line 16000.98. Griffin Electric did not sign an additional lien release prior to the next payment to Sciaba. Griffin Aff. ¶13. At this point, the variance between amounts paid to Sciaba for Griffin's work and Griffin Electric's lien releases was $119,961.25. Griffin Aff. Exh. 13; arithmetic. On Requisition 12, covering the period ending March 28, 2003, the Town paid Sciaba for work performed by Griffin Electric in the amount of $10,331.25 net of 5% retainage. Griffin Aff. Exh. 8 line 16000.98. The only lien release signed by Griffin Electric prior to the next payment to Sciaba was in the amount of $100,937.50. Griffin Aff. ¶13, Exh. 13. However, the check Sciaba gave Griffin Electric in exchange for that release bounced. Anastasio Aff. ¶5-7, Exh. 2. The aggregate amount paid to Sciaba for Griffin Electric's work through Requisition 12 was $244,672.50, while the Town had only received lien releases totaling $215,317.50, a shortfall of $29,355. [Arithmetic.]

14.   Undisputed.

15.   Undisputed.

16.   Undisputed.

17.   Undisputed.

18.   Undisputed.

19.   Undisputed.

20.   Disputed and objected to as immaterial. AMMIC disputes this assertion of fact. The Contract between Sciaba and the Town required the submission of an updated construction

schedule with each application for payment, or requisition.  Paragraph 8.1.4 of the Contract

incorporates the provisions of the Project Manual, Volume 1.  Town Facts Exh. B at 6.  The

Project Manual, Volume 1 provides, in pertinent part:

> **Section 01310 … CONSTRUCTION SCHEDULES**
>
> …
>
> 1.05  PROGRESS REVISIONS
>
> > A.  Indicate progress of each activity to date of submission.
>
> > B.  Show changes occurring since previous submission of scope …
>
> 1.06  SUBMISSIONS …
>
> > **B.     Submit revised schedules with each application for payment. …**

Griffin Aff. Exh. 14 (emphasis added).  By the very Contract it drafted, North Brookfield *itself*

required Sciaba to submit an updated construction schedule with each payment requisition.

Moreover, at a meeting on May 21, 2003, among representatives of AMMIC and North

Brookfield, the representatives of North Brookfield stated that various subcontractors were

complaining that they were not being paid by Sciaba, that the job was substantially behind

schedule, that Sciaba had failed to provide updated monthly construction schedules, and that

satisfactory progress was not currently being made.  They indicated that, in addition to lien

waivers, Sciaba would have to submit an updated construction schedule in order to get paid.

Sciaba's representatives at the meeting stated that it would be three weeks before they would be

able to submit an updated schedule.  Beatty Aff. ¶¶1-2; Anastasio Aff. ¶¶10-13.  On the basis of

this testimony and documentary evidence, the finder of fact can infer that, if Sciaba had

presented lien waivers earlier than it did, the lack of an updated construction schedule would (or

should) have posed an obstacle to delivery of payments to Sciaba.

AMMIC also objects to Town Fact ¶20 as immaterial to the issues before the Court on this Motion. The issue is not whether the Town would have paid Sciaba earlier and under other circumstances. The issue is whether the payments the Town made in May 2003 were proper or not. As shown below, they were not.

### PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS PRECLUDING SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANT

The following material facts appear in the record, which facts preclude partial summary judgment as requested by the Defendant:

21.    AMMIC has made payments to the Town totaling over $3,322,996. Counterclaim ¶37 (admitted as to $3,322,996), Answer to Counterclaim ¶37; *see also* AMMIC's Amended Complaint ¶¶9, 10, Answer to Amended Complaint ¶¶9, 10 (admitted as to $3,197,996.17).

22.    At and before the time it made the May Payments to Sciaba, North Brookfield was aware that Sciaba would not complete the project on time, and that North Brookfield would have a claim for liquidated damages against Sciaba. This issue had been discussed at several meetings of the Town's School Building Committee ("SBC") before the April 23 letter was sent to AMMIC. At its meeting of March 19, 2003, the architect's project manager, Lee Dore, told the Town's School Building Committee ("SBC") about another project under construction where the contractor was late. Griffin Aff. Exh. 16. The minutes of the SBC's March 19, 2003 meeting state that "on that project the Town's attorney agreed to withhold liquidated damages from requisitions and placing [sic] them in an escrow account. This way the Town is still holding on to funds for liquidated damages that under typical situations would already be paid to the Contractor and difficult to recover. DW will keep the committee informed of this project." Griffin Aff. Exh. 16.

