UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY,<br>                    Plaintiff,<br><br>vs.<br><br>TOWN OF NORTH BROOKFIELD,<br>                    Defendant. | Civil Action No. 03-40266-CBS |

AFFIDAVIT OF RICHARD P. ANASTASIO IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

I, Richard P. Anastasio, have personal knowledge of the following, except where stated to be upon information and belief.  I make this affidavit in support of Plaintiff's Opposition to Defendant's Motion for Partial Summary Judgment.  Capitalized terms that I have not defined herein will have the meanings ascribed to them in AMMIC's Memorandum in Opposition to Defendant's Motion for Partial Summary Judgment.

1.   I am a registered professional engineer and a principal in the firm of GREYHAWK North America, LLC.  A copy of my current biography, in summary form, is attached as Exhibit 1 to my Affidavit in Support of Plaintiff's Motion for Summary Judgment on Count II of Defendant's Counterclaim [docket #58].

2.   In the course of investigating the North Brookfield project and identifying subcontractors to Sciaba, after May 30, 2003, I contacted Holyoke Equipment Company, Inc. ("Holyoke"), the kitchen equipment subcontractor Sciaba had hired on the Project.

3.   I obtained from Sciaba its accounts payable records and from Holyoke its records of billings and payments on the Project.  On the basis of my review of those business records, I

determined that Sciaba had not made any payments to Holyoke for equipment supplied through May, 2003.

4. Attached hereto as Exhibit 1 is a true and accurate copy of the Ratification Agreement I negotiated with Holyoke in connection with securing Holyoke's continued performance on the Project. Recital F line 10 reflects that Holyoke had not received any payments from Sciaba.

5. In the course of investigating the North Brookfield project and identifying subcontractors to Sciaba, after May 30, 2003, I contacted Wayne J. Griffin Electric, Inc. ("Griffin Electric"), the electrical subcontractor Sciaba had hired on the Project.

6. I obtained from Sciaba its accounts payable records and from Griffin Electric its records of billings and payments on the Project. On the basis of my review of those business records, I determined that Sciaba cut a check to Griffin Electric in the amount of $100,937.50 on or after May 23, 2003, and delivered it to Griffin Electric but it bounced due to insufficient funds in the account.

7. Attached hereto as Exhibit 2 is a true and accurate copy of the Ratification Agreement I negotiated with Griffin Electric in connection with securing Griffin Electric's continued performance on the Project. Recital F line 10 reflects that Griffin Electric did not receive the $100,937.50 payment from Sciaba.

8. I visited the Project in the latter part of March, 2003, and again on May 13, 2003. I observed that not much work had taken place between these visits. There was some roofing, some electrical, some plumbing, piping, and some steel work, but not much else. Much less progress was made on the Project than I would have expected to be made during that time.

9. The category of "general conditions" or "general requirements" in construction contracts, and in the standard "divisions" used in the breakdowns for payment applications, ordinarily consists of the general contractor's field overhead, and included such items as the job superintendent, field offices, temporary utilities, and documentation requirements. Typically, the costs under this division of work are incurred fairly evenly over the life of the project, generally in proportion to the progress of the work. For that reason, one would ordinarily expect approval of this item for payment to be roughly proportional to the overall job progress, measured in terms of price.

10. I was invited by North Brookfield to attend a meeting with representatives of North Brookfield. I attended such a meeting on May 21, 2003.

11. The representatives of North Brookfield complained at the May 21 meeting that that various subcontractors were complaining that they were not being paid by Sciaba, that the job was substantially behind schedule, that Sciaba had failed to provide updated monthly construction schedules, and that satisfactory progress was not currently being made. They indicated that, in addition to lien waivers, Sciaba would have to submit an updated construction schedule in order to get paid. They stated they were withholding payments pending a submittal of the updated schedule. Specifically they said that the schedule would have to show a new completion date and the sequence of activities. Sciaba' representatives at the meeting stated that it would be three weeks before they would be able to submit an updated schedule.

12. No one at the May 21 meeting informed me or any other representative of AMMIC that the Town was prepared to issue checks to Sciaba before receipt of an updated schedule, much less that it had already written two checks dated May 20, totaling $696,578.23.

13. I did not hear any representative of the Town ask whether the Town should begin making payments to the surety rather than to Sciaba.

Signed under the penalties of perjury this 18th day of January, 2006.

          */s/ Richard P. Anastasio*
          Richard P. Anastasio, P.E.

# 3466864_v1
431261.00002