**EXHIBIT  1**

| | |
|---|---|
| **Contractor:** | **E.J. Sciaba Contracting Company, Inc.** |
| **Surety:** | **American Manufacturers Mutual Insurance Company** |
| **Project:** | **North Brookfield Intermediate & Senior High School** |
| **Owner/Obligee:** | **Town of North Brookfield, Board of Education** |
| **Subcontractor:** | **Holyoke Equipment Company, Inc.**<br>**109 Lyman Street, P.O. Box 708**<br>**Holyoke, MA 01041** |
| **Claim No:** | **167-SE-002-989** |
| **Bond No:** | **3SE 057 856** |

## RATIFICATION & ASSIGNMENT OF SUBCONTRACT
## & RELEASE AGREEMENT
### [Revised August 26, 2003]

This Ratification Agreement is entered into by and between the Surety and the Subcontractor identified above:

**Recitals:**

A. Contractor entered into a Contract with the Owner/Obligee on or about December 12, 2001 for the construction of the Project described above ; and

B. Subcontractor entered into a Subcontract with the Contractor on or about **June 3, 2002** to perform all work specified in **Section 11400, "Food Service Equipment"** of the Project Specifications and as more fully defined in the Subcontract with the   Contractor, such Subcontract being incorporated by reference herein; and

C. Surety provided its bond or bonds as to which the Subcontractor asserts an interest as a payment claimant; and

D. Contractor has been declared to be in default of the Contract by the Owner/ Obligee, or has voluntarily admitted default under that Contract, and its right to further perform work under the Contract have been or may be terminated; and

E. Subcontractor has made or may make demand on the Contractor and the Surety under the bond for payment of amounts claimed to be due under the Subcontract (the Bond Claim); and



F.  As of **June 1, 2003**, the statement of the Subcontract account is agreed to be as follows:

|     |                                                                   |    |            |
|-----|-------------------------------------------------------------------|----|------------|
| 1.  | Original Subcontract Amount                                       | $  | 145,000.00 |
| 2.  | Approved Change Orders                                            | $  | 0.00       |
|     | and Extra Work Contracts                                          | $  | 0.00       |
| 3.  | Adjusted Subcontract Amount                                       | $  | 145,000.00 |
| 4.  | Value of Original Subcontract Work Completed to Date              | $  | 0.00       |
| 5.  | Value of CO's and Extra Work Completed to Date                    | $  | 0.00       |
| 6.  | Materials Stored on and/or off Site                               | $  | 17,405.00  |
| 7.  | Total Work Completed to Date (4+5+6) =                            | $  | 17,405.00  |
| 8.  | Amount Retained (5%)                                              | $  | 870.25     |
| 9.  | Total Work Completed Less Retainage (7-8) =                       | $  | 16,534.75  |
| 10. | Total Previously Paid                                             | $  | 0.00       |
| 11. | Amount Currently Due (9-10) =                                     | $  | 16,534.75  |
| 12. | Value of Work Not Performed (3-7) =                               | $  | 127,595.00 |
| 13. | Subcontract Balance (8+12)=                                       | $  | 128,465.25 |
| 14. | Additional Costs Due to Price Increase on Materials               | $  | 5,667.75   |
| 15. | Adjusted Cost Subcontract Balance (13+14)=                        | $  | 134,133.00 |

and

G.  Completion of performance of the Contractor's original Contract with the Owner/Obligee has been, or may hereafter be, undertaken by Surety, or by a new contractor selected by Surety to whom completion of the Contract may be relet; and

H. Surety and Subcontractor wish to enter into an agreement pursuant to which Surety would pay to Subcontractor sums partially or wholly currently due Subcontractor, and Subcontractor would ratify and agree to perform the Subcontract, pursuant to the conditions hereinafter set forth and, to the extent not inconsistent herewith, the terms of the Subcontract.



