UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 03-40266 CBS

AMERICAN MANUFACTURERS MUTUAL
INSURANCE COMPANY,

    Plaintiff

v.

TOWN OF NORTH BROOKFIELD,

    Defendant

### DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON COUNT II OF DEFENDANT'S COUNTERCLAIM

1. Admitted for purposes of summary judgment.

2. Admitted for purposes of summary judgment.

3. Admitted for purposes of summary judgment.

4. Admitted for purposes of summary judgment.

5. Denied. According to his deposition testimony, Richard P. Anastasio first became involved with the North Brookfield Jr./Sr. High School Project ("Project") in March of 2003. See Affidavit of Thomas W. McEnaney, Exhibit A at page 31 ("McEnaney Affidavit").

6. Admitted that Mr. Anastasio is a registered engineer and has experience in the construction industry. The Town has no basis to challenge his characterization of his experience in the field of construction.

7. Admitted for purposes of summary judgment.

8. Admitted for purposes of summary judgment.

9. Admitted that Mrs. Griffin is an attorney who practices in the field of construction law. The Town has no basis to challenge the remaining statements regarding her experience.

10. Admitted for purposes of summary judgment. The Town further states that the meeting was requested for a number of reasons in addition to performance issues, as set forth in the Affidavit of Deborah S. Griffin in Support of Plaintiff's Motion for Summary Judgment on Count II of Defendant's Couterclaim, Exhibit 6 ("Griffin Affidavit").

11. Admitted for purposes of summary judgment.

12. Admitted for purposes of summary judgment.

13. Admitted that Sciaba authored such a letter dated May 30, 2003. The Town states that the letter was never sent to the Town until June 5, 2003. See Griffin Affidavit, Exhibit 8.

14. Admitted for purposes of summary judgment.

15. Admitted for purpose of summary judgment.

16. Admitted for purposes of summary judgment.

17. Admitted that Attorney Griffin advised Attorney McEnaney that AMMIC waived the conditions precedent to the Town's ability to immediately declare a contractor default and termination in a letter but state that the letter, which was sent by certified mail return receipt requested, is dated June 5, 2003 (sic). See Griffin Affidavit, Exhibit 13.

18. Admitted for purposes of summary judgment.

19. Admitted for purposes of summary judgment.

20. Admitted that Mr. Anastasio prepared a Project status report dated July 21, 2003.

21. Admitted for purposes of summary judgment.

22. Admitted for purposes of summary judgment.

23. Admitted for purposes of summary judgment.

24. Admitted for purposes of summary judgment.

25.   Admitted for purposes of summary judgment.

26.   Admitted for purposes of summary judgment.

27.   Admitted for purposes of summary judgment.

28.   Admitted that interested contractors submitted bids on September 8, 2003 and that the bids were higher than AMMIC expected.

29.   Admitted for purposes of summary judgment.

30.   Admitted for purposes of summary judgment.

31.   Admitted that three best and final bids for completion of the Project were received on October 17, 2003 and that all bids were higher than AMMIC's estimated cost to complete and that the low bid of Fontaine Bros., Inc. ("Fontaine") was even higher than its initial bid.

32.   [INTENTIONALLY LEFT BLANK BY AMMIC]

33.   Admitted for purposes of summary judgment.

34.   Admitted for purposes of summary judgment.

35.   Admitted for purposes of summary judgment. The Town further states that the issue of the Town's claim for additional design and construction management costs was discussed at the October 15, 2003 meeting among counsel for the Town and Attorney Griffin and Mr. Beatty, and that the Town provided additional information concerning its claim in letters from Attorney McEnaney to Attorney Griffin dated November 3, 2003 and November 12, 2003. Griffin Affidavit, Exhibits 29 and 39.

36.   Admitted for purposed of summary judgment.

37.   Admitted for purposes of summary judgment.

38.   Admitted for purposes of summary judgment. The Town further states that the issue of the Town's claim for additional design and construction management costs was discussed at the October 15, 2003 meeting among counsel for the Town and with Attorney Griffin and Mr.

Beatty, and that the Town provided additional information concerning its claim in letters from Attorney McEnaney to Attorney Griffin dated November 3, 2003 and November 12, 2003. Griffin Affidavit, Exhibits 29 and 39.

39.    Admitted for purposes of summary judgment.

40.    Admitted for purposes of summary judgment. The Town further states that the contract contained terms that were different than those contained in the RFP and from those assented to by the Town.

