UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 03-40266 CBS

AMERICAN MANUFACTURERS MUTUAL
INSURANCE COMPANY,

    Plaintiff

v.

TOWN OF NORTH BROOKFIELD,

    Defendant

<u>DEFENDANT'S MEMORANDUM OF REASONS IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT
AS TO COUNT II OF DEFENDANT'S COUNTERCLAIM</u>

The plaintiff, American Manufacturers Mutual Insurance Company ("AMMIC"), has moved for summary judgment with respect to the Town of North Brookfield's (the "Town's") counterclaim against AMMIC for violation of G.L. c. 93A and G.L. c. 176D. The Town opposes AMMIC's motion because there remain several outstanding disputed issues of material fact to be decided by the Court and because summary judgment is an inappropriate means through which to dispose of the Town's claim.

I.     SUMMARY OF DISPUTED MATERIAL FACTS

AMMIC was informed of a prospective claim against its payment bond as early as November 19, 2002. <u>Defendant's Response to Plaintiff's Statement of Undisputed Facts in Support of Plaintiff's Motion for Summary Judgment on Count II of Defendant's Counterclaim, Section II</u> ("Defendant's Response"), ¶ 8. Over the course of the five months following that date, at least four subsequent subcontractor payment bond claims were made in writing to

AMMIC.  Defendant's Response, ¶¶ 8-12.  AMMIC's then senior surety counsel, Stephen J. Beatty had no recollection as of May 10, 2005 of any investigations or actions taken by AMMIC in response to these claims, though he acknowledged that he would be the individual responsible for investigating such claims on behalf of AMMIC.  Id.  Indeed, notwithstanding these unmistakable indicators of Sciaba's imperiled status, AMMIC failed to conduct any meaningful investigation of the Project until Richard P. Anastasio, its consultant, began an investigation sometime after May 30, 2003.  Defendant's Response, ¶¶ 2, 3, 17.  Prior to that time period, Mr. Anastasio had not reviewed any of Sciaba's proposed Project schedules, and Mr. Beatty had not even visited Sciaba's place of business.  Defendant's Response, ¶¶ 15, 5.  Furthermore, Mr. Anastasio has acknowledged that, as of March, 2003, he was unaware of any claims activity on the Project.  Defendant's Response, ¶¶ 4.  His visit to the Project site that month was related to his investigation of another project for which AMMIC had issued a bond on behalf of Sciaba.  Id.  Even as late as the final week of May, 2003, Mr. Anastasio did nothing, other than receive some documents, to investigate the Project, and he was unfamiliar with material facts about Sciaba's performance on the Project, including that Sciaba was bouncing checks on the Project. Defendant's Response, ¶¶ 16, 17.

Mr. Anastasio's inadequate investigation of Sciaba and the Project was complemented by an even meeker effort from Mr. Beatty.  Prior to May 16, 2003, Mr. Beatty undertook no independent analysis of the Project.  Defendant's Response, ¶2.  Though Mr. Beatty initially became aware of claims against the payment bond in January, 2003, he had not made an evaluation of Sciaba and its ability to perform the work of the Project as of April, 2003, and failed to conduct any independent analysis of the Project prior to May 16, 2003, approximately four months later.  Defendant's Response, ¶¶ 1, 2, 13.  Such analysis could hardly have been

2

sufficiently informed.  Indeed, Mr. Beatty never contacted the Town or the Project architect to investigate any of the claims made against Sciaba, despite his express admission that the Town and the Project architect could have germane information about such claims.  <u>Defendant's Response</u>, ¶ 14.

To be sure, the late-occurring and scarce efforts undertaken by Mr. Beatty and Mr. Anastasio in response to the many manifestations of Sciaba's failures on the Project reflect an underlying defect in AMMIC's capacity to address contractor defaults generally.  Not only does AMMIC lack any written policies, procedures or internal guidelines for the handling of claims, it neglects to provide any formal training to claims analysts and associates.  <u>Defendant's Response</u>, ¶¶ 18, 19.  AMMIC's failure to adopt and implement such standards and measures is especially troublesome with respect to transactions of the scope of the Project.  Such failure was an important cause of delays and other harm that the Town incurred in connection with this Project, particularly given the unresponsiveness of Mr. Beatty and Mr. Anastasio.

