UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 03-40266 CBS

AMERICAN MANUFACTURERS MUTUAL
INSURANCE COMPANY,

     Plaintiff

v.

TOWN OF NORTH BROOKFIELD,

     Defendant

DEFENDANT'S MEMORANDUM OF REASONS IN OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
AS TO CLAIMS FOR DIRECT PAYMENT

     American Manufacturers Mutual Insurance Company ("AMMIC") has filed a Motion for Partial Summary Judgment as to Claims for Direct Payment. However, summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Here, because AMMIC has failed to show that it is entitled to judgment as a matter of law with respect to this issue, its Motion for Partial Summary Judgment must be denied. Moreover, because there are no material issues of fact in dispute with regard to this issue and AMMIC is not entitled to judgment as a matter of law, the Town hereby requests that judgment enter in its favor with regard to the direct payment claims. National Union Fire Ins. Co. of Pittsburgh v. Lumbermens Mut. Casualty Co., 385 F.3d 47, 49 (1st Cir. 2004); See 10A Charles Alan Wright, et al., Federal Practice & Procedure, § 2720, at 347 (3d ed. 1998) ("[S]ummary judgment may be rendered in

favor of the opposing party even though the opponent has made no formal cross-motion under Rule 56.").

    A.    <u>The Town did not violate G.L. c.30, §39F</u>.

AMMIC argues that the Town violated G.L. c.30, §39F with respect to the processing of direct payments to Millis Plumbing Co., Inc. ("Millis") and Greenwood Industries, Inc. ("Greenwood"). However, this argument is misplaced. General Laws Chapter 30, Section 39F(1)(a) provides:

> Forthwith after the general contractor receives payment on account of a periodic estimate, the general contractor shall pay to each subcontractor the amount paid for the labor performed and the materials furnished by that subcontractor, less any amount specified in any court proceedings barring such payment and also less any amount claimed due from the subcontractor by the general contractor.

General Laws Chapter 30, Section 39K requires the awarding authority on a public building construction project to make prompt payments to the general contractor for work that it has completed. The general contractor, in turn, is required to pay its subcontractors the amount that has been paid to the general contractor for the subcontractors' labor and materials. G.L. c.30, §39F(1)(a-c). In the event that a general contractor fails to make a periodic payment to a subcontractor as required, the subcontractor may file a demand for direct payment with the awarding authority. <u>See</u> G.L. c.30, §39F(1)(i).

The demand letter from the subcontractor must be by sworn statement and delivered or sent by certified mail to the awarding authority and general contractor. G.L. c. 30, §39F(1)(d). "The demand letter shall contain a detailed breakdown of the balance due under the subcontract and also a statement of the status of completion of the subcontract work." <u>Id.</u> The general contractor is to submit to the awarding authority a "reply" to the demand. The reply must also be a sworn statement and must contain a detailed breakdown of the balance it claims is due under the subcontract. G.L. c.30, §39F(1)(d). Upon receipt of a properly served demand and review of

2

the general contractor's reply, if one is submitted, the awarding authority makes a direct payment to the subcontractor out of any sums owing to the general contractor. G.L. c. 30, §39F(1)(d),(f),(g). Any amounts disputed by the general contractor in its reply are to be placed by the awarding authority in a joint account in the names of the general contractor and subcontractor. G.L. c. 30, §39F(1)(f).

General Laws Chapter 30, Section 39F is designed to provide a subcontractor with a remedy when the general contractor fails to make payment of approved amounts for the subcontractor's work in accordance with the general contractor's obligations under Section 39F(1)(a). Although not expressly stated, G.L. c. 30, §39F presupposes that a subcontractor making a direct payment demand has a right to payment in the amount demanded. If the awarding authority has not paid the general contractor for the subcontractor's work in question or does not approve work performed by the subcontractor that is outside of the scope of the contract, the subcontractor does not have a right to be paid for such work. See Adalian Brothers, Inc. v. City of Boston, 323 Mass. 692 (1949); Cardi Corporation v. Sutton Corporation, et al., Suffolk Superior Court, C.A. No. 95-6027B (Lauriat, J., Memorandum of Decision and Order on Plaintiff's Motion for Summary Judgment)(work "not yet approved does not qualify or fall within the scope of the direct payment provision of G.L. c.30, §39F"). A copy of the Cardi decision is attached hereto as Exhibit A. If the statute did not exclude from its reach such unapproved work, subcontractors would have the right to demand payment for work which was unnecessary, not approved, or never even performed.

