UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 03-40266 CBS

AMERICAN MANUFACTURERS MUTUAL
INSURANCE COMPANY,

    Plaintiff

v.

TOWN OF NORTH BROOKFIELD,

    Defendant

DEFENDANT'S MEMORANDUM OF REASONS IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIQUIDATED
DAMAGES AS THE EXCLUSIVE REMEDY FOR DELAY

    American Manufacturers Mutual Insurance Company ("AMMIC") has moved for partial summary judgment limiting the remedies of the Town of North Brookfield on account of the delays of AMMIC's performance bond principal, E.J. Sciaba Contracting Co., Inc. ("Sciaba"), to liquidated damages pursuant to a liquidated damages provision in the contract between the Town and Sciaba. This motion is AMMIC's counter to the Town's motion for summary judgment regarding the extent of AMMIC's liability under its performance bond. For the reasons stated below, AMMIC's motion should be denied and the Town's motion for summary judgment regarding AMMIC's liability for the Town's additional costs on account of Sciaba's default (¶1 of Defendant's Motion for Partial Summary Judgment) should be granted.

I.   MATERIAL FACTS

With one exception, the parties are essentially in agreement regarding the material facts for purposes of summary judgment. That exception relates to the selection of the form of performance bond furnished to the Town by AMMIC and Sciaba. AMMIC contends, and finds significance in the point, that the form of bond was specified by the Town in the instructions to prospective bidders for the Junior/Senior High School project (the "Project"). Plaintiff's Statement of Undisputed Facts in Support of Plaintiff's Motion for Partial Summary Judgment on Liquidated Damages as the Exclusive Remedy for Delay, ¶16 and Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment on Liquidated Damages as the Exclusive Remedy for Delay ("Plaintiff's Memorandum), p. 7. However, although the instructions to bidders and the Supplementary General Conditions of the General Contract stated that performance and payment bond forms were included in the bid documents, there were no such forms included in the bid document package distributed to bidders. Affidavit of Lee P. Dore ("Dore Affidavit"), ¶8. Thus, the form of the performance bond given to the Town by AMMIC and Sciaba was chosen not by the Town but by AMMIC and/or Sciaba, Dore Affidavit, ¶9, and any argument or intimation by AMMIC that the terms of the bond should be construed against the Town must be rejected.

II.   ARGUMENT

A.  <u>Summary Judgment Standard</u>

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter law." Fed.R.Civ.P. 56(c).  "[T]he court must look at the record in the light most favorable to the party opposing the motion and must indulge all inferences favorable to that party."  Stepanischen v. Merchants Dispatch Transportation Corp., 722 F.2d 922, 928 (1st Cir. 1983).  When the record here is so viewed and the applicable law considered it is clear that AMMIC's motion should be denied.  The plain terms of the performance bond at issue, the provisions of the construction contract for which the bond was given and principles of public policy dictate that the Town not be precluded from recovering the full measure of its damages incurred as a result of the default of Sciaba under the construction contract.

>B. The Purpose of AMMIC's Performance Bond Was to Ensure Completion of the Construction Contract, at No Additional Cost to the Town, in the Event that Sciaba Defaulted on its Contract Obligations.

AMMIC issued the performance bond in question (the "Performance Bond") on behalf of its principal, Sciaba, for a public building construction project for which the contract was bid and awarded pursuant to M.G.L. c. 149, §§ 44A-44L. Plaintiff's Statement of Undisputed Facts in Support of Plaintiff's Motion for Partial Summary Judgment as to Claims for Direct Payment, ¶2.  The relevant statutory scheme requires successful bidders such as Sciaba to furnish to the awarding authority a performance bond and a payment bond, each in the full amount of the contract price. M.G.L. c. 149, s.44E.  Included within the statutory form of bid is the statement that the bidder agrees "to furnish a performance bond and also a labor and materials or payment bond, each of a surety company qualified to do business under the laws of the commonwealth and satisfactory to the awarding authority and each in the sum of the contract price, the

3

premiums for which are to be paid by the general contractor and are included in the contract price." M.G.L. c. 149, §44E(2).

The plain purpose of the performance bond is to ensure the completion of the contract, in the event of default of the contractor, at no additional cost to the awarding authority. The very purpose of a performance bond is "to assure completion of the contract." See Pearlman v. Reliance Ins. Co., 371 U.S. 132, 140 (1962). When a general contractor defaults on its obligations, as did Sciaba, an awarding authority that is the obligee under a performance bond should not be required to suffer additional cost to secure completion of the bonded contract work. This principle is fundamental to the concept of a performance bond and a bond should be interpreted to so protect the awarding authority. Here, the Performance Bond furnished by AMMIC expressly states that the Town is to be made whole for the damages it may suffer as a result of the default of Sciaba. Thus, both the statutory purpose of the Bond and its specific provisions dictate that AMMIC's motion be denied.

        C. <u>Accepted Principles of Contract Construction Require That the Town be Reimbursed in Full By AMMIC For The Actual Damages Resulting from Sciaba's Default</u>.

