UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 03-40266 CBS

AMERICAN MANUFACTURERS MUTUAL
INSURANCE COMPANY,

    Plaintiff

v.

TOWN OF NORTH BROOKFIELD,

    Defendant

### AFFIDAVIT OF R. JOHN DORE IN SUPPORT OF DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS NOT IN DISPUTE AND STATEMENT OF ADDITIONAL FACTS IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

I, R. John Dore, on oath, depose and state the following:

1. I am a principal of Dore & Whittier, Inc. ("D&W"), the project architect on the North Brookfield Junior/Senior High School construction project ("Project") that is the subject of this litigation.

2. In connection with the Project, I attended a May 21, 2003 meeting with representatives of the Town, E.J. Sciaba Contracting Co., Inc. ("Sciaba"), American Manufacturers Mutual Insurance Company ("AMMIC") and Dore & Whittier.

3. At the meeting, the Town was never requested to notify AMMIC prior to making payments to Sciaba on the Project.

4. To the best of my recollection, at the meeting, no one from the Town or Dore & Whittier represented that payments would be withheld from Sciaba until Sciaba submitted a revised Project schedule.

5. At no time during the meeting did AMMIC's representatives request the Town to withhold payments from Sciaba or make payments to AMMIC, as performance bond surety, on Sciaba's behalf.

6. At no time during the meeting did AMMIC's representatives ever express any concern that the Town should not make payments to Sciaba for work performed on the Project.

7. At the meeting, Sciaba stated that a new project manager, Matt Daly, had been assigned to the Project on a full-time basis.

8. At the meeting, the Town was assured by Sciaba's representatives that Sciaba could complete the Project and was informed by AMMIC'S representatives that AMMIC did not foresee Sciaba's default on the Project as a possibility.

9. The meeting minutes attached hereto as Exhibit A accurately summarize the discussion held at the May 21, 2003 meeting.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 2nd DAY OF FEBRUARY, 2006.

/s/ R. John Dore
R. John Dore

272830/NBRO-HS/0019

2

**EXHIBIT A**

Case 4:03-cv-40266-TSH   Document 82   Filed 02/03/2006   Page 3 of 8



1795 WILLISTON RD. STE. 5 • S. BURLINGTON, VT 05403
Phone (802) 863-1428 • Fax (802) 863-6955

1400 HANCOCK STREET, QUINCY, MA 02169
Phone: (617) 471-2897 • Fax: (617) 471-2516

29 WATER STREET, SUITE 304 • NEWBURYPORT, MA 01950
Phone: (978) 499-2999 • Fax: (978) 499-2944

## MEETING NOTES

**DATE OF MEETING:** 21 May 2003

**PROJECT:** North Brookfield Jr/Sr High School
D&W Project No. 00-404A

**SUBJECT:** Status and Progress of Construction Meeting held in High School Library at 2:50p.m.

**ATTENDING:**

| | |
|---|---|
| Ed O'Malley | Principal |
| Robert O'Neill | Superintendent of Schools |
| Don Gillette | Building Committee, Co-Chair |
| Edward Wilkins, Jr. | Building Committee |
| Greg Kline | Building Committee |
| Larry Hasenfus | Selectman |
| Michael P. Sheehan | E.J. Sciaba |
| Matt Daly | E.J. Sciaba |
| Mike Haynes | E.J. Sciaba |
| Bert Capone | Attorney for E.J. Sciaba |
| Ken Walton | Attorney for Dore and Whittier, Inc. |
| Thomas W. McEnaney | Kopelman and Paige |
| Deborah Griffin | Holland and Knight, Attorney for Surety |
| Richard Anastasio | Greyhawk/Kemper Surety |
| Stephen Beatty | Kemper Surety |
| Tom Barden | Dore and Whittier, Inc. |
| Chris Conway | Dore and Whittier, Inc. |
| Lee P. Dore | Dore and Whittier, Inc. |
| R. John Dore | Dore and Whittier, Inc. |
| Harald Aksdal | Dore and Whittier, Inc. |

1. Tom McEnaney opened the meeting with an introduction. All present introduced themselves. Basically, the meeting was held to address Owner concerns with the progress of the construction and to, generally and specifically, address items in the letter from the Owner to Kemper Surety dated 23 April 2003.

