UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 03-40266 CBS

AMERICAN MANUFACTURERS MUTUAL
INSURANCE COMPANY,

      Plaintiff

v.

TOWN OF NORTH BROOKFIELD,

      Defendant

**AFFIDAVIT OF LEE DORE IN SUPPORT OF
DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S LOCAL
RULE 56.1 STATEMENT OF MATERIAL FACTS NOT IN DISPUTE AND
STATEMENT OF ADDITIONAL FACTS IN OPPOSITION TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

I, Lee Dore, on oath, depose and state the following:

1.      I am employed by Dore & Whittier, Inc. ("D&W"), the project architect on the North Brookfield Junior/Senior High School construction project ("Project") that is the subject of this litigation, and I served as the architect's project manager.

2.      In connection with the Project, I attended a May 21, 2003 meeting with representatives of the Town, E.J. Sciaba Contracting Co., Inc. ("Sciaba"), American Manufacturers Mutual Insurance Company ("AMMIC") and Dore & Whittier.

3.      At the meeting, the Town was never requested to notify AMMIC prior to making payments to Sciaba on the Project.

4.    To the best of my memory, at the meeting, no one from the Town or D&W represented that payments would be withheld from Sciaba until Sciaba submitted a revised Project schedule.

5.    At no time during the meeting did AMMIC's representatives request the Town to withhold payments from Sciaba or make payments to AMMIC, as performance bond surety, on Sciaba's behalf.

6.    At no time during the meeting did AMMIC's representatives ever express any concern that the Town should not make payments to Sciaba for work performed on the Project.

7.    At the meeting, Sciaba's representatives stated that a new project manager, Matt Daly, had been assigned to the Project on a full-time basis.

8.    At the meeting, the Town was assured by Sciaba's representatives that Sciaba could complete the Project and was informed by AMMIC's representatives that AMMIC did not foresee Sciaba's default on the Project as a possibility.

9.    The meeting minutes attached hereto as Exhibit A accurately summarize the discussion held at the May 21, 2003 meeting.

10.    Sciaba submitted to D&W lien waivers from its subcontractors for its payment application No. 12 prior to the May 21, 2003 meeting.

11.    The Town had processed Sciaba's payment application Nos. 12 and 13B and included the payments in one single check.  However, because Sciaba had not provided lien waivers for payment application No. 13B, D&W advised the Town to issue two separate checks, one for payment application No. 12 and one for No. 13B.

12.     The check for payment application No. 12 became available after the May 21, 2003 meeting, and was forwarded by the Town to Chris Conway of D&W, who hand delivered it to a representative of Sciaba.

13.     D&W received the lien waivers applicable to payment application No. 13B on or about May 27, 2003, at which time the check for payment application No. 13B was delivered to Sciaba.

14.     During the Project, D&W and the Town received lien waivers for Sciaba's subcontractors when Sciaba was requested to submit lien waivers.

15.     In my experience as an architect's project manager, discrepancies between the amounts paid to a general contractor on behalf of a subcontractor's work and the amounts included in a lien waiver from the subcontractor are often due to disputes or arrangements between the general contractor and subcontractor to which the project architect and the owner are not privy.

16.     For example, on the Project, some time after it arose, D&W learned that there was a dispute between Sciaba and its subcontractor, Millis Plumbing Co., Inc. relative to the cost of a gas pipe to provide temporary heat to the building site. A copy of notes taken by Harald Aksdal of D&W relative to Sciaba's payment application No. 13B is attached hereto as Exhibit B.

17.     In my experience as an architect's project manager, the purpose for requiring a general contractor to submit lien waivers from its subcontractors is not to verify that the amounts set forth in the lien waivers exactly equal the amounts paid to the general contractor on account of a subcontractor's work, but rather to monitor that the amounts paid to the general contractor and amounts

requisitioned by the general contractor for a particular subtrade work are generally consistent, and to verify that subcontractors are receiving payments.

18.   On each payment application, Sciaba certified:

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which the previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

A copy of the first page of Sciaba's payment application No. 13B is attached hereto as Exhibit C.

19.   The project referenced in paragraph 22 of AMMIC's Response to Defendant's Local Rule 56.1 Statement of Material Facts Not in Dispute was the Clinton Elementary School Project.  In the Clinton project, the Town did not withhold liquidated damages until after the date for substantial completion had passed.

