UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 03-40266 CBS

AMERICAN MANUFACTURERS MUTUAL
INSURANCE COMPANY,

    Plaintiff

v.

TOWN OF NORTH BROOKFIELD,

    Defendant

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS NOT IN DISPUTE AND STATEMENT OF ADDITIONAL FACTS IN OPPOSITIONN TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF FACTS:

8.   At the May 21, 2003 meeting among the representatives of the Town, Sciaba, Dore & Whittier and AMMIC, there was discussion of Sciaba's financial condition and cash flow problems.  Affidavit of Thomas W. McEnaney in Support of Defendant's Reply to Plaintiff's Response to Defendant's Local Rule 56.1 Statement of Material Facts Not in Dispute and Statement of Additional Facts in Opposition to Defendant's Motion for Partial Summary Judgment, Exhibit A, ¶¶ 4, 6 and 10; Exhibit B, p. 54 ("McEnaney Reply Affidavit").

9.   The Affidavit of James Murray submitted in support of the Town's Motion for Partial Summary Judgment, ¶ 7 supports the Town's statement.

13.   The Town does not dispute the specific facts contained in paragraph 13, only their relevance.  Affidavit of Lee Dore in Support of Defendant's Reply to Plaintiff's Response to

Defendant's Local Rule 56.1 Statement of Material Facts Not in Dispute and Statement of Additional Facts in Opposition to Defendant's Motion for Partial Summary Judgment ("Dore Rule 56.1 Affidavit"), ¶¶ 15-18.

20.     Denied.  The Contract does not provide that the submission of schedules is a condition precedent to payment.  Griffin Affidavit, Exhibit 14.  Representatives of the Town or D&W did not state at the May 21, 2003 meeting that the Town required Sciaba to submit an updated construction schedule in order to get paid.  Dore Rule 56.1 Affidavit, ¶ 4, and Affidavits of R. John Dore, Chris Conway, Fred Windover, Larry Hasenfus, Edward E. Wilkins, Jr., Donald J. Gillette and Greg Kline in Support of Defendant's Reply to Plaintiff's Response to Defendant's Local Rule 56.1 Statement of Material Facts Not in Dispute and Statement of Additional Facts in Opposition to Defendant's Motion for Partial Summary Judgment, ¶ 4.

DEFENDANT'S REPLY TO PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS PRECLUDING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT

21.     Admitted for purposes of summary judgment.

22.     The Town replies that at the time of the May payments the Town was aware that Sciaba was behind schedule, and that it expected, but did not know, that Sciaba would not complete the Project on time.  Representatives of AMMIC and Sciaba provided assurances to the Town at the May 21 meeting that Sciaba would complete the Project.  Dore Rule 56.1 Affidavit, ¶ 8.  The Town admits only that at the time of the May payments it was aware that if Sciaba did not meet the substantial completion deadlines in the Contract for the Project, the Town would have a claim against Sciaba for liquidated damages.  The Town does not dispute that the issue of liquidated damages was discussed at meetings of the School Building Committee.

23.     Admitted for purposes of summary judgment, except that the quoted statement of Superintendent Robert O'Neill is incomplete.  Superintendent O'Neill actually stated: "<u>I think</u>

that the building committee was looking for documentation with regard to their concerns about the schedule. And it was felt that another way to do that would be to formalize a budget and a manpower summary report. [emphasis added]." The Town further replies that the quote attributed to James Murray in paragraph 23 of the plaintiff's response is likewise incomplete. Mr. Murray stated that though his mental calculations of the amount of liquidated damages rendered a conclusion that such damages would be "very high," he had not concluded that such damages would exceed retainage.

24. Admitted for purposes of summary judgment.

25. Admitted for purposes of summary judgment.

26. Admitted for purposes of summary judgment.

27. Admitted for purposes of summary judgment. The Town further replies that 9,518,000 is an approximation and that the actual value of remaining work identified in the April 16 analysis was $9,517,960.00.

28. Admitted for purposes of summary judgment.

29. Admitted for purposes of summary judgment.

30. Admitted for purposes of summary judgment.

31. Admitted that the mathematical difference between $455,000.00 and $248,013.00 is $183,634.00.

32. Admitted for purposes of summary judgment.

33. Admitted that paragraph 33 of AMMIC's response characterizes Mr. Anastasio's opinion.

34. Admitted for purposes of summary judgment.

35. Admitted for purposes of summary judgment.

36. Admitted for purposes of summary judgment.

37. Admitted for purposes of summary judgment.

38. Admitted for purposes of summary judgment.

39. The Town denies that Stephen Beatty asked the Town's representatives at the May 21 meeting to advise him before any payments were made. Dore Rule 56.1 Affidavit, ¶ 3; Affidavits of R. John Dore, Chris Conway, Fred Windover, Larry Hasenfus, Edward E. Wilkins, Jr., Donald J. Gillette and Greg Kline, ¶ 3.

