UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY,<br>                              Plaintiff,<br><br>vs.<br><br>TOWN OF NORTH BROOKFIELD,<br>                              Defendant. | Civil Action No. 03-40266-CBS |

REPLY OF PLAINTIFF AMERICAN MANUFACTURERS MUTUAL
INSURANCE COMPANY TO DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AS TO CLAIMS FOR DIRECT PAYMENT

The Plaintiff, American Manufacturers Mutual Insurance Company ("AMMIC"), hereby replies to the Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment as to Claims for Direct Payment ("Opposition" or "Opp.").

The Town[1] does not dispute in any material respect any of AMMIC's Facts. They merely point to apparent mismatches of a few days between Sciaba's billing periods and the billing periods of the requisitions of the subcontractors whose direct payment claims are at issue. Nothing in the Motion turns on this level of detail. Thus, the facts as presented by AMMIC are undisputed. The Town agrees. Opp. at 1.

In its Memo, AMMIC showed that the Town's payment to Sciaba, rather than to Millis and Greenwood, of amounts the latter had claimed under Mass. G.L. c. 30 § 39F ("Section 39F"), violated that direct payment statute in three ways. AMMIC showed, further, that such payments provided AMMIC with a partial defense or right of affirmative recovery to the extent of the improper payments. The essence of the Town's argument in its Opposition is that a claim

---

[1] Capitalized terms not defined herein have the same definitions ascribed to them in AMMIC's Statement of Undisputed Facts ("AMMIC's Facts") or its supporting Memorandum ("Memo.").

for direct payment under Section 39F is only valid after the awarding authority has approved the work covered by the claim and paid the general contractor for it and therefore the payments to Sciaba did not violate the statute. Opp. at 3, 5-6. It also argues that it was excused from compliance with Section 39F by the terms of Mass. G.L. c. 30 § 39K. Opp. at 7-8. As shown below, the Town has misunderstood its obligations under and role in administering Section 39F and its arguments lack merit. The Town's final argument is that, even if it violated Section 39F, there can be no monetary consequence of such violation because, it contends, AMMIC is not entitled to a *pro tanto* discharge for a payment made in violation of statute. Opp. at 8-12. This argument is based on a vain attempt to distinguish binding precedent and is illogical. AMMIC's Motion for Partial Summary Judgment as to Claims for Direct Payment should be allowed.

**ARGUMENT**

I. **A Claim For Direct Payment Is Valid Even If Made Before The Awarding Authority Has Approved The Work Covered By The Claim And Before It Has Paid The General Contractor For That Work.**

The Town struggles to argue that its payments to Sciaba, rather than to Millis and Greenwood, did not violate Section 39F. In so doing, the Town invents statutory provisions that do not exist and ignores several provisions that do. Its first mistake is rooted in the statement that, "[a]lthough not expressly stated, G.L. c. 30, § 39F presupposes that a subcontractor making a direct payment demand has a right to payment in the amount demanded." Opp. at 3. The conclusion it draws from this non-provision is that it is the job of the awarding authority to adjudicate whether the general contractor owes the subcontractor the amount claimed. However, the statutory scheme of Section 39F scrupulously keeps the awarding authority out of the role of adjudicating the merits of the subcontractor's claim. It explicitly puts onto the general contractor the burden and the right to either contest the subcontractor's entitlement to the amount claimed or not. Mass. G.L. c. 30 § 39F(1)(d). If a general contractor does not contest the claim, it does

2

not and should not matter to the awarding authority whether the reason for the non-objection is that the general contractor agrees with the amount or is simply inattentive. The awarding authority's interests are protected by the right it has to determine the amount earned by the general contractor and make appropriate deductions pursuant to Mass. G.L. c. 30 § 39K. From amounts payable to the general contractor, the awarding authority is obliged by statute to pay to the subcontractor that portion of the claimed amount to which the general contractor does not object. Mass. G.L. c. 30 § 39F(1)(c). As for any amount objected to, the awarding authority is obliged to put it into a joint interest-bearing bank account, Mass. G.L. c. 30 § 39F(1)(e), and let the general contractor and subcontractor resolve their differences without further involvement by the awarding authority. Mass. G.L. c. 30 § 39F(4). Under no circumstances is the awarding authority to pay either the disputed portion or the undisputed portion to the general contractor unless the claim is withdrawn.

There is nothing unusual or improper in a general contractor permitting more of the funds it has earned to go to a subcontractor than might be warranted based on the line in the general contractor's requisition that corresponds to the subcontractor's trade. It is common for a general contractor or subcontractor to perform work that, under the formal subcontract, was the responsibility of the other, and to make a financial adjustment between them. These kinds of adjustments go on all the time without the awarding authority knowing or needing to know. It is simply none of the awarding authority's business.

