UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AMERICAN MANUFACTURERS MUTUAL
INSURANCE COMPANY,

                    Plaintiff,

vs.                                                    Civil Action No. 03-40266-CBS

TOWN OF NORTH BROOKFIELD,

                    Defendant.

REPLY OF PLAINTIFF AMERICAN MANUFACTURERS MUTUAL
INSURANCE COMPANY TO DEFENDANT'S MEMORANDUM OF REASONS
IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AS TO COUNT II OF DEFENDANT'S COUNTERCLAIM

        The Plaintiff, American Manufacturers Mutual Insurance Company ("AMMIC"), hereby

replies to the Town of North Brookfield's Memorandum of Reasons In Opposition to Plaintiff's

Motion for Summary Judgment as to Count II of Defendant's Counterclaim ("Opposition" or

"Opp.").[1]

        In its Opposition, the Town fails to demonstrate that it has a reasonable likelihood of

proffering sufficient evidence to prove every element of its claim at trial.  On this alone, AMMIC

is entitled to summary judgment.  By virtue of its inadequate proffer, the Town simultaneously

fails to sustain its burden to demonstrate that material facts remain in dispute as to each allegation

under chapter 176D / 93A.  The Town also fails to address the vast majority of AMMIC's legal

authority demonstrating that, on the undisputed facts before the Court, AMMIC is entitled to

_____

[1]        Further reference is made herein to the Memorandum of Law in Support of Plaintiff's Motion For
Summary Judgment on Count II of Defendant's Counterclaim ("Memo"); Plaintiff's Statement of Undisputed Facts
In Support of Plaintiff's Motion For Summary Judgment on Count II of Defendant's Counterclaim ("AMMIC's
Facts"); Defendant's Response To AMMIC's Facts ("Town's Response"); Defendant's Statement of Additional
Facts Regarding Count II Of Defendant's Counterclaim ("Town's Additional Facts"); and the Affidavit of Deborah
S. Griffin in Support of Plaintiff's Motion For Summary Judgment on Count II of Defendant's Counterclaim
("Griffin Aff.").

judgment as a matter of law.  Accordingly, as appellate case law in the Commonwealth holds that

chapter 176D / 93A claims are suitable for summary judgment, this Court should allow the

Motion and enter judgment for AMMIC.

**ARGUMENT**

**I.    AMMIC's Motion Should Be Allowed As To The Chapter 176D §§ 3(9) (a), (e), (h), And (n) Allegations Because The Town Does Not Establish Triable Issues Of Fact And Otherwise Fails To Oppose AMMIC's Motion On These Claims.**

The Town does not carry its burden of production on this Motion.  As such, summary

judgment must enter for AMMIC on the Town's claim arising from sections 3(9)(a), (e), (h) and

(n) of chapter 176D.  The First Circuit employs a two-phased process in deciding summary

judgment motions.  First, a preliminary showing must be made by the movant that no genuine

dispute of material fact exists requiring resolution at trial.  *Fireman's Fund Ins. Co. v. Harley*

*Realty Co.,* 24 F. Supp. 2d 117, 118 (D. Mass. 1998).  When, as here, the movant is the *non-*

*burden-bearing party* at trial, such a showing can be made by either (1) submitting affirmative,

undisputed evidence to negate an element of a claim; or (2) demonstrating that, due to

insufficient evidence, the burden-bearing party has no reasonable expectation of proving an

element of its claim at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The burden

of production on summary judgment then shifts to the non-moving party to "demonstrate,

*through specific facts*, that a trialworthy [factual] issue remains."  *Harley Realty Co.,* 24 F. Supp.

2d at 118 (quoting *Cadle Co. v. Hayes*, 116 F.3d 957, 960 (1st Cir. 1997)) (emphasis added).

The Opposition completely ignores AMMIC's showing of undisputed facts pertaining to

the alleged violations of chapter 176D §§ 3(9)(a), (e), (h) and (n).  Moreover, the Town actually

*admits* every material fact supporting AMMIC's position on these claims.[2]  The Town also fails

---

[2]    *See* AMMIC's Memo, Summary of Undisputed Facts, Section I.  The Town admits the following as to section (a):  AMMIC Facts ¶¶ 51, 52 and Griffin Aff. Exh. 27.  The Town admits the following as to section

to advance any legal arguments to rebut AMMIC's position. Accordingly, the Town must be taken to concede these claims and the Motion should be allowed as to them.

