UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY,<br>                    Plaintiff,<br><br>vs.<br><br>TOWN OF NORTH BROOKFIELD,<br>                    Defendant. | Civil Action No. 03-40266-CBS |

REPLY OF PLAINTIFF AMERICAN MANUFACTURERS MUTUAL INSURANCE
COMPANY TO THE DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON
LIQUIDATED DAMAGES AS THE EXCLUSIVE REMEDY FOR DELAY

The Plaintiff, American Manufacturers Mutual Insurance Company ("AMMIC"), hereby replies to the Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment on Liquidated Damages as the Exclusive Remedy for Delay ("Opposition" or "Opp.").

North Brookfield[1] does not dispute in any material respect any of AMMIC's Facts. Thus, the facts as presented by AMMIC are undisputed. North Brookfield agrees. Opp. at 2.

In its Memorandum, AMMIC showed that the provisions of AMMIC's bond do not permit recovery of $517,679.03 in additional architects' and construction managers' fees or $6,336.50 for roof repairs that stemmed from delay in completion of the Project, because they are duplicative of liquidated damages and liquidated damages were intended to be the sole remedy for delay damages under AMMIC's bond and Sciaba's Contract that was expressly incorporated into the bond. In addition, AMMIC cited numerous cases that hold, and a respected construction-law treatise that agrees, that the effect of a liquidated damages clause is to substitute the agreed amount for actual damages resulting from delays arising from a breach of contract,

---
[1] Capitalized terms not defined herein have the same definitions ascribed to them in AMMIC's Statement of Undisputed Facts ("AMMIC's Facts") or its supporting Memorandum ("Memo.").

and that it precludes an award of actual delay damages in addition to liquidated damages. Memo. at 11 n. 8, 9. In its Opposition, North Brookfield focuses on certain provisions of the bond, while ignoring others, advocating an untenable interpretation of the bond. North Brookfield *does not address at all* a single one of the cases or the treatise cited by AMMIC. Instead it cites two cases that are distinguishable, one of which did not even involve the effect of a liquidated damages provision. *See* Opp. at 6-8. Finally, North Brookfield points to contract provisions that do not relate to delay damages in a vain effort to blunt the clear import of the liquidated damages provision. As shown below, North Brookfield's Opposition does not advance a single viable obstacle to the entry of partial summary judgment on AMMIC's motion, and this motion must be allowed.

## ARGUMENT

North Brookfield seems to be under the misimpression that AMMIC is contending that liquidated damages are the only damages North Brookfield can recover even if it had damages unrelated to delay. This is not AMMIC's position. AMMIC explicitly acknowledged, for example, that North Brookfield was seeking $156,928.21 for architects' and construction managers' fees incurred during the time construction was suspended, between June 1, 2003, when Sciaba left the job, and December 15, 2003, when Fontaine was given a notice to proceed. Memo. at 3. AMMIC further stated that it is not, in this motion, seeking a ruling that the liquidated damages provision bars recovery of that component of North Brookfield's claimed damages. Memo. at 3 n.1. Nor has AMMIC sought summary judgment whith respect to North Brookfield's attorneys' fees. If North Brookfield incurred reasonable attorneys' fees as a result of Sciaba's default that are not delay-related, the liquidated damages provision of the Contract does not bar their recovery.

This same misimpression has led North Brookfield to cite *North Am. Specialty Ins. Co. v. Chichester School Dist.,* 158 F. Supp. 2d 468 (E.D. Pa. 2001). *See* Opp. at 7-8. That decision dealt only with a claim for legal fees, unrelated to delay, and thus is inapposite to the issue here. Likewise, North Brookfield has cited several provisions of Sciaba's Contract dealing with Sciaba's liability for architect fees. *See* Opp. at 10. However, the first four cited provisions deal exclusively with fees for architect services performed in uncovering, testing for or correcting defective work, not with delay damages. The fifth provision is more general but still makes no reference to delay damages and contains no language that alters the usual rule that liquidated damages are a substitute for, and quantification of, any actual delay damages. North Brookfield cites no cases construing any of these provisions as bearing on the effect of a liquidated damages provision.