23.    The subject of Sciaba's lateness came up again at the SBC meeting on April 2, 2003.  Griffin Aff. Exh. 17.  The SBC asked that the architect issue a memo listing outstanding items on the critical path.  *Id.* at ¶3.  It also asked that the architect investigate a projected completion date based on manpower history and payment requisitions.  *Id.* at ¶4.  The minutes stated that "the committee is concerned that potential liquidated damage costs will be very high and question if the contractor's retainage alone could cover these costs."  *Id.*  Superintendent O'Neill, who attended that meeting, explained that "the building committee was looking for documentation with regard to their concerns about the schedule.  And it was felt that another way to do that would be to formalize a budget and a manpower summary report."  Griffin Aff. Exh. 18 at 61:9-13.  In the notes he made of that meeting, Mr. O'Neill wrote "Penalties will exceed retainage."  Griffin Aff. Exh. 19.  One of the SBC Co-Chairs, Mr. Murray, had done some mental calculations of the amount of liquidated damages and had concluded that "they were going to be very high."  Griffin Aff. Exh. 15 at 94:10-24.

24.    Between April 2 and the SBC's next meeting on April 16, 2003, Lee Dore prepared a projected completion date of *January 2005*, based upon the rate at which Sciaba had been drawing down contract funds.  Griffin Aff. Exh. 20; Griffin Aff. Exh. 7 at 127-33; Griffin Aff. Exh. 18 at 68-69.  Such a completion date would be more than a year beyond December 15, 2003, the date North Brookfield considered the date for completion under the contract.  The minutes of the April 16 meeting reflect that the architect "and the Committee are very concerned that this schedule will not be completed anywhere near the contract timeframe.  … The Committee noted that additional costs will be incurred to pay the architect and construction manager beyond the scheduled substantial completion dates.  These funds will be made up by liquidated damages of $1,000 per day … . Liquidated damages are estimated at over $400,000

based on the projected completion date."  Griffin Aff. Exh. 21 ¶ 5.  If substantial completion was

14 months late, that would translate to about 425 days, or $425,000 at $1,000 a day .

[Arithmetic.]

25.    By April 16, North Brookfield believed that substantial completion was going to

be 14 months late.  SBC Co-Chair Murray so testified as a Rule 30(b)(6) witness for the Town:

Q.  So after hearing Dore and Whittier's presentation at the April 16 meeting,
did you believe that substantial completion was going to be 14 months late?

A.  Yes.

Q.  Did anybody who attended that meeting disagree with that conclusion or
voice disagreement with that conclusion?

A.  No.

Griffin Aff. Exh. 15 at I:97:14-22.

26.    As of April 16, 2003, North Brookfield knew that the amount of retainage it was

holding back from Sciaba, which at the time was approximately $235,000, was insufficient to

cover the projected liquidated damages.  Griffin Aff. Exh. 15 I:99:7-20.

27.    Between the April 16 meeting and May 21, 2003, the date the first of the May

Payments was delivered to Sciaba, an additional 35 days passed.  [Arithmetic.]  Very little

progress was made during that time.  Anastasio Aff. ¶8.  The April 16 analysis showed that, as of

the end of March, 2003, there was $9,518,000 of work left to do and only 8½ months left from

April through December 15.  Griffin Aff. Exh. 20; arithmetic.  Thus, Sciaba would have to work

at the rate of $1,119,765 a month in order not to lose more ground.  [Arithmetic.]

28.    Sciaba's requisition for the month of April was only approved for payment of

$443,733.  Griffin Aff. Exh. 22, at cover page.

29.    North Brookfield believed that Sciaba had fallen another month behind by the end

of May, 2003.  Griffin Aff. Exh. 15 at 137:7-16.  Another month of delay would result in another

$30,000 of liquidated damages being added to the $425,000 estimated in April, for a total of $455,000.  [Arithmetic.]