Holyoke Equipment Co., Inc.                              North Brookfield, MA, Intermediate & Senior High School
Revised 8/26/03

## Agreement:

In consideration of the mutual agreements hereinafter set forth and the payment by Surety to Subcontractor as described below, and as an inducement therefore, the parties agree as follows:

1.  Within seven (7) business days of the execution of this Agreement by both parties, Surety will pay to Subcontractor the sum of $16,534.75. Surety acknowledges that Subcontractor continued to work past June 1, 2003, and that Subcontractor may have earned additional money, for periods ending July 1, 2003, however, such sums will be paid to Subcontractor in accordance with the terms of paragraph 11 hereof.

2.  The Amount Retained, which is set forth in recital F (8) above, will be paid to Subcontractor in accordance with the terms of paragraph 11 hereof.

3.  Subcontractor warrants that the amount claimed by Subcontractor is fully and truthfully set out in recital F (11) above, and in statements and/or invoices attached hereto, and that Subcontractor does not know of any additional credits or offsets due to Contractor in connection with the Subcontract or the Project which might reduce the amount of the Bond Claim.

4.  To the extent of the aforesaid payment, Subcontractor assigns, transfers and sets over to Surety all of Subcontractor's right, title and interest in and to any claims which Subcontractor has or may hereafter have against Contractor, and against any other entity, firm, corporation or fund, in connection with or in any way relating to payment for labor and materials furnished for the Subcontract or the Project.

5.  Subcontractor warrants that it has paid all workmen, if any, employed by Subcontractor in connection with the Subcontract, and all suppliers of materials, services, labor and equipment, if any, used by Subcontractor on the Project through June 1, 2003 and agrees to indemnify and save harmless the Surety, Contractor, and Owner/Obligee of and from any and all liability or loss whatsoever on account of any claim for payment of labor and materials furnished for the Project against the Surety, Contractor, or Owner/Obligee by any such workmen or suppliers, or because of any misrepresentation of fact by Subcontractor set forth herein, provided, however, that Subcontractor shall not be liable to indemnify or save harmless hereunder to the extent of any amounts that may be due and owing to Subcontractor hereunder or under the Subcontract.

6.  Provided Surety pays Subcontractor $16,534.75 as set forth in paragraph 1 above, Subcontractor agrees, upon request of Surety, to continue all work in progress under the Subcontract, or to resume performance of its Subcontract if Subcontractor has ceased performance.  Surety agrees to pay Subcontractor for any work performed hereunder at Surety's request at the time(s) and upon the conditions set forth in the Subcontract.

7.  Subcontractor ratifies and reaffirms the Subcontract and any Change Orders or agreed Extra Work Contracts executed or issued in connection therewith, and agrees to

3



complete performance under the Subcontract in accordance with the terms and conditions thereof, except to the extent modified by this Agreement, waiving as against the Surety any breach or default of the Contractor that has to date occurred in respect to the Subcontract. The Surety believes but does not represent that the Owner may engage a Completing Contractor to complete the Work of the Contract, and that the Owner may require that the Completing Contractor substantially complete the Contract by April 30, 2004. The Subcontractor agrees to perform the work of its Subcontract to Substantial Completion reasonably in advance of April 30, 2004, so as to enable the Completing Contractor to complete the Work of the Contract by April 30, 2004. The parties acknowledge that this date constitutes an extension of the original substantial completion date. Any additional extensions shall be governed by the terms of the Subcontract.

As further inducement to Surety for making payment at this time, the Undersigned hereby agrees that all guarantees and warranties required under the terms of the Subcontract pertaining to the work, labor and materials furnished by the Subcontractor shall remain in full force and effect in accordance with their terms, except that the term for the guarantees and the warranties shall commence upon Final Payment of the amount retained on the Subcontract with the Contractor, as modified by Paragraph 11.

If the Owner concludes that any work which the Undersigned is obligated to perform hereunder is non-conforming or unacceptable pursuant to the Subcontract, the Subcontractor shall repair and/or complete all existing non-conforming and/or unacceptable work pursuant to the terms of the Subcontract and provided Subcontractor is provided timely notice as required by its Subcontract.