41.    Admitted for purposes of summary judgment.

42.    Admitted for purposed of summary judgment.

43.    Admitted for purposes of summary judgment. The Town further states that the issue of the Town's claim for additional design and construction management costs was discussed at the October 15, 2003 meeting among counsel for the Town and Attorney Griffin and Mr. Beatty, and that the Town provided additional information concerning its claim in letters from Attorney McEnaney to Attorney Griffin dated November 3, 2003 and November 12, 2003. Griffin Affidavit, Exhibits 29 and 39.

44.    Denied. Fontaine's bid price increased by $290,934.00 between October 17, 2003 and December 15, 2003. Compare McEnaney Affidavit, Exhibits K and L.

45.    Admitted for purposes of summary judgment.

46.    Admitted that prior to signing the contract and after being selected by AMMIC as the completion contractor, Fontaine objected to the original completion dates as set forth in the RFP and with the so-called latent defect provision of the completion contract. Denied that Attorney Griffin requested input from Attorney McEnaney prior to November 7, 2003. See Griffin Affidavit, Exhibit 39.

47.    Admitted for purposes of summary judgment.

4

48.    Denied. Billing records for Attorney McEnaney indicate that he had a telephone conference with Attorney Griffin on November 10, 2003. McEnaney Affidavit, Paragraph 14.

49.    Admitted for purposes of summary judgment.

50.    Admitted for purposed of summary judgment.

51.    Admitted for purposes of summary judgment.

52.    Admitted for purposes of summary judgment, but deny that said response was unresponsive.

53.    Admitted for purposes of summary judgment.

54.    Admitted for purposes of summary judgment.

55.    Admitted for purposes of summary judgment.

56.    Admitted for purposes of summary judgment.

57.    Admitted for purposes of summary judgment.

58.    Admitted that the winning contractor was required to obtain a performance bond, but denied that the form of bond was included in the contract documents. See Affidavit of Lee P. Dore, ¶¶ 8-10.

59.    Denied. See Affidavit of Lee P. Dore, ¶¶ 8-10.

60.    Denied. This statement fails to comply with Local Rule 56.1.

II.    DEFENDANT'S STATEMENT OF ADDITIONAL MATERIAL FACTS REGARDING COUNT II OF DEFENDANT'S COUNTERCLAIM

1.    Stephen J. Beatty, AMMIC's then Senior Surety Counsel, first became aware of claims activity on the Project in January 2003. McEnaney Affidavit, Exhibit A at p. 17.

2.    Prior to May 16, 2003, Mr. Beatty undertook no independent analysis of the Project and merely relied on the investigation that Richard P. Anastasio, AMMIC's consultant, was performing on the Project. McEnaney Affidavit, Exhibit A at pp. 18-20.

3.    Mr. Anastasio's real investigation of the Project did not occur until the weeks following a May 21, 2003 meeting that he attended with representatives of the Town, Dore & Whittier, Sciaba, Sciaba's counsel, AMMIC and its counsel.  McEnaney Affidavit, Exhibit B at pp. 47-48.

4.    Mr. Anastasio made a visit to the Project site in March of 2003, but was unaware of any claims activity on the Project and decided to visit the site only as part of his investigation of another Sciaba bonded project.  McEnaney Affidavit, Exhibit B at pp. 31-34.

5.    In the course of his "investigation," Mr. Beatty never visited Sciaba's place of business. McEnaney Affidavit, Exhibit A at p. 24.

6.    As of March 2003, Mr. Beatty did not know much about Sciaba's financial status. McEnaney Affidavit, Exhibit A at p. 26.

7.    The first inquiry that AMMIC made of the Town concerning the status of the Project was on or about October 27, 2004, after Sciaba defaulted and AMMIC had filed suit against the Town, when AMMIC sent a Bond Status Request Form to the Town.  McEnaney Affidavit, Exhibit A at p. 43.

8.    In a letter dated November 19, 2002, Springfield Steel Erectors, Inc. informed AMMIC that it was making a claim against the payment bond for the project for unpaid subcontract balances.  McEnaney Affidavit, Exhibit C.  As of May 10, 2005, Mr. Beatty had no recollection of any investigation concerning the claim.  McEnaney Affidavit, Exhibit A at pp. 51-52.

9.    Mark Equipment Corp. submitted a proof of claim to Kemper Insurance Companies and AMMIC on January 15, 2003 in the amount of $68,200.00 for unpaid subcontract balances on the Project.  McEnaney Affidavit, Exhibit D.  As of May 10, 2005, Mr. Beatty acknowledged that he would have been responsible for any investigation, but had no recollection of any action that he took in response to the claim.  McEnaney Affidavit, Exhibit A at pp. 54-55.