AMMIC's actions upon the Town's July 23, 2003 declaration of default were likewise deficient, including its procurement of a contractor to complete the Project.  Despite Mr. Anastasio's representations to the Town on August 6, 2003 that AMMIC could have a completion contractor selected within 10 days, and his earlier statement that he would submit a draft request for proposals for solicitation of contractor bids to AMMIC by June 30, 2003, it was not until August 18, 2003 that AMMIC issued a request for proposals (the "RFP").  <u>Defendant's Response</u>, ¶¶ 20, 21.  The RFP recited that a notice to proceed would issue during the week of <u>September 12, 2003</u> and that the dates for substantial completion were April 30, 2004 for the building and August 1, 2004 for the completion of abatement work, demolition and removal of the existing building, total project completion and demobilization.  <u>Defendant's Response</u>, ¶ 22.

3

In response to the RFP, Fontaine Bros., Inc. ("Fontaine") submitted its bid to complete the Project, dated September 8, 2003. Defendant's Response, ¶ 25. AMMIC did not inform the Town of the results on the RFP, and bid, and on September 10, 2003, the Town indicated to AMMIC through counsel that it had learned that Fontaine had submitted the lowest bid and inquired whether AMMIC intended to tender the completion contract. Defendant's Response, ¶ 37; Affidavit of Lee P. Dore, ¶ 2; Affidavit of James Murray, ¶ 2. The Town sent additional correspondence to AMMIC in the months following to inquire about the status of the bid reviews, including a letter on September 16, 2003 advising AMMIC that, given approaching winter conditions, further delays would likely result in an increased cost for the completion contract. Defendant's Response, ¶¶ 39, 40, 41, 43, 44. On multiple occasions during this time period, AMMIC adjusted its deadline for the filing of bids, and eventually asked each bidder to make its best and final bid by October 17, 2003. Counterclaim, ¶ 23, 24, 25. AMMIC did not provide copies of the responses to its request for best and final bids to either Dore & Whittier or the Town for review. Affidavit of Lee P. Dore, ¶ 3; Affidavit of James Murray, ¶ 3. On November 4, 2003, approximately two months subsequent to the date it had set for the issuance to a completion contractor of a notice to proceed, in response to the Town's request, AMMIC informed the Town that it had selected Fontaine as completion contractor. Defendant's Response, ¶¶ 41, 42. Finally, on November 12, 2003, nearly five months after Sciaba's May 30, 2003 notice to AMMIC of its voluntary default on the Project, AMMIC presented the Town with a completion contract and indicated that the Town would have to assent to its terms within two days, no later than November 14, 2003. Griffin Affidavit, Ex. 31. This two-day period represented an unreasonably abbreviated opportunity for the Town's review, and was unfairly coercive given the fact that the balance held by the Town on Sciaba's contract was less than the

4

amount of the proposed completion contract and the Town's earlier indication to AMMIC that the Town lacked legal authority to appropriate additional funds for the Project absent an affirmative Town Meeting vote to that effect.  Counterclaim, ¶ 29, Defendant's Response, ¶ 50.

The completion contract that AMMIC proffered to the Town was not only unreasonably late, it was substantially different from the version that AMMIC and the Town had initially agreed to in August, 2003.  Counterclaim, ¶ 22;  Defendant's Response, ¶ 45.  The terms of the initial agreement set forth substantial completion dates of April 30, 2004 and August 1, 2004, respectively, for completion of the building and so called "phase 4" work.  Defendant's Response, ¶ 32.  In addition, the draft agreement provided that the completion contractor "shall be responsible for any and all defects in the work which has been performed by the former contractor or any of its subcontractors or materialmen or is performed by the completion contractor or any of the completion contractor's subcontractors or materialmen."  Defendant's Response, ¶33.  In the final version of the completion contract tendered to the Town on November 12, 2003, however, AMMIC unilaterally changed these and other terms, revising the dates of completion and incorporating a provision entitling Fontaine to additional compensation for so-called "latent defects."  Counterclaim, ¶ 28; Defendant's Response, ¶¶45-46.