Massachusetts courts have consistently refused to construe statutes in such a manner as to produce unreasonable or absurd results. See Van Dresser v. Firlings, 305 Mass. 51, 53 (1940) (reason and common-sense are not to be abandoned when interpreting a statute). Allowing subcontractors to demand payment when they have no right to do so would encourage abuse of

3

the direct payment statute, threaten the financial stability of public construction projects, lead to an increase in payment bond claims against sureties, such as AMMIC, and overload the courts with unnecessary litigation. Such a result could not have been intended by the Legislature. Therefore, for a direct payment demand to be valid, the subcontractor must show, at a minimum, that it has a right to be compensated for the amount demanded.

Here, the Town made calculations of the amounts for which both Millis and Greenwood had a right to be compensated at the time of their demands. The calculations were based on the amount of subtrade work and change order work that had been certified for payment by the Town's architect, Dore & Whittier, and paid by the Town to the general contractor, E.J. Sciaba Contracting Company, Inc. ("Sciaba") as of the date of the respective demands for direct payment. In the case of Millis, at the time of the demand for direct payment, work in the amount of $62,078.10 had been certified as complete by Dore & Whittier, despite Millis' allegation that it had completed work in the amount of $87,118.23. See Exhibits A and C to the Affidavit of Deborah S. Griffin in Support of Plaintiff's Motion for Partial Summary Judgment as to Claims for Direct Payment ("Griffin Affidavit"). Millis' demand does not include a statement of the status of completion of the subcontract work, in violation of G.L. c.30, §39F(1)(d). See Griffin Affidavit, Exhibit A. Nevertheless, the Town made a direct payment to Millis in the amount of $3,361.81, which was determined by subtracting from the amount of subtrade work certified as complete by Dore & Whittier as of April 9, 2003, the date of Millis' demand for direct payment, 1) the amount already paid to Millis by Sciaba and 2) the amount of retainage withheld from the

4

Town's payments to Sciaba on account of Millis' subtrade work.[1]  See Griffin Affidavit, Exhibit C.

Similarly, with respect to Greenwood, at the time of the demand for direct payment (April 21, 2003), work in the amount of $48,000.00 had been certified as complete by Dore & Whittier, despite Greenwood's allegation that it had completed work in the amount of $159,579.50 as of that date.  See Griffin Affidavit, Exhibits N and O.  Greenwood's demand, likewise, did not include a statement of the status of completion of the subcontract work, in violation of G.L. c.30, §39F(1)(d).  See Griffin Affidavit, Exhibit N.  Nevertheless, the Town made a direct payment to Greenwood in the amount of $31,350.00, which was determined by subtracting from the amount of Greenwood's subtrade work certified as complete by Dore & Whittier as of the date of Greenwood's demand for direct payment, 1) the amount already paid to Greenwood by Sciaba and 2) the amount of retainage withheld from Sciaba on account of that work.  See Griffin Affidavit, Exhibit N.

According to AMMIC, Sciaba made a payment to Greenwood in the amount of $100,700.49 following receipt of payment from the Town on or about May 23, 2003. As a result, AMMIC is only seeking compensation from the Town in the amount of $5,299.51 on account of the Greenwood demand for direct payment.  Plaintiff's Statement of Undisputed Facts, ¶¶39-41, 43.

AMMIC argues that the Town had no basis to question the amount requested by Millis and Greenwood on their respective demands for direct payment.  Plaintiff's Memorandum in Support of Motion for Partial Summary Judgment as to Claim for Direct Payment, p. 6.  This position is erroneous.  As set forth above, if the awarding authority has not yet paid the general

---

[1] If the Town denied the demand outright and made no payment to Millis and Greenwood, AMMIC's claim would presumably increase by $33,443.55, as the Town would have been required to make payment to Sciaba in

5

contractor for work of a subcontractor or does not approve work performed that is outside the scope of the contract, the subcontractor does not have a right to be paid for such work. See Adalian Brothers, Inc. v. City of Boston, 323 Mass. 692 (1949); Cardi Corporation v. Sutton Corporation, et al., Suffolk Superior Court, C.A. No. 95-6027B.