Generally, surety contracts are subject to the same rules of construction as other contracts. In re the Sinking of the M/V Ukola, 806 F. 2d 1, 4 (1st Cir. 1986). The terms of a surety's obligations should be interpreted as a whole, and not out of context of all the other terms. Id. at 5. It must also be remembered that the language of a bond is to be strictly construed and will control the obligations of the surety. National Fire Insurance Co. of Hartford v. Fortune Constr. Co., 320 F. 3d 1260, 1278 (11th Cir. 2003); Restatement (Third) of Suretyship & Guaranty §§ 17(2), 32(1) (1995).

4

Examination of the Performance Bond's provisions makes it clear that AMMIC's argument regarding the coverage afforded by the Bond is contrary to its unambiguous terms. When the contractor/principal defaults and the owner terminates the contractor's right to complete the contract, the surety has various options. These include the option to "[o]btain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, [and] arrange for a contract to be prepared for execution by the Owner and the contractor selected with the Owner's concurrence . . ." Dore Affidavit, Exhibit A, ¶4.3. When the surety elects to proceed under paragraph 4.3, as did AMMIC, it is obligated to "pay to the Owner the amount of damages as described in Paragraph 6 [of the Bond] in excess of the Balance of the Contract Price incurred by the Owner resulting from the Contractor's default." Id. Under paragraph 6 AMMIC is obligated, "without duplication," and "subject to commitment by the Owner of the Balance of the Contract Price to mitigation of costs and damages on the Construction Contract," for:

> 6.2 Additional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Paragraph 4; and
>
> 6.3 Liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or non-performance of the Contractor. (emphasis supplied)

Dore Affidavit, Exhibit A.

The Bond unequivocally states that the surety's obligation includes liquidated damages and additional costs on account of delay. It does not say that if, as here, liquidated damages are provided for in the construction contract then additional delay

5

costs incurred by the owner are not to be recovered. Rather, the only limitation is that the payment to the owner for its damages be "without duplication."

AMMIC's argument that actual damages are only available under subparagraph 6.3 of the Performance Bond "if" no liquidated damages are provided for in the construction contract, Plaintiff's Memorandum at p. 7, is disingenuous. It completely ignores the provisions of subparagraph 6.2 of the Performance Bond and the very real fact that the additional legal, design professional and delay costs specified in subparagraph 6.2 are elements of actual damages. Again, the only logical and reasonable construction of paragraph 6 is that AMMIC is liable for all of the types of damages enumerated, but subject to the requirement that its obligation be without duplication in the payment of such damages.

An interpretation of the Performance Bond that protects the awarding authority from its full damages on account of a contractor default falls squarely within established principles for contract interpretation. A contract must not, whenever possible, be construed to render any of its terms meaningless. Baybank Middlesex v. 1200 Beacon Properties, Inc., 760 F. Supp. 957, 963 (D. Mass. 1991). The construction of the Performance Bond urged by AMMIC ignores the language of subparagraph 6.2 and would undeniably make that language wholly meaningless. AMMIC's construction must be rejected.

Consistent with the general principles of contract interpretation and the protective and remedial purpose of a performance bond, other courts have construed the language at issue here to allow an owner to recover its actual damages. In International Fidelity Insurance Company v. County of Chautauqua, 667 N.Y.S. 2d 172 (1997) the court

6

considered the county's claim against the plaintiff for actual damages following default of a contractor constructing an addition to the county jail. The contract included a liquidated damages clause and the court first commented on the same argument proffered by AMMIC: that where a contract specifies liquidated damages for delay by the contractor such a provision will be the owner's exclusive remedy. Observing that the county's claim arose out of the bond, the court focused in on the bond's language. The bond obligated the surety, in the event of a breach of its obligations to complete the contract "promptly," and to pay the obligee "additional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety." Id. at 173. Although the decision does not indicate that the bond was on the American Institute of Architects form A312 used by AMMIC and Sciaba, the quoted text is identical to that in subparagraph 6.2 of the Performance Bond at issue here. See Dore Affidavit, Exhibit A. Applying the explicit language of the bond, the court held that the county could recover its actual damages. Id. At 174.

More recently, in North American Specialty Insurance Company v. Chichester School District, 158 F. Supp. 2d 468 (E.D. Pa 2001) the court made clear that it was considering a performance bond on AIA form A312, the form used here by AMMIC and Sciaba. At issue was the school district's claim against the plaintiff for attorneys' fees following default of the general contractor for a new school project. The plaintiff had elected to proceed under subparagraph 4.2 of the bond, "to undertake to perform and complete the construction contract itself, through its agents, or through independent contractors." Id. at 470. The school district declined to execute the takeover agreement proposed by the plaintiff, but the plaintiff nevertheless retained another contractor to

7

complete the contract work. Substantial completion was achieved after the date specified in the original contract. After a dispute ensued regarding the plaintiff's claim for reimbursement of costs incurred for completion of the work, the plaintiff sued the school district and the district counterclaimed for breach of contract damages arising from the original contractor's default. These damages included delay costs, incomplete or defective work and attorneys' fees. Id. Quoting the text of the bond, which matched that in AMMIC's bond, the court declared that the surety was "unequivocally . . . liable" for legal costs. Id. at 473.