Prepared on 7/21/2004

page 1 of 5

Status and Progress of Construction Meeting held in High School Library
Held on 21 May 2003

2. Neither the Surety nor EJS attorney had received a copy of the letter. Copies were made and distributed and time was allowed for EJS representatives and Surety representatives to review the letter.

3. It was noted that Ed Sciaba was unable to attend this meeting.

4. Owner questions presented to EJS: What is EJS going to do to bring this project back on schedule? When will it be completed? Will staffing be changed and/or increased? Will monies owed to subcontractors and suppliers be paid?

   a. Staffing change has taken place and a new project manager has been assigned to this project.
   b. A new schedule and recovery is being worked on, however no firm date as to when the schedule will be complete. However, a firm schedule will be provided prior to the next requisition.
   c. EJS noted the major problem with this job has been cash flow and related to that has been three other joint venture projects, which consumed EJS cash, and are now concluded.

5. Owner question to the Surety: Is Kemper Surety stepping in to assist EJS?

   a. EJS is putting together a review and report of the company's financial status for the Surety's review. The report is due to the Surety this Friday (23 May 2003). Surety will review report to determine what and if assistance is required.
   b. Owner noted concern that letter from them to Kemper is a month old, why such a late reaction? No answer was given.

6. Open discussion:

   a. Reference was made to the last partnering session (October 2002), and basically EJS was given the opportunity to set their own schedule. The milestones that were given by EJS have not been met.
   b. EJS referenced cash flow problem; not getting March requisition monies and not getting April requisition monies and structural steel delays as major causes of scheduling problems.
   c. It was noted that required Release of Liens were not submitted and the pencil requisition for March was not provided to Dore and Whittier for review until 7 April 2003.
   d. EJS questioned procedure of requiring liens. Owner stated it was a contract requirement.
   e. It was noted that scheduling problems and paying of subcontractors and vendors has been an issue long before this March/April 2003 requisition.
   f. EJS noted concern of some subcontractors for payment was unrelated to this project.

Prepared on 7/21/2004

Status and Progress of Construction Meeting held in High School Library
Held on 21 May 2003

7.  EJS's attorney asked: what are the issues? Owner noted the letter of 23 April defined Owner's concerns. It was decided to review the letter of 23 April 2003, item by item (10 items) and to identify if item is basically a scheduling issue or a funding issue.

   **Item (1) Draw Down Schedule:** Draw Down Schedule and Construction Schedule are being worked on. Both will be submitted with the next Application for Payment. This item is a scheduling item and will require time to update. EJS noted that the Substantial Completion date can be met. Meeting requirements will be difficult, but November is accurate. EJS further noted that cash flow is the major problem, however hopefully a solution is at hand.

   **Item (2) Staffing:** EJS does not feel there is or has been a staffing problem. Owner noted that by using the average of requisition amounts paid that all indications are that staffing for this project is low. EJS noted staffing will increase dramatically once the structural steel phase is completed. Also, EJS noted a majority of materials are on site and ready to be installed. It was noted this is a funding issue as the cash flow problem has directly affected staffing.

   **Item (3):** EJS is reviewing the proposal request log and PR's issued and related CCD's. EJS noted they do not agree with the procedure of how PR's and CCD's were handled even if it is part of the contract. Owner noted "…as per contract we have the right…" EJS noted: "…will be responding in detail in a couple of weeks…" Kemper Surety requested info. in relation to Proposal Request, CCD and timeline.

   **Item (4): Concern for flow of information from EJS to the subcontractors:** EJS has reviewed and forwarded all information from the Architect to the subcontractors. Some replies have been received and EJS is waiting for all subcontractor replies before reviewing with the Architect.

   **Item (5) Concern for subcontractor payment of funds:** Greenwood Roofing was discussed and how they are expected back on site once they have been paid. EJS is waiting for their return. This is a funding issue.