20.   Sciaba voluntarily defaulted on the Project on or about May 30, 2003, which was prior to the dates for substantial completion of the building, August 15, 2003, and the Phase 4 work, December 15, 2003.

21.   Generally, a general contractor on a construction project requisitions for general conditions based on monthly installments that are not related to the amount of work that is performed on a monthly basis, but rather based on the total amount of the contract price allocated to general conditions divided by the number of months in the expected period of construction.

22.   During the Project, D&W used the following procedure in processing payment applications submitted by Sciaba:  if Sciaba included a line item in its monthly payment application for "Project schedule" and the monthly

Project schedule was not submitted, the payment application was reduced by the amount sought by Sciaba for the Project schedule line item.

23.    Change Order No. 3 to the contract between the Town and Sciaba for the Project indicates that the substantial completion date for the Project was extended by 28 days. The Project had two substantial completion dates: July 15, 2003 for the building and November 17, 2003 for the Phase 4 work. The intent of Change Order No. 3 was to extend both substantial completion dates by 28 days, that is, to August 15, 2003 for the building and December 15, 2003 for the Phase 4 work. The document includes only the December 15, 2003 date because that was the last applicable date.

24.    The inclusion of only the last substantial completion date on Change Order No. 3 is consistent with the practice employed on the Project for Change Order Nos. 1 and 2, which did not include a change to the substantial completion dates but only include the second substantial completion date of November 17, 2003 for the Phase 4 work. Copies of Change Order Nos. 1 and are attached hereto as Exhibit D.

25.    A true and accurate copy of a memorandum from Harald Aksdal of D&W to Robert O'Neill, Superintendent of Schools, dated May 6, 2003 regarding payment application No. 12 is attached hereto as Exhibit E.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 2nd DAY OF FEBRUARY, 2006.

/s/ Lee P. Dore
Lee P. Dore

272828/NBRO/0019

5

**EXHIBIT A**



**D&W**

DORE AND WHITTIER, INC.

A r c h i t e c t s • P r o j e c t  M a n a g e r s

1795 WILLISTON RD. STE. 5 •S. BURLINGTON, VT 05403
Phone (802) 863-1428 •Fax (802) 863-6955

1400 HANCOCK STREET, QUINCY, MA 02169
Phone: (617) 471-2897 • Fax: (617) 471-2516

29 WATER STREET, SUITE 304 •NEWBURYPORT, MA 01950
Phone: (978) 499-2999 • Fax: (978) 499-2944

# MEETING NOTES

**DATE OF MEETING:**   21 May 2003

**PROJECT:**   North Brookfield Jr/Sr High School
D&W Project No. 00-404A

**SUBJECT:**   Status and Progress of Construction Meeting held in High School Library at 2:50p.m.

**ATTENDING:**

| | |
|---|---|
| Ed O'Malley | Principal |
| Robert O'Neill | Superintendent of Schools |
| Don Gillette | Building Committee, Co-Chair |
| Edward Wilkins, Jr. | Building Committee |
| Greg Kline | Building Committee |
| Larry Hasenfus | Selectman |
| Michael P. Sheehan | E.J. Sciaba |
| Matt Daly | E.J. Sciaba |
| Mike Haynes | E.J. Sciaba |
| Bert Capone | Attorney for E.J. Sciaba |
| Ken Walton | Attorney for Dore and Whittier, Inc. |
| Thomas W. McEnaney | Kopelman and Paige |
| Deborah Griffin | Holland and Knight, Attorney for Surety |
| Richard Anastasio | Greyhawk/Kemper Surety |
| Stephen Beatty | Kemper Surety |
| Tom Barden | Dore and Whittier, Inc. |
| Chris Conway | Dore and Whittier, Inc. |
| Lee P. Dore | Dore and Whittier, Inc. |
| R. John Dore | Dore and Whittier, Inc. |
| Harald Aksdal | Dore and Whittier, Inc. |

1.   Tom McEnaney opened the meeting with an introduction. All present introduced themselves. Basically, the meeting was held to address Owner concerns with the progress of the construction and to, generally and specifically, address items in the letter from the Owner to Kemper Surety dated 23 April 2003.

Status and Progress of Construction Meeting held in High School Library
Held on 21 May 2003

2.  Neither the Surety nor EJS attorney had received a copy of the letter. Copies were made and distributed and time was allowed for EJS representatives and Surety representatives to review the letter.