40. The Town replies that representatives of the Town inquired whether the Town should begin making payments to AMMIC rather than Sciaba. Affidavits of Fred Windover, Larry Hasenfus, Edward E. Wilkins, Jr., and Greg Kline, ¶¶ 9-10.

41. Admitted that Lee Dore faxed a memorandum to Scott Finneran dated April 3, 2003. The Town further replies that it denies that the purpose of such letter was to request "assurances."

DEFENDANT'S STATEMENT OF ADDITIONAL FACTS IN REPLY TO PLAINTIFF'S RESPONSE

1. At the May 21, 2003 meeting among the representatives of the Town, Sciaba, Dore & Whittier and AMMIC, there was discussion of Sciaba's financial condition and cash flow problems. Affidavit of Thomas W. McEnaney in Support of Defendant's Reply to Plaintiff's Response to Defendant's Local Rule 56.1 Statement of Material Facts Not in Dispute and Statement of Additional Facts in Opposition to Defendant's Motion for Partial Summary Judgment, Exhibit A, ¶¶ 4, 6 and 10; Exhibit B, p. 54 ("McEnaney Reply Affidavit").

2. Sciaba submitted to D&W lien waivers from its subcontractors for its payment application No. 12 prior to the May 21, 2003 meeting. Dore Rule 56.1 Affidavit, ¶ 10.

3. The Town had processed Sciaba's payment application Nos. 12 and 13B and included the payments in one single check. However, because Sciaba had not provided lien waivers for

4

payment application No. 13B, D&W advised the Town to issue two separate checks, one for payment application No. 12 and one for No. 13B. Dore Rule 56.1 Affidavit, ¶ 11.

4. The check for payment application No. 12 became available after the May 21, 2003 meeting, and was forwarded by the Town to Chris Conway of D&W, who hand delivered it to a representative of Sciaba. Dore Rule 56.1 Affidavit, ¶ 12.

5. D&W received the lien waivers applicable to payment application No. 13B on or about May 27, 2003, at which time the check for payment application No. 13B was delivered to Sciaba. Dore Rule 56.1 Affidavit, ¶ 13.

6. During the Project, D&W and the Town received lien waivers for Sciaba's subcontractors when Sciaba was requested to submit lien waivers. Dore Rule 56.1 Affidavit, ¶ 14.

7. During a construction project, discrepancies between the amounts paid to a general contractor on behalf of a subcontractor's work and the amounts included in a lien waiver from the subcontractor are often due to disputes or arrangements between the general contractor and subcontractor to which the project architect and the owner are not privy. Dore Rule 56.1 Affidavit, ¶ 15.

8. For example, on the Project, some time after it arose, D&W learned that there was a dispute between Sciaba and its subcontractor, Millis Plumbing Co., Inc. relative to the cost of a gas pipe to provide temporary heat to the building site. Dore Rule 56.1 Affidavit, ¶ 16.

9. The purpose for requiring a general contractor to submit lien waivers from its subcontractors is not to verify that the amounts set forth in the lien waivers exactly equal the amounts paid to the general contractor on account of a subcontractor's work, but rather to monitor that the amounts paid to the general contractor and amounts requisitioned by the general contractor for a particular subtrade work are generally consistent, and to verify that subcontractors are receiving payments. Dore Rule 56.1 Affidavit, ¶ 17.

10. On each payment application for the Project, Sciaba certified as follows:

> The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which the previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

Dore Rule 56.1 Affidavit, Exhibit C.

11. At the May 21, 2003 meeting, no representative of the Town or Dore & Whittier represented that Sciaba was required to furnish an updated construction schedule in order to get paid on payment applications submitted for the Project. McEnaney Reply Affidavit, Exhibits A, C and D at p., 95; Dore Rule 56.1 Affidavit, ¶ 4; Affidavits of R. John Dore, Chris Conway, Fred Windover, Larry Hasenfus, Edward E. Wilkins, Jr., Donald J. Gillette and Greg Kline, ¶ 4.

12. At the May 21, 2003 meeting, Sciaba represented that November, 2003 was a reasonable, accurate substantial completion date for the building. McEnaney Reply Affidavit, Exhibit A, ¶ 8.

13. At the May 21, 2003 meeting, Sciaba stated that a new project manager, Matt Daly, had been assigned on a full time basis, a new Project schedule would be submitted by no later than the next payment request and that Sciaba would provide a report on its financial status to AMMIC by May 23, 2003. McEnaney Reply Affidavit, Exhibit A, ¶ 5, Affidavits of R. John Dore and Chris Conway, ¶ 7; Dore Rule 56.1 Affidavit, ¶ 7.