Moreover, Section 39F expressly permits a subcontractor to include in its demand amounts claimed for "extra labor and materials furnished to the general contractor." Mass. G.L. c. 30 § 39F(1)(e). This category includes charges for "work done by a subcontractor to achieve the goals of the subcontract that is made necessary by the general's negligence, carelessness, or

3

wrongful act …." *Manuel F. Spencer & Son, Inc. v. Commonwealth,* 16 Mass. App. Ct. 290, 297 (1983). In *Spencer,* the Appeals Court held that amounts demanded by the subcontractor for extra costs incurred due to the general contractor's disrupting and relocating its work were eligible under Section 39F. *Id.* In such an instance, the awarding authority would have no occasion or basis to approve or pay the general contractor for such charges and yet would be required by Section 39F either to pay them to the subcontractor, if unchallenged by the general contractor, or to put them into a joint account, if contested by the general contractor.

      The Town does not explain how leaving it up to the general contractor, not the awarding authority, to contest the amount of a subcontractor's claim could possibly increase payment bond claims or overload the courts with unnecessary litigation. *See* Opp. at 4. In fact just the opposite is true. If a subcontractor is paid pursuant to Ch. 30 § 39F, there is *less* likelihood it will make a payment bond claim because it will have been paid what it sought. By the same token, if the general contractor agrees with the amount of the claim, and a payment goes to the subcontractor as a result, there is no dispute over which they would be litigating. There would be *less* likelihood of litigation, not more.

      The only case law the Town cites to support its strained interpretation of Section 39F is either distinguishable or utterly unrelated to the issue at hand. *See* Opp. at 3, 6. The case of *Adalian Bros., Inc. v. Boston,* 323 Mass. 692 (1949), does not involve Section 39F and the Town does not explain its relevance to the instant dispute.

      The case of *Cardi Corp. v. Sutton Corp.,* Suffolk Superior Court C.A. No. 95-6027B, attached to the Town's Opposition as Exhibit A, is distinguishable. There, the disputants were the general contractor and the subcontractor claimant. *See* Slip op. at 2. The awarding authority was merely a stakeholder; its own action was not being challenged. *See* Slip op. at 5. The

4

general contractor, not the awarding authority, was challenging the subcontractor's entitlement to payment under its subcontract and the court's decision adjudicated that dispute in favor of the general contractor. The court's comments about Section 39F are *dictum* in that the result would have been the same whether the direct payment claim was properly asserted or not. The awarding authority had set aside the disputed funds, not paid them to either disputant, and the court awarded the funds to the general contractor on the merits of the contract claim. That case does not stand for the proposition that the awarding authority can adjudicate the merits of a subcontractor's claim.

The Town mentions in passing that the demands for direct payment did not include a statement of the status of completion of the subcontract work, as required by Section 39F(1)(d). *See* Opp. at 4, 5. This observation must be dismissed as an irrelevant afterthought, because the Town did not point out any such omission in its letters to the claimants, Griffin Aff. Exhs. B, O, and made partial payments in spite of it. Had this omission been significant, the Town should have drawn it to the claimants' attention and given them the opportunity to cure it, which could easily have been done in the two weeks between the Town's letters and the first of the May Payments to Sciaba. Furthermore, the fact that the Town approved additional amounts of the claimants' work on Applications 12 and 13B, before it made the May Payments, proves that it had sufficient information about the status of completion of the subcontract work to protect its own interests. By the time of the May Payments, "there can no longer be any reasonable protest about lack of notice of claim or defense." *Spencer,* 16 Mass. App. Ct. at 295.

Several provisions of Section 39F make clear that a claim for direct payment is valid even if it is asserted before the awarding authority has approved or paid the general contractor for the underlying work of the subcontractor. First, Section 39F states:

5

> If the awarding authority has received a demand for direct payment from a subcontractor for any amount which has already been included in a payment to the general contractor *or which is to be included in a payment to the general contractor* for payment to the subcontractor … the awarding authority shall act upon the demand as provided in this section.

Mass. G.L. c. 30 § 39F(1)(c)(last sentence) (emphasis added). This provision makes clear that the subcontractor's work need not already have been included in a payment to the general contractor in order for the claim to be proper.

Likewise, Section 39F(1)(i) provides:

> A demand made after the first day of the month following that for which the subcontractor performed or furnished the labor and materials for which the subcontractor seeks payment shall be valid even if delivered or mailed prior to the time payment was due on a period estimate from the general contractor.