The Town also fails to advance material facts demonstrating that it has a reasonable expectation of making its proof at trial. As for chapter 176D section 3(9)(a), the Town offers no additional facts that would establish a "misrepresentation" of the Bond provisions. With regard to chapter 176D sections 3(9)(e), (h), and (n), the Town's factual admissions demonstrate that it has no reasonable likelihood of proving these claims at trial. More particularly, and in connection with subsection (e), the Town admits that AMMIC rendered its position on liability by November 21, 2003 – less than four months after the Town's claim accrued. Town's Response ¶ 42. AMMIC's *uncontested* case law makes clear that such a timeframe is reasonable – and thus, the Town has no expectation of making the adequate proof at trial. *See* Memo at 14-15. As for chapter 176D section 3(9)(h), the Town similarly admits to multiple communications by Mrs. Griffin that evidence the surety's prompt and reasonable explanation for its treatment of the Town's claim. Town's Response ¶¶ 27, 30, 36, 42. The Town also admits, relative to section 3(9)(n), that it did not make an application for the Bond. Town's Response ¶ 58. Such an admission forecloses the likelihood that the Town can prove any violation of subsection (n) based upon any "application" for coverage. As the Town offers no additional facts or legal arguments that might allay *any* of these admissions, it has not carried its burden to demonstrate a reasonable expectation of proving these claims at trial. Without a reasonable expectation of proving its claim, AMMIC is entitled to summary judgment as a matter of law under *Celotex* and *Harley Realty*.

---

(e): AMMIC Facts ¶¶ 2, 24, 30, 39, 40, 42, 51, 57. The Town admits the following as to section (h): AMMIC Facts ¶ 58 (admitting only that winning contractor must provide bond). The Town admits the following as to section (n): AMMIC Facts ¶¶ 4, 5, 7, 10-12, 15, 19, 21 (qualified), 22-27, 30, 36, and 60 (qualified). AMMIC relies upon all these undisputed facts in support of its legal arguments for these claims – arguments that have gone unaddressed in the Opposition.

**II.    Chapter 93A Liability Is Properly Decided On Summary Judgment.**

Despite the Town's assertion that chapter 93A should almost never be decided on summary judgment, the appellate courts in Massachusetts hold otherwise. *See* Opp. at 6-7. Both the Supreme Judicial Court and the Appeals Court have flatly held that such a claim *can* be decided on summary judgment if there is no genuine issue of material fact. *See Lowell Gas Co. v. Attorney Gen.*, 377 Mass. 37, 39 n1. (1979); *Noyes v. Quincy Mut. Ins. Co.*, 7 Mass. App. Ct. 723, 725 (1979). Indeed, a survey of case law in the Commonwealth quickly reveals that many chapter 93A and 176D claims are readily disposed of upon summary judgment. *See, e.g. Lazaris v. Metro. Prop. & Cas. Ins. Co.*, 428 Mass. 502 (1998) (affirming summary judgment that insurer did not violate chapters 176D and 93A); *Van Dyke v. St. Paul Fire & Marine Ins. Co.*, 388 Mass. 671, 678 (1983) (same); *Taveras v. Rodriquez*, 2000 Mass. App. Ct. 39 (2000) (same); *Femino v. Mfr. & Merch. Mut. Ins. Co.*, 1994 Mass. Super. LEXIS 440, *10-12 (1994) (same).

This authority easily quashes the Town's additional statement that "the Supreme Judicial Court has held that motions for summary judgment in c. 93A and c. 176D cases should almost always be denied." Opp. at 7. The Town's citation of *Wheatley v. Am. Tel. & Tel., Co.*, 418 Mass. 394 (1994), and *Noyes v. Quincy Mut. Fire Ins. Co.*, 7 Mass. App. Ct. 723 (1979), in support of this assertion is also unavailing. In *Noyes*, the Court actually states that summary judgment of chapter 93A claims is *appropriate* if no genuine issue of material fact exists. *See Noyes*, 7 Mass. App. Ct. at 725. In that case, summary judgment was only denied because of dueling affidavits creating an issue of fact as to the defendant's bad faith. *See id*. at 727. The *Wheatly* case does not even address chapter 176D or 93A and therefore its inclusion in the Town's Opposition is mysterious at best.

Moreover, the Town's additional assertion that summary judgment is inappropriate for "claims involving a party's knowledge of bad faith, unreasonable conduct, or unfair claim

handling practices" is also without support. Opp. at 6-7. That is, the cases of *O'Leary-Ahson v. Metro. Prop. & Cas. Ins. Co.*, 52 Mass. App. Ct. 214 (2001), *Bolden v. O'Connor Café of Worcester, Inc.*, 50 Mass. App. Ct. 56 (2000), and *Williams v. Gulf Ins. Co.*, 39 Mass. App. Ct. 432 (1995), are inapposite because *none* of these cases arises from an order on summary judgment. Accordingly, this Court is well within the case law of the Commonwealth to grant the Motion – and should do so.