North Brookfield laudably reminds the Court that "[t]he terms of a surety's obligations should be interpreted as a whole, and not out of context of all the other terms."[2] Opp. at 4, *citing In re the Sinking of the M/V Ukola,* 806 F.2d 1, 5 (1st Cir. 1986). However, it proceeds to ignore that very rule. North Brookfield quotes portions of paragraph 6 of AMMIC's bond but fails to discuss or even acknowledge the language of the first sentence of paragraph 6 that says: "the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract …." Griffin Aff. Exh. L ¶ 6. Indeed, as the provisions of the Construction Contract are expressly incorporated into the bond at ¶ 1, *see id.*, the responsibility of the surety is defined by the bond *and* relevant portions of the Construction Contract. There is nothing in the Construction Contract that makes the general contractor liable for actual delay

---

[2] North Brookfield's statement that "the language of a bond is to be strictly construed …," Opp. at 4, is, if anything, helpful to AMMIC. *See* Restatement (Third) of Suretyship & Guaranty § 14 comm. c ("It is sometimes said that the rule of *strictissimi juris,* requiring the contract creating the secondary obligation to be construed strictly in favor of the secondary obligor," *i.e.,* the surety). Moreover, the authorities it cites for this proposition say nothing about strict construction.

damages in addition to liquidated damages for delay.[3] To the contrary, as shown in AMMIC's Memorandum, the liquidated damages provision of the Contract indicated an intent for the liquidated damage amount to encompass "without limitation increased administrative, engineering, construction management and construction costs." Memo. at 8-9.

By resting its argument almost entirely upon the reference to "delay costs" in bond subparagraph 6.2, and not reconciling that bond provision with the above-quoted limitation in the first sentence of paragraph 6, North Brookfield would render meaningless both the limitation in the first sentence and the phrase "without duplication" that precedes the enumeration of specific damage categories in subparagraphs 6.1, 6.2 and 6.3. By contrast, AMMIC's construction of the bond does not, as suggested by North Brookfield, render subparagraph 6.2 meaningless. *See* Opp. at 6. Rather, the enumeration of delay costs in subparagraph 6.2 creates duplication with the liquidated damages enumerated in subparagraph 6.3, because the liquidated damage provision in this case was all-inclusive. Given a differently worded liquidated damage provision, such as one that was expressly stated in the Construction Contract to cover certain delay costs but not others, there might not be duplication.[4] In the circumstances of this case, and this liquidated damage provision, North Brookfield's ability to recover delay costs under subparagraph 6.2 is negated by the "without duplication" language that precedes subparagraph 6.1. The other categories of damages in subparagraph 6.2, namely legal and design professional costs resulting from the Contractor's Default, may be recoverable so long as they do not enlarge

---

[3] North Brookfield illogically draws comfort from a clause stating that "allowing the contractor to continue to finish the work (or any portion of the work) after the time specified for completion of the Work shall not operate as a waiver of any rights under the Contract Documents or otherwise under law or equity." *See* Opp. at 9, quoting Contract ¶ 3.3. That provision is wholly inapplicable here, as there is no dispute that Sciaba did not try, and North Brookfield did not allow it, to finish the work after the time specified. Their conclusion is a *non sequitur* and this language does not aid the Court in determining whether liquidated damages were intended to be the exclusive remedy for delay.

[4] It must be remembered that the bond form was a form published by the American Institute of Architects, widely used on projects across the country.

the surety's liability beyond of the Contractor under the Contract and are not due to delay, and thus entail no duplication with liquidated damages.

The language of the first sentence of bond paragraph 6 that says: "the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract …." is important for another reason.  It reinforces the usual rule of the law of suretyship that a surety is entitled to raise any defenses that are available to its principal (except for discharge in bankruptcy or personal incapacity, which do not apply here).  *See* Restatement (Third) of Suretyship & Guaranty §§ 19, 34.

> The basic rule on the liability of sureties is that "the surety is not liable to the creditor unless his principal is liable."[;] thus he may plead the defenses which are available to his principal" ….