30.    On May 21, when Requisition 12 was paid to Sciaba, North Brookfield was only holding $248,013 in retainage, Griffin Aff. Exh. 8, at cover page, and on May 27, when Requisition 13B was paid, it held only $271,366.  Griffin Aff. Exh. 22, at cover page.

31.    This retainage was $184,634 less than the fair value of North Brookfield's estimated claim for liquidated damages.  [Arithmetic.]

32.    North Brookfield made no additional retention from either May payment beyond the usual 5% retainage.  Compare Town's Facts ¶9 second sentence; Griffin Aff. Exhs. 8, 22.

33.    The category of "general conditions" or "general requirements" under the Contract consisted of the general contractor's field overhead, and included such items as the job superintendent, field offices, temporary utilities, and documentation requirements.  Typically, the costs under this Division are incurred fairly evenly over the life of the project, generally in proportion to the progress of the work.  For that reason, one would ordinarily expect approval of this item for payment to be roughly proportional to the overall job progress, measured in terms of price.  Anastasio Aff.  ¶9.

34.    At the job meeting with Sciaba on May 28, 2003, the day after North Brookfield released payment on Requisition 13B to Sciaba, the architect raised with Sciaba for the first time the issue of the rate at which Sciaba was being paid for General Conditions under the contract.  Griffin Aff. Exh. 23 at NB36946 Item 27.1.  Sciaba had billed for General Conditions at the rate of about $35,000 a month, and cumulatively almost 72% of the total amount available for that Division ($609,353).  Griffin Aff. Exhs. 8, 22 at line 00299.

35.    The April 16 analysis shows that Sciaba's overall work was only 35.6% complete. Griffin Aff. Exh. 20.

36.    At the time of the May payments, North Brookfield was only holding about $200,000 left in that Division to cover the remaining time. Griffin Aff. Exh. 22. If Sciaba continued to bill at that rate of billing, it would exhaust the funds before the end of 2003. [Arithmetic.] Given North Brookfield's belief at the May 28 job meeting that the work would not even be done by the end of 2004, North Brookfield requested a reduction in the rate of billing based upon an updated projected completion date in a forthcoming schedule. Griffin Aff. Exh. 23 at NB36946 Item 27.1; Griffin Aff. Exh. 8 at line 00299. Sciaba's Project Manager, Matt Daly, responded that he was receptive to a reduction in the rate of billing, as long as it covered his cost. They would divide the balance by the months left according to the new completion date. *See* Griffin Aff. Exh. 24 at NB38358; Exh. 18 at I:87:17-88:1.

37.    Before releasing the May payments to Sciaba, North Brookfield was holding $250,797 for General Conditions. Griffin Aff. Exh. 6 at line 00299.

38.    The Contract included the AIA General Conditions. Griffin Aff. ¶25, Exh. 25; Griffin Aff. Exh. 15 at I:53.

39.    At the May 21 meeting, Stephen Beatty, of AMMIC, asked the Town's representatives at the meeting to advise him before any payments were in fact going to be made. Beatty Aff. ¶5.

40.    Neither Mr. Beatty nor Mr. Anastasio ever heard any representative of North Brookfield ever ask whether the Town should begin making payments to AMMIC rather than to Sciaba. Anastasio Aff. ¶ 13; Beatty Aff. ¶ 4.

41.     On or about April 3, 2003, Lee Dore faxed a memorandum to Sciaba's Project Manager, Scott Finneran, once again requesting assurances that Sciaba could rectify numerous performance issues on the Project.  Griffin Aff. ¶26, Exh. 26.

Respectfully submitted,

**AMERICAN MANUFACTURERS**
**MUTUAL INSURANCE COMPANY**

By its attorneys,

**HOLLAND & KNIGHT LLP**


*/s/ Deborah S. Griffin*
Deborah S. Griffin, BBO #211460
Jeff D. Bernarducci, BBO #657454
10 St. James Avenue
Boston, MA  02116
Tel:     (617) 523-2700
Fax:     (617) 523-6850

Dated: January 25, 2006

# 3463541_v1
431261.00002

15