8. Subcontractor understands and agrees that the work under the Contract between Contractor and Owner/Obligee may be performed by the Contractor, by the Surety, or by a Completing Contractor selected by the Surety. Subcontractor agrees that the Contractors rights under the Subcontract may be assigned or relinquished to the Surety or to a Completing Contractor.

9. In the event the Subcontract is assigned to a Completing Contractor and the Completing Contractor assumes the Subcontract and this Agreement, Surety shall not be responsible for any further payment to Subcontractor, and Subcontractor shall look to the Completing Contractor or its surety for all further payments for work which is performed from and after the date of assignment provided and on the condition that the Completing Contractor and its surety furnish a sufficient payment bond governed by M.G.L. c. 149, sec. 29. Surety represents that the Completing Contractor shall furnish a Payment Bond, which shall be in the form of a Massachusetts Statutory Bond and governed by Chapter 149, Section 29.

10. In the event the Subcontract is assigned to a Completing Contractor and the Completing Contractor assumes the Subcontract, and this Agreement and the Completing Contractor and its surety furnish a payment bond governed by M.G.L. c. 149, sec. 29, the Subcontractor releases and forever discharges Contractor, the Surety and its successors or assigns from any and all claims, demands, losses, costs, damages and expenses arising from or in any way relating to the Surety's payment bond and payment for labor and materials

4



Holyoke Equipment Co., Inc.                                North Brookfield, MA, Intermediate & Senior High School
Revised 8/26/03

furnished for the Project from and after the date of assignment. This release and discharge is conditioned upon the Completing Contractor and its surety furnishing a payment bond governed by M.G.L. c. 149, sec. 29.

11. Except as set forth below, the Amount Retained stated in recital F (8) hereof and the additional money earned by Subcontractor as stated in paragraph 1 hereof will be paid by Surety to Subcontractor in accordance with the terms of the Subcontract. In the event the Subcontract is assigned to a Completing Contractor and the Completing Contractor assumes the Subcontract and this Agreement, and the Completing Contractor and its surety furnish a payment bond governed by M.G.L. c. 149, sec. 29, the Amount Retained will be assigned to the Completing Contractor, and Subcontractor will look to the Completing Contractor or its surety for payment of the Amount Retained and the additional money earned in accordance with the terms of the Subcontract. In such case, the Surety will require that, upon the assignment, the Completing Contractor agree to promptly process the Subcontractor's requisitions for the additional money earned in accordance with the terms of the Subcontract. Retainage shall be paid to the Subcontractor within thirty (30) days after Final Completion and acceptance of the work of the Subcontract by the Completing Contractor and the Architect, notwithstanding the terms in the Subcontract to the contrary.

12. Surety hereby designates GREYHAWK, North America, L.L.C., as its agent and representative for the purpose of administering this Agreement on behalf of Surety. However, in no event shall GREYHAWK North America, L. L.C., be independently liable to the Subcontractor for any claims or alleged damages arising out of its administration of this Agreement; rather, Surety shall be liable for any such meritorious claims or damages.

IN WITNESS WHEREOF, this Agreement has been executed this 4ᵗʰ day of Sept, 2003 by:

American Manufacturers' Mutual Insurance Company

By: _____

Stephen J. Beatty, Senior Surety Counsel or by Richard P. Anastasio, P.E., on behalf of GREYHAWK North America, L.L.C. Surety's Authorized Agent


Subcontractor:        Holyoke Equipment Company, Inc.