6

10.     Mr. Beatty was copied on a letter from Springfield Steel Erectors, Inc. to the Town, AMMIC and Sciaba dated March 5, 2003 asserting a payment bond claim in the amount of $40,461.32.  McEnaney Affidavit, Exhibit E.  As of May 10, 2005, Mr. Beatty had no recollection of any investigation taken in response to the claim.  McEnaney Affidavit, Exhibit A at pp. 59-60.

11.     Prior to March 6, 2003, Greenwood Industries, Inc. made claim against the payment bond issued by AMMIC and furnished to the Town by Sciaba for the Project.  Mr. Beatty sent a letter dated March 6, 2003 to Sciaba requesting information regarding the Greenwood, Mark Equipment and Springfield Steel claims.  McEnaney Affidavit, Exhibit F.  As of May 10, 2005, Mr. Beatty had no recollection of any response or action that he took regarding the Greenwood claim.  McEnaney Affidavit, Exhibit A at p. 63.

12.     In a letter dated April 7, 2003 to AMMIC, American Equipment Rentals made a payment bond claim.  McEnaney Affidavit, Exhibit G.   As of May 10, 2005, Mr. Beatty had no recollection of any investigation or action that he took in response to the claim.  McEnaney Affidavit, Exhibit A at pp. 64-65.

13.     As of April 2003, Mr. Beatty had not made an evaluation of Sciaba and its ability to perform the work of the Project.  McEnaney Affidavit, Exhibit A at pp. 65-66.

14.     As of May 10, 2005, Mr. Beatty acknowledged that the Town and project architect could have relevant information concerning the status of completion of various work items for which a claimant may be seeking compensation from the surety, but did not contact the Town or project architect to investigate any of the claims made against Sciaba.  McEnaney Affidavit, Exhibit A at pp. 68-69.

15.     As of May 23, 2003, Mr. Anastasio had not reviewed any of Sciaba's proposed Project schedules.  McEnaney Affidavit, Exhibit B, at p. 85.

16.     Mr. Anastasio was not aware that Sciaba had bounced checks to its vendors on the Project until after May 23, 2003.  McEnaney Affidavit, Exhibit B at p. 96.

17.     Mr. Anastasio has testified that between May 21 and 30, 2003, he and AMMIC did nothing to investigate Sciaba or the Project other than receive some documents.  McEnaney Affidavit, Exhibit B at p. 103.

18.      AMMIC has no written policies or procedures or internal guidelines for the handling of claims.  McEnaney Affidavit, Exhibit A at p. 21.

19.     AMMIC does not provide any formal training to its claims analysts and associates. McEnaney Affidavit, Exhibit A at p. 78.

20.     Mr. Anastasio stated to representatives of the Town at the August 6, 2003 meeting that AMMIC could have a contractor selected within ten days of receipt of the bids from prospective contractors.  McEnaney Affidavit, Exhibit B at p. 133.

21.     AMMIC issued a Request for Proposals ("RFP") soliciting bids for the completion contract on or about August 18, 2003.  McEnaney Affidavit, Exhibit H.

22.     The RFP specifically stated that a notice to proceed would issue the week of September 12, 2003 and that the dates for substantial completion were for April 30, 2004 for the building and August 1, 2004 for the abatement work, demolition and removal of the existing building, total project completion and demobilization.  McEnaney Affidavit, Exhibit H.

23.     The Town assented to the substantial completion dates.  McEnaney Affidavit, Exhibit B at p. 138.

24.     The dates set forth in the RFP were not amended by any addendum that was issued. McEnaney Affidavit, Exhibit B at pp. 139-140 and Exhibit I.

25. Fontaine's bid dated September 8, 2003 was based on the terms contained in the RFP issued by AMMIC on or about August 18, 2003. McEnaney Affidavit, Exhibit B at p. 141 and Exhibit J.

26. Mr. Anastasio had previously indicated that he would present a draft RFP to Attorney Griffin and Mr. Beatty by June 30, 2003. McEnaney Affidavit, Exhibit B at p. 172.

27. Mr. Anastasio recommended to AMMIC before October 29, 2003 that it tender Fontaine to the Town as the completion contractor. McEnaney Affidavit, Exhibit B at pp. 180-181.

28. AMMIC tendered Fontaine as the completion contractor on the Project on November 12, 2003. McEnaney Affidavit, Exhibit A at p. 179; Griffin Affidavit, Exhibit 31.