As a direct result of AMMIC's unreasonable delays in addressing Sciaba's manifestly imminent default and in selecting a replacement contractor, Fontaine raised its price for completion by $290,934.00.  Counterclaim, ¶¶ 29, 31.  Fontaine's contract price exceeded the Town's balance on the original contract with Sciaba by $3,473,435.82.  Counterclaim, ¶ 35.  AMMIC has not only cited a baseless pro tanto defense in refusing to pay much of this amount, but has additionally, without offering any substantiation of its reason for doing so, sought

5

$364,951.00 for purportedly excessive payments made by the Town during the course of the Project.  Counterclaim, ¶¶ 38, 40, 56.

II.     ARGUMENT

    A.     Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter law."  Fed.R.Civ.P. 56(c).  "[T]he court must look at the record in the light most favorable to the party opposing the motion and must indulge all inferences favorable to that party."  Stepanischen v. Merchants Dispatch Transportation Corp., 722 F.2d 922, 928 (1st Cir. 1983).  Summary judgment requires both the governing law and the resulting material facts to be settled.  Mass.R.Civ.P. 56(c); Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).  In this case, the pleadings, depositions, discovery responses and affidavits, particularly as they are construed in a manner favorable to the Town, each reflect several genuine disputed issues as to material facts, and warrant a denial of AMMIC's motion.

    B.     AMMIC's Motion Should be Denied Because Claims Brought Pursuant to G.L. c. 93A and G.L. c. 176D are Ill-Suited for Disposition Through Summary Judgment

Massachusetts courts have long adhered to the well-established maxim that causes of action in which state of mind, intent or motive are essential elements are inappropriate for summary judgment. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Pederson, 404 Mass. at 17 (1989); Quincy Mutual Fire Insurance Co. v. Abernathy, 393 Mass. 81, 86 (1984); Gurry v. Cumberland Farms, Inc., 406 Mass. 615, 624 (1990); FDIC v. Porter, 46 Mass.App.Ct. 241, 245 (1999); Madden v. Estin, 28 Mass.App.Ct. 392, 395 (1990).  Summary

judgment has similarly been deemed an inappropriate means of disposition with respect to claims involving a party's knowledge of bad-faith, unreasonable conduct, or unfair claim handling practices.  See O'Leary-Alison v. Metropolitan Property & Casualty Insurance Company, 52 Mass.App.Ct. 214, 217 (2001); Bolden v. O'Connor Cafe of Worcester, Inc., 50 Mass.App.Ct. 56, 66-67 (2000); and Williams v. Gulf Insurance Company, 39 Mass.App.Ct. 432, 436 (1995).

Specifically, the Supreme Judicial Court has held that motions for summary judgment in c. 93A and c. 176D cases should almost always be denied. Wheatley v. American Tel. & Tel. Co., 418 Mass. 394, 400, n. 9 (1994); Noyes v. Quincy Mutual Fire Insurance Co., 7 Mass.App.Ct. 723, 725-726 (1979).  Unfair conduct within the meaning of c. 93A, §§ 2, 9, or 11 is typically circumstantial rather than categorical. The unfair acts acquire their character from the circumstances of each case. This variable and circumstantial nature of unfair and therefore actionable conduct under c. 93A renders such claims peculiarly difficult for disposition by summary judgment. See e.g., Linkage Corp. v. Trustees of Boston University, 425 Mass. 1, 22-27 (1997); Doliner v. Brown, 21 Mass.App.Ct. 692, 698 (1986); Levings v. Forbes & Wallace, Inc., 8 Mass.App.Ct. 498, 504 (1979).

Summary judgment is also unsuitable where a claim depends upon an element of credibility.  Instead, credibility should ordinarily be evaluated upon the observation of a live witness. Smith v. Suburban Restaurants, Inc., 374 Mass. 528, 530-32 (1978); Subin v. Goldsmith, 224 F.2d 753, 757-61 (2d Cir.1955), cert. denied, 350 U.S. 883 (1956). Material questions of reasonableness of judgment or reliance are likewise typically inappropriate for resolution by summary judgment.  DeVaux v. American Home Assurance Co., 387 Mass. 814, 819 (1983) (noting that the "application of the reasonable person standard is uniquely within the competence of the jury [or judge when acting as factfinder]"); Manning v. Nobile, 411 Mass.