AMMIC's position would also render G.L. c.30, §39K, the statute governing payments to general contractors for public building construction projects, and G.L. c.30, §39F(1)(a), quoted above and governing general contractor payments to subcontractors, meaningless. General Laws Chapter 30, Section 39K provides:

> Within fifteen days (30 days in the case of the commonwealth, including local housing authorities) after receipt from the contractor, at the place designated by the awarding authority if such a place is so designated, of a periodic estimate requesting payment of the amount due for the preceding month, the awarding authority will make a periodic payment to the contractor for the work performed during the preceding month and for the materials not incorporated in the work but delivered and suitably stored at the site (or at some location agreed upon in writing) to which the contractor has title or to which a subcontractor has title and has authorized the contractor to transfer title to the awarding authority, upon certification by the contractor that he is the lawful owner and that the materials are free from all encumbrances, but less (1) a retention based on its estimate of the fair value of its claims against the contractor and less (2) a retention for direct payments to subcontractors based on demands for same in accordance with the provisions of section thirty-nine F, and less (3) a retention not exceeding five per cent of the approved amount of the periodic payment.

Under AMMIC's view, an awarding authority could be required to make all payments to subcontractors, just because a subcontractor had filed a direct payment demand, even if the general contractor had not yet been paid for the work for which the subcontractor was seeking payment. This is clearly not the intent of G.L. c.30, §39F, which is to provide a remedy to subcontractors when a general contractor wrongfully withholds payment of amounts it has already received from an awarding authority on behalf of a subcontractor.

---

$287,556.28, the full amount certified in Sciaba's payment application No. 12.

6

Here, Millis and Greenwood only had valid claims for the amounts certified by Dore & Whittier as of the date of their respective demands for direct payment.  Since as of April 9, 2003 and April 21, 2003, the dates of the demands, Dore & Whittier had not certified Sciaba's requisition for work performed through March of 2003, Plaintiff's Statement of Facts, ¶¶ 5 and 6, Millis and Greenwood were not entitled to direct payment of the amounts sought for March as those amounts had not been paid to Sciaba.

AMMIC also argues that the Town was required to withhold the additional amounts claimed by Millis and Greenwood, rather than make payment to Sciaba, and that the Town should have made additional payments to Millis and Greenwood after Dore & Whittier's certification of additional earnings on Sciaba's payment requisition Nos. 12 and 13B.  However, the Town was required to make payments to Sciaba in accordance its statutory obligation under G.L. c. 30, §39K and the provisions of Article 5 of the General Contract and Article 9 of the General Conditions of the General Contract.  Griffin Affidavit, Exhibit K, part 1.  Griffin Affidavit, Exhibits L, part 2, and M.  Article 5 of the Contract provides that, in the event that Sciaba submitted an application for payment to the architect not later than the first day of a given month, the Town "shall make payment to the Contractor not later than the <u>fifteenth</u> day of the month."  See <u>Local Rule 56.1 Statement submitted in support of Town's Motion for Partial Summary Judgment, Exhibit B, Paragraph 5.1.3</u>.  The Contract further provides that if the application for payment is received by the architect after the first day of the month, the Town must make payment "not later than <u>fifteen</u> days after the Architect receives the Application for Payment."  <u>Id</u>.  Paragraph 9.6.1 of the General Conditions states that after the architect has certified a payment application "the Owner shall make payment in the manner and within the time provided in the Contract Documents…"  Griffin Affidavit, Exhibit L, part 2.

As set forth above, the amounts that Millis and Greenwood were entitled to on their demands for direct payment were $3,361.81 and $31,350.00, respectively. Millis and Greenwood were paid these amounts from the amount certified on Sciaba's next requisition, Payment Application No. 12, in accordance with G.L. c.30, §39F(1)(g)(all direct payments are to be made from amounts payable to general contractor). Plaintiff's Statement of Undisputed Facts, ¶¶11-14. Since the amount that each was entitled to be paid on its respective demand for direct payment was paid in full, the Town fulfilled its obligations under the statute.