Like these other courts, this Court should follow the plain language of the Performance Bond, which makes AMMIC liable to the Town for additional legal, design professional and delay costs, and for liquidated damages. That language compels the denial of AMMIC's motion for partial summary judgment.

> D. AMMIC's Contentions That Documents Other Than the Performance Bond and Construction Contract Documents Should Govern the Scope of AMMIC's Obligations under the Performance Bond are Without Legal Support and Must be Rejected.

In its memorandum in support of its motion for partial summary judgment AMMIC urges the Court to construe the terms of the Performance Bond by reference to unrelated documents and out of context statements by representatives of the Town. These arguments have no merit and the Court should afford them no consideration.

AMMIC suggests that the terms of the Performance Bond should be construed by looking to the language of the Town's design services agreement with the project architect, Dore & Whittier, and comments of members of the School Building Committee. It offers no legal support or citation for this remarkable proposition. The argument is unsupportable and should be rejected. It is axiomatic that the provisions of a

contract between parties A and B cannot be used to supplant the text and distort the unambiguous meaning of a contract between parties A and C.  Thus, the Town's contract with Dore & Whittier cannot be relied upon to govern the interpretation of either the Town's contract with Sciaba or the Performance Bond.  Likewise, that Building Committee members were aware that there was a liquidated damages provision in the contract with Sciaba that could provide funds for additional design professional costs in the event Sciaba failed to achieve the required substantial completion dates is no basis for a legal determination that the Town's contract with Sciaba or the Performance Bond limited the Town to such liquidated damages in the event of a default by Sciaba.  Indeed, as set forth above, the terms of both the contract and the Performance Bond squarely rebut such a contention.

An interpretation of the Performance Bond binding AMMIC to reimburse the Town for its actual damages is also consistent with the terms of the Town's contract with Sciaba.  Paragraph 3.3 of the owner-contractor agreement, which sets forth the liquidated damages provision in the event of delays by Sciaba, states that "[a]llowing the Contractor to continue to finish the work (or any portion of the work) after the time specified for completion of the Work shall not operate as a waiver of any rights under the Contract Documents or otherwise under law or equity." Affidavit of Deborah S. Griffin in Support of Plaintiff's Motion for Partial Summary Judgment on Liquidated Damages as the Exclusive Remedy for Delay, Exhibit A, Part 1. Clearly, the liquidated damages provision was neither intended to nor should be deemed to reflect a relinquishment by the Town of any claims for actual damages on account of delays in substantial completion.

This reading of the contract is reinforced by the earlier language of paragraph 3.3, which states that the specified liquidated damages are to "partially cover" the Town's losses and expenses on account of delay. Paragraph 3.3 cannot fairly be construed to establish liquidated damages as an exclusive remedy. AMMIC's assertion that "the use of the adjective [sic] 'partially'" was a self serving element of protection for the liquidated damages is wholly without support in the record. However, even if that were true it does not at all warrant the conclusion that the Town's only remedy in the event of delay is liquidated damages. In short, there is no waiver by the Town of its right to recover actual damages in the event of a delay by Sciaba and the contract documents should not be so interpreted.

Other provisions of the contract between the Town and Sciaba belie any suggestion that the Town waived its right to pursue actual damages. The contract is replete with language making Sciaba liable for additional Town costs attributable to acts or omissions of Sciaba. The relevant provisions include:

¶2.4.1 – contractor is responsible for the cost of architect's additional services if the owner acts to correct contractor's failure to perform work;

¶12.2.1.1 – the costs of correcting work rejected by the architect, including the architect's compensation, shall be at contractor's expense;

¶12.2.2.1 – if contractor fails to correct nonconforming work after notice from the owner or architect, owner may correct the work in accordance with paragraph 2.4;

¶13.5.3 – if additional tests or inspection show nonconforming work, all costs, including those for the architect's services, shall be at contractor's expense;

¶14.2.4 – if, on termination of the contract for cause by the owner, the costs of finishing the work, "including compensation for the Architect's services and expenses made necessary thereby, and other damages incurred by the Owner and not expressly waived" exceed the unpaid contract balance, "the Contractor shall pay the difference to the Owner."

> Affidavit of Deborah S. Griffin in Support of Plaintiff's Motion for Partial Summary Judgment as to Claims for Direct Payment, Exhibit L, Part 2.

Therefore, reading the contract as a whole, as is required, it is unquestionable that the Town did not intend to limit itself to liquidated damages or to waive any right to recover actual damages.

## III.  CONCLUSION

For the foregoing reasons, the Court should deny AMMIC's motion for partial summary judgment as to liquidated damages and grant the Town's motion for partial summary judgment as to AMMIC's liability under the Performance Bond.

TOWN OF NORTH BROOKFIELD

By its attorneys,

/s/ Thomas W. McEnaney\_\_\_
David J. Doneski (BBO# 546991)
Thomas W. McEnaney (BBO# 629130)
Kopelman and Paige, P.C.
 Town Counsel
31 St. James Avenue
Boston, MA 02116
(617) 556-0007

272197/21202/0019

.