   **Item (6):** Scheduling item was addressed previously. See Item (1) above.

   **Item (7):** Note EJS will have new project manager at job meetings and this will be his only project. EJS noted this item is a past issue and is now resolved. This is a staffing issue.

   **Item (8):** Concern for the past condition of the Application for Payments appears to have been corrected with the new project manager and evidenced by the April requisition application submitted.

   **Item (9):** EJS noted that the issue with payment of benefits for employees on site has been cleared up.

Status and Progress of Construction Meeting held in High School Library
Held on 21 May 2003

**Item (10) Project Schedule and Completion:** Concern expressed for latest schedule submitted by EJS and inadequately of schedule in sequencing of work, milestones not met and scheduling window installation before walls are up; painting walls before they are installed etc. EJS noted to refer back to Item (1).

8. Kemper Surety requested copies of direct payment claims and claims of subcontractors and vendors who say they have not been paid. Owner will provide.

9. Discussion on project time frame and recovery; EJS noted the following:

   a. Structural steel erection set project back.
   b. Hard winter and wet spring set project back.
   c. EJS realizes they have a lot of work to do.
   d. Structural steel issue is behind them now.
   e. Roofer getting back on site is critical.
   f. As noted previously, a lot of material is on site ready to be installed.

10. EJS repeated that their major problem right now is cash flow. Kemper Surety noted that they will review with EJS the status and condition of this project, and they realize their assistance will be required. What is required will be determined by Surety with EJS. Surety will keep Owner informed of the situation.

11. Owner expressed the following concerns:

    a. Anticipate late completion of this project.
    b. Continued inaccurate schedule with unrealistic milestones and less than honest information.
    c. November completion does not seem realistic.
    d. Continued promises with no on site construction results.

12. Owner requested that EJS provide and document a real schedule.

13. EJS noted that the new project manager, Matt Daly, will be full time on this project and that North Brookfield is his only project.

14. Owner asked what involvement the Surety would have in this project. Surety noted that that is yet to be determined and will be after review with EJS.

15. Owner asked what plans Surety had if EJS fell apart and/or can't right the ship? Kemper Surety does not plan or foresee that as a possibility at this time. Up to now the Surety has seen this as a "quiet job". Surety did note however that this project "...should have come to my attention and didn't."

Status and Progress of Construction Meeting held in High School Library
Held on 21 May 2003

16. Owner requested information on the reporting and monitoring procedures, specifically in reference to this job and EJS. Kemper Surety noted the following:

    a. Sureties are financial in nature and hire consultants to review actual construction projects.
    b. Sureties do not monitor construction schedules.
    c. Sureties normally wait for their clients and/or Owners to notify them of concerns before they react.
    d. This project is now "beeping on Kemper's radar".

17. It was noted that this project is frustrating to the Owner and Design Team especially as it related to EJS meeting schedules and deadlines. Surety noted they will provide assistance as needed to EJS, and will expect EJS to follow through.

18. It was verified that there are two substantial completion dates:

    a. 15 August 2003 for the new building.
    b. 15 December 2003 for the entire project including demolition of the existing building and related site work.
    c. It was further noted that liquidated damages are set at $1000.00 per day. For the building completion and additional $1,000.00 per day for the site completion.

19. Kemper Surety requested a copy of the contract, special conditions and change orders. Owner will provide through the Architect.

20. EJS request response to their request for winter delay. D&W will verify.

The above is my summation of our meeting. If you have any additions and/or corrections, please contact me for incorporation into these minutes. After 10 days, we will accept these minutes as an accurate summary of our discussion and enter them into the permanent record of the project.

Sincerely,

**DORE AND WHITTIER, INC.**
Project Managers • Architects

Harald Aksdal, AIA
Project Architect

HA:elc

cc: Mr. Ed O'Malley, Principal, North Brookfield Public Schools
    Mr. Robert O'Neill, Superintendent of Schools
    Mr. Chris Conway, Construction Manager
    RJD/JFT/LPD/GOJ/File