3.  It was noted that Ed Sciaba was unable to attend this meeting.

4.  Owner questions presented to EJS: What is EJS going to do to bring this project back on schedule? When will it be completed? Will staffing be changed and/or increased? Will monies owed to subcontractors and suppliers be paid?

    a.  Staffing change has taken place and a new project manager has been assigned to this project.

    b.  A new schedule and recovery is being worked on, however no firm date as to when the schedule will be complete. However, a firm schedule will be provided prior to the next requisition.

    c.  EJS noted the major problem with this job has been cash flow and related to that has been three other joint venture projects, which consumed EJS cash, and are now concluded.

5.  Owner question to the Surety: Is Kemper Surety stepping in to assist EJS?

    a.  EJS is putting together a review and report of the company's financial status for the Surety's review. The report is due to the Surety this Friday (23 May 2003). Surety will review report to determine what and if assistance is required.

    b.  Owner noted concern that letter from them to Kemper is a month old, why such a late reaction? No answer was given.

6.  Open discussion:

    a.  Reference was made to the last partnering session (October 2002), and basically EJS was given the opportunity to set their own schedule. The milestones that were given by EJS have not been met.

    b.  EJS referenced cash flow problem; not getting March requisition monies and not getting April requisition monies and structural steel delays as major causes of scheduling problems.

    c.  It was noted that required Release of Liens were not submitted and the pencil requisition for March was not provided to Dore and Whittier for review until 7 April 2003.

    d.  EJS questioned procedure of requiring liens. Owner stated it was a contract requirement.

    e.  It was noted that scheduling problems and paying of subcontractors and vendors has been an issue long before this March/April 2003 requisition.

    f.  EJS noted concern of some subcontractors for payment was unrelated to this project.

Prepared on 7/21/2004

Status and Progress of Construction Meeting held in High School Library
Held on 21 May 2003

7.   EJS's attorney asked: what are the issues?  Owner noted the letter of 23 April defined
     Owner's concerns.  It was decided to review the letter of 23 April 2003, item by item (10
     items) and to identify if item is basically a scheduling issue or a funding issue.

     **Item (1) Draw Down Schedule:**  Draw Down Schedule and Construction Schedule are
     being worked on.  Both will be submitted with the next Application for Payment.  This
     item is a scheduling item and will require time to update.  EJS noted that the Substantial
     Completion date can be met.  Meeting requirements will be difficult, but November is
     accurate.  EJS further noted that cash flow is the major problem, however hopefully a
     solution is at hand.

     **Item (2) Staffing:**  EJS does not feel there is or has been a staffing problem.  Owner
     noted that by using the average of requisition amounts paid that all indications are that
     staffing for this project is low.  EJS noted staffing will increase dramatically once the
     structural steel phase is completed.  Also, EJS noted a majority of materials are on site
     and ready to be installed.  It was noted this is a funding issue as the cash flow problem
     has directly affected staffing.

     **Item (3):** EJS is reviewing the proposal request log and PR's issued and related CCD's.
     EJS noted they do not agree with the procedure of how PR's and CCD's were handled
     even if it is part of the contract.  Owner noted "...as per contract we have the right..."
     EJS noted: "...will be responding in detail in a couple of weeks..." Kemper Surety
     requested info. in relation to Proposal Request, CCD and timeline.

     **Item (4):  Concern for flow of information from EJS to the subcontractors:**  EJS has
     reviewed and forwarded all information from the Architect to the subcontractors.  Some
     replies have been received and EJS is waiting for all subcontractor replies before
     reviewing with the Architect.

     **Item (5)  Concern for subcontractor payment of funds:**  Greenwood Roofing was
     discussed and how they are expected back on site once they have been paid.  EJS is
     waiting for their return.  This is a funding issue.

     **Item (6):**  Scheduling item was addressed previously.  See Item (1) above.

     **Item (7):**  Note EJS will have new project manager at job meetings and this will be his
     only project.  EJS noted this item is a past issue and is now resolved.  This is a staffing
     issue.

     **Item (8):**  Concern for the past condition of the Application for Payments appears to have
     been corrected with the new project manager and evidenced by the April requisition
     application submitted.