14. At the May 21, 2003 meeting, AMMIC's representatives informed the Town that AMMIC had not yet made a determination what, if any, involvement it would have on the Project. McEnaney Reply Affidavit, Exhibit A, ¶14; Exhibit D at pp. 94-95.

15. At the May 21, 2003 meeting, AMMIC's representatives informed the Town that AMMIC did not foresee the possibility at that time that Sciaba would default on the Project, but acknowledged that the Project should have come to its attention but did not. McEnaney Reply

6

Affidavit, Exhibit A, ¶15; Affidavits of R. John Dore, Chris Conway, Fred Windover, Larry Hasenfus, Edward. E. Wilkins, Jr., Donald J. Gillette and Greg Kline, ¶ 8; Dore Rule 56.1 Affidavit, ¶ 8.

16. Sciaba's representatives assured the Town that Sciaba could complete the Project. McEnaney Reply Affidavit, Exhibit D, at pp. 93-94; Affidavits of R. John Dore, Chris Conway, Fred Windover, Larry Hasenfus, Edward. E. Wilkins, Jr., Donald J. Gillette and Greg Kline, ¶ 8; Dore Rule 56.1 Affidavit, ¶ 8.

17. At the May 21, 2003 meeting, AMMIC's representatives never requested that the Town notify AMMIC prior to making any future payments on the Project. McEnaney Reply Affidavit, Exhibit D, pp. 95-96; Affidavits of R. John Dore, Chris Conway, Fred Windover, Larry Hasenfus, Edward. E. Wilkins, Jr., Donald J. Gillette and Greg Kline, ¶ 2; Dore Rule 56.1 Affidavit, ¶ 2.

18. At no time during the meeting did AMMIC's representatives request the Town to withhold payments from Sciaba or make payments to AMMIC, as performance bond surety, on Sciaba's behalf. Affidavits of R. John Dore, Chris Conway, Fred Windover, Larry Hasenfus, Edward. E. Wilkins, Jr., Donald J. Gillette and Greg Kline, ¶ 5; Dore Rule 56.1 Affidavit, ¶ 5.

19. At no time during the meeting did AMMIC's representatives ever express any concern that the Town should not make payments to Sciaba for work performed on the Project. Affidavits of R. John Dore, Chris Conway, Fred Windover, Larry Hasenfus, Edward. E. Wilkins, Jr., Donald J. Gillette and Greg Kline, ¶ 6; Dore Rule 56.1 Affidavit, ¶ 6.

20. During the Fed. R. Civ. P. 30(b)(6) deposition of AMMIC on May 10, 2003, Mr. Stephen Beatty, as AMMIC's designee, testified that he did not consider the Town's April 23, 2003 letter requesting a meeting with Sciaba and AMMIC to be a default letter but rather that he merely considered it to be a "trouble letter." McEnaney Reply Affidavit, Exhibit E, p. 82.

21. Mr. Beatty testified at deposition that AMMIC would risk being held liable for interference with contractual relations if it requested the Town to make payments to it instead of Sciaba prior to a declaration of default by the Town under the Project Contract and Performance Bond. McEnaney Reply Affidavit, Exhibit E, pp. 85, 88-89.

22. AMMIC did not request the Town to obtain AMMIC's assent prior to making any payments to Sciaba on the Project at the May 21, 2003 meeting. McEnaney Reply Affidavit, Exhibit E, p. 94.

23. Larry Hasenfus, a member of the Town's Board of Selectmen who was in attendance at the May 21, 2003 meeting, asked representatives of AMMIC and Sciaba whether the Town should continue making payments to Sciaba under the Project contract. Affidavits of Larry Hasenfus, ¶ 9, Fred Windover, ¶ 10, and Greg Kline, ¶ 9.

24. Fred Windover, another member of the Town's Board of Selectmen who was in attendance at the May 21, 2003 meeting, also asked whether the Town should continue to make payments to Sciaba under the Project contract. Affidavits of Fred Windover, ¶9, Larry Hasenfus, ¶ 10 and Greg Kline, ¶10.

25. The Town was informed by representatives of AMMIC and/or Sciaba that the Town needed to continue making payments to Sciaba so that Sciaba could make payments to its subcontractors and not worsen its cash flow problems. The Town was also informed by representatives of AMMIC and/or Sciaba that Scaiba had the support of AMMIC for purposes of completing the Project. Affidavits of Larry Hasenfus, Fred Windover and Greg Kline, ¶ 11.