Mass. G.L. c. 30 § 39F(1)(i) (last sentence). This provision means that a claim for direct payment is valid even before the awarding authority must make payment to the general contractor for the work so long as the claim is made after the first of the next month. The undisputed facts with respect to the Millis and Greenwood claims are that they made their claims after April 1, the first day of the month following the period in which they claim to have performed the work. The undisputed facts are also that, by the time the Town made payment, it had approved sufficient work of each of these subcontractors to cover the full amounts of their claims. AMMIC's Facts ¶¶ 7, 30. Thus, the claims were valid, not premature, and the claimants were not required to wait until their payments for work approved on Sciaba's Application 12 were past due before asserting their claims, as erroneously suggested by the Town. *See* Opp. at 5.

The provisions of Section 39F(1)(e) discussed in AMMIC's opening Memorandum reinforce the point that events occurring after the submission of a claim for direct payment that

6

remove a basis for nonpayment will not invalidate the claim but rather defer the time for payment until after such removal. *See* Memo. at 8-9.

As shown above, the Town's assertion that it complied with Section 39F is without merit.

### II. The Town Was Not Excused from Compliance with Section 39F by Mass. G.L. c. 30 § 39K or By Provisions of the Contract.

The Town argues that it was excused from compliance with Section 39F by the terms of Mass. G.L. c. 30 § 39K ("Section 39K"). *See* Opp. at 7. In so doing, it disregards that portion of Section 39K that requires the awarding authority to deduct amounts that are the subject of a direct payment claim under Section 39F from amounts that would otherwise be payable to the general contractor under Section 39K. There is no inconsistency between the two provisions and the Town's payment obligations under Section 39K do not override Section 39F's injunction not to pay disputed amounts to the general contractor.

The Town's citation of various provisions of Sciaba's Contract is puzzling at best. *See* Opp. at 7. It seems to be suggesting that the Contract provisions override the statute. There is nothing in Section 39F that permits a contractor and an awarding authority to modify Section 39F and, since the Contract itself incorporates Section 39F, the cited Contract provisions must be read in a manner consistent with Section 39F, not so as to vitiate it.

Thus, there is nothing in Section 39K or the Contract that excuses the Town's noncompliance with Section 39F.

### III. The Town's Reasons For Arguing That AMMIC Is Not Entitled To A Pro Tanto Discharge For A Payment Made In Violation Of Statute Are Inconsistent With Applicable Case Law.

The Town's final argument is that, even if it violated Section 39F, AMMIC is not entitled to a *pro tanto* discharge for a payment made in violation of statute. *See* Opp. at 8-12. Since much of this argument overlaps with the argument regarding AMMIC's defense of *pro tanto*

7

discharge in the Town's own motion for Partial Summary Judgment [docket entry 38], AMMIC incorporates herein by reference its response to that argument, in AMMIC's Opposition to Defendant's Motion for Partial Summary Judgment [docket entry 61], at 11-18.  As discussed there, the cases on which the Town relies involved contracts that gave the awarding authority *discretion* to make the payments they did.  *See id.* at 16-17.  The Supreme Judicial Court has held:

> [Section] 39F created an obligation.  The language is mandatory.  The "awarding authority shall make * * * [the payment which] shall [pro tanto] discharge * * * [its obligation] to the general contractor."  We see no basis for assuming that the legislature was making only a suggestion of good practice.  The legislative history tends to show the contrary.

*Pioneer Steel Erectors, Inc. v. Commonwealth,* 344 Mass. 195, 198 (1962)(ellipses and brackets in original).  *Pioneer Steel* makes clear that the Town had no discretion to pay Sciaba instead of the claimants the amounts of their demands to which Sciaba did not reply, and the cases on which the Town relies regarding the effect on a surety of a payment made within the awarding authority's discretion are distinguishable.  The above-quoted language of Section 39F(1)(g) gives rise to the inference that, if the awarding authority *does not comply* with Section 39F in making payments following receipt of a demand, *such payment does not pro tanto discharge* the awarding authority's obligation to the general contractor.  That is precisely AMMIC's argument here.