Summary judgment is also appropriate in this instance because there are no material facts in genuine dispute – thereby leaving only a *legal* determination as to whether chapter 93A liability exists. *See R.W. Granger & Sons v. J&S Insulation, Inc.*, 435 Mass. 66, 73 (2001) (explaining that conduct violating chapter 93A "is a legal, not a factual, determination"); *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 474 (1991) (same); *Schwanbeck v. Federal-Mogul Corp.*, 31 Mass. App. Ct. 390, 414 (1991) ("[a]lthough whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact . . . the boundaries of what may qualify for consideration as a G.L. c. 93A violation is a question of law"). While the Town asserts that the various sections of chapter 176D require a "reasonableness" determination, Opp. at 7-9, such a determination in this instance will be one of law – not of fact – because there are no material facts in dispute. *See Bobick v. U.S. Fid. & Guar. Co.*, 439 Mass. 652, 658-60 (2003); *Arch Ins. Co. v. Paruti*, 2005 Mass. Super. LEXIS 240, * 10 (2005).

Even if, *arguendo*, the "reasonableness" element of chapter 176D is construed as a question of fact in this case, the Town has not met its burden of production upon summary judgment (as the non-movant and burden-bearing party at trial) to "demonstrate, *through specific facts*, that a trialworthy issue remains" and that it has enough evidence to support its claim at trial. *See Harley Realty Co.,* 24 F. Supp. 2d at 118 (emphasis added). Specifically, the Town

admits every *material* fact supporting AMMIC's motion,[3] and its Additional Facts are either

immaterial,[4] undisputed by AMMIC,[5] or improperly grounded in Counterclaim allegations.[6]

Further, while the Town argues that AMMIC's motive and intent are issues of fact for the jury,

Opp. at 6-7, it has not offered any evidence from the record demonstrating that they have

sufficient evidence for trial on these elements.

The Town also incorrectly asserts that Count II is inappropriate for summary judgment

because AMMIC's motive and intent are essential elements of chapter 176D / 93A. *See* Opp. at

6-7. AMMIC's motive and intent are not essential to chapter 176D / 93A liability and are

therefore immaterial for the purpose of this Motion. That is, AMMIC could theoretically violate

chapter 93A *without* acting willfully or knowingly. Any factual question of the same is therefore

only relevant to a chapter 93A *remedy* – the doubling or trebling of damages.[7] It follows that if,

in the first instance, there is no unfair or deceptive act as a matter of law, then any factual finding

as to motive or intent (for the purpose of multiplying damages) is immaterial.

For this reason, the Town misses the point when asserting that motive and intent are

essential elements that make any chapter 93A claim inappropriate for summary judgment. *See*

Opp. at 6. Indeed, the Town's cases on this point are again unavailing because *not one*

---

[3]    *See infra*, Section V (examining the Town's Response in ¶¶ 46 and 48 to the extent that the Town's partial denials do not create an issue of fact based on an examination of the full record).

[4]    Fed. R. Civ. P. 56 does not require AMMIC to directly respond to the Town's Additional Facts offered in support of its Opposition. For that reason, AMMIC does not admit any of the Town's Additional Facts not directly addressed by AMMIC in this Reply Brief, whether for the purpose of this motion, trial, or otherwise. In addition, AMMIC reserves the right to dispute any fact that it might now disregard as immaterial if indeed the Court finds that the same fact is indeed material.

[5]    To the extent the Town is relying on Additional Facts 26-28, 32, 33, 35, 37-39, 41-45, and 47-51 to create any factual dispute, the effort is unavailing because AMMIC is not presenting contrary evidence for the purpose of this Motion.

[6]    The Town's reliance on Counterclaim ¶¶ 23-25, 29, 31, 35, and 38-40 to create a factual dispute is improper. The Town must rely on more than the allegations in its pleadings to create an issue of fact. Fed. R. Civ. P. 56 (e) ("when a motion for summary judgment is made . . . an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading . . . .").