*Rhode Island Hosp. Trust Nat'l Bank v. Ohio Cas. Ins. Co.*, 789 F.2d 74, 78 (1st Cir. 1986)(quoting *Williston on Contracts* § 1214 at 714).  Thus, AMMIC is not liable for actual delay damages under its bond because Sciaba would not have been liable for them under the Contract.  North Brookfield's single-minded focus on subparagraph 6.2 of the bond fails to take into account this principle of law and the bond provision that reflects it.

North Brookfield also cites the case of *International Fidelity Ins. Co. v. Chautauqua*, 667 N.Y.S.2d 172 (N.Y. App. Div. 1997).  *See* Opp. at 6-7.  That case involved a surety that responded under a different section of the bond than AMMIC did.  Rather than obtaining bids and tendering a completion contractor to the owner under ¶ 4.3 of the bond as AMMIC did here, the surety in *Chautauqua* elected to proceed under ¶ 4.2, and arranged for completion of the contract itself.  667 N.Y.S.2d at 173.  Because the surety had undertaken completion, the court held open the possibility that delay damages suffered by the owner were caused by the *surety's delay* rather than delay by the contractor.  *See id.* at 174.  On this basis, the court held that the owner's delay damages were not limited to liquidated damages.  The difference in the surety's

5

election here makes *Chautauqua* distinguishable.  AMMIC's motion only addresses the architect and construction management fees incurred as a result of the extended duration of construction activity, not the additional fees incurred during the process of obtaining bids and tendering the completion contract.  Since AMMIC was never in the role of contractor, it cannot have caused the extended construction duration, and thus cannot be responsible for the delay damages at issue except in accordance with the terms of the Contract.

North Brookfield's final argument attempts without success to counter the undisputed evidence cited by AMMIC to show that the intent of the parties to the Contract was for liquidated damages to be the exclusive remedy for delay, and particularly for construction administration and management fees of the architect.  *See* Memo. at 10-11; Opp. at 8-9.  North Brookfield calls it "remarkable" that AMMIC put before the Court evidence of testimony and documents showing that members of North Brookfield's School Building Committee, which was responsible for arranging, approving and administering Sciaba's Contract, understood and expected that architects' and construction managers' fees that might be incurred if construction took longer than planned would be covered by liquidated damages.  However, it is perfectly appropriate for the Court to consider evidence of this type in aid of construction, with the goal of ascertaining the context in which the Contract was entered into and the intent of the parties.  *See Cullinet Software Inc. v. McCormack & Dodge Corp.,* 400 Mass. 775, 777 (1987); *Antonellis v. Northgate Constr. Corp.,* 362 Mass. 847, 851 (1973); *Robert Indus., Inc. v. Spence,* 362 Mass. 751, 753-54 (1973); *see also Fleet Nat'l Bank v. H&D Entertainment, Inc.,* 96 F.3d 532, 539 (1st Cir. 1996).  The fact that some of the evidence of North Brookfield's intent and expectations happened to be expressed in its contract with Dore & Whittier does not disqualify that evidence from consideration.

6

What is most important to note about North Brookfield's discussion of the evidence of intent that AMMIC has introduced is that North Brookfield *has not introduced any evidence that the parties' intent or expectations were other than what AMMIC has said it was*. AMMIC's evidence of intent is undisputed.

## CONCLUSION

This Reply, together with AMMIC's Statement of Undisputed Facts and its Memorandum, establish, on the basis of undisputed facts, that the Town is not entitled to damages for delay other than such liquidated to which it may be entitled. AMMIC's Motion for Partial Summary Judgment On Liquidated Damages As The Exclusive Remedy For Delay must be allowed.

Respectfully submitted,

**AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY**

By its attorneys,

**HOLLAND & KNIGHT LLP**

*/s/ Deborah S. Griffin*
Deborah S. Griffin, BBO #211460
Jeff D. Bernarducci, BBO #657454
10 St. James Avenue
Boston, MA  02116
Tel:   (617) 523-2700
Fax:   (617) 523-6850

Dated:   February 3, 2006

# 3546471_v1
431261.00002