By: _____
          (Signature)

          HAL M. SLOTNICK
          (Print Name)

Its:      PROS
          (Title)


BOS1 #1365650 v1

5

# EXHIBIT 2

| | |
|---|---|
| Contractor: | E.J. Sciaba Contracting Company, Inc. |
| Surety: | American Manufacturers Mutual Insurance Company |
| Project: | North Brookfield Jr./Sr. High School, North Brookfield, MA |
| Owner/Obligee: | Town of North Brookfield c/o School Building Committee |
| Vendor/Subcontractor: | Wayne J. Griffin Electric, Inc.<br>116 Hopping Brook Road<br>Holliston, MA  01746 |
| Claim No: | 167-SE-0002-989 |
| Bond No: | 3SE 057 856 |

## RATIFICATION & ASSIGNMENT OF SUBCONTRACT
## PURCHASE ORDER & RELEASE AGREEMENT
### {Revised September 5, 2003}

This Ratification Agreement is entered into by and between the Surety and the Vendor/Subcontractor identified above:

**Recitals:**

A. Contractor entered into a Contract with the Owner/Obligee on or about April 19, 2002  for the construction of the Project described above ; and

B. Vendor/Subcontractor entered into a Purchase Order/Subcontract with the Contractor on or about March 22, 2002 to perform all work specified in Specification **Section 16000** *"Electrical"* of the Project Contract Documents and as more fully defined in the Subcontract with the Contractor on the Project; and

C. Surety provided its bond or bonds as to which the Vendor/Subcontractor asserts an interest as a payment bond claimant; and

D. Contractor has been declared to be in default of the Contract by the Owner/Obligee, or has voluntarily admitted default under that Contract, and its right to further perform work under the Contract have been or may be terminated; and

E. Vendor/Subcontractor has made or may make demand on the Contractor and the Surety under the payment bond for payment of amounts claimed to be due under the Purchase Order/Subcontract (the Bond Claim); and



Wayne J. Griffin Electric, Inc. (Rev 9/5/03)                                North Brookfield Jr/Sr High School,

F.  As of June 1, 2003 the statement of the Purchase Order/Subcontract account is agreed to be as follows:

| | | |
|---|---|---:|
| 1 | Original Purchase Order/ Subcontract Amount | $910,915.00 |
| **2A** | **Approved Change Orders and/or Work Orders by Owner:** | |
| i | Telco Conduit to Elem. School – Proposal. 3 Reference Contract CO #2 | 5,374.00 |
| ii | PR-9 Exterior speakers – Proposal 4. Reference Contract CCD #5 | 2,411.79 |
| iii | Occupancy control lighting 13 rooms – Proposal 5. CCD #5 | 6,955.61 |
| xii | Add Alternate #3 per Contract Bid Documents Including  Permit Fee | 9,725.00 |
| | **Subtotal of (2)A.** | **$24,466.40** |
| **2B** | **Contractor Extra Work Items:** | |
| i | Install temporary heat & lights. | 1,635.00 |
| ii | T&M Wire Wet Saw | 825.00 |
| iii | Temp Service for trailers | 2,728.00 |
| v | Wire heat in lower B building | 797.00 |
| vi | Concrete for Ductbank (Credit) | (10,000.00) |
| | **Subtotal of (2) B.** | **$(4,015.00)** |
| | *Total of (2). A.  +  (2).B.* | **$20,451.40** |
| 3 | Adjusted Purchase Order/Subcontract Amount | $931,366.40 |
| 4 | Value of Original Purchase Order/ Subcontract Work Completed to Date | 336,683.00 |
| 5a | Value of  Owner CO's and Extra Work Completed to Date (2A) | - |
| 5b | Value of Contractor CO's and Extra Work Completed to Date (2B) | (4,015.00) |