29. The Town provided information requested by Mr. Anastasio during the completion contract bid process and did not contribute to any delay in the selection of a completion contractor between the time when AMMIC first solicited bids and November 12, 2003, when AMMIC tendered Fontaine to the Town as completion contractor. McEnaney Affidavit, Exhibit A at pp. 185-186.

30. The Town was not involved in the negotiations between Fontaine and AMMIC relative to the completion contract documents. McEnaney Affidavit, Exhibit A, pp. 205-206.

31. On August 8, 2003, Attorney Griffin sent an e-mail to Attorney McEnaney with a Completion Contract for the Project. McEnaney Affidavit, Exhibit M.

32. As set forth in the contract sent on August 8, 2003, the time for substantial completion was April 30, 2004 for the building and August 1, 2004 for the so-called Phase 4 contract work. McEnaney Affidavit, Exhibit M.

33. The completion contract also contained a paragraph indicating that "[t]he Completion Contractor shall be responsible for any and all defects in the work which has been performed by the Former Contractor or any of its subcontractors or materialmen or is performed by the

9

Completion Contractor or any of the Completion Contractor's subcontractors or materialmen." McEnaney Affidavit, Exhibit M, paragraph 7.

34. Attorney McEnaney responded to Attorney Griffin later on August 8, 2003 with several changes to the Completion Contract, none of which addressed the dates for substantial completion, or the provision regarding defects in the work. McEnaney Affidavit, Exhibit N.

35. The completion dates set forth in the completion contract contained in Attorney Griffin's August 8, 2003 e-mail are identical to those contained in the RFP. Compare McEnaney Affidavit, Exhibits H and M.

36. In a letter dated September 4, 2003, Attorney McEnaney responded to Attorney Griffin's August 20, 2003 e-mail, in which AMMIC raised its alleged pro tanto defense. McEnaney Affidavit, Exhibit O.

37. On September 10, 2003, Attorney McEnaney sent an e-mail to Attorney Griffin requesting whether AMMIC intended to tender Fontaine to the Town as the completion contractor and asking how AMMIC intended to proceed, as the Town was informed that Fontaine had submitted the low bid in response to AMMIC's RFP. McEnaney Affidavit, Exhibit P.

38. Later September 10, 2003, Attorney Griffin replied to Attorney McEnaney indicating that AMMIC was studying the bids and considering its next steps and stating that AMMIC would advise Attorney McEnaney once a decision had been made. McEnaney Affidavit, Exhibit P.

39. In a letter dated September 16, 2003, Attorney McEnaney requested that Attorney Griffin to advise him as soon as possible when she expected a notice to proceed to issue to Fontaine as she had previously informed him that it was expected to issue on September 15, 2003. McEnaney Affidavit, Exhibit Q.

40. In that same letter, Attorney McEnaney advised Attorney Griffin that as winter conditions were quickly approaching, any further delays would likely result in an increased cost for the completion contract. McEnaney Affidavit, Exhibit Q.

41. In an e-mail dated November 4, 2003 to Attorney Griffin, Attorney McEnaney inquired whether Fontaine had been selected by AMMIC as the completion contractor as Fontaine had contacted the Town to express concern that the delays in the selection process would impact Fontaine's cost and ability to close up the building before the onset of winter conditions. McEnaney Affidavit, Exhibit R.

42. On November 4, 2003, Attorney Griffin responded to Attorney McEnaney by e-mail indicating that AMMIC had in fact selected Fontaine as completion contractor. McEnaney Affidavit, Exhibit R.

43. In an e-mail dated November 5, 2003, Attorney McEnaney advised Attorney Griffin that Fontaine presented AMMIC with a bid price strictly related to substantial completion dates and that Fontaine maintained that the Town must be made aware of the substantial completion dates. McEnaney Affidavit, Exhibit S.

44. On November 5, 2003, Attorney McEnaney forwarded to Attorney Griffin by facsimile a copy of Fontaine's letter of November 5, 2003 to Dore & Whittier stating proposed completion dates of August 21, 2004 for the building and October 15, 2004 for demolition and site work. McEnaney Affidavit, Exhibit S.

45. The revised completion contract sent by Attorney Griffin to Attorney McEnaney on November 7, 2003 included substantial completion dates of August 15, 2004 for the building and October 1, 2004 for demolition and site work. Griffin Affidavit, Exhibit 40.

46. AMMIC did not inform the Town or obtain the Town's assent to the new dates proposed by AMMIC or Fontaine, which changed substantially from those agreed to by the Town with

AMMIC.  <u>See</u> McEnaney Affidavit, Exhibit S; Affidavit of Lee P. Dore, ¶5; Affidavit of James Murray, ¶5.