7

382, 388 (1991); Appleby v. Daily Hampshire Gazette, 395 Mass. 32, 37(1985); Foley v. Matulewicz, 17 Mass.App.Ct. 1004, 1005 (1984).

Moreover, even where a party moving for summary judgment appears to have a likelihood of success, such estimation of probable success does not entitle such a party to summary judgment. Attorney General v. Bailey, 386 Mass. 367, 371 (1982).

C. Summary Judgment is Inappropriate in this Case Because AMMIC's Liability Depends Upon Determinations of Reasonableness.

Though the Town alleges that AMMIC committed several of the actionable violations enumerated in Section 3(9) of c.176D, all such violations share a common element which merits parallel treatment of each by the Court in this case. Specifically, each violation requires a determination of the reasonableness of the parties' actions. Such an inquiry is not usually appropriate at the summary judgment stage. DeVaux, 387 Mass. at 819; Manning, 411 Mass. at 388; Appleby, 395 Mass. at 37; Foley, 17 Mass.App.Ct. at 1005. Instead, it is more properly decided by a factfinder on the basis of a more exacting and rigorous examination of facts conducted in a trial. AMMIC has disregarded this important principle in its motion for summary judgment, and has instead merely proclaimed AMMIC's conduct to be reasonable. AMMIC advances this blithe assertion without identifying any undisputed material facts to support it.

AMMIC's sweeping conclusion of its reasonableness is likewise unsubstantiated by any meaningful case law. Indeed, the vast majority of the cases AMMIC cites as ostensible support are neither binding nor instructive. Among them are two Massachusetts Superior Court cases which AMMIC contends are "important" to the analysis of this Federal Court: Spencer Press, Inc. v. Utica Mut. Ins. Co., 1994 WL 879732 (Mass. Super. 1994), aff'd., 42 Mass. App. Ct. 631 (1997), and Andrade v. Aetna Life and Cas. Co., 1995 WL 808695 (Mass. Super. 1995). In both Spencer and Andrade, however, the respective courts rendered their conclusions upon a trial, not

8

summary judgment, as AMMIC would have this Court do. Several of the remaining cases AMMIC cites are from courts in other jurisdictions. Such decisions do not provide compelling reasoning in the analysis of the Massachusetts statutes at issue.

Moreover, AMMIC's own motion provides support for the proposition that a summary judgment determination of the reasonableness of its conduct is particularly improper in this case. AMMIC repeatedly characterizes the underlying transaction as "complex." In offering this acknowledgment, however, AMMIC asserts that the issues to be decided in this case on the basis of these "complex" facts may be summarily decided by the Court. These positions are patently inconsistent with one another and serve only to further underscore that summary judgment is inappropriate at this stage of the litigation. Indeed, AMMIC is correct that this case involves complex circumstances and factual issues. It is for precisely this reason that the issues of reasonableness to be decided from the facts should be subjected to a more deliberate and careful scrutiny at trial. The Court, armed only with the parties' respective pleadings, affidavits and certain discovery, is ill-equipped at this stage of this case to properly render binding conclusions about these facts.

Conversely, the Town does cite a number of disputed facts that are germane to the ultimate determination of whether AMMIC acted reasonably, with respect to a host of its obligations, throughout the transactions at issue. Among those alleged facts are that AMMIC neglected to effect any meaningful or substantive response to serious manifestations of Sciaba's impending default, including a host of claims against the payment bond on the Project over the course of the eight month period directly preceding the Town's declaration of default. Defendant's Response, ¶¶ 8-17. Moreover, AMMIC's eventual response to the troubled Project proved inconsistent, unduly protracted, and resulted in a completion contract that imposed unfair

9

and oppressive terms upon the Town.  See, collectively, Defendant's Response, ¶¶ 26, 27, 28, 32, 33, 35, 37, 38, 39, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51; Counterclaim, ¶¶ 23, 24, 25, 29, 31, 35, 38, 40.  AMMIC proceeded to attempt to coerce the Town to acquiesce to the substantially changed contract terms and enter the completion contract, even as it refused to compensate the Town for much of the cost disparity.  Counterclaim, ¶¶ 28, 31 38, 40.