If either Millis or Greenwood was not paid by Sciaba the amounts certified as payable for their subcontract work under payment application No. 12, they should have filed new demands for direct payment, alleging that amounts which had been paid to Sciaba on account of their work were not paid to them in violation of G.L. c.30, §39F(1)(a). The Town would have then been obligated to respond to the direct payment requests and make any payments to Millis and Greenwood from payment application No. 13B, which was Sciaba's next requisition approved after payment application No. 12. See G.L. c. 30, § 39F(1)(a and i); Plaintiff's Statement of Undisputed Facts, ¶18. Because neither Millis nor Greenwood filed a direct payment demand after Sciaba was paid by the Town on payment application No. 12, the Town had no basis to either withhold funds from Sciaba or make direct payments from the amounts payable to Sciaba under payment application No. 13B. See G.L. c.30, §39K and G.L. c.30, §39F(1)(a). Therefore, the Town complied with its obligation under G.L. c.30, §39F, and AMMIC cannot show that it is entitled to judgment as a matter of law with respect to this issue.

    B.    Even if the Town violated G.L. c.30, §39F, AMMIC is not entitled to a discharge of its liability in the amount of $33,443.55.

Even if the Town violated G.L. c.30, §39F with respect to the Millis and Greenwood demands for direct payment, which the Town did not, AMMIC is not entitled to a discharge of its liability

8

in the amount of $33,443.55. As set forth in the Town's Memorandum in Support of its Motion for Partial Summary Judgment, in order to avail itself of the discharge defense, a surety has "'an unusually heavy burden in showing that the determination made [to issue payment to a contractor]… was arbitrary and capricious….'" Balboa Ins. Co. v. U.S., 775 F.2d 1158, 1164 (Fed. Cir. 1985); citing Argonaut Insurance Co. v. United States, 434 F.2d 1362, 1368 (Ct. Cl. 1970). As was stated in Watertown Fire Insurance Co. v. Simmons, 131 Mass. 85, 86 (1881):

> The creditor owes no duty of active diligence to take care of the interests of the surety. It is the business of the surety to see that his principal performs the duty which he has guaranteed, and not that of the creditor. The surety is bound to inquire for himself; and cannot complain that the creditor does not notify him of the state of the accounts between him and his agent for whom the surety is liable.

In the Commonwealth of Massachusetts, in the absence of a provision in the bond to the contrary, it is the surety's obligation to keep itself informed of any defaults on the part of its principal and not the task of the creditor to inform or give notice to the surety. John W. Egan Co., Inc. v. Major Construction Management Corp., 45 Mass. App. Ct. 643 (1999).

Here, for the reasons set forth in Section A above, the Town's actions were neither arbitrary nor capricious. AMMIC, as performance and payment bond surety, had an obligation to keep itself informed of any defaults by its bond principal, Sciaba, including Sciaba's failure to pay subcontractors in violation of G.L. c.30, §39F and the General Contract. Indeed, the General Contract between the Town and Sciaba specifically references G.L. c. 30, §39F and also provides that Sciaba was required to promptly pay each subcontractor upon receipt of payment from the Town "the amount to which said [s]ubcontractor is entitled, reflecting percentages actually retained from payments to the [general] [c]ontractor on account of such [s]ubcontractor's portion of the work." Griffin Affidavit, Exhibit L, part 2, Subparagraph 9.6.2. If AMMIC wanted to know Sciaba's compliance with this requirement, it could have made an inquiry; and such an inquiry was its obligation.

Under Subparagraph 9.6.4 of the General Conditions, "[n]either the Owner nor Architect shall have an obligation to pay or to see to the payment of money to a Subcontractor except as may otherwise be required by law." Griffin Affidavit, Exhibit L, part 2. Even though the Town had no obligation to insure that Sciaba was making payments to its subcontractors for subtrade work approved by Dore & Whittier, the Contract required that Sciaba furnish lien waivers to the Town from its subcontractors as a condition of payment[2]. See Local Rule 56.1 Statement submitted in support of Town's Motion for Partial Summary Judgment, Ex. M.

AMMIC is impermissibly attempting to shift its liability, as performance and payment bond surety, to the Town because Sciaba, its principal, failed to make payments to its subcontractors as required by G.L. c. 30, §39F and its contract, and AMMIC failed to take sufficient steps to keep itself informed of Sciaba's actions. Watertown Fire Insurance Co. v. Simmons, 131 Mass. 85, 86 (1881). Such a shift is contrary to the terms of the Performance Bond, which provides that AMMIC is responsible for the correction of defective work and completion of the contract, as well as additional legal, design professional and delay costs and liquidated damages without duplication resulting from the contractor's default and actions or surety's failure to act. Town's Local Rule 56.1 Statement, Exhibit C. It is also incongruous with AMMIC's liability under the Payment Bond and G.L. c.149, §29 (requiring payment bond on public construction projects and entitling any claimant having a contractual relationship with the contractor principal furnishing the bond, who has not been paid in full for any amount claimed due for the labor, materials, equipment, appliances or transportation to make claim).