     **Item (9):**  EJS noted that the issue with payment of benefits for employees on site has
     been cleared up.

Status and Progress of Construction Meeting held in High School Library
Held on 21 May 2003

**Item (10)  Project Schedule and Completion:**  Concern expressed for latest schedule submitted by EJS and inadequately of schedule in sequencing of work, milestones not met and scheduling window installation before walls are up; painting walls before they are installed etc.  EJS noted to refer back to Item (1).

8.    Kemper Surety requested copies of direct payment claims and claims of subcontractors and vendors who say they have not been paid.  Owner will provide.

9.    Discussion on project time frame and recovery; EJS noted the following:

   a.    Structural steel erection set project back.
   b.    Hard winter and wet spring set project back.
   c.    EJS realizes they have a lot of work to do.
   d.    Structural steel issue is behind them now.
   e.    Roofer getting back on site is critical.
   f.    As noted previously, a lot of material is on site ready to be installed.

10.   EJS repeated that their major problem right now is cash flow.  Kemper Surety noted that they will review with EJS the status and condition of this project, and they realize their assistance will be required.  What is required will be determined by Surety with EJS.  Surety will keep Owner informed of the situation.

11.   Owner expressed the following concerns:

   a.    Anticipate late completion of this project.
   b.    Continued inaccurate schedule with unrealistic milestones and less than honest information.
   c.    November completion does not seem realistic.
   d.    Continued promises with no on site construction results.

12.   Owner requested that EJS provide and document a real schedule.

13.   EJS noted that the new project manager, Matt Daly, will be full time on this project and that North Brookfield is his only project.

14.   Owner asked what involvement the Surety would have in this project.  Surety noted that that is yet to be determined and will be after review with EJS.

15.   Owner asked what plans Surety had if EJS fell apart and/or can't right the ship?  Kemper Surety does not plan or foresee that as a possibility at this time.  Up to now the Surety has seen this as a "quiet job".  Surety did note however that this project "...should have come to my attention and didn't."

Status and Progress of Construction Meeting held in High School Library
Held on 21 May 2003

16. Owner requested information on the reporting and monitoring procedures, specifically in reference to this job and EJS. Kemper Surety noted the following:

    a.    Sureties are financial in nature and hire consultants to review actual construction projects.

    b.    Sureties do not monitor construction schedules.

    c.    Sureties normally wait for their clients and/or Owners to notify them of concerns before they react.

    d.    This project is now "beeping on Kemper's radar".

17. It was noted that this project is frustrating to the Owner and Design Team especially as it related to EJS meeting schedules and deadlines. Surety noted they will provide assistance as needed to EJS, and will expect EJS to follow through.

18. It was verified that there are two substantial completion dates:

    a.    15 August 2003 for the new building.

    b.    15 December 2003 for the entire project including demolition of the existing building and related site work.

    c.    It was further noted that liquidated damages are set at $1000.00 per day. For the building completion and additional $1,000.00 per day for the site completion.

19. Kemper Surety requested a copy of the contract, special conditions and change orders. Owner will provide through the Architect.

20. EJS request response to their request for winter delay. D&W will verify.

The above is my summation of our meeting. If you have any additions and/or corrections, please contact me for incorporation into these minutes. After 10 days, we will accept these minutes as an accurate summary of our discussion and enter them into the permanent record of the project.

Sincerely,

**DORE AND WHITTIER, INC.**
Project Managers • Architects

Harald Aksdal, AIA
Project Architect

HA:elc

cc:    Mr. Ed O'Malley, Principal, North Brookfield Public Schools
       Mr. Robert O'Neill, Superintendent of Schools
       Mr. Chris Conway, Construction Manager
       RJD/JFT/LPD/GOJ/File

**EXHIBIT B**

05/27/03

RECEIVED
MAY 27 2003

1) Millis Plumbing -

| | |
|---|---|
| Total Paid To Date By Owner | $ 82,246.55 |
| Less Retainage | 4,112.33 |
| Total Due Millis | $ 78,134.22 |

| | |
|---|---|
| Total Paid To Date To Millis By Sciaba | $ 74,772.41 |

| | |
|---|---|
| Total Paid To Date To Millis By Owner | 3,361.81 |
| | $ 78,134.22 |

2) Griffen Electric -

This amount was due to Febuary
Requisition not being Paid

3) Greenwood -

| | |
|---|---|
| Total Paid To Date By Owner | $ 159,579.50 |
| Less Retainage | 7,978.97 |
| Total Due Greenwood | $ 151,600.53 |

| | |
|---|---|
| Total Paid To Date By Sciaba | $ 120,250.53 - includes paymento |
| | to Material |
| Total Paid To Date By Owner | $ 31,350.00  Joint Check |
| | Agreement. |

Lien Releases Required for March 03

05500   United Steel      11,544.00 − 5% = 10,966.80

07500   Greenwood      111,579.50 − 5% = 106,000.52

15400   Millis                20,168.45 − 5% = 19,080.03

16000   Griffin               10,875.00

Millis 19,080.30
−        6,447.88      C.O. TO EJS Gas Pipe to Temp Heaters
        12,632.42
              ?