26. AMMIC's expert has opined that "although there were periods of time when Sciaba's progress was slower than it should have been, there were legitimate reasons that were not entirely Sciaba's responsibility. Some of the slow progress was due to factors for which the

8

Town was responsible, or for which the Town bore the risk under the Contract." McEnaney Reply Affidavit, Exhibits F and G.

27. Following the May 21, 2003 meeting, Robert O'Neill, Superintendent of Schools for the Town, sent a letter dated May 30, 2003 to Mr. Beatty summarizing the discussion at the May 21, 2003 meeting. McEnaney Reply Affidavit, Exhibit C. Mr. Beatty did not respond to Mr. O'Neill's letter. McEnaney Reply Affidavit, Exhibit E, p. 81.

28. At his deposition on May 19, 2003, Richard P. Anastasio testified that AMMIC did not ask the Town to withhold payments from Sciaba or request that the Town make checks jointly payable to Sciaba and AMMIC. McEnaney Reply Affidavit, Exhibit B, pp. 61-62.

29. AMMIC did not have any discussion with Sciaba concerning having payments made to a custodial account or for joint payments. McEnaney Reply Affidavit, Exhibit B, pp. 63-64.

30. At the May 21, 2003 meeting representatives of Sciaba and AMMIC stated that Sciaba would meet reasonable deadlines for completion of the Project. McEnaney Reply Affidavit, Exhibit D, pp. 93-94.

31. The project referenced in paragraph 22 of AMMIC's Response to Defendant's Local Rule 56.1 Statement of Material Facts Not in Dispute was the Clinton Elementary School Project. In the Clinton Project, the Town did not withhold liquidated damages until after the date for substantial completion had passed. Dore Rule 56.1 Affidavit, ¶ 19.

32. Sciaba voluntarily defaulted on the Project on or about May 30, 2003, which was prior to the dates for substantial completion of the building, August 15, 2003, and the Phase 4 work, December 15, 2003. Dore Rule 56.1 Affidavit, ¶ 20.

33. Generally, a general contractor on a construction project requisitions for general conditions based on monthly installments that are not related to the amount of work that is performed on a monthly basis, but rather based on the total amount of the contract price allocated

9

to general conditions divided by the number of months in the expected period of construction. Dore Rule 56.1 Affidavit, ¶ 21.

34. During the Project, D&W used the following procedure in processing payment applications submitted by Sciaba: if Sciaba included a line item in its monthly payment application for "Project schedule" and the monthly Project schedule was not submitted, the payment application was reduced by the amount sought by Sciaba for the Project schedule line item. Dore Rule 56.1 Affidavit, ¶ 22.

35. Change Order No. 3 to the contract between the Town and Sciaba for the Project extended the substantial completion dates for the Project by 28 days. The Project had two substantial completion dates: July 15, 2003 for the building and November 17, 2003 for the Phase 4 work. The intent of Change Order No. 3 was to extend both substantial completion dates by 28 days, that is, to August 15, 2003 for the building and December 15, 2003 for the Phase 4 work. The document includes only the December 15, 2003 date because that was the last applicable date. Dore Rule 56.1 Affidavit, ¶ 23.

36. The inclusion of only the last substantial completion date on Change Order No. 3 is consistent with the practice employed on the Project for Change Order Nos. 1 and 2, which did not reference the substantial completion dates but only include the second substantial completion date of November 17, 2003 for the Phase 4 work. Dore Rule 56.1 Affidavit, ¶ 24.

37. As set forth in a memorandum from Harald Aksdal of D&W to Robert O'Neill, Superintendent of Schools, dated May 6, 2003 regarding Sciaba's payment application No. 12, Sciaba submitted CPM schedule updates for the months of December of 2002 and January, February and March of 2003 on April 25, 2003. Dore Rule 56.1 Affidavit, ¶ 25.

38. During his deposition by plaintiff's counsel in In re: Edward J. Sciaba, Jr., U.S. Bankruptcy Court, District of Massachusetts, Eastern Division, Case No. 03-20569 CJK,

Matthew J. Daly, a Sciaba project manager on the Project who attended the May 21, 2003 meeting, testified that the outcome of the meeting was that the Town was going to pay Sciaba, Sciaba was going to accelerate its schedule and AMMIC basically stated that it would stand behind Sciaba but continue to monitor the situation closely. McEnaney Reply Affidavit, Exhibit H.

                            TOWN OF NORTH BROOKFIELD

                            By its attorneys,

                            /s/Thomas W. McEnaney
                            David J. Doneski (BBO# 546991)
                            Thomas W. McEnaney (BBO# 629130)
                            Peter L. Mello (BBO# 659680)
                            Kopelman and Paige, P.C.
                             Town Counsel
                            31 St. James Avenue
                            Boston, MA 02116
                             (617) 556-0007

272705/NBRO-HS/0019