The Town argues that "AMMIC is impermissibly attempting to shift its liability, as performance and payment bond surety, to the Town because Sciaba, its principal, failed to make payments to its subcontractors … and AMMIC failed to take sufficient steps to keep itself informed of Sciaba's actions.  *Watertown Fire Insurance Co. v. Simmons*, 131 Mass. 85, 86 (1881)."  Opp. at 10.  This statement, and the argument that follows it, turns the law of suretyship on its head.  It is *because* the surety has exposure under its bonds that the awarding

8

authority, as bond obligee, is required to preserve the contract funds in its hands as security for the surety, just as if its own interests were at stake. *See* AMMIC's Opposition to Defendant's Motion for Partial Summary Judgment [docket entry 61], at 15-16. Equity requires a bond obligee not to make payments under the bonded contract except in accordance with the terms of the contract, including the terms, in this instance, of Section 39F.

To the extent the Town is suggesting that the existence of AMMIC's payment bond diminishes the Town's obligations under Section 39F, it is wrong. *See* Opp. at 10-11. Such an argument was rejected by the Supreme Judicial Court in *Pioneer Steel.* 344 Mass. at 198-99.

The Town's references to a supposed obligation on the part of a surety to keep itself informed are cryptic at best, and in fact are wrong.[2] *See* Opp. at 9-11. Its citation to *Watertown Fire Ins. Co. v. Simmons*, 131 Mass. 85, 86 (1881), avails it nothing and in fact that case supports AMMIC's position. It involved an agent whose fidelity was guaranteed by a faithful performance bond (not a contract surety bond). The obligees merely delayed in collecting funds the agent was supposed to remit, allowing a large balance to accumulate. The Court was careful, in rejecting the surety's discharge argument, to state that "there is no rule of law which makes it a duty which the creditor, *under the circumstances of this case,* owes to the surety, either to dismiss the agent or to notify the surety of his default." *Id.* (emphasis added). Here, AMMIC is not complaining that the Town failed to dismiss an agent or failed to notify AMMIC of Sciaba's not paying its subcontractors. It is complaining that the Town made payments to Sciaba in violation of statute and the bonded Contract, and that these payments constituted a relinquishing of security, resulting in a *pro tanto* discharge of AMMIC as surety. The Supreme Judicial Court

---

[2] In addition to the lack of causal connection enunciated here, AMMIC states that the Town takes out of context references in cases to the notion of a surety keeping itself informed and inflates their significance out of all proportion to their context.

explicitly recognized a surety's entitlement to a *pro tanto* discharge upon a relinquishing of security prejudicial to the surety:

> If a creditor does any act which injuriously affects the situation and rights of the surety, such as … relinquishing security which he holds for the debt, he discharges the surety either in whole or *pro tanto*.

*Id.*

The Town does not explain what causal connection there could be between information that AMMIC had or did not have about Sciaba's payments to subcontractors and Sciaba's making or not making those payments. Indeed there is no such connection. If one were to assume that AMMIC had known that Sciaba was behind in its payments to Millis and Greenwood, AMMIC would still have been entitled to assume that the Town would comply with Section 39F and the contract provisions that incorporated the statute by reference. In that case, AMMIC would be justified in not interfering with the Town's making payment to the subcontractors pursuant to the statute. Whether AMMIC did or did not have such information is immaterial.

The Town attempts ineffectively to distinguish *Veneto v. McCloskey & Co.,* 333 Mass. 95 (1955), cited by AMMIC, Memo. at 9. *See* Opp. at 12. Contrary to the Town's assertion, the Court in *Veneto* held that a payment made by the general contractor/obligee contrary to the terms of the bonded subcontract discharged the subcontractor's surety to the extent of the improper payment. 333 Mass. at 104-05. The fact that the improper payment was only $1,422.75 does not diminish the principle. *Veneto* establishes the precise principle that must govern the instant motion. The Town was required to withhold disputed amounts from Sciaba. It had no latitude to do otherwise and its payment in direct contravention of this restriction prejudiced AMMIC. AMMIC is entitled to a *pro tanto* discharge to the extent of the prejudice. The undisputed facts establish prejudice in the amount of $33,443.55.

## CONCLUSION

This Reply, together with AMMIC's Statement of Undisputed Facts and its Memorandum, establish, on the basis of undisputed facts, that the Town made payments to Sciaba in violation of statutory and contractual provisions that prejudiced AMMIC, as surety, to the extent of $33,443.55. AMMIC's Motion for Partial Summary Judgment As To Claims For Direct Payment must be allowed.

Respectfully submitted,

**AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY**

By its attorneys,

**HOLLAND & KNIGHT LLP**

*/s/ Deborah S. Griffin*
Deborah S. Griffin, BBO #211460
Jeff D. Bernarducci, BBO #657454
10 St. James Avenue
Boston, MA  02116
Tel:    (617) 523-2700
Fax:    (617) 523-6850

Dated:    February 3, 2006

# 3546499_v1
431261.00002

11