[7]    Perhaps AMMIC's intent and motive would be material if the Town were also moving for summary judgment and seeking a multiplication of damages. As the Town is merely defending this Motion to preserve it for the fact finder, however, motive and intent are irrelevant to 176D / 93A liability – and therefore any fact related thereto is immaterial.

establishes motive or intent as an essential element of a chapter 176D / 93A claim.  *See* Opp. at 6 (*Flesner v. Technical Communications Corp.*, 410 Mass. 805, 811 (1991) (analyzing intent as key element to employment action without claims under chapter 176D / 93A);  *Gurry v. Cumberland Farms, Inc.*, 406 Mass. 615, 623-24 (1990) (determination of joint-venture formation turned on "intent to associate" without claims under chapter 176D / 93A); *Pederson v. Time, Inc.*, 404 Mass. 14, 17 (1989) (non chapter 176D / 93A guardianship action turned in part on determination of party's sanity); *Quincy Mut. Fire Ins. Co. v. Abernathy*, 393 Mass. 81, 86 (1984) (insurance-contract claim turned on contracting parties' intent without claims under chapter 176D / 93A); *Federal Deposit Ins. Co. v. Porter*, 46 Mass. App. Ct. 241, 242-43 (1999) (defendant's responsibility for debt under ambiguous loan turned on parties' intent without claims under chapter 176D / 93A); *Madden v. Estin*, 28 Mass. App. Ct. 392, 294-95 (1990) (ambiguous term in purchase and sale agreement required analysis of parties' intent without claims under chapter 176D / 93A).  Unlike the claims in all these cases, a defendant can indeed be found liable under chapter 93A *without* consideration of its motive or intent.  Thus, the Court can properly decide the Motion as a matter of law on the undisputed, material facts before it.   *See infra* Sections III and IV.

Moreover, even if this Court were to find that AMMIC's motive and intent are essential elements (and therefore material to liability under chapter 176D / 93A), the Town has not offered any evidence from the record demonstrating that either a factual dispute exists as to AMMIC's Facts or that it can offer enough evidence to support the claim at trial.  AMMIC is therefore entitled to summary judgment.

**III.    AMMIC's Duty To Act Under The Performance Bond Did Not Arise Until July 23, 2003, And Therefore Any Fact Allegedly In Dispute Prior To This Time Is Immaterial.**

The Town's "claim" on the performance bond did not actually arise until July 23, 2003, at the earliest, when it had fulfilled the conditions precedent set forth in Bond paragraphs 3.1 and 3.2. *See Enterprise Capital, Inc. v. San-Gra Corp.*, 284 F. Supp. 2d 166, 179 (D. Mass. 2003) (AIA A312 Bond ¶¶ 3.1-.3 are conditions precedent to surety obligations); *accord 120 Greenwich Dev. Assocs., LLC v. Reliance Ins. Co.*, 2004 U.S. Dist. LEXIS 10514, *9 (S.D.N.Y. 2004) (same); *Ag-Grow Oils, LLC v. National Union Fire Ins. Co.*, 276 F. Supp. 2d 999, 1017 (D.N.D. 2003) (same).  Any facts asserted by the Town in its Opposition prior to that date are therefore immaterial – whether or not disputed by AMMIC.[8]

Moreover, AMMIC's activity on the *payment bond* claims of late 2002 and early 2003 are irrelevant to its duty to act under the *performance bond* at issue in this lawsuit.  The performance bond is to be interpreted like any other contract, and nowhere in that Bond is there a requirement that the surety investigate its principal, for the benefit of the obligee, upon receipt of one or more *payment bond* claims.  Indeed, AMMIC's performance bond in this case plainly states that:

> If there is no Owner Default, the Surety's obligation under this Bond **shall arise after:**
>
> **3.1    The Owner has notified the Contractor and the Surety** … **that the Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with the Contractor and the Surety** …; **and**
>
> **3.2    The Owner has declared a contractor Default and formally terminated the Contractor's right to complete the contract.**  Such Contractor Default shall not be declared earlier than twenty days after the Contractor and the Surety have received notice as provided in Subparagraph 3.1; **and**
>
> 3.3    The Owner has agreed to pay the Balance of the Contract Price to the Surety … or to a contractor selected to perform the Construction Contract ….

---

[8]        *See supra* note 4.

AMMIC'S Facts ¶ 2 (emphasis added). Thus, only when *the Town* officially declared Sciaba in default on July 23, 2003, and terminated its right to complete the Contract, did AMMIC's duty to investigate for the benefit of the Town arise. Complaints of nonpayment by *payment bond claimants* are not a declaration of default *by the Town.* The Town attempts, *without any legal authority*, to argue that AMMIC had a duty to thoroughly investigate its principal, Sciaba, once payment bond claims arrived in late 2002 and early 2003. No such duty exists either on the express terms of the performance bond or on the legal principals of suretyship – a phenomenon reflecting the reality that payment bond claims do not necessarily indicate a principal's insolvency. Payment bond claims can result from, among other things, disputes between the principal and its subcontractors or short-term non-fatal cash flow issues. Early and unwarranted intervention by a surety can result in liability to its principal for interference with contractual relations. The surety may – indeed must – rely therefore upon the clear conditions precedent spelled out in the Bond. Accordingly, any disputed fact prior to July 23, 2003, or relating to payment bond claims is immaterial and will not defeat AMMIC's Motion.