2



Wayne J. Griffin Electric, Inc. (Rev 9/5/03)                                    North Brookfield Jr/Sr High School,

| | | |
|---|---|---|
| 6 | Materials Stored on and/or off Site | - |
| 7 | Total Work Completed as of June 1, 2003 (4+5+6)= | $332,668.00 |
| 9 a | Amount Retained (5%) | $16,834.15 |
| 9 b | Total Work Completed Less Retainage (7-8) = | $315,833.85 |
| 10 | Total Previously Paid | $143,735.00 |
| 11 | Amount Currently Due (9-10) = | $172,098.85 |
| 12 | Value of Work Not Performed (3-7) = | $598,698.40 |
| 13 | Purchase Order/Subcontract Balance (8+12): | $615,532.55 |
| 14 | Additional Costs to Complete as Mutually Agreed to by Surety and Subcontractor (based upon remobilization by 9/30/03 and completion by 4/30/04.) | $127,400.00 |
| 15 | Total Cost to Complete the Work (13+14) | $742,932.55 |

and

G. Completion of performance of the Contractor's original Contract with the Owner/Obligee has been, or may hereafter be, undertaken by Surety, or by a new contractor selected by Surety to whom completion of the Contract might be relet; and

H. Surety and Vendor/ Subcontractor wish to enter into an agreement pursuant to which Surety would pay to Vendor/Subcontractor sums partially or wholly currently due Vendor/Subcontractor, and Vendor/Subcontractor would ratify and agree to perform the Purchase Order/Subcontract, pursuant to the conditions hereinafter set forth.

<u>Agreement:</u>

In consideration of the mutual agreements hereinafter set forth and the payment by Surety to Vendor/Subcontractor as described below, and as an inducement therefore, the parties agree as follows:

1.    Within two (2) weeks after the earlier to occur of (a) receipt by Surety of payment from the Owner/Obligee for the requisition covering the work performed by

3



Wayne J. Griffin Electric, Inc. (Rev 9/5/03)                                        North Brookfield Jr/Sr High School,

Subcontractor through June 1, 2003, or (b) execution of this document by Subcontractor, Surety will pay to Vendor/Subcontractor the sum of **$136,119.74**, leaving a balance of **$35,979.11** as due. The balance to be paid within two (2) weeks after mobilization by the subcontractor at the Project with a full crew or payment by the owner of the requisition for the period ending June 1, 2003, whichever first occurs.

2. The amount retained, which is set forth in recital F (8) above, will be paid to Vendor/Subcontractor in accordance with the terms of paragraph 11 hereof.

3. Vendor/Subcontractor warrants that the amount claimed by Vendor/Subcontractor is fully and truthfully set out in recital F (11) above, and in statements and/or invoices attached hereto, and that Vendor/Subcontractor does not know of any additional credits or offsets due to Contractor in connection with the Purchase Order/Subcontract or the Project which might reduce the amount of the Bond Claim.

4. To the extent of the aforesaid payment, Vendor/Subcontractor assigns, transfers and sets over to Surety all of Vendor/Subcontractors right, title and interest in and to any claims which Vendor/Subcontractor has or may hereafter have against Contractor, and against any other entity, firm, corporation or fund, in connection with or in any way relating to the Purchase Order/Subcontract or the Project.

5. Vendor/ Subcontractor warrants that as of June 1, 2003 it has paid all workmen, if any, employed by Vendor/ Subcontractor in connection with the Purchase Order/Subcontract, and all suppliers of materials, services, labor and equipment, if any, used by Vendor/Subcontractor on the Project and agrees that to the extent that Subcontractor's actions or inactions caused the loss or claim, to indemnify and save harmless the Surety, Contractor, and Owner/Obligee of and from any and all liability or loss whatsoever on account of any claim against the Surety, Contractor, or Owner/Obligee for causes occurring before June 1, 2003 by any such workmen or suppliers, or because of any misrepresentation of fact by Vendor/Subcontractor set forth herein.

6. Vendor/Subcontractor agrees, upon request of Surety, to continue all work in progress under the Purchase Order/Subcontract, or to resume performance of its Purchase Order/Subcontract if Vendor/Subcontractor has ceased performance, using a full crew and will be substantially complete (as that term is used in the Subcontract) on or before April 30, 2004. Surety agrees to pay Vendor/Subcontractor for any work performed hereunder at Surety's request at the time(s) and upon the conditions set forth in the Purchase Order/Subcontract.