47.     Fontaine advised the Town that it would only abide by its scheduled substantial completion dates if Fontaine started the Project by November 10, 2003.  <u>See</u> McEnaney Affidavit, Exhibit S.

48.     In an e-mail dated November 6, 2003, Attorney Griffin informed Attorney McEnaney that she had been talking with counsel for Fontaine regarding the inconsistencies in the completion dates.  McEnaney Affidavit, Exhibit T.

49.     In a letter dated November 5, 2003, Attorney McEnaney informed Attorney Griffin that the Town took issue with AMMIC's position concerning alleged overpayments by the Town on the Project, and its alleged pro tanto defense.  McEnaney Affidavit, Exhibit U.

50.     By e-mail and letter dated November 12, 2003, Attorney McEnaney again informed Attorney Griffin that the Town had issues with the proposed completion contract, including the completion dates and the so-called latent defects provision.  Attorney McEnaney also noted that the balance held by the Town for the contract with Sciaba was less than the amount of the proposed completion contract and advised Attorney Griffin that the Town could not enter into a contract unless sufficient funds had been appropriated therefor.  McEnaney Affidavit, Exhibits V and W.

51.     In a letter dated November 14, 2003 to Attorney Griffin, Attorney McEnaney again raised issues that the Town had relative to the proposed completion contract that AMMIC tendered to the Town on November 12, 2003.  McEnaney Affidavit, Exhibit X.

52.     In a letter dated November 21, 2003, Attorney Griffin informed Attorney McEnaney that AMMIC had made further revisions to the completion contract, specifically to the amount of the completion contract.  McEnaney Affidavit, Exhibit Y.

53.     In a letter dated November 25, 2003, Attorney McEnaney informed Attorney Griffin that according to Fontaine's counsel, Fontaine's bid only included the work identified in a so-called Deficiency Repair Log, a copy of which was included with the letter.  The letter stated that the Town would require written acknowledgement from AMMIC regarding its responsibility for the cost of any deficient, defective, deteriorated, or otherwise unacceptable work performed by Sciaba on the Project.  McEnaney Affidavit, Exhibit Z.

54.     On December 3, 2003, AMMIC delivered to Attorney McEnaney two checks payable to the Town in the total amount of $2,538,838.37 unconditionally and a third check payable to the Town in the amount of $659,157.80 under a reservation of rights.  McEnaney Affidavit, Exhibit AA.

55.     In a letter dated December 3, 2003, Attorney Griffin informed Attorney McEnaney that AMMIC had filed an Amended Complaint against the Town as of December 3, 2003. McEnaney Affidavit, Exhibit BB.

56.     In a letter dated December 5, 2003, Attorney McEnaney advised Attorney Griffin that it was the Town's position that AMMIC's filing suit while negotiations were on-going and conduct with regard to the tendering of the completion contractor, assertion of meritless defenses and the filing of a lawsuit while negotiations were ongoing constituted unfair and deceptive practices in violation of G.L. c. 93A and c. 176D.  McEnaney Affidavit, Exhibit CC.

57.     On December 15, 2003, AMMIC made an additional payment to the Town in the amount of $125,000.00 under a reservation of rights.  McEnaney Affidavit, Exhibit DD.

58.     Negotiations were ongoing at the time AMMIC filed suit against the Town.  McEnaney Affidavit, Exhibit A at p. 197.

59. The Town is seeking an additional $1,486,383.46[1] plus interest and attorneys' fees from AMMIC as a result of Sciaba's voluntary default on the Project. See Town's Voluntary Disclosure Pursuant to Fed.R.Civ.P. 26(a)(1).

60. AMMIC is seeking reimbursement of $784,157.80, the total amount of the two checks issued to the Town under a reservation of rights. See Plaintiff's Initial Disclosures.[2]

          TOWN OF NORTH BROOKFIELD

          By its attorneys,

          /s/Thomas W. McEnaney
          David J. Doneski (BBO# 546991)
          Thomas W. McEnaney (BBO# 629130)
          Kopelman and Paige, P.C.
          Town Counsel
          31 St. James Avenue
          Boston, MA 02116
          (617) 556-0007

271453/NBRO-HS/0019

---

[1] Since the Town filed its Voluntary Disclosure, AMMIC has paid Sciaba's outstanding Keyspan bill. As a result, the Town is not seeking compensation for that item, so the Town's damages have decreased by $16,719.40.

[2] AMMIC actually claims damages in the amount of $785,266.52 plus interest, costs, and attorneys' fees. See Plaintiff's Initial Disclosures.