The foregoing conduct could easily be deemed by the Court to be unreasonable, detrimental to the Town, and in violation of the express terms of G.L. c. 176D and G.L. c. 93A.  Indeed, in order to make a determination of the reasonableness of AMMIC's conduct, the Court must determine how much money AMMIC should have paid the Town.  Absent such a determination, the Court is simply incapable of adjudicating under G.L. c. 176D and G.L. c. 93A the reasonableness of AMMIC's refusal to pay and concurrent demand for payment from the Town.

>    D.    There are Disputed Issues of Fact that are Material to the Town's
>          Allegations of AMMIC's Violations of G.L. c. 176D, § 3(9)(b)

The Town's allegation that AMMIC failed to act reasonably promptly in violation of G.L. c. 176D, § 3(9)(b) must survive summary judgment review because it is based on facts that AMMIC either disputes or fails to acknowledge.  Section 3(9)(b) of c.176D includes within its definition of actionable "unfair settlement practices" the failure "to acknowledge and act reasonably promptly upon communications with respect to claims."  Indeed, the parties allege directly contrary accounts of the actions that AMMIC undertook in response to claims against Sciaba on the Project.  AMMIC claims to have contracted Richard Anastasio in March, 2003.  The Town denies this allegation and further asserts that AMMIC repeatedly ignored notice of subcontractor claims against Sciaba dating back to November 19, 2002.  Defendant's Response, ¶¶ 1-17.  The Town further alleges that over the course of the several months subsequent to that

claim, AMMIC failed to address increasingly alarming evidence of Sciaba's demise and that, even when AMMIC finally did address the situation, its response was inadequate and resulted in substantial project delays.

AMMIC erroneously assumes in its motion for summary judgment and associated documents that its response to claims under G.L. c. 176D is to be measured from the date on which the Town declared a contractor default.  This position ignores the fact that there was an abundance of claims made against the payment bond on the Project by subcontractors over the course of the eight months directly preceding the Town's declaration of default and also contradicts its position that the Town owed a duty to AMMIC regarding the May payments. Such claims were unequivocal signs that Sciaba was on the verge of default and AMMIC's concurrent response to them would surely have spared the Town a great deal of time and expense.  In order to properly resolve these factual issues, the Court must conduct a more exhaustive examination of their merits.

      E.      <u>There are Disputed Issues of Fact that are Material to the Town's Allegations of AMMIC's Violations of G.L. c. 176D, § 3(9)(c)</u>

The relevant portion of G.L. c. 176D, § 3(9)(c) defines as an "unfair settlement practice" the failure to "adopt and implement reasonable standards for the prompt investigation of claims." The Town alleges in its Counterclaim that AMMIC wholly violated the express terms of this provision and that such failure resulted directly in severe hardship for the Town.  Specifically, the Town alleges that AMMIC failed to adopt or implement <u>any</u> standards for handling this or any other claim.  Though in its motion for summary judgment AMMIC incorrectly characterizes as "immaterial and irrelevant" its lack of written policies or manuals for handling bond claims, in fact, such a failure <u>is</u> material in this case because it provides further (indeed astonishing given the scope of the Project and the amount of work and money involved) evidence of AMMIC's

11

failure to reasonably investigate the claims against Sciaba.  Moreover, the evidence of AMMIC's failure to reasonably investigate is not limited exclusively to its lack of reasonable standards and guidelines.  The Town also alleges that AMMIC neglected to provide any formal training to claims analysts and associates.  Defendant's Reponse, ¶¶ 18-19.  Furthermore, the Town alleges that Mr. Anastasio and Mr. Beatty were each woefully unfamiliar with Sciaba and the status of the Project and surmises that a coherent standardized policy for investigating claims would have helped to prevent the delay, cost and other harms suffered by the Town in this case.