Pursuant to the terms of the Payment Bond that AMMIC issued on the Project:

---

[2] Although a subcontractor cannot place a lien on a public building, see G.L. c. 254, § 6, this provision was included as an additional protection to help ensure that subcontractors performing work on the Project would be paid for the work performed.

1. The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner to pay for labor materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated herein by reference.

2. With respect to the Owner, this obligation shall be null and void if the Contractor:

    2.1 Promptly makes payment, directly or indirectly, for all sums due Claimants, and

    2.2 Defends, indemnifies and holds harmless the Owner from claims, demands, liens or suits by any person or entity whose claim, demand, lien or suit is for the payment of labor, materials or equipment furnished for use in the performance of the Construction Contract, provided the Owner has promptly notified the Contractor and the Surety (at the address described in Paragraph 12) of any claims, demands, liens or suits and tendered defense of such claims, demands, liens or suits to the Contractor and the Surety, and provided there is no Owner Default.

Furthermore, the Payment Bond states that:

9. …The Owner shall not be liable for payment of any costs or expenses of any Claimant under this Bond, and shall have under this Bond no obligations to make payments to, give notices on behalf of, or otherwise have obligations to Claimants under this Bond.

A copy of the Payment Bond is attached to the Affidavit of Lee P. Dore, Exhibit B.

Since AMMIC is ultimately responsible for Sciaba's failure to make payments to its subcontractors as Payment Bond surety and because Sciaba failed to take sufficient steps to keep itself informed of Sciaba's actions, AMMIC, not the Town, is responsible for any amounts not paid by Sciaba to Millis and Greenwood, including the $33,443.55 for which AMMIC now seeks a pro tanto discharge from liability.

The only case cited by AMMIC in support of its position that it is entitled to a pro tanto discharge is Veneto v. McCloskey & Co., 333 Mass. 95 (1955). However, AMMIC improperly

characterizes the court's decision as dealing with "improper" payments to a surety's principal. The facts in Veneto are not analogous to those here and the case does not support AMMIC's position.

In Veneto, the performance bond surety for a subcontractor on a federal project appealed a judgment to pay the general contractor following the subcontractor's breach. The surety argued first, that the contract was modified to increase the unit price for excess rock excavation, and second, that the basis and methods of payment under the contract were materially altered. Id. at 100. The Supreme Judicial Court rejected these arguments.

The court held that the evidence did not support a conclusion that there was a change in the unit price for excess rock excavation. Id. at 101. It further held that "the percentage of completion basis used by the master to determine…the amount earned under the…contract was incorrect because it was not the basis of payment upon which the surety guaranteed [the subcontractor's] performance," which under the subcontract, was the value of the work done. Id. at 102-103. The court then observed that there was no finding that the payments made to the subcontractor were excessive when tested by the basis established in the contract. Id. at 103. The court allowed the surety a partial discharge of liability on its bond only because it concluded that the subcontractor had been paid slightly more than it was owed ($1,422.75). Id. at 103-104 and n. 1. The determination of this overpayment, by reference to the general contractor's estimates to the owner for the subcontractor's work and the amount actually paid the subcontractor indicate that the relief afforded the surety was merely the result of a mathematical discrepancy or computation error. There is no suggestion that the general contractor's payments to the subcontractor were improper in the sense that they violated a statutory duty or contractual obligation. In short, the Veneto court was not addressing the type of issue presented to this Court.

WHEREFORE, the defendant, Town of North Brookfield, respectfully requests that this Honorable Court deny plaintiff's Motion for Partial Summary Judgment as to Claims for Direct Payment and enter judgment in favor of the Town with respect to this issue.

TOWN OF NORTH BROOKFIELD

By its attorneys,

/s/Thomas W. McEnaney
David J. Doneski (BBO# 546991)
Thomas W. McEnaney (BBO# 629130)
Kopelman and Paige, P.C.
 Town Counsel
31 St. James Avenue
Boston, MA 02116
(617) 556-0007

270453/NBRO-HS/0019