**EXHIBIT C**

# APPLICATION AND CERTIFICATE FOR PAYMENT   AIA DOCUMENT G702

|  |  | PAGE ONE OF   PAGES |
|---|---|---|
| TO OWNER: TOWN OF N. BROOKFIELD<br>10 New School Drive<br>North Brookfield, MA 01535 | PROJECT: NORTH BROOKFIELD JR./SR. HI<br> | APPLICATION NO. 0013B<br>PERIOD TO:    5/1/2003<br>PROJECT NOS.:    238 | Distribution to:<br>☐ OWNER<br>☐ ARCHITECT<br>☐ CONTRACTOR<br>☐<br>☐ |

FROM CONTRACTOR: E. J. SCIABA CONTRACTING CO. ARCHITECT: DORE AND WHITTIER, INC.
18 Wolcott Street                            1795 Williston Road
Readville, MA 02137                          S. Burlington, VT 05403

**RECEIVED**
**MAY 0 8 2003**
**DORE & WHITTIER**

CONTRACT FOR:                                CONTRACT DATE:

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for payment, as shown below, in connection with the contract.
Continuation Sheet, AIA Document G703, is attached.

| | |
|---|---|
| 1. ORIGINAL CONTRACT SUM | $13,222,000.00 |
| 2. Net change by Change Orders | $132,829.28 |
| 3. CONTRACT SUM TO DATE (Line 1 ± 2) | $13,354,829.28 |
| 4. TOTAL COMPLETED & STORED TO DATE | ~~$5,426,335.90~~ |
| (Column G on G703) | $5,427,335.90 |
| 5. RETAINAGE: | |
|   a. 5.000 % of Completed Work | $0.00 |
|   (Columns D + E on G703) | |
|   b. 5.000 % of Stored Material | $0.00 |
|   (Columns F on G703) | |
|   Total Retainage (Lines 5a + 5b or | $271,366.80 |
|   Total in Columns I on G703) | |
| 6. TOTAL EARNED LESS RETAINAGE | $5,155,969.10 |
| (Line 4 less Line 5 Total) | |
| 7. LESS PREVIOUS CERTIFICATES FOR PAYMENT | ~~$4,711,236.23~~ |
| (Line 6 from prior Certificate) | $4,712,235.34 |
| 8. CURRENT PAYMENT DUE | ~~$443,732.77~~ |
|  | $443,733.76 |
| 9. BALANCE TO FINISH, INCLUDING RETAINAGE | $8,199,810.18 |
| (Line 3 less Line 6) | |

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Total changes approved in<br>previous months by Owner | $156,179.07 | $23,349.79 |
| Total approved this Month | $0.00 | $0.00 |
| **TOTALS** | $156,179.07 | $23,349.79 |
| NET CHANGES by Change Order | | $132,829.28 |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR: E. J. SCIABA CONTRACTING.

By: _____    Date: 5/8/02

State of: Massachusetts
County of: Suffolk
Subscribed and sworn to before
me this 8th day of May 2003
Notary Public: _____
My Commission expires: 04/23/2010

```
JEFFREY SCOTT ROGERS
Notary Public
Commonwealth of Massachusetts
My Commission Expires
April 23, 2010
```

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the data comprising this application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED ........................ $443,733.76
~~$443,732.77~~

(Attach explanation if amount certified differs from the amount applied for. Initial all figures on this Application and on the Continuation Sheet that are changed to conform to the amount certified.)