Interestingly, while AMMIC had no duty to investigate under the performance bond until July 23, it took preliminary steps to gather information on the Project in anticipation of a declaration of default. For instance, and without limitation, the Town does not dispute that prior to July 23 AMMIC's claims engineer, Mr. Anastasio, had *already* visited the Project at least five times, *already* met with Dore & Whittier and/or the Town on three occasions, *already* provided AMMIC with a Project status report dated July 21, 2003, and had *already* begun the process of obtaining agreements from subcontractors to ratify their subcontracts and commit to returning to work under a replacement contractor. Town's Response ¶¶ 15, 19-21. On these and other undisputed facts AMMIC was indeed well-positioned to fulfill its duty once it arose on July 23,

2003.[9]  These early, voluntary, and undisputed acts by AMMIC tend to negate any factual basis for a chapter 93A violation.

**IV.    There Is No Genuine Dispute Of The *Material* Facts Negating The Town's Allegation That AMMIC Violated Chapter 93A / 176D §§ 3(9)(b), (c), (d), (f), And (g) And The Town Fails To Offer Legal Authority To Substantiate Its Claims.**

In a desperate attempt to save its claim from summary judgment, the Town disingenuously asserts that certain material facts are in dispute as to these claims when it is quite clear that they are not.  As a result, the Town fails to establish a triable issue of fact and demonstrate that it has sufficient evidence for trial on each remaining claim under chapter 176D.  The Town also wholly disregards AMMIC's legal authority and fails to assert any of its own.  Accordingly, without any material facts in dispute, summary judgment should enter in AMMIC's favor with respect to subsections 3(9)(b), (c), (d), (f), and (g).

**A.    AMMIC Acknowledged And Acted Reasonably Promptly In Response To The Town's Claim As Required By Chapter 176D § 3(9)(b).**

The Town incorrectly asserts that "the parties allege direct[ ] contrary accounts of the actions that AMMIC undertook in response to claims against Sciaba on the Project."  Opp. at 10.  It must first be noted that any disputed fact as to AMMIC's activity in response to *payment bond* claims is immaterial and irrelevant to the Town's claim on the *performance bond*.  Moreover, as AMMIC's duty on the *performance bond* did not arise until July 23, any other dispute that

---

[9]    The Town's Additional Facts also assert that Mr. Beatty had no recollection during his May 10, 2005 deposition of certain aspects of the payment bond investigation prior to July 23, 2003.  While AMMIC does not dispute Mr. Beatty's deposition testimony, his lack of memory on May 10, 2005, is wholly irrelevant and immaterial because (1) it deals with *payment bond* claims and (2) these activities were prior to July 23, 2003.  In addition, while AMMIC does not dispute that "Mr. Anastasio was not aware that Sciaba had bounced checks to its vendors until after May 23, 2003," Town's Additional Facts ¶16, this evidence is objectionable on grounds of relevance and lack of foundation because the Town has not submitted *any* evidence that any Sciaba checks *actually did bounce* prior to May 23, 2003.  Such a lack of awareness is immaterial in any event because it occurred prior to July 23, 2003.

AMMIC might have with the Town's Additional Facts ¶¶ 1-17 is immaterial because these Additional Facts reflect activity prior to July 23, 2003.[10]

What *is* material and undisputed, however, is the set of AMMIC Facts recounting activities *after* July 23, 2003. The Town admits that on August 6, 2003, Mr. Anastasio met again with the Town's School Building Committee and explained, among other things, the Project status and method by which AMMIC intended to obtain a completion contractor. Town's Response ¶ 22. The Town also admits that by August 13, 2003, AMMIC began distributing a Request for Expression of Interest ("REI") to twelve potential completion contractors, Town's Response ¶ 23, and that on August 20, 2003, less than one month from the Town's July 23 notice, Anastasio distributed a formal Request for Proposal ("RFP") that included inputs from both the Town and Dore & Whittier. Town's Response ¶¶ 24-26. These, among other facts admitted by the Town, support the conclusion that AMMIC acknowledged and responded promptly to the Town's claim as a matter of law. The Town's position that AMMIC's response was inadequate is not a disputed fact, but a legal position that has been left categorically without any supporting legal authority to rebut the authority cited by AMMIC. The Motion must be allowed and summary judgment entered in favor of AMMIC on this claim.