7. Vendor/Subcontractor assigns ratifies and reaffirm the Purchase Order/Subcontract and any Change Orders or Extra Work Contracts executed or issued in connection therewith, and agrees to complete performance under the Purchase

4

Order/Subcontract in accordance with the terms and conditions thereof, except to the extent modified by this Agreement, waiving any breach or default of the Contractor that has to date occurred in respect to the Purchase Order/Subcontract.

As further inducement to Surety for making payment at this time, the Undersigned hereby agrees that all guarantees and warranties required under the terms of the Contract pertaining to the work, labor and materials furnished by the Vendor/Subcontractor shall remain in full force and effect in accordance with their terms.

If the Owner concludes that any work which the Undersigned is obligated to perform under its Work Agreement is non-conforming or unacceptable, the Vendor/Subcontractor shall repair and/or complete all existing non-conforming and/or unacceptable work to the satisfaction of the Owner.

8. Subcontractor understands and agrees that the work under the Contract between Contractor and Owner/Obligee may be performed by the Contractor, by the Surety, or by a Completing Contractor selected by the Surety. Subcontractor agrees that the Contractors rights under the Subcontract may be assigned or relinquished to the Surety, or, the Completing Contractor.

9. In the event the Contract or Purchase Order/Subcontract is assigned to a Completing Contractor that is accepted by the Owner, Surety shall not be responsible for any further payment to Vendor/ Subcontractor, and Vendor/ Subcontractor shall look to the Completing Contractor or its surety for all further payments for work which is or has been performed from and after June 1, 2003, provided that the following conditions are met: 1) Completing Contractor assumes this Ratification Agreement and acquires a performance and payment bond from a treasury listed surety in an amount no less than the amount of the Completion Contract, and 2) Subcontractor is paid the Amount Due as stated in Paragraph 1 of this Agreement.

10. In the event the Contract or Purchase Order/Subcontract is assigned to a Completing Contractor that is accepted by the Owner, the Vendor/Subcontractor releases and forever discharges, the Surety and its successors or assigns from any and all claims, demands, losses, costs, damages and expenses arising from or in any way relating to the Surety's bond or the Project for work which is performed from and after the date of assignment, provided that the conditions stated in the preceding paragraph are met.

11. Unless the Purchase Order/Subcontract is assigned to a Completing Contractor, the amount retained stated in recital F (8) hereof will be held by Surety and will be paid to Vendor/ Subcontractor in accordance with the terms of the Purchase Order/Subcontract. In the event the Purchase Order/Subcontract is assigned to a Completing Contractor, the Amount Retained will be assigned to the Completing Contractor, and Vendor/ Subcontractor will first look to the Completing Contractor or its surety for payment of the

5

Wayne J. Griffin Electric, Inc. (Rev 9/5/03)                                          North Brookfield Jr/Sr High School,

Amount Retained in accordance with the terms of the Purchase Order/Subcontract.

12. Surety hereby designates GREYHAWK, North America, L.L.C., as its agent and representative for the purpose of administering this Agreement on behalf of Surety. However, in no event, , shall GREYHAWK North America, L. L.C., be independently liable to the Vendor/ Subcontractor  for any claims or alleged damages arising out of its administration of this Agreement.

13. With the exception of warranty issues, and claims arising from the performance of this Ratification Agreement, the parties hereby waive, release and forever discharge any claims, demands or causes of action that either party may have against the other relating in any way to the Project.

IN WITNESS WHEREOF, this Agreement has been executed this 17th day of Sept 2003 by:

American Manufacturers Mutual Insurance Company

By: _____
Stephen J. Beatty, Senior Surety Counsel  or  by Richard P. Anastasio, P.E., on behalf of GREYHAWK North America, L.L.C., Surety's Authorized Agent

Vendor/ Subcontractor:    Wayne J. Griffin Electric, Inc.

By: _____
(Signature)

    Wayne J. Griffin
_____
(Print Name)

Its:    President
_____
(Title)

BOS1 #1358665 v2

6