    F.    There are Disputed Issues of Fact that are Material to the Town's Allegations of AMMIC's Violations of G.L. c. 176D, § 3(9)(d) and (f)

G.L. c. 176D, § 3(9)(d) provides, in relevant part, that an "unfair claim settlement practice" shall consist of a refusal to "pay claims without conducting a reasonable investigation based upon all available information."  The Town alleges that AMMIC did indeed fail to reasonably investigate all available information in refusing to pay the full amount owed to the Town in accordance with the terms of the payment bond.  The principal basis which AMMIC has advanced to support its entitlement to a pro tanto discharge in the amount of $630,589.55 is that the Town made two payments to Sciaba which it should not have made.  This conclusion disregards the facts that the Town was legally obligated to make those payments and that AMMIC never requested that the Town direct those payments to AMMIC rather than Sciaba.  AMMIC also asserts that the Town overpaid Sciaba by $364,951.00.  The level of investigation undertaken by AMMIC with respect to this conclusion is, however, impossible to ascertain because AMMIC has simply failed to offer any explanation or basis for it.  Such an assertion will be an important subject of review for the Court during the trial in this matter.

Similarly, G.L. c. 176D, § 3(9)(f) identifies as an "unfair claim settlement practice" the failure to "effectuate prompt, fair and equitable settlements of claims in which liability has

become reasonably clear." By its express terms, this provision requires any analysis of its application to initially consider the extent to which liability has become clear. In this case, such an inquiry is literally impossible until the Court has first rendered conclusions about what liability the parties shall assume. Nor, of course, may the fairness and equity of such a settlement be ascertained without the same preliminary examination of the parties' respective liabilities under the payment bond.

Even apart from this practical point, the Town's allegation of AMMIC's violation of Section 3(9)(f) is also insulated from summary judgment review on the grounds that the Town does allege disputed material facts in support of it. Namely, AMMIC neglected to substantively investigate the various claims against Sciaba until over six months after they had first arisen. Defendant's Response, ¶¶ 2, 3, 17. AMMIC then undertook the process of selecting a completion contractor in a protracted, secretive and disorganized manner. Defendant's Response, ¶¶ 26, 27, 28, 32, 33, 35, 37, 38, 39, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51; Counterclaim, ¶¶ 23, 24, 25, 29, 31, 35, 38, 40. The terms of the eventual completion contract that AMMIC tried to pressure the Town to abruptly accept were substantially different from those terms that the Town reasonably expected to be forthcoming based on past agreements it had with AMMIC, and were patently unfair and prejudicial to the Town's interests. Defendant's Response, ¶¶ 32, 33, 35, 37, 38, 39, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51; Counterclaim, ¶¶ 29, 31, 35, 38, 39, 40. At the same time AMMIC was denying substantial payments to the Town and demanding that the Town pay AMMIC substantial sums in connection with the Project. Counterclaim, ¶¶ 29, 31, 35, 38, 39, 40, 56. The Court may not summarily disregard these glaring facts in the instant proceeding.

    G.    There are Disputed Issues of Fact that are Material to the Town's Allegations of AMMIC's Violations of G.L. c. 176D, § 3(9)(g)

The Town also alleges that AMMIC's offer to the Town in settlement of its obligations under the payment bond were designed to compel the Town to institute litigation in violation of G.L. c. 176D§ 3(9)(g). Section 3(9)(g) defines as an "unfair claim settlement practice" the act of "Compelling insureds to institute litigation to recover amounts due…by offering substantially less than the amounts ultimately recovered in actions brought by such insureds." AMMIC's reminder in its motion for summary judgment that it, and not the Town, instituted this litigation is misguided. Obviously, it was the Town, and not AMMIC that instituted the claim which is the subject of AMMIC's instant motion. That it happens to be a <u>counterclaim</u> is entirely irrelevant. Otherwise an aggrieved party would be wholly precluded from asserting a Section 3(9)(g) claim in instances in which the opposing party won the race to file an action. Such a result would produce the illogical and undesired outcome of enabling violators to freely circumvent the purposes of Section 3(9)(g).