ARCHITECT: Dore & Whittier, Inc.
By: _____    Date: 5/8/2003

This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Contractor named herein. Issuance, payment and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

AIA DOCUMENT G702 • APPLICATION AND CERTIFICATE FOR PAYMENT • 1992 EDITION • AIA® • ©1992 • THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK
AVENUE, N.W., WASHINGTON, D.C. 20006-5292 • WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.
"reproduced electronically with the permission of The American Institute of Architects under license #99703 to Firmwave System, Inc. Reproduction of this document without project-specific information is not permitted. Contact The American Institute of Architects
of this document and license status."    G702-1992

**EXHIBIT D**

CO·404/NBHS

LPO
FILE

# FILE

| **CHANGE** | Owner | ■ | Berkshire Design Group | ☐ |
|---|---|---|---|---|
| **ORDER** | Architect | ■ | Engineers Design Group | ☐ |
| **North Brookfield** | Contractor | ■ | Garcia, Galuska Desousa, Inc. | ☐ |
| **Jr./Sr. High School** | CM | ■ | J. Crissafulli & Associates | ☐ |
| N. Brookfield, MA 01535 | Bldg. Inspector | ■ | CCR/Pyramid | ☐ |

Project: North Brookfield Jr./Sr. High School          Change Order No: **1**
North Brookfield, MA

Owner: North Brookfield Public School District          Date:          26 June 2002

To:    E.J. Sciaba Company, Inc.                    Architects Project No: 00-404
18 Wolcott Street
P.O. Box 191
Readville, MA 02137                          Contract For: North Brookfield Jr./Sr. High School

Contract Date: 19 April 2002

See attached list of 1 item for a total <u>deduction</u> of…………..……………………………..($20,000.00)

Not valid until signed by both the Owner and Architect.
Signature of the Contractor indicates his agreement herewith, including any adjustment in the Contract Sum or Contract Time.

The original Contract Sum was ……… ………. ……… ……………………………… $13,222,000.00
Net change by previously authorized Change Orders……………………………………….$0.00
The Contract Sum prior to this Change Order was … …………………………… $13,222,000.00
The Contract Sum will be <u>decreased</u> by this Change Order……………………………($20,000.00)
The new Contract Sum including this Change Order will be……………………… $13,202,000.00
The Contract Time will be changed by ……… ……… …… …………………………(0) days
The Date of Substantial Completion as of the date of this
Change Order therefore is…… ………. ………………………………………17 November 2003

Authorized:

| ARCHITECT | CONTRACTOR | OWNER |
|---|---|---|
| Dore and Whittier, Inc, | E.J. Sciaba Company., Inc. | North Brookfield Public |
| 1795 Williston Road | 18 Wolcott Street | School District |
| South Burlington, VT | P.O. Box 191 | 10 New School Drive |
| 05403 | Readville, MA 02137 | N. Brookfield, MA 01535 |
| By | By | By |
| Date 6/26/02 | Date 8-13-02 | Date 8-12-02 |

Certification of Appropriation under M.G.L. c44, s31C: Adequate funding in an    Name_____
amount sufficient to cover the total cost of this change order is available.      Title:_____
Date:_____

**North Brookfield Jr./Sr. High School**
**Change Order 1 (1 Item)**

Dore and Whittier Project No. 00-404
Page 2

| CCD/PR/PCO Number | Description | Amount |
|---|---|---|
| PR #1 | 1. A credit of $6,000 for the Partnering Session as required by Special Conditions, Item 46 A. These services have been provided and will continue to be provided by the Owner.<br><br>2. A credit of $9,000 for Permit Fees including building, electrical and plumbing as required by Supplementary General Conditions – Part I, Section 3.7.1.1. These permits have been provided by the Owner.<br><br>3. A credit of $5,000 for laptop computer, software, printer and related equipment as required by Section 01590, 1.04, C, 10. These items were provided by others. | ($20,000.00) |
|  |  |  |
|  |  |  |
| **TOTAL** |  | ($20,000.00) |

**CHANGE ORDER**

**North Brookfield**
**Jr./Sr. High School**
N. Brookfield, MA 01535

| | | |
|---|---|---|
| Owner | ■ | Berkshire Design Group ☐ |
| Architect | ■ | Engineers Design Group ☐ |
| Contractor | ■ | Garcia, Galuska Desousa, Inc. ☐ |
| CM | ■ | J. Crissafulli & Associates ☐ |
| Bldg. Inspector | ■ | CCR/Pyramid ☐ |

Project: North Brookfield Jr./Sr. High School
North Brookfield, MA

Owner: North Brookfield Public School District

Change Order No: 2

Date:        11 November 2002

Architects Project No: 00-404

To:   E.J. Sciaba Company, Inc.
18 Wolcott Street
P.O. Box 191
Readville, MA 02137

Contract For:  North Brookfield Jr./Sr. High School

Contract Date: 19 April 2002

See attached list of 4 items for a total <u>increase</u> of...............................................$18,169.13

Not valid until signed by both the Owner and Architect.
Signature of the Contractor indicates his agreement herewith, including any adjustment in the Contract Sum or Contract Time.