>    **B.    AMMIC Adopted And Implemented Reasonable Standards For The Prompt Investigation Of Claims As Required By Chapter 176D § 3(9)(c).**

The Town also fails to carry its burden of production in connection with this claim. It is undisputed for the purpose of the Motion that AMMIC has no written policies or procedures for the handling of claims and that AMMIC does not provide formal training to its claims analysts. While not mentioned by the Town, it is also undisputed that AMMIC does not assign inexperienced surety professionals to handle performance bond claims and that various surety

---

[10]    *See supra* note 4.

law treatises and an extensive collection of publications and program materials from the Fidelity

and Surety Law Committee of the Tort and Insurance Practice Section of the American Bar

Association are readily available to AMMIC's surety claim staff for use or reference in handling

bond claims.  *See* Affidavit of Thomas W. McEnaney in Support of Defendant's Opposition to

Plaintiff's Motion for Summary Judgment as to Count II of Counterclaim (McEnaney Aff."),

Exh. A at 77-78.

As discussed in AMMIC's Memo, the determination of whether reasonable standards

were adopted turns on an insurer's activity on a *particular* claim – not on the existence of written

materials that might govern claims-handling in general.  *See Lenning v. Commercial Union Ins.

Co.*, 260 F.3d 574, 586-87 (6th Cir. 2001) (lack of guidelines or manuals irrelevant when claims

analyst with twenty-years experience conducts comprehensive investigation in good faith);

*Johnson v. Essex Ins. Co.*, 2002 WL 112561, *12 (Tex. Ct. App. 2002) (written policies for claim

handling immaterial amidst sufficient evidence of an otherwise prompt and reasonable

investigation) (not designated for publication); *Andrade v. Aetna Life & Cas. Co.*, 1995 WL

808695, *5-6 (Mass. Super. 1995) (failure to follow requirements in claim-settlement manual is

not determinative; *actual* activity on the claim is); *Spencer Press, Inc. v. Utica Mut. Ins. Co.*,

1994 WL 879732, *12 (Mass. Super. 1994) (analyzing reasonable standards for prompt

investigations without consideration of written policies or procedures).  Here, as in *Spencer

Press*, where the insurer established reasonable standards for a prompt investigation by hiring

seasoned professionals and conducting a timely and comprehensive investigation, it is undisputed

that AMMIC employed experienced claims analysts, engaged surety professionals long before

July 23, 2003, and conducted certain pre-claim activity that established standards enabling the

Town to sign a completion contract with Fontaine *within five months* of its Bond claim.  *See*

McEnaney Aff., Exh. A 77-78; Town's Response ¶¶ 4-5,[11] 15, 19-21.  In light of the complexities involved in this construction project, AMMIC's disposition of the claim within five months is reasonable as a matter of law and operates as a proof of reasonable claim standards as a matter of law.  *See Seaboard Sur. Co. v. Town of Greenfield*, 266 F. Supp. 2d 189, 194 (D. Mass. 2003) (sureties are allowed reasonable time to review the completed work and to analyze the tasks remaining for completion), *aff'd*, 370 F.3d 215 (1st Cir. 2004).  The Town offers no countervailing case law on this point but baldy asserts, in essence, that "no manuals means no standards."  Opp. at 11-12.  This position is incorrect as a matter of law, and without a genuine dispute of material fact or a reasonable expectation of offering enough evidence to support its claim at trial, summary judgment on this claim must enter for AMMIC.

### C.    AMMIC Conducted A Reasonable Investigation As Required By Chapter 176D § 3(9)(d).

The Opposition on this claim does not advance even one supporting fact, or evidence countervailing AMMIC's Facts, that would create a need for trial.  *See* Opp. at 12.  The Town merely summarizes AMMIC's argument for a *pro tanto* discharge and the Town's allegation that "AMMIC did indeed fail to reasonably investigate all available information in refusing to pay the full amount owed to the Town in accordance with the terms of the *payment bond*."  *See id.* (emphasis added).  The Town has not asserted a claim on AMMIC's payment bond and it is therefore clearly confused.  More to the point, AMMIC directs the Court to the dozens of AMMIC's Facts that are admitted by the Town and describe AMMIC's investigation.  *See* Town's Response ¶¶ 4, 5,[12] 6-13, 15, 19-42, 51.  In addition, AMMIC does not dispute the Town's Additional Facts ¶¶ 20-28 which also describe, in part, AMMIC's investigation.  There is

---

[11]    Town admits that Mr. Anastasio was involved in the Project no later than March 2003.  AMMIC contends his involvement began in February, 2003), but this difference is immaterial.