Furthermore, as is the case with respect to Section 3(9)(d) and (f), in evaluating the Town's allegation of AMMIC's violation of Section 3(9)(g), the Court is required by the explicit terms of Section 3(9)(g) to first establish "the amount ultimately recovered in]" this action. The Town alleges that AMMIC presented it with a "lowball" offer of payment which was, in the aggregate, substantially insufficient and unreasonable. The Court's analysis of this allegation hinges almost entirely on the amount that the Court ultimately decides AMMIC should have offered. Without first deciding that question, the Court lacks the ability to render a conclusion with respect to the Town's Section 3(9)(g) claim. As such, the Court may not decide AMMIC's liability under Section 3(9)(g) in this summary judgment proceeding.

    H.    <u>The Court May Not Consider the Merits of the Town's 93A Claim Upon Summary Judgment Review</u>

AMMIC's liability under G.L. c. 93A does not derive exclusively from its violations of the various provisions of G.L. c. 176D, § 3(9). To the contrary, AMMIC's liability may likewise be grounded independently in G.L. c. 93A. Chapter 93A provides a right of action to any person who has been injured by another person's use or employment of any unfair or deceptive acts or practices in the conduct of any trade or commerce. G.L. c. 93A, § 9. AMMIC's actions with respect to the Project and the claims against the payment bond constituted, both individually and in the aggregate, unfair and deceptive practices. Many of those actions, particularly those done in connection with the selection of a completion contractor, were done willfully and with full knowledge of the expense and harm that would – and did – result to the Town. Of course, the many facts which combine to support liability must be individually considered by the Court. In undertaking these circumstantial inquiries and ultimately deciding AMMIC's liability under G.L. c. 93A, the Court will be required to consider AMMIC's state of mind, intent and motive in ascertaining the reasonableness of AMMIC's conduct and the allegations that such conduct amounted to bad faith. As such, in accordance with well-established principles consistently espoused in Massachusetts jurisprudence, the Court must decline to finally determine the merits of the Town's G.L. c. 93A claim prior to trial. Flesner, 410 Mass. at 809; Pederson, 404 Mass. at 17 ; Quincy Mutual Fire Ins. Co., 393 Mass. at 86; Gurry, 406 Mass. at 624; FDIC, 46 Mass.App.Ct. at 245; Madden, 28 Mass.App.Ct at 395; O'Leary-Alison, 52 Mass.App.Ct. at 217; Bolden, 50 Mass.App.Ct at 66-67; Williams, 39 Mass.App.Ct. at 436; Wheatley, 418 Mass. at 400, n. 9; Noyes, 7 Mass.App.Ct. at 725-726; Linkage Corp., 425 Mass. at 22-27; Doliner, 21 Mass.App.Ct. at 698; Levings, 8 Mass.App.Ct. at 504.

III.　CONCLUSION

For the foregoing reasons, the allegations contained in Count II of the Town's Counterclaim present several issues of disputed material facts relating to AMMIC's failure to: a) reasonably handle the claims against Sciaba, and b) fulfill its unmistakable obligations to oversee the completion of the Project and treat the Town fairly.  Though the Town is confident that the facts are sufficiently persuasive to compel a favorable ruling from the Court, such a result must not occur until the Court has considered independently the complicated and abundant individual facts that provide the basis for the several violations of law which the Town alleges AMMIC committed.  Therefore, the Court should deny AMMIC's motion for summary judgment with respect to Count II of the Town's Counterclaim.

　　　　　　　　　　　　　　　　　　TOWN OF
　　　　　　　　　　　　　　　　　　NORTH BROOKFIELD,

　　　　　　　　　　　　　　　　　　By its attorneys,

　　　　　　　　　　　　　　　　　　/s/Thomas W. McEnaney
　　　　　　　　　　　　　　　　　　David J. Doneski (BBO# 546991)
　　　　　　　　　　　　　　　　　　Thomas W. McEnaney (BBO#629130)
　　　　　　　　　　　　　　　　　　Peter L. Mello (BBO# 659680)
　　　　　　　　　　　　　　　　　　Kopelman and Paige, P.C.
　　　　　　　　　　　　　　　　　　　Town Counsel
　　　　　　　　　　　　　　　　　　31 St. James Avenue
　　　　　　　　　　　　　　　　　　Boston, MA 02116
　　　　　　　　　　　　　　　　　　(617) 556-0007

271570/NBRO/0019