The original Contract Sum was ........................................................................ $13,222,000.00
Net change by previously authorized Change Orders....................................($20,000.00)
The Contract Sum prior to this Change Order was ..................................... $13,202,000.00
The Contract Sum will be <u>increased</u> by this Change Order ......................... $18,169.13
The new Contract Sum including this Change Order will be.................................. $13,220,169.13
The Contract Time will be changed by ....................................................................(0) days
The Date of Substantial Completion as of the date of this
Change Order therefore is..................................................................................17 November 2003

Authorized:

ARCHITECT            CONTRACTOR            OWNER

Dore and Whittier, Inc,      E.J. Sciaba Company., Inc.      North Brookfield Public
1795 Williston Road         18 Wolcott Street               School District
South Burlington, VT        P.O. Box 191                    10 New School Drive
05403                       Readville, MA 02137             N. Brookfield, MA 01535

By _____          By _____               By _____

Date 11.15.02            Date 11-18-02                  Date 11/20/02

Certification of Appropriation under M.G.L. c44, s31C: Adequate funding in an    Name _Nancy J. Nykiel_
amount sufficient to cover the total cost of this change order is available.     Title: _Town Accountant_
                                                                                 Date: _12/5/02_

**North Brookfield Jr./Sr. High School**
**Change Order 2 (4 Item)s**

Dore and Whittier Project No. 00-404
Page 2

| CCD/PR/PCO Number | Description | Amount |
|---|---|---|
| PR #2/COP#2 | 1. 6" waterstops at all cold joints in concrete pours of elevator pit. | $1,149.56 |
| PR#3/COP#3 | 2. 4" underground conduits from ceiling space of music room at Line B in new building per Dwg. SKO71902. | $9,300.28 |
| PR#4/COP#4 | 3. Change Door hardware sets at Public Corr. Staff Toilet Rooms. | $654.50 |
| COP#1 | 4. Ledge Removavl from Building Area C footing on Col. Line 19 Prime. | $7,064.79 |
| **TOTAL** | | **$18,169.13** |

**EXHIBIT E**



**DORE AND WHITTIER, INC.**
Architects • Project Managers

1795 WILLISTON RD, STE. 200  S. BURLINGTON, VT  05403
Phone (802) 863-1428  Fax (802) 863-6955

1400 HANCOCK STREET, QUINCY, MA 02169
Phone: (617) 471-2897 • Fax: (617) 471-2516

29 WATER STREET  NEWBURYPORT, MA 01950
Phone: (978) 499-2999  Fax: (978) 499-2944

# MEMORANDUM

| | | | |
|---|---|---|---|
| **DATE:** | **6 May 2003** | **OFFICE:** | ■ **VT**   ☐ **MA** |

**MEMO TO:**     **Mr. Robert O'Neill**     COPY: CMC/LPD/ARR/GOJ/File
                 **Superintendent of Schools**

**FROM:**     **Harald Aksdal**

**PROJECT:**     **North Brookfield Jr./Sr. High School**

**PROJECT NO:**     **00-404**

**SUBJECT:**     **Application and Certificate for Payment #12**

---

The amount certified for the Application and Certificate for Payment #12 (February, 2003) has been reduced from the $293,589.57, as shown on Line 8, Current Payment Due to **$287,556.28**. This reduction is due to two items:

1. Item 00150 CPM Schedule Updates is changed from $4,000.00 noted in column E to $1,000.00 as the schedules for December, January and February, 2003 arrived at D&W at the same time as the March, 2003 CPM Schedule (April 25, 2003). These schedules arrived too late to meet the requirements of the contract documents. We can however certify payment for $1,000.00 for the March, 2003 schedule update.

2. We once again have incorporated CCD #5, total being a deduction of $3,349.79, into this application for payment.

Should you have any questions and/or concerns, do not hesitate to contact me.

HA:kne