[12]    *See supra* note 11.

therefore no genuine issue of *material* fact as to AMMIC's activity subsequent to July 23, 2003. Only a legal determination remains as to whether AMMIC's undisputed actions violated chapter 176D and 93A. On this legal issue AMMIC refers the Court back to its legal argument set forth at pages 11-14 of its Memo – a legal argument that remains unaddressed by the Town. Accordingly, summary judgment should enter in AMMIC's favor as a matter of law.

### D. AMMIC's Bond Liability Was Never Reasonably Clear And Therefore It Did Not Violate Chapter 176D § 3(9)(f) By Failing To Settle The Town's Claim.

The disagreement on this claim is legal, not factual. It is undisputed that Sciaba defaulted and that the Town declared a default and terminated Sciaba's right to perform on July 23, 2003. A determination of AMMIC's liability under the Bond, however, requires the determination of the *extent* of such liability. *Spencer Press,* 1994 WL 879732 at *13. AMMIC incorporates by reference the legal argument on this point set forth in its Memorandum in Opposition to Defendant's Motion for Partial Summary Judgment at pages 2-3 [docket entry # 61].

Further, "liability is not 'reasonably clear' if it is still the subject of good faith disagreement." *Clegg v. Butler*, 424 Mass. 413, 418 (1997); *see also Spencer Press,* 1994 WL 879732 at *13 (input from objective claims-handling professionals engaged by insurer substantiates good faith of dispute). While both parties admit that the *extent* of AMMIC's liability is in dispute, the Town does not proffer any additional facts that would suggest AMMIC asserted its *pro tanto* discharge and other defenses in bad faith or for the purpose of fabricating a lack of clarity as to the *extent* of AMMIC's liability. Thus, there is no genuine dispute of material fact and the Town seemingly has no reasonable expectation of offering evidence at trial to prove that AMMIC's liability, including the extent of its liability, was reasonably clear. AMMIC is therefore entitled to summary judgment based upon the uncontested facts and legal authority offered in support of its Motion with respect to subsection 3(9)(f).

**E.    AMMIC Did Not Compel The Town To Litigate By Making A "Lowball" Offer In Violation Of Chapter 176D § 3(9)(g).**

Once again the Opposition does not advance one fact that would create a need for trial on this claim. *See* Opp. at 14-15. The Town also fails to offer any legal authority to rebut the well-settled legislative purpose of this section: to penalize the practice of "low balling" only *where liability is either clear or highly likely.* *Guity v. Commerce Ins. Co.*, 36 Mass. App. Ct. 339, 343 (Mass. App. Ct. 1994) (emphasis added). Thus, where liability is *not* reasonably clear, section 3(9)(g) does not apply. *See Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co.*, 406 Mass. 7, 13-14 (1989); *Guity*, 36 Mass. App. Ct. at 343. As neither party has moved for summary judgment as to the *extent* of AMMIC's liability under the bond, it is clear that AMMIC could not have offered a "lowball" up against "clear or highly likely" liability. Moreover, an insurer is entitled to file a declaratory judgment action when liability is genuinely disputed and beyond negotiation. *See Aetna Cas. & Sur. Co. v. Ericksen*, 903 F. Supp. 836, 841 (M.D. Pa. 1995) (filing declaratory action alone is not bad faith); *International Surplus Lines Ins. Co. v. University of Wyo.*, 850 F. Supp. 1509, 1727 (D. Wyo. 1994), *aff'd*, 52 F.3d 901 (10th Cir. 1995) (same). The Town fails to meet any of these arguments with legal authority but instead offers an unsupported stream of consciousness that directly contravenes settled law in the Commonwealth. Accordingly, AMMIC is entitled to summary judgment as a matter of law.

**V.    AMMIC Did Not Otherwise Act Unfairly Or Deceptively.**

While the Town continuously asserts that AMMIC treated it unfairly by "unilaterally" changing the terms of the Completion Contract and pressuring it to accept the same, the undisputed facts and applicable principles of law indicate otherwise. First, the Town never had the right to approve the terms of the Completion Contract or participate actively in its negotiation. Under Bond ¶ 4.3 the Town only had the right to approve *who* would be the

Completion Contractor.  There is no express or implied requirement in the Bond that would entitle the Town to participate in the negotiation of the Completion Contract with the completing contractor.  Thus, AMMIC's inclusion of the Town in drafting the form of Completion Contract for inclusion in the RFP, and in its subsequent negotiations with the Completion Contractor, was completely gratuitous and done in the spirit of efficiency and cooperation.  Therefore, as a matter of law, AMMIC cannot possibly have acted unfairly or deceptively.

The facts surrounding the Completion Contract negotiation are also not materially disputed and clearly indicate that there was no unfair or "unilateral" change even if the Town had a right to be involved.  First, it is undisputed that it was the Completion Contractor, Fontaine Bros., Inc. ("Fontaine"), and not AMMIC who insisted, on November 5, 2003, that the Project completion dates and the latent-defect provision be changed from their original form in the RFP. AMMIC Facts ¶ 46 / Town's Response ¶ 46.  The Town *was* involved with changes to these provisions right from the start.  This is proven by the undisputed fact that Fontaine communicated its demand to *both* the Town and AMMIC – and then the Town subsequently communicated the same to AMMIC on the same day (November 5, 2003).  AMMIC Facts ¶ 46 / Town's Response ¶ 46; Town's Additional Fact ¶ 43.  Despite the Town's *argument* to the contrary, it is an undisputed fact that Mrs. Griffin emailed Mr. McEnaney on November 6, 2003 regarding her attempt to negotiate with Fontaine – outlining how the negotiation of the Completion Contract was shaping up.  AMMIC Fact ¶ 46 / Town Response ¶ 46.[13]  Further proof of the Town's inclusion in this process is the undisputed fact that on the next day, November 7, 2003, Mrs. Griffin circulated by email a new version of the Completion Contract to the Town (with new

---

[13]    The Town's purported denial that Mrs. Griffin requested input prior to November 7 is purely argument and does not create an issue of fact.  Indeed, the Town does not dispute Mrs. Griffin's November 6, 2003 email and actually references it to argue its denial, and therefore admits the same.  AMMIC Facts ¶ 46 / Town's Additional Facts ¶ 46.  Mrs. Griffin's November 6 email was an obvious invitation for Mr. McEnaney or any of the other recipients to respond.  The Town could have, but did not, respond with input regarding the status of the negotiation.

revisions based upon her negotiations with Fontaine) and requested Mr. McEnaney's input "ASAP." AMMIC's Facts ¶ 46; Griffin Aff. Exh. 40.[14] One week later on November 12, AMMIC tendered its final version of the Completion Contract to the Town – *in precisely the same form circulated to Mr. McEnaney a full week earlier on November 7*. Town's Response ¶ 50. On the undisputed facts the Town was never left out of the negotiation even though AMMIC had every right to do so.

Moreover, the Town does not create an issue of fact as to AMMIC's Fact ¶ 48: *to wit*, that Mr. McEnaney failed to offer input on the Completion Contract between November 7 and November 12. Town's Response ¶ 48. Mr. McEnaney's Affidavit only declares that his billing records indicate a call with Mrs. Griffin on November 10. Town's Response ¶ 48; McEnaney Aff. at 14. He does not testify to the *content* of these alleged conversations nor does he submit the billing records as an exhibit, and therefore the Town fails to support the denial. *See id.*; McEnaney Aff. at 14. All of this matters little, however, because the Town had no legal right to participate in the negotiation and it is undisputed that the Town possessed the changes, that were included in the final version of the tendered Completion Contract of November 12, for a full week without voicing any objections. The Town is therefore left with nothing but its allegations and rhetoric that AMMIC acted without good faith. Thus, the Motion should be allowed.

## VI.    CONCLUSION

For the foregoing reasons, the Town has failed to carry its burden to demonstrate either (1) that a genuine issue of material fact remains for trial; and (2) that it has a reasonable expectation of providing enough evidence to prove any of its chapter 93A claims at trial. In

---

[14]    The Town *only* denies that Mrs. Griffin requested Mr. McEnaney's input *prior to* November 7, 2003 and therefore fails to contest the November 7 email by which Mrs. Griffin requested Mr. McEnaney's input. AMMIC's Facts ¶ 46; Town's Response ¶ 46; Griffin Aff. Exh. 40. It therefore admits the same. Of further note, AMMIC inadvertently failed to cite Griffin Aff. Exh. 40 in AMMIC's Fact ¶ 46 (the November 7 email).

addition, AMMIC's uncontested legal arguments carry the day on the undisputed facts before the

Court entitling it to judgment as a matter of law.  Accordingly, the Court should allow the Motion

and enter summary judgment for AMMIC on Count II.

Respectfully submitted,

**AMERICAN MANUFACTURERS
MUTUAL INSURANCE COMPANY**

By its attorneys

**HOLLAND & KNIGHT LLP**

*/s/ Deborah S. Griffin*
Deborah S. Griffin, BBO #211460
Jeff D. Bernarducci, BBO #657454
10 St. James Avenue
Boston, MA  02116
Tel:    (617) 523-2700
Fax:    (617) 523-6850

Dated: February 3, 2006

# 3546